No. _____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

In re: Hon. Paula Goodhart, Hon. Jessica Padilla, Hon. Leslie Johnson, and Hon. Linda Garcia,

Petitioners.

---

On Petition for Writ of Mandamus
from the United States District Court
for the Southern District of Texas
No. 4:16-cv-1414

---

## PETITION FOR WRIT OF MANDAMUS

Joseph Russo
Fed. ID No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
1 Moody Plaza, 18th Floor
Galveston, TX 77550-7947
(409) 797-3200 (Telephone)
(866) 422-4406 (Facsimile)

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. *See* Loc. R. 28.2.1. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners**
Hon. Paula Goodhart
Hon. Jessica Padilla
Hon. Leslie Johnson
Hon. Linda Garcia

**Counsel for Petitioners**
Joseph R. Russo, Jr.
jrusso@greerherz.com
Angie Olalde
aolalde@greerherz.com
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550

**Intervenor**
Ken Paxton, Texas Attorney General

**Counsel for Intervenor**
Joe Nwaokoro
Assistant Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120

**United States District Court Judge**
Hon. Lee Rosenthal,
U.S. District Court Judge for the
Southern District of Texas, Houston Div.

**Plaintiffs/Respondents**
Maranda Lynn Odonnell
Loetha Shantae McGruder
Robert Ryan Ford

Neal S. Manne
nmanne@susmangodfrey.com
Joseph S. Grinstein
Abbey E. McNaughton
SUSMAN GODFREY L.L.P.
11000 Louisiana Street, Suite 5100
Houston, Texas 77005

**Counsel for Plaintiffs/Respondents**
Travis Walker Fife
travis@texascivilrightsproject.org
Dustin Rynders
dustin@texascivilrightsproject.org
Sarah Beebe
sarah@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1500 McGowen, Suite 220
Houston, Texas 77004
Telephone: (512) 474-5073

i

Telephone: (713) 651-9366

Morgan McCollum
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330

Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi
elizabeth@civilrightscorp.org
Jeremy D. Cutting
cody@civilrightscorp.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721

**Harris County, Texas**

**Counsel for Harris County**

Jonathan Fombonne
Jonathan.fombonne@harriscountytx.gov
Seth Hopkins
Seth.hopkins@harriscountytx.gov
Rachel Fraser
Rachel.fraser@harriscountytx.gov
HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5383

**Twelve Harris County Criminal Court at Law Judges**

**Counsel for Twelve Harris County Criminal Court at Law Judges**

Hon. Alex Salgado
Hon. Shannon Baldwin
Hon. David M. Fleisher
Hon. Kelley Andrews
Hon. Andrew A. Wright
Hon. Erika Ramirez
Hon. Toria Finch
Hon. Juanita Jackson
Hon. Sedrick T. Walker
Hon. Ashley Guice
Hon. Raul Rodriguez
Hon. Tonya Jones

Allan Van Fleet
G. ALLAN VAN FLEET, P.C.
6218 Elm Heights LN, Suite 201
Houston, Texas 77081-2409
Telephone: (713) 826-1954

ii

**Sheriff Ed Gonzalez**                    **Counsel for Sheriff Ed Gonzalez**

Murray J. Fogler
FOGLER, BRAR, O'NEIL & GRAY LLP
909 Fannin Street, Suite 1640
2 Houston Center
Houston, Texas 77002
Telephone: (713) 481-1010

Petitioners certify that, to the best of their knowledge, no publicly traded company

or corporation has an interest in the outcome of this case or appeal.

By:    */s/ Angie Olalde*
       Counsel for Petitioners

iii

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ....................................................... i

TABLE OF AUTHORITIES ............................................................................... 6

RELIEF SOUGHT AND WHY MANDAMUS SHOULD ISSUE ......................... 9

JURISDICTIONAL STATEMENT ..................................................................... 10

STATEMENT REGARDING ORAL ARGUMENT ............................................ 10

ISSUE PRESENTED FOR REVIEW ................................................................. 10

STATEMENT OF THE CASE ............................................................................ 11

    I.  Relevant Facts and Procedural Background ................................................ 11

        A.  Respondents filed this case in 2016 to challenge unfair wealth-based detention and the use of a bail schedule without individualized review of the circumstances. ................................................. 11

        B.  In June 2018, this Court reversed the district court's injunction as overbroad ..................................................................................... 12

        C.  In August 2018, this Court stayed the district court's revised injunction because it was overbroad and violated *ODonnell I*'s mandate .......................................................................................... 13

        D.  The appellants lost their November 2018 elections, and their successors dismissed the appeal ............................................... 13

        E.  Back in the district court, the parties agreed on everything, including broad injunctive relief in the form of a consent decree entered in 2019 ............................................................................ 14

        F.  In 2021, Texas enacted extensive new pretrial bail procedures ............. 16

        G.  Respondents admit that the Consent Decree conflicts with Texas' new bail-reform procedures .................................................. 19

        H.  The 2023 elections fractured the unanimous Democratic hold on the HCCCL judiciary ............................................................... 20

I.  The Attorney General intervened in 2025, the Judges obtained separate counsel, and the district court has now denied all attempts at swift application of *Younger* to this case ............ 20

II.  Rulings Presented for Review ............................................... 22

SUMMARY OF THE ARGUMENT ........................................................ 22

ARGUMENT ........................................................................ 24

I.  Standard of Review ...................................................... 24

II.  The Court should grant mandamus relief.............................. 24

A. There is no other adequate remedy by appeal. ................... 24

B. Petitioners' right to mandamus relief is clear, as "neither *ODonnell I* nor [*Daves*] should have been adjudicated in federal court" ...................................................... 27

1. Abstention adheres to basic doctrines of equity jurisprudence .................................................... 27

2. No discovery or fact findings are needed to timely apply *Younger* ....................................................... 28

3. This case's procedural posture does not warrant further delay. ........................................................ 30

4. *Younger* abstention is not waived—it was raised early and repeatedly denied by the district court and this Court ............ 35

C. Mandamus relief is appropriate, where Texas has a vital interest in regulating pretrial criminal procedures ......................... 38

CONCLUSION AND PRAYER .......................................................... 38

## TABLE OF AUTHORITIES

Cases

*Abbott v. Anti-Defamation League*,
   610 S.W.3d 911 (Tex. 2020) ......................................................................29

*Abbott v. Perez*,
   585 U.S. 579 (2018) ...................................................................................29

*Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*,
   No. 21-10766, 2022 U.S. App. LEXIS 10757 (5th Cir. 2022) ...........................35

*Broad. Satellite Int'l, Inc. v. Nat'l Dig. TV Ctr., Inc.*,
   323 F.3d 339 (5th Cir. 2003) ................................................................36

*Daves v. Dallas Cty.*,
   64 F.4th 616 (5th Cir. 2023) (en banc) .........................................*passim*

*Enron Corp. v. Spring Indep. Sch. Dist.*,
   922 S.W.2d 931 (Tex. 1996) ................................................................29

*Evans v. City of Chicago*,
   10 F.3d 474 (7th Cir. 1993) (en banc) .................................................32

*Ex parte Peru*,
   318 U.S. 578 (1943) ...................................................................................38

*Hernandez v. Paxton, No. EP-25-CV-220-KC*,
   2025 WL 2265467, 2025 U.S. Dist. LEXIS 154969 (W.D. Tex. 2025) .............29

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ..........................................................24, 26

*In re Westcott*,
   135 F.4th 243 (5th Cir. 2025) (en banc) .............................................26

*Joseph A. v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002) ...................................................27, 31

*Kimbrough v. Walling*,
  371 S.W.2d 691 (Tex. 1963) ................................................................29

*League of Un. Latin Am. Citizens, Dist.*
  *19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) .......................................28, 29

*League of Un. Latin Am. Citizens, Dist.*
  *19 v. City of Boerne*, 675 F.3d 433 (5th Cir. 2012) .............................................29

*Little v. Doguet*,
  71 F.4th 340 (5th Cir. 2023) ................................................................23

*Maryland v. Soper*,
  270 U. S. 9 (1926) ...............................................................................24, 25

*Miller v. Raytheon Co.*,
  716 F.3d 138 (5th Cir. 2013) ................................................................29

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023) ...............................................................30

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................29, 31

*ODonnell v. Goodhart*,
  900 F.3d 220 (5th Cir. 2018) ....................................................................*passim*

*ODonnell v. Harris Cty.*,
  227 F. Supp. 3d 706 (S.D. Tex. Dec. 16, 2016) ...................................................36

*ODonnell v. Harris Cty.*,
  882 F.3d 528 (5th Cir. 2018) .......................................................................12, 36

*ODonnell v. Harris Cty.*,
  892 F.3d 147 (5th Cir. 2018) ....................................................................*passim*

*ODonnell v. Salgado*,
  913 F.3d 479 (5th Cir. 2019) (per curiam) ..........................................................14

*Olali v. Johnson*,
  No. 26-40101, 2026 U.S. App. LEXIS 9953 (5th Cir. Apr. 7, 2026)
  (per curiam) ........................................................................................38

*Penny v. Orthalliance, Inc., No. 3:01-CV-1569-N*,
  2003 U.S. Dist. LEXIS 12495 (N.D. Tex. 2003) ...........................................37, 38

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) ............................................................27

*Rufo v. Inmates of Suffolk County Jail*,
  502 US 367 (1992) ..................................................................................29

*U.S. ex rel. Drummond*,
  886 F.3d 448 (5th Cir. 2018) (per curiam) .........................................................24

*U.S. v. Abbott*,
  92 F.4th 570 (5th Cir. 2024) ......................................................................25, 38

*Williams v. Rubiera*,
  539 F.2d 470 (5th Cir. 1976) .............................................................................32

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................*passim*

Statutes and Rules

28 U.S.C. § 1651 ....................................................................................10, 24

Fed. R. Civ. P. 60(b) ..............................................................................29, 30, 34

Tex. Code Crim. Proc. art. 17.021 ...........................................................................17

Tex. Code Crim. Proc. art. 17.028 ............................................................................17, 18

Tex. Gov't Code § 74.093 .................................................................................15

Texas Penal Code § 20.02 ....................................................................................19

**RELIEF SOUGHT AND WHY A WRIT OF MANDAMUS SHOULD ISSUE**

In an en banc ruling, this Court clearly instructed that "neither *ODonnell I*[1] nor [*Daves*] should have been adjudicated in federal court." *Daves v. Dallas Cty.*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc) ("*Daves II*"). *Daves II* applied a "longstanding public policy against federal interference with state court proceedings" to bail reform litigation in Texas, and reversed the Court's prior rulings on *Younger* abstention. *Id.* at 625 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). It held that cases seeking "to revise by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail" "should never have been brought in federal court." *Id.* at 620. That is because *Younger*—

> …requires federal courts to abstain from revising state bail bond procedures on behalf of those being criminally prosecuted, when state procedures allow the accused adequate opportunities to raise their federal claims.

*Id.* Despite *Daves II*'s holding, the Consent Decree is still in place in this case, and it conflicts with Texas' new bail-reform laws.

On a daily basis, Petitioners are forced to violate these new State laws that they have sworn to uphold. When Texas' Attorney General ("AG") moved to intervene to assert *Younger* abstention, the district court refused, holding the AG waived that argument but allowing intervention on other grounds (ECF 764 at 2).

---

[1] *ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) (op. on reh.) ("*ODonnell I*").

Petitioners moved to vacate the Consent Decree based in part on *Younger* abstention (App. B) (ECF 793-2 at 20), and asked the district court to consider *Younger* on an expedited basis (App. F) (ECF 803). The district court denied that request (App. M) (ECF 821 at 2). The court has ordered a nearly a year-long discovery period, a new round of briefing, and an evidentiary hearing that was recently reset to November 16, 2026, which will be after this year's election (App. L) (ECF 820). If mandamus relief is not granted, the parties will be subjected to continued, extensive discovery and unnecessary delay in a case that should never have been brought in federal court.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction to issue mandamus relief under the All-Writs Act, 28 U.S.C. § 1651.

### STATEMENT REGARDING ORAL ARGUMENT

Because the issues presented in this petition are straightforward, Petitioners do not believe oral argument is necessary.

### ISSUE PRESENTED FOR REVIEW

Whether the trial court should immediately consider *Younger* abstention and follow this Court's precedent in *Daves II*.

<center>STATEMENT OF THE CASE</center>

## I.    Relevant Facts and Procedural Background

The Court has already thoroughly reviewed and detailed the background facts of this case. *See ODonnell v. Harris Cty.*, 892 F.3d 147, 153-55 (5th Cir. 2018) (op. on reh.) ("*ODonnell I*"), *overruled in part by Daves II*, 22 F.4th at 546. Petitioners, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges") provide an abbreviated recitation of relevant facts and current procedural posture, below.

### A. Respondents filed this case in 2016 to challenge unfair wealth-based detention and the use of a bail schedule without individualized review of the circumstances.

Ten years ago, ODonnell and others sued Harris County, the County's Criminal Court at Law Judges (the "CCCL Judges"),[2] Hearing Officers, and Sheriff alleging the County's pre-trial bail system for indigent misdemeanor arrestees violated the state and federal constitutions. *ODonnell I*, 892 F.3d at 152. After a hearing in 2018, the district court entered an injunction, finding the County's pretrial bail procedures "**did not achieve any individualized assessment in setting bail**, and was incompetent to do so." *Id*. at 153-54 (emphasis added). The problem was that County officials largely followed a bail schedule without conducting an individualized assessment, leaving most misdemeanor arrestees assigned some

---

[2] The HCCCL Judges refers to all sixteen of the County's Criminal Court at Law Judges. The "Judges" refers to the four Petitioners, and the HCCCL judges are the "Twelve Judges."

<center>11</center>

amount of upfront payment before release. *Id*. at 154. This Court considered and denied on appeal defendants' abstention arguments in February and June of 2018. *See ODonnell v. Harris Cty.*, 882 F.3d 528, 538 (5th Cir. 2018), *withdrawn and superseded on panel reh'g by ODonnell I*, 892 F.3d at 156, *overruled in part by Daves II*, 22 F.4th at 546.

## B. In June 2018, this Court reversed the district court's injunction as overbroad.

In 2018, this Court reversed the district court's injunction as overbroad, and remanded with instructions to issue a "narrowly tailored" injunction to address the constitutional deficiency at issue, which the Court described as "the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances." *Id*. at 163, 166-67. The necessary "equitable remedy" was to:

> …implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay). These procedures are: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker.

*Id*. at 163. On remand, the district court revised its injunction to require release at the 48-hour mark, using the model injunction provided in *ODonnell I* but adding extra terms. *ODonnell v. Goodhart*, 900 F.3d 220, 222 (5th Cir. 2018) (*ODonnell II*). Fourteen of the CCCL Judges appealed, again.

**C. In August 2018, this Court stayed the district court's revised injunction because it was overbroad and violated *ODonnell I*'s mandate.**

In their second appeal, the Judges requested a stay of the revised injunction, which this Court granted. *Id.* at 223. The stay order explained that *ODonnell I*'s mandate was to remedy the "automatic imposition of bail," and since "[i]ndividualized hearings fix that problem," the district court's revised injunction requiring "**immediate release is more relief than required and thus violates the mandate rule**….." *Id.* at 225 (emphasis added). *ODonnell I* had already "cautioned that an '**outright elimination of secured bail for indigent misdemeanor arrestees' was an inappropriate remedy**." *Id.* (emphasis added). The Court explained that,

> [b]ecause the new injunction again orders release of an indigent arrestee with no strings attached and before an opportunity for the County to provide the strings, the injunction circumvents the purpose of bail and ultimately eliminates secured bail, all in violation of *ODonnell I*.

*Id.* (emphasis added). The injunction's order to "immediate[ly] release [] any indigent detainee who is not provided an individualized hearing within 48 hours of detainment" was also overbroad. *Id.* at 225-26, 228 (quoting *ODonnell I*, 892 F.3d at 163) (there is "no fundamental substantive due process right to be free from any form of wealth-based detention").

**D. The appellants lost their November 2018 elections, and their successors dismissed the appeal.**

After the stay order issued, the parties completed briefing, but "[t]he original appellants were defeated in the November 2018 elections and, by operation of law,

were replaced…" *ODonnell v. Salgado*, 913 F.3d 479, 481 (5th Cir. 2019) (per curiam) (*ODonnell III*). On January 1, 2019, new counsel appeared for the Harris County Criminal Court at Law ("HCCCL") Judges. *Id*. One week later, they filed an unopposed motion to dismiss the appeal, which was granted. *Id*. The Plaintiffs then filed an unopposed motion to vacate the *ODonnell II* stay opinion because the new judges' withdrawal of the appeal "reflect[ed] their agreement with the revised preliminary injunction (as it is consistent with their policy views)" (App. B) (ECF 793-2). The motion to vacate was denied. The Court reasoned that judicial precedents are "valuable to the legal community as a whole," are "not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Odonnell III*, 913 F.3d at 481. The *ODonnell II* panel—

> …took great strides to decide the motion for stay correctly, including, after thorough briefing, the unusual step of hearing oral argument, thirty minutes per side. The panel majority published the opinion after making certain it was a correct rendition of the law and the facts….

*Id*. In short, "the published opinion granting the stay is this court's last statement on the matter and, like all published opinions, binds the district courts in this circuit." *Id*. at 482.

### E. Back in the district court, the parties agreed on everything, including broad injunctive relief in the form of a consent decree entered in 2019.

After the appeal was dismissed, the parties settled. The HCCCL Judges

14

amended their local rules by a majority vote (App. C) (ECF 708 at 12 ¶13).[3] After

that, the parties presented the district court with a request to enter broad injunctive

relief in the form of a consent decree, which was entered on November 2019 (App.

C) (ECF 708) (the "Consent Decree" or "Decree").

The Decree's stated purpose is to "safeguard arrestees' equal protection and

due process rights" to pretrial liberty, and cease wealth-based detention. Dkt. 617-1

at 11 ¶10. But it applies to *every* misdemeanor arrestee in Harris County, regardless

of ability to pay, and requires the immediate release of most class A and B

misdemeanor arrestees with a personal bond or nonfinancial conditions. (App. C)

(ECF 708 at 17-18) (emphasis added). The Decree allows for six very specific

categories, or "carveouts" from immediate release, based on the charge against an

arrestee, including those arrested for: (1) violating bond conditions in family

violence charges, (2) assault or terroristic threats against a family member, (3)

driving while intoxicated (DWI) *if* there is notice from the State of an enhancement

(e.g., another final DWI conviction in the past five years), (4) new charges while on

pretrial release, (5) warrant arrests after bond forfeiture or revocation, or (6) arrest

for a Class A or B misdemeanor or a felony offense while on community supervision

(App. C) (ECF 708 at 18 ¶9.4.6). Because the carveouts apply to very specific,

---

[3] Outside of any federal court intervention, the HCCCL Judges have the power to amend their local rules, including Local Rule 9's pretrial procedures, by majority vote. *See* Tex. Gov't Code § 74.093(a).

limited subsets of misdemeanor arrestees, most people arrested for a class A or B misdemeanor are immediately released on a general order bond ("GOB") without ever appearing before a trained magistrate or hearing officer.[4] Even those "carved out" from immediate GOB release are automatically released if they have not appeared before a judicial officer within 48 hours of arrest, including violent or habitual offenders and those who received mental health or medical care after arrest (*id.* at 23 ¶¶9.16, 9.18 & n.73).

### F. In 2021, Texas enacted extensive new pretrial bail procedures.[5]

The Texas Legislature enacted criminal pretrial procedure reforms in 2021 to better protect the safety of victims, law enforcement, and the public:

> [T]he legislation represents one of the largest overhauls to Texas' bail system; drastically increasing the amount of information available to judges when setting bail and the amount of statewide data tracked on bail outcomes.

Bill Analysis, Tex. S.B. 9, 89th Tex. Leg., R.S. (2025) (App. E) (ECF 793-2 at App. C); *see also* Bill Analysis, Tex. S.B. 6, 87th Tex. Leg., R.S. (2021) (App. E) (ECF 793-2 at App. D). S.B. 6 is also known as known as the Damon Allen Act, named after a Texas State trooper killed in the line of duty by a defendant released on bond

---

[4]A general order bond ("GOB") under the Consent Decree is a standard, pre-signed order given to arrestees without any judicial officer knowing anything about the case, defendant, or facts (*see* App. C) (ECF 708 at 23 n.73). It is not the same as a personal bond, which issues after a magistrate considers the facts and surrounding circumstances (*id.* at 18 ¶9.4.6).

[5] *See* Act of September 17, 2021, 87th Tex. Leg. 2d C.S., (S.B. 6); Act of June 16, 2025, 89th Tex. Leg., R.S. (S.B. 9).

despite a criminal history that included aggravated assault of a public servant. *Id.*

S.B. 6 created detailed procedures and mandated a new public safety report system ("PSRS") to provide more information to judges and magistrates to properly assess a defendant's risk and "allow defendants to receive thorough individual assessments, as well as increase data reporting to create a more accountable system." *Id.* PSRS reports summarize an arrestee's criminal history, any prior failures to appear, whether they are on probation or participating in intervention programs, have outstanding warrants, or are the subject of a protective order. Tex. Code Crim. Proc. art. 17.021.

S.B. 6 added articles 17.024 and 17.028, mandating extensive training for those making bail determinations and requiring an individualized consideration of all circumstances and factors under article 17.15(a) of the Texas Code of Criminal Procedure ("CCP") before determining any release conditions or making a bail decision. *Id.* arts. 17.024, 17.028(a). It amended article 17.15 to require officers to consider whether an offense involved violence, violence against a peace officer, and law enforcement's safety (in addition to the safety of the victim and community). *Id.* art. 17.15(5)–(7). Hearing officers must also consider the arrestee's criminal history, "including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail." *Id.*

17

The Legislature also created a rebuttable presumption "that bail, conditions of release, or both…are sufficient to reasonably ensure the defendant's appearance in court" as well as "the safety of the community, law enforcement, and the victim of the alleged offense." *Id.* art. 17.028(c). It prohibited standing orders related to bail that are inconsistent with article 17.028, or require magistrates to make bail decisions without considering article 17.15 factors. *Id*. art. 17.028(d). The Consent Decree directly conflicts with this provision (*see* App. C) (ECF 708 at 17-18 ¶¶9.4-9.5).

S.B.6 created a procedure for those charged with a Class B misdemeanor or higher offense and cannot afford bail, under which they submit an affidavit of inability to pay and are entitled to "prompt review" of the bail amount. Tex. Code Crim. Proc. art. 17.028(f)–(h). If for any reason there is a delay in that review longer than 48 hours from arrest, notice must be given to the defendant or their counsel, and the delay must be reported to Texas' Office of Court Administration. *Id*. art. 17.028(i).

In 2025, the Legislature enhanced it pretrial bail procedures in S.B. 9, "by revising conditions and procedures for setting bail, expanding access and use of the [PSRS], and providing for certain crime victims' rights." (App. E) (ECF 793-2, App. C at 55). S.B. 9 also prohibits defendants from release on personal bond if, with certain exceptions, they are charged with certain offenses, including terroristic threat. *See* Tex. Code Crim. Proc. art. 17.03(b–2)(1)(B)(ii)).

### G. Respondents admit that the Consent Decree conflicts with Texas' new bail-reform procedures.[6]

Under the Consent Decree, no magistrate or hearing officer can or will consider the criminal history or facts surrounding any person's arrest if they are charged with a class A or B misdemeanor that is not a carveout. Unless carved out, among those who do not see a judge before release are people who have an extensive, even violent, criminal history, or those who told the arresting officer that they will not stay away from the victim after release,[7] as well as people charged with:

- indecent exposure (first and second offenses),[8]
- making a terroristic threat to, or committing assault against, a non-family member,
- unlawful restraint,
- indecent assault,
- burglary of a motor vehicle (jugging), and
- attempted escape.

For example, a person charged with unlawful restraint (a class A misdemeanor under Texas Penal Code § 20.02), who has a criminal history of felony unlawful restraint must be automatically released without magistrate review, even if there is evidence they could be a threat to the victim or to public safety. And, if any magistrate or judge reviewed the criminal history and imposed additional conditions before

---

[6] (App. E) (ECF 793-2, App. A at 1).

[7] This happened in one of several examples of persons released on GOB that the Judges provided in their motion to vacate (App. E) (ECF No. 793 at 14).

[8] Sex offender registration is required for a second indecent exposure conviction. Tex. Code Crim. P. arts. 62.001(5)(F) & 62.051(a).

release, they would be subject to threats of criminal contempt for willfully violating the Consent Decree (App. E) (ECF 793, App. A at 1-2).

### H. The 2023 elections fractured the unanimous Democratic hold on the HCCCL judiciary

Between 2019 and 2023, all of the HCCCL Judges were Democrats represented by a single attorney. On January 1, 2023, three of the Judges took office. Judge Johnson took the bench in January 2025. Counsel for the Democrat HCCCL Judges withdrew from representing the new (Republican) Judges (*see* ECF 749 at 1) (Twelve Judges' opposition to AG intervention).[9]

### I. The Attorney General intervened in 2025, the Judges obtained separate counsel, and the district court has now denied all attempts at swift application of *Younger* to this case.

The Attorney General intervened in 2025, in part, to argue *Younger* abstention (ECF 740-1). The district court refused that request, holding the Attorney General waived any *Younger* argument (ECF 764). The Judges then raised *Younger* in their own motion to vacate, filed in December 2025 (App. E) (ECF 793 at 20-22).

In the meantime, Respondents' counsel sent a letter to the Court-appointed monitor regarding "apparently intentional violations of the Consent Decree," outlining changes to Texas pretrial bail procedures in article 17.03 (as amended by

---

[9] Despite attempts to obtain representation, Petitioners went unrepresented by counsel until November 2025 (ECF 765-66), when Harris County finally authorized the Judges' retention of counsel. The Judges did not sit idly by during this time—they raised the issue repeatedly, even to the district court's appointed Monitor (*see* App. K) (ECF 812 at 4).

S.B. 9), stating that:

> Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 **as codified** in the federal court Consent Decree issued in the *ODonnell* litigation.

(App. E) (ECF 793-2, App. A at 3-4) (emphasis added). For example, the Consent Decree states that every judicial officer has "complete discretion to release any misdemeanor arrestee on a personal bond" (App. C) (ECF 708 at 19 ¶9.10), which directly contradicts S.B. 9. Respondents asked the hearing officers be "reminded" that they cannot follow Texas' new laws when they "encounter a conflict between what state law and the Consent Decree require," such as when "a personal bond is prohibited under Senate Bill 9" (App. E) (ECF 793-2, App. A at 6). They asked the district court for the same instruction (App. N at 17). The district court ordered discovery on the motions to vacate and initially set a hearing on those motions in August 2026 (ECF 773). In March 2026, the district court's appointed Monitor filed his Ninth Report criticizing judicial review of defendants' GOBs in specific criminal cases, positing that one judge's on-the-record findings were not adequate, and concluding the judge (a Petitioner in this proceeding) "was expressly violating" the Consent Decree (*see* ECF 799-1 at 23-24). The Judges moved for an expedited consideration of *Younger* (App. M) (ECF 821), which all other parties opposed (ECF 804-807). Instead of considering *Younger* on an expedited basis, the district court extended discovery another six months and continued the hearing on the motions to

vacate until November 16, 2026, after this year's election (App. L) (ECF 820).

This proceeding followed.

## II.    Rulings Presented for Review

The Judges challenge the district court's May 26, 2026 order denying their request to consider *Younger* abstention on an expedited basis, and holding that extended discovery and a post-election evidentiary hearing is necessary to apply *Younger* (App. M) (ECF 821 at 2). The district court ordered amended motions filed in October (App. L) (ECF 820), and treats the Judges' December 11, 2025 Motion to Vacate as moot. Petitioners ask that the Court grant mandamus relief, instruct that fact findings and discovery are not necessary to apply *Younger* abstention in this case, and order the trial court to swiftly consider *Younger* abstention as previously briefed (*see* App. E) (ECF 793), with an expedited response deadline for Respondents, and follow this Court's precedent in *Daves II*. The Judges request all other relief the Court deems appropriate.

## SUMMARY OF THE ARGUMENT

This Court is very familiar with this case and with related suits challenging pre-S.B. 6 and pre-S.B. 9 procedures. In *ODonnell I*, the Court held that the district court's original injunction was overbroad. In *ODonnell II*, it held the district court's revised injunction was overbroad and violated the mandate rule. The parties then settled and the Consent Decree issued, locking procedures into place that aligned

with their policy views.

This case is no longer about wealth-based detention, or ensuring an individualized review occurs before bail orders issue. It is now about requiring the immediate release of almost all misdemeanor arrestees in Harris County regardless of ability to pay, and contrary to conducting any individualized review of the circumstances. The Decree persists today, despite (i) its conflict with Texas' fully revised pretrial bail procedures, (ii) this Court's opinion in *Daves II* requiring abstention, and (iii) this Court's application of *Daves II* to mandate abstention in a similar case from Louisiana. *Little v. Doguet*, 71 F.4th 340, 348 (5th Cir. 2023). The Judges find themselves under federal order to contradict Texas' new laws on a daily basis, facing threats from counsel and, more recently, reporting from the Monitor, aimed at chilling their consideration of and orders in pending criminal cases, and at preventing compliance with Texas' new bail-reform laws. Mandamus relief is therefore necessary.

There should be no further delay in applying *Younger* to this case. The Judges ask that the Court order the expedited consideration of *Younger* abstention consistent with the binding precedent in *Daves II*. Contemporaneously with this Petition, the Judges have filed a motion to stay enforcement of the Decree against actions taken consistent with Texas' new laws.

**ARGUMENT**

## I.  Standard of Review

Under the All Writs Act, '[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'

*U.S. ex rel. Drummond*, 886 F.3d 448, 449 (5th Cir. 2018) (per curiam) (quoting 28 U.S.C. § 1651(a)). Mandamus, as an extraordinary remedy, "will be granted" to cure clear abuses of discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008). To issue,

> (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process; (2) the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id*. at 311 (cleaned up, quotation omitted). Because courts must generally exercise their discretion "within the bounds set by relevant statutes and relevant, binding precedents," mandamus "is entirely appropriate" when courts abuse their discretion by "clearly exceed[ing] the bounds of judicial discretion." *Id*. at 310.

## II. The Court should grant mandamus relief.

### A.  There is no other adequate remedy by appeal.

The federal judiciary should not intrude in federal-state relations. *See Maryland v. Soper*, 270 U. S. 9 (1926) (granting mandamus to require remand of

indictment to state court); *U.S. v. Abbott*, 92 F.4th 570, 576 (5th Cir. 2024) (Ho, J., dissenting) (discussing the "high function of mandamus to keep" courts from "interposing unauthorized obstructions to" enforcing higher court judgments).

Had the obstacle of a federal Decree not been in place, the HCCCL Judges would have amended their own local rules in 2022 to comply with Texas' new S.B. 6 requirements (App. O) (ECF 801-2 at 2). The HCCCL Judges "conceived a Fast Track Bond" to replace the Decree-mandated GOB (*id*.). But the Monitor instructed them that he must approve of any changes to their local rules, so the GOB procedures continued, until such time that the Monitor or district court would choose to resolve the conflict between Texas' new laws and the Consent Decree (*id*. at 2-3).[10]

Under *Younger*, federal courts must abstain from "revising state bail bond procedures on behalf of those being criminally prosecuted" where a state's procedures, such as those enacted under S.B. 6, provide "adequate opportunities" for arrestees to raise federal claims. *Daves II*, 64 F.3d at 620. Mandamus relief is appropriate here, "to effect prompt termination" of the district court's control over Harris County misdemeanor criminal cases, and "avoid prolonged litigation where a question of public importance is involved." *Id*. at 577 (quotation omitted). It is

---

[10] The AG objected to the Monitor's bias, pointing out that he published an article in 2022 criticizing Texas' new bail-reform laws, and would not approve the HCCCL Judges' proposed new procedures (App. O) (ECF 801 at 10, ECF 801-2 at 2). The district court overruled the AG's objection (App. M) (ECF 821 at 1).

therefore "imperative" to reconsider abstention here, to cure the "broad changes to misdemeanor bail bond procedures" imposed by federal decree. *Id.* at 631. By abstaining, "much time and money, as well as judicial resources, will be saved on litigation in federal court." *Id.* at 623.

Continuing federal control here is similar to continuing litigation in the wrong proceeding, which this Court has "long recognized" as an "indignity" that "cannot be remedied through 'the regular appeals process.'" *See In re Westcott*, 135 F.4th 243, 245-46 (5th Cir. 2025) (published order) (quoting *In re Volkswagen of Am.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). Such harm "will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *Id.* (quoting *In re Volkswagen of Am.*, 545 F.3d at 319). It is clear that secured bail must "not to be eliminated for any category of indigent arrestees, no matter how narrow," and requiring "automatic release smuggles in a substantive remedy via a procedural harm" that "goes too far" and is improper. *ODonnell II*, 900 F.3d at 225, 228. Here, the district court's ongoing control over the County's misdemeanor pretrial procedures, and preclusion of judicial discretion and independence in overseeing these cases, is a harm that far exceeds any indignity of being forced to litigate in the wrong proceeding. The Judges should not face threats of criminal contempt should they follow Texas' new bail-reform laws, conduct individualized reviews of the circumstances before them, and enter appropriate

orders based on that review (App. E) (ECF 793, App. A at 1-2). Under these circumstances, continuing the Decree is a harm that cannot be adequately cured by appeal.

### B. Petitioners' right to mandamus relief is clear, as "neither *ODonnell I* nor [*Daves*] should have been adjudicated in federal court."[11]

#### 1. Abstention adheres to basic doctrines of equity jurisprudence.

The district court should abstain from further involvement in ongoing judicial proceedings pursuant to a "basic doctrine of equity jurisprudence" guided by "notions of comity" and federalism. *Younger*, 401 U.S. at 43-44 (cleaned up); *Preiser v. Rodriguez*, 411 U.S. 475 (1973). The Consent Decree not only revises bail-bond procedures, it conflicts with new State law. For the reasons discussed in *Daves II*, and for the reasons discussed herein—including threats of criminal contempt against elected judges should they follow Texas' new laws—Petitioners' right to mandamus relief is clear. *See Joseph A. v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly").

---

[11] *Daves II*, 64 F.4th at 631.

### 2. No discovery or fact findings are needed to timely apply *Younger*.

The district court disagreed that *Younger* abstention is a question of law, and distinguished *Daves II* as only applying to cases before judgment (*see* App. M) (ECF 821 at 2) ("*Daves II* did not address how courts should assess attempts under *Younger* to vacate a consent decree to which the moving parties previously agreed"). The district court ordered months of fact discovery, additional briefing, and a November 16, 2026 evidentiary hearing, stating that Rule 60(b) requires it to determine, based on the facts, whether the equities favor vacating or amending the Consent Decree (App. L) (ECF 820); (App. M) (ECF 821). Respectfully, the Judges disagree. Texas law has changed, and *Daves II* applies here.

First, none of the reasons Respondents gave for requesting discovery relate to abstention (App. D) (ECF 770 at 2). For example, Respondents claim discovery is needed over whether the Consent Decree's purpose has been achieved (*id.*). Such facts are immaterial to the legal questions raised by *Younger* abstention. The questions Respondents pose in discovery relate to the impact of the Consent Decree, not its undisputed conflict with new Texas laws and direct interference with ongoing criminal proceedings. Cases cited by Respondents also involve key factual inquiries—such as whether minority voters in a voting rights case supported a candidate who lost an election, or whether voter dilution caused the loss. *See League of Un. Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 438-39 (5th Cir.

2011); *League of Un. Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 438 (5th Cir. 2012); *see also Rufo v. Inmates of Suffolk County Jail*, 502 US 367, 385-87 (1992) (considering changed factual conditions in Rule 60(b) motion). Here, the State's new laws are clear, there is no misunderstanding of what they require or their applicability, and no factual determinations necessary to apply *Younger*.

Additionally, because Texas' pretrial procedures changed after the Consent Decree's entry, *Daves II* held that "a coequal ground" for dismissal was mootness. *Id*. at 634 ("even if federal courts were not compelled by *Younger* and *O'Shea*[12] to abstain, the present controversy must be considered moot"). Courts presume state laws are constitutional, that Texas court procedures afford adequate remedies for arrestees to raise constitutional claims,[13] that the Legislature understands and appreciates the needs of Texans,[14] and that local officials act in good faith.[15] S.B. 6

---

[12] *O'Shea v. Littleton*, 414 U.S. 488 (1974).

[13] *See Abbott v. Perez*, 585 U.S. 579, 603 (2018) (discussing presumption of legislative good faith in redistricting matter); *Hernandez v. Paxton*, No. EP-25-CV-220-KC, 2025 WL 2265467, 2025 U.S. Dist. LEXIS 154969, at *7 (W.D. Tex. 2025) ("federal courts should 'assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary'") (quotation omitted); *see also Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013) ("Texas courts afford state statutes a strong presumption of constitutionality under the Texas Constitution").

[14] *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996) (courts must presume "the Legislature 'understands and correctly appreciates the needs of its own people'").

[15] *See Abbott v. Anti-Defamation League*, 610 S.W.3d 911, 923 (Tex. 2020) (Texas courts "presume that public officials act in good faith and without invidious bias in formulating policy"); *see also Kimbrough v. Walling*, 371 S.W.2d 691, 692 (Tex. 1963) (the law presumes municipal officers act in good faith, within the limits of their authority and in the best interests of their municipality).

requires a bail decision within 48 hours of arrest that "reflect[s] individual consideration of the relevant Article 17.15(a) statutory factors," something the Consent Decree prohibits (App. C) (ECF 708 at 17 ¶9.2). But as this Court discussed in *Daves II*, Texas' "heavily procedural" new laws and their implementation, "raise constitutional issues beyond the scope of this case and the circumstances of the plaintiffs who filed it," requiring dismissal. *Daves II*, 64 F.3d at 634. The same is true here, where State law provides an avenue to raise constitutional claims. *Id.* at 633.

The district court cited *Netflix, Inc. v. Babin* to support delaying a *Younger* analysis (App. M) (ECF 821 at 2) (citing *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1084-85 (5th Cir. 2023)). But *Netflix* involved the extraordinary circumstance of prosecutorial bad faith, and held that "absent extraordinary circumstances" courts will not exercise jurisdiction "in a way that interferes with ongoing state-court proceedings." *Netflix* 88 F.4th at 1085, 1100. Since states have no legitimate interest in prosecutions brought for harassment, and defendants do not have an "adequate opportunity to assert constitutional violations" in such proceedings (e.g., where "the prosecution itself is the constitutional violation"), abstention was not appropriate in *Netflix*. *Id*. *Netflix* does not warrant further delay in applying *Younger* to this case.

### 3. This case's procedural posture does not warrant further delay.

The procedural posture of this case does not warrant ignoring *Daves II*, or

delaying application of its mandate. The district court viewed *Daves II* as only binding with respect to pre-judgment bail-reform cases (*see* App. M) (ECF 821 at 2). But *Daves II*'s discussion of *Younger* and mootness is not so narrow, and *Younger* has been applied to post-consent-decree cases.

For example, in *Joseph A. v. Ingram*, a consent decree was in place for seventeen years. *Joseph A. v. Ingram*, 275 F.3d 1253, 1257 (10th Cir. 2002). The case challenged systemic problems in New Mexico's Department of Human Services that led to delays and deprived the plaintiffs of meaningful access to adoption services. *Id.* at 1257. The court discussed *O'Shea*, which held *Younger* abstention applied where a federal court injunction was "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 1270-71 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)). The Tenth Circuit explained that, while federal oversight and control of *certain* state-court proceedings may not run afoul of *Younger* (such as mandating training or qualifications for social workers, or developing computer systems), problems arise when federal courts "review the operation of a mechanism that is an essential part of the state court proceedings," which "certainly suggests a risk of improper interference with state proceedings under *Younger*." *Id*. at 1273. In *Ingram*, the consent decree improperly imposed federal court control over "assessment and treatment planning conferences," and enforced the "use of state-

created Citizen Review Boards." *Id.* Those boards reviewed children's case dispositions, and submitted reports to state children's courts. *Id.* By making those proceedings enforceable in federal court, the federal court improperly injected itself into essential parts of state court proceedings, risking the "improper interference" *Younger* prohibits. *Id. Ingram* discussed *Williams v. Rubiera*, a case involving welfare fraud that applied *Younger* when a case sought a declaration that state-court defendants were entitled to court-appointed counsel for crimes punishable by a fine, because:

> [i]f relief were granted in this case it would have the effect of a federal court telling a state court how to run an ongoing criminal prosecution, *i.e.*, whether it could constitutionally try the defendant without appointed counsel.

*Williams v. Rubiera*, 539 F.2d 470, 473 (5th Cir. 1976). *Williams* held that such an order from a federal court "would have the intrusive impact on the state proceeding that *Younger* and its progeny abhorred," and therefore any injunction would "be direct federal interference in the state criminal prosecution." *Id.*

In *Evans v. City of Chicago*, the Seventh Circuit, en banc, applied *Younger* abstention to a sixteen-year-old consent decree. *Evans v. City of Chicago*, 10 F.3d 474, 475 (7th Cir. 1993) (en banc). The court held the decree did "not serve any federal interest" and "the injunction based on the parties' agreement therefore must be vacated." *Id. Evans* involved challenges to Chicago's decision to delay payments on large judgments at a time when judgment interest rates were substantially lower

than the market cost of credit. *Id*. The district court, through a consent decree, required payment of judgments in order, rather than based on amount, and the Seventh Circuit reversed, holding the City had a rational basis for paying smaller judgments first. *Id*. at 475-76. On remand, the City moved to vacate the decree, since interest rates had changed to match market rates and it would pay promptly without an injunction in place. *Id*. at 476 (contending the circumstances changed, and it is "'no longer equitable' that a judgment affecting [] legislative functions remain in force when the judgment does not serve a federal interest"). The district court released only part of the decree. *Id*. On appeal for a third time, the City argued the consent decree "intrudes on the internal operations of the City, telling the Mayor what items must be in the annual budget." *Id*.

The Seventh Circuit explained that governments may choose to do more than what the Constitution requires, and "parties cannot, by giving each other consideration, purchase "a continuing injunction" from "a court of equity." *Id.* at 477 (quoting *System Federation v. Wright*, 364 U.S. 642, 651 (1961)). That is because federal court "authority to adopt a consent decree comes only from the statute which the decree is intended to enforce," rather than from party consent. *Id*. at 478 (quoting *Firefighters v. Stotts*, 467 U.S. 561, 576 n.9 (1984)).

Nor does the fact that a previous officeholder agreed to a consent decree forever bind later-elected officials. As *Evans* explained,

[t]oday's lawmakers have just as much power to set public policy as did their predecessors. "Chicago" speaks through its elected representatives, and the people are free to upset even the most enlightened policies of earlier times. The current mayor wants to be free of his predecessor's commitment, concluding that more flexibility over budgets will promote the public welfare. People of good will could be on either side of this disagreement; each mayor may have correctly perceived the needs of the moment.

*Id*. ("temporary officeholders may not contract away the basic powers of government to enact laws…"). Therefore, party consent alone does not warrant court interference with another sovereign's administration, just as "democracy does not permit public officials to bind the polity forever." *Id*. at 477-78 (citing *League of Un. Latin Am. Citizens v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (en banc), which held "[c]ourts must be especially cautious when parties seek to achieve by consent decree what they cannot achieve by their own authority. Consent is not enough when litigants seek to grant themselves powers they do not hold outside of court.").

District courts must therefore ensure that consent decrees pertain to a "substantial federal claim, not only when the decree is entered but also when it is enforced," so that the decree's mandates arise from a "rule of federal law rather than the bare consent of the office-holder." *Id*. at 479. Without a substantial claim under federal law, a consent decree that affects government operations is only a contract, and federal courts should not continue to enforce it. *Id*. at 480 (concluding prospective enforcement without a substantial claim under federal law is inequitable under Rule 60(b)(5)).

The passage of time alone does not cement the Consent Decree's overreach, or permit its continued enforcement in place of Texas' new chosen procedures. Here, Respondents have made clear they want the Consent Decree in place "in perpetuity" (App. N at 17). But perpetual federal-court intervention with ongoing state criminal proceedings is not appropriate here, after Texas' post-Decree procedural changes. Moreover, with a majority of County and judicial officers currently holding similar policy views, they may choose—completely separate from any federal decree—to continue as many of the procedures previously mandated by the Consent Decree that do not conflict with State law. In fact, the HCCCL Judges could have implemented changes to comply with S.B. 6 in 2022, had the Decree not been in place to stop them (*see* App. O) (ECF 801-2 at 2).

### 4. *Younger* abstention is not waived—it was raised early and repeatedly denied by the district court and this Court.

*Younger* abstention has a turbulent history in this case, but it was not waived by the Judges.

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 21-10766, 2022 U.S. App. LEXIS 10757, at *5-6 (5th Cir. 2022) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). Parties may make an express, clear repudiation of a right, or may waive a right implicitly by acting inconsistent with a claim to the right. *Id.* (quotation

omitted). Implied waiver requires conclusive evidence that a party "unequivocally manifests its intention to no longer assert its right." *Id.* (quotation omitted).

> The following elements must be met to find waiver: 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and 3) the party intended to relinquish its right.

*Broad. Satellite Int'l, Inc. v. Nat'l Dig. TV Ctr., Inc.*, 323 F.3d 339, 345 (5th Cir. 2003) (citing *R. Conrad Moore & Assoc., Inc. v. Lerma*, 946 S.W.2d 90, 93 (Tex. App.—El Paso 1997, writ denied)).

The case was first filed in May of 2016 (ECF 1). On November 9, 2016, the Judges moved to dismiss the complaint arguing, in part, that the district court should abstain under *Younger* (App. A) (ECF 80). That motion was denied. *See ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 734-37 (S.D. Tex. Dec. 16, 2016). On appeal, this Court also denied the Judges' abstention arguments, in its February and June 2018 panel decisions. *See ODonnell*, 882 F.3d at 538, *withdrawn and superseded on panel reh'g by ODonnell I*, 892 F.3d at 156, *overruled in part by Daves II*, 22 F.4th at 546.

Following remand, after the district court issued a revised injunction, fourteen HCCCL Judges appealed again, and again raised *Younger* abstention when they requested a stay of the revised injunction. *ODonnell II*, 900 F.3d at 222. While the stay was granted, the panel did not reach *Younger* abstention. *Id.* As the dissent noted, at that time *Younger* arguments were "recycle[d]" and had been "previously

36

rejected" by the Court, so the Court was "unlikely to find them persuasive in their repackaged forms." *Id*. at 232 (Graves, J., dissenting). After *Younger* abstention was repeatedly rejected, bail-bond reform cases experienced "[r]elative silence as to abstention," since such arguments "would reasonably have appeared preordained" to fail…." *Daves II*, 22 F.4th at 546-47.

Therefore, when the Judges' predecessors-in-office entered into the Consent Decree, *Younger* abstention was not a viable argument or a "right" that existed at that time. It was not until *Daves II* issued that new life was given to *Younger* arguments in Texas bail-reform cases. On this legal backdrop, the second and third elements of waiver also fail, as implying constructive or actual knowledge of a "right" to *Younger* abstention flatly contradicts this Court's precedent at the time.

Nor can waiver apply merely because the Judges' predecessors-in-office agreed to the Consent Decree (App. M) (ECF 821 at 2). As *Evans* discussed, principles of federalism prohibit allowing parties to bind their successors-in-office by mere agreement, alone. If that were true, public policy could be "codified" through federal decree and thereby withstand changes often brought about with elections. Such an attempt to circumvent our separation of powers cannot succeed. Finally, to the extent the Decree has a contractual component, parties cannot agree to violate state law (here, newly enacted State law). *Penny v. Orthalliance, Inc.*, No. 3:01-CV-1569-N, 2003 U.S. Dist. LEXIS 12495, at *2-3 (N.D. Tex. 2003) ("for the

benefit of the public," courts generally will not enforce contracts that contradict statutes or public policy).

*Younger* was not waived, expressly or implicitly, in this case, and mandamus relief is warranted.

### C. Mandamus relief is appropriate, where Texas has a vital interest in regulating pretrial criminal procedures.

Mandamus relief is appropriate in cases of "public importance and exceptional character." *Ex parte Peru*, 318 U.S. 578, 586 (1943). *U.S. v. Abbott*, 92 F.4th 570, 577-78 (5th Cir. 2024) (Ho, J., dissenting) (collecting cases).

Texas has a "vital interest" in regulating its "pretrial criminal procedures." *See Olali v. Johnson*, No. 26-40101, 2026 U.S. App. LEXIS 9953, at *2 (5th Cir. Apr. 7, 2026) (per curiam) (*Younger* abstention applied to plaintiff's constitutional challenges to Texas statute when ongoing misdemeanor case was pending, and plaintiff could raise constitutional challenge in state court) (quoting *Daves II*, 64 F.4th at 627 n.21). As discussed above, Texas has clearly stated its public policy with respect to pretrial release—the bedrock of which is individualized review. The Consent Decree contradicts Texas' revised pretrial bail procedures. This factor therefore supports mandamus relief.

### CONCLUSION AND PRAYER

Delaying a decision on abstention prolongs federal preemption of Texas' newly enacted bail-reform policies and procedures, prolongs federal control over

and interference with pending criminal cases, and prolongs Plaintiffs' interference and continued threats against the Judges should they act in compliance with Texas' new laws. There is no set of facts that will override the fundamental principles outlined in *Daves II*, the notions of comity and federalism that support abstention, or the requisites of and adequate procedures created by Texas' new statutes.

Because the Consent Decree interferes with the operation of pretrial proceedings, abstention is appropriate. Nor is there any need to delay in applying *Younger* when this Court has already given clear direction that it applies.

The Judges pray that the Court consider their request for mandamus relief and hold that the district court must consider *Younger* abstention on an expedited basis, and follow the Court's holding in *Daves II*. The Judges ask for all other relief to which they are entitled, at equity or law.

Respectfully Submitted,

GREER, HERZ & ADAMS, L.L.P.

By: /s/ Angie Olalde
    Joseph Russo (Lead Counsel)
    Fed. ID No. 22559
    State Bar No. 24002879
    jrusso@greerherz.com

    Angie Olalde
    Fed. ID No. 690133
    State Bar No. 24049015
    aolalde@greerherz.com

    1 Moody Plaza, 18th Floor
    Galveston, TX 77550-7947
    (409) 797-3200 (Telephone)
    (866) 422-4406 (Facsimile)

    *Counsel for*
    *Petitioners/Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.   This document complies with the word limit of FED. R. APP. P. 21(d) because this document contains **7,617** words which is within the 7,800 word-count limit, excluding the portions exempted by the Rules.

2.   This document complies with the typeface and type styles requirements of FED. R. APP. P. 21 and 32 because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

    */s/ Angie Olalde*
    Counsel for Petitioners-Appellants

Dated: June 23, 2026

## **CERTIFICATE OF SERVICE**

I certify that, on June 23, 2026, I filed the foregoing brief and its attachments with the Court's CM/ECF system. Pursuant to Federal Rule of Appellate Procedure 25, all counsel of record in this case were electronically served. Pursuant to Rule 21(a)(1), I also emailed a copy of the foregoing brief and its attachments to the chambers of the Honorable Lee Rosenthal.

*/s/ Angie Olalde*
Counsel for Petitioners-Appellants

No. _____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In re: Hon. Paula Goodhart, Hon. Jessica Padilla, Hon. Leslie Johnson, and Hon. Linda Garcia,

Petitioners.

On Petition for Writ of Mandamus
from the United States District Court
for the Southern District of Texas
No. 4:16-cv-1414

**APPENDIX TO**
**PETITION FOR WRIT OF MANDAMUS**

| Appendix | Description |
|----------|-------------|
| A. | Nov. 9, 2016 HCCCL Judges' Motion to Dismiss (ECF 80) |
| B. | Jan. 8, 2019 Appellees' Unopposed Motion to Vacate Stay, filed in No. 18-20466 (5th Cir. Jan. 8, 2019) (ECF 793-2) |
| C. | Nov. 21, 2019 Consent Decree (ECF 708) |
| D. | Nov. 6, 2025 Plaintiffs' Request for Scheduling Order and Discovery (ECF 770) |
| E. | Dec. 11, 2025 Motion to Vacate with Appendix (ECF 793, 793-1) |
| F. | April 16, 2026 Motion for Expedited Ruling on *Younger* Abstention (ECF 803 & 803-1) |

| G. | May 7, 2026 Plaintiffs' Response to Motion for Expedited Ruling on *Younger* Abstention (ECF 804, 804-1, 804-2) |
|---|---|
| H. | May 7, 2026 County's Joinder in Response to Motion for Expedited Ruling on *Younger* Abstention (ECF 805) |
| I. | May 8, 2026 Twelve Judges' Response to Motion for Expedited Ruling on *Younger* Abstention (ECF 806) |
| J. | May 11, 2026 Sheriff's Joinder in Response to Motion for Expedited Ruling on *Younger* Abstention (ECF 807) |
| K. | May 14, 2026 Reply in support of Motion for Expedited Ruling (ECF 812) |
| L. | May 26, 2026 Amended Scheduling and Docket Control Order (ECF 820) |
| M. | May 26, 2026 Order (ECF 821) |
| N. | Nov. 12, 2025 Transcript of Status Conference (ECF 791) |
| O. | Mar. 31, 2022 letter from Twelve Judges' counsel to Monitor, appended to Mar. 19, 2026 appendix to AG Objection to Monitor's Ninth Report (ECF 801-2) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 16-cv-01414 |
| HARRIS COUNTY, TEXAS, et al. | ) | (Consolidated Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

**HARRIS COUNTY CRIMINAL COURT AT LAW JUDGES' MOTIONS TO DISMISS:**
**(1)  UNDER *YOUNGER* ABSTENTION AND OTHER 12(B)(1) GROUNDS**
**(2)  UNDER 12(B)(6) FOR FAILURE TO STATE A CLAIM**


**CONFIDENTIAL PORTIONS REDACTED**

**TABLE OF CONTENTS**

I. INTRODUCTION .......................................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ................................... 6

III. STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT ....................... 7

    A. Standard for Deciding Motions to Dismiss Under Rule 12(b)(1) ........................ 8

    B. Standard for Deciding Motions to Dismiss Under Rule 12(b)(6) ......................... 8

IV. BACKGROUND ........................................................................................... 8

    A. Historical Overview of the Harris County Misdemeanor Pretrial System ............. 8

    B. The Current Harris County Misdemeanor Pretrial System ................................ 13

        1. Arrest.................................................................................................... 13

        2. Interview with Pretrial Services................................................................ 15

        3. Probable Cause, Bail & Personal Bond Proceeding ................................ 17

        4. County Criminal Court at Law Hearing.................................................... 20

    C. The Named Plaintiffs' Criminal Proceedings ................................................ 21

        1. Plaintiff ODonnell.................................................................................. 21

        2. Plaintiff Ford......................................................................................... 23

        3. Plaintiff McGruder................................................................................ 24

V. ARGUMENT AND AUTHORITIES............................................................ 24

VI. Plaintiffs' Claims Are Core *Younger* and Should be Dismissed (Question 1) ................. 25

    A. Plaintiffs' Claims Meet Every *Younger* Factor.......................................... 26

        1. Plaintiffs Were In Ongoing Criminal Proceedings When They Filed Suit.......................................................................................... 26

        2. Plaintiffs' Claims Implicate Important State Interests.............................. 28

        3. Plaintiffs Have an Adequate Opportunity to Challenge Their Bail ........... 29

        4. Plaintiffs' Case Invokes the Core Policy Behind *Younger* Abstention.......................................................................................... 30

    B. Plaintiffs' Constitutional Claims Challenging the Bail Procedure in Harris County Should Be Dismissed Because Plaintiffs Have Not Plausibly Pled a Claim for Relief (Question 2) ........................................................ 32

        1. Plaintiffs' Claim Is an Excessive Bail Challenge That Has Been Routinely Rejected................................................................................ 32

        2. Plaintiffs' Due Process Claim Should Be Dismissed Because Plaintiffs Have Failed to Plausibly Plead a Violation of the Due Process Clause ...................................................................................... 34

        3. Plaintiffs' Equal Protection Claim Should Be Dismissed Because It Is Only a Disparate Impact Claim and There Is a Rational Basis for

Case 4:16-cv-01414     Document 802-1     Filed on 09/06/24 in TXSD     Page 26 of 59

the Bail Procedure in Harris County ..........................................................36

C.    Plaintiffs' Claim for Injunctive Relief Should Be Dismissed Because it is Obviated by the Recent Changes to the Bail Procedure in Harris County (Question 3) ..................................................................................................38

D.    Plaintiffs' Claims Against the County Criminal Court at Law Judges for "Implementing" the Bail Procedure in Harris County Should Be Dismissed (Question 4) ..........................................................................................40

    1.    The Bail Procedure Promulgated by the County Criminal Court at Law Judges Merely Restates a Federal Court Order and Texas State Law ......................................................................................40

    2.    Plaintiffs' Claims Against the County Criminal Court at Law Judges for "Implementing" the Bail Procedure in Harris County Should Be Dismissed Because They Are Legislatively Immune ..............42

E.    Plaintiffs' Claims Against the County Criminal Court at Law Judges for Attorney's Fees or Other Costs Should Be Dismissed Because They Are Judicially Immune (Question 5) ................................................................43

F.    Plaintiffs' Constitutional Claims Should Be Dismissed Because They Do Not Have Standing to Bring Them and Because They Do Not Have Plausible Claims (Question 6) ..................................................................44

    1.    Plaintiff ODonnell Is Currently a Fugitive and Had the Ability to Pay Her Bail When She Filed Suit...............................................45

    2.    Plaintiffs ODonnell and Ford Were Not Held in Jail Solely Due to Inability to Pay.....................................................................47

    3.    Plaintiff McGruder Was Not Held in Jail ...............................................47

    4.    None of the Plaintiffs have a Plausible Claim for Relief Based on the Circumstances They Experienced .......................................48

VII.    CONCLUSION..................................................................................................49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagwell v. Dretke*,
376 F.3d 408 (5th Cir. 2004) ............................................................................... 45

*Ballard v. Wall*,
413 F.3d 510 (5th Cir. 2005) ......................................................................... 43, 44

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 8

*Bell v. Wolfish*,
441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ............................... 28, 37

*Bridgeport Guardian, Inc. v. Delmonte*,
553 F. Supp. 601 (D. Conn. 1982) ...................................................................... 36

*Bright v. Holder*,
649 F.3d 397 (5th Cir. 2011) ............................................................................... 46

*Broussard v. Parish of Orleans*,
318 F.3d 644 (5th Cir. 2003) ............................................................................... 33

*Buffin v. City and Cty. of San Francisco*,
2016 WL 374230 (N.D. Cal. Feb. 1, 2016) ........................................................ 27

*Companioni v. Barr*,
962 F.2d 461 (5th Cir. 1992) ............................................................................... 38

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ............................................................................................... 35

*Degen v. U.S.*,
517 U.S. 820 (1996) ............................................................................................. 45

*Den Norseke Stats Oljeselskap As v. HeereMac Vof*,
241 F.3d 420 (5th Cir. 2001) ................................................................................. 8

*Duran v. Elrod*,
713 F.2d 292 (7th Cir. 1983) ................................................................................. 5

*Epps v. Levine*,
457 F. Supp. 2d 561 (D. Md. 1978) ..................................................................... 28

*Ex Parte Young*,
209 U.S. 123 (1908) ............................................................................................... 1

*Forrester v. White*,
484 U.S. 219 (1988) ..................................................................................................... 43

*Frothingham v. Mellon*,
262 U.S. 447 (1923) ..................................................................................................... 45

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ............................................................................................... 29, 35

*Gideon v. Wainwright*,
371 U.S. 335 (1963) ............................................................................................... 15, 18

*Giri v. Keisler*,
507 F.3d 833 (5th Cir. 2007) ....................................................................................... 45

*Hein v. Freedom From Religion Found.*,
551 U.S. 587 (2007) ............................................................................................... 44, 45

*Hernandez v. Carbone*,
567 F. Supp. 2d 320 (D. Conn. 2008) .......................................................................... 26

*Jackson v. Hickman*,
No. H-16-1721, Dkt. No. 7 (S.D. Tex. Sept. 30, 2016) .......................................... 26, 33

*Kadrmas v. Dickinson Public Schools*,
487 U.S. 450 (1988) ..................................................................................................... 37

*Lee v. Evans*,
41 F.3d 1513, 1994 WL 651959 (9th Cir. 1994) .......................................................... 33

*M.D. v. Perry*,
799 F. Supp. 2d 712 (S.D. Tex. 2011) .......................................................................... 25

*Malina v. Gonzales*,
994 F.2d 1121 (5th Cir. 1993) ..................................................................................... 44

*Manley v. Texas Southern Univ.*,
107 F. Supp. 3d 712 (S.D. Tex. 2015) .......................................................................... 36

*Marbury v. Madison*,
1 Cranch 137 (1803) ..................................................................................................... 45

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) ..................................................................................................... 45

*Middlesex Cnty. Ethics Comm,*
457 U.S. 423 (1982) ..................................................................................................... 25

*Mireles v. Waco*,
502 U.S. 9 (1991) ......................................................................................................... 43

*Molinaro v. New Jersey*,
  396 U.S. 365 (1970) ................................................................................................... 45

*Mounkes v. Conklin*,
  922 F. Supp. 1501 (D. Kan. 1996) ............................................................................ 26

*Mudd v. Busse*,
  437 F. Supp. 505 (N.D. Ind. 1977), *aff'd*, 582 F.2d 1283 (7th Cir. 1978) ............. 26

*Nash v. Consolidated City of Jacksonville, Duval Cnty., Fla.*,
  895 F. Supp. 1536 (M.D. Fla. 1995) ......................................................................... 36

*Nat'l Advert. Co. v. City of Miami*,
  402 F.3d 1329 (11th Cir. 2005) ................................................................................. 39

*NiGen Biotech, LLC v. Paxton*,
  804 F.3d 389 (5th Cir. 2015) ....................................................................................... 1

*Priester v. Lowndes Cnty.*,
  354 F.3d 414 (5th Cir. 2004) ..................................................................................... 36

*Pugh v. Rainwater*,
  572 F. 2d 1053 (5th Cir. 1978) ...................................................................... 28, 33, 37

*Ramming v. U.S.*,
  281 F.3d 158 (5th Cir. 2001) ....................................................................................... 8

*Roberson v. Richardson*,
   Agreed Final Judgment. No. H-84-2974 (S.D. Tex. Nov. 25, 1987) ...................... 10

*Rodriguez v. Providence Cmty. Corr., Inc.*,
  155 F. Supp. 3d 758 (M.D. Tenn. 2015), *appeal dismissed* (Mar. 15, 2016)....................................... 27

*Ruiz v. Lynaugh*,
  811 F.2d 856 (5th Cir. 1987)....................................................................................... 4

*Schlib v. Kuebel*,
  404 U.S. 357 (1971) ..................................................................................................... 9

*Simon v. Woodson*,
  454 F.2d 161 (5th Cir. 1972).................................................................................... 34

*Stack v. Boyle*,
  342 U.S. 1 (1951) ............................................................................................ 9, 33, 35

*Stump v. Sparkman*,
  435 U.S. 349 (1978) .................................................................................................. 43

*Supreme Court of Virginia v. Consumers Union of U.S., Inc.*,
  446 U.S. 719 (1980) .................................................................................................. 42

v

*U.S. v. Broce*,
488 U.S. 563 (1989) ..................................................................................................... 47

*U.S. v. Cordero*
166 F.3d 334, 1998 WL 852913 (4th Cir. 1998)......................................................... 33

*U.S. v. Jessup*,
757 F.2d 378 (1st Cir. 1985) (abrogated on other grounds by *U.S. v. O'Brien*, 895
F.2d 810 (1st Cir. 1990)) ............................................................................................. 33

*U.S. v. McConnell*,
842 F.2d 105 (5th Cir. 1988)............................................................................. 9, 33, 49

*U.S. v. Tirado*,
72 F.3d 130, 1995 WL 684553 (6th Cir. 1995)........................................................... 33

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982) ............................................................................................... 44, 45

*Wallace v. Kern*,
520 F.2d 400 (2d Cir. 1975) ....................................................................................... 29

*Welchen v. Cty. of Sacramento, et al.*,
No. 2:16-cv-00185, 2016 WL 5930563 (E.D. Cal. Oct. 11, 2016) ........................ 27, 38

*Younger v. Harris*,
401 U.S. 37 (1971) ........................................ 2, 7, 24, 25, 26, 27, 28, 29, 30, 31, 33, 38, 42, 49

**Statutes**

42 U.S.C. § 1983..................................................................................................... 5, 36, 42, 44

42 U.S.C. § 1988..................................................................................................... 5, 40, 43, 44

TEX. CODE CRIM. PROC. art. 4.07 ........................................................................................ 14

TEX. CODE CRIM. PROC. art. 2.09 ........................................................................................ 10

TEX. CODE CRIM. PROC. art. 15.17 ............................................................................. 17, 18, 35

TEX. CODE CRIM. PROC. art. 17.033 .................................................................................... 17

TEX. CODE CRIM. PROC. art. 17.15 ..................................................... 1, 5, 10, 18, 25, 35, 40 41

TEX. GOV'T CODE ANN. Ch. 54 ............................................................................................ 10

TEX. GOV'T CODE ANN § 25.1031 ........................................................................................ 14

TEX. GOV'T CODE ANN § 25.1033........................................................................................ 14

TEX. HEALTH & SAFETY CODE ANN. § 481.102 .................................................................. 23

vi

TEX. HEALTH & SAFETY Code ANN. § 481.112 ...................................................................... 23

TEX. HEALTH & SAFETY CODE ANN. § 481.115 ..................................................................... 23

TEX. PENAL CODE § 12 ............................................................................................................ 13

TEX. PENAL CODE § 20.02 ....................................................................................................... 13

TEX. PENAL CODE § 21.08 ....................................................................................................... 13

TEX. PENAL CODE § 22.01 ....................................................................................................... 13

TEX. PENAL CODE § 22.05 ....................................................................................................... 13

TEX. PENAL CODE § 22.07 ....................................................................................................... 13

TEX. PENAL CODE § 38.10 ....................................................................................................... 13

TEX. PENAL CODE § 42.01 ....................................................................................................... 13

TEX. PENAL CODE § 42.09 ....................................................................................................... 13

TEX. PENAL. CODE § 49.04 ...................................................................................................... 13

TEX. PENAL CODE § 521.457 ................................................................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 8

Fed. R. Civ. P. 60(b) ................................................................................................................. 4

Local Rule of Court (as amended Aug. 12, 2016), Rule 2 ...................................................... 14

Local Rule of Court (as amended Aug. 12, 2016), Rule 4 ................................................. 11, 18, 20, 35, 40

Local Rule of Court (as amended Aug. 12, 2016), Rule 12 ............................................. 7, 8, 12, 19, 30, 39

Local Rule of Court (as amended Aug. 12, 2016), Rule 24 ...................................................... 15

vii

The Harris County Criminal Court at Law Judges (Defendants Goodhart, Harmon, Fleming, Clinton, Harris, Standley, Derbyshire, Karahan, Wilkerson, Spjut, Bull, Brown, Smyth, Fields, Hughes, and Garcia) (collectively the "County Criminal Court at Law Judges") request that the Court dismiss Plaintiffs ODonnell, McGruder, and Ford's (collectively "Plaintiffs") claims.

## I.  INTRODUCTION

Bail, which Plaintiffs seek to abolish, has been present in the American criminal justice system since the mid-1600s.  Both the United States and Texas Constitutions recognize the use of bail.  Because both the United States and Texas govern the system, the bail procedure in Harris County is governed by three specific sources of law: (1) the Texas Code of Criminal Procedure, (2) a United States District Court order known as the *Roberson* Order, and (3) the County Criminal Courts at Law Local Rules of Court ("Local Rules of Court").  Plaintiffs' suit seeks to challenge the constitutionality of this long-recognized system, which, as attacked, simply repeats the Texas Code of Criminal Procedure[1] and the *Roberson* Order.

Plaintiffs' First Amended Class Action Complaint ("Amended Complaint") appears to bring three separate challenges.  First, Plaintiffs allege that the bail procedure in Harris County is unconstitutional as written *de jure* because it fails to require consideration of an arrestee's ability to pay bail.  Second, Plaintiffs allege that the Hearing Officers and County Court at Law Judges are *de facto* not following the rules as written.  Third, Plaintiffs allege that the ability to pay bail should be the overriding factor when bail is set, arguing in effect that the Eighth Amendment's prohibition of excessive bail was somehow converted into a prohibition of unaffordable bail. Plaintiffs' claims seek to intervene in ongoing state judicial proceedings, ignore the plain text of

---

[1] Since Plaintiffs are challenging directly Texas Code of Criminal Procedure Article 17.15, the Texas Attorney General is clearly a necessary and proper party.  *See Ex Parte Young*, 209 U.S. 123, 161 (1908); *see also NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("[Plaintiff] sued the Attorney General [of Texas] in his official capacity, satisfying the first requirement of *Ex [P]arte Young*.")

1

the challenged bail procedure, and make a constitutional challenge that is directly contrary to long-established and controlling law. These claims should be dismissed.

Plaintiffs' specific claims against the County Criminal Court at Law Judges are directed both at their role in implementing the bail procedure *de jure*, and for the *de facto* enforcement of it. Dkt. 54 at 41. These challenges to ongoing judicial proceedings invoke the core policy of *Younger v. Harris* abstention – allowing the state judicial system to operate free from federal court intervention – and therefore should be dismissed. At bottom, Plaintiffs seek to federalize all ongoing pretrial state misdemeanor proceedings in Harris County. This is antithetical to our federalist system and, consequently, federal courts have repeatedly rejected such claims in the past. Plaintiffs improperly demand that the Court abandon this well-established federal procedure and case law.

Plaintiffs were in ongoing criminal proceedings at the time they filed their Original Complaint. They challenge bail procedures that necessarily implicate important state interests in ensuring that individuals charged with criminal offenses appear at their hearings. Key to the *Younger* analysis, the challenged bail procedure affords an adequate opportunity for Plaintiffs to raise their constitutional challenge before a County Criminal Court at Law Judge and through a state *habeas corpus* action if necessary. Notably, after filing this case, one of the Plaintiffs, Loetha McGruder, employed this very mechanism to successfully challenge her bail the business day after the alleged constitutional violation by a Hearing Officer. Ms. McGruder received a personal bond from one of the County Criminal Court at Law Judges and was released that day without being required to provide any financial security. Accordingly, Plaintiffs' claims should be dismissed in their entirety on *Younger* abstention grounds given the ongoing state proceedings, important state interests, and adequate opportunity for relief within the current Harris County criminal justice

system.

In addition to their claims against the bail procedure in practice, Plaintiffs also challenge the procedure *de jure* as written. These claims should be dismissed for failure to plead a plausible claim because the procedure is constitutional as written. Plaintiffs' core complaint is that the imposition of bail results in a constitutional violation when the defendant is unable to pay that amount. This is nothing more than a reworded excessive bail argument that has been resoundingly, and repeatedly, rejected. The cases interpreting the excessive bail provision of the U.S. Constitution have uniformly held that bail is not excessive merely because a defendant cannot pay it. Instead of taking this dispositive precedent on directly, Plaintiffs seek to invent a new right – "affordable bail" – insert it into the general provisions of the Fourteenth Amendment, and use it *sub silentio* to overrule the specific provision in the Eighth Amendment and the half-century of jurisprudence interpreting it. This approach should be rejected and Plaintiffs' claims should be dismissed under the controlling Eighth Amendment precedent.

Plaintiffs' due process claim fails because the bail procedure as written affords all arrestees the opportunity for a proceeding, within 24 hours of arrest, before an unbiased Hearing Officer who is required to consider the arrestee's ability to pay before setting bail. This procedure is clearly within the 48 hour due process requirement set by the Supreme Court. Furthermore, Plaintiffs' equal protection claim fails because it is a disparate impact claim, not a disparate treatment claim, and therefore cannot stand under applicable federal statutes and many federal court holdings. Plaintiffs' equal protection claim should also be dismissed because the bail procedure in Harris County is rationally related to the legitimate government interest in securing attendance at trial, as has been recognized by the law since at least the eighteenth century. Plaintiffs' claim is subject to the rational basis test because wealth is not a suspect class. Thus,

3

Plaintiffs have no plausible constitutional claim against the bail procedure as written.

Separate from the fact that the bail procedure in Harris County (and elsewhere in Texas as set forth in the Texas Code of Criminal Procedure) is and was constitutional, Plaintiffs' claim for injunctive relief should be dismissed because it was obviated by two events preceding Plaintiffs' suit against the County Criminal Court at Law Judges. First, the Local Rules of Court were supplemented in August 2016 to provide that personal (i.e. non-financial) bonds should be presumptively granted for certain common non-violent misdemeanors absent good cause. This rule change moots Plaintiffs' claim that nonviolent misdemeanor offenders will be held in jail *solely* due to inability to pay. Second, and in conjunction with this new rule, the County Criminal Court at Law Judges sent a letter to the Hearing Officers reminding them to use their full discretion in setting bail according to the five *Roberson* factors and applicable Texas law, including considering ability to pay. This moots Plaintiffs' request to enjoin the County Criminal Court at Law Judges from overseeing a practice whereby Hearing Officers allegedly failed to consider ability to pay as required by the *Roberson* Order, the Texas Code of Criminal Procedure, and the Local Rules of Court. Accordingly, Plaintiffs' request for a preliminary injunction should be dismissed.

Additionally, the specific claims against the County Criminal Court at Law Judges for "implementing" the bail procedure should be dismissed for two reasons. First, the County Criminal Court at Law Judges did not *create* the challenged bail procedure. The rules under attack merely repeat existing state law and federal court order.[2] The Local Rules of Court restate the

---

[2] Indeed, if Plaintiffs now believe the *Roberson* Order is unconstitutional, the proper procedure would be to move to modify the *Roberson* Order. *See Ruiz v. Lynaugh*, 811 F.2d 856, 860 (5th Cir. 1987) ("It is well settled that consent decrees once entered are not inviolate . . . . Most requests for modification are made by way of Fed. R. Civ. P. 60(b). The decision to modify or not to modify a consent decree lies within the discretion of the district court. Modification of a consent decree however is not a remedy to be lightly awarded. The district court's discretionary ruling is not unfettered; it is guided by certain legal principles. It has been stated that 'modification under rule 60(b) requires that 'significant change of circumstances shall have occurred since the date of the final

4

rules promulgated by the Texas Legislature and those ordered by the United States District Court for the Southern District of Texas in the *Roberson* Order. A cause of action cannot exist against the County Criminal Court at Law Judges under § 1983 for doing what they are compelled to do under state law and federal court order. Second, to the extent that the County Criminal Court at Law Judges could be considered the policymakers for the challenged system—which they are not—they are legislatively immune from suit for their role in promulgating the Local Rules of Court. The County Criminal Court at Law Judges are similarly immune from Plaintiffs' claims for attorney's fees under 42 U.S.C. § 1983 for a violation in "enforcing" the bail procedure set by *Roberson* and by Texas Code of Criminal Procedure art. 17.15. Plaintiffs are challenging the County Criminal Court at Law Judges' role in setting bail, a traditional judicial function. A claim for attorney's fees premised on judicial conduct is barred by the explicit language of 42 U.S.C. § 1988 and the principles of judicial immunity. Given the County Criminal Court at Law Judges' immunity, and the controlling case law and statute, these claims are implausible and should be dismissed.

Finally, Plaintiffs' Amended Complaint should be dismissed because all three named Plaintiffs lack standing to bring suit for the complained injury. Plaintiff ODonnell lacks standing because she is a fugitive from justice, and because she had the ability to pay bail based on the financial information she provided. Plaintiff Ford also lacks standing because he was not held in jail solely because of his inability to pay, but rather because he is a proven flight risk with an extensive criminal record who could not offer adequate assurance that he would appear in court. Lastly, Plaintiff McGruder lacks standing because she is a perfect illustration of how the bail

---

judgment to warrant its modification.'") (quoting *Duran v. Elrod*, 713 F.2d 292, 296 (7th Cir. 1983)) (internal citations omitted).

procedure in Harris County should work – she had her initial bond set by a Hearing Officer and was able to challenge it again the next business day before a County Criminal Court at Law Judge. Ms. McGruder was granted a personal bond at this second judicial proceeding and released. She was not held in jail solely due to her inability to pay and therefore has no injury in fact to bring the claim. All three Plaintiffs lack standing and therefore their claims should be dismissed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff ODonnell filed suit on May 19, 2016 (Dkt. 3) against Harris County, Ron Hickman ("Sheriff Hickman") and Hearing Officers Hagstette, Licata, Nicholas, Villagomez, and Wallace challenging the constitutionality of the bail procedure in Harris County. Plaintiffs McGruder and Ford filed similar complaints on May 21, 2016 (Civ. No. 4:16-cv-1436, Dkt. 1), and their cases were consolidated into the present action on August 18, 2016. Dkt. 41. After a hearing on motions to dismiss, Plaintiffs amended their complaint to add the County Criminal Court at Law Judges as defendants. Dkt. 54.

Plaintiffs' suit alleges that various parts of the bail procedure in Harris County violate the Due Process and Equal Protection Clauses of the United States Constitution. First, Plaintiffs allege that Defendants fail to consider a misdemeanor arrestee's ability to pay when setting bail according to the bail procedure. Specifically, Plaintiffs claim that as a matter of custom, the Defendant Hearing Officers fail to consider ability to pay when setting bail and that the County Criminal Court at Law Judges are widely aware of this practice. Second, Plaintiffs allege that the County Criminal Court at Law Judges are liable for implementing and enforcing the bail procedure. Specifically, Plaintiffs allege that the bail procedure violates due process because some misdemeanor arrestees are detained pretrial for approximately 24 hours without any inquiry into their ability to pay bail. Additionally, Plaintiffs claim that the bail procedure violates equal protection because misdemeanor arrestees who have the ability to post bail are not detained before

6

their probable cause proceedings, while those who are unable to pay are detained for that 24 hour period.

Motions to dismiss are due by November 9, 2016. Plaintiffs' response is due by November 18, and replies to the response are due November 25, 2016. A hearing on these Motions is set for November 28, 2016.

## III. STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

(1) Should the Court dismiss this case under the *Younger* abstention doctrine given that criminal prosecutions were ongoing and hearings were in progress against each of the Plaintiffs at the time the suit was filed, bail is fundamentally a state function, and Plaintiffs have ample opportunity to raise their constitutional challenges in those state proceedings?

(2) Should the Court dismiss Plaintiffs' constitutional claims against the County Criminal Court at Law Judges for failing to plausibly plead a claim for relief, given that Plaintiffs' position have been unanimously rejected under Eighth Amendment precedent, the bail procedure affords misdemeanor arrestees due process in the form of two hearings, typically within 48 hours of arrest, and Plaintiffs' equal protections claims are deficient because they are disparate impact claims and there is a rational basis for the bail procedure in Harris County?

(3) Should the Court dismiss Plaintiffs' claim for injunctive relief given that the current system, as amended on August 12, 2016, together with the ongoing implementation of the Arnold risk assessment tool, obviates any claim for injunctive relief?

(4) Should the Court dismiss Plaintiffs' claim against the County Criminal Court at Law Judges given that the bail procedure in Harris County restates, virtually verbatim, *Roberson* and state law, and the County Criminal Court at Law Judges would, in any event, be legislatively immune?

(5) Should the Court dismiss Plaintiffs' claim for attorney's fees and other costs, given that the County Criminal Court at Law Judges are judicially immune from paying any monetary damages, including attorney's fees?

(6) Should the Court dismiss Plaintiffs' Amended Complaint as a whole for lack of standing, given that none of the three named Plaintiffs was directly injured by the bail procedure when Plaintiff ODonnell was a fugitive with the ability to pay her bail amount, Plaintiff Ford's criminal history rendered a personal bond inappropriate, and Plaintiff McGruder received a personal bond and was released without providing financial security.

7

### A. Standard for Deciding Motions to Dismiss Under Rule 12(b)(1)

Issues (1) and (3)-(6) are raised under Rule 12(b)(1). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norseke Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Standard for Deciding Motions to Dismiss Under Rule 12(b)(6)

Issue (2) is raised under Rule 12(b)(6). It is proper to dismiss a complaint under Fed. R. Civ. P. 12(b)(6) when the complaint fails to set forth allegations sufficient to support a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" to satisfy the Federal Rules. *Twombly*, 550 U.S. at 555.

## IV. BACKGROUND

### A. Historical Overview of the Harris County Misdemeanor Pretrial System

Bail originated in England over 400 years ago and has been present in the American criminal justice system since inception. T. Schnacke, M. Jones & C. Brooker, *The History of Bail and Pretrial Release*, Pretrial Justice Institute, slip op. at 1 (Sept. 24, 2010). The English colonies generally applied English law verbatim, and bail was no exception. *Id.* at 4. Indeed, as early as 1641, Massachusetts passed its Body of Liberties that included a right to bail for non-capital cases. *Id.* at 4. Pennsylvania enacted a similar provision in 1682, which became the model for almost every other American state. *Id.* at 4-5.

8

Unlike innovative Constitutional litigation, such as marriage equality decisions, bail is specifically addressed in the United States Constitution.  The issue raised by Plaintiffs is not novel; it has been litigated since the beginning of our Republic.  The Supreme Court has never found an absolute right to affordable bail.  *See U.S. v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988).  Instead, the Constitution states that "[e]xcessive bail shall not be required."[3]  U.S. CONST. amend. VIII.  The Supreme Court has long held that bail is not unconstitutional if it is set in an amount reasonably calculated to ensure a defendant's presence at trial.  *See Stack v. Boyle*, 342 U.S. 1, 5 (1951).  Following this reasoning, the Fifth Circuit and many other courts have held that bail is not excessive solely because a defendant cannot pay it.  *McConnell*, 842 F.2d at 107.  Plaintiffs propose a radical new jurisprudence in which the general terms of the Fourteenth Amendment should overrule the specific text and controlling case law of the Eighth Amendment.  Under this view – directly contrary to Incorporation Theory – the general terms of the Fourteenth Amendment would directly, but silently, overrule more than a half-century of contrary established case law under the Eighth Amendment's specific excessive bail prohibition.[4]  The Fourteenth Amendment does no such thing.  At most, it incorporates the Eighth Amendment and this established precedent to apply it to the States; it does not overwrite it.  *See Schlib v. Kuebel*, 404 U.S. 357, 365 (1971) ("Bail, of course, is basic to our system of law, and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment.") (internal

---

[3] The Eighth Amendment clearly contemplates the use of financially-based bail.  Plaintiffs have not directly asserted any Eighth Amendment claim that specific bail amounts were excessive, but as discussed in Section B.1.i, the substance of their argument is that all bail is excessive, and therefore unconstitutional, for the poor.

[4] If followed, this logic could be used to subsume and overrule any of the first ten amendments.  For example, those who are wealthy can afford to speak "more," by using broadcast media and advertisements.  Under Plaintiffs' approach, wealthier individuals would need to be prohibited from purchasing air time so that the poor would have the same amount of speech.  Similarly, wealthier arrestees can afford to choose their specific counsel; indigent individuals would have to be given the same choice, including access to the most expensive counsel, so that they are not treated differently than wealthier defendants.

citations omitted).

Pursuant to our federalist system, the Texas Constitution provides additional protections for defendants, including the right to bail in non-capital cases, and that it not be excessive. TEX. CONST., art. I, §§ 11, 13.[5] The Texas Legislature codified these requirements in the Code of Criminal Procedure, listing five factors that must be considered when setting bail. TEX. CODE. CRIM. PROC. art. 17.15 (Vernon 2015). Under Article 17.15, the magistrate (i.e., a Hearing Officer[6]) setting bail considers the following five, non-dispositive factors: "1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with. 2. The power to require bail is not to be so used as to make it an instrument of oppression. 3. The nature of the offense and the circumstances under which it was committed are to be considered. ***4. The ability to make bail is to be regarded, and proof may be taken upon this point.*** 5. The future safety of a victim of the alleged offense and the community shall be considered." TEX. CODE. CRIM. PROC. art. 17.15.

In 1987, following extensive litigation in the Southern District of Texas, the bail procedure in Harris County was mandated pursuant to a federal court order known as the "*Roberson* Order" to set bail according to a specified Bail Schedule along with consideration of specific factors during the probable cause proceeding. Ex. A, *Roberson v. Richardson*, Agreed Final Judgment, No. H-84-2974 (S.D. Tex. Nov. 25, 1987) ("*Roberson* Order"). This system exists to eliminate prejudice and create uniformity among courts, so results are not forum dependent, by utilizing a uniform

---

[5] Article I, Section 11 of the Texas Constitution states: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." Article I, Section 13 prohibits excessive bail: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

[6] A Harris County Criminal Law Hearing Officer is a magistrate under the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 2.09 (Vernon 2005 and Supp. 2016); TEX. GOV'T CODE ANN. Ch. 54, Subch. L (Vernon 2013).

Bail Schedule and considering five factors, including the defendant's ability to pay, which are each to be considered when setting bail. The *Roberson* Order also requires a proceeding to occur within 24 hours of arrest where a Hearing Officer must make bail determinations according to the five factors that are substantively the same as those in the Texas Code of Criminal Procedure, including "the ability to make bail." Ex. A, *Roberson* Order, at 3.[7]

The bail procedure in Harris County, promulgated in part through the Harris County Criminal Courts at Law Rules of Court (the "Local Rules of Court"), rests on the foundation of common law, the *Roberson* Order, and the Texas Code of Criminal Procedure, repeating the exact same factors specifically enumerated in the *Roberson* Order and Texas Code of Criminal Procedure, including "the ability to make bail." Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 4.2.3.1.3. As discussed, the fundamental purpose of bail is to provide security that will increase the "defendant's probability of making all court appearances and not committing any new crimes." Schnacke at 1, 5. The United States' bail system, Harris County included, has proven that bail is an extremely effective tool in achieving this result. *See, e.g.*, Ex. C, Robert G. Morris, *Pretrial Release Mechanisms in Dallas County, Texas: Differences in Failure to Appear (FTA) and Associated Costs of FTA*, RESEARCH REPORT, 2012 DATA UPDATE (Dec. 2014), (the "Dallas Study") (finding that misdemeanor defendants who obtained pretrial services bonds failed to appear approximately 37% of the time and that defendants who were carefully selected to receive pretrial services bonds were still 27% more likely to fail to appear than defendants who were released on commercial bonds).[8] This study is just one of many examples available in the

---

[7] These are predominantly the same factors required by the Texas Code of Criminal Procedure, see note 2, *supra* at 6, and are codified in the Local Rules of Courts, *see* Ex. B, Local Rules of Court (as amended Aug. 12, 2016). Plaintiffs here are attempting to argue that one factor, the ability to pay bail, should control all others. This contention directly contradicts the constitutions and laws of the United States and Texas.

[8] The Dallas Study concluded that in large counties in Texas, bail bonds were the most cost-effective method of pretrial release. The Dallas Study examined over 22,000 defendants who were released, pretrial, from county jails in 2008

11

literature showing that bail secures appearance and helps prevent the chaos inherent in a "catch and release" system.

The current bail procedure in Harris County recognizes these benefits and operates far beyond the threshold required under the common law, the Texas Code of Criminal Procedure, and the *Roberson* Order. The system is characterized by extremely rapid judicial proceedings, such that an individual generally receives two judicial proceedings within 48 hours, first before a Hearing Officer, and then before a County Criminal Court at Law Judge.[9] In addition to the current procedure, which exceeds constitutional requirements, Harris County is working to improve its system to provide additional safeguards. For example, the Local Rules of Court were recently revised[10] to presumptively grant personal bonds for the most common non-violent misdemeanor offenses. Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 12. In addition to the rule change, all Hearing Officers were once again cautioned to consider all five factors recited in *Roberson*. Ex. D, Letter from County Courts at Law Judges to Hearing Officers regarding Magistration Duties and Discretion, Aug. 8, 2016. Harris County has also been working under a grant from the McArthur Foundation to improve its pretrial system and is currently working with the Laura and John Arnold Foundation to implement significant changes to the pretrial procedure, including the use of a new risk assessment tool.[11]

---

and 12,000 defendants who were released, pretrial, from county jails in 2012, and concluded that those released on commercial bail bonds were more likely to show up to court than those released via other pretrial methods, including pretrial services bonds. Dallas County pretrial services bonds are issued to low-risk defendants who are accused of non-violent crimes. The county may waive the fee associated with pretrial services bond, so that the bond is effectively the same as the personal bond in Harris County. The Dallas Study concluded that their findings were **"highly suggestive that FTA is much more likely among [those] released via pretrial services bonds."**

[9] This is in stark contrast to the bulk of cases brought by Plaintiffs' counsel, Equal Justice for All, which typically challenge systems where there is no meaningful review of bail for up to 8 or 9 days.

[10] Consistent with the *Roberson* Order and the Texas Code of Criminal Procedure, the Local Rules of Court have always required that ability to pay be a factor considered before setting bail.

[11] As will be discussed in more detail, one substantial change to the current system is the implementation of the Laura and John Arnold Foundation's risk assessment tool for use in pretrial risk determinations. Harris County is in the

12

### B.    The Current Harris County Misdemeanor Pretrial System

The current procedure in Harris County is constitutionally valid. Nonetheless, and despite significant improvements on the horizon, Plaintiffs challenge its constitutionality as discussed below.[12]

### 1.    Arrest

The Harris County criminal misdemeanor process starts with an arrest following an alleged criminal wrongdoing for a Class A or B misdemeanor.[13]  Class A and Class B misdemeanors fall roughly into two general categories: those that involve a conscious disregard for the law and those that involve public risk.  The first category includes offenses like driving with a suspended license or failing to appear at hearings, thereby frustrating the normal operation of the criminal justice system.  *See* TEX. PENAL CODE §§ 521.457, 38.10; *see also* Ex. E (listing the most common Class A and B misdemeanors).[14]  The public-risk misdemeanors include driving while under the influence of drugs or alcohol, assault, making a terroristic threat (i.e., threatening violence with the intent to put someone in fear of death), violating a family violence protective order by committing family violence, indecent exposure, cruelty to animals, and deadly or disorderly conduct by discharging a firearm.  *See* TEX. PENAL CODE §§ 20.02, 21.08, 22.01, 22.05, 22.07,

---

process of implementing this tool and is scheduled to begin using it in early 2017. Work to implement this tool began long before Plaintiffs filed their suits.

[12] The Plaintiffs' Petition includes various inflammatory charges that are inaccurate and irrelevant. For example, the Plaintiffs plead that 55 people died in custody during an eight year period.  Dkt. 54 at ¶ 117.  Plaintiffs omit the fact that most of these deaths occurred as a result of natural causes as opposed to violence by other inmates or suicide. While tragic, these deaths reflect a lower mortality rate than the general population's morality rate.  Texas Dept. of State Health Servs., Table 26 Crude Death Rates by County of Residence and Race Ethnicity (2010), http://www.dshs.texas.gov/chs/vstat/vs10/t26b.shtm.  This is just one example of Plaintiffs' efforts to taint this case by providing irrelevant information and telling only a fraction of the story.

[13] In Texas, Class A and B misdemeanors are punishable by confinement in a county jail and/or a fine. Class C misdemeanors are punishable by fine only.  Felonies are punishable by confinement in a prison or state jail facility. *See* TEX. PENAL CODE ANN. Ch. 12 (Vernon 2011).

[14] Recently the County Court at Law Judges identified twelve common non-violent misdemeanors that presumptively will receive personal bonds.

13

25.07, 42.01, 42.09, 49.04; *see also* Ex. E.  Individuals accused of committing a Class C misdemeanor in Harris County are not typically arrested absent special circumstances of imminent risk to themselves or others  (such as public intoxication) rendering bail inapplicable in such cases.[15]

When a peace officer makes a warrantless arrest,[16] he or she calls an assistant district attorney who decides whether to pursue charges against the accused.  Dkt. 3, ¶ 13.  Per the Local Rules of Court, the Bail Schedule is referenced to determine what preliminary amount of bail should be listed on the charging instrument drafted by the District Attorney's Office.  *See* Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 2.3.1 ("In all cases, the District Attorney shall . . . follow the bail schedule.").  After the District Attorney's Office files the complaint with the District Clerk, the accused can post the initial bail listed pursuant to the Bail Schedule and be released, or appear at a hearing held within 24 hours of arrest, where a Hearing Officer will review the case and set bail per the *Roberson* and statutory factors, and grant a personal bond if appropriate.  Of those arrestees released on either a cash bond or a surety bond, a vast majority are released on a surety bond by using a bail bondsman who agrees to guarantee the accused's appearance in exchange for a small fee.  The typical fee is 10% of the bail amount.[17]  *See* Ex. F, K. Banks. Decl. at ¶ 5.  The bondsman has an incentive to ensure the accused's appearance in court because she is liable for the amount guaranteed.  Bondsmen employ various legal methods to ensure the defendant's appearance in court (e.g., phone call reminders, physical check-in before

---

[15] Original jurisdiction for the County Criminal Court at Law Judges does not include Class C misdemeanor cases. TEX. CODE CRIM. PROC. arts. 4.07 & 4.11 (Vernon 2015); TEX. GOV'T CODE ANN. §§ 25.1031 & 25.1033 (Vernon 2004 and Supp. 2016).

[16] If an arrest is made pursuant to a warrant, the initial bail is set by the judge in the warrant.

[17] Therefore, while bail may be set at, for example, $2,000, the accused must only give 10% of that, or $200 to a bondsman to secure his release from pretrial detention.

and/or after court).

### 2. Interview with Pretrial Services

After being booked into jail, those who pay their bail amount are released and required to appear in the assigned County Criminal Court at Law for their first appearance within seven days. Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 24.9.2. Those who do not post bail are promptly taken to Harris County Pretrial Services, which conducts an informational interview of eligible, available arrestees[18] in a neutral setting. Ex. F, K. Banks Decl. at ¶ 7. This interview is conducted by Pretrial Services in a non-confrontational setting and by a Pretrial Services staffer rather than a judicial officer or a peace officer.[19] The interview is conducted so the Hearing Officers and County Criminal Court at Law Judges will have all of the arrestee's relevant information, including detailed financial information, before making bail and personal bond determinations. *See id.* at ¶ 8.

Pretrial Services gathers information directly from the accused about their employment and criminal background, identifying information, current and past living arrangements, family affiliations, companions and contacts, health information, and detailed financial information, and records it on a form titled the Defendant Report – Short Form or "Short Form," an exemplar of which is attached as Ex. 1 to the Decl. of K. Banks. *See* Ex. F, K. Banks Decl. at ¶ 9 and Ex. 1. Among the financial information requested is the arrestee's total monthly income, including employment wages, spousal income available to the arrestee, social security, unemployment or other government benefits, and any other income the arrestee may receive. *Id.* at Ex. 1. The

---

[18] Informational interviews may not be given to those arrestees who have holds preventing their release due to immigration status or mental health status (for example those who are incoherent and unable to speak), or for those who are removed from the booking system to receive medical treatment for serious medical conditions.

[19] Per *Gideon v. Wainwright*, the accused is not entitled to be represented by counsel at this point in the proceedings because the adversarial process has not yet begun. 371 U.S. 335 (1963).

staffer then asks about the arrestee's monthly expenses, including mortgage or rent payments, insurance, utility costs, food, childcare, family support, medical expenses, credit card payments, fuel costs, and any other expenses the arrestee wishes to disclose. *Id.* Additionally, the Pretrial Services staffer asks about the arrestee's other financial assets including any property owned, vehicles owned, or financial accounts. *Id.* Frequently, Pretrial Services staffers contact family or friends of the accused to verify information received, which is required to be eligible for a personal recognizance bond (a "personal bond"). This often includes providing the accused with access to Facebook and other social media websites. *Id.* at ¶ 10. Moreover, arrestees in custody of the two largest Harris County law enforcement agencies (the Sheriff and the Houston Police Department) are given access to their cell phones to record contact information useful for release before their phone is secured with other property. *Id*. at ¶ 11.

All of the information gathered and assembled by Pretrial Services, including the Short Form, a risk assessment, and criminal history (collectively, "Pretrial Services Defendant Report,"), is **provided to the Hearing Officers *prior to* the probable cause, bail & personal bond proceeding** and is also provided to the County Criminal Court at Law Judges. *See id.* at ¶¶ 14-17 and Ex. 1 and 2.

After the Pretrial Services interview, a Pretrial Services agent completes a risk assessment instrument to determine the risk of a detainee failing to appear in court or re-offend if released. *Id.* Pretrial Services uses the risk assessment process to assign a risk level, ranging from low to high, and formulate a recommendation as to whether a detainee should be released on a personal bond. Additionally, Pretrial Services obtains a complete criminal history of the accused using the Justice Information Management System (local), the Texas Crime Information Center (statewide) and the National Crime Information Center (federal) databases. *Id.* The National Crime Information

Center database was created, and is currently maintained, by the Federal Bureau of Investigation. *Id.*

### 3. Probable Cause, Bail & Personal Bond Proceeding

Those not released on bond appear before one of six Hearing Officers,[20] often via videolink, within 24 hours of arrest for an initial proceeding where the issues of probable cause, bail, and whether to issue a personal bond are considered (the "Probable Cause, Bail & Personal Bond Proceeding," also referred to as an Article 15.17 proceeding in practice). TEX. CODE CRIM. PROC. arts. 15.17, 17.033 (a).[21] **The Hearing Officer has a copy of the accused's Pretrial Services Defendant Report in front of them before and during the proceeding**. *See* Ex. F, K. Banks Decl. at ¶¶ 14-15. The Hearing Officer is provided and considers detailed financial information *before setting bail*, satisfying the requirement under the Texas Code of Criminal Procedure, *Roberson*, and the Local Rules of Court that the ability to pay must be considered when setting the bail amount. Once again, by letter dated August 8, 2016, the County Criminal Court at Law Judges unanimously cautioned all Hearing Officers that the five factors from *Roberson*, including the ability to pay, must be considered by any Texas magistrate when setting the bail amount. Ex. D, Letter from County Courts at Law Judges to Hearing Officers regarding Magistration Duties and Discretion, Aug. 8, 2016.

In addition, a Pretrial Services agent, either a staffer or a supervisor, attends the Probable

---

[20] There were five Hearing Officers at the time this suit was filed; they are also defendants. There are currently six Hearing Officers and a seventh is slated to begin work on December 1, 2016.

[21] The State of Texas carefully regulates bail in Chapter 17 of the Texas Code of Criminal Procedure. In general, Chapter 17 provides a defendant with many protections, for example, art. 17.033(a) provides a rapid probable cause hearing must occur within 24 hours of arrest in misdemeanor cases, or the arrestee must be released on bond set no higher than $5,000. *See* Ex. G, TEX. CODE CRIM. PROC. art. 17.033 (Vernon). "[I]f the person is unable to post a cash or surety bond then they must be released on personal bond if a magistrate has not determined whether probable cause exists within this time period." *Id.* Thus ability to pay is also considered IF there is no finding of probable cause. The Article 15.17 Proceeding is subject to a 48-hour statutory deadline, although Harris County seeks to join both in a single hearing within 24 hours. TEX. CODE CRIM. PROC. art. 15.17 (Vernon 2015).

Cause, Bail & Personal Bond Proceeding and is available to answer the Hearing Officer's

questions or gather additional information. Ex. F, K. Banks Decl. at ¶ 16. Typically, interactions

between the Hearing Officer and the accused are limited because the accused is not yet represented

by counsel.[22]

During the Probable Cause, Bail & Personal Bond Proceeding, the Hearing Officer

performs a series of tasks, most notably reviewing probable cause,[23] setting the amount of bail

required for the accused's release, and considering whether a personal bond is appropriate.[24] This

is required by the Texas Code of Criminal Procedure, the *Roberson* Order, and the Local Rules of

Court. *See* TEX. CODE. CRIM. PROC. art. 15.17; Ex. A, *Roberson* Order; Ex. B, Local Rules of

Court (as amended Aug. 12, 2016), Rule 4.2.2.1.11. To determine the amount of bail, the Hearing

Officer considers whether the amount: (1) is high enough to ensure the accused's appearance in

court; (2) is not oppressive given the circumstances; (3) considers the nature of the offense and the

circumstances under which it was allegedly committed; (4) considers the accused's ability to make

bail; and (5) considers the future safety of a victim of the alleged offense and the community. Ex.

A, *Roberson* Order; Ex G, TEX. CODE. CRIM. PROC. art. 17.15; Ex. B, Local Rules of Court (as

amended Aug. 12, 2016), Rule 4.2.3. Thus, per *Roberson*, the Texas Code of Criminal Procedure,

and the Local Rules of Court, "the ability to make bail is to be regarded" when the Hearing Officer

---

[22] Per *Gideon v. Wainwright* and its progeny, the accused is entitled to counsel during adversarial proceedings. 371 U.S. at 344. The Hearing Officers attempt to limit questioning of the accusing during the Probable Cause, Bail & Personal Bond Proceeding to avoid depriving an accused of this right. Indigent individuals receive counsel at or before their next judicial proceeding, usually within another 24 hours, before a County Criminal Court at Law Judge.

[23] If the Hearing Officer determines probable cause does not exist, the arrestee is released from custody.

[24] Rule 4.2.2.1.11 states that "[u]pon a finding of probable cause for further detention exists, the criminal law Hearing Officer shall, after determining whether the accused is currently on bail for a separate criminal offense, **set the amount of bail required of the accused for release and shall determine the eligibility of the accused for release on personal bond, cash bond, surety bond, or other alternative to scheduled bail amounts**, and shall issue a signed order remanding the defendant to the custody of the sheriff." Local Rules of Court (as amended Aug. 12, 2016), Rule 4.2.2.1.11 (emphasis added). This rule reflects and reiterates the Texas Code of Criminal Procedure. *See* TEX. CODE OF CRIM. PROC. art. 17.15.

18

sets bail.  Ex. A, *Roberson* Order; TEX. CODE. CRIM. PROC. art. 17.15; Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 4.2.3.1.3.  Although *Roberson* does not require personal (non-financial) bonds to be granted, a Hearing Officer will often do so if appropriate under the circumstances, including based on the defendant's ability to pay the bail amount.[25]  Hearing Officers approve personal bonds for many arrestees appearing before them, which is substantial evidence of the individualized determinations made on a case-by-case basis when bail is set.[26]

Hearing Officers have been reviewing arrestees for, and granting, release on personal bond for years.  Recently, however, the County Criminal Court at Law Judges reiterated the importance of all Hearing Officers considering the accused's ability to make bail, as well as the other factors required by *Roberson* and Texas law, in a letter to the Hearing Officers dated August 8, 2016.  Ex. D, Letter from County Criminal Court at Law Judges to Hearing Officers regarding Magistration Duties and Discretion, Aug. 8, 2016.  Although *Roberson* does not require personal bonds be given, the County Criminal Court at Law Judges supplemented the Local Rules of Court to go beyond *Roberson* and the Texas Code of Criminal Procedure.  The Local Rules of Court were supplemented on August 12, 2016, to state that personal bonds should be favored (i.e. granted absent good cause) for twelve of the most common non-violent misdemeanors.[27]  Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 12.

---

[25] Personal bonds may not be presumptively appropriate in certain circumstances, for example if there is a risk of danger or that they will violate the bond conditions.  *See* Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 12.3 (stating personal bonds are disfavored where the accused "appears to be a danger to himself/herself or others" or "is charged with an offense alleged to have occurred while out on bond.").

[26] Release often may also be conditioned on bail conditions apart from bond.  Examples are periodic drug testing, no contact with a victim, and the like.

[27] The twelve misdemeanors favored for personal bonds include: (1) theft by check; (2) driving while license suspended or invalid; (3) gambling offenses; (4) illegal dumping; (5) fictitious vehicle license plate or registration; (6) prostitution; (7) violation of laws regulating sexually oriented businesses; (8) public intoxication; (9) driving without a license; (10) class B criminal trespass; (11) class B retail theft; (12) possessing a drug or marijuana (except possession of synthetic cannabinoids or Class A possession of marijuana). Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 12.

19

After the Probable Cause, Bail & Personal Bond Proceeding, most defendants are released on some form of bond, either financial or personal.  However, some criminal defendants do remain in custody despite being able to bail out, including due to certain holds preventing release (i.e., holds for pending felony charges for which bail has not been posted, immigration status, alleged parole violations in another case, or for care related to mental and physical health issues), or because the defendant or their contacts have chosen not to post bond due to health or medical issues, the defendant's contacts have chosen not to contact a bondsmen or otherwise post bond (e.g., due to health issues or simply because the accused's parent wants the accused to sit in jail to stop drug use or continuing criminal conduct), or the defendant wishes to remain in custody (e.g., the Harris County jail provides a shelter, multiple meals per day, and medical services; the accused is guilty and is accruing credit towards an expected early, reasonable plea bargain).[28]

### 4. County Criminal Court at Law Hearing

If the defendant does not post bond or otherwise secure release after the Probable Cause, Bail & Personal Bond Proceeding, they will appear before one of the sixteen County Criminal Court at Law Judges.  This appearance occurs the business day following the Probable Cause, Bail & Personal Bond Proceeding, normally within 24 hours of that proceeding and within 48 hours of arrest.  Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 4.3.1.  At this appearance, the County Criminal Court at Law Judge appoints counsel if appropriate.  The County Criminal Court at Law Judge, **who has access to the Pretrial Services Defendant Report**,[29] can also reconsider the Hearing Officer's bail and personal bond decisions—either at the defendant's request or *sua sponte*.  Thus, most defendants have two judicial proceedings within 48 hours where

---

[28] We do not currently have statistics showing the precise number of individuals who remain in custody after two days absent one of the above reasons, but it is very small, if any, and certainly does not include any of the named Plaintiffs.

[29] *See* Ex. F, K. Banks Decl. at ¶ 14 and Exs. 1 and 2.

bail is considered. Indeed, this exact procedure resulted in Plaintiff McGruder's release from custody. At her Probable Cause, Bail & Personal Bond Proceeding on Friday, May 20, Plaintiff McGruder was denied a personal bond, and her bail was set. However, at Plaintiff McGruder's initial court appearance the next business day, Monday, May 23, the County Criminal Court at Law Judge reconsidered the bond decision and granted Plaintiff McGruder a personal bond with minor conditions, which she later violated by failing a mandatory drug test.

If the defendant wishes to further challenge the amount or nature of his bail after the initial County Court appearance, he may do so at other hearings before the County Criminal Court at Law Judge and/or challenge his bail's constitutionality through state *habeas corpus* proceedings. Thus, within approximately forty-eight hours of arrest, the majority of defendants who have not posted bond have undergone a Pretrial Services interview and two judicial proceedings. By the end of the two-day period, almost all defendants – excepting those subject to holds or those being held for ongoing safety reasons or other reasons stated above – have been released, either because they posted bail or were granted a personal bond.

### C. The Named Plaintiffs' Criminal Proceedings

Each of the three named Plaintiffs were arrested for committing Class A or Class B misdemeanors and filed suit after proceedings before Hearing Officers but prior to their first appearance in County Court, while judicial proceedings were ongoing, in mid-May of 2016.

#### 1. Plaintiff ODonnell

Plaintiff ODonnell was arrested on May 18, 2016, for driving with a suspended license. Ms. ODonnell's criminal history[30] in the past two and a half years is as follows: [31]

---

[30] Plaintiff ODonnell's criminal history was sourced from publically available information.

[31] Ms. ODonnell has also been previously arrested for various Class C misdemeanors including theft and traffic offenses, but their outcomes are currently unknown and they are omitted from this list.

21

1. **August 20, 2014:** convicted of **failure to appear at court** for prior class C misdemeanors
2. January 17, 2016: convicted of driving with an invalid license
3. March 3, 2016: charged with possession of a controlled substance
4. **March 24, 2016: failed to appear at court** for possession of controlled substance case after violating condition of personal bond by testing positive for cocaine use
5. April 24, 2016: outstanding capias for bond forfeiture in pending possession of controlled substance case executed when ODonnell is arrested for, and charged with, additional cases of driving with a suspended license and possessing marijuana
6. April 26, 2016: convicted of possession of a controlled substance, driving with suspended license, and possessing marijuana
7. May 18, 2016: arrested for driving with a suspended license (the arrest leading to the instant suit)
8. **June 29, 2016**: **failure to appear at court** for May 18, 2016 driving with a suspended license (currently a fugitive from justice with a warrant issued)

Following her failure to appear on June 29th, the court reset Ms. ODonnell's case for the following day. **She again failed to appear.**

███████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. M, ODonnell Pretrial Services

Form (filed under seal). Based on her prior offenses and the financial information provided, her bail was set at $2500.[32] Ex. N, ODonnell Bail Bond. Ms. ODonnell was released on bail and subsequently arrested in Galveston County on May 27, 2016 for possession of marijuana. *See* Ex. H, Galveston County Arrest Record. Ms. ODonnell failed to appear for hearings in both Harris and Galveston counties and is currently a fugitive from justice for failing to appear on June 30, 2016 for a County Criminal Court at Law appearance concerning her May 18, 2016 driving with a suspended license arrest. *See* Ex. I, Alias Capias.

---

[32] Based on the information provided by Ms. ODonnell, the County Criminal Court at Law Judges do not believe that she has standing to bring this suit, nor does she represent the class of individuals defined in Plaintiffs' complaint. Bail bondsman typically require a deposit of 10% of bail. Thus, Ms. ODonnell would have needed $250 to secure her release. According to the financial information she provided, she had the ability to do so at the time of her arrest. Thus, she had the ability to pay a bondsman to post bail and cannot belong to a class of plaintiffs who are threatened with imminent confinement in jail because they cannot afford to pay a standardized bail amount.

### 2. Plaintiff Ford

Plaintiff Ford was arrested on May 18, 2016 for theft of property greater than or equal to 100 dollars, but less than 750 dollars. Mr. Ford's known criminal history[33] over the past ten years is as follows:

1. 2007: convicted of **felony possession of a penalty group 1 controlled substance[34]**
2. 2008: convicted of possession of marijuana
3. 2009: arrested for driving under the influence of alcohol or a controlled substance and operating a motor vehicle without the blow device restriction; pled guilty to operating without blow device and DUI
4. July 2010: convicted of public drunkenness
5. January 2012: charged with two counts **misdemeanor battery**, obstructing a public officer, and disorderly conduct related to drugs or alcohol; convicted of battery with remaining charges dismissed in the interests of justice
6. March 2012: convicted of using or being under influence of a controlled substance
7. August 2013: convicted of **misdemeanor battery**
8. April 2014: arrested for **felonious manufacturing or intent to deliver 4-200 grams of a penalty group 1 controlled substance**; pled guilty in August, 2014, to reduced charge of **felony possession of 1-4 grams of a penalty group 1 controlled substance**
9. **August 12, 2015: failure to appear at court**
10. October 16, 2016: arrested for theft of property between $100 and $750, sentenced April 2016.
11. May 18, 2016: arrested for theft of property between $100 and 750 (the arrest leading to the instant suit)

Plaintiff Ford has been arrested for at least five misdemeanors and two felonies, including at least two violent crimes and failure to appear in court at least one previous time.[35] Mr. Ford's bail was set at $5000 on Friday, May 20, 2016. At his first County Court appearance, on Monday, May 23, 2016, Plaintiff Ford pled guilty and was released with a negotiated sentence of time served. *See* Ex. J, Ford's Plea Agreement/Final Judgment.

---

[33] This criminal history was sourced from publically available information, but there is no guarantee that it captures all of Mr. Ford's prior criminal conduct given his rather colorful career.

[34] In Texas, Penalty Group 1 contains the most serious controlled substances such as cocaine, heroin, and methamphetamine. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102, 481.112, 481.115 (Vernon 2010 and Supp. 2016).

[35] The criminal summary above only includes Mr. Ford's convictions; it does not include other cases for which he was arrested and the outcome was dismissed outright (as opposed to part of a plea bargain on a concurrently arrested case) or is unknown.

23

### 3.    Plaintiff McGruder

Plaintiff McGruder was arrested on May 19, 2016 for failing to identify or giving false/fictitious information to a police officer.  Ms. McGruder's criminal history[36] is as follows:

1. November 2012: convicted of theft of property between $50-500
2. April 9, 2016: arrested and charged with possession of marijuana in Beaumont, Texas (pending when arrested on the instant case)
3. May 19, 2016: arrested and charged with failing to identify or giving false/fictitious information to a police officer (the arrest leading to the current lawsuit)

As stated above, despite getting an initial bail set at $2500 by a Hearing Officer, a County Court at Law Judge reconsidered Plaintiff McGruder's bail type and, despite her criminal history, issued her a personal bond at her first County Court appearance, the following business day.  *See* Ex. K, Personal Bond for Plaintiff McGruder.  The personal bond had a single condition: that Ms. McGruder refrain from the use of drugs.  *See id.*  Under the personal bond, Plaintiff McGruder was required to submit to random drug testing to prove that she was complying with the condition of her personal bond.  *Id.*  Her bond was later revoked and her bail was raised because a mandatory drug test confirmed that she was still using drugs.[37]  *See* Ex. L, Bond Condition Violation Report.

## V.    ARGUMENT AND AUTHORITIES

Plaintiffs' claims against the County Criminal Court at Law Judges for enforcing an allegedly unconstitutional bail procedure should be dismissed under the *Younger* abstention doctrine.  Plaintiffs are asking this Court to intervene in ongoing criminal proceedings to address an alleged grievance related to the government's important interest in ensuring criminals appear in court.  The bail procedure in place has an adequate remedy to address any alleged failure by a Hearing Officer to consider ability to pay and, indeed, at least one of the named Plaintiffs benefited

---

[36] Plaintiff McGruder's criminal history was sourced from publically available information.

[37] No action was taken upon her failed first test, since it was shortly after her release on personal bond. Her second failed test, taken approximately seven weeks after the first, triggered the violation report to the court.

24

from this procedure and was released on a personal bond without providing financial security. Plaintiffs' suit implicates the core policy and reasoning behind the *Younger* abstention and thus should be dismissed.

Plaintiffs' claims against the County Criminal Court at Law Judges for implementing and enforcing the current bail procedure should also be dismissed. The County Criminal Court at Law Judges are not the creators of the current bail procedure. Rather, the procedure is merely a restatement of the federal court order in *Roberson* and relevant Code of Criminal Procedure mandates adopted by the Texas legislature. But, even if the Court were to find that the County Criminal Court at Law Judges did create the procedure, they are legislatively immune from claims based on their role in creating the Local Rules of Court, and are judicially immune from a suit for damages or attorney's fees based on their judicial role in enforcing those rules. Additionally, Plaintiffs have failed to plead a plausible claim for a constitutional violation because the bail procedure they are challenging is constitutional as written. The bail procedure comports with the Due Process and Equal Protection clauses and binding Supreme Court precedent. In addition, the Plaintiffs in this case lack standing to bring their claims. Accordingly, these claims should be dismissed.

## VI. Plaintiffs' Claims Are Core *Younger* and Should be Dismissed (Question 1)

Abstention under *Younger* is warranted when three factors are met: "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceeding must afford an adequate opportunity to raise the constitutional challenge." *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n. 3 (S.D. Tex. 2011) (citing *Middlesex Cnty. Ethics Comm.* 457 U.S. 423, 432 (1982)). As shown by Plaintiffs' First Amended Complaint and by additional evidence in the record, all three factors are met in this case. Moreover, this case implicates the core policies behind *Younger* – the notion of

federalism and comity that allows states to govern their affairs free of interference from federal courts.

### A. Plaintiffs' Claims Meet Every *Younger* Factor

#### 1. Plaintiffs Were In Ongoing Criminal Proceedings When They Filed Suit

At the time they filed suit, the named Plaintiffs were in ongoing criminal proceedings. They had criminal charges pending, had been before a Hearing Officer for their Probable Cause, Bail, & Personal Bond Proceeding, and were in Harris County jail at the time of their original complaints. *See, e.g.*, Dkt. 54 at 2 n.1 (alleging that "Plaintiff [ODonnell] is currently being held in the Harris county jail" and that "[Plaintiffs McGruder and Ford] were kept in a Harris County jail cell and were in jail when their case, 16-cv-01436, was filed."). The class of "similarly situated" individuals Plaintiffs seek to represent would also necessarily be under arrest and in ongoing criminal proceedings to be subjected to the challenged bail procedure. *See* Dkt. 54 ¶ 149 (defining the class as "[a]ll Class A or Class B misdemeanor arrestees who are or will be detained in Harris County custody for any amount of time after arrest" due to inability to pay bail).

Courts considering similar bail challenges have recognized that they would be intruding in ongoing state proceedings. *See, e.g.*, *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 333 (D. Conn. 2008) (Finding there was "no question" a suit to forbid state courts from imposing bail on an indigent defendant "would intrude substantially into pending and future criminal cases"); *Mounkes v. Conklin*, 922 F. Supp. 1501, 1507 (D. Kan. 1996) ("The bail bond proceedings here are very much a part of the underlying criminal cases."). Indeed, a recent decision from this District noted this very principle, and dismissed a similar case based on *Younger* abstention. *Jackson v. Hickman*, No. H-16-1721, Dkt. No. 7 (S.D. Tex. Sept. 30, 2016). Similar proposed class action suits have also recognized that the relief sought would affect ongoing state proceedings. *See Mudd v. Busse*,

437 F. Supp. 505, 510 (N.D. Ind. 1977), *aff'd*, 582 F.2d 1283 (7th Cir. 1978) ("Such proceedings are now in progress for other members of the plaintiff class . . . ."); *see also Carbone*, 567 F. Supp. 2d at 333.

In contrast, the cases finding that *Younger* abstention was not warranted, including those cited by Plaintiffs in their Opposition to Motion for Extension of Time (Dkt. 73), are all distinguishable because there were no ongoing state proceedings. In *Welchen* and *Buffin*, both brought by Plaintiffs' counsel, Equal Justice for All, the plaintiffs had not been formally charged when suit was filed. *Welchen v. Cty. of Sacramento, et al.*, No. 2:16-cv-00185, 2016 WL 5930563, at *7 (E.D. Cal. Oct. 11, 2016) ("Plaintiff filed this lawsuit on the day of his arrest, before he was formally charged or made any initial court appearance."); *Buffin v. City and Cty. of San Francisco*, 2016 WL 374230, at *3 (N.D. Cal. Feb. 1, 2016) ("[T]he federal plaintiffs were arrested and released without any formal charge decision against them by the district attorney, were never arraigned, and were never brought before a state judge."). In each of these cases, the court expressly recognized that the critical, operative fact was that there were no ongoing proceedings because the plaintiffs there had never been brought before a judicial officer to have any form of hearing. This case, in contrast, involves ongoing state judicial proceedings at the core of *Younger* abstention.

The last case cited in Plaintiffs' Opposition to the Motion to Extend is also distinguishable because the plaintiffs were challenging *post-judgment* probation procedure, not *pretrial* detention. *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 761 (M.D. Tenn. 2015), *appeal dismissed* (Mar. 15, 2016) ("Plaintiffs have filed a class action lawsuit seeking to address one aspect of the growing privatization of the criminal justice system, namely, Rutherford County's use of a profit-driven corporation to administer misdemeanor probation services."). This challenge

27

did not intervene into ongoing criminal proceedings and thus *Younger* was inapplicable. Here, however, Plaintiffs are clearly challenging determinations made during ongoing criminal proceedings. Accordingly, the first *Younger* factor is met.

### 2. Plaintiffs' Claims Implicate Important State Interests

Plaintiffs' suit seeks to dramatically change the current bail procedure in Harris County. The purpose of the bail procedure in Harris County is the same as it has been since the founding of the United States – to ensure that individuals subject to criminal prosecution appear at future hearings and for trial. Plaintiffs' suit seeks to intervene in bail determinations, and ultimately, to abolish bail in Harris County. This would have a profound effect on state criminal proceedings, including increasing the likelihood that criminal defendants fail to appear, which could have drastic consequences on the operation of the criminal justice system in Harris County. Indeed, studies conducted on Dallas's pretrial detention program indicate that secured financial release is more effective for securing attendance in court. Ex. C, Dallas Study, at 5 (finding "defendants released via a commercial bond (i.e., a bail bond company) were significantly and substantively less likely to fail to appear" compared to release without financial conditions). Such a change to the criminal justice system necessarily implicates important state interests, and thus the second *Younger* factor is met. *See Bell v. Wolfish*, 441 U.S. 520, 534, 99 S. Ct. 1861, 1871, 60 L. Ed. 2d 447 (1979) ("[T]he Government has a substantial interest in ensuring that persons accused of crimes are available for trials . . . ."); *Pugh v. Rainwater*, 572 F. 2d 1053, 1056 (5th Cir. 1978) ("[The state] has compelling interest in assuring the presence at trial of persons charged with crime."); *see also Epps v. Levine*, 457 F. Supp. 2d 561, 568 (D. Md. 1978) (Holding the state had "the strongest possible interest in . . . its ability to assure a criminal defendant's appearance at trial.").

28

### 3. Plaintiffs Have an Adequate Opportunity to Challenge Their Bail

The final *Younger* factor is met in this case because the Plaintiffs, and the class of individuals they purport to represent, have an adequate remedy to challenge any bail amount Plaintiffs believe was set without consideration of ability to pay, or for that matter, to claim all bail must be "affordable." Plaintiffs allege that, despite the clear language in the Texas Code of Criminal Procedure and in the Local Rules of Court, Hearing Officers are failing to consider ability to pay at the Probable Cause, Bail & Personal Bond Proceeding that Harris County strives to conduct within 24 hours of arrest. Dkt. 54 at ¶¶ 68-69. Even accepting this allegation as true for purposes of this Motion, Plaintiffs can challenge the bail amount at a hearing before a County Criminal Court at Law Judge on the next business day. The judge will have access to the Pretrial Services Defendant Report for that defendant, and to any information gathered at the Probable Cause, Bail & Personal Bond Proceeding. *See* Ex. F, K. Banks Decl. at ¶¶ 14-17. Plaintiff McGruder is a textbook example of the process working as intended. On May 23, the business day after her Probable Cause, Bail & Personal Bond Proceeding, Ms. McGruder challenged her bail amount and was released on a personal bond by a County Criminal Court at Law Judge without posting any financial security. Ex. K, Personal Bond for Plaintiff McGruder.

If a defendant feels her bail challenge at the first hearing was unsuccessful, she can still raise the bail status at future hearings before a County Criminal Court at Law Judge. Or, if that fails, a defendant could seek review through a state *habeas corpus* proceeding. These multiple levels of review distinguish this case from the one Plaintiffs will rely on, *Gerstein v. Pugh*, where there was no ability to review bail without a lengthy pretrial detention. 420 U.S. 103 (1975) (finding a system where the filing of an information "foreclosed the suspect's rights to a preliminary hearing" and where habeas corpus could not be used, except in exceptional circumstances, to be unconstitutional). Indeed, the availability of state *habeas* relief alone has

29

been acknowledged as sufficient such that *Younger* abstention applies. *See Wallace v. Kern*, 520 F.2d 400, 406 (2d Cir. 1975) (distinguishing *Gerstein* because "the federal plaintiffs there had no right to institute state habeas corpus proceedings except perhaps in exceptional circumstances and that their only other state remedies were a preliminary hearing which could take place only after 30 days"). Here, Plaintiffs, and the class they seek to represent, have additional opportunities beyond just *habeas* relief, and thus have more than adequate opportunities to challenge any alleged constitutional violation. Accordingly, the third *Younger* factor is met and the Court should dismiss Plaintiffs' claims.

### 4. Plaintiffs' Case Invokes the Core Policy Behind *Younger* Abstention

Plaintiffs, and the class of individuals they seek to represent, want to change the bail procedure in Harris County (and elsewhere in Texas as set forth in the Texas Code of Criminal Procedure), not through the state or local legislature, and not through the state judicial system, but through a decree from a United States District Court. This request touches on the defining purpose of *Younger* abstention, leaving traditional state matters to the states when proceedings are ongoing. *Younger v. Harris*, 401 U.S. 37, 44 (1971) ("This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.").

Here, that policy is of particular import because the local criminal procedure in Harris County is evolving. Harris County has already supplemented the Local Rules of Court that govern setting bail to suggest that personal bonds (requiring no money for security) should be awarded absent good cause for the twelve most common non-violent misdemeanors. Ex. B, Local Rules of

Court (as amended Aug. 12, 2016), Rule 12. Additionally, Harris County approved hiring two additional Hearing Officers, bringing the total to seven, and updated the Short Form used by Pretrial Services to ensure that detailed financial information is collected from each defendant.[38] *See* Ex. F, K. Banks. Decl. at ¶ 18 and Ex. 1 (exemplar Short Form currently in use).

This case was not filed because Harris County was unwilling to explore changing its bail procedure. It was filed because the County was in the midst of changing its procedure. The County is in the process of "re-engineering" the entire county Pretrial Services system, including working with the Laura and John Arnold Foundation (the "Arnold Foundation") to increase public safety and improve the cost-effectiveness and fairness of the criminal justice system.[39] *See Id.* at ¶ 18. This comprehensive effort began in February 2015 and involves many stakeholders, including Pretrial Services as well as the Harris County Sherriff's Office, Houston Police Department, Harris County District Attorney's Office, Harris County Public Defender's Office, Harris County District Court Judges, Harris County Criminal Court at Law Judges, Harris County Criminal Justice Coordinating Council, and others. Part of this effort is to develop and implement the Public Safety Assessment (PSA), a risk assessment tool provided by the Arnold Foundation to measure and manage the risk of pretrial defendants. *Id.* These changes to the system are in the process of being implemented and are scheduled to take effect in early 2017. *See id.*

These comprehensive changes would likely moot Plaintiffs' already deficient constitutional claims. Having a federal court intervene in ongoing proceedings to declare the current process unconstitutional would monumentally disrupt these changes. This background further amplifies the public policy behind *Younger* abstention. Accordingly, the Court should

---

[38] Sometimes this information is not collected because defendants are not willing to provide information.

[39] On May 24, 2016, Harris County Commissioners approved a Memorandum of Understanding with the Laura and John Arnold Foundation.

dismiss Plaintiffs' claims in their entirety.

**B.** **Plaintiffs' Constitutional Claims Challenging the Bail Procedure in Harris County Should Be Dismissed Because Plaintiffs Have Not Plausibly Pled a Claim for Relief (Question 2)**

Plaintiffs' claims against the procedure as written should also be dismissed. Although Plaintiffs couch their claim in terms of Due Process and Equal Protection, the claim itself is simply a disguised excessive bail challenge under the Eighth Amendment. Plaintiffs deliberately frame the claim in this manner to avoid overwhelming dispositive and contrary jurisprudence. Based on this controlling precedent, Plaintiffs' claims should be dismissed. If the Court were to find that the Due Process or Equal Protection Clauses should apply, the claims should still be dismissed because they are implausible. The bail procedure in Harris County affords all arrestees due process well within the required 48 hour period, as the procedure requires the arrestee to appear before a Hearing Officer within 24 hours of arrest. Plaintiffs' attempted equal protection claim is also implausible because it is based on disparate impact, which is not a recognized claim. To the extent it were, the claim would still fail because there need only be a rational basis for the procedure. This test is easily satisfied because the government has a legitimate interest in ensuring defendants appear for trial and bail is rationally related to that interest. Thus, Plaintiffs have no plausible constitutional claims.

**1.** **Plaintiffs' Claim Is an Excessive Bail Challenge That Has Been Routinely Rejected**

Plaintiffs' claims are really excessive bail claims in disguise, arguing that *any* bail exceeding what an arrestee can "presently pay" is excessive and therefore unconstitutional. This is an effort by Plaintiffs of trying to avoid over 200 years of cases by simply masking their Eighth Amendment claim in another area of the constitution. Thus they argue for overruling *sub silentio* hundreds of federal holdings and altering the text of the Eighth Amendment from its prohibition

on excessive bail to a prohibition of ***affordable*** bail. This position stems from the incorrect premise that defendants have an *absolute* right to bail they can afford. This argument is not new and has been rejected in this Circuit and many others. *See U.S. v. McConnell*, 842 F.2d 105, 107 (1988) ("[A] bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement.") (citing *Pugh v. Rainwater*, 572 F. 2d 1053 (5th Cir. 1978)); *U.S. v. Cordero* 166 F.3d 334, 1998 WL 852913, at *2 (4th Cir. 1998) ("[T]he fact that a defendant is financially incapable of satisfying the bail requirement does not violate the Eighth Amendment"); *U.S. v. Tirado*, 72 F.3d 130, 1995 WL 684553, at *1 (6th Cir. 1995) (citing *McConnell*, 842 F.2d at 107); *Lee v. Evans*, 41 F.3d 1513, 1994 WL 651959, at *2 (9th Cir. 1994) ("A bail setting is not excessive within the meaning of the Eight[h] Amendment merely because the defendant cannot pay it."); *U.S. v. Jessup*, 757 F.2d 378, 288-89 (1st Cir. 1985) ("Jessup's failure to meet the 'financial condition' [of bail], while a necessary condition for Jessup's detention, is not in fact its relevant cause.") (abrogated on other grounds by *U.S. v. O'Brien*, 895 F.2d 810 (1st Cir. 1990)).

Bail must instead be set at "an amount reasonably calculated to ensure the defendant's presence at trial." *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). Plaintiffs cannot recast their faulty excessive bail argument as a due process or equal protection claim in an attempt to avoid this case law.[40] The policy in Harris County (and elsewhere in Texas as set forth in the Texas Code of Criminal Procedure) of requiring a defendant's ability to pay be considered at the Probable Cause, Bail, & Personal Bond Proceeding passes this constitutional muster. Plaintiffs' proposal would require the "ability to pay" be the

---

[40] In addition to hiding from the unfavorable excessive bail cases, Plaintiffs likely framed the issue as they have in an attempt to avoid dismissal under *Younger*, which is common for excessive bail suits. *See Jackson*, No. H-16-1721, Dkt. No. 7 (S.D. Tex. Sept. 30, 2016).

*threshold, controlling* factor in determining bail, rather than one of five balanced factors as it is now. The Constitution does not require this and, as discussed previously, the County Criminal Court at Law Judges lack authority to issue such a rule. *Simon v. Woodson*, 454 F.2d 161, 166 (5th Cir. 1972) ("[T]he ability to make bond is an important element in fixing an appropriate amount therefor, but it cannot be said that the Constitution requires that it alone be controlling."). Plaintiffs are attempting to avoid this precedent by masquerading their suit as one of due process and equal protection, but the specific words of the Eighth Amendment should control over an effort to invent a new right to affordable bail out of a general constitutional provision. The United States Constitution and half a century of federal court precedent address this issue head on. The bail procedure in Harris County comports with these requirements, and thus Plaintiffs' claims against the bail procedure fail.

## 2. Plaintiffs' Due Process Claim Should Be Dismissed Because Plaintiffs Have Failed to Plausibly Plead a Violation of the Due Process Clause

The Court should dismiss Plaintiffs' due process claim as not having plausibly pled a claim for relief. The bail procedure in Harris County affords all arrestees due process well within the required 48-hour period, as the bail procedure requires the arrestee to appear before a Hearing Officer within 24 hours of arrest. Plaintiffs allege that the County Criminal Court at Law Judges violate Plaintiffs' due process rights by imposing bail without any inquiry or findings concerning their ability to pay. Dkt. 54 at ¶ 171. Specifically, Plaintiffs attack the 24-hour period between when the District Attorney's Office decides to press charges and the arrestee's first proceeding before a Hearing Officer during the Probable Cause, Bail & Personal Bond Proceeding. *Id*. at ¶ 38, 56. This procedure comports with the Due Process Clause and controlling Supreme Court precedent.

Due process requires a system that detains people for any significant period of pretrial

34

restraint to promptly provide a judicial officer's fair and reliable determination of probable cause, while recognizing that the Fourth Amendment permits a reasonable postponement of a probable cause determination while the justice system copes with the everyday problem of processing suspects through an overly burdened criminal justice system. *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991); *Gerstein*, 420 U.S. at 12. As pled by Plaintiffs, "Harris [C]ounty is a large county, and individuals arrested within its borders can be . . . as far away as, for example the city of Lakeview, which is more than 30 miles away [from the Harris County jail]." Dkt. 54 ¶ 46. Thus, as stated by *McLaughlin*, the County must be afforded a reasonable postponement of a probable cause determination by a Hearing Officer before process is due. The Supreme Court has set a presumptively reasonable 48-hour probable cause deadline following arrest. *McLaughlin*, 500 U.S. at 56. Plaintiffs acknowledge that Harris County fulfills this requirement as "it usually takes between 8 and 24 hours for a person arrested in Harris County to be given a probable cause hearing." Dkt. 54 ¶ 51. Indeed, within the 48 hours set in *McLaughlin*, a defendant in Harris County has normally had two judicial proceedings. Thus, the current bail procedure in Harris County is presumptively constitutional.

Further, with respect to bail and the right to release before trial, the Court has ruled that this right is "conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty" and bail appropriately and successfully serves as assurance of the presence of the accused. *Stack*, 342 U.S. at 5 (1951). Within 24 hours of arrest, defendants appear before a Hearing Officer who determines probable cause, sets bail, and decides whether an arrestee is eligible for a personal bond. TEX. CODE CRIM. PROC. art. 15.17, 17.033 (a). The Texas Code of Criminal Procedure, the *Roberson* Order, and the Local Rules of Court all require that ability to pay bail be considered before it is set at this initial Probable Cause, Bail & Personal Bond

Proceeding.  Ex. G, TEX. CODE. CRIM. PROC. art. 17.15; Ex. A, *Roberson* Order at 3; Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 4.2.1.1.  This procedure provides due process well within the required 48 hours after arrest.  Thus, Plaintiffs' due process claims should be dismissed because they are implausible as pled.

### 3. Plaintiffs' Equal Protection Claim Should Be Dismissed Because It Is Only a Disparate Impact Claim and There Is a Rational Basis for the Bail Procedure in Harris County

The Court should dismiss because Plaintiffs have not plausibly pled a claim for relief under the Equal Protection Clause.  Plaintiffs seek to protect a class based on wealth, claiming that the County Criminal Court at Law Judges violate Equal Protection by detaining people who cannot afford to post bail while wealthier individuals can post bail and be released.  Dkt. 54 ¶¶ 171, 122, 125.  Plaintiffs have not pled that there is a discriminatory purpose behind the Bail Schedule in Harris County, nor could they, as it is written to apply equally to all similarly situated defendants.  *See  Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (a discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part *for the purpose* of causing its adverse effect on an identifiable group").  Plaintiffs' claim is instead directed at an alleged discriminatory *effect* on the poor who are unable to meet bail.  Dkt. 54 at ¶ 1 (challenging "a practice that *results* in the systemic wealth-based detention of those arrestees who are too poor to pay") (emphasis added).

This is not a viable claim under 42 U.S.C. § 1983 or the Equal Protection Clause for a suspect class, such as race, much less for the non-suspect classification of wealth.  *See Manley v. Texas Southern Univ.*, 107 F. Supp. 3d 712, 721 (S.D. Tex. 2015) (Rosenthal, J.) ("[Plaintiff's] amended complaint alleges only disparate impact, not disparate treatment.  That claim is not actionable under § 1981, § 1983, or the Equal Protection Clause.") (internal citations omitted); *see also Nash v. Consolidated City of Jacksonville, Duval Cnty., Fla.,* 895 F. Supp. 1536 (M.D. Fla.

36

1995) ("section 1983 also requires discriminatory intent"); *Bridgeport Guardian, Inc. v. Delmonte*, 553 F. Supp. 601, 606 (D. Conn. 1982) ("Thus proof that an official action or policy has a discriminatory effect or impact is insufficient to establish a claim under § 1981 or 1983; there must also be proof that action or policy…was prompted by a discriminatory purpose"). Accordingly, Plaintiffs' equal protection claims should be dismissed.

Furthermore, even if the statute did, on its face, discriminate based on wealth, wealth is not a suspect classification that triggers any level of heightened scrutiny under an equal protection analysis. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458, 461-62 (1988) (rejecting the contention that statutes discriminating based on wealth are subject to either strict or heightened scrutiny). Thus, to the extent Plaintiffs' had a viable claim, the appropriate test is whether there is a rational basis for the discrimination. This only requires the Local Rules of Court to bear "a rational relation to a legitimate government objective" to be constitutional. *Id.* at 462-63. The Local Rules of Court satisfy this test because they are rationally related to the government's legitimate interest[41] in ensuring criminal defendants appear for their hearings and trial date. *See Bell v. Wolfish*, 441 U.S. 520, 534, 99 S. Ct. 1861, 1871, 60 L. Ed. 2d 447 (1979) (acknowledging that "the Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences," and "that confinement of such persons pending trial is a legitimate means of furthering that interest.").

Individuals who post bail before their Probable Cause, Bail, & Personal Bond Proceeding have provided adequate assurance that they will appear in the future. Those individuals who do not post bail are held for at most 24 hours until they appear before a Hearing Officer who considers

---

[41] The government's interest exceeds the legitimate interest requirement because it is a compelling interest, thus satisfying even strict scrutiny, which does not apply. *See Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) ("Florida has a compelling interest in assuring the presence at trial of persons charged with crime.").

their specific circumstances, including ability to pay, and determines whether a non-financial personal bond is adequate security. This procedure is constitutional because it is rationally related to ensuring these defendants show for trial. Accordingly, Plaintiffs' equal protection claims should be dismissed. *See Welchen v. County of Sacramento*, No. 2:16-cv-00185-TLN-KJN, 2016 WL 5930563, at *11 (E.D. Cal. Oct. 10, 2016) (dismissing equal protection claims based on classification of wealth because there was a rational basis for the policy).

### C. Plaintiffs' Claim for Injunctive Relief Should Be Dismissed Because it is Obviated by the Recent Changes to the Bail Procedure in Harris County (Question 3)

Plaintiffs seek to enjoin the County Criminal Court at Law Judges from "implementing" and "enforcing" (Dkt. 54 at 41) a bail procedure that is and has been changed. This request is moot. *Companioni v. Barr*, 962 F.2d 461, 464 (5th Cir. 1992) (A case is moot "if the issues presented are no longer live."). Regardless of whether the previous bail procedure in Harris County was constitutional – it was – recent changes to the procedure and action by the County Criminal Court at Law Judges have mooted Plaintiffs' request. Plaintiffs' core complaint against the County Criminal Court at Law Judges is the false accusation that they are aware of a systemic issue whereby Hearing Officers allegedly fail to consider the *Roberson* factors before setting bail.[42] Dkt. 54 at ¶ 69 (alleging that Hearing Officers "tell[] arrestees that considering a reduction of bail" different than that in the schedule is not the purpose of the Probable Cause, Bail & Personal Bond Proceeding) and ¶ 17 (alleging that "Each judge is aware of the Hearing Officers' systemic custom of setting secured financial conditions based on the bail schedule without any inquiry into or findings concerning an arrestee's ability to pay the amount set."). This allegation, which touches

---

[42] As discussed in Sections V.A. and V.B.1.ii., Plaintiffs' challenges to the current bail procedure fail because the procedure is constitutional on its face and Plaintiffs' attempts to intervene in ongoing criminal proceedings are inappropriate under the *Younger* abstention doctrine.

on core *Younger* principles, was mooted by recent amendments to the Local Rules of Court and a letter from the County Criminal Court at Law Judges directly on point.

On August 12, 2016,[43] the Local Rules of Court were amended to add new considerations for personal bond in addition to the factors mandated by *Roberson* and the Texas Code of Criminal Procedure. Newly amended Rule 12 states that "[i]n general, personal bonds are favored . . . absent good cause" for twelve of the most common non-violent misdemeanor offenses. Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 12. This change moots Plaintiffs' request for an injunction to prevent non-violent offenders from being held in jail *solely* due to their inability to pay. Such offenders will be presumptively released on a personal bond *unless* there is a compelling reason not to, e.g. the accused is a danger to himself or others or has shown he is unwilling to follow past bond conditions. *See id.*, Rule 12.3 (listing certain circumstances where personal bonds are disfavored).

In conjunction with this rule supplement, the County Criminal Court at Law Judges sent a letter to the Hearing Officers reminding them they had full discretion to set bail utilizing the *Roberson* factors, including a defendant's the ability to pay. Ex. D, Letter from County Courts at Law Judges to Hearing Officers regarding Magistration Duties and Discretion, Aug. 8, 2016. This letter obviates Plaintiffs' request to enjoin the County Criminal Court at Law Judges from overseeing a procedure whereby Hearing Officers do not consider ability to pay. The change to the Rules and the August letter make it clear that that the allegedly wrongful behavior could not reasonably be expected to occur going forward. Plaintiffs' request for an injunction is therefore

---

[43] This amendment went into effect before the suit against the County Criminal Court at Law Judges was filed. *See* Dkt. 54 (filed September 1, 2016).

39

moot, and the Court should dismiss it.[44] *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332

(11th Cir. 2005) (dismissing a claim against a statute when there "was no evidence . . . suggesting

any risk that the City [] ha[d] any intention of returning to its prior course of conduct.").

> **D.      Plaintiffs' Claims Against the County Criminal Court at Law Judges for "Implementing" the Bail Procedure in Harris County Should Be Dismissed (Question 4)**

Plaintiffs' claims against the County Criminal Court at Law Judges for "implementing" the

Local Rules of Court should be dismissed because the Rules merely restate the requirements of

the *Roberson* Order and the Texas Code of Criminal Procedure, and the County Criminal Court at

Law Judges are legislatively immune for promulgating them.   Similarly, Plaintiffs' request for

attorney's fees and costs should be dismissed because the County Criminal Court at Law Judges

were acting in their official capacity when enforcing the bail procedure, and are therefore judicially

immune from paying any damages, including attorney's fees under 42 U.S.C. § 1988.

> **1.      The Bail Procedure Promulgated by the County Criminal Court at Law Judges Merely Restates a Federal Court Order and Texas State Law**

Plaintiffs challenge Local Rule of Court 4.2.3, which sets the initial Bail Schedule and the

five non-dispositive factors the Hearing Officers and County Criminal Court at Law Judges are to

consider before setting bail, including the defendant's ability to pay. Dkt. 54 at ¶ 33.  While the

County Criminal Court at Law Judges promulgated these rules, they are autonomous guidelines –

Rule 4.2.3 restates controlling law from the Texas Code of Criminal Procedure and the *Roberson*

Order.  *Compare* Ex. B, Local Rules of Court (as amended Aug. 12, 2016), Rule 4.2.3.1-.5 *with*

Ex. G, TEX. CODE. CRIM. PROC. 17.15 and Ex. A, *Roberson* Order.  The County Criminal Court at

---

[44] Additionally, as detailed in the Hearing Officers' Motion to Dismiss, Plaintiffs' request for an injunction against the Hearing Officers and County Criminal Court at Law Judges should be dismissed because Plaintiffs have not shown that declaratory relief is unavailable.  The County Criminal Court at Law Judges' join in the Hearing Officers' Motion to Dismiss these claims.

Law Judges do not have the authority to override Texas's duly enacted laws or to defy a decree from a United States District Court.

The Texas Code of Criminal Procedure mandates what factors a judge must consider before setting bail:

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking bail; they *are to be governed in the exercise of this discretion by the Constitution and by the following rules*:
>
> 1. The bail *shall* be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed *are to be considered*.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community *shall* be considered."

Ex. G, TEX. CODE CRIM. PROC. art. 17.15 (emphasis added).  These factors mirror those in the *Roberson* Order, which also mandates a bail schedule be imposed and considered as an additional factor in setting appropriate bail.  Ex. A, *Roberson* Order at 3.

Both the Texas Code of Criminal Procedure and the *Roberson* Order are binding on the County Criminal Court at Law Judges.  The Texas Code of Criminal Procedure is Texas law duly enacted by the state legislature[45] and the *Roberson* Order is a decree from a United States District Court.[46]  The County Criminal Court at Law Judges can add additional considerations, which they did with their August 12, 2016, amendments setting common misdemeanors where a personal

---

[45] *See* Ex. G, TEX. CODE CRIM. PROC. art. 17.15 ("Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722" and subsequent amendments).

[46] As discussed in Section V.B.1.i., the necessary effect of Plaintiffs' position would be a bail procedure where ability to pay is the determinative factor for setting bail.

bond should be granted absent good cause, but they cannot require that ability to pay be the overriding factor when the Texas Legislature and a United States District Court mandate that additional factors be considered. *See* Ex. G, TEX. CODE CRIM. PROC. art. 17.15 (stating that "bail *shall* be sufficiently high" and that future safety of the victim "*shall* be considered"); Ex. A., *Roberson* Order at 3 (stating that "Such bail determinations *shall* be according to" the five non-dispositive factors). Plaintiffs' claims are therefore misdirected, as the County Criminal Court at Law Judges are not the final policymakers for the challenged provisions.

> **2. Plaintiffs' Claims Against the County Criminal Court at Law Judges for "Implementing" the Bail Procedure in Harris County Should Be Dismissed Because They Are Legislatively Immune**

Even if the Court were to find that the County Criminal Court at Law Judges are the final policymakers—they are not—Plaintiffs' claims should still be dismissed because the County Criminal Court at Law Judges are legislatively immune.[47] Plaintiffs assert that the County Criminal Court at Law Judges are the final policymakers, responsible for the Bail Schedule and the Local Rules of Court. Hrg. Trans. 50:23-51:8, Aug. 18, 2016. However, the County Criminal Court at Law Judges are legislatively immune from these claims, including from declaratory or injunctive relief under § 1983. *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732-33 (1980).

Even if the Court were to find that the County Criminal Court at Law Judges are acting in a legislative capacity delegated to them by the State of Texas, they would therefore be exercising the State's entire legislative power with respect to promulgating the Local Rules of Court, including the Bail Schedule. *See id*. at 734. In that event, the County Criminal Court at Law Judges would be the State's legislators for the purpose of issuing the Local Rules of Court, and

---

[47] Plaintiffs also challenge the County Criminal Court at Law Judges' enforcement of the bail procedure. As discussed in Section V.A, this claim should be dismissed under the *Younger* abstention doctrine.

42

thus would be immune from Plaintiffs' suit, inasmuch as Plaintiffs are challenging the County Criminal Court at Law Judges' actions in promulgating the Local Rules of Court and Bail Schedule. *See id.*; Dkt. 54 at 41 (challenging the County Criminal Court at Law Judges' implementation of the bail system in Harris County). Therefore, if the Court were to decide that the County Criminal Court at Law Judges were the final policymakers of the Bail Schedule— which again they are not—the Court should dismiss Plaintiffs' claims challenging the actions of the County Criminal Court at Law Judges for implementing the bail procedure in Harris County under a theory of legislative immunity.

### E. Plaintiffs' Claims Against the County Criminal Court at Law Judges for Attorney's Fees or Other Costs Should Be Dismissed Because They Are Judicially Immune (Question 5)

Similarly, to the extent that Plaintiffs are attacking the County Criminal Court at Law Judges as the enforcers of the Harris County pretrial process, the Court should dismiss all claims for attorney's fees and costs under 42 U.S.C. § 1988, as the County Criminal Court at Law Judges are judicially immune from liability for any costs, including attorney's fees. 42 U.S.C. § 1988(b) (2000). Plaintiffs seek an order and judgment from the Court "granting reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988." Dkt. 54 at 42. However, judges are immune from suit and the assessment of any damages, including attorney's fees and other associated costs. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also* 42 U.S.C. § 1988(b). Judicial immunity is only overcome in two circumstances: first, if the judge's actions are not taken in the judge's official capacity; and second, where a judge acts in complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12 (citing *Forrester v. White*, 484 U.S. 219, 227-29 (1988); *Stump v. Sparkman*, 435 U.S. 349, 356-57, 360 (1978)).

To determine whether a judge acted outside the scope of her judicial capacity, a district court must consider four factors: (1) whether the precise act complained of is a normal judicial

43

function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)). These factors should be broadly construed in favor of immunity. *Id*. It is a traditional judicial function for any of the County Criminal Court at Law Judges to issue, review, or enforce bail determinations made by the Hearing Officers. *See id*. at 516 (finding it was a "normal judicial function" for a judge to issue a bail accompanying a bench warrant). The County Criminal Court at Law Judges issue, review and enforce bail determinations in their courtrooms. The controversy here revolves around at least three pending cases before the court (i.e., each of the Plaintiffs' criminal proceedings). And, finally, the County Criminal Court at Law Judges are acting in their official capacity as judges when they make these determinations. *See id*. at 516 (finding the judge was acting in her official capacity as a judge during a bail determination). There is no attack as to whether the County Criminal Court at Law Judges here are acting outside the scope of their jurisdiction entirely in enforcing the bail determinations of the Hearing Officers. Thus, the County Criminal Court at Law Judges are entitled to judicial immunity, and the Court should dismiss Plaintiffs' claims for attorney's fees and costs under 42 U.S.C. § 1988.

Therefore, Plaintiffs' only available relief is declaratory or injunctive relief under 42 U.S.C. § 1983, and all that remain are Plaintiffs' constitutional claims against the bail procedure, which, as stated above, should be dismissed for failure to plausibly state a claim.

**F.** **Plaintiffs' Constitutional Claims Should Be Dismissed Because They Do Not Have Standing to Bring Them and Because They Do Not Have Plausible Claims (Question 6)**

The Court should dismiss this case because none of the Plaintiffs have standing to bring the claims they have pled. The judicial power of Article III of the Constitution is not a blank check

44

to determine the constitutionality of legislative or executive acts. *Hein v. Freedom From Religion Found.*, 551 U.S. 587, 698 (2007) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). Rather, federal courts "sit 'solely, to decide on the rights of individuals,' and must 'refrain from passing upon the constitutionality of an act … unless obliged to do so in the proper performance of [the] judicial function, when the question is raised by a party whose interests entitle him to raise it." *Id.* (quoting *Marbury v. Madison*, 1 Cranch 137, 170 (1803); *Valley Forge*, 454 U.S. at 474) (internal citations omitted). A question may be considered only when a plaintiff can show that the statute is invalid and that plaintiff suffered some direct injury as the result of its enforcement. *Id.* at 599 (citing *Frothingham v. Mellon*, decided with *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). All three named Plaintiffs fail to satisfy this test because they did not suffer the injury alleged, and therefore have not raised an actual case or controversy before this Court. Their claims should be dismissed.

### 1. Plaintiff ODonnell Is Currently a Fugitive and Had the Ability to Pay Her Bail When She Filed Suit

The Court should dismiss Plaintiff ODonnell's claims because she is a fugitive from justice. *See* Section IV.C.1.; *Degen v. U.S.*, 517 U.S. 820, 823 (1996); *Molinaro v. New Jersey*, 396 U.S. 365, 365-66 (1970) (finding "[n]o persuasive reason exists why this Court should proceed to adjudicate the merits of [the]…case after the convicted defendant who has sought review escapes"); *Giri v. Keisler*, 507 F.3d 833, 836 (5th Cir. 2007) (extending the fugitive disentitlement doctrine beyond criminal cases to "further its punitive and deterrent purposes"). Under the fugitive disentitlement doctrine, a court is permitted to dismiss a case brought by a current fugitive on the basis that although such escape from justice "does not strip the case of its character as an adjudicable case or controversy . . . it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro*, 396 U.S. at 366. Thus the doctrine functions to

45

"limit[] a criminal defendant's access to the judicial system whose authority he evades." *Bagwell v. Dretke*, 376 F.3d 408, 410 (5th Cir. 2004). One rationale behind the doctrine is the furtherance of a court's interest in efficient practice, because a litigant's escape impedes the ability of the court to adjudicate the proceedings before it. *Bright v. Holder*, 649 F.3d 397, 400 (5th Cir. 2011). Therefore, the Court should not allow Plaintiff ODonnell to bring her claims.

Plaintiff ODonnell also lacks standing because she did not suffer the injury alleged—she was not held in jail solely due to an inability to pay bail. In the Amended Complaint, Plaintiffs categorize their harm as "ongoing confinement in jail because [they] cannot afford to pay a standardized cash bail amount." Dkt. 54 at ¶ 158. Based on information Ms. ODonnell provided to Pretrial Services, she could afford to pay a bondsman to secure her bail. *See* Ex. M, ODonnell Pretrial Services Form (filed under seal). ███████████████████████████████████████████████████████████████████████ *Id.* (filed under seal). Ms. ODonnell's bail was set at $2500. Ex. N, ODonnell Bail Bond. Thus, under prevailing surety bond practices she would have been required to post $250 to a bail bondsman to secure her release from Harris County jail. ███████████████████████████████████████████████████████████████ $250 of that could have been put towards securing her release from jail in mid-May 2016. Additionally, Ms. ODonnell has had bail set on at least three prior occasions that she has been arrested by Harris County. It appears she was able to post bail and be released from jail on these prior occasions. This past history of posting bail in addition to the financial information Plaintiff ODonnell provided to Pretrial Services during her interview shows that Ms. ODonnell could afford her bail. She therefore lacks standing to assert a claim for those who are unable to pay bail.

### 2. Plaintiffs ODonnell and Ford Were Not Held in Jail Solely Due to Inability to Pay

Similarly, neither Plaintiff ODonnell nor Plaintiff Ford was in jail "*solely because* they [could] not afford to pay . . . bail" as is pled in the Amended Complaint. Dkt. 54 at ¶ 171. Both Plaintiff ODonnell and Plaintiff Ford have extensive criminal backgrounds with at least one failure to appear on each of their criminal histories.[48] *See* Sections IV.C.1. and 2. Plaintiff Ford's criminal history also included two felonies and at least three violent crimes. *See* Section IV.C.2. Thus, neither Plaintiff ODonnell nor Plaintiff Ford was in jail because they were unable to afford bail; rather, they were in jail because their past criminal conduct and status as proven flight risks made them poor candidates for personal bonds. Because both Plaintiff ODonnell and Plaintiff Ford were in jail for reasons other than their ability to pay bail, neither have standing in this case.

To the extent that Plaintiff Ford is attempting to use this case to reverse his guilty plea, this is barred by the finality of the plea itself. "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack." *U.S. v. Broce*, 488 U.S. 563, 569 (1989). Here, Plaintiff Ford does not claim that his guilty plea was involuntary or without counsel.[49] Thus the finality of his plea must foreclose any collateral attack on the merits of his criminal case.

### 3. Plaintiff McGruder Was Not Held in Jail

Lastly, Plaintiff McGruder does not have standing in this lawsuit as she, too, was not

---

[48] Plaintiff ODonnell has failed to appear **at least twice in the past**, once after receiving a personal bond.

[49] Even if he did, such a claim is properly raised in a state habeas proceeding—which would again invoke *Younger*'s abstention doctrine.

directly injured by the bail procedure because she did not endure ongoing confinement in jail "solely because [she could] not afford to pay . . . bail." Dkt. 54 at ¶ 171. Plaintiff McGruder was arrested for failing to identify or falsely identifying herself to a peace officer. *See* Section IV.C.3. Ms. McGruder likely would not have been eligible for immediate release on this basis, because law enforcement and Pretrial Services had to obtain Plaintiff McGruder's true identity. Additionally, Plaintiff McGruder was granted a personal bond at her first appearance before a County Court at Law Judge. Ex. K, Personal Bond for Plaintiff McGruder. Ms. McGruder is the prime example of the system functioning as it should. Because the County Court at Law Judge granted Plaintiff McGruder a personal bond on the first business day after her Probable Cause, Bail & Personal Bond Proceeding, she was not subject to "ongoing confinement" without inquiry and based on wealth, and therefore lacks standing to pursue the claims in the Amended Complaint.

## 4. None of the Plaintiffs have a Plausible Claim for Relief Based on the Circumstances They Experienced

In addition to lacking standing for the claims they purport to bring, the Plaintiffs have no plausible claim against the procedure they were actually subject to.

Plaintiff ODonnell was arrested and bail was set based on her criminal history and repeated unwillingness to appear for scheduled hearings. *See* Section V.B.5.i. Moreover, according to the information she provided, Ms. ODonnell was able to provide the financial security requested but chose not to, likely because she knew she would not get the money back when she followed her normal conduct of failing to appear in court. *See* Ex. M, ODonnell Pretrial Services Form (filed under seal). Ms. ODonnell ultimately did make bail, and is now a fugitive from justice after failing to appear once again. Ex. I, Alias Capias. Nothing about this procedure is unconstitutional; Ms. ODonnell received her required hearings, her bail was set considering the *Roberson* factors, and she ultimately was released after bail was posted. Ms. ODonnell's suit should therefore be

48

dismissed.

Similarly, Plaintiff Ford cannot claim to have suffered a constitutional injury. Mr. Ford has an extensive criminal history, including a failure to appear, that warranted financial conditions be set so there was an adequate assurance that he would appear in court. The fact that Mr. Ford could not provide this adequate assurance does not make his bail amount unconstitutional. *See U.S. v. McConnell*, 842 F.2d 105, 107 (1988). Mr. Ford has no plausible constitutional challenge to his bail amount, and thus his claim should be dismissed.

Lastly, Plaintiff McGruder cannot complain about her experience with bail procedure. Ms. McGruder was arrested and received an initial bail amount set pursuant to the Bail Schedule. She then went before a Hearing Officer who set her bail according to the Schedule and the five *Roberson* factors, including the nature of the criminal offense, failing to identify or falsely identifying oneself to a peace officer. *See* Section IV.C.3. Ms. McGruder then went before a County Court at Law Criminal Judge for her second hearing. At this hearing she sought a personal bond, *which was granted*. Thus, Ms. McGruder received two hearings post-arrest and was released without providing any financial security. She has no constitutional claim against this procedure.

## VII. CONCLUSION

Plaintiffs' claims against the County Criminal Court at Law Judges should be dismissed. Plaintiffs' claims should be dismissed under *Younger* because they seek to intervene into ongoing state proceedings that provide an adequate remedy to address any alleged constitutional violations. Additionally, Plaintiffs' claims challenging the bail procedure in Harris County as written should be dismissed because they are implausible. Plaintiffs' claims are merely reworded excessive bail claims that have been unanimously rejected. The bail procedure provides two proceedings within 48 hours of arrest where ability to pay is considered. This is presumptively constitutional and rationally related to the government's legitimate interest in ensuring defendants appear for trial.

49

Plaintiffs' request to enjoin this procedure should also be dismissed because it has been mooted by rule changes that went into effect before the County Criminal Court at Law Judges were sued, and by a recent reminder to the Hearing Officers to use their discretion in applying the *Roberson* factors.

The specific claims related to the County Criminal Court at Law Judges' role in creating the bail procedure in Harris County should also be dismissed because the Local Rules of Court merely restate the controlling law in *Roberson* and the Texas Code of Criminal Procedure. To the extent the County Criminal Court at Law Judges were the policymaker – they are not – the claims should still be dismissed because they would be legislatively immune from suit. Similarly, the County Criminal Court at Law Judges are judicially immune from Plaintiffs' claim for attorney's fees based on their judicial conduct in setting and reviewing bail, thus these claims should be dismissed. Lastly, Plaintiffs' claims should be dismissed because they each lack standing for the complained of injury, and indeed have no plausible claim for their actual experience with the criminal justice system. Accordingly, the claims against the County Criminal Court at Law Judges should be dismissed.

Date: November 9, 2016

Respectfully submitted,

/s/ John E. O'Neill
 John E. O'Neill
 Attorney-in-Charge
 Texas State Bar No. 15297500
 S.D. Tex. Bar No. 2813
 joneill@winston.com
 John R. Keville
 Texas State Bar No. 00794085
 S.D. Tex. Bar No. 20922
 jkeville@winston.com
 Sheryl A. Falk
 Texas State Bar No. 06795350
 S.D. Tex. Bar No. 17499
 sfalk@winston.com
 Robert L. Green
 Texas State Bar No. 24087625
 S.D. Tex. Bar No. 2535614

 **WINSTON & STRAWN LLP**
 1111 Louisiana, 25TH Floor
 Houston, TX 77002
 Telephone: (713) 651-2600
 Facsimile: (713) 651-2700

 **ATTORNEYS FOR THE HARRIS COUNTY CRIMINAL COURT AT LAW JUDGES**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service on this November 9, 2016, via electronic filing using the Court's CM/ECF system.

/s/ John E. O'Neill

**Exhibit A**

DEC - 2 1987

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
F I L E D

NOV 2 5 1987

JESSE E. CLARK, CLERK
BY DEPUTY:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY ROBERSON; ET AL.        §
                              §
                              §
VS.                           §        CIVIL ACTION NO. H-84-2974
                              §
                              §
NEEL RICHARDSON; ET AL.       §

## ORDER

Pending before the Court is the parties' stipulation regarding attorneys' fees. The Court

ORDERS this stipulation is hereby approved in all respects.

DONE in Houston, Texas, this ___25th___ day of November, 1987.

JAMES DeANDA
UNITED STATES DISTRICT JUDGE

DEC -2 1987

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

FILED

NOV 25 1987

JESSE E. CLARK, CLERK
BY DEPUTY:

3(

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY ROBERSON, et al.,

    Individually and as
    Class Representative

    Plaintiffs,

    v.

NEEL RICHARDSON, et al.,

    Defendants.

CIVIL ACTION
NO. H-84-3659
2974

## AGREED FINAL JUDGMENT

On this day came on to be heard the above-entitled and numbered cause. The parties appeared in open court by and through their attorneys of record and announced that all claims, causes of action, and matters in controversy actually asserted, have been compromised and settled, and prayed that the Court render an Agreed Final Judgment in accordance with the terms set forth herein.

The parties announced that their intention in consenting to entry of the herein contained judgment, and the reason for the herein contained orders, is to insure that Plaintiffs are afforded all of the rights, privileges and immunities guaranteed by the Constitution and laws of the United States of America and the State of Texas, including, but not limited to, the right to a prompt, fair and reliable determination of Probable Cause as set out in *Gerstein v. Pugh*, 420 U.S. 103 (1978), a meaningful review of alternatives to pre-scheduled bail amounts as set out in *Rainwater v. Pugh,* 572 F.2d 1053 (5th Cir. 1978)(*en banc*), and the right to the prompt appointment of counsel.

The parties further announced that the reason for the herein contained judgment is to afford each member of the Plaintiffs' class a Probable Cause and bond hearing before a duly elected Judge of a State District Court, County Criminal Court at Law, Statutory County Court at Law authorized to hear criminal matters, County Court, Justice of the Peace, special Judge pursuant to Vernon's Annotated Texas Civil Statutes, Government Code, Sec. 75.403, or such persons who may be temporarily appointed or designated to lawfully preside on behalf of a court, but in no case shall such person or persons not be a resident of Harris County, Texas, licensed to practice law for at least four (4) years and a member in good standing of the State Bar of Texas (hereinafter referred to as a "Judicial Officer"), and the appointment of counsel. All of the foregoing shall be in accordance with the provisions of this Judgment.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Judges of the Statutory County Criminal Courts at Law of Harris County Texas ("the Judges"), shall cause each person accused of a Class "A" or "B" misdemeanor offense filed in the Statutory County Criminal Courts at Law of Harris County, Texas, to be taken before[1] a Judicial Officer, as soon as a Judicial Officer is available after the accused is placed in a jail operated by or under the authority of the Sheriff of Harris County, Texas, or other detention facility operated by or under the authority of the Sheriff of Harris County, Texas, whereupon the accused shall be afforded a hearing that will entail an examination of whether "Probable Cause" (which is defined as a reasonable ground, based upon the facts and circumstances, sufficient to warrant a prudent man to believe that the accused has committed each element of the offense charged and the accused is culpable, it being understood that if there is a sufficient defense established by testimony or documentation of the arresting agency, then there is no Probable Cause) exists for the accused's further detention, set bail and review the accused's suitability for release on an alterative to prescheduled bail amounts. At the hearing the Judicial Officer shall:

(A) Inform the accused in clear, understandable language, of the accusation against him and of any complaint or information filed against him;

(B) Inform the accused of his right to retain counsel; of his right to remain silent; of his right to have an attorney present during any interview with peace officers or prosecutors; of his right to terminate police interrogation at any time; of his right to request the appointment of counsel if he is an indigent (a person who is not financially able to employ counsel); and that any statement made by the accused can and will be used against him at trial.

(C) Determine whether Probable Cause exists to warrant further detention of the defendant on the charges pending. The Judicial Officer shall determine the existence of Probable Cause based upon witness testimony (or affidavits), the arresting officers testimony, the Judicial Officer's analysis of a written offense report, or of written field notes/reports prepared by the arresting officer. The Judicial Officer shall enter the basis for his findings on the record by completing a form regarding the findings

---

[1] "Taken before" shall mean either physically bringing the accused before the Judicial Officer in person or by the use of high speed two way audio/video transmission technology. In circumstances where audio/video technology is utilized (in that the accused is located in a holding facility other than the facility in which the Judicial Officer is located) said system will cause the entire hearing to be recorded on video tape. If this technology is implemented, a copy of the recording will be the record and will be maintained for 120 days after the hearing.

and orders made by the Judicial Officer and including the same with the papers of the case. If the Judicial Officer determines there is not Probable Cause, the accused shall immediately be discharged from custody (detention).

(D) Where the Judicial Officer finds Probable Cause for further detention, he shall: (1) enter such finding on the record, and (2) set the amount of bail required of the accused for release and determine the accused's eligibility for release on personal bond or alternatives to prescheduled bail amounts. Such bail determinations shall be according to the following criteria:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with;

2. The nature of the offense for which Probable Cause has been found and the circumstances under which the offense was allegedly committed are to be considered, including both aggravating and mitigating factors for which there is reasonable ground to believe shown, if any;

3. The ability to make bail is to be regarded, and proof may be taken upon this point;

4. The future safety of the victim may be considered, and if this be a factor, release to a third person should also be considered; and

5. The Judicial Officer shall also consider the accused's employment history, residency, family affiliations, prior criminal record, previous court appearance performance and any outstanding bonds.

It is further ORDERED that the Judges shall also cause the Judicial Officer to be available for conducting the hearings described in this order for persons accused of Class "C" misdemeanor offenses upon which the accused is booked into the Harris County Jail.

It is further ORDERED that for a period of three years from entry of this order, if a hearing has not been held within 24 hours of an arrest, the Judges shall cause records to be maintained showing the accused's name, the case number and the arresting agency, and shall make such records available to Plaintiffs' counsel on request. In the event a particular arresting agency shows a pattern of failing to produce accused persons for the hearings required within 24 hours of arrest, this Court shall enter an additional order requiring the defendants to immediately notify Plaintiffs' counsel when an accused is brought by such agency before the Judicial Officer after 24 hours from arrest has elapsed.

It is further ORDERED that the bail determinations made by the Judicial Officer shall not be changed but for good cause shown. The basis for, and the finding of good cause, shall be entered upon the record.

3

It is further ORDERED that the Judges shall provide Judicial Officers who will be continuously on duty to conduct the hearings referred to in this order during the 15 hours of each week day, and for 15 hours each day on weekends, during which times the Judges are not available to preside. The illness or absence of a Judicial Officer shall not absolve the Judges of responsibility to provide Judicial Officers under this Order.

It is further ORDERED that the Statutory County Criminal Courts at Law of Harris County, Texas, shall implement and maintain a bond schedule for all misdemeanor offenses within their jurisdiction. This schedule shall establish the initial amounts of bail required in each type or category of offense. At the Probable Cause hearing the Judicial Officer shall use the Bail Schedule, in addition to the criteria in Section D, in determining the appropriate bail in a given case. The Judicial Officer shall have the authority to order the accused released on personal bond or released on other alternatives to prescheduled bail amounts. The Judges shall direct the Pretrial Services Agency to make every effort to insure that sufficient information is available at the time of the hearings required herein for the Judicial Officer to determine an accused's eligibility for a personal bond or alternatives to prescheduled bail amounts.

It is further ORDERED that the Judges shall appoint counsel prior to any adversarial judicial proceedings (any proceeding held in the court in which the case is filed), or where the Judge concludes that the interests of justice require representation, for all accused indigents who do not refuse the appointment of counsel. The Judges may not deny appointed counsel to an accused solely because the accused has posted, or is capable of posting bail. Appointments shall not be revoked, rescinded, withdrawn or terminated when an accused has posted bail, but for good cause shown, and such a finding and the basis therefore shall be entered on the record. The posting of bond by the accused is not good cause for the revocation, recision, withdrawal or termination of the appointment of counsel for an accused. In considering whether an accused is entitled to appointed counsel the Judges shall consider factors including, but not limited to, the following:

1. the accused's income,
2. significant property owned by the accused,
3. outstanding obligations of the accused,
4. necessary expenses of the accused,
5. the number and ages of any dependents of the accused, and
6. whether the accused has posted or is capable of posting bail.

It is further ORDERED that the provisions of this Order shall be implemented on or before, March 1, 1988.

4

This Agreed Final Plaintiffs' Original and Amended Petitions, and the implementation of this Agreed Judgment concludes all matters contained therein. The United States District Court retains exclusive jurisdiction to effectuate the relief set out herein and to issue such other orders as are necessary.

All relief not expressly granted herein is denied.

SIGNED at Houston, Texas, on this 25th day of _November_ 1987.

_U S District Judge_

APPROVED AS TO FORM AND
SUBSTANCE:

JAMES T. OITZINGER

By _____

JAMES T. OITZINGER
Attorney in Charge
Southern District of Texas I.D. No. 6298
1932 Bissonnet
Houston, Texas 77005
AC 713/683-0168

ATTORNEY FOR PLAINTIFFS

REYNOLDS SHANNON MILLER BLINN WHITE & COOK

By _____

GRANT COOK
Attorney in Charge
Southern District of Texas I.D. No. 5005
3300 Allied Bank Plaza
1000 Louisiana
Houston, Texas 77002
AC 713/651-1300

ATTORNEYS FOR DEFENDANTS

**Exhibit B**



# RULES OF COURT
## Harris County Criminal Courts at Law
As amended through August 12, 2016

Harris County Criminal Courts at Law
*Rules of Court*

# Table of Contents

Rule 1.  General Provisions.................................................................................................................3

Rule 2.  Procedure for the Filing of Cases ........................................................................................3

Rule 3.  Transfer of Cases .................................................................................................................6

Rule 4.  Initial Settings......................................................................................................................7

Rule 5.  Adding Cases to the Daily Docket.....................................................................................12

Rule 6.  Docketing of Misdemeanor Indictments ...........................................................................12

Rule 7.  Docketing of Appeals from Non-Record Municipal Courts, Justice of the Peace Courts, Municipal Courts of Record, and Administrative License Revocation Hearings Pursuant to Chapters 524 and 724 Texas Transportation Code ...................................13

Rule 8.  Docketing of Cases: Judge Recusal or Disqualification...................................................14

Rule 9.  Schedule of Bond Amounts................................................................................................15

Rule 10. Refund of Cash Bonds.......................................................................................................16

Rule 11. Bond Forfeiture Reinstatements, Dismissals, and Judgments ..........................................16

Rule 12. Approval of Personal Bonds During Non-Business Hours ...............................................16

Rule 13. Signing of Pleadings .........................................................................................................17

Rule 14. Preparation of Judgments .................................................................................................17

Rule 15. Petition for Occupational Driver's License ......................................................................17

Rule 16. Attorney of Record ...........................................................................................................18

Rule 17. Juvenile Defendants..........................................................................................................19

Rule 18. County Criminal Court Management Program..................................................................19

Rule 19. Code of Judicial Conduct..................................................................................................21

Rule 20. Court Reporters..................................................................................................................22

Rule 21. Satisfaction of Judgment: Order Permitting Partial Payment on Fines and Costs.....................22

Rule 22. Viewing and Copying DWI Video Tapes..........................................................................22

Rule 23. Release of Clerk's Record to Counsel...............................................................................23

Rule 24. Alternative Plan for the Appointment of Counsel to Indigent Defendants Under the Texas Fair Defense Act ...............................................................................................23

Rule 25. Disaster Plan .....................................................................................................................44

Rule 26 Sliding-Scale Fee Schedule for Global Positioning System.............................................44

App. A  Approved Intensive Training Programs.............................................................................46

Harris County Criminal Courts at Law
*Rules of Court*

---

### RULE 1.    GENERAL PROVISIONS

1.1.    On March 7, 2016, the duly elected and appointed judges of the County Criminal Courts at Law of Harris County, Texas, met and adopted the following rules to facilitate the efficient management of the courts' dockets. These rules take effect April 6, 2016.

1.2.    These rules, in conjunction with the Code of Criminal Procedure, and the Government Code, govern proceedings in the Harris County Criminal Courts at Law. These rules shall not be construed as extending the jurisdiction of these courts, nor shall they be construed to overrule or conflict with the Texas Government Code, Texas Code of Criminal Procedure, Texas Penal Code, Texas Rules of Evidence, or Texas Rules of Appellate Procedure. These rules are intended to govern local proceedings where such rules are not in conflict with existing law and where such rules are consistent with state statutory law and rules promulgated by the Texas Court of Criminal Appeals and the Texas Supreme Court.

1.3.    The district clerk shall not make any changes with regard to random filing, numbering of cases, docketing of cases, transfer of cases, assignment of settings, or any other matters that affect the distribution of work or the conduct of the business of the Harris County Criminal Courts at Law unless so directed by the Judges of the County Criminal Courts at Law.

1.4.    The following rules shall govern the assignment of misdemeanor cases and other matters within the jurisdiction of the County Criminal Courts at Law of Harris County, Texas.

### RULE 2.    PROCEDURE FOR THE FILING OF CASES

#### 2.1.    Numerical Sequence

2.1.1.    Each criminal and civil case filed and docketed into the county criminal courts at law shall be assigned a sequential number based on the following case number structure.

2.1.2.    Beginning January 1, 2000, case numbers shall consist of seven numerical digits, the first case number filed on January 1, 2000, shall be "0978400." Case numbers shall continue sequentially thereafter, which scheme shall allow cases to be numbered through 9,999,999.

#### 2.2.    Random Filing

2.2.1.    All misdemeanor proceedings filed with the district clerk shall be randomly assigned by the district clerk to the various county criminal courts at law. This shall be accomplished by means of a blind filing process that provides for the equal distribution of new cases in such a manner that it cannot be determined to which court a case will be assigned until after the assignment occurs.

2.2.2.    The primary means of assignment of cases shall be through the use of a computer program that provides for the random assignment and equal distribution of cases. The computer program shall be capable of maintaining a journal of filings and distribution of cases that will permit periodic or random audit to determine whether the program is assigning cases as intended.

2.2.3.    If the primary means of assignment, the computer program, is not available, the district clerk's office shall use the manual random selection device for the filing of cases into the county criminal courts at law. Prior to each case assignment, the random selection device shall be rotated on its axis, and one ball therein shall be withdrawn. The court number indicated on the ball randomly chosen shall become the assigned court for the case. The district clerk shall add the ball back into the random selection device immediately, so as to not disturb the random filing and docketing of all other cases into the county criminal courts at law.

---

Harris County Criminal Courts at Law
*Rules of Court*

2.2.4.    The clerk shall receive, assign and account for all cases in ascending numerical sequence.

**2.2.5.    How Criminal Cases Are Attracted To Courts**

2.2.5.1.    Before using the computer program or the manual random selection device to determine court assignment for a given case, the district clerk shall determine by research whether the defendant named in the misdemeanor information has a prior connection to an existing case in any of the county criminal courts at law. A prior connection is established when:

2.2.5.1.1.    a defendant is presently on community supervision in one of the county criminal courts at law;

2.2.5.1.2.    a defendant is charged with driving while intoxicated, committed within five years of the date on which the most recent DWI offense was committed;

2.2.5.1.3.    a defendant using a valid occupational driver's license granted by the judge of a county criminal court at law is charged with another DWI (Driving While Intoxicated) or DWLI (Driving While License Invalid);

2.2.5.1.4.    a lower numbered cause, including a pending appeal of a class C offense from a justice or non-record municipal court, is pending against the defendant/codefendant in a county criminal court at law;

2.2.5.1.5.    a defendant is charged and the charge arose from the same criminal transaction that was the basis of a misdemeanor information previously filed on a co-defendant;

2.2.5.1.6.    a defendant has not discharged a prior sentence of confinement; or

2.2.5.1.7.    a defendant appealed a final judgment, order granting community supervision, or denial of relief in a post-conviction habeas corpus proceeding that is still pending before a court of criminal appeals.

2.2.5.2.    If one of the above prior connections exists, the new misdemeanor case shall be attracted to the court in which the defendant has the prior connection. If more than one prior connection exists, the new misdemeanor case shall be attracted to the court involved in the prior connection appearing first as listed above.

2.2.5.3.    If a defendant has a pending case and is charged with a new case that would attract to a different court under these rules, all pending cases shall transfer to the different court (see Rule 3).

2.2.5.4.    In the event that a case is attracted to a court in error, then the coordinator of the court receiving the case in error shall complete a transfer order to be signed by the presiding or co-presiding judge that orders the case back into rotation. The order is then returned to the district clerk for compliance therewith.

**2.2.6.    Filing of Cases Charging Public Lewdness, Gambling Offenses, Prostitution, Violations of the Alcoholic Beverage Code, or County or Municipal Ordinances Relating to Sexually Oriented Businesses**

2.2.6.1.    There is no attraction by either codefendant or transaction in cases charging public lewdness, prostitution, violations of the Alcoholic Beverage Code, gambling offenses, or county or municipal ordinances relating to sexually oriented businesses. The clerk shall apply all other rules of attraction.

Harris County Criminal Courts at Law
*Rules of Court*

### 2.2.7. Appeals From Justice of the Peace Court, and Non-Record Municipal Courts

2.2.7.1.  The rules of attraction shall apply to an appeal from a judgment in a criminal case from a justice of the peace court, or non-record municipal court in the same manner as an original criminal case.

### 2.2.8. Re-files, Writs of Habeas Corpus, Mandamus, Prohibition, Restricted Driver Licenses, Fugitives

2.2.8.1.  If a case is re-filed, it shall be assigned to the same court as the case it supersedes. The district clerk is then authorized to attract and set the re-filed case in the court where the initial misdemeanor information is or was pending. The setting date assigned to the re-filed case will be the same date as that of the initial pending case. If the initial case is no longer pending, the re-filed case shall be set in accordance with the rules governing the filing of new cases.

2.2.8.2.  Motions for leave to apply for a writ of habeas corpus, mandamus, or prohibition shall be filed pursuant to an order by the court agreeing to hear those matters. Petitions for restricted driver licenses shall be filed in the court in which the conviction was entered and the driver license suspended. Petitions for restricted driver licenses filed by a Harris County resident that result from a suspension for an offense committed in another county (other than for driving while intoxicated or an offense or administrative violation that results in a suspension) shall be filed in any court agreeing to hear the matter, or as provided for in subsection B of Rule 2. Fugitive cases shall be filed in County Criminal Court at Law No. 10.

2.2.8.3.  Unless the above categories of cases are later transferred by agreement of the judges or are transferred by authority of a separate order, all such assigned cases shall remain on the docket of the court of assignment until final disposition.

### 2.2.9. Appeals From The Administrative Suspension of a Person's Driver's License as Provided by Texas Transportation Code Chapters 524 and 724

2.2.9.1.  See Rule 7.

### 2.2.10. Petitions for Occupational Driver's License

2.2.10.1.  See Rule 15.

## 2.3. Application of Bail Schedule by District Attorney

2.3.1.  In all cases, the District Attorney shall:

2.3.1.1.  follow the bail schedule;

2.3.1.2.  provide the District Clerk with a signed order from a judge or judicial officer setting bail at a different amount; or

2.3.1.3.  request in writing a higher bond on a form provided for that purpose and attach it to the court's file.

## 2.4. Designation of Bail

2.4.1.  The clerk shall enter the bail amount.

2.4.2.  When the district clerk receives a complaint from the district attorney that is not accompanied by an order setting bail and the amount on the charge is not consistent with the bail schedule, the clerk shall enter the number "888888" in the bond amount field.

**RULE 3.    TRANSFER OF CASES**

**3.1.    Research by Clerk**

3.1.1.    Upon filing and docketing of a misdemeanor indictment or information into the county criminal courts at law, the district clerk will determine by research whether the named defendant has a prior connection in any of the county criminal courts at law. This research shall be done in accordance with the criteria established in Rule 2.

**3.2.    Re-filing of Cases**

3.2.1.    All re-files of cases pending or dismissed shall be filed and docketed in accordance with statutory rotation. The district clerk is authorized to transfer and set the re-filed case in the court where the initial misdemeanor indictment or information is or was pending. If the initial case is pending, the setting date assigned to the re-filed case will be the same as that for the initial case. If the initial case is not pending, the re-filed case shall be given an appropriate setting in accordance with these rules.

3.2.2.    All writs of habeas corpus, contempt, and ex parte matters shall be filed and docketed in accordance with these rules. The district clerk is authorized to transfer and set the proceedings in the court where a prior case connection exists or, if no prior connection exists, to transfer the proceeding to the court wherein the hearing on such proceedings is to be conducted.

**3.3.    Special Transfer Situations**

3.3.1.    S.O.B.E.R. Court Transfer on Motion to Revoke

3.3.1.1.    Upon receiving a motion to revoke the probation of a defendant in S.O.B.E.R. Court, and upon consent of the defendant, the judge presiding over the S.O.B.E.R. Court shall sign a docket notation that the case is to be transferred to a judge presiding over a different S.O.B.E.R. Court and specify the court to which the case is to be transferred as directed below.

3.3.1.2.    The Office of Court Management shall maintain a list of all judges presiding over S.O.B.E.R. Court dockets in numerical order by court number. Upon receiving notice that a case is to be transferred under this subsection, the Office of Court Management will consult the list and tell the sending court which judge is next on the list (in sequential order) to receive a revocation transfer. If the sending judge would otherwise be next on the list, the case will be assigned to the following judge and the sending judge will receive the next revocation for which they are eligible.

3.3.1.3.    The sending judge shall sign an order transferring the case to the receiving judge. The judges, coordinators, and clerks shall then proceed as with any other case transfer.

**3.4.    Docket Notation**

3.4.1.    When it has been determined that a case is to be transferred from one court to another, the judge of the sending court shall enter a docket notation that the case is to be transferred and shall specify the court to which the case is to be transferred.

**3.5.    Transfer Order**

3.5.1.    After the docket notation is completed, the clerk of the sending court will prepare a transfer order, obtain the judge's signature, and cause the signed order and court case file to be timely delivered to the clerk of the receiving court. The clerk of the receiving

Harris County Criminal Courts at Law
*Rules of Court*

court will obtain the receiving judge's signature on the transfer order. At that time, the receiving coordinator will set the case in the receiving court and complete the setting information on the bottom of the transfer order.

**3.6.     Entry of Transfer Order**

3.6.1.     The clerk of the receiving court will deliver the completed transfer order and the court file to the district clerk's office. The transfer order will be entered and verified in the records maintained by the Justice Information Management System. The entries in the court case file will be completed prior to data entry/data verification of the transfer order. A copy of the completed transfer order bearing the transaction number will be filed in the court's case file. Duplicate copies of the transfer order shall also be provided to the clerk of the receiving court for delivery to the assistant district attorney assigned to that court and to the defense attorney of record.

**3.7.     Justice Information Management System Update**

3.7.1.     The district clerk shall update the Justice Information Management System records with the case setting date of the receiving court, and shall enter the reason for the transfer. At that time, the setting record remaining in the transferring court will be closed.

**RULE 4.     INITIAL SETTINGS**

**4.1.     First Settings**

4.1.1.     The first setting date of the case shall be known as the arraignment setting, and it shall be provided by the district clerk on all cases except those filed as non-arrests, where instead a capias is issued for the defendant. The clerk shall set first settings in the following manner:

4.1.2.     Cases filed on Monday through Thursday shall be set for arraignment on the same day of the following week. Cases filed on Friday, Saturday, or Sunday shall be set for arraignment on the following Friday.

4.1.3.     Non-arrest cases shall be set for arraignment in accordance with the above rules upon the filing of an executed capias.

4.1.4.     A defendant released from custody on a personal bond under the conditions described in TEX. CODE CRIM. P. ANN. art. 17.033, shall be set to appear in the court in which the case is pending at 9:00 o'clock a.m. on the day of release for the purpose of holding a hearing as required by TEX. CODE CRIM. P. ANN. art. 15.17. If a defendant is released from custody after 9:00 o'clock a.m., the defendant shall appear in court at 9:00 o'clock a.m. on the next business day.

4.1.5.     The criminal law hearing officer ordering the defendant to be released shall, at the time the defendant signs a personal bond, order the defendant, in writing, to appear as provided above, and the hearing officer shall also direct personnel from the Pretrial Services Department to provide the defendant with written notice of the date, time and place that the court will be in session.

4.1.6.     The hearing officer who orders the defendant's release shall immediately notify, by e-mail, the judge and the coordinator of the court in which the defendant is set, notifying them of the defendant's release and pending appearance in that court.

4.1.7.     The district clerk shall enter the first setting at the time the complaint and information are filed. The setting information shall be reflected on the complaint document above the misdemeanor charge literal in a manner that will provide the setting information on

Harris County Criminal Courts at Law
*Rules of Court*

all copies of the indictment, information, and complaint. Further, when a bond is filed with the district clerk, the district clerk shall provide written notice of the case's first setting date to the person filing the bond.

**4.2.    Probable Cause Hearings for Further Detention**

**4.2.1.    Appearance Before A Criminal Law Hearing Officer**

4.2.1.1.    When the district clerk files an indictment, information, or complaint alleging the commission of a misdemeanor offense within the jurisdictional limits of a county criminal court at law and the defendant is in the custody of law enforcement officials in Harris County, the district clerk shall update the electronic records in the automated system to reflect that charges have been filed. Further, by general order of the judges of the county criminal courts at law, all law enforcement officials in Harris County shall cause the pretrial detainees in their respective custody, who have been charged with a class A or class B misdemeanor, to be delivered to the criminal law hearing officer not later than 24 hours after arrest for the purpose of conducting a hearing to determine probable cause for further detention. Personnel and electronic files, along with original and hard copy files, where appropriate, from the district attorney, district clerk, and Pretrial Services Department necessary to conduct the hearings shall be present and made available to the criminal law hearing officer. All detainees will be deemed to have been "taken before a judge or judicial officer" if they are physically present at the hearing, or if their participation is achieved by the use of high-speed, two-way audio/video transmission technology. In circumstances where audio/video technology is utilized, the entire hearing must be recorded and maintained by the court for a period of one hundred twenty (120) days after the hearing. A written record of the proceedings shall be made.

**4.2.2.    Hearing Actions**

4.2.2.1.    The criminal law hearing officer shall perform the following for every person for whom a hearing is conducted:

4.2.2.1.1.    inform the accused in clear, understandable language, or through the use of an interpreter consistent with TEX. CODE CRIM. P. ANN. arts. 38.30 & 38.31, as appropriate, of the charges against him and of any complaint or information that may have been filed against him;

4.2.2.1.2.    inform the accused of the accused's right to retain counsel; of the accused's right to remain silent; of the accused's right to have an attorney present during any interview with peace officers or prosecutors; of the accused's right to terminate police interrogation at any time; of the accused's right to request the appointment of counsel if the accused is indigent; inform the accused of the process for requesting an appointed attorney; ask the accused if the accused requests appointed counsel; and inform the accused that any statement the accused makes can and probably will be used against the accused at trial;

4.2.2.1.3.    if the accused affirmatively requests appointed counsel, the judicial officer shall, if assistance is requested, instruct Pretrial Services Department personnel to assist the accused in completing the form. Pretrial Services Department personnel shall assist the accused in completing the form.

Harris County Criminal Courts at Law
*Rules of Court*

4.2.2.1.4.   if the accused has not yet been interviewed, Pretrial Services Department personnel shall promptly conduct an interview;

4.2.2.1.5.   record the fact that the accused does not request appointed counsel, if applicable;

4.2.2.1.6.   immediately forward, or cause to be forwarded, a request for appointed counsel and any supporting documents to the judge of the court in which the case is pending;

4.2.2.1.7.   determine whether probable cause exists for the further detention of the accused on the charges filed, through the use of live witness testimony, affidavits, the arresting officer's testimony, an analysis of the written offense report, field notes, or other reports prepared by the arresting officer, except in those cases where arrest was pursuant to the issuance of a warrant;

4.2.2.1.8.   in cases involving the offense of stalking or family violence, determine whether a magistrate's order for emergency protection should be entered;

4.2.2.1.9.   enter the basis and results of the findings on the record and have the same included in the papers of the case file maintained by the district clerk;

4.2.2.1.10.   upon a finding that no probable cause for further detention exists, the criminal law hearing officer shall issue a signed order to the sheriff to immediately release the accused from custody in that case; and

4.2.2.1.11.   upon a finding that probable cause for further detention exists, the criminal law hearing officer shall, after determining whether the accused is currently on bail for a separate criminal offense, set the amount of bail required of the accused for release and shall determine the eligibility of the accused for release on personal bond, cash bond, surety bond, or other alternative to scheduled bail amounts, and shall issue a signed order remanding the defendant to the custody of the sheriff. A copy of such finding and return by the sheriff shall be retained by the district clerk in the case file.

4.2.2.1.12.   Judicial officers taking an action as identified above shall direct the clerk to make appropriate entries into the automated system as the facts and law require, as set out below:

4.2.2.1.12.1.   PC FOUND. Used when probable cause is found (i.e. on "to be" warrants, or when defendant is not present)

4.2.2.1.12.2.   WARNS GIVEN. Used when the statutory warnings are given, PC has already been done.

4.2.2.1.12.3.   PC/WARNS DONE. Used when the Judge/Magistrate does both.

### 4.2.3.   Initial Bail Schedule

4.2.3.1.   The bail schedule maintained by the county criminal court at law judges for all misdemeanor offenses occurring within the courts' jurisdiction shall be referred to by the criminal law hearing officer. The initial bail amount may be changed on motion of the court, the hearing officer, or any party subject to the following criteria:

4.2.3.1.1.   the bail shall be sufficiently high to give reasonable assurance that the defendant will comply with the undertaking;

4.2.3.1.2.   the nature of the offense for which probable cause has been found and the circumstances under which the offense was allegedly committed are to be considered, including both aggravating and mitigating factors for which there is reasonable ground to believe shown, if any;

4.2.3.1.3.   the ability to make bail is to be regarded, and proof may be taken upon this point;

4.2.3.1.4.   the future safety of the victim and the community may be considered, and if this is a factor, release to a third person should also be considered; and

4.2.3.1.5.   the criminal law hearing officer shall also consider the employment history, residency, family affiliations, prior criminal record, previous court appearance performance, and any outstanding bonds of the accused.

**4.2.3.2.   Monitoring of Incarcerated Defendants**

4.2.3.2.1.   It shall be the responsibility of the courts' coordinators to monitor daily the status of each detainee still in custody to determine whether the detainee has appeared before the criminal law hearing officer for a detention hearing. If a detention hearing has not been held, the court will hold a hearing as set forth above. The court will also consider the issue of appointment of counsel where raised by the defendant.

**4.3.   Incarcerated Defendants' Twenty-four Hour Setting**

4.3.1.   A twenty-four hour setting will be provided for all cases by the court in which the case is pending, wherein the defendant remains incarcerated in the Harris County Jail. These hearings will be conducted at regular docket calls on Monday through Friday. The defendant shall be docketed in accordance with the following schedule, and in such cases the initial seven-day setting shall be canceled.

| Court Appearance Schedule | | | |
|---|---|---|---|
| **Date Booked** | | **24-Hour Appearance** | |
| Sunday | 0001-2400 | Monday | 0900 |
| Monday | 0001-2400 | Tuesday | 0900 |
| Tuesday | 0001-2400 | Wednesday | 0900 |
| Wednesday | 0001-2400 | Thursday | 0900 |
| Thursday | 0001-2400 | Friday | 0900 |
| Friday | 0001-2400 | Monday | 0900 |
| Saturday | 0001-2400 | Monday | 0900 |

4.3.2.   At all other times (weekends, holidays, and nights), defendants booked into the county jail on any and all process pending in or issued out of the county criminal courts at law, shall be brought immediately before a criminal law hearing officer who shall determine if probable cause exists for the continued detention of the defendant.

Harris County Criminal Courts at Law
*Rules of Court*

### 4.4. Subsequent Settings

4.4.1. All subsequent settings of misdemeanor cases shall be the specific responsibility of the judge or coordinator of each of the county criminal courts at law, who will file a notice of setting in writing with the district clerk or provide notice by entry on the court's docket sheets. That notice is to be used by the clerk for recording data in the automated system.

### 4.4.2. Bond Reinstatement

4.4.2.1. When a case is again active because of the reinstatement of a bond, either with or without cost, the district clerk shall enter a seven-day setting, except when a setting already exists in the system. When a setting already exists, the date in the system shall prevail as the next setting date.

### 4.4.3. Bench Warrants and Attachments

4.4.3.1. Such documents shall have a setting date in the body of the document and the district clerk shall set accordingly.

### 4.4.4. Summons in Lieu of Capias

4.4.4.1. When a misdemeanor information is filed against a corporation in, for example, a pollution case, the process issued shall be a summons rather than a capias. The summons shall require that the corporation make an appearance at 10:00 A.M. on the first Monday next following the expiration of twenty days from the date of service.

4.4.4.2. When a summons is used against a defendant in lieu of a capias in a misdemeanor information that is a re-file of an earlier-filed misdemeanor information, the appearance date on the newly filed case shall be set for the same date as the earlier filed case, except when the earlier filed case has no setting. In that event, both cases shall be set for seven days, and the setting in the re-filed case shall be for arraignment.

4.4.4.3. Neither a summons nor a capias may issue without a judicial finding of probable cause.

### 4.4.5. Notice of Appeal

4.4.5.1. The district clerk shall notify the court coordinator or judge of the court when a notice of appeal is filed in a case in which the court either has entered judgment or suspended the imposition of judgment. The court coordinator shall place the case on the court's docket as directed by the judge, or on the next regular business day. The court coordinator shall notify the defendant and the defendant's attorney-of-record of the setting.

### 4.4.6. Notice to Court When Appeal Bond Not Filed

4.4.6.1. When a defendant has given notice of appeal and an appeal bond has not been filed in the papers of the cause within forty-eight hours, a report shall be sent to the court apprising the court that an appeal bond has not been filed. Upon receiving such a report, the court shall notify the appellant/defendant's attorney. If the appellant/defendant has no attorney, the appellant/defendant shall appear before the court. If the appellant/defendant does not post an appeal bond, the court shall issue a capias for the appellant/defendant.

### 4.4.7. Mandate of Abatement

4.4.7.1.    The district clerk and court coordinator shall notify the staff attorney for the county criminal courts at law upon receipt of a mandate or order of abatement. The court coordinator shall set a date from fourteen (14) to twenty one (21) days from the date of receipt of order or mandate. The coordinator shall notify the surety, the principal, and the attorney-of-record by certified mail.

**4.4.8.    Mandates of Affirmance and Reversal and Remand**

4.4.8.1.    The district clerk, upon receipt of an order or mandate, shall determine whether the defendant is in the Harris County jail. If the defendant is in jail, the case shall be set the next day court is convened. If the defendant is on bond, the district clerk shall immediately issue a capias for the defendant, provide a seven-day setting, and forward the information to the court coordinator. Immediately upon receipt of the information from the clerk, the court coordinator shall notify the attorney-of-record on appeal, the surety on the appeal bond, if one exists, and the appellant by regular mail. The court coordinator shall also attempt to notify the above parties by telephone.

**4.4.9.    Violation of Post Judgment Orders**

4.4.9.1.    The Sheriff shall bring any person arrested for violating a post judgment order issued by a Judge of a County Criminal Court at Law before a Criminal Law Hearing Officer. The Hearing Officer shall determine the identity of the person, and conduct a hearing on the reasons for the person's arrest and enter such orders as provided by law.

**4.4.10.    Petitions for Non-disclosure**

4.4.10.1.    In accordance with TEX. GOV'T CODE § 411.081(d) petitions for non-disclosure are filed with the district clerk, a fee is paid, and the case is set.

4.4.10.2.    Petitions filed under this section will be set by the district clerk, upon collection of the filing fee for fourteen days from the date the petition is filed, or as ordered by the court.

**RULE 5.    ADDING CASES TO THE DAILY DOCKET**

5.1.    Only the judge or the coordinator of the court may approve the addition of a case to the docket.

5.2.    To request the addition of a case to the court's docket, the requesting party (district attorney, defense attorney, court clerk, sheriff, et cetera), shall submit to the court coordinator the case number, defendant's name and status (jail or bond), and the reason for the request.

5.3.    Those cases approved for addition to the court's docket will be submitted via the county criminal courts at law add-on form to the clerk of the court by 3:00 p.m. of the day before the case(s) is/are to be added to the docket. Jail cases may be exempt from this time requirement.

**RULE 6.    DOCKETING OF MISDEMEANOR INDICTMENTS**

6.1.    Upon receipt of a misdemeanor indictment returned by a Harris County grand jury and certification that the case is to be transferred to the docket of the county criminal courts at law, the case shall be randomly filed and docketed into the county criminal courts at law in the manner prescribed by law and in accordance with these rules. The district clerk shall endorse the amount of bail upon the papers of the case in accordance with the bail schedule provided by these rules. The district clerk shall then issue a capias to the sheriff of Harris County, who shall immediately attempt to apprehend the defendant.

**RULE 7.** **DOCKETING OF APPEALS FROM NON-RECORD MUNICIPAL COURTS, JUSTICE OF THE PEACE COURTS, MUNICIPAL COURTS OF RECORD, AND ADMINISTRATIVE LICENSE REVOCATION HEARINGS PURSUANT TO CHAPTERS 524 AND 724 TEXAS TRANSPORTATION CODE**

**7.1.** **Non-Record Municipal Courts, and Justice of the Peace Courts:**

**7.1.1.** **Case Numbering, Filing and Rules of Attraction**

7.1.1.1. All cases received by the district clerk of Harris County, Texas, from a non-record municipal court, or justice of the peace court for the purpose of appealing a misdemeanor conviction entered in such court shall receive a case number and assigned a court in the same manner as a criminal case filed by misdemeanor information or indictment, and using the same rules of attraction.

**7.1.2.** **Notice To Appellant**

7.1.2.1. The de novo appeal shall be set for arraignment and pretrial hearing (as provided by TEX. CODE CRIM. P. ANN. art. 28.01) thirty (30) days from the date that notice of the hearing is sent via regular mail by the district clerk to the defendant at the address shown on his bond. If the bond shows no such address, the notice may be addressed to one of the sureties on the bond. If there are no sureties on the bond, notice shall be sent to the defendant at the address shown on the complaint, or ticket made the basis of the prosecution. The provisions of TEX. CODE CRIM. P. ANN. art. 28.01 shall control the filing and hearing of all matters and the conduct of the proceedings.

**7.1.3.** **Contents of Notice**

7.1.3.1. The notice shall contain the cause number assigned to the appeal and the court into which the case was assigned; the time, date, and location of the court in which the defendant is to appear; and shall contain the following statement:

"The court has scheduled your arraignment and a pretrial hearing in this case on the above date. At this setting you will be asked to enter a plea of not guilty, nolo contendere, guilty, or make any other special plea provided by law. In addition, the Court will hear any matters you or your attorney wish to raise prior to trial at this time. These matters must be raised by written pretrial motion filed with the clerk of the court not later than seven (7) days before the hearing date, unless you receive permission from the judge of the court to file them on another date."

**7.1.4.** **Defendant in Custody**

7.1.4.1. Where the defendant is in custody, the de novo appeal shall be set for arraignment on the next date the court is in session.

**7.2.** **Municipal Courts of Record**

**7.2.1.** **Case Numbering**

7.2.1.1. Each appellate transcript shall be assigned a sequential number using the system established by these courts in 1976.

**7.2.2.** **Case Filing and Rules of Attraction**

7.2.2.1. The district clerk shall file the appellate record into the courts on a rotational basis.

7.2.2.2.  Before assigning a court, the district clerk shall determine by research whether the defendant named in the appeal has a prior connection to an existing appeal. A prior connection is established when a prior pending appeal from a municipal court of record exists.

7.2.2.3.  The district clerk shall file a subsequent appeal in the same court if: (i) the subsequent appeal arose from the same criminal transaction, or (ii) was tried before same jury.

**7.3.  Administrative License Revocation Hearing Authorized By Chapters 524 and 724, Texas Transportation Code**

**7.3.1.  Procedure For The Filing of Cases**

7.3.1.1.  Each petition appealing the suspension, of a person's driving privilege as provided by Chapter 524, or 724, Texas Transportation Code, shall be filed and docketed into the County Criminal Courts at Law, and County Civil Court at Law of Harris County, Texas as provided by the Local Rules of each court division.

**7.3.2.  Random Filing; Rules of Assignment and Attraction**

7.3.2.1.  The district clerk shall assign a petition to the court in which the criminal case resulting from the enforcement contact: (1) is pending; (2) is on appeal; (3) in which a judgment of conviction, or order granting community supervision was entered; or (4) dismissal order was entered, using the criminal case number followed by the suffix "Y".

**RULE 8.  DOCKETING OF CASES: JUDGE RECUSAL OR DISQUALIFICATION**

8.1.  **VOLUNTARY RECUSAL OR DISQUALIFICATION.** Upon voluntarily granting a motion to recuse or disqualify, or on a judge's decision to recuse or disqualify without a motion, the recusing judge shall sign an order referring the case to the Presiding Judge of these courts. If no motion to recuse or disqualify is pending, the recusing judge shall briefly state the reason for the recusal or disqualification in the referral order. The Presiding Judge of these courts shall issue an order directing the clerk to assign a judge to preside over the case using its computerized random assignment program. The judges, coordinators, and clerks shall then proceed as with any other case transfer.

8.1.1.  After a transfer pursuant to Rule 8.1, the clerk shall take the next case that would have otherwise been assigned to the receiving court and instead assign it to the recusing court.

8.2.  **INVOLUNTARY RECUSAL OR DISQUALIFICATION.** Immediately after declining to grant a motion to recuse or disqualify, a judge shall sign an order referring the case to the Presiding Judge of the Second Administrative Judicial Region and direct a member of the Office of County Court Management to transmit the referral order to the regional Presiding Judge. The Presiding Judge of the Second Administrative Judicial Region shall assign a judge in the manner provided by Rule 9.2.4, Regional Rules of Administration of the Second Administrative Judicial Region of Texas. The judge assigned to rule on the motion shall sign an order granting or denying the motion using the form of order promulgated by the region. The order shall be filed with the clerk of the court. If the motion is granted, the district clerk shall use the computerized random assignment program to determine the court to which the case will be assigned. The judge assigned to rule on the motion shall sign an order transferring the case to the randomly selected court. The judges, coordinators, and clerks shall then proceed as with any other case transfer.

Harris County Criminal Courts at Law
*Rules of Court*

**RULE 9.    SETTING AND MODIFYING BAIL SCHEDULE**

9.1.    Pursuant to the agreed final judgment and order of the federal court in *Roberson v. Richardson* (No. H-84-2974), Southern District of Texas (1987)), the Harris County Criminal Court at Law Judges promulgate this initial bail schedule. The district attorney shall affix an initial bail amount at the time a complaint is filed in a county criminal court at law. The initial bail amount shall be determined by either presenting relevant information in the possession of the district attorney to a county criminal court at law judge, or Harris County Hearing Officer, or by applying the initial bail schedule. The district clerk shall record the bail amount set by the judicial officer or applied by the district attorney from the initial bail schedule in the case file. This shall be the exclusive means of setting the initial amount of bail, unless otherwise directed by the Judges of the Harris County Criminal Courts at Law.

**Misdemeanor Bail Schedule**

| Class: | B, Standard Offense | |
|---|---|---|
| | 1st Offense | $500 |
| | 2nd Offense | $500, plus $500 for each prior misdemeanor conviction, plus $1,000 for each prior felony conviction (not to exceed $5,000) |
| Class: | A, Standard Offense | |
| | 1st Offense | $1,000 |
| | 2nd Offense | $1,000, plus $500 for each prior misdemeanor conviction, plus $1,000 for each prior felony conviction (not to exceed $5,000) |
| Class: | Family Violence or Threat of Violence | |
| | 1st Offense | $1,500 |
| | 2nd Offense | $1,500, plus $2,000 for each prior conviction for a violent offense or threat of violence |
| Class: | DWI | |
| | First Offense | $500 |
| | Subsequent Offense | $2,500, plus $1,000 for each prior conviction not to exceed $5,000 |
| Class: | Any offense committed while on bond, community supervision, intervention, or parole | $5,000 |
| | Any motion to adjudicate or revoke community supervision | $5,000 |

9.2.    The initial bail amount shall be determined by application of the bail schedule. In any case where the district attorney desires a bond higher than that on the bail schedule, the district attorney shall make a request to a judge of the county criminal court at law or a criminal law hearing officer. The order, when signed by the judge or hearing officer shall be provided to the district clerk along with the complaint and information for filing.

9.3.    The district clerk shall apply the amount of bond from the bail schedule except in cases where the district attorney has provided the clerk with an order setting bail signed by a judge of a county criminal court at law or a criminal law hearing officer, in which case the clerk will apply the amount of bail provided for in the order setting bail.

Harris County Criminal Courts at Law
*Rules of Court*

9.4. If the clerk does not receive an order setting bail or if the amount of bail exceeds the amount provided for in the bail schedule, the clerk shall make an entry in the bail field as provided by Rule 2D, and bail will then be set by a judicial officer.

## RULE 10. REFUND OF CASH BONDS

10.1. Unless a notice of appeal is given, cash bond deposits will be refunded to depositors other than the defendant upon final disposition of the criminal proceeding. If a notice of appeal is given, refunds will not be given until a replacement bond has been duly filed with the district clerk.

10.2. In the event the criminal proceeding is reversed and remanded to the trial court, no refund or assignment will be granted until a replacement bond has been duly filed with the district clerk.

## RULE 11. BOND FORFEITURE REINSTATEMENTS, DISMISSALS, AND JUDGMENTS

11.1. All bond reinstatement orders, bond forfeiture dismissal orders, and agreed judgments, wherein payments of costs of judgments are involved, shall be presented in person by the bonding agency only to the judge of the court wherein the forfeiture occurred

11.2. The total amount of the costs on bond reinstatements with costs, dismissals with costs, and in the case of agreed judgments the total amount of judgment and costs, will be delivered to the court along with the order of judgment by the bonding company.

11.3. Money orders, cashier's checks, and firm checks, payable to the Harris County district clerk, are the only tender that will be accepted. Cash payments may be made in advance and a receipt obtained from the district clerk and presented with the order or judgment.

11.4. All bonding agencies shall be required to obtain the future setting date from the court coordinator prior to presenting orders of reinstatement and costs. All future settings shall be seven days from the date of the reinstatement order.

11.5. Upon reinstatement, dismissal, or approval of agreed judgment by the judge of the court wherein the forfeiture occurred, the order, judgment, and the accompanying tender shall be delivered by the judge to the clerk of his court for delivery to the district clerk's office.

## RULE 12. APPROVAL OF PERSONAL BONDS

12.1. Whether to approve or deny a personal bond is up to the reviewing magistrate's sound discretion.

12.2. In general, personal bonds are favored in the following types of cases, absent good cause to deny a personal bond:

12.2.1. theft by check;

12.2.2. driving while license suspended or invalid;

12.2.3. gambling offenses;

12.2.4. illegal dumping;

12.2.5. fictitious vehicle license plate or registration;

12.2.6. prostitution;

12.2.7. violation of laws regulating sexually oriented businesses;

12.2.8. public intoxication;

12.2.9. driving without a license;

12.2.10. class B criminal trespass, if the defendant has no prior convictions or community supervision for a Class B or greater offense;

12.2.11. class B retail theft, if the defendant has no prior convictions or community supervision for a Class B or greater offense; and

12.2.12. possessing a drug or marijuana (except possession of synthetic cannabinoids or Class A possession of marijuana), if the defendant has no prior convictions or community supervision for a Class B or greater offense.

12.3. In general, personal bonds are disfavored where the defendant has demonstrated a risk to reoffend or harm society, examples of which might be where:

12.3.1. the defendant is charged with an offense alleged to have occurred while on bond for another offense;

12.3.2. the defendant is charged with multiple offenses (unless both are favored for personal bond under the above criteria; not including offenses punishable by fine only);

12.3.3. the defendant is charged with an offense alleged to have occurred while the defendant was on community supervision;

12.3.4. the defendant appears to be a danger to himself/herself or others; or

12.3.5. the defendant has shown an unwillingness to follow bond conditions in the past.

12.4. In general, personal bonds are disfavored where the defendant has previously failed to appear in court as instructed.

## RULE 13.  SIGNING OF PLEADINGS

13.1. Every pleading, brief, or motion of a party represented by an attorney, shall bear the manuscript signature of at least one of the attorneys of record, in his individual name, along with his state bar card number, address, and telephone number. The pleading, brief, or motion shall further contain a certification that a copy of the document was mailed or hand-delivered to opposing counsel.

## RULE 14.  PREPARATION OF JUDGMENTS

14.1. The district clerk of Harris County, Texas, shall prepare the judgment in the case at the time the judgment is rendered using a form approved by the Judges of these Courts, and present it without delay to the trial judge for approval and signature. Judgments in a multi-count indictment or information shall be prepared by the prosecuting attorney at the time the judgment is rendered and the prosecuting attorney shall present it without delay to the trial judge for approval and signature.

## RULE 15.  PETITION FOR OCCUPATIONAL DRIVER'S LICENSE

15.1. The District Clerk shall only accept for filing, a petition seeking an occupational license resulting from a suspension, revocation, cancellation, or denial of a person's driving privilege expressly covered by these rules. The District Clerk shall direct a person wishing to file a petition seeking an occupational license resulting from a suspension, revocation, denial, or cancellation under a provision not covered in subsection A, below, to the County Clerk of this county.

**15.2.  Filing of Petition for Occupational License**

15.2.1. A person may apply for an occupational license by filing a verified petition with the District Clerk of Harris County, Texas if the person's license:

15.2.1.1.   was automatically suspended, revoked, cancelled or denied upon conviction of an offense in a county criminal court at law as provided by Chapter 521, Transportation Code; or;

15.2.1.2.   was suspended or denied as provided by Chapter 524, or 724, Transportation Code; or

15.2.1.3.   was suspended as provided by Chapter 708 Transportation Code.

### 15.3.   Assignment of Occupational License Petition

15.3.1.   Suspension after conviction. The clerk shall assign the case to the court in which the defendant's driver's license was most recently suspended upon conviction or order granting community supervision as provided by Chapter 521 Transportation Code using the cause number from the case followed by the suffix "R".

15.3.2.   Suspension or denial after failing or refusing to provide a sample of breath or blood. The clerk shall assign the petition to the court in which the criminal case resulting from the failure or refusal is pending, or in which an order dismissing the case was entered, using the cause number of the case followed by the suffix "X".

15.3.3.   Suspension after failing to pay a surcharge resulting from a conviction in a county criminal court at law in Harris County. . The clerk shall assign the petition to the court in which the judgment was entered resulting in the accumulation of a point or points under the Texas Driver Responsibility Program, Chapter 708 Transportation Code using the cause number from the case followed by the suffix "R".

### 15.4.   Setting

15.4.1.   The district clerk shall set the petition on the court's docket seven days from the date it is filed, or on a date set by order of the Judge of the court with jurisdiction.

## RULE 16.   ATTORNEY OF RECORD

16.1.   On the first appearance retained counsel shall complete the Attorney of Record form provided by the court. Upon appointment under the Fair Defense Act, counsel shall complete the appointment order signed by the Judge. Retained or appointed counsel shall file the attorney of record form, or the order appointing counsel with the clerk of the court before the conclusion of his first appearance. The district clerk shall use the attorney of record form, or the order appointing counsel as a source document for data entry into the Justice Information Management System. A written motion and order of the court will be required for withdrawal as attorney of record.

16.2.   The original attorney of record is presumed, under these rules, to continue as attorney when a notice of appeal is filed. When the original attorney of record does not continue to represent the defendant on appeal, then the original attorney of record shall file a motion to withdraw as attorney of record in the county criminal court in which the case is pending. At the time the motion to withdraw is filed, the original attorney of record shall also request a hearing date from the court coordinator who shall set the motion on the court's docket within seven (7) calendar days of presentment. The purpose of this hearing is to allow the court to rule on the motion to withdraw.

16.3.   When notice of appeal is filed and an attorney other than the attorney of record is retained to prosecute the appeal, then appellate counsel shall file a motion to substitute counsel in the county criminal court at law in which judgment was entered. The motion shall be filed at the time notice of appeal is filed, or not later than five (5) calendar days after the date counsel is retained or appointed. The appellate counsel shall also request a hearing date from the court

coordinator who shall set the motion to substitute counsel on the court's docket within seven (7) calendar days of presentment. The purpose of this hearing is to allow the court to rule on the motion to substitute counsel.

16.4.   The written notice of appearance of counsel on appeal will be filed with the clerk for the case file and will become a part of the clerk's transcript on appeal.

16.5.   When an attorney is appointed to represent an indigent defendant, the order appointing counsel shall be the document used to attach the attorney's name to the case as an appointed attorney.

## RULE 17.   JUVENILE DEFENDANTS

17.1.   Any defendant who is charged with a misdemeanor offense within the jurisdiction of the county criminal courts at law of Harris County will be presumed to be an adult until a proper judicial determination is made to the contrary.

17.2.   In any case wherein proof is offered that a defendant may be a juvenile, the sheriff and/or the district attorney are requested to make the court in which the cause is pending aware of the style of the case in which the defendant is suspected to be a juvenile.

17.3.   The court will set the case as soon as possible for a hearing as provided by TEX. CODE CRIM. P. ANN. art. 4.18, to determine if the defendant is a juvenile. Only after that determination will the defendant be released from custody, and the cause transferred to the juvenile court in accordance with TEX. CODE CRIM. P. ANN. art. 4.18, and Section 56.08, Family Code.

17.4.   In all cases wherein a determination is made that a defendant is a juvenile, expeditious transfer of the case will be made to remove the case from the criminal court's docket.

17.5.   The defendant may be released from custody if evidence is provided to the sheriff or other holding agency that the defendant is a juvenile. The evidence affecting the defendant's release shall be presented to the court on the next court workday so that a judicial determination may be made and, if the court finds that the defendant is a juvenile, a transfer to the juvenile court will be immediately processed. Should the court find, however, that the defendant is not a juvenile, appropriate process will be issued for the defendant's arrest.

## RULE 18.   COUNTY CRIMINAL COURT MANAGEMENT PROGRAM

18.1.   The presiding judge is chief executive officer, and is assisted by the co-presiding judge. The court manager assists the presiding and co-presiding judges and provides management, systems, and legal assistance to all courts, as well as training to the coordinators.

**18.2.   Court Manager and Coordinator System for Certain Harris County Courts**

18.2.1.   The courts in Harris County that have the same criminal jurisdiction may establish and maintain a court manager and coordinator system.

18.2.2.   The judges of the courts to which this section applies may appoint a court manager, one or more court coordinators, and other staff as appropriate to the needs of the local jurisdiction. The judges shall by rule designate the qualifications and duties of the court manager and the coordinators to improve criminal justice and expedite the processing of the criminal cases through the county courts. The court manager and the coordinators shall cooperate with state agencies having duties relating to the operation of the courts to promote uniform and efficient justice.

18.2.3.   The court manager and the coordinators serve at the pleasure of the judges.

18.2.4.   The court manager and coordinators are entitled to reasonable compensation as set by the judges of the courts served. The court manager's compensation may not exceed

sixty (60) percent of the salary paid the judges, unless the commissioners' court by order sets the court manager's compensation at a greater amount. The amount paid the coordinators may not exceed fifty (50) percent of the salary paid the judges.

18.2.5.    On the judges' orders, the commissioners' court shall fund the court manager and coordinator system from fines collected by the courts served by the court manager and coordinators. If the fines collected are insufficient to provide the total funding for the program, the county shall provide the additional funds needed.

18.2.6.    This section does not diminish the statutory duties and powers of the sheriff, district attorney, clerk of the court, or any court officer.

### 18.3.    Court Coordinators Training/Salary Plan

18.3.1.    The Harris County Court Coordinators' Career Ladder Salary Plan was created by a joint order of the Judges of the District Courts Trying Criminal cases and the County Criminal Courts at Law of Harris County, Texas. The plan became effective September 1, 1994.

18.3.1.1.    Effective September 1, 1994, all court coordinators employed by a district court or a county court at law shall be placed in Step 7.0 of the plan and shall be exempt from the bachelor's degree requirement for Step 8.0 through Step 12.0. Court coordinators employed on or after September 1, 1994 must meet the annual requirement to attend sixteen (16) hours of continuing education to be eligible for step increases for Step 8.0 through Step 12.0. All persons employed after September 1, 1994 as a court coordinator in a district or county court at law will be paid in accordance with eligibility requirements for plan steps and incentive pay. As amended November 19, 2002, the steps are reduced from 12 to eight.

18.3.1.2.    The anniversary date of the plan will be September 1st of each year.

18.3.1.3.    The Administrative Office of the District Courts and the Office of County Court Management for the county criminal courts at law will certify to the Harris County Budget Office on August 1st of each year the step level and incentive pay eligibility of each court coordinator.

18.3.1.4.    Continuing education is defined as enrollment in, and completion of, sixteen (16) hours of continuing education in courses offered by the Administrative Office of the District Courts and/or the Office of County Court Management, or through attendance at programs offered by the Texas Center for the Judiciary, the Texas Association for Court Administration, the Justice Management Institute, the National Center for State Courts, the Institute for Court Management, the National Association for Court Management, the National Judicial College, the Criminal Justice Center at Sam Houston State University, or other approved programs. Continuing education hours are required in addition to any other educational requirement of this plan.

18.3.1.5.    In addition to the basic salary provided in Step 1.0 through 12.0, incentive pay will be awarded to those persons meeting the minimum eligibility requirements. Similar to other benefits, such as longevity pay, incentive pay follows the "person," not the "position," and incentive pay is not considered when cost of living increases are calculated.

18.3.1.6.    For completion of at least sixty (60) hours of college credit, or for attainment of an associate's degree, a person will be eligible for a step classification of 0.1 and incentive pay of $75.00 per month. To be eligible for plan credit, at least half of

Harris County Criminal Courts at Law
*Rules of Court*

the credit hours must be from the following subject areas: English, math, computer science, accounting, management or public administration, human resource or personnel management, psychology, sociology, criminal justice, law, government or political science, or a foreign language. All hours must be granted from an institution recognized by the Texas Higher Education Coordinating Board, or must be transferable to one of its recognized institutions. A person who has graduated from the Executive Development Program of the Institute for Court Management of the National Center for State Courts meets the minimum requirement for this incentive pay step.

18.3.1.7.   A person who is multilingual and has been certified, through written and oral examination, to interpret in the courts is eligible for incentive pay step 0.1.

18.3.1.8.   For attainment of a bachelor's degree, a person will be eligible for a step classification of 0.2 and incentive pay of $150.00 per month. The major area of study or at least half of the earned credit hours must be from one of the following subject areas: English, math, computer science, accounting, management or public administration, human resource or personnel management, psychology, sociology, criminal justice, law, government or political science, or a foreign language. All hours must be granted from an institution recognized by the Texas Higher Education Coordinating Board or be transferable to one of its recognized institutions.

18.3.1.9.   For attainment of a master's degree, a person will be eligible for a step classification of 0.3 and incentive pay of $225.00 per month. The major area of study or at least half of the earned credit hours must be from one of the following subject areas: English, math, computer science, accounting, management or public administration, human resource or personnel management, psychology, sociology, criminal justice, law, government or political science, or a foreign language. All hours must be granted from an institution recognized by the Texas Higher Education Coordinating Board or be transferable to one of its recognized institutions.

## 18.4.   Staff

### 18.4.1.   Court Manager

18.4.1.1.   The County Criminal Court Manager is chosen by a majority of the county criminal court at law judges and hired by the presiding judge. Although the court manager serves at the pleasure of the courts, the court manager's primary responsibility is to the presiding judge of the county criminal courts at law.

### 18.4.2.   Assistant Court Manager (Project Analyst)

18.4.2.1.   The assistant court manager is interviewed and hired by the court manager with the approval of the presiding judge. This person also serves as the project analyst for the county criminal courts at law.

### 18.4.3.   Staff Attorney

18.4.3.1.   The staff attorney for the county criminal courts at law is appointed by the presiding judge and hired by the court manager.

## RULE 19.   CODE OF JUDICIAL CONDUCT

19.1.   All persons employed by the county criminal courts at law in any capacity shall, within the first thirty days of employment, be apprised of the contents of the Code of Judicial Conduct

by the court manager, or by the staff attorney at the direction of the court manager, as the Code applies to the affected employee. The employee shall have an opportunity to ask appropriate questions related to the intent and meaning of the Code. When the meaning and intent of the Code of Judicial Conduct is understood by the employee, the acknowledgment on the following page shall be executed and signed with at least one witness present. The completed acknowledgment shall be filed in the employee's personnel file folder, and a copy shall be retained by the employee (see form at Policies and Procedures, Appendix, Page A-8).

## RULE 20. COURT REPORTERS

### 20.1. Absent and substitute court reporters.

20.1.1. A court reporter in a county criminal court at law will be allowed only that vacation and sick leave time as approved by the commissioners' court for Harris County employees. In the event of a court reporter's absence that is not covered by approved vacation or sick leave time, that court reporter will be responsible for paying the costs to provide the court with a substitute reporter.

20.1.2. During the approved absence of a court reporter, the Office of County Court Management shall be contacted to determine whether a reporter from another county criminal court at law is available before a substitute is hired, unless the court's reporter has made prior arrangements for coverage with another court reporter.

## RULE 21. SATISFACTION OF JUDGMENT: ORDER PERMITTING PARTIAL PAYMENT ON FINES AND COSTS

21.1. The Sheriff of Harris County, Texas is directed to accept either the full amount or a partial amount of any fine, court costs or fees lawfully adjudged against a defendant. The sheriff or his designated deputy shall notify the judge of the court with jurisdiction over the defendant within 72 hours that partial funds were remitted, and shall include the (1) case number; (2) name of the defendant; (3) amount remitted; (4) date remitted; and (5) amount outstanding, as reflected in the records of the sheriff.

## RULE 22. VIEWING AND COPYING DWI VIDEO TAPES

22.1. A pro se defendant or the attorney whose name appears on the court's Attorney of Record form required under Rule 16 shall be permitted to view and obtain a copy of a videotape made pursuant to Acts, 1983, CH. 303, §24, without an order. Either the pro se defendant or attorney of record may designate a third party to obtain a copy of a video tape by designating that person or company on the attorney of record form or separate motion to the court.

22.2. The Harris County District Attorney shall permit the pro se defendant, or the attorney of record or a third party to view and obtain a copy of a video tape at a time and place mutually agreeable to the parties.

22.3. To obtain a copy of a video tape the pro se defendant, the defendant's attorney or a designated third party shall provide the Harris County District Attorney with a blank video tape cassette or other recording medium agreeable to the parties and the court.

22.4. The district clerk shall enter the name of the designated person or company into the Justice Information Management System by utilizing an appropriate connection code that can be viewed on the computer transaction that shows parties connected to a case number.

22.5. Rule 22 is effective upon completion of changes in the Justice Information Management System that will facilitate compliance with these rules, but not later than the first day of August 1999.

**RULE 23. RELEASE OF CLERK'S RECORD TO COUNSEL**

23.1. The attorney representing a defendant appealing a judgment of a county criminal court at law shall be permitted the use of a copy of the Clerk's Record. Before releasing a copy of the Clerk's Record, the District Clerk of Harris County or a deputy clerk shall determine from the records in his possession the identity of the attorney of record on appeal. The District Clerk or a deputy clerk shall only release a copy of the Clerk's Record to the attorney representing the defendant on appeal. If the identity of the attorney of record on appeal cannot be ascertained or is in dispute, the clerk shall refer the attorney to the judge of the court in which judgment was entered and shall not release a copy of the Clerk's Record without a written order from a judge of a county criminal court at law.

23.2. The District Clerk shall develop procedures to ensure that copies of the Clerk's Record are released and returned in a timely manner and their location always known.

**RULE 24. ALTERNATIVE PLAN FOR THE APPOINTMENT OF COUNSEL TO INDIGENT DEFENDANTS UNDER THE FAIR DEFENSE ACT**

24.1. **DEFINITIONS**

24.1.1. *Appointing authority* means the Judges of the County Criminal Courts at Law of Harris County, Texas.

24.1.2. *Approved attorney* means an attorney meeting the objective qualifications of this Plan, and approved by a majority of the Judges of these Courts.

24.1.3. *Appointment manager* means the person who implements appointment procedures.

24.1.4. *A day* means a single day on which an attorney is assigned to appear in a court.

24.1.5. *Case* means each cause number, or count in which a defendant is charged with a separate offense. *See* Office of Court Administration, Texas Judicial Counsel Monthly Report Instructions.

24.1.6. *Contract* means the agreement between an approved attorney and the Harris County Commissioners Court meeting the requirements established by the Texas Indigent Defense Commission.

24.1.7. *Contract Defender Program*. Contract defender program means a system under which private attorneys, acting as independent contractors and compensated with public funds, are engaged to provide legal representation and services to a group of unspecified indigent defendants who appear before a particular court or group of courts.

24.1.8. *Contracting Authority*. The contracting authority is the Commissioners Court of Harris County, Texas.

24.1.9. *Contractor*. The contractor is an individual attorney licensed to practice law in the State of Texas, meeting the eligibility criteria in this Plan that can be bound by contract.

24.1.10. *Criminal Law Hearing Officer* means a judicial officer created by Chapter 54, Subchapter L of the Texas Government Code (§ 54.851 et seq.)

24.1.11. *Defendant* means a person accused of a crime or juvenile offense, as those terms are defined by Section 71.001 of the Texas Government Code.

24.1.12. *Disposed* means:

24.1.12.1. entry of an order dismissing the case;

24.1.12.2.   the defendant has been sentenced after a plea of guilty or no contest;

24.1.12.3.   trial on the merits resulting in a verdict;

24.1.12.4.   entry of an order granting community supervision;

24.1.12.5.   a motion for new trial has been overruled;

24.1.12.6.   submission of a brief on appeal;

24.1.12.7.   granting or denial of an application for writ of habeas corpus or other extraordinary relief.

24.1.13.    *Fair Defense Act Management System* (FDAMS)

24.1.14.    *First-chair counsel* means the attorney in charge of the case.

24.1.15.    *He* or *him* refers to a male or female.

24.1.16.    *Household* means all individuals who are actually dependent on the defendant for financial support.

24.1.17.    *Indigent* means a person who is not financially able to employ counsel. A person is presumed indigent if the total income derived by that person (and any of his dependents) is equal to or less than 125% of the United States Health and Human Services poverty guidelines applicable to that defendant's family/household.

24.1.18.    *Itemized Fee Voucher*. The itemized fee voucher shall be in electronic form promulgated by these courts and approved by the Harris County Auditor. It shall include at a minimum all the information necessary for the county auditor or other designated official to complete the expenditure report required to be submitted to the Office of Court Administration by Section 71.0351 (e), Government Code.

24.1.19.    *Judge* means a Judge of a Harris County Criminal Court at Law.

24.1.20.    *Judicial Officer* means a Judge of a Harris County Criminal Court at Law, or a Harris County Criminal Law Hearing Officer.

24.1.21.    *Majority of judges* means not less than: (a) eight of the duly elected and qualified judges of the Harris County Criminal Courts at Law prior to January 1, 2016; or (b) nine of the duly elected and qualified judges of the Harris County Criminal Courts at Law on or after January 1, 2016.

24.1.22.    *Plan* means the Alternative Plan adopted by the Judges of the County Criminal Courts at Law of Harris County, Texas, on November 5, 2015.

24.1.23.    *Probable cause* means a reasonable ground, based upon the facts and circumstances, sufficient to warrant a prudent man to believe that the defendant has committed each element of the offense charged and the defendant is culpable, it being understood that if there is a sufficient defense established by testimony or documentation of the arresting agency, then there is no "probable cause".[1]

24.1.24.    *Public Defender* means the Chief Public Defender of the Harris County Public Defender's Office.

---

[1]   *Roberson v. Richardson*, Civil Action No. H084-3659, United States District Court For The Southern District of Texas, Houston Division (1987).

24.1.25.   *Second-chair counsel* means an attorney who is not eligible to be appointed as first-chair counsel, who volunteers for the purpose of gaining experience, knowledge, and competency in the representation of a defendant.

24.1.26.   *Taken before a magistrate* means either physically bringing the defendant before the judicial officer in person or the image of the arrested person may be presented to the magistrate by means of an electronic broadcast system.as provided by TEX CODE CRIM. PROC. ART. 15.17(a).

24.1.27.   *The cost of obtaining competent private legal representation* includes the reasonable cost of support services such as investigators and expert witnesses as necessary and appropriate given the nature of the case.

24.1.28.   *Working day* means Monday through Friday, except official federal, state, and county holidays.

## 24.2.   PROMPT AND ACCURATE MAGISTRATE PROCEEDINGS.

24.2.1.   DUTY OF ARRESTING OFFICER. The arresting officer, or the person having custody of the arrestee, shall ensure that every arrestee shall be brought before a judicial officer without unnecessary delay, but not later than 48 hours after the person is arrested.

24.2.1.1.   Unless arrested pursuant to an arrest warrant, bench warrant, capias, or other order of a magistrate or judge, necessary forms establishing probable cause shall be completed and filed contemporaneous with the arrestee being booked into the Harris County Jail for any misdemeanor punishable by incarceration.

24.2.2.   RELEASE OF DEFENDANT ARRESTED WITHOUT WARRANT. A person arrested for a misdemeanor without a warrant and who is detained in jail must be release not later than the 24th hour after arrest, on a bond in an amount not to exceed $5,000, if a judicial officer has not determined that probable cause exists to believe that the person committed the offense for which the person is charged.

24.2.3.   POSTPONED RELEASE. If requested by the State of Texas, a judicial officer may postpone the release of the defendant for not more than 72 hours after the defendant's arrest if a probable cause determination has not been made, in compliance with the procedure set forth in ART. 17.033, TEX CODE CRIM. PROC. ARTS.

24.2.4.   RECORD OF PROCEEDING. In each case in which a person arrested is taken before a judicial officer, any combination of an electronic recording, written form, or other documentation memorializing:

24.2.4.1.   the judicial officer informing the defendant of the defendant's right to request appointment of counsel;

24.2.4.2.   the judicial officer asking the person whether the person wants to request the appointment of counsel;

24.2.4.3.   instruction on how to request the appointment of counsel and

24.2.4.4.   whether the person requested the appointment of counsel.

24.2.5.   DEFENDANT BROUGHT BEFORE JUDICIAL OFFICER. The judicial officer shall determine if the defendant can speak and understand the English language, or if the defendant is deaf or hearing impaired.

24.2.6.   INTERPRETER. If the person does not speak and understand the English language or is deaf, the judicial officer shall in an appropriate manner, and consistent with ARTS.

Harris County Criminal Courts at Law
*Rules of Court*

38.30, and 38.31, TEX. CODE CRIM. PROC. ARTS., communicate with the defendant using an interpreter.

24.2.6.1. TRANSLATE FORMS AND DOCUMENTS. Interpreters provided at County expense shall provide sight translation of court documents and correspondence associated with the case or proceeding.[2]

24.2.7. THE HEARING. The judicial officer shall inform the defendant of the nature of the charge and of any affidavit, if available, filed therewith:

24.2.7.1. The officer shall admonish the defendant of:

24.2.7.1.1. the right to retain counsel;

24.2.7.1.2. the right to remain silent;

24.2.7.1.3. the right to have an attorney present during any interview with peace officers or attorneys representing the State of Texas;

24.2.7.1.4. the right to terminate an interview at any time;

24.2.7.1.5. the right not to make a statement and that any statement made by the defendant may be used against the defendant.

24.2.8. INFORMATION AND EXPLANATION OF THE RIGHT TO COUNSEL.

24.2.8.1. The judicial officer shall:

24.2.8.1.1. Inform the defendant of the right to appointed counsel if the person cannot afford counsel and the procedures for requesting appointment of counsel in the trial court;

24.2.8.1.2. Inquire as to whether the defendant is requesting that counsel be appointed;

24.2.8.1.3. Clearly note on the magistrate's admonishment form, or Probable Cause for Further Detention form, the defendant's choice viz: to request the appointment of counsel or not to request the appointment of counsel.

24.2.8.2. If the judicial officer has reason to believe the defendant is not mentally competent, the judicial officer shall enter a request for counsel on behalf of the defendant to alert the judge of the court in which the case is pending that counsel with the specialized skills necessary to represent mentally ill, or intellectually disabled should be appointed to the case.

24.2.9. DETERMINATION OF PROBABLE CAUSE FOR FURTHER DETENTION. In a case where the individual was arrested without an arrest warrant, bench warrant, or capias, or other order of a magistrate or judge, the judicial officer shall determine whether there is probable cause to believe the person committed the offense stated in the complaint.

24.2.10. SETTING BAIL. The judicial officer shall set the amount of bail and consider the defendant for release on a personal bond.[3]

24.2.11. ARREST ON OUT-OF-COUNTY WARRANT. The judicial officer and district clerk shall follow the same procedure for a person arrested on one or more out-of-county warrants.

---

[2] Rule 5.2, Harris County Limited English Proficiency (LEP) Plan for Court Proceedings required by 42 U.S.C. 2000d, *et seq* (2015).

[3] *Roberson v. Richardson,* supra.

24.2.11.1. If the arrestee requests the appointment of counsel, the judicial officer shall ask the arrestee to complete an affidavit of indigence and financial statement, and shall ensure the arrestee has assistance in completing the forms.

24.2.11.2. The district clerk shall transmit the form to the county issuing the warrant within 24 hours of the request being made.

24.2.12. THE MAGISTRATE SHALL RECORD THE FOLLOWING:

24.2.12.1. The date and time the defendant was arrested and the date and time when the defendant was brought before the magistrate;

24.2.12.2. Whether the judicial officer informed the defendant of the right to request appointment of counsel, and the procedure for requesting counsel in the trial court; and

24.2.12.3. Whether the defendant requested appointment of counsel.

24.2.13. TIMELY TRANSMISSION OF FORMS TO THE TRIAL COURT. The District Clerk of Harris County, Texas, through a deputy district clerk, shall immediately transmit or cause to be transmitted the magistrate's form or Probable Cause for Further Detention form to the judge of the court in which the case is pending for use the following business day to timely conduct an indigence hearing as requested by the defendant.

## 24.3. RIGHT TO APPOINTED COUNSEL.

24.3.1. A defendant found to be indigent as that term is used herein, and who requests appointed counsel has the right to counsel:

24.3.1.1. in any adversarial judicial proceeding that may result in punishment by confinement;

24.3.1.2. in any criminal proceeding before the court if the judge concludes that the interests of justice require representation;

24.3.1.3. in a direct appeal to a court of appeals;

24.3.1.4. following arrest for violating a condition of community supervision; and

24.3.1.5. following arrest on an out-of-county warrant.

24.3.2. The judge of the court may also appoint counsel, in the interests of justice to a person appearing before the court, regardless of the person's financial status.

## 24.4. DETERMINING INDIGENCE.

24.4.1. Procedures Used to Determine Indigence.

24.4.1.1. Indigence is determined by the judge of the court with dispositive jurisdiction. The judge may require the defendant to respond to questions about the defendant's financial status, produce documentation supporting financial information provided, and/or order a court official to verify financial information provided.

24.4.1.2. A request by the appointing authority for additional information, documentation, and/or verification cannot delay appointment of counsel beyond the timelines specified in ART.1.051. TEX. CODE CRIM. PROC.

Harris County Criminal Courts at Law
*Rules of Court*

24.4.2. FINANCIAL STANDARD. For purposes of appointing counsel, a person is indigent if the person is not financially able to employ counsel.[4] The standard shall apply to each defendant equally, regardless of whether the defendant is in custody or is released on bail.

24.4.3. FACTORS FOR DETERMINING INDIGENCE. A judge shall consider the following factors in determining whether a defendant is indigent:

24.4.3.1. defendant's income,

24.4.3.2. source(s) of income,

24.4.3.3. assets and property owned, or in which the defendant has an interest,

24.4.3.4. outstanding obligations,

24.4.3.5. necessary expenses,

24.4.3.6. the number and ages of dependents, and

24.4.3.7. spousal income that is available to the defendant.

24.4.4. PRESUMPTIONS.

24.4.4.1. The defendant is presumed to be indigent if his net household income does not exceed 125% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register.

24.4.4.2. A defendant determined to be indigent is presumed to remain indigent for the remainder of the case unless a material change in the defendant's financial circumstances occurs.

24.4.5. USE OF INFORMATION LIMITED. Information gathered for determining indigence, both in the affidavit of indigence and through oral examination, may not be used for any purpose other than:

24.4.5.1. Determining if defendant is (or is not) indigent; or

24.4.5.2. Impeaching direct testimony of defendant regarding the defendant's indigence.

24.4.6. REVIEW. A defendant's status as indigent or not indigent may be reviewed in a formal hearing at any stage of court proceedings, on a motion for reconsideration by the defendant, the defendant's attorney, or the attorney representing the state.

24.4.6.1. The defendant's indigent status will be presumed not to have changed. The presumption can be rebutted in the review proceedings based on the following:

24.4.6.2. Evidence of a material change in the defendant's financial circumstances, as a result of which the defendant does not meet any of the standards for indigence contained in these rules; or

24.4.6.3. Additional information regarding the defendant's financial circumstances that shows that the defendant does not meet any of the standards for indigence contained in these rules.

24.4.6.4. If a defendant previously determined to be indigent is subsequently determined not to be indigent, the attorney shall be compensated by the county according to the fee schedule for hours reasonably expended on the case.

---

[4] *See* TEX. CODE CRIM. P. ANN. art. 1.051(b).

Harris County Criminal Courts at Law
*Rules of Court*

24.4.6.5. If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs, the amount that it finds the defendant is able to pay.

**24.5. Establishing Minimum Attorney Qualifications.**

24.5.1. **QUALIFICATIONS.** To be qualified an attorney must submit a completed application, resume, recent photograph, and signed attorney acknowledgement form. The attorney must also:

24.5.1.1. Have been licensed to practice law for at least one year;

24.5.1.2. Have accumulated a minimum of **10 points** according to the following scale, at least **2 points** of which are from cases tried to verdict as first chair counsel (the attorney shall list the point total in each area with the application):

24.5.1.2.1. **Two points** for each continuous 365-day period in the preceding 3 years as a practicing attorney (up to 3 periods with 5 points maximum);

24.5.1.2.2. **Two points** for each successfully completed intensive criminal law training program in the last 3-year period appearing on the courts' list of approved intensive training programs (see Appendix A) (up to 4 points maximum);

24.5.1.2.3. **One point** for each criminal case tried to a verdict in county or district court as first-chair counsel (list case styles and cause numbers) (up to 5 points maximum; at least 2 points required);

24.5.1.2.4. **One point** for each continuous 120-day period in the preceding 3 years as an intern or legal assistant working under the supervision of a Texas lawyer whose practice was devoted at least 80% to criminal law in county or district courts (up to 3 points maximum);

24.5.1.2.5. **One point** for each Texas State Bar approved CLE lecture given by the attorney, with accompanying written materials, on a criminal law topic (provide written materials and list CLE title, date, and location) (up to 2 points maximum);

24.5.1.2.6. **One point** for each CLE reporting period in the last 3 years in which the attorney attended at least 40 hours of CLE training related to criminal law (provide annual CLE printouts) (up to 2 points maximum);

24.5.1.2.7. **One point** for each law review article authored by the attorney and published by an ABA-accredited law school on a criminal law topic (attach article and citation) (up to 1 point maximum); and

24.5.1.2.8. **One-half point** for each criminal case tried to a verdict in county or district court as second-chair counsel (list case styles and cause numbers) (up to 5 points maximum). To claim credit in this subsection, the attorney must have been present during the entire trial, from jury selection through final verdict;

24.5.1.3. Demonstrate substantive knowledge of criminal law, criminal procedure, and evidentiary rules applicable to misdemeanor cases by scoring at least 75% on an open-book test written by judicial staff and members of the Public Defender's Office of Harris County, Texas;

24.5.1.4. Maintain telephone and fax numbers, as well as a physical location (other than a public building) in which the attorney can conduct confidential meetings and discussions without compromising professionalism and the attorney-client privilege;

24.5.1.5. Have attended at least 10 hours of CLE related to criminal law in the year prior to filing an application (submit CLE verification);

24.5.1.6. Agree to attend at least 10 hours of CLE related to criminal law annually, including one hour of ethics, and annually submit an affidavit showing compliance with this CLE requirement;

24.5.1.7. Agree to attend CLE programs as directed by the Presiding Judge of these courts;

24.5.1.8. Agree to submit an affidavit showing compliance with the annual CLE requirements;

24.5.1.9. Provide (and keep current) an email address to which the Office of County Court Management may send official notices and correspondence regarding the Plan, including, but not limited to, matters concerning CLE, changes to the Plan and eligibility requirements, notice of removal from the approved list, and other administrative matters;

24.5.1.10. Consistently demonstrate commitment to providing effective assistance of counsel and quality representation to criminal defendants;

24.5.1.11. Maintain a demeanor which is professional and conducive to effective representation;

24.5.1.12. Demonstrate effectiveness of advocacy skills including, but not limited to, such items as: voir dire; direct and cross examination; introduction of, objection to, and admissibility of evidence; argument; instructions; and recognition of appellate issues;

24.5.1.13. Communicate effectively with the other parties involved in his cases. The attorney must make thorough use of sentencing laws, seeking imaginative and creative sentencing alternatives;

24.5.1.14. Appear in court punctually and keep the court apprised of his whereabouts;

24.5.1.15. Be cognizant that the manner in which he or she interacts with judicial officers, prosecutors, courtroom personnel, law enforcement personnel, co-counsel, and other members of the justice system contributes to the effective representation of his indigent clients;

24.5.1.16. Be of sound mind;

24.5.1.17. Agree to report to the Texas Indigent Defense Commission, by October 15th of each year, the percentage of the attorney's practice time that was dedicated to work based on appointments accepted in Harris County for adult criminal and juvenile delinquency cases for the prior year (term beginning on October 1st and ending September 30th); and

24.5.2. **CONTINUING DUTIES; EXCEPTIONS.** A qualified attorney that has not been removed from the list of qualified attorneys must fulfill the obligations, expectations, and agreements listed in Rule 24.5.1, except that the attorney need not annually:

24.5.2.1. Resubmit an application, resume, and photograph; or

24.5.2.2.    Retake the competency exam (see Rule 24.5.1.4).

24.5.3.    **OBLIGATION TO REPORT CERTAIN OCCURRENCES.** A qualified attorney shall notify the presiding judge of these courts not later than 48 hours after any of the following events:

24.5.3.1.    The attorney's arrest for any state or federal offense punishable by confinement;

24.5.3.2.    The attorney's placement on community supervision, diversion, or intervention;

24.5.3.3.    Any judicial finding that the attorney provided ineffective assistance of counsel;

24.5.3.4.    Disciplinary action by the State Bar of Texas against the attorney, including but not limited to any active or probated suspension; or

24.5.3.5.    The attorney enters a plea of guilty or no contest to, or is found guilty of, an offense punishable by confinement.

24.5.4.    SPECIALTY COURT PROGRAMS, PUBLIC DEFENDER, DEFENSE SPECIALISTS.[5] These categories provide opportunities for lawyers to diversify their practices, to control the size of their caseloads, to choose the types of cases they handle, and to have access to adequate resources to properly defend their clients.

24.5.4.1.    SPECIAL MENTAL HEALTH CASELOAD. An assistant Harris County Public Defender with significant previous experience and specialized training in representing mentally ill and intellectually disabled persons charged with a criminal offense, shall represent a defendant:

24.5.4.1.1.    Identified by an algorithm composed of data approved by the judges covered by this Plan in consultation with the chief public defender, indicating a likelihood that mental illness and/or intellectual disability is/are a factor in the defendant's arrest;

24.5.4.1.2.    Arrested at least three times during the twelve months prior to the current arrest, with a medical and social history suggesting that court ordered step-down therapy may reduce the probability of future arrests; or,

24.5.4.1.3.    Following a finding by a court that the defendant is incompetent.

24.5.4.2.    MENTAL HEALTH DEFENSE SPECIALIST. Represents a defendant identified using the mental health algorithm; a defendant found incompetent; or a defendant manifesting signs of mental illness when the Public Defender's Office reaches its daily or annual case load cap. The attorney must:

24.5.4.2.1.    Meet the general qualifications; and

24.5.4.2.2.    Meet at least one of the following three requirements:

24.5.4.2.3.    Has previous experience representing mentally ill offenders in Texas;

24.5.4.2.4.    Possesses an undergraduate or graduate degree in social work or a related field; and/or

24.5.4.2.5.    Attended the four hour Mental Health Defense Specialist seminar sponsored by the Harris County Public Defender's Office.

---

[5]   "Specialist," as used in these Rules, does not refer to any certification through the Texas Board of Legal Specialization.

24.5.4.3. APPEALS AND HABEAS CORPUS. The Harris County Public Defender shall represent all persons appealing a judgment or order of these courts. If, because of a conflict, the public defender is unable to represent a defendant on appeal, a judge shall request the names of qualified appellate attorneys from which he or she shall select a name.

24.5.4.3.1. This category provides counsel in cases where the Public Defender's Office has a conflict. The attorney must:

24.5.4.3.1.1. Meet the general qualifications; and

24.5.4.3.1.2. Have been attorney of record in at least five direct appeals and the appeal of adverse rulings in at least two writs of habeas corpus.

24.5.4.4. BILINGUAL ATTORNEY. Represents a defendant who does not speak or understand the English language. The attorney must:

24.5.4.4.1. Meet the general qualifications; and

24.5.4.4.2. Demonstrate a Level III proficiency in a foreign language administered by a nationally recognized entity or organization that teaches individuals to read, write, and speak foreign languages through on-site instruction in Harris, County, Texas.

24.5.4.5. FUGITIVE DEFENSE SPECIALIST. Represents a person who has been arrested in Harris County, Texas on a warrant from another state or another county in Texas. The attorney must:

24.5.4.5.1. Meet the general qualifications; and

24.5.4.5.2. Have previous experience representing fugitives, The State of Texas, or both, in hearings or writ applications before a judge or magistrate involving defendants held under authority of out-of-state or out-of-county warrants.

24.5.4.6. S.O.B.E.R COURT PROGRAM ATTORNEY. Represents a defendant in the S.O.B.E.R Court Specialty program for persons convicted of driving while intoxicated. The attorney must:

24.5.4.6.1. Meet the general qualifications;

24.5.4.6.2. Observe one staffing and review in each S.O.B.E.R. Court;

24.5.4.6.3. Read selected articles on specialty courts, and the role of defense counsel in specialty courts;

24.5.4.6.4. Work under the direction of a S.O.B.E.R. Court mentor attorney, representing program participants for 60 days;

24.5.4.6.5. Agree to attend grant sponsored specialty court training; and

24.5.4.6.6. Agree to an hourly fee for professional services, and which does not include training (except for representation of a client under a mentor); graduations, or other activities.

24.5.4.7. VETERAN'S COURT PROGRAM ATTORNEY. Represents a Veteran or current member of the United States armed forces, including a member of the Reserves, National Guard or State Guard, who has been accepted into Veterans Court Program. The attorney must:

24.5.4.7.1. Meet the general qualifications;

24.5.4.7.2. Read selected articles on specialty courts, and the role of defense counsel in specialty courts;

24.5.4.7.3. Observe three dockets (staffing and review);

24.5.4.7.4. Agree to attend grant-sponsored team training; and

24.5.4.7.5. Agree to an hourly fee for professional services, and which does not include training (except for representation of a client under a mentor); graduations, or other activities.

24.5.4.8. S.A.F.E. COURT PROGRAM ATTORNEY. Represents a defendant who is charged with prostitution, from the age of 17 years of age through the age of 25 years of age who has been accepted into the S.A.F.E. Court program. The attorney must:

24.5.4.8.1. Meet the general qualifications;

24.5.4.8.2. Read selected articles on specialty courts, and the role of defense counsel in specialty courts;

24.5.4.8.3. Observe three dockets (staffing and review);

24.5.4.8.4. Agree to attend grant sponsored team training; and

24.5.4.8.5. Agree to an hourly fee for professional services, and which does not include training (except for representation of a client under a mentor); graduations, or other activities.

24.5.5. DEAF OR HEARING IMPAIRED. Represents a defendant who is deaf, or severely hearing impaired. The attorney must:

24.5.5.1. Meet the general qualifications;

24.5.5.2. Have a working knowledge of American Sign Language or other universally accepted sign language; and

24.5.5.3. Possess the willingness to work through a state-licensed interpreter for the deaf and hearing impaired.

24.6. APPROVAL OF QUALIFIED ATTORNEYS. Approval decisions are based on an assessment of the need of the Courts to add attorneys in various categories based on an analysis of current caseloads and projections for the future.

24.6.1. The judges will review qualified applications at their January, May, and September meetings, or as the needs of the courts require.

24.6.2. MAJORITY VOTE FOR APPROVAL. A majority vote (nine votes) of the judges presiding over the County Criminal Courts at Law is necessary to approve an attorney's placement on the list of Attorneys Eligible for Appointment.

24.6.3. ADMINISTRATIVE MEETING. Prior to the first appointment period, each approved attorney shall attend a two hour meeting with the Courts' staff attorney to review the F.D.A.M.S. and V.i.P.S. electronic assignment and payment procedures.

24.6.4. ANNUAL DUTY TO REPORT CLE COMPLIANCE. The annual reporting period begins on November 1st and ends October 31st of the following year.

24.6.5. FORM OF REPORT. CLE hours shall be reported by submitting the State Bar of Texas Minimum Continuing Legal Education annual Verification Report or reports attached to an affidavit attesting to the truth and accuracy of the report(s).

24.6.6.    COMPLIANCE. Each attorney is responsible for timely filing the attorney's CLE report and affidavit with the Office of County Court Management, 1201 Franklin Street, 7th Floor, Houston, Texas 77002.

**24.7.    VOLUNTARY AND INVOLUNTARY REMOVAL OF APPROVED ATTORNEY FROM THE LIST OF ELIGIBLE ATTORNEYS AND APPEAL.**

24.7.1.    INVOLUNTARY REMOVAL. The judges, by majority vote, may remove an attorney from the approved list if they find the attorney:

24.7.1.1.    no longer meets the qualifications under 24.5;

24.7.1.2.    is not competent to properly represent indigent defendants in the County Criminal Courts at Law; or

24.7.1.3.    intentionally or repeatedly fails to make every reasonable effort to contact a defendant not later than the end of the first working day after the date on which the attorney is appointed, and to interview the defendant as soon as practicable after the attorney is appointed.

24.7.2.    VOLUNTARY REMOVAL. An attorney may request to be removed from the list of approved attorneys for a limited or indefinite period by making such request in writing, addressed to the Presiding Judge of the County Criminal Courts at Law.

24.7.3.    REINSTATEMENT. An attorney may request reinstatement in the same manner as a request for removal.

24.7.4.    APPEAL. An approved attorney may appeal his involuntary removal from the list of Attorneys Eligible for Appointment using the following procedure:

24.7.4.1.    At any time within 30 days after an attorney receives notice of the attorney's removal from the list of Attorneys Eligible for Appointment, the attorney may give written notice of appeal to the Presiding Judge of the Harris County Criminal Courts at Law.

24.7.4.1.1.    For purposes of Rule 24.7.4.1, there exists a rebuttable presumption that the attorney received notice of his removal from the list on the earlier of: (1) the date the Office of Court Management emailed notice to the email address on file for the attorney; or (2) one day after the Office of Court management mailed notice to the mailing address on file for the attorney.

24.7.4.2.    Upon receipt of a notice of appeal, the Presiding Judge shall request that a member of the Office of County Court Management verify the accuracy of the vote and subsequent notice to the attorney.

24.7.4.3.    If review indicates an error, the Presiding Judge shall direct a member of the Office of County Court Management to make the necessary corrections.

24.7.4.4.    Within 14 days receipt of the attorney's notice of appeal, a member of the Office of County Court Management shall notify the applicant of his status as to the list of Attorneys eligible for Appointment.

**24.8.    REPLACEMENT OF APPROVED COUNSEL FROM A CASE OR CASES.**

24.8.1.    ATTORNEY REQUEST.

24.8.1.1.    A lawyer may request permission to withdraw by filing a written motion with the court.

24.8.1.2. The judge presiding over the case may grant the motion for good cause only after finding that the client will not be prejudiced by the substitution.

24.8.1.3. After granting the motion, the judge presiding over the case shall immediately appoint another qualified attorney as provided by these rules.

24.8.2. FOR CAUSE. The judge presiding over the case may replace counsel after entering written findings in the record showing good cause and that no prejudice to the defendant will result from the removal, including without limitation:

24.8.2.1. current information about the defendant and charges indicating that counsel of different qualifications is appropriate for the defendant under these rules;

24.8.2.2. a violation of the attorney's professional responsibilities; or

24.8.2.3. a principled reason.[6]

24.8.2.4. A judge, upon learning an indigent defendant was previously represented by a mental health defense specialist, shall appoint that specialist to the new case. The court coordinator shall immediately notify the mental health defense specialist of the appointment.

24.8.3. DEFENDANT REQUEST. The appointing judge may substitute counsel if:

24.8.3.1. at the conclusion of a trial, the indigent defendant desires to prosecute a direct appeal and requests that the court appoint different counsel; or

24.8.3.2. the defendant shows good cause for replacing appointed counsel, including counsel's persistent or prolonged failure to communicate with the defendant.

24.8.4. REPLACEMENT PROCEDURE.

24.8.4.1. If, after assignment, an attorney is unable to serve, the presiding judge of the court shall attempt to fill the vacancy with another attorney assigned to the court, or to another court.

24.8.4.2. If another attorney from the list of attorneys assigned to these courts is unavailable, the presiding judge of the court shall fill the vacancy using FDAMS.

24.9. **APPOINTMENT OF COUNSEL.** The appointing authority is the judge of the court in which the defendant's case is filed.

24.9.1. INCARCERATED PERSON. Following the appearance before a judicial officer, a defendant shall be scheduled to appear the next business day before the judge of the court in which the case is pending. Prior to conducting an arraignment proceeding, the judge shall make the inquiries, provide the admonishments, and related information regarding the right to counsel, and the right to self-representation as provided by state and federal law, and appoint counsel if the defendant is indigent for the purposes of receiving counsel.

24.9.2. PERSON RELEASED ON BOND. A defendant released on bail before the defendant's appearance described above, shall appear the 7th day following release, or the next business day following the 7th day. Prior to conducting an arraignment proceeding, the judge shall make the inquiries, provide the admonishments, and related information regarding the right to counsel, and the right to self-representation as provided by state

---

[6] *Stotts v. Wiser,* 849 S.W.2d 366 (Tex. Crim. App. 1995).

and federal law, and appoint counsel if the defendant is indigent for the purposes of receiving counsel.

24.9.3. PERSON ARRESTED IN ANOTHER COUNTY ON A HARRIS COUNTY WARRANT. Within 24 hours of receiving notice of a defendant's arrest in another county, the judge of the court that issued the arrest process shall appoint counsel for the defendant.

24.9.4. PERSON ARRESTED ON OUT-OF-COUNTY WARRANT IN HARRIS COUNTY. A person arrested on an out-of-county warrant must be appointed counsel on the 11th day following the date the defendant was booked into the Harris County Jail if the person has not been transferred or released to the custody of the county issuing the warrant.

24.9.5. OBTAINING REQUEST FOR APPOINTED COUNSEL FORM. The form used to request appointment of counsel and the financial affidavit in support of the request are available to defendants and interested third parties by requesting same from the court coordinator in any county criminal court at law.

24.9.6. FILING THE FORM. The completed forms shall be filed with the deputy district clerk in the court where the case is pending.

**24.10. DUTY OF APPOINTED COUNSEL.**

24.10.1. INITIAL CONTACT. An attorney appointed to represent an indigent defendant shall make every reasonable effort to contact the defendant not later than the end of the first working day and to interview the defendant as soon as practicable.

24.10.2. DURATION OF APPOINTMENT.

24.10.2.1. Appointed counsel shall zealously represent a defendant until charges are dismissed, the defendant is acquitted, or the attorney is permitted or ordered by the court to withdraw as counsel after a finding of good cause entered on the record.[7]

24.10.2.2. On each successive arrest of a defendant previously represented by a mental health defense specialist, or assistant public defender, the judge of the court in which the case is pending shall make every effort to appoint the assistant public defender, or mental health defense specialist who previously represented the defendant.

24.10.3. CONDUCT OF COUNSEL. Appointed counsel shall perform the attorney's duty owed to the defendant in accordance with the adopted procedures of this Plan, the requirements of law, and the Texas Disciplinary Rules of Professional Conduct.

24.10.4. TIMELY APPEARANCE IN COURT.

24.10.4.1. An attorney assigned to a court shall appear at 8:30 a.m. unless otherwise instructed by the judge presiding.

24.10.4.2. An attorney assigned to a court is subject to temporary reassignment to another court.

24.10.4.3. An attorney shall remain in an assigned court until expressly released by the judge presiding.

24.10.4.4. An attorney failing to appear as provided by this subsection is subject to immediate replacement by the judge presiding.

---

[7] *See* TEX. CODE CRIM. P. ANN. art. 26.04(j).

24.10.5. ABSENCE OR CONFLICT. Appointed counsel shall inform the judge presiding when any of the following occurs:

24.10.5.1. counsel is unable to appear to discharge his or her duties according to the published schedule; or

24.10.5.2. counsel cannot represent an indigent defendant because of a legal or ethical conflict.

24.10.6. FIRST AND SECOND CHAIR COUNSEL. An attorney appointed to represent a defendant shall not formally or informally associate second-chair counsel without the written approval of the judge presiding. An attorney who provides legal services to an indigent defendant to whom the attorney has not been appointed does so *pro bono*.

24.10.6.1. FIRST-CHAIR COUNSEL

24.10.6.1.1. All motions filed in the case shall be filed in the name of first-chair counsel.

24.10.6.1.2. First-chair counsel shall appear on all matters before the Court and speak for the defendant.

24.10.6.1.3. First-chair counsel may assign tasks to second-chair counsel on behalf of the defendant.

24.10.6.2. SECOND-CHAIR COUNSEL

24.10.6.2.1. Under the direction and in the presence of lead counsel, second-chair counsel may prepare, present, or argue motions, examine witnesses, and participate in a hearing or trial.

24.10.6.2.2. Second-chair counsel shall complete and file an attorney of record form with the district clerk. The form shall state on its face that the attorney is second-chair counsel.

24.10.6.2.3. Second-chair counsel is not entitled to compensation from Harris County for work performed while acting in this capacity.

24.10.6.2.4. Second-chair counsel shall be present for the entire trial.

24.10.6.2.5. Only one (1) second-chair counsel is permitted on a case.

24.10.6.3. SUBSTITUTION BY APPOINTED COUNSEL PROHIBITED. Only with approval of the judge presiding, may an attorney send another attorney to appear on his behalf. If agreed to by the judge in the court where the case is pending, the attorney making the appearance must be eligible for appointment to represent an indigent defendant in these courts. The attorney shall not be entitled to compensation for his appearance.

24.11. THE FAIR, NEUTRAL AND NONDISCRIMINATORY ATTORNEY SELECTION PROCESS. Each assignment shall be randomly and impartially distributed among the list of attorneys eligible for appointment based upon the needs of the courts, an individual attorney's qualifications, and willingness and availability to work during an assignment period.

24.11.1. ATTORNEY CATEGORIES. An individual attorney may be qualified in more than one category.

24.11.1.1. Speaks only English.

24.11.1.2. Speaks Spanish, or other foreign language.

24.11.1.3.  Mental health defense specialist.

24.11.1.4.  Appeal and Habeas Corpus.

24.11.1.5.  Veteran's Court.

24.11.1.6.  S.O.B.E.R Court.

24.11.1.7.  American Sign Language.

24.11.1.8.  S.A.F.E. Court.

24.11.1.9.  Fugitive defense specialist.

24.11.2.  ASSIGNMENT TYPE OR TERM. An attorney may choose to be available for any single term, or may combine a term and daily assignments during any quarterly appointment period.

24.11.2.1.  DAILY ASSIGNMENT. One (1) calendar day. Means one day on which a court has a docket.

24.11.2.2.  FOUR (4) WEEK DAY-TERM ASSIGNMENT. Means four consecutive weeks.

24.11.2.3.  THIRTEEN (13) WEEK TERM ASSIGNMENT. Means thirteen consecutive weeks.

24.11.2.4.  TWENTY-SIX (26) WEEK TERM ASSIGNMENT. Means twenty-six consecutive weeks.

24.11.2.5.  FIFTY-TWO (52) WEEK TERM ASSIGNMENT. Means fifty-two consecutive weeks.

24.11.3.  ANNUAL CALENDAR. In December of each year, the calendar for the succeeding year will be published to attorneys eligible to receive appointments via email, and by posting on the website of the Office of County Court Management.

24.11.4.  FAIR DEFENSE ACT MANAGEMENT SYSTEM (FDAMS). This software application was created by the Administrative Office of the District Courts in Harris County. It matches eligible attorneys with the needs of an individual court and creates a list of approved attorneys with the requested qualifications, from which a judge must select one or more, but may not reject the list and repeat the process.

24.11.4.1.  DAILY ASSIGNMENT. When submitting a request for an attorney, the court shall designate the date of the assignment and any special qualifications *e.g.*, "bilingual" and "a mental health defense specialist" which it may require.

24.11.4.1.1.  PROCEDURE. The computer shall provide to the court ten randomly selected names per request. A court may submit two daily assignment requests at the same time, provided the requests contain different qualifications. A court may not submit another request until at least one attorney has been assigned from one or two pending lists and the remaining names from that list have been returned to the attorney pool.

24.11.4.2.  TERM ASSIGNMENT. The computer program shall equally divide the pool of attorneys available for limited term assignments among the requesting courts. The program shall provide the randomly selected names to the requesting court beginning at 9:00 a.m. on Monday of the selection week.

24.11.4.2.1.  The court shall make at least one term assignment from the provided names promptly, and return the remainder to the pool available for use by other courts.

Harris County Criminal Courts at Law
*Rules of Court*

24.11.4.2.2. In the event the selected attorney becomes unavailable, or an additional attorney is required, the court may submit an additional request. The computer shall provide the court with no more than six (6) randomly selected names from the remaining pool of available approved attorneys.

24.11.5. DETERMINING ANNUAL CASELOAD LIMITS. There are many factors that play a role in determining caseload limits in any given jurisdiction. The most striking example is the computer, and its effect on case processing as well as attorney time and work product.

24.11.5.1. This Plan uses the power of computers to: (1) match attorneys' and courts' work needs and schedules as well as ensuring that appointments are random and non-discriminatory; (2) expedite the payment of appointed counsel; and (3) schedule multiple cases on the same day, thus allowing the attorney to handle multiple cases each day rather than just one or two cases.

24.11.5.2. Likewise, computing power enables lawyers to: (1) do on-line research; (2) access organizational brief banks; (3) produce template motions; (4) obtain continuing legal education without losing traditional workdays; and (5) track their time easily.

24.11.6. ANNUAL CASELOAD LIMITS. Caseload limits are:

24.11.6.1. Class B or A misdemeanors pending in Harris County, Texas: Up to 600 cases, of which:

24.11.6.1.1. Up to 350 can involve mentally ill or incompetent defendants; and

24.11.6.1.2. Up to 125 can involve defendants in the following specialty areas:

24.11.6.1.2.1. Appeals;

24.11.6.1.2.2. Habeas corpus applications;

24.11.6.1.2.3. Defendants in the S.O.B.E.R. Court program;

24.11.6.1.2.4. Defendants in the Veteran's Court program; or

24.11.6.1.2.5. Defendants in the S.A.F.E. Court program.

24.11.7. DAILY CASELOAD LIMITS. An attorney shall not receive more than five new clients per day.

24.12. **FEE AND EXPENSE PAYMENT PROCESS.**

24.12.1. FEE SCHEDULE. Appointed counsel shall be compensated for all time reasonably necessary to adequately represent the defendant according to the following fee schedule, and as set forth in his or her contract for indigent defense services with Harris County, Texas.[8]

24.12.2. DAILY FLAT FEE RATE. To receive the daily rate, an attorney shall:

24.12.2.1. appear for docket call at the time and place designated by the judge of the assigned court;

24.12.2.2. accept appointments in that court or any other county court to which the attorney may be assigned on that day;

---

[8] *See* TEX. ADMIN C. TITLE 1, PART 8, SUBCHAPTER B §§174.10 et seq.

24.12.2.3. remain available to the judges of the County Criminal Courts at Law until the courts' morning docket call is concluded, or the attorney is released by the judge of the court to which the lawyer is assigned; and

24.12.2.4. provide professional services, including the resetting of cases, first to appointed cases in the County Criminal Courts at Law.

24.12.3. HOURLY RATE.

24.12.3.1. Out-of-Court — $25/hr. to $50/hr.

24.12.3.2. Out of Court (Mental Health Caseload) — $50/hr.

24.12.3.3. Motions, Hearings — $50/hr. to $90/hr.

24.12.3.4. Trial (includes competency or sanity) — $60/hr. to $90/hr.

24.12.3.5. Mental Health Defense Specialist — $90/hr.

24.12.3.6. Specialty Court — $125/hr.

24.12.3.7. Hourly rates shall be paid for performing the appropriate statutory services defined in TEX. CODE CRIM. PROC. ANN. art. 26.05(a), based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel.

24.12.4. FLAT FEE SCHEDULE.

24.12.4.1. Term & Daily Assignments — $250 per docket

24.12.4.2. Term and Daily Assignment Foreign Language Certified — $300 per docket

24.12.4.3. Individual non-issue claims: $50 per case per day, and may not exceed $100.00 per day total, for all County Criminal Courts at Law combined.

24.12.4.4. Non-Issue or Plea (concurrent with weekly or daily assignment) — No fee

24.12.4.5. Appeal & Extraordinary Writs — $750.00

24.12.4.6. Petition For Discretionary Review — $350.00

24.12.4.7. Oral Argument Before Court of Criminal Appeals — $250.00

24.12.5. EXPENSES.

24.12.5.1. Reasonable and Necessary Expenses

24.12.5.1.1. The County will reimburse appointed attorneys for reasonable and necessary expenses including investigation and mental health and expert witnesses incurred on behalf of an indigent client with and without prior approval as provided by TEX. CODE CRIM. PROC. ANN. arts. 26.05(d) and 26.052(f), (g), and (h).

24.12.5.2. Out-of-county travel expenses will be reimbursed with prior approval, using county rates and policies.

24.12.5.3. Counsel shall submit the original invoice or receipt, along with any request for reimbursement.

24.12.6. INVESTIGATORS — $40 per hour standard rate.

24.12.7. CONCURRENT PAYMENTS.

Harris County Criminal Courts at Law
*Rules of Court*

24.12.7.1.   An attorney engaged in a weekly or daily assignment shall not be compensated for a non-issue or plea appearance that occurs on the same day the attorney is assigned to a court pursuant to a quarterly assignment.

24.12.7.2.   An attorney is entitled to payment for out-of-court-hours, a motion hearing at which testimony is taken, trial, or professional services performed in a Specialty Court Program on the same day the attorney is paid for a daily or weekly term assignment.

24.12.8. ADDITIONAL COMPENSATION.

24.12.8.1.   An attorney appointed to represent an indigent defendant shall not accept additional compensation for professional services performed on behalf of the defendant, as a result of the appointment, in any form from any source other than Harris County, Texas.

24.12.9. JUDICIAL DETERMINATION OF ATTORNEY COMPENSATION.

24.12.9.1.   The following procedures apply to the review and approval of attorney's fees:

24.12.9.1.1.   Appointed counsel shall request payment on a form approved by the judges of the County Criminal Courts at Law and the County Auditor. Counsel shall submit the request for payment to the presiding judge in the court. The payment request shall list all services performed by the attorney on behalf of the defendant.

24.12.9.1.2.   The judge shall either approve the amount requested or enter written findings stating the amount the judge approves and each reason for approving an amount differing from the requested amount.

24.12.9.1.3.   An attorney whose request for payment is disapproved or not acted upon within 60 days may appeal the disapproval by filing a motion with the Presiding Judge of the Second Administrative Judicial Region.[9]

24.12.9.1.4.   Upon receipt, the auditor shall forward the order to the Office of County Court Management for review by the Presiding Judge or Court Manager.

24.12.10.  ACCOUNTING OF ATTORNEY HOURS. To be entitled to payment, appointed counsel shall provide the following information:

24.12.10.1.  HOURLY RATE.

24.12.10.1.1.  STANDARD. Time must be itemized in tenths of one-hour (60 minute) increments on a form approved under the Plan.

24.12.10.1.2.  ITEMIZATION. Counsel must prepare and maintain time records for each appointed client showing the date of service, nature of service rendered, and hours worked.

24.12.10.2.  FLAT FEE RATE. The date and type of service performed.

24.12.11.  SUBMISSION OF FEE VOUCHER.

24.12.11.1.  An attorney, expert, or private investigator shall submit a fee claim on a form approved by the Judges of the County Criminal Courts at Law, and the Harris County Auditor.

---

[9]   *See* TEX. CODE CRIM. P. ANN. art. 26.05(c).

24.12.11.2. An attorney assigned to a court for a term shall submit one fee voucher per week listing each case number to which he was appointed on each day of the week at the conclusion of the docket on the business day of that week.

24.12.11.3. An attorney assigned to work more than one day but less than five (5) days shall submit a fee voucher listing each case number to which he was appointed on each day of the week that he was assigned at the conclusion of the docket on the last business day of that week.

24.12.11.4. Fee vouchers for individual cases shall be submitted upon disposition of the case, e.g. dismissal, plea, or trial.

24.12.11.5. To receive compensation, an attorney must submit a fee voucher to the appointing judge not later than the 30th day after the date the case is disposed.

24.12.11.6. The instructions on the Weekly/Daily Assignments, and Individual Non-Term Appointment Fee Claims are incorporated herein as a part of this Alternative Plan.

24.12.11.7. An attorney is responsible for correctly completing and timely filing a fee voucher meeting the requirements of law, the Harris County Auditor, and this Plan.

24.12.11.8. The presiding judge of a court may withdraw an order directing the Harris County Auditor to pay a previously approved claim for attorney fees, reimbursement, expert witness fees, or other litigation-related expenses, if the claimant fails to correct a claim returned by the county auditor.

24.12.12. PAYMENT BY COUNTY AUDITOR. The Harris County Auditor shall only pay a claim submitted by an attorney whose name appears on the list of approved attorneys assigned to a county criminal court at law during a term or date assigned by FDAMS. The Office of County Court Management shall provide the County Auditor's Office with a current list of attorneys certified to accept appointments. The Auditor shall send a claim submitted by an attorney who is not on the list of certified attorneys to the Court Manager.

24.12.12.1. REASONABLE AND NECESSARY EXPENSES. The County will reimburse appointed attorneys for reasonable and necessary expenses, including investigation and mental health and expert witnesses, incurred on behalf of an indigent client as provided under TEX. CODE CRIM. PROC. ANN. arts. 26.05(d) and 26.052(f), (g), and (h).

24.12.12.2. ORIGINAL INVOICE OR RECEIPT. Counsel shall submit the original invoice or receipt along with any request for reimbursement.

24.12.12.3. SYSTEM PERSON NUMBER (SPN). To ensure accuracy in the tracking and reporting of fees paid to attorneys and others under this Plan, the Auditor shall amend the current attorney fee voucher to include a space for the Justice Information Management System Person Number of the individual seeking payment of county funds.

**24.13. CONTRACT DEFENDER PROGRAM.**

24.13.1. In all term assignments the appointing authority shall follow the Texas Indigent Defense Commission Contract Defender Program Rules, as published in The Texas Administrative Code, Title I, Part 8, Chapter 174 sub chapter B, Part II, as setout below:

## II. APPLICATION OF STANDARDS AND CONTRACTING PROCEDURES

§174.11. Application of Subchapter. This Subchapter applies to all contract defender programs. This Subchapter does not apply to public defender programs established and governed by Chapter 26, Code of Criminal Procedure.

§174.12. Application Process. The appointing authority shall solicit and select contractors in accordance with the procedure governing alternative appointment programs contained in Article 26.04, Code of Criminal Procedure.

   (a) Notification. The notification of the opportunity to apply (NOA) to be a contractor shall be distributed in a manner that reasonably covers all practicing members of the bar within the county or other region designated by the appointing authority. The notification shall inform attorneys of all requirements for submitting applications.

   (b) Opportunity to Respond. All potential contractors shall have the same opportunity to respond to the NOA and be considered for the award of a contract.

   (c) Application. All applications must be submitted in writing and shall be maintained by the appointing authority or contracting authority in accordance with the Texas State Library and Archives Commission Retention Schedule for Local Records- Local Schedule GR.

§174.13. Application Review Process. Following the review of all applications the appointing authority shall by a majority vote select contractor(s), specify the types of cases each contractor is qualified to handle, and authorize the contracting authority to enter into a contract. The attorneys associated with the selected contractor(s) must meet the attorney qualification requirements contained in the indigent defense procedures adopted pursuant to Article 26.04, Code of Criminal Procedure. If the contract does not exclude capital cases in which the death penalty is sought, the attorneys associated with the selected contractor(s) must also meet the attorney qualifications set by the regional selection committee and be approved by the regional selection committee to represent clients in capital cases. The appointing authority shall consider at least the following factors when evaluating applications:

   (a) Experience and qualifications of the applicant;

   (b) Applicant's past performance in representing defendants in criminal cases;

   (c) Applicant's disciplinary history with the state bar;

   (d) Applicant's ability to comply with the terms of the contract; and

   (e) Cost of the services under the contract.

§174.14. Awarding the Contract. In accordance with Article 26.04(h), Code of Criminal Procedure, the contracting authority may approve the recommended contractor(s) and enter into a contract for services. The contracting authority shall enter into a contract only if it complies with these standards and all applicable law governing professional services contracts entered into by counties. A contract shall not be awarded solely on the basis of cost.

## RULE 25. DISASTER PLAN [10]

25.1. It is the intention of the Judges of these courts to establish a coordinated response for the transaction of essential judicial functions in the event of a disaster.

25.2. **DEFINITIONS**

25.2.1. As used herein, the following terms and phrases shall have the following meanings:

25.2.1.1. Criminal Law Hearing Officer means a judicial officer created by Chapter 54, Subchapter L of the Texas Government Code (§§ 54.851 et seq.)

25.2.1.2. Defendant means a person detained, arrested, or otherwise in the custody of a law enforcement agency for a misdemeanor offense.

25.2.1.3. Judge or judges means a Judge of a Harris County Criminal Court at Law.

25.2.1.4. Disaster means the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause, including fire, flood, earthquake, wind, storm, wave action, oil spill or other water contamination, volcanic activity, epidemic, air contamination, blight, drought, infestation, explosion, riot, hostile military or paramilitary action, other public calamity requiring emergency action, or energy emergency" as provided by Section 418.004, Texas Government Code.

25.2.1.5. Quorum vote means two-thirds of the judges of these courts.

25.2.1.6. Presiding Judge means the presiding judge of these courts.

25.3. **MODIFICATION OR SUSPENSION OF THESE RULES DURING A DISASTER**

25.3.1. **Judicial Action**

25.3.1.1. The Judges by quorum vote may modify or suspend one or more of these rules during the pendency of the disaster declared by the governor.

25.3.1.2. An order under this provision shall:

25.3.1.2.1. extend for not more than 30 days from the date the order is signed unless renewed; and

25.3.1.2.2. be consistent with other law.

25.3.2. **Lack of a Majority**

25.3.2.1. If a disaster prevents the judges from immediately acting as provided above, the Presiding Judge may act on their behalf.

25.3.2.2. If a disaster prevents the presiding judge from acting under this rule, the co-presiding judge may act on their behalf.

25.3.2.3. If a disaster prevents the co- presiding judge from acting under this rule, the chairperson of the administration committee may act on their behalf.

## RULE 26. SLIDING-SCALE FEE SCHEDULE FOR GLOBAL POSITIONING SYSTEM[11]

26.1. It is the intention of the Judges of these courts to establish a coordinated response for the transaction of essential judicial functions in the event of a disaster.

---

[10]  *See* TEX. GOV'T CODE ANN. § 74.093(c)(2).
[11]  *See* TEX. CODE CRIM. PRO. ANN. art. 17.49.

Harris County Criminal Courts at Law
*Rules of Court*

26.2. If, upon consent of the victim to wearing a global positioning monitoring system receptor device, a judicial officer determines that the likelihood of the defendant's participation in a global positioning monitoring system program described by TEX. CODE CRIM. PROC. ANN. art. 17.49 (Vernon 2009) will deter the defendant from seeking to kill, physically injure, stalk, or otherwise threaten the alleged victim, the judicial officer shall determine if the defendant is financially able to pay the costs of the receptor device, and the global positioning monitoring systems transmitter or similar device. If the judicial officer determines that the defendant is indigent, the judicial officer shall require the defendant to pay costs of the electronic receptor device and transmitter according to the following sliding scale:

| Net Annual Income (from Sliding Scale Worksheet) | Percent of Total Fee per Service |
|---|---|
| $0-$12,000 | 38% |
| $12,000$18,000 | 45% |
| $18,001$24,000 | 50% |
| $24,001$33,000 | 55% |
| $33,001$42,000 | 60% |
| $42,001$55,000 | 65% |
| $55,001$70,000 | 80% |
| $70,001 and above | 100% |

# APPENDIX A:     APPROVED INTENSIVE TRAINING PROGRAMS

The following programs are currently approved as "intensive training programs" as used in Rule 24.5.1.2.2:

- TexasBarCLE Advanced Criminal Law course
- Gideon's Promise 14-day training session
- Gerry Spence Trial Lawyer's College
- Criminal Defense Trial Skills & Trial Law Program at The Center for American and International Law
- TCDLA Texas Criminal Trial College

**Exhibit C**

# RESEARCH REPORT

## PRETRIAL RELEASE MECHANISMS IN DALLAS COUNTY, TEXAS:

## DIFFERENCES IN FAILURE TO APPEAR (FTA) AND ASSOCIATED COSTS OF FTA[*]

## *2012 DATA UPDATE*

---

**Prepared by:**

**Robert G. Morris, Ph.D.,**
**Associate Professor of Criminology**
**Director, Center for Crime and Justice Studies**

**The University of Texas at Dallas**
**800 West Campbell Rd, GR 31**
**Richardson, Texas 75080-3021**

**(972) 883-6728**
**morris@utdallas.edu**

**December 2014**

[*] **This study was completed on behalf of the Dallas County Criminal Justice Advisory Board (CJAB) and was funded exclusively by Dallas County, Texas.**

# EXECUTIVE SUMMARY

Relative to other elements of the criminal justice system, pretrial release and the mechanisms by which it operates has received little attention from scholars and empirical research is lacking. This study is a follow-up to a previous undertaking that explored the effect of specific pretrial release mechanisms on likelihood of a bond forfeiture (i.e., failure to appear or FTA) among defendants, and associated costs. The findings from the previous study, which analyzed data from those jailed during 2008, will be compared with new data from 2012 defendants.

The purpose of this study was to further address a number of very important issues that underlie pretrial release from jail specific to varying mechanisms of release including: attorney bonds, cash bonds, commercial bonds, and pretrial services bonds.[1] Archival data was culled from official records collected by the Dallas County criminal justice system as well as from the Texas Department of Public Safety (DPS). The analyses presented here were based on all defendants booked into the Dallas County jail at any time during 2012 for a crime/s in which the defendant was not previously arrested/jailed, and who were released via one of the above noted release mechanisms (n = 12,071). Specifically, this study addresses the following questions: (1) Do failure to appear (FTA) rates vary across release mechanisms and if so, by how much? (2) What are the additional court costs (observed and estimated) associated with FTA rates across release types? (3) How do the estimates for 2012 defendants differ from those of 2008?

*Methods and Findings*. Regarding FTA, this study approximated an experimental research design to provide for an objective "apples-to-apples" empirical analysis (propensity score matching) in a manner equivalent to the 2008 undertaking. This analysis suggested that net of other effects (e.g., criminal history, age, indigence, etc.—see technical appendix), similarly situated defendants released via commercial bonds in 2012 remained the least likely to fail to appear in court compared to any other specific mechanism, as was the case in 2008. This finding was consistent when assessed for all charge categories combined and when the data were stratified by felony and misdemeanor offenses, respectively. For felony defendants (among the matched pairs), those *not* released on commercial bond were between 0 and 41 percent more likely to fail to appear in court, with the largest difference being between cash and commercial, followed by pretrial. No differences in FTA rates were found between attorney and commercial bonds among felony or misdemeanor defendants when analyzed separately. For misdemeanors, differences were similar, ranging between 19 and 37 percent with pretrial services bonds being the most different from commercial, followed by cash bonds. Overall, analyses based on the data explored here suggest that commercial bonds were the most successful in terms of FTA.

However, it is interesting to note that the magnitude of differences in FTA rates between commercial bonds and other bond types was reduced for the 2012 analysis as compared to the 2008 study. This was particularly the case when comparing FTA among misdemeanor defendants released via commercial to those via pretrial services. This reduced difference was primarily driven by a major decrease in the conditional FTA rate by pretrial services for misdemeanor defendants (from 40 to 26 percent), though FTAs for commercial bonds for this category were also improved (from 27 to 21 percent).

---

[1] Personal recognizance was not analyzed here due to its very limited use in release for new crimes (less than 1%).

For felonies, the differences in FTA rates between release type were generally reduced, however, each mechanism tended to have a higher rate of FTA for 2012 compared to 2008.

By request of Dallas County, the 2012 study was extended to present supplemental detail to the findings specific to pretrial services releases. Using pretrial services as a reference category, significant differences in FTA tended to be in comparison to commercial bonds, with the sole exception of attorney bonds for felonies. In short, commercial bonds were less likely result in FTA compared to pretrial services for any charge type, and attorney bonds tend to FTA less than pretrial services for felony defendants. There appears to be no difference in FTA rates between pretrial services bonds and cash bonds when comparing like defendants.

Regarding the costs associated with FTA across each release type, model estimates suggest that commercial bond releases were again the most cost-effective in Dallas County, based on the group of defendants captured by the study for 2012. This finding was corroborated by the observed data, which suggested that for the 12,000+ defendants captured by this study, assuming a public cost of $1,775 per FTA[2], the use of commercial bonds saved over $7.6 million (or ~$350k per 1,000 defendants) among felony defendants and over $3.5 million (or $160k per 1,000 defendants) among misdemeanor defendants, as compared to attorney bonds, cash bonds, and pretrial services bonds. For misdemeanors and felonies, the largest differences in costs were found between commercial bonds and cash bonds suggesting that between these two forms of release, commercial bonds are more cost effective when it comes to losses resulting from FTA.

---

[2] Estimate adjusted for inflation from 1997 dollars. Base estimate taken from Block and Twist (1997), who conduced a complete cost-benefit analysis of failure to appear in Los Angeles, CA.

## TABLE OF CONTENTS

Executive Summary…………………………………………………………………… 2

Study Highlights…….…………………………………………………………………. 5

Study Findings………………………………………………………………………. 6

      Descriptive Statistics...………………………………………………………………. 6

      Comparative Analysis and Results…………………………………………………. 7

            Notable Findings for FTA…………………………………………………. 9

            Findings Specific to Pretrial Services  ……………………………………. 10

      Cost-benefit Analysis for Failure to Appear……………………………………. 13

Recommendations for Policy……………………………………………………………16

Study Limitations…………………………………………………………………. 17

Technical Appendix……………………………………………………………………..18

References…………………………………………………………...…..…… 25

Acknowledgements………………………………………………………………….. 26

About the Author....…...……………………………………………….…….… 27

STUDY HIGHLIGHTS

- This study explored failure to appear (FTA) based on longitudinal data for 12,071 defendants released from the county jail during 2012 for the first new offense occurring during that year and compares such statistics to findings from 2008 data.

- The analyses isolated the effect of particular bond types by statistically controlling for many correlates (i.e., predictors of) of FTA by approximating an experimental research design (see appendix for a complete listing and definitions).

- When comparing similarly situated defendants' probability of FTA for all case types, defendants released via a commercial bond (i.e., a bail bond company) were significantly and substantively less likely to fail to appear in court compared to attorney bonds, cash bonds, and pretrial services bonds, respectively. This finding held when analyzing all defendants simultaneously and when assessing felony and misdemeanor defendants separately.

- Differences in FTA between release mechanisms were reduced for 2012.

- FTA for felonies increased for among each mechanism for 2012 while FTA for misdemeanors decreased among each mechanism for 2012.

- For pretrial services misdemeanor defendants, FTA were substantively reduced from 08' to 12' by 33%, however, for felony defendants, the rate of FTA was substantively increased by 44%. Pretrial services accounts for roughly 11% of releases for new crimes.

- Release on their own recognizance (OR) was rarely used for an initial release (less than 1% of defendants). For this reason, OR was excluded from the analysis.

- A basic cost-benefit analysis suggested that commercial bonds tend to be a more cost effective method in terms of reducing the likelihood of FTA in Dallas County. Based on the observed data for every 1,000 comparable felony defendants, assuming a public cost (i.e., justice administration) of $1,775 per FTA[3], the use of commercial bonds cost the county approximately $392k compared to $536k, $591k, and $682k for attorney, cash, and pretrial services bonds, respectively. This finding is further substantiated by the fact that commercial bonds accounted for 66% (or 2/3[rd]) of all releases for new crimes.

- Overall, the estimated costs due to FTA in 2012 were less than that from 2008 however this was driven by reductions in misdemeanor FTAs, despite the fact that felony FTAs increased for 2012. This was particularly the case for pretrial services defendants.

- The strongest predictor variables of FTA across release mechanisms were also explored and did not change from the 2008 study. Readers interested in predictor variable influence should visit the 2008 report.

- The number of eligible defendants in the 2012 data was less than half of that from 2008. The reasoning behind this change is unclear at this time, but may have to do with changes in arrest policies.

---

[3] Estimate adjusted for inflation from 1997 dollars. Base estimated taken from Block and Twist (1997), who conduced a complete cost-benefit analysis of failure to appear in Los Angeles, CA.

## STUDY FINDINGS

### Descriptive Statistics for Bond Forfeiture/FTA among Defendants Jailed on New Charges

| All Charge Types | 2008 | | | 2012 | | | Change Statistics | |
|---|---|---|---|---|---|---|---|---|
| Release Mechanism | # of Defendants | % | Raw FTA Rate | # of Defendants | % | Raw FTA Rate | Actual Δ | Relative Δ |
| Attorney | 684 | 3.1 | 34.1 | 521 | 4.3 | 30.3 | -3.8 | -11% |
| Cash | 4,219 | 19.2 | 29.2 | 1,742 | 14.4 | 32.9 | 3.7 | 13% |
| Commercial | 14,705 | 66.8 | 23.0 | 8,604 | 71.3 | 23.5 | 0.5 | 2% |
| Pretrial | 2,411 | 10.9 | 37.0 | 1,204 | 10.0 | 30 | -7.0 | -19% |
| Total / Overall | 22,019 | 100.0 | 26.1 | 12,071 | 100 | 25.8 | -0.3 | -1% |

| Felony FTA | 2008 | | | 2012 | | | Change Statistics | |
|---|---|---|---|---|---|---|---|---|
| Release Mechanism | # of Defendants | % | Raw FTA Rate | # of Defendants | % | Raw FTA Rate | Actual Δ | Relative Δ |
| Attorney | 326 | 5.1 | 28.2 | 301 | 6.7 | 30.2 | 2.0 | 7% |
| Cash | 339 | 5.3 | 30.7 | 261 | 5.8 | 33.3 | 2.6 | 8% |
| Commercial | 5,048 | 78.9 | 16.6 | 3,615 | 80.2 | 22.1 | 5.5 | 33% |
| Pretrial | 682 | 10.7 | 26.1 | 331 | 7.3 | 38.4 | 12.3 | 47% |
| Total / Overall | 6,395 | 100.0 | 19.0 | 4,508 | 100 | 24.5 | 5.5 | 29% |

| Misd. FTA | 2008 | | | 2012 | | | Change Statistics | |
|---|---|---|---|---|---|---|---|---|
| Release Mechanism | # of Defendants | % | Raw FTA Rate | # of Defendants | % | Raw FTA Rate | Actual Δ | Relative Δ |
| Attorney | 342 | 2.4 | 37.4 | 220 | 2.9 | 30.5 | -6.9 | -18% |
| Cash | 3,529 | 25.2 | 30.2 | 1,462 | 19.4 | 33.2 | 3.0 | 10% |
| Commercial | 8,548 | 61.0 | 26.7 | 4,988 | 66.1 | 24.5 | -2.2 | -8% |
| Pretrial | 1,589 | 11.3 | 39.6 | 873 | 11.6 | 26.6 | -13.0 | -33% |
| Total / Overall | 14,008 | 100.0 | 29.3 | 7,543 | 100 | 26.6 | -2.7 | -9% |

**NOTE**: Unconditioned (Raw) FTA Rates are not appropriate for direct comparison to an alternative release mechanism. Use as a reference only within a single release type. The reason behind non-comparability with these raw rates is that some defendants may not be eligible for one or more release types (e.g., pretrial services bonds are reserved for less serious offenses). Comparable conditioned FTA rates are presented in the analyses below.

*- Actual Δ: The actual (i.e., percentage point) change in FTA rate from 08' to 12'.*
*- Relative Δ: The relative change in the FTA rate from 08' to 12' (i.e., [2008 – 2012] / 2008)*

ANALYTICAL FINDINGS

**PROPENSITY SCORE MATCHING ANALYSIS: FAILURE TO APPEAR**

The below findings represent an "apples-to-apples" approach to exploring differences in FTA rates among similarly situated defendants, across the release mechanisms. These estimates have been conditioned (i.e., statistically adjusted on other influence factors) based on the defendant/crime characteristics outlined in the technical appendix, by means of a counterfactual statistical modeling strategy known as propensity score matching (PSM).

PSM was used to assess the effect sizes of different combinations of release mechanisms on 1) whether a defendant fails to appear (FTA) in court. This counterfactual model approximates an experimental design by allowing for comparisons to be made between defendants that had an equivalent probability of receiving some treatment (here the treatment being a release mechanism) over an alternative treatment. Similar analytical designs where the focus has been on multiple treatment effects are not uncommon in the social sciences (see Lechner, 1999; 2001)

***NOTE: Prior to presenting the results, readers unfamiliar with PSM are encouraged to read the information provided in the technical appendix to get a basic idea of what the technique does and how to interpret the findings presented in the below tables.

The below table presents the statistically significant findings on FTA stemming from the propensity score matching analysis and using commercial bonds as a reference category (comparison) group, comparing the findings from the 2012 data with those from the 2008 report. This approach was taken because significant differences were found only for comparisons that included similarly situated (matched) defendants released on a commercial bond defendants. Also presented are findings from the 2012 data using pretrial services as the reference category.

Overall, the findings from the 2012 data generally resemble those from the 2008 analyses, favoring commercial bonds in terms of lower FTA rates. However, several notable differences emerged and are outlined below. Of note, the gaps in rates of FTA between commercial bonds and other bonds were often found to be closed by a sizable margin. Other differences were reduced to a degree of which was no longer found to be statistically significant.

**Multi-treatment Propensity Score Matching Results on Failure to Appear: VERSUS COMMERCIAL**

| Treated vs. Matched Controls released on Commercial Bonds | 2008 | | | | 2012 | | | | Relative Δ from 08' to 12' | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Raw (Unmatched) FTA Rate | Mean FTA Rate 08 (Treated) | Mean FTA Rate 08 (Controls) | Relative Difference in FTA vs. Commercial | Raw (Unmatched) FTA Rate | Mean FTA Rate 12 (Treated) | Mean FTA Rate 12 (Controls) | Relative Difference in FTA vs. Commercial | *Matched Δ* | *Raw Δ* |
| **All Defendants** | | | | | | | | | | |
| Commercial | 0.23 | - | - | - | 0.24 | - | - | - | - | +4.3% |
| Attorney | 0.34 | 0.34 | 0.27 | 21% | 0.30 | 0.30 | 0.23 | 23% | +9.5% | -11.8% |
| Cash | 0.29 | 0.29 | 0.20 | 31% | 0.33 | 0.32 | 0.24 | 25% | -19.4% | +13.8% |
| Pretrial | 0.37 | 0.37 | 0.23 | 39% | 0.30 | 0.30 | 0.22 | 27% | -30.8% | -18.9% |
| **Felony** | | | | | | | | | | |
| Commercial | 0.17 | - | - | - | 0.22 | - | - | - | - | +29.4% |
| Attorney | 0.28 | 0.28 | 0.17 | 39% | 0.30 | No Significant Difference | | | - | +7.1% |
| Cash | 0.31 | 0.32 | 0.14 | 56% | 0.33 | 0.33 | 0.22 | 33% | -41.1% | +6.5% |
| Pretrial | 0.26 | 0.26 | 0.15 | 42% | 0.38 | 0.39 | 0.23 | 41% | -2.4% | +46.2% |
| **Misdemeanor** | | | | | | | | | | |
| Commercial | 0.27 | - | - | - | 0.25 | - | - | - | - | -7.4% |
| Attorney | 0.37 | 0.38 | 0.27 | 29% | 0.31 | No Significant Difference | | | - | -16.2% |
| Cash | 0.30 | 0.31 | 0.23 | 26% | 0.33 | 0.33 | 0.24 | 27% | +3.8% | +10.0% |
| Pretrial | 0.40 | 0.40 | 0.27 | 32% | 0.27 | 0.26 | 0.21 | 19% | -40.6% | -32.5% |

Note: All findings are compared to Commercial Bonds (the reference category). Only statistically significant comparisons shown where equivalent findings were demonstrated between alternated reference categories (p < .05).

*Relative Δ: The relative change in the FTA rate from 08' to 12' (i.e., [2008 – 2012] / 2008)*

**Notable Findings:**

- For 2012, the gap between conditioned FTA rates for commercial bonds versus othe types was narrowed in most comparisons, however commercial bonds tended to have lower rates compared to most other types. The gap in relative difference increased between comme and attorney bonds when analyzing all defendants simultaneously, yet this finding was confounded when stratifying between felonies and misdemeanors (i.e., any difference in FT between commercial and attorney bonds disappeared).

- The relative difference in felony FTA between cash bonds and commercial bonds wa dramatically reduced for 2012; commercial out performed cash by 33% in 2012 compared t 56% in 2008. This is an improvement by cash bonds of 23 percentage points (or a relative change of 41%— *[How was this calculated? (56-33)/56=.41)]).*

- The difference in misdemeanor FTA between commercial and pretrial services was dramatically reduced for 2012; commercial bonds outperformed pretrial services by 19% compared to 32% in 2008, a 41 percent change. FTA rates for pretrial services misdemeano defendants was improved dramatically for 2012.

- Raw FTA rates increased across all release types among felonies, with the biggest increases from pretrial and commercial bonds. Raw FTA rates for misdemeanors increased cash bonds, but were reduced considerably among pretrial services bonds and for attorney b

- When comparing all defendants, the difference in FTA between commercial and pre services bonds was dramatically reduced for 2012; commercial bonds outperformed pretrial services by 27% compared to 39%. This is an improvement by pretrial services of 12 percen points (or a relative change of 31%).

- Cash bonds performed worst among misdemeanor defendants, and in comparison to commercial bonds for equivalent defendants, they pose a much increased risk for FTA (27-3 percent).

Multi-treatment Propensity Score Matching Results on Failure to Appear: VERSUS PRETRIAL SERVICES 2012

| Treated vs. Matched Controls released via Pretrial Services | Mean FTA Rate (Treated) | Mean FTA Rate (Controls) | FTA Rate Difference | % Difference in FTA vs. Pretrial |
|---|---|---|---|---|
| **All Defendants** | | | | |
| Commercial | 0.24 | 0.30 | -0.06 | 25% Lower |
| **Felony** | | | | |
| Commercial | 0.24 | 0.38 | -0.14 | 58% Lower |
| Attorney | 0.24 | 0.40 | -0.16 | 67% Lower |
| **Misdemeanor** | | | | |
| Commercial | 0.21 | 0.26 | -0.05 | 24% Lower |

Treated vs. Matched Controls released on Pretrial Service Bonds (the reference category). Only statistically significant comparisons shown ($p < 0.05$).

**Notable Findings:**

- At a high level (i.e., among all defendants), and among misdemeanor defendants, FTA rates were significantly different only between pretrial services and commercial bonds.

- No statistically significant differences were found in rates of FTA between cash bonds and pretrial services bonds.

**Failure to Appear Analysis – Propensity Score Matching Results**

*How are the below tables interpreted?*

The below tables represent all differences between release types (unlike the above table which illustrates the same findings, but for statistically significant findings only). The PSM findings are presented to illustrate the differences in FTA rates between those treated and their matched controls for all releases, felonies, misdemeanors, and state jail felonies, respectively. On the diagonal of these tables are the unadjusted FTA rates for each release type. These statistics are presented for reference only. The off-diagonal statistics are the mean (average) difference in FTA rates (i.e., the treatment effect) between those released via a particular treatment (i.e., release mechanism)--which is identified by the left-hand column--compared to a particular alternative, identified by the top row of the table. Note that the percent range displayed (if statistically significant) reflects the estimated difference for matching based on an inverted treatment outcome (e.g., commercial vs. attorney compared to attorney vs. commercial)(Non-significant findings are indicated as such in the table).

As an example, looking at the top category, "Attorney Bond" on the far left column of the first table below (for 2008), we can see that the unadjusted FTA rate for this release type is 34 percent. Following this row to the right, we see that there is no statistically significant difference in FTA rates between comparable (i.e., similarly situated) defendants released by an attorney bond compared to cash bonds. However, the conditioned difference in FTA rate for attorney bonds is 7-13 percentage points higher than for Commercial bonds; this is the conditioned actual difference. Further, we find no significant difference between attorney bond FTA rates and pretrial services bonds.

Pretrial Release Mechanisms 2012 – Dallas County, Texas  12

**2012 All Defendants: Average Treatment Effects: Failure to Appear (Unconditioned rates on the diagonal)**

|  | Attorney Bond | Cash Bond | Commercial Bond | Pretrial Services |
|---|---|---|---|---|
| Attorney Bond | **.30** | *NS* | .07 Higher | *NS* |
| Cash Bond | | **.33** | .09 to .10 Higher | *NS* |
| Commercial Bond | | | **.23** | -.06 to .08 Lower |
| Pretrial Services | | | | **.30** |

2008 Findings

|  | *Attorney Bonds* | *Cash Bonds* | *Commercial Bonds* | *Pretrial Services* |
|---|---|---|---|---|
| *Attorney Bond* | *.34* | *NS* | *.07-.13 higher* | *NS* |
| *Cash Bond* | | *.29* | *.09-.10 higher* | *NS* |
| *Commercial Bond* | | | *.23* | *.14-.15 lower* |
| *Pretrial Services* | | | | *.37* |

*Note: Unadjusted failure to appear (FTA) rate for first 2008 release on diagonal. Off diagonal statistics are between-release-type ESTIMATED TREATMENT EFFECT differences (row compared to column). All treatment effect differences shown are statistically significant.*

**2012 Felony Defendants: Average Treatment Effects: Failure to Appear (Unconditioned rates on the diagonal)**

| Bail Type | Attorney Bond | Cash Bond | Commercial Bond | Pretrial Services |
|---|---|---|---|---|
| Attorney Bond | **0.30** | *NS* | 0.08 Higher* | 0.16 to 0.17 Lower |
| Cash Bond | | **0.33** | 0.11 Higher | *NS* |
| Commercial Bond | | | **0.22** | 0.14 to 0.16 Lower |
| Pretrial Services | | | | **0.38** |

* Indicates partial support

*2008*

| *Bail Type* | *Attorney Bond* | *Cash Bond* | *Commercial Bond* | *Pretrial Services* |
|---|---|---|---|---|
| *Attorney Bond* | *0.29* | *NS* | *.11-.12 higher* | *NS* |
| *Cash Bond* | | *0.3* | *.15-.18 higher* | *NS* |
| *Commercial Bond* | | | *0.17* | *.10-.11 lower* |
| *Pretrial Services* | | | | *0.26* |

* Indicates partial support

*NS: No statistically significant difference.*

**2012 Misdemeanor Defendants: Average Treatment Effects: Failure to Appear (Unconditioned rates on the diagonal)**

| Bail Type | Attorney Bond | Cash Bond | Commercial Bond | Pretrial Services |
|---|---|---|---|---|
| Attorney Bond | **0.30** | *NS* | *NS* | *NS* |
| Cash Bond | | **0.33** | 0.09 Higher | *NS* |
| Commercial Bond | | | **0.24** | 0.05 Lower |
| Pretrial Services | | | | **0.27** |
| | | | | |
| *2008* | | | | |
| *Bail Type* | *Attorney Bond* | *Cash Bond* | *Commercial Bond* | *Pretrial Services* |
| *Attorney Bond* | *0.37* | *NS* | *.10-.11 higher* | *NS* |
| *Cash Bond* | | *0.3* | *.08 higher* | *NS* |
| *Commercial Bond* | | | *0.27* | *.12-.13 lower* |
| *Pretrial Services* | | | | *0.4* |
| *NS: No statistically significant difference.* | | | | |

## COSTS OF FAILURE TO APPEAR

The below matrices represent a basic cost-benefit analysis based on the treatment effect of each release mechanism for treated versus matched controls. Since no exact figures were available on the cost of a single FTA, it was conservatively assumed that the public cost for an FTA is $1,775 per FTA (see Block and Twist (1997)).

**For this example, the below figures represent the costs associated with the processing of FTAs per 1,000 defendants. These numbers do not reflect the subsequent social costs that may stem from FTA. These differences (i.e., between release types) are based on the mean (average) treatment effect size differences presented in the propensity score matching analysis outlined above.**

**The table immediately below presents the results from the 2012 analysis. Further below are the 2008 results for reference.**

INTERPRETATION OF TABLES: The on-diagonal numbers are the costs for dollars spent on FTA processing for a particular release type based on the FTA rates from the matched pairs of defendants resulting from the PSM analysis. The off-diagonals represent the *differences* in cost between release types (row versus column). Note that positive (+) numbers reflect extra costs and negative (-) numbers represent savings. For example, in the first row of the further table below for 2008, we expect that for every 1,000 defendants released by way of an attorney bond an extra 7 to 13 percent of defendants will FTA, compared to similar defendants released via a commercial bond. The mid-point (half the distance between the range) of that estimate being 10% or (10 = [6/2] + 7). This equates to an additional cost of $60,350 for FTA processing *($603,500 x .10 = $60,350)* for those 1,000 defendants released via an attorney bond who were equally likely to have been released on a commercial bond. An alternative interpretation would be that if these same individuals were released via a commercial bond, the savings in FTA processing costs would have been -$60,350. Because there was no difference in the effect of release type on FTA between attorney bonds and cash bonds, the cost difference was assumed to be $0.

**2012 COSTS of Failure to appear for 1,000 similar defendants released from jail.**

**All Charge Types**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | **$537,825** | $0 | $37,648 | $0 |
| Cash | $0 | **$583,975** | $55,478 | $0 |
| Commercial | -$37,648 | -$55,478 | **$417,125** | -$29,199 |
| Pretrial | $0 | $0 | $29,199 | **$532,500** |

**Felonies**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | **$536,050** | $0 | $42,884 | |
| Cash | $0 | **$591,075** | $65,018 | $0 |
| Commercial | -$42,884 | -$65,018 | **$392,275** | -$58,841 |
| Pretrial | $0 | $0 | $58,841 | **$681,600** |

**Misdemeanors**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | **$541,375** | $0 | $0 | $0 |
| Cash | $0 | **$589,300** | $53,037 | $0 |
| Commercial | $0 | -$53,037 | **$434,875** | -$21,744 |
| Pretrial | $0 | $0 | $21,744 | **$472,150** |

**2008 COSTS of Failure to appear for 1,000 similar defendants released from jail.**

**All Charge Types**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | *$603,500* | $0 | $60,350 | $0 |
| Cash | $0 | *$514,750* | $48,901 | $0 |
| Commercial | -$60,350 | -$48,901 | *$408,250* | -$59,196 |
| Pretrial | $0 | $0 | $59,196 | *$656,750* |

**Felonies**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | *$514,750* | $0 | $59,196 | $0 |
| Cash | $0 | *$532,500* | $87,863 | $0 |
| Commercial | -$59,196 | -$87,863 | *$301,750* | -$31,684 |
| Pretrial | $0 | $0 | $31,684 | *$461,500* |

**Misdemeanors**

| | Attorney | Cash | Commercial | Pretrial |
|---|---|---|---|---|
| Attorney | *$656,750* | $0 | $68,959 | $0 |
| Cash | $0 | *$532,500* | $42,600 | $0 |
| Commercial | -$68,959 | -$42,600 | *$479,250* | -$59,906 |
| Pretrial | $0 | $0 | $59,906 | *$710,000* |

From this analysis, which was based on model estimated differences that compared similarly situated defendants (i.e., apples-to-apples) for 2012, commercial bonds represent the most cost-effective mechanism in terms of preventing FTA, as compared to other release types. These differences hold for similar defendants charged with either a misdemeanor or a felony charge. Where the differences were $0, there was no statistically significant difference between the two types of release.

Highlights from the Above Analysis:

- Commercial bonds tend to be the most cost effective for the 2012 data, in terms of FTA as defined here.

- For misdemeanors, pretrial services ranks 2nd in cost effectiveness based on the 2012 data, followed by cash, then attorney bonds. This was a major improvement in comparison to the 2008 study.

- For felony defendants, commercial bonds are considerably more cost effective, though FTAs for this group of defendants increased across the board for 2012.

- The rank order of cost effectiveness for felonies changed in 2012 to: 1) Commercial, 2) Attorney, 3) Cash, and 4) Pretrial Services bonds.

RECCOMENDATIONS FOR POLICY

- FTA is a complex issue. The measurement of FTA available in Dallas County at present could be improved considerably. FTA is driven by non-appearances to scheduled court data, then ultimately (and in the most serious cases) to a formal change in bond status (i.e., bond forfeiture). Dallas County would be wise to mandate standardized data collection on court appearance via a range of measures to better understand the true costs associated with FTA. A State mandate required courts to record and maintain this information would be ideal.

- Formal change in bond status is highly discretionary. Courts do not have a standard to follow other than what they deem most appropriate, and this is contextualized on an *ad hoc* basis. This level of discretion, while important, should be captured by data collection and made available for "best practices" assessments.

- These findings, in tandem with those from 2008, are highly suggestive that FTA is much more likely among felony released via pretrial services bonds. Conversely, these 2012 results indicate a sizeable improvement in performance by pretrial services for misdemeanor defendants. With further validation, it may be worth considering limiting pretrial services releases to lower risk misdemeanants only, focusing all efforts therein, should the pretrial services department not undergo major operational modifications in the near future. Through this approach, pretrial services may be able to both reduce the jail population and be successful in ensuring that their defendants are present in court and their bonds are not forfeited.

- Commercial bonds continue to be successful in terms of reducing the likelihood of FTA/bond forfeiture. Based on these results, like defendants released via cash bonds are between 27 and 33 percent more likely to FTA in comparison to commercial bonds. Further, the gap in performance between cash and commercial bonds increased by 10 percent from 2008 to 2012. It may be worth discussing a scenario where courts recommend/required that the highest risk misdemeanor defendants are released via commercial bond since commercial bonds at least deliver some form of supervision and the responsibility of appearance falls to the bonding company.

- Dallas County IT is strongly encourage to maintain the data explore queries and establish consistency in field/column names to ease future studies and validation, along with a standard export file type; we recommend explore in comma delimited (.csv) files only or pipe delimited only "|".

- Pretrial Services has mentioned the possibility of moving to increased levels of supervision among defendants (e.g., telephone reminders, risk assessment tools, etc.). These tactics are well advised and the effects of such interventions should be appropriately evaluated to ensure success.

- It is recommended that the county focus efforts on ensuring that individuals are available for justice (i.e., appear in court). The focus should be on maximizing appearance and not on collecting fees from forfeitures due to potentially unseen costs associated with FTA.

STUDY LIMITATIONS

- The findings presented herein are limited to one county (Dallas County, Texas) and are not necessarily generalizable to counties other than those of similar demographic make-ups and those with similar pretrial release practices/proportions. Readers should use caution in any attempt to make inferences about other counties based on these findings.

- Release on recognizance is an important mechanism of release but was rarely used by Dallas County for new crimes (less than 1% defendants). For this reason, own recognizance releases are not analyzed.

- Pretrial services bonds may involve a diversionary program for some defendants. The data provided no indication of whether this was the case, thus no information is provided in terms of FTA for any particular diversion program.

- While the statistics presented here from the propensity score matching analysis are relatively robust, there are indicators of release type and FTA that were not collected by, or made available from, Dallas County. These include employment status, residential status, as well as pre-release and risk assessment measures. However, the Dallas County data are unique in the fact that they do include many measures that other data sources do not include, such as drug offense history, mental illness, and indigence.

- Analyses were not carried out specific to any particular criminal offense (e.g., DWI). The findings may change when exploring particular offenses.

- The indicator of FTA for pretrial services releases was limited to bonds that were held "insufficient" rather than an official indicator of non-appearance in court. This was due to limits on the data collection procedures currently in practice by the County. It is possible that some bonds held insufficient do not reflect a failure to appear, however, in discussion with Dallas County Pretrial Services, it was determined that this possibility was minimal.

**TECHNICAL APPENDIX**

*What is propensity score matching (PSM)?*

PSM is a well-known statistical matching procedure that approximates an experimental design by matching cases, (i.e., defendants), based on a near equivalent probability of having been released from jail by way of one mechanism versus a possible alternative. (For this study, within a maximum difference of 0.1% (caliper = .001) probability, which is considered very conservative). Here, the varying release types can be considered treatments, just like in an experiment. Since there are multiple treatments under study (i.e., the four release types), comparisons are made from one release-type to another, for every possible combination of treatments, respectively. The goal is to end up with an estimate of the "treatment effect." This is the difference in average probability for defendants failing to appear, or recidivating, between two specific release mechanisms. Again, these comparisons are based on statistically matched (i.e., similarly situated) defendants equally likely to have received the treatment.

Restated, a series of predictor variables (outlined in the technical appendix) are used to estimate a defendant's probability of receiving one treatment over another particular treatment. This estimate is the conditioned probability of receiving the treatment–also known as the propensity score. Upon establishing the quality and robustness of the propensity score, mean (average) levels of a final outcome (e.g., failure to appear in court) can be compared between the treated (i.e., those receiving the treatment) and the matched controls (i.e., those who did not receive the treatment, but who had an equal probability of having received it). *In the end, comparisons are made not between all defendants released by way of a particular method, but only between statistically matched pairs.*

*How robust are these findings and how was this determined?*

The quality of the matching procedure was assessed in multiple ways, using contemporary statistical methods. These include 1) an assessment of balance on covariates between matched and unmatched samples, 2) a sensitivity analysis to determine how strong an unmeasured covariate (i.e., something not available in the data such as employment history) would need to be to change the results (Rosenbaum Bounds), and 3) a complementary weighted regression analysis that involved both matched and unmatched defendants (Inverse Probability of Treatment Weighting, IPTW).

These procedures resulted in a strong level of confidence that these PSM analysis findings are robust to the influence of unmeasured covariates and that the matching procedure was very good at finding suitable matches to those actually treated. The specific details on these diagnostics are available via the Center for Crime and Justice Studies webpage (www.utdallas.edu/epps/ccjs) and/or can be requested via email (morris@udallas.edu).

ANALYSIS OVERVIEW

There are four major types of release (bonds) used in Dallas County that are explored here. Such bonds include: (1) cash bonds, (2) attorney bonds, (3) commercial bonds, and (4) pretrial services bonds. Note that release on recognizance and "other" release types (e.g., release to TDCJ for incarceration)

are not assessed. The PSM approach will assess the effect of each bond compared to an alternative bond, respectively, across all combinations of bond types. This is illustrated in Figure 1 below.

```
Figure 1: Counterfactual Comparison Groups

    (1) Attorney            vs.         (2) Cash
    (1) Attorney            vs.         (3) Commercial
    (1) Attorney            vs.         (4) Pretrial

    (2) Cash                vs.         (3) Commercial
    (2) Cash                vs.         (4) Pretrial

    (3) Commercial          vs.         (4) Pretrial
```

As noted, PSM matches individuals who received a treatment, here a type of bond, to others who did not receive the treatment, but who had a statistically identical probability of having received such. In other words, these are similarly situated defendants (e.g., similar offense, criminal history, demographics, etc.) This approach allows for the isolation of a particular bond effect as compared to every alternative. For example, this approach allows us to determine whether cash bonds do better at reducing the probability of FTA compared to an attorney bond, net of other predictive variables on FTA.


### *Measurement/Definition of Variables*

This section outlines and defines all data variables used in this study. The section is broken down by outcome variables, treatment variables (i.e., bond types) and control variables.

*Outcome Variables*

Failure to Appear (FTA) is defined differently depending on the type of bond. For attorney, cash, and commercial bonds, FTA is defined by whether the Court passes a judgment *NISI* against the defendant. A *NISI* is a judicial declaration that a bond is forfeited unless s/he can provide a suitable reason why there was no court appearance. While it is not uncommon for a judgment *NISI* to be overturned, this is an indication of FTA in Court and was easily identified in the `bond_forfeiture` data file provided by Dallas County.

FTA for personal recognizance and pretrial services rarely results in a judgment *NISI* being entered by the Court. Unfortunately, there was not a specific data indicator provided by Dallas County indicative of FTA for these two bond types. In order to gather this information, data on FTA were extracted from court comments through a character extraction algorithm constructed by Dr. Morris, and approved by Mr. Ron Stretcher (the Director of Criminal Justice for Dallas Co.). The comment information was provided in the `dc_bonds` data file. For personal recognizance and pretrial services bonds, FTA was indicated by the issuance of a bond forfeiture, however, most personal bonds are not formally identified as being forfeited. Rather a bond is held "insufficient" when a defendant out on a personal bond does not appear in court. The specific terms used in the character extraction algorithm are available upon request (email morris@utdallas.edu).

*Control Measures*

In addition to FTA, a series of variables serve as control variables for the present study. The variables outlined below are limited to what was available within the data provided by Dallas County. Definitions are provided as needed.

## SOCIODEMOGRAPHIC VARIABLES

**Age**                          (in years) at Time of Arrest

**Age$^2$**                          Age squared (i.e., age as a non-linear effect)

**Gender**                          (Female=1, Male=0)

**Race**                          (Black, White, Hispanic) – Those indicated as "other" on race were less than 3% of all defendants.

**Marital Status**                          (Married=1, otherwise=0)

**Mental Illness History**          (1=yes, 0=no)

**Medical Problems**          (1=yes, 0=no)

**Indigence**          (1=yes, 0=no)

**Born in the United States**    (1=US born; 0=foreign born)

## CRIMINAL HISTORY VARIABLES

**Number of Prior Arrests** – refers to the number of arrests that a defendant has on file with either Dallas County or Texas Department of Public Safety (DPS). Reporting error exists between the arrests reported to DPS from Dallas County. In order to minimize such error, the number of prior arrests was based on the total number of unique arrests occurring prior to the book-in of record stemming from Dallas Co., DPS, or both (whichever was highest).

**Type of Offense for Book-in of Record** – refers to the offense/s for which a defendant was charged underlying the primary 2008 book-in (i.e., the book-in of record). This was codified in part by UCR Index Crime definitions. Each of these 16 crime types was indicated by a binary variable to allow for multiple charge types to be included in the analysis simultaneously. For example, someone arrested for burglary may also have a charge of aggravated assault for the same arrest (or book-in). The offense categories include: drug related crimes, family violence, homicide (not present in data), robbery, aggravated assault, burglary, larceny, auto theft, fraud, obstruction of justice, weapons related offenses, and driving while intoxicated (DWI or DUI).

**Offense of Record Category** (OOR; misdemeanor vs. felony) – The category of offense was used at times to produce results stratified between misdemeanors and felonies.

**Failure to Appear History** (1=at least one previous FTA; 0=no previous FTAs)

**Year of First Arrest** on File – This variable serves as a proxy for the amount of time that an individual has been criminally active, as far as it is indicated in official police records.

**Days in Jail** for the OOR – The number of days spent in jail for the offense of record.

**Celerity** – Celerity refers to the amount of time between the date of the offense and the date of arrest (in days). This variable was log-transformed prior to analyses to correct for skewness.

**Dallas County Jail History** – An indicator of whether a defendant had been booked into the County jail at any time prior to the book-in of record

*Treatment Variables*

There are four main categories of bonds (release mechanisms) explored here. These include attorney bonds, cash bonds, commercial bonds, and pretrial services bonds.

The 2012 Texas Association of Counties (TAC) Bail Bond Handbook (p. 9) provides a detailed explanation of the bond process in Texas, which may vary between counties and defines a bail bond as:

> *A "bail bond" is a written undertaking entered into by the defendant and the defendant's sureties for the appearance of the principal therein before a court or magistrate to answer a criminal accusation; provided, however, that the defendant on execution of the bail bond may deposit with the custodian of funds of the court in which the prosecution is pending current money of the United States in the amount of the bond in lieu of having sureties signing the same. Any cash funds deposited under this article shall be receipted for by the officer receiving the funds and, on order of the court, be refunded, after the defendant complies with the conditions of the defendant's bond, to:*
>
> *(1) any person in the name of whom a receipt was issued, in the amount reflected on the face of the receipt, including the defendant if a receipt was issued to the defendant; or*
>
> *(2) the defendant, if no other person is able to produce a receipt for the funds.*

Attorney Bond - In Texas Bail Bond Board Counties, a state licensed attorney may post bonds as a surety for official clients in a criminal case, without the need to be licensed as a bail bond agent. The Sheriff of a County may inquire as to the security of the attorney in his/her ability to write a bond in accordance with TEXAS Code of Crim. Proc. Ch 17.

Cash Bond - A "cash bond" occurs when the criminal defendant executes the bond himself as principal and posts the entire amount of the bond in cash with the "custodian of funds of the court" in lieu of having sureties sign the bond.' A cash bond is "unsecured" and if the defendant fails to appear for trial, s/he is liable for the full bond amount.

Commercial Bond - A commercial bond is one type of surety bond wherein the bond is made by a corporate surety (an insurance company), via a bonding company. In Texas, only a specially licensed insurance company can write such bonds. This form of bond occurs when a jailed defendant contacts a bail bond company and applies for bail. If approved, the defendant is released to the bonding company for a fee (generally 10-20% of the bail amount set by the court).

**Personal Recognizance (not analyzed here)**, or release on recognizance, is one form of personal bond wherein the court releases an individual from jail without sureties or other security (i.e., financial penalty), but with the promise of the defendant that s/he will reappear for trial.

**Pretrial Services bonds** involve the release of a defendant under an unpaid, or $20 fee, bond held accountable to the Pretrial Services Division. These bonds are intended for low-risk defendants who

are unable to secure release solely to the fact that they cannot access funding needed for a financial bond. A pretrial services bond is technically a type of personal recognizance bond.

In Dallas County, pretrial services eligibility is determined by reviewing a list of inmates booked in the jail the previous business day (or over the weekend), who have yet to be released, and who reside in Dallas and the surrounding counties. Among these inmates, the current offense is checked for eligibility (see below list of exclusions), along with the set bond amount (Dallas County Pretrial Services, 2012). If an inmate is eligible, his/her criminal background is checked via TCIC and NCIC. If still eligible and incarcerated, the inmate is interviewed by Pretrial Services that day. The inmate is then required to provide reference information, which must be confirmed by two personal references. The inmate also has to agree to abide by the program rules. The references are given the information of the amount of the pretrial fee (20 dollars or 3% of the bond, whichever is greater). Information is entered into the computer that the pretrial bond has been approved and once the fee is paid, the inmate is released. If the fee is not paid, a determination is made whether or not the fee should be waived in order to keep the jail population down. The financial status (i.e., indigence) of an inmate is not considered in Dallas Co. pretrial services releases. Inmates released via pretrial services tend to be those who cannot access funding to secure a financial bond.*

Specific eligibility requirements for pretrial services in Dallas Co. were determined via a Court Order in 1999 (Dallas County Court Order No. 99-1951), and were revised in 2007. Serious and violent offenses preclude an inmate's eligibility for pretrial services release as are inmates with a history of felony/assaultive offenses. In some cases, exceptions can be made with approval from a supervisor and/or the District Attorney's office. Pretrial services tend to include individuals charged with minor non-violent (e.g., thefts and fraud) and/or lesser drug possession offenses.

Formal risk assessment tools are not used by Dallas County Pretrial Services in making release decisions.

During the period of observation for this study, Dallas County's Pretrial unit was staffed by four pretrial services officers who operate during normal business hours only. Therefore, potential defendants are screened the next business day after book-in to the jail. The monitoring of defendants other than the required regular check-ins took place solely by telephone.

The offenses that are <u>excluded</u> by Pretrial Services are outlined in the following page:

*Above paragraph paraphrased from in-person and email correspondence with Dallas County Pretrial Services (December, 2012).

Offenses Excluded by Pretrial Services Releases

1. Aggravated kidnapping
2. Aggravated Manufacture, Delivery or possessions of Controlled Substances
3. Aggravated Promotion of Prostitution
4. Aggravated Sexual Assault
5. Aggravated Robbery
6. Capital Murder
7. Criminal Solicitation

8.  Aggravated Assault
9.  Enticing a child
10. Prohibited Sexual Conduct
11. Indecency with a child
12. Injury to a child, elderly or disabled individual
13. Murder
14. Sexual assault
15. Parole violation
16. Sale, distribution or display of harmful materials to a minor
17. Sale or purchase of a child
18. Sexual performance by a child
19. Criminal solicitation of a minor
20. Any charge involving a firearm
21. Any charge involving assault with bodily injury
22. Stalking
23. Family violence
24. Violation of protective order or Magistrate's order; and
25. Harassment (includes telephone harassment)

## References

Block, M. K. & Twist, S. J. (May, 1997). *Report Card on Crime-Runaway Losses: Estimating the Costs of Failure to Appear in the Los Angeles County Criminal Justice System.* American Legislative Exchange Council.

Dallas County Pretrial Services (personal communication, December 10, 2012).

Lechner, M. (1999a). Earnings and Employment Effects of Continuous Off-the-job Training in East Germany after Unification. *Journal of Business and Economic Statistics, 17,* 74-90.

Lechner, M (2001) Identification and Estimation of Causal Effects of Multiple Treatments under the Conditional Independence Assumption. In: Lechner M, Pfeiffer P (eds.) Econometric Evaluation of Labour Market Policies. Heidelberg and New York, Physica.

Texas Association of Counties. (2012). Bail Bond Handbook: Basic Information for County Officers, 2012 Update. Available at https://www.county.org/member-services/legal-resources/publications/Documents/Bail-Bond-Handbook.pdf

Pretrial Release Mechanisms 2012 – Dallas County, Texas  26

Acknowledgements

        The authors of this study would like to thank Dallas County, Texas and its agents in providing cooperation in the data-gathering phase of this project and for funding the project. Special thanks to Dr. Elba Garcia (Dallas County Commissioner, District 4), Ron Stretcher (Director of Criminal Justice), Stanley Victrum and the Dallas Co. IT Department for their time, support, and guidance. It should be noted that Dallas County IT was very responsive to all needs in terms of providing data and adapting to changes in an expedited manner; they should be commended for their performance in helping see this project through. In addition, Mr. Duane Steele has continued to be absolutely instrumental to this research, including the previous (2008) study. His professionalism and efforts are of tremendous benefit to the county and he is deserving of special recognition. Special thanks also to the Texas Department of Public Safety, for expediting the delivery of statewide arrest records for Dallas County jail inmates. Mr. Stephen Clipper, the doctoral research assistant on the project, is also deserving of thanks for all of his time and effort with this project.

Case Case 26-20187    Document 80-1    Page 185 of    Date Filed 06/25/2026 of 28

ABOUT THE AUTHOR

**Robert G. Morris**, Ph.D. is Associate Professor of Criminology as well as the Director of the Center for Crime and Justice Studies at the University of Texas at Dallas. He also serves as the Chair of the CJAB Subcommittee on Research. Dr. Morris specializes in quantitative analytics, criminological theory, and contemporary issues in criminal justice, having published dozens of peer reviewed scholarly studies in top-ranked scientific journals such as *Justice Quarterly*, *Crime and Delinquency*, *Intelligence*, and *Journal of Quantitative Criminology*. He teaches doctoral level statistics/analysis courses at UT Dallas as well as undergraduate courses surrounding criminal justice and criminology. He is the recent recipient of numerous research and teaching awards including the prestigious UT System Regents' Outstanding Teaching Award (2011) and the Academy of Criminal Justice Sciences Outstanding Research Paper Award (2012). Dr. Morris received his Ph.D. in Criminal Justice from Sam Houston State University in 2007.

Case 2:60-cv-01337    Document 241    Filed on 06/09/26 in TXSD    Page 16 of 11

**Exhibit D**

## OFFICE OF COURT MANAGEMENT
## HARRIS COUNTY CRIMINAL COURTS AT LAW



**JUDGES**

Hon. Paula Goodhart
County Criminal Court
At Law Number 1

Hon. William Harmon
County Criminal Court
At Law Number 2

Hon Natalie C. Fleming
County Criminal Court
At Law Number 3

Hon. John Clinton
County Criminal Court
At Law Number 4

Hon. Margaret S. Harris
County Criminal Court
At Law Number 5

Hon. Larry Standley
County Criminal Court
At Law Number 6

Hon. Pam Derbyshire
County Criminal Court
At Law Number 7

Hon. Jay Karahan
County Criminal Court
At Law Number 8

Hon. Analia Wilkerson
County Criminal Court
At Law Number 9

Hon. Dan Spjut
County Criminal Court
At Law Number 10

Hon. Diane Bull
County Criminal Court
At Law Number 11

Hon. Robin Brown
County Criminal Court
At Law Number 12

Hon Don Smyth
County Criminal Court
At Law Number 13

Hon. Mike Fields
County Criminal Court
At Law Number 14

Hon. Jean Spradling Hughes
County Criminal Court
At Law Number 15

Hon. Linda Garcia
County Criminal Court
At Law Number 16

**STAFF**

Ed Wells
Court Manager

Peyton Peebles
Staff Attorney

Iliana Mize
Office Manager

Hon. Blanca Villagomez,
Hon. Eric Hagstette,
Hon. Joseph Licata,
Hon. Ronald Nicholas,
Hon. Jill Wallace,
    Criminal Law Hearing Officers, Harris County, Texas

Re: Magistration duties and discretion

Judges Villagomez, Hagstette, Licata, Nicholas, and Wallace:

We are committed to making criminal justice in Harris County efficient, fair, and legal for all those involved, balancing the interests of the accused with those of public safety. Please know that as we strive for that goal in the 16 statutory county criminal courts, we are mindful that you strive for the same goal in your courtroom.

We believe that, as criminal law hearing officers and Texas magistrates, you have full discretion to perform your duties under the Government Code and the Code of Criminal Procedure with respect to cases appearing before our courts. This includes determining bail amounts[1] and granting personal bonds in cases you deem appropriate.[2] To facilitate the latter in appropriate cases, our courts have determined that Pretrial Services need only verify an arrestee's information through one reliable source rather than two. We also recently acknowledged in our local rules that certain situations might inherently favor a personal bond whereas others might inherently disfavor one (see attached local rule amendment). These considerations might work well in your court as well.

---

[1] *See* TEX. CODE CRIM. P. ANN. art. 17.15 (Vernon 1993):

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

as well as *Roberson v. Richardson*, No. H-84-2974 (S.D. Tex. Nov. 25, 1987) (requiring a magistrate to consider a promulgated initial bail schedule amount as a factor, along with the factors appearing in article 17.15, in determining an appropriate amount of bail).

[2] *See* TEX. CODE CRIM. P. ANN. art. 17.03 and 17.031 (Vernon 1990) (giving Texas magistrates the authority to release defendants on personal bonds in many instances); *see also* TEX. CODE CRIM. P. ANN. art. 2.09 (Vernon 1993) (Harris County criminal law hearing officers are Texas magistrates).

---

**1201 FRANKLIN | 7TH FLOOR | HOUSTON, TEXAS 77002 | 713.755.5394 | FAX 713.755.8931**

Please understand that our Local Rules are intended to: (1) provide a procedural framework to carry out existing statutory law; or (2) restate existing statutory law. One exception to statutory law is that the Local Rules specify that the clerk's office will apply the initial bail schedule amount when originally filing the charge. *Roberson* requires a magistrate to consider the initial bail schedule amount as a factor when determining the appropriate bail amount for each case. That amount must be taken into consideration along with other statutory factors:

1. The amount is high enough to ensure appearance in court;
2. The amount is not oppressive given the circumstances;
3. The amount takes into consideration the nature of the offense and the circumstances under which it was allegedly committed;
4. The amount takes into consideration the accused's ability to make bail, upon which you may take proof; and
5. The amount considers the future safety of a victim of the alleged offense and the community.

TEX. CODE CRIM. P. ANN. art. 17.15 (Vernon 1993) (reproduce in footnote 1). The clerk should then enter the bail amount ultimately determined by the magistrate. Nothing in our Local Rules is intended to limit your discretion in deciding when a personal bond is appropriate or in assessing the appropriate bail amount.

We are working with the district courts and relevant Harris County agencies to implement the Arnold Foundation's Public Safety Assessment tool as quickly as possible. In conjunction with the Pretrial Services interview information you receive now, this tool should help ensure that bail is assessed at a meaningful amount for each defendant and that risk and flight concerns are addressed with appropriate conditions. We continue to ask Harris County to increase resources for its Pretrial Services department, given that we feel: (1) the information they provide is so very important to determining bail issues; and (2) it must be able to effectively supervise defendants released on personal bonds. We trust you feel the same with respect to those arrestees brought before you.

As you know, the Harris County Commissioner's Court recently approved two more hearing officer positions. The nine-member board with authority to appoint hearing officers (with Commissioner's Court approval) is already reviewing applications to choose the two best candidates for statutory 1-year terms.[3]

---

[3] *See* TEX. GOV'T CODE. ANN. § 54.852 (Vernon 1993):

    (a) A board composed of three judges of the district courts of Harris County trying criminal cases, three judges of the county criminal courts at law, and three justices of the peace in Harris County may appoint criminal law hearing officers, with the consent and approval of the commissioners court, to perform the duties authorized by this subchapter. A quorum is two-thirds of the members of the board.

    (b) The board shall ensure that the criminal law hearing officers appointed under this subchapter are representative of the race, sex, national origin, and ethnicity of the population of Harris County.

    (c) A criminal law hearing officer serves a one-year term and continues to serve until a successor is appointed.

    (d) A criminal law hearing officer appointed under this subchapter may be terminated at any time in the same manner as appointed.

    (e) A criminal law hearing officer may not engage in the private practice of law or

Hopefully you find this information helpful.

_____ 8/8/16
Hon. Paula Goodhart, Presiding Judge
County Criminal Court at Law No. 1

_____ 8-8-2016
Hon. William Harmon, Presiding Judge
County Criminal Court at Law No. 2

_____ 9/8/16
Hon. Natalie Fleming, Presiding Judge
County Criminal Court at Law No. 3

_____ 8/8/16
Hon. John Clinton, Presiding Judge
County Criminal Court at Law No. 4

_____ 8/3/16
Hon. Margaret Harris, Presiding Judge
County Criminal Court at Law No. 5

_____ 8/8/16
Hon. Larry Standley, Presiding Judge
County Criminal Court at Law No. 6

_____ 8/8/16
Hon. Pam Derbyshire, Presiding Judge
County Criminal Court at Law No. 7

_____ 8-8-16
Hon. Jay Karahan, Presiding Judge
County Criminal Court at Law No. 8

_____ 8/08/16
Hon. Analia Wilkerson, Presiding Judge
County Criminal Court at Law No. 9

_____ 8-8-16
Hon. Dan Spjut, Presiding Judge
County Criminal Court at Law No. 10

_____ 8/8/16
Hon. Diane Bull, Presiding Judge
County Criminal Court at Law No. 11

_____ 8/8/16
Hon. Robin Brown, Presiding Judge
County Criminal Court at Law No. 12

_____ 8/8/2016
Hon. Don Smyth, Presiding Judge
County Criminal Court at Law No. 13

_____ 8/8/16
Hon. Mike Fields, Presiding Judge
County Criminal Court at Law No. 14

_____ 8.8.16
Hon. Jean Spradling Hughes, Presiding Judge
County Criminal Court at Law No. 15

_____ 8/8/16
Hon. Linda Garcia, Presiding Judge
County Criminal Court at Law No. 16

---

serve as a mediator or arbitrator or otherwise participate as a neutral party in any
alternate dispute resolution proceeding, with or without compensation.

(f)   A criminal law hearing officer is subject to proceedings under Article V, Section
      1-a, of the Texas Constitution.

Amended Local Rule 12:

**RULE 12. APPROVAL OF PERSONAL BONDS**

12.1. Whether to approve or deny a personal bond is up to the reviewing magistrate's sound discretion.

12.2. In general, personal bonds are favored in the following types of cases, absent good cause to deny a personal bond:

12.2.1. theft by check;

12.2.2. driving while license suspended or invalid;

12.2.3. gambling offenses;

12.2.4. illegal dumping;

12.2.5. fictitious vehicle license plate or registration;

12.2.6. prostitution;

12.2.7. violation of laws regulating sexually oriented businesses;

12.2.8. public intoxication;

12.2.9. driving without a license;

12.2.10. class B criminal trespass, if the defendant has no prior convictions or community supervision for a Class B or greater offense;

12.2.11. class B retail theft, if the defendant has no prior convictions or community supervision for a Class B or greater offense; and

12.2.12. possessing a drug or marijuana (except possession of synthetic cannabinoids or Class A possession of marijuana), if the defendant has no prior convictions or community supervision for a Class B or greater offense.

12.3. In general, personal bonds are disfavored where the defendant has demonstrated a risk to reoffend or harm society, examples of which might be where:

12.3.1. the defendant is charged with an offense alleged to have occurred while on bond for another offense;

12.3.2. the defendant is charged with multiple offenses (unless both are favored for personal bond under the above criteria; not including offenses punishable by fine only);

12.3.3. the defendant is charged with an offense alleged to have occurred while the defendant was on community supervision;

12.3.4. the defendant appears to be a danger to himself/herself or others; or

12.3.5. the defendant has shown an unwillingness to follow bond conditions in the past.

12.4. In general, personal bonds are disfavored where the defendant has previously failed to appear in court as instructed.

DEC - 2 1987

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
F I L E D

NOV 25 1987

JESSE E. CLARK, CLERK
BY DEPUTY:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY ROBERSON; ET AL. §
§
§
VS. § CIVIL ACTION NO. H-84-2974
§
§
NEEL RICHARDSON; ET AL. §

ORDER

Pending before the Court is the parties' stipulation regarding attorneys' fees. The Court

ORDERS this stipulation is hereby approved in all respects.

DONE in Houston, Texas, this _____25ᵗʰ_____ day of November, 1987.

JAMES DeANDA
UNITED STATES DISTRICT JUDGE

DEC -2 1987

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

FILED

NOV 25 1987

JESSE E. CLARK, CLERK
BY DEPUTY:

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY ROBERSON, et al.,

    Individually and as
    Class Representative

    Plaintiffs,

    v.

NEEL RICHARDSON, et al.,

    Defendants.

CIVIL ACTION
NO. H-84-~~3659~~
2974

## AGREED FINAL JUDGMENT

On this day came on to be heard the above-entitled and numbered cause. The parties appeared in open court by and through their attorneys of record and announced that all claims, causes of action, and matters in controversy actually asserted, have been compromised and settled, and prayed that the Court render an Agreed Final Judgment in accordance with the terms set forth herein.

The parties announced that their intention in consenting to entry of the herein contained judgment, and the reason for the herein contained orders, is to insure that Plaintiffs are afforded all of the rights, privileges and immunities guaranteed by the Constitution and laws of the United States of America and the State of Texas, including, but not limited to, the right to a prompt, fair and reliable determination of Probable Cause as set out in *Gerstein v. Pugh*, 420 U.S. 103 (1978), a meaningful review of alternatives to pre-scheduled bail amounts as set out in *Rainwater v. Pugh*, 572 F.2d 1053 (5th Cir. 1978)(*en banc*), and the right to the prompt appointment of counsel.

The parties further announced that the reason for the herein contained judgment is to afford each member of the Plaintiffs' class a Probable Cause and bond hearing before a duly elected Judge of a State District Court, County Criminal Court at Law, Statutory County Court at Law authorized to hear criminal matters, County Court, Justice of the Peace, special Judge pursuant to Vernon's Annotated Texas Civil Statutes, Government Code, Sec. 75.403, or such persons who may be temporarily appointed or designated to lawfully preside on behalf of a court, but in no case shall such person or persons not be a resident of Harris County, Texas, licensed to practice law for at least four (4) years and a member in good standing of the State Bar of Texas (hereinafter referred to as a "Judicial Officer"), and the appointment of counsel. All of the foregoing shall be in accordance with the provisions of this Judgment.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Judges of the Statutory County Criminal Courts at Law of Harris County Texas ("the Judges"), shall cause each person accused of a Class "A" or "B" misdemeanor offense filed in the Statutory County Criminal Courts at Law of Harris County, Texas, to be taken before[1] a Judicial Officer, as soon as a Judicial Officer is available after the accused is placed in a jail operated by or under the authority of the Sheriff of Harris County, Texas, or other detention facility operated by or under the authority of the Sheriff of Harris County, Texas, whereupon the accused shall be afforded a hearing that will entail an examination of whether "Probable Cause" (which is defined as a reasonable ground, based upon the facts and circumstances, sufficient to warrant a prudent man to believe that the accused has committed each element of the offense charged and the accused is culpable, it being understood that if there is a sufficient defense established by testimony or documentation of the arresting agency, then there is no Probable Cause) exists for the accused's further detention, set bail and review the accused's suitability for release on an alterative to prescheduled bail amounts. At the hearing the Judicial Officer shall:

(A)  Inform the accused in clear, understandable language, of the accusation against him and of any complaint or information filed against him;

(B)  Inform the accused of his right to retain counsel; of his right to remain silent; of his right to have an attorney present during any interview with peace officers or prosecutors; of his right to terminate police interrogation at any time; of his right to request the appointment of counsel if he is an indigent (a person who is not financially able to employ counsel); and that any statement made by the accused can and will be used against him at trial.

(C)  Determine whether Probable Cause exists to warrant further detention of the defendant on the charges pending. The Judicial Officer shall determine the existence of Probable Cause based upon witness testimony (or affidavits), the arresting officers testimony, the Judicial Officer's analysis of a written offense report, or of written field notes/reports prepared by the arresting officer. The Judicial Officer shall enter the basis for his findings on the record by completing a form regarding the findings

---

[1]  "Taken before" shall mean either physically bringing the accused before the Judicial Officer in person or by the use of high speed two way audio/video transmission technology. In circumstances where audio/video technology is utilized (in that the accused is located in a holding facility other than the facility in which the Judicial Officer is located) said system will cause the entire hearing to be recorded on video tape. If this technology is implemented, a copy of the recording will be the record and will be maintained for 120 days after the hearing.

2

and orders made by the Judicial Officer and including the same with the papers of the case. If the Judicial Officer determines there is not Probable Cause, the accused shall immediately be discharged from custody (detention).

(D) Where the Judicial Officer finds Probable Cause for further detention, he shall: (1) enter such finding on the record, and (2) set the amount of bail required of the accused for release and determine the accused's eligibility for release on personal bond or alternatives to prescheduled bail amounts. Such bail determinations shall be according to the following criteria:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with;

2. The nature of the offense for which Probable Cause has been found and the circumstances under which the offense was allegedly committed are to be considered, including both aggravating and mitigating factors for which there is reasonable ground to believe shown, if any;

3. The ability to make bail is to be regarded, and proof may be taken upon this point;

4. The future safety of the victim may be considered, and if this be a factor, release to a third person should also be considered; and

5. The Judicial Officer shall also consider the accused's employment history, residency, family affiliations, prior criminal record, previous court appearance performance and any outstanding bonds.

It is further ORDERED that the Judges shall also cause the Judicial Officer to be available for conducting the hearings described in this order for persons accused of Class "C" misdemeanor offenses upon which the accused is booked into the Harris County Jail.

It is further ORDERED that for a period of three years from entry of this order, if a hearing has not been held within 24 hours of an arrest, the Judges shall cause records to be maintained showing the accused's name, the case number and the arresting agency, and shall make such records available to Plaintiffs' counsel on request. In the event a particular arresting agency shows a pattern of failing to produce accused persons for the hearings required within 24 hours of arrest, this Court shall enter an additional order requiring the defendants to immediately notify Plaintiffs' counsel when an accused is brought by such agency before the Judicial Officer after 24 hours from arrest has elapsed.

It is further ORDERED that the bail determinations made by the Judicial Officer shall not be changed but for good cause shown. The basis for, and the finding of good cause, shall be entered upon the record.

3

It is further ORDERED that the Judges shall provide Judicial Officers who will be continuously on duty to conduct the hearings referred to in this order during the 15 hours of each week day, and for 15 hours each day on weekends, during which times the Judges are not available to preside. The illness or absence of a Judicial Officer shall not absolve the Judges of responsibility to provide Judicial Officers under this Order.

It is further ORDERED that the Statutory County Criminal Courts at Law of Harris County, Texas, shall implement and maintain a bond schedule for all misdemeanor offenses within their jurisdiction. This schedule shall establish the initial amounts of bail required in each type or category of offense. At the Probable Cause hearing the Judicial Officer shall use the Bail Schedule, in addition to the criteria in Section D, in determining the appropriate bail in a given case. The Judicial Officer shall have the authority to order the accused released on personal bond or released on other alternatives to prescheduled bail amounts. The Judges shall direct the Pretrial Services Agency to make every effort to insure that sufficient information is available at the time of the hearings required herein for the Judicial Officer to determine an accused's eligibility for a personal bond or alternatives to prescheduled bail amounts.

It is further ORDERED that the Judges shall appoint counsel prior to any adversarial judicial proceedings (any proceeding held in the court in which the case is filed), or where the Judge concludes that the interests of justice require representation, for all accused indigents who do not refuse the appointment of counsel. The Judges may not deny appointed counsel to an accused solely because the accused has posted, or is capable of posting bail. Appointments shall not be revoked, rescinded, withdrawn or terminated when an accused has posted bail, but for good cause shown, and such a finding and the basis therefore shall be entered on the record. The posting of bond by the accused is not good cause for the revocation, recision, withdrawal or termination of the appointment of counsel for an accused. In considering whether an accused is entitled to appointed counsel the Judges shall consider factors including, but not limited to, the following:

1. the accused's income,
2. significant property owned by the accused,
3. outstanding obligations of the accused,
4. necessary expenses of the accused,
5. the number and ages of any dependents of the accused, and
6. whether the accused has posted or is capable of posting bail.

It is further ORDERED that the provisions of this Order shall be implemented on or before, March 1, 1988.

4

This Agreed Final Plaintiffs' Original and Amended Petitions, and the implementation of this Agreed Judgment concludes all matters contained therein. The United States District Court retains exclusive jurisdiction to effectuate the relief set out herein and to issue such other orders as are necessary.

All relief not expressly granted herein is denied.

SIGNED at Houston, Texas, on this 25 day of March 1987.

U S District Judge
~~JUDGE PRESIDING~~

APPROVED AS TO FORM AND
SUBSTANCE:

JAMES T. OITZINGER

By _____

JAMES T. OITZINGER
Attorney in Charge
Southern District of Texas I.D. No. 6298
1932 Bissonnet
Houston, Texas 77005
AC 713/683-0168

ATTORNEY FOR PLAINTIFFS

REYNOLDS SHANNON MILLER BLINN WHITE & COOK

By _____

GRANT COOK
Attorney in Charge
Southern District of Texas I.D. No. 5005
3300 Allied Bank Plaza
1000 Louisiana
Houston, Texas 77002
AC 713/651-1300

ATTORNEYS FOR DEFENDANTS

5

**Exhibit E**

| Offense | Class | Code | |
|---------|-------|------|---|
| Public lewdness (sexual activity done in public) | A | PC 21.07 | |
| Indecent exposure | B | PC 21.08 | |
| Disclosing sexual images of another person without that person's consent and in a manner that discloses their identity | A | PC 21.16 | |
| Voyeurism | B | PC 21.16 | |
| Assault (including domestic violence) that does not include a deadly weapon or choking | A | PC 22.01 | |
| Deadly conduct (recklessly engaging in conduct that puts another person in imminent danger of death or serious bodily injury; doesn't include shooting a gun in the direction of a person or building, which would be a felony) | A | PC 22.05 | |
| Terroristic threat (threatening violence to any person or property with the intent to either put someone in fear of imminent death or serious bodily injury or prevent the occupation/use of a building) | B | PC 22.07 (note, if the offense also consititutes family violence, it is increased to a Class A) | |
| Enticing a child (enticing, persuading, or otherwise taking a child with intent to interfere with the lawful custody of the child) | B | PC 25.04 | |
| Violating a condition of bond in a family violence, sexual assault, or stalking case that is related to the safety of the victim or the community by committing family violence, by communicating with a protected person, by going where they were restricted, by possessing a firearm, by harming or threatening a pet, or by tampering with a GPS monitor. | A | PC 25.07 | |
| Criminal mischief (damaging or destroying another person's property in an amount between $100 and $2,500) | A or B | PC 28.03 | B (from $100 to $750) or A (from $750 to $2,500) |
| Graffiti (causing pecuniary loss between $100 and $2,500) | A or B | PC 28.08 | B (from $100 to $750) or A (from $750 to $2,500) |
| Burglarizing a vehicle | A | PC 30.04 | |
| Trespass on someone's property | B | PC 30.05 | |
| Theft of money or items valued at $100 to $2,500 | A or B | PC 31.03 | B (from $100 to $750) or A (from $750 to $2,500) |
| Theft of money or items valued under $100 with a prior theft conviction | B | PC 31.03 | |
| Tampering with or removing a serial number | A | PC 31.11 | |
| Possessing or making instruments used to commit retail theft (i.e., to remove or shield security device) | A | PC 31.15 | |
| Acquiring another person's credit card or debit card information by using an electronic, photographic, or other device (i.e., credit card skimming at gas stations) | A or B | PC 31.17 | B (raised to an A if given to a third party) |
| Basic forgery | A | PC 32.21 | Note: elevated to a felony if the forgery involves wills, deeds, money, securities, or other financial information. |
| Making a false statement to obtain credit | A or B | PC 32.32 | B (from $100 to $750) or A (from $750 to $2,500) |
| Breaching computer security (accessing someone's computer without their consent) | B | PC 33.02 | |
| Breaching computer security with intent to defraud, harm, or damage | A or B | PC 33.02 | B (from $100 to $750) or A (from $750 to $2,500) |
| Insurance or Medicaid fraud | A or B | PC 35.02 & 35A.02 | B (from $100 to $750) or A (from $750 to $2,500) |
| Perjury | A | PC 37.02 | Note: aggravated perjury (perjury about a material statement in an official proceeding) is a felony. |
| False report to a police officer | B | PC 37.081 | |
| Tampering with government record | A or B | PC 37.10 | Usually an A. Can be elevated to a felony if done with intent to defraud or harm. |
| False identification as a peace (police) officer | B | PC 37.12 | |
| Giving a fake name, address, or DOB to an officer that has lawfully detained the person | A or B | PC 38.02 | Will be an A if the person was a fugitive from justice (i.e., wanted) and a B if they were not. |
| Resisting an officer's attempt to arrest, search, or transport a person | A | PC 38.03 | |
| Evading an officer's attempt to arrest or detain | A | PC 38.04 | Elevated to a felony if evading in a vehicle. |
| Hiding someone an officer is trying to arrest, or allowing them to escape ("hindering apprehension") | A | PC 38.05 | |
| Escaping from custody after an arrest, detention, or conviction for a misdemeanor offense | A | PC 38.06 | |
| Bail jumping, or failure to appear, without any reasonable excuse after being released from custody on a Class A or B misdemeanor with the requirement to appear | A | PC 38.10 | Harris County typically just orders the existing case's bond forfeited and issues a warrant for arrest (rather than filing this new charge). |
| Intentionally hindering an official proceeding by noise or violent behavior | A | PC 38.13 | |
| Interfering with the duties of a police officer or other official emergency personnel | B | PC 38.15 | |
| Official oppression | A | PC 39.03 | |
| Disorderly conduct by either discharging a firearm or displaying a firearm in a public place | B | PC 42.01 | |
| Participating in a riot | B | PC 42.02 | |
| Calling 911 and remaining silent or making abusive or harassing statements to the 911 operator | B | PC 42.061 | |
| Interfering with another person's attempt to call 911 or for medical help during an emergency | A | PC 42.062 | |
| Harassment (threatening or making obscene comments with intent to annoy, torment, alarm, or embarrass someone; also includes making repeated phone calls with intent to do same) | B | PC 42.07 | |
| Cruelty to animals (by neglect or abandonment) | A | PC 42.09 & 42.092 | |
| Prostitution | A or B | PC 43.02 | B for a first offense. A for a second or third offense. The fourth offense becomes a felony. |
| Promotion of prostitution (i.e., playing the pimp) | A | PC 43.03 | Second offense is a felony. |
| Unlawfully carrying a handgun, illegal knife, or club | A | PC 46.02 | |
| Concealed handgun holder displaying a handgun (except in valid holster) or taking handgun into restricted places | A | PC 46.035 | |
| Person convicted of family violence possessing a handgun within 5 years | A | PC 46.04 | |
| Person possessing a firearm in violation of a protective order issued in a family violence case | A | PC 46.04 | |

| Gambling (by acting as a bookie or running a gambling house) | A | PC 47.03 & 47.04 | |
| Gambling (by possessing a gambling device with intent to further gambling) | A | PC 47.06 | |
| Driving while intoxicated (first or second offense) | A or B | PC 49.04 & 49.09 | B (first offense) or A (second offense or or high alcohol level) |
| Violating a court order enjoining organized criminal activity (i.e., the Haverstock situation) | A | PC 71.021 | |
| Failure to report child abuse | A | FC 261.101 & 261.109 | |
| Possessing less than 28 grams of most prescription pain killers or mood depressants | A | HSC 481.104 & 481.117 | |
| Possessing under 4 ounces of marijuana | A or B | HSC 481.121 | A (2-4 ounces) or B (under 2 ounces) |
| Possession of any amount of drug requiring a prescription but not listed in a schedule or penalty group | A | HSC 483.041 | |
| Hit and run involving injury (but not serious bodily injury) | Hybrid | TC 550.021 | Up to a year in jail or up to 5 years in prison |
| Hit and run not involving injury ("failure to stop and give information") but resulting in over $200 damage | B | TC 550.022, 550.024, 550.025 | |
| Possessing or displaying a fictitious driver's license, or providing false information on a driver's license application | A | TC 521.451 | |
| Driving with a suspended or invalid driver's license (or without a license, if there is an order preventing a license) if: (1) was previously convicted of DWLS; (2) was driving without insurance; or (3) the license was previously suspended for DWI | B | TC 521.457 | |
| Driving with a suspended or invalid driver's license (or without a license, if there is an order preventing a license) if was driving without insurance AND caused an accident | A | TC 521.457 | |
| Operating an unlicensed massage parlor or as an unlicensed masseuse | A or B | TOC 455.352 | B (first time) or A (second or third time) |

Case 2:60-cv-01337    Document 8026    Filed on 00/09/20 in TXSD    Page 200 of 12

**Exhibit F**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 16-cv-01414 |
| HARRIS COUNTY, TEXAS, et al. | ) | (Consolidated Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF KELVIN BANKS**

1. My name is Kelvin Banks. I am over eighteen years of age, have personal knowledge of the facts set forth herein, and am competent to make this declaration.

2. I am the Director of Harris County Pretrial Services. I have held this position since October 1, 2016. Prior to this position, I was the Director of Pretrial Services for the Third Circuit Court in Wayne County, Michigan.

3. Because of my position, I have personal knowledge about the details of the pretrial procedures in Harris County as of October 1, 2016.

4. Individuals under arrest in Harris County can pay the bail listed by the District Attorney in the charging instrument and be released once the criminal complaint is filed with the District Clerk.

5. It is my understanding that the majority of bail amounts are posted by a bail bondsman, who agree to post the full bail in exchange for a fee. It is my understanding that the typical fee is 10%.

6. Booked defendants who do not post bail will appear before a Hearing Officer usually within 24 hours of arrest. During this proceeding (the "Probable Cause, Bail & Personal Bond Proceeding") the Hearing Officer will determine whether probable cause exists to continue detention, set bail according to the Local Rules of Court, and may grant a personal recognizance bond ("personal bond") that does not require financial security for release.

7. After being booked, but before the Probable Cause, Bail & Personal Bond Proceeding

1

referenced above, Pretrial Services conducts an informational interview of most arrestees who are not removed for behavioral issues or immediate medical attention. This interview occurs in a neutral, non-confrontational setting within the jail.

8. One purpose of the Pretrial Services interview is to gather information from the defendants so it can be given to the Hearing Officers and the assigned judges. The Hearing Officers and the assigned judges have access to the information obtained in the interview before any proceedings or hearings.

9. Pretrial Services currently asks the accused questions about their employment and criminal background, identifying information, current and past living arrangements, family affiliations, companions and contacts, health information, and detailed financial information. This information is recorded on a form, referred to as the Pretrial Services Short Form Defendant Report ("Short Form"), a true and correct copy of which is attached hereto as Exhibit 1.

10. Pretrial Services employees often contact family or friends of the accused to verify the information received (verification through at least one reliable source is necessary for release on a personal bond). This includes allowing and enlisting the accused to use Facebook or other social media to reach out to their contacts for support.

11. It is my understanding that arrestees in custody of the two largest Harris County law enforcement agencies (the Harris County Sheriff's Office and the Houston Police Department) are also given access to their cell phones to record contact information useful for release before their phone is secured with other property.

12. Additionally, Pretrial Services obtains a complete criminal history of the accused using the Justice Information Management System (local), the Texas Crime Information Center (statewide), and the National Crime Information Center (federal) databases. The National Crime Information Center database was created by and is currently maintained by the Federal Bureau of Investigation.

13. After the Pretrial Services interview, a Pretrial Services agent completes a risk assessment instrument, a true and correct copy of which is attached as Exhibit 2. The purpose of this is to determine the risk of a detainee failing to appear in court or re-offend if released. Pretrial Services uses the risk assessment process to assign a risk level, and present a recommendation to the Hearing Officer of whether the defendant should be released on a personal bond. The Hearing Officer is not bound by this recommendation.

14. Once the Pretrial Services interview is complete, the Short Form and a risk assessment, attached as Exhibits hereto, and a criminal history (collectively, "Pretrial Services Defendant Report") are provided to the Hearing Officers before the Probable Cause, Bail & Personal Bond Proceeding and are also made available to the assigned judge.

15. The Hearing Officer has a copy of the accused's Pretrial Services Defendant Report in front of them before and during the Probable Cause, Bail and Personal Bond Proceeding

for everyone that was interviewed.

16. A Pretrial Services staffer or supervisor attends the Probable Cause, Bail & Personal Bond Proceeding. The Pretrial Services staffer may answer questions from the Hearing Officer or offer additional information about the defendant's Pretrial Services Defendant Report.

17. The assigned judge has access to the defendant's Pretrial Services Defendant Report before and during the initial appearance.

18. The pretrial procedures in Harris County are currently undergoing noteworthy changes. It is my understanding that in August 2016, the County Criminal Court at Law Judges amended the Local Rules of Court to presumptively give personal bonds to arrestees who commit twelve identified misdemeanor crimes. It is my further understanding that two additional Hearing Officers have been hired to conduct the Probable Cause, Bail & Personal Bond Proceedings, bringing the total number of Hearing Officers to seven as of December 1, 2016. We also have adopted the Laura and John Arnold Foundation Risk Assessment Tool, which includes an objective pretrial services risk evaluation of arrestees. This risk assessment tool will be ready for use in early 2017. These changes will significantly change the pretrial procedures in Harris County in the near future.

I certify under the penalty of perjury that the foregoing is true and correct.

_____
Kelvin Banks

11/8/16
_____
Date

3

Case: 26-0137   Document: 61   Filed: 06/25/2025   Page 206 of 12

# Exhibit 1



## HARRIS COUNTY PRETRIAL SERVICES
## DEFENDANT REPORT-SHORT FORM

| Interview Status: | | Interview Date/Time: | |
|---|---|---|---|
| Defendant: | | Interview Number: | |
| Race/Ethnicity: | | SPN: | |
| Age/Sex/DOB: | | Marital Status: | |
| Hair/Eye Color | | Height/Weight | |
| US Citizen Status: | | Interpreter Used: | |
| Place of Birth: | | | |
| Preferred Language: | | Driver's License/State: | |
| Interview Language: | | Social Security Number: | |

**ASSOCIATED CASES**

| Offense | Filed | Court | Case Number | Bond |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**CRIMINAL HISTORY SUMMARY**

| | | | |
|---|---|---|---|
| Currently on Probation: | | Number of Adult Arrests: | |
| Currently on Parole: | | Number of Convictions/Felony: | |
| Currently on Bond: | | Number of Convictions/Misdemeanor: | |
| Hold(s): | | Number of Convictions/Unknown Offense Level: | |
| Previous FTA(s): | | Number of Convictions/Violent Offense: | |
| Number of Class C Warrants: | | Number of Juvenile Adjudications: | |
| Fugitive Warrant(s): | | Registered Sex Offender: | |
| Under a Protective Order: | | Handgun License: | |
| Gang Member (self-reported): | | | |

**EMPLOYMENT / EDUCATION / MILITARY STATUS**

| | | | |
|---|---|---|---|
| Current Employment Status: | | Time In This Status: | |
| Current Employer: | | | |
| Previous Employment Status: | | Time In This Status: | |
| Previous Employer: | | | |
| Education Status: | | Diploma: | |
| School Name: | | | |
| Military Status/Branch: | | | |

_____                    _____
        **Approved / Date**                              **Denied / Date**



**HARRIS COUNTY PRETRIAL SERVICES**
**DEFENDANT REPORT-SHORT FORM**

**CURRENT RESIDENCE AND TRANSPORTATION**

| | | | |
|---|---|---|---|
| **Address Type:** | | **Complex Name:** | |
| **Time at Address/Can Return?:** | | **Own/Rent/Other:** | |
| **Lives With:** | | | |
| **Number children at home /defendant is responsible for care and support:** | | **Number of people who depend on defendant for care and support:** | |
| **People Supporting:** | | | |
| **Home Phone:** | | **Personal Cell Phone:** | |
| **Time in Harris County Area:** | | **Reason if less than 1 year:** | |
| **Have Vehicle/If Yes, in Your Name?** | | **If no, mode of transportation:** | |

**OTHER ADDRESSES**

| Status Own/Rent/Other | Address Lives With | Time at Address Can Return? |
|---|---|---|
| | | |

**HEALTH INFORMATION**

| | | | |
|---|---|---|---|
| **Physical Health Condition:** | | **ADA Accommodation?:** | |
| **Mental Health Condition:** | | **MI/MR Indicated?:** | |
| **MI/MR Indicated Reason:** | | | |
| **Court Designated Guardian?:** | | **Drug/Alcohol Problem?:** | |
| **Medications:** | | | |

**OTHER CONTACTS**

| Name | Relationship | Phone | Known | Contacted |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



**HARRIS COUNTY PRETRIAL SERVICES**
**DEFENDANT REPORT-SHORT FORM**

**OTHER NAMES**

| |
|---|
| |

**CRIMINAL HISTORY SUMMARY COMMENTS**

| Item | Comments |
|---|---|
| On Probation: | |
| On Parole: | |
| On Bond: | |
| Holds: | |
| Fugitive Warrants: | |
| Previous FTA: | |
| HPD Booking # | |
| General Comments: | |

**OTHER COMMENTS**

| Item | Comments |
|---|---|
| Current Address: | |
| Dependents: | |
| Def. Descriptors | |
| Current Employment: | |
| Previous Employment | |
| Physical Health: | |
| ADA Accomodation: | |
| Mental Health: | |
| MH Hospitalization: | |
| General Health: | |
| Drug Use: | |

**INTERVIEW SUMMARY**

| |
|---|
| |

**NOTES**

| |
|---|
| |



**HARRIS COUNTY PRETRIAL SERVICES**
**DEFENDANT REPORT-SHORT FORM**

**DEFENDANT'S MONTHLY INCOME**

| Employment Salary/Wages | | VA Benefits (Monetary) | |
|---|---|---|---|
| Spousal Income Available to Defendant? | | Workers Comp | |
| Assistance from Family or Friend? | | Other Income | |
| Investment Income | | Food Stamps | |
| Rental Property | | Public Housing Subsidy | |
| Retirement | | Receive Medicare | |
| Social Security | | TANF | |
| Unemployment Compensation | | VA Benefits (Nonmonetary) | |
| Primary Income Source | | TOTAL MONTHLY INCOME AMOUNT | |
| Other Income Explain | | | |
| Income Comment | | | |

**DEFENDANT'S MONTHLY EXPENSES**

| Mortgage / Rent | | Gas for Vehicle | |
|---|---|---|---|
| Home Insurance | | Vehicle Insurance | |
| Electricity | | METRO Pass | |
| Utility Gas | | Vehicle Payment | |
| Water | | Family Support | |
| Food | | Childcare | |
| Home Phone | | Court-Ordered Child Support | |
| Cell Phone | | Medical Treatment / Supplies / Meds | |
| TV / Internet | | Health Insurance | |
| Parole / Probation Fees | | Loan Payment | |
| Other Court-Ordered Fees | | Credit Card | |
| Other Expenses | | TOTAL MONTHLY EXPENSES | |
| Expense Comment | | | |

**DEFENDANT'S FINANCIAL ASSETS**

| Property Owned | |
|---|---|
| Defendant Vehicles | |
| Defendant Financial Accounts | |
| Assets Comments | |



**HARRIS COUNTY PRETRIAL SERVICES**
**DEFENDANT REPORT-SHORT FORM**

**Criminal Case History Detail**

Harris County Cases

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | How Pled: | | | | | | | |
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

| Court/Case | Offense: | | Filing Date: | | Disp Off Level: | | | |
|---|---|---|---|---|---|---|---|---|
| | Name: | | | | | | | |
| | Disposition | Days | Mths | Yrs | Ind | Fine | Disp Date | |

**Exhibit 2**

**Exhibit 2**

## Harris County Pretrial Services - Risk Assessment & Recommendation

Defendant Name:                                                                 Defendant SPN:

Interview Date:                                                                 Interview Number:

Assessed By:                                                                    Assessed Date:

Classification:

### Associated Cases

| Charge | Bond Amount | Court Number | Case Number |
|---|---|---|---|
|  |  |  |  |

### I. Risk Assessment

| | Criminal Risk Items | Pts | | Background Risk Items | Pts |
|---|---|---|---|---|---|
| 1. | The current charge is for burglary, robbery, weapons, other property crime (except theft or fraud), or man/del CS | | 10. | Defendant is male | |
| 2. | Def is on probation | | 11. | Def does not have a high school diploma, or, earned a GED | |
| 3. | Def is on parole | | 12. | Def does not have a phone in residence | |
| 4. | Def has only one prior misd. conviction | | 13. | Def lives with someone other than spouse, children, or self | |
| 5. | Def has two or more prior misd. convictions | | 14. | Def does not own an automobile | |
| 6. | Def has only one prior felony conviction | | 15. | Def is not employed or attending school full time, and is not retired, disabled, or a homemaker | |
| 7. | Def has two or more prior felony convictions | | 16. | Def is under 21 years old and has a prior juvenile adjudication | |
| 8. | Def has one or more verified FTA's | | 17. | Def is under age 30  (skip if 16 used) | |
| 9. | Def has a hold | | | | |

Risk Score:

Low 3 points or less          Low Moderate 4-5 points          Moderate 6-7 points          High 8+ points

### II. Overrides

| Mitigating Risk Factors | Aggravating Risk Factors |
|---|---|
|  |  |

### III. Final Risk Level

Low                    Low Moderate                    Moderate                    High                    Refused Interview

### IV. Recommendation

Date:

By:

Recommendation:

No Personal Bond
Recommendation Reason:

**Exhibit G**

Case: 26-20437   Document: 71   Page: 213   Date Filed: 06/25/2026

T. 1, Ch. SEVENTEEN, Refs & Annos, TX CRIM PRO T. 1, Ch. SEVENTEEN, Refs...

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail

Vernon's Ann.Texas C.C.P. T. 1, Ch. SEVENTEEN, Refs & Annos

Currentness

Vernon's Ann. Texas C. C. P. T. 1, Ch. SEVENTEEN, Refs & Annos, TX CRIM PRO T. 1, Ch. SEVENTEEN, Refs & Annos

Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.01

Art. 17.01. [297] [315] [303] Definition of "bail"

**Currentness**

"Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.01, TX CRIM PRO Art. 17.01
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>  Code of Criminal Procedure (Refs & Annos)
>   Title 1. Code of Criminal Procedure of 1965
>    Arrest, Commitment and Bail
>     Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.02

Art. 17.02. Definition of "bail bond"

Effective: September 1, 2015
Currentness

A "bail bond" is a written undertaking entered into by the defendant and the defendant's sureties for the appearance of the principal therein before a court or magistrate to answer a criminal accusation; provided, however, that the defendant on execution of the bail bond may deposit with the custodian of funds of the court in which the prosecution is pending current money of the United States in the amount of the bond in lieu of having sureties signing the same. Any cash funds deposited under this article shall be receipted for by the officer receiving the funds and, on order of the court, be refunded in the amount shown on the face of the receipt less the administrative fee authorized by Section 117.055, Local Government Code, after the defendant complies with the conditions of the defendant's bond, to:

(1) any person in the name of whom a receipt was issued, including the defendant if a receipt was issued to the defendant; or

(2) the defendant, if no other person is able to produce a receipt for the funds.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2011, 82nd Leg., ch. 978 (H.B. 1658), § 1, eff. Sept. 1, 2011; Acts 2015, 84th Leg., ch. 654 (H.B. 2182), § 1, eff. Sept. 1, 2015.

Vernon's Ann. Texas C. C. P. Art. 17.02, TX CRIM PRO Art. 17.02
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** <span style="float:right">© 2016 Thomson Reuters. No claim to original U.S. Government Works.</span>

---

**Vernon's Texas Statutes and Codes Annotated**
**Code of Criminal Procedure (Refs & Annos)**
**Title 1. Code of Criminal Procedure of 1965**
**Arrest, Commitment and Bail**
**Chapter Seventeen. Bail (Refs & Annos)**

Vernon's Ann.Texas C.C.P. Art. 17.025

Art. 17.025. Officers taking bail bond

Effective: June 17, 2011

Currentness

A jailer licensed under Chapter 1701, Occupations Code, is considered to be an officer for the purposes of taking a bail bond and discharging any other related powers and duties under this chapter.

**Credits**

Added by Acts 2011, 82nd Leg., ch. 736 (H.B. 1070), § 1, eff. June 17, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.025, TX CRIM PRO Art. 17.025
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.026

Art. 17.026. Electronic Filing of Bail Bond

Effective: September 1, 2015
Currentness

In any manner permitted by the county in which the bond is written, a bail bond may be filed electronically with the court, judge, magistrate, or other officer taking the bond.

**Credits**
Added by Acts 2015, 84th Leg., ch. 779 (H.B. 2499), § 1, eff. Sept. 1, 2015.

Vernon's Ann. Texas C. C. P. Art. 17.026, TX CRIM PRO Art. 17.026
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

<div style="border:1px solid black; padding:1em;">

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

</div>

Vernon's Ann.Texas C.C.P. Art. 17.03

Art. 17.03. Personal bond

Effective: September 1, 2011
Currentness

(a) Except as provided by Subsection (b) of this article, a magistrate may, in the magistrate's discretion, release the defendant on his personal bond without sureties or other security.

(b) Only the court before whom the case is pending may release on personal bond a defendant who:

(1) is charged with an offense under the following sections of the Penal Code:

(A) Section 19.03 (Capital Murder);

(B) Section 20.04 (Aggravated Kidnapping);

(C) Section 22.021 (Aggravated Sexual Assault);

(D) Section 22.03 (Deadly Assault on Law Enforcement or Corrections Officer, Member or Employee of Board of Pardons and Paroles, [1] or Court Participant);

(E) Section 22.04 (Injury to a Child, Elderly Individual, or Disabled Individual);

(F) Section 29.03 (Aggravated Robbery);

(G) Section 30.02 (Burglary);

(H) Section 71.02 (Engaging in Organized Criminal Activity);

(I) Section 21.02 (Continuous Sexual Abuse of Young Child or Children); or

---

(J) Section 20A.03 (Continuous Trafficking of Persons);

(2) is charged with a felony under Chapter 481, Health and Safety Code, or Section 485.033, Health and Safety Code, punishable by imprisonment for a minimum term or by a maximum fine that is more than a minimum term or maximum fine for a first degree felony; or

(3) does not submit to testing for the presence of a controlled substance in the defendant's body as requested by the court or magistrate under Subsection (c) of this article or submits to testing and the test shows evidence of the presence of a controlled substance in the defendant's body.

(c) When setting a personal bond under this chapter, on reasonable belief by the investigating or arresting law enforcement agent or magistrate of the presence of a controlled substance in the defendant's body or on the finding of drug or alcohol abuse related to the offense for which the defendant is charged, the court or a magistrate shall require as a condition of personal bond that the defendant submit to testing for alcohol or a controlled substance in the defendant's body and participate in an alcohol or drug abuse treatment or education program if such a condition will serve to reasonably assure the appearance of the defendant for trial.

(d) The state may not use the results of any test conducted under this chapter in any criminal proceeding arising out of the offense for which the defendant is charged.

(e) Costs of testing may be assessed as court costs or ordered paid directly by the defendant as a condition of bond.

(f) In this article, "controlled substance" has the meaning assigned by Section 481.002, Health and Safety Code.

(g) The court may order that a personal bond fee assessed under Section 17.42 be:

(1) paid before the defendant is released;

(2) paid as a condition of bond;

(3) paid as court costs;

(4) reduced as otherwise provided for by statute; or

(5) waived.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1989, 71st Leg., ch. 374, § 1, eff. Sept. 1, 1989; Acts 1991, 72nd Leg., ch. 14, § 284(45), (57), eff. Sept. 1, 1991; Acts 1995, 74th Leg., ch. 76, § 14.19, eff. Sept. 1, 1995; Acts 2007, 80th Leg., ch. 593, § 3.08, eff. Sept. 1, 2007; Acts 2011, 82nd Leg., ch. 122 (H.B. 3000), § 3, eff. Sept. 1, 2011.

Footnotes

1  References to the Board of Pardons and Paroles shall mean either the Board of Pardons and Paroles or the pardons and paroles division of the Texas Department of Criminal Justice as provided by Acts 1989, 71st Leg., ch. 785, § 1.20(f)(2), as amended by Acts 1990, 71st Leg., 6th C.S., ch. 25, § 5.

Vernon's Ann. Texas C. C. P. Art. 17.03, TX CRIM PRO Art. 17.03

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.031

Art. 17.031. Release on personal bond

Currentness

(a) Any magistrate in this state may release a defendant eligible for release on personal bond under Article 17.03 of this code on his personal bond where the complaint and warrant for arrest does not originate in the county wherein the accused is arrested if the magistrate would have had jurisdiction over the matter had the complaint arisen within the county wherein the magistrate presides. The personal bond may not be revoked by the judge of the court issuing the warrant for arrest except for good cause shown.

(b) If there is a personal bond office in the county from which the warrant for arrest was issued, the court releasing a defendant on his personal bond will forward a copy of the personal bond to the personal bond office in that county.

**Credits**
Added by Acts 1971, 62nd Leg., p. 2445, ch. 787, § 1, eff. June 8, 1971. Amended by Acts 1989, 71st Leg., ch. 374, § 2, eff. Sept. 1, 1989.

Vernon's Ann. Texas C. C. P. Art. 17.031, TX CRIM PRO Art. 17.031
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:Sec 26-20337   Document 80-7-1   Filed 22/09/Date Filed 06/25/2026 of 92

Art. 17.032. Release on personal bond of certain mentally..., TX CRIM PRO Art....

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.032

Art. 17.032. Release on personal bond of certain mentally ill defendants

Effective: September 1, 2011
Currentness

(a) In this article, "violent offense" means an offense under the following sections of the Penal Code:

(1) Section 19.02 (murder);

(2) Section 19.03 (capital murder);

(3) Section 20.03 (kidnapping);

(4) Section 20.04 (aggravated kidnapping);

(5) Section 21.11 (indecency with a child);

(6) Section 22.01(a)(1) (assault);

(7) Section 22.011 (sexual assault);

(8) Section 22.02 (aggravated assault);

(9) Section 22.021 (aggravated sexual assault);

(10) Section 22.04 (injury to a child, elderly individual, or disabled individual);

(11) Section 29.03 (aggravated robbery);

(12) Section 21.02 (continuous sexual abuse of young child or children); or

Case Case 26-20337 Document 80-7-1 Filed 23/09/Date Filed 06/25/2026 of 92

Art. 17.032. Release on personal bond of certain mentally..., TX CRIM PRO Art....

(13) Section 20A.03 (continuous trafficking of persons).

(b) A magistrate shall release a defendant on personal bond unless good cause is shown otherwise if the:

(1) defendant is not charged with and has not been previously convicted of a violent offense;

(2) defendant is examined by the local mental health or mental retardation authority or another mental health expert under Article 16.22 of this code;

(3) applicable expert, in a written assessment submitted to the magistrate under Article 16.22:

(A) concludes that the defendant has a mental illness or is a person with mental retardation and is nonetheless competent to stand trial; and

(B) recommends mental health treatment for the defendant; and

(4) magistrate determines, in consultation with the local mental health or mental retardation authority, that appropriate community-based mental health or mental retardation services for the defendant are available through the Texas Department of Mental Health and Mental Retardation under Section 534.053, Health and Safety Code, or through another mental health or mental retardation services provider.

(c) The magistrate, unless good cause is shown for not requiring treatment, shall require as a condition of release on personal bond under this article that the defendant submit to outpatient or inpatient mental health or mental retardation treatment as recommended by the local mental health or mental retardation authority if the defendant's:

(1) mental illness or mental retardation is chronic in nature; or

(2) ability to function independently will continue to deteriorate if the defendant is not treated.

(d) In addition to a condition of release imposed under Subsection (c) of this article, the magistrate may require the defendant to comply with other conditions that are reasonably necessary to protect the community.

(e) In this article, a person is considered to have been convicted of an offense if:

(1) a sentence is imposed;

(2) the person is placed on community supervision or receives deferred adjudication; or

(3) the court defers final disposition of the case.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 900, § 3.06, eff. Sept. 1, 1994. Amended by Acts 1995, 74th Leg., ch. 76, § 14.20, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 312, § 2, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 828, § 2, eff. Sept. 1, 2001; Acts 2007, 80th Leg., ch. 593, § 3.09, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 1228, § 2, eff. Sept. 1, 2009. Amended by Acts 2011, 82nd Leg., ch. 122 (H.B. 3000), § 4, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.032, TX CRIM PRO Art. 17.032
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-20337   Document 80-2-1   Filed 22509/Date Filed 06/25/2026 of 92

Art. 17.033. Release on bond of certain persons arrested..., TX CRIM PRO Art....

---

| |
|---|
| Vernon's Texas Statutes and Codes Annotated<br>  Code of Criminal Procedure (Refs & Annos)<br>    Title 1. Code of Criminal Procedure of 1965<br>      Arrest, Commitment and Bail<br>        Chapter Seventeen. Bail (Refs & Annos) |

Vernon's Ann.Texas C.C.P. Art. 17.033

Art. 17.033. Release on bond of certain persons arrested without a warrant

Effective: September 1, 2011
Currentness

(a) Except as provided by Subsection (c), a person who is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $5,000, not later than the 24th hour after the person's arrest if the person was arrested for a misdemeanor and a magistrate has not determined whether probable cause exists to believe that the person committed the offense. If the person is unable to obtain a surety for the bond or unable to deposit money in the amount of the bond, the person must be released on personal bond.

(a-1) Notwithstanding Subsection (a) and except as provided by Subsection (c), a person who, in a county with a population of three million or more, is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $5,000, not later than the 36th hour after the person's arrest if the person was arrested for a misdemeanor and a magistrate has not determined whether probable cause exists to believe that the person committed the offense.

(b) Except as provided by Subsection (c), a person who is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $10,000, not later than the 48th hour after the person's arrest if the person was arrested for a felony and a magistrate has not determined whether probable cause exists to believe that the person committed the offense. If the person is unable to obtain a surety for the bond or unable to deposit money in the amount of the bond, the person must be released on personal bond.

(c) On the filing of an application by the attorney representing the state, a magistrate may postpone the release of a person under Subsection (a), (a-1), or (b) for not more than 72 hours after the person's arrest. An application filed under this subsection must state the reason a magistrate has not determined whether probable cause exists to believe that the person committed the offense for which the person was arrested.

(d) The time limits imposed by Subsections (a), (a-1), and (b) do not apply to a person arrested without a warrant who is taken to a hospital, clinic, or other medical facility before being taken before a magistrate under Article 15.17. For a person described by this subsection, the time limits imposed by Subsections (a), (a-1), and (b) begin to run at the time, as documented in the records of the hospital, clinic, or other medical facility, that a physician or other medical professional releases the person from the hospital, clinic, or other medical facility.

(e) Subsection (a-1) and this subsection expire on September 1, 2013.

---

**Credits**

Added by Acts 2001, 77th Leg., ch. 906, § 5(a), eff. Jan. 1, 2002. Amended by Acts 2003, 78th Leg., ch. 298, § 1, eff. June 18, 2003. Amended by Acts 2011, 82nd Leg., ch. 1350 (H.B. 1173), § 1, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.033, TX CRIM PRO Art. 17.033
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.0331

Art. 17.0331. Expired

Effective: September 1, 2013
Currentness

Vernon's Ann. Texas C. C. P. Art. 17.0331, TX CRIM PRO Art. 17.0331
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.04

Art. 17.04. Requisites of a personal bond

Currentness

A personal bond is sufficient if it includes the requisites of a bail bond as set out in Article 17.08, except that no sureties are required. In addition, a personal bond shall contain:

(1) the defendant's name, address, and place of employment;

(2) identification information, including the defendant's:

(A) date and place of birth;

(B) height, weight, and color of hair and eyes;

(C) driver's license number and state of issuance, if any; and

(D) nearest relative's name and address, if any; and

(3) the following oath sworn and signed by the defendant:

"I swear that I will appear before (the court or magistrate) at (address, city, county) Texas, on the (date), at the hour of (time, a.m. or p.m.) or upon notice by the court, or pay to the court the principal sum of (amount) plus all necessary and reasonable expenses incurred in any arrest for failure to appear."

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1987, 70th Leg., ch. 623, § 1, eff. Sept. 1, 1987.

Vernon's Ann. Texas C. C. P. Art. 17.04, TX CRIM PRO Art. 17.04
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.045

Art. 17.045. Bail bond certificates

Currentness

A bail bond certificate with respect to which a fidelity and surety company has become surety as provided in the Automobile Club Services Act, or for any truck and bus association incorporated in this state, when posted by the person whose signature appears thereon, shall be accepted as bail bond in an amount not to exceed $200 to guarantee the appearance of such person in any court in this state when the person is arrested for violation of any motor vehicle law of this state or ordinance of any municipality in this state, except for the offense of driving while intoxicated or for any felony, and the alleged violation was committed prior to the date of expiration shown on such bail bond certificate.

**Credits**
Added by Acts 1969, 61st Leg., p. 2033, ch. 697, § 2, eff. Sept. 1, 1969.

Vernon's Ann. Texas C. C. P. Art. 17.045, TX CRIM PRO Art. 17.045
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.05

Art. 17.05. When a bail bond is given

Effective: June 17, 2011
Currentness

A bail bond is entered into either before a magistrate, upon an examination of a criminal accusation, or before a judge upon an application under habeas corpus; or it is taken from the defendant by a peace officer or jailer if authorized by Article 17.20, 17.21, or 17.22.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1971, 62nd Leg., p. 3045, ch. 1006, § 1, eff. Aug. 30, 1971; Acts 2011, 82nd Leg., ch. 736 (H.B. 1070), § 2, eff. June 17, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.05, TX CRIM PRO Art. 17.05
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>> Code of Criminal Procedure (Refs & Annos)
>>> Title 1. Code of Criminal Procedure of 1965
>>>> Arrest, Commitment and Bail
>>>>> Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.06

Art. 17.06. [271a] Corporation as surety

Currentness

Wherever in this Chapter, any person is required or authorized to give or execute any bail bond, such bail bond may be given or executed by such principal and any corporation authorized by law to act as surety, subject to all the provisions of this Chapter regulating and governing the giving of bail bonds by personal surety insofar as the same is applicable.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.06, TX CRIM PRO Art. 17.06
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.07

Art. 17.07. Corporation to file with county clerk power of attorney designating agent

Effective: September 1, 2011
Currentness

(a) Any corporation authorized by the law of this State to act as a surety, shall before executing any bail bond as authorized in the preceding Article, first file in the office of the county clerk of the county where such bail bond is given, a power of attorney designating and authorizing the named agent, agents or attorney of such corporation to execute such bail bonds and thereafter the execution of such bail bonds by such agent, agents or attorney, shall be a valid and binding obligation of such corporation.

(b) A corporation may limit the authority of an agent designated under Subsection (a) by specifying the limitation in the power of attorney that is filed with the county clerk.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2011, 82nd Leg., ch. 769 (H.B. 1823), § 1, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.07, TX CRIM PRO Art. 17.07
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>  Code of Criminal Procedure (Refs & Annos)
>   Title 1. Code of Criminal Procedure of 1965
>    Arrest, Commitment and Bail
>     Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.08

Art. 17.08. [273] [321] [309] Requisites of a bail bond

Currentness

A bail bond must contain the following requisites:

1. That it be made payable to "The State of Texas";

2. That the defendant and his sureties, if any, bind themselves that the defendant will appear before the proper court or magistrate to answer the accusation against him;

3. If the defendant is charged with a felony, that it state that he is charged with a felony. If the defendant is charged with a misdemeanor, that it state that he is charged with a misdemeanor;

4. That the bond be signed by name or mark by the principal and sureties, if any, each of whom shall write thereon his mailing address;

5. That the bond state the time and place, when and where the accused binds himself to appear, and the court or magistrate before whom he is to appear. The bond shall also bind the defendant to appear before any court or magistrate before whom the cause may thereafter be pending at any time when, and place where, his presence may be required under this Code or by any court or magistrate, but in no event shall the sureties be bound after such time as the defendant receives an order of deferred adjudication or is acquitted, sentenced, placed on community supervision, or dismissed from the charge;

6. The bond shall also be conditioned that the principal and sureties, if any, will pay all necessary and reasonable expenses incurred by any and all sheriffs or other peace officers in rearresting the principal in the event he fails to appear before the court or magistrate named in the bond at the time stated therein. The amount of such expense shall be in addition to the principal amount specified in the bond. The failure of any bail bond to contain the conditions specified in this paragraph shall in no manner affect the legality of any such bond, but it is intended that the sheriff or other peace officer shall look to the defendant and his sureties, if any, for expenses incurred by him, and not to the State for any fees earned by him in connection with the rearresting of an accused who has violated the conditions of his bond.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1999, 76th Leg., ch. 1506, § 1, eff. Sept. 1, 1999.

---

Vernon's Ann. Texas C. C. P. Art. 17.08, TX CRIM PRO Art. 17.08
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.085

Art. 17.085. Notice of appearance date

Effective: September 1, 2011
Currentness

The clerk of a court that does not provide online Internet access to that court's criminal case records shall post in a designated public place in the courthouse notice of a prospective criminal court docket setting as soon as the court notifies the clerk of the setting.

**Credits**
Added by Acts 2007, 80th Leg., ch. 1038, § 1, eff. Sept. 1, 2007. Amended by Acts 2011, 82nd Leg., ch. 278 (H.B. 1573), § 1, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.085, TX CRIM PRO Art. 17.085
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.09

Art. 17.09. [275a] Duration; original and subsequent proceedings; new bail

Effective: September 1, 2007
Currentness

Sec. 1. Where a defendant, in the course of a criminal action, gives bail before any court or person authorized by law to take same, for his personal appearance before a court or magistrate, to answer a charge against him, the said bond shall be valid and binding upon the defendant and his sureties, if any, thereon, for the defendant's personal appearance before the court or magistrate designated therein, as well as before any other court to which same may be transferred, and for any and all subsequent proceedings had relative to the charge, and each such bond shall be so conditioned except as hereinafter provided.

Sec. 2. When a defendant has once given bail for his appearance in answer to a criminal charge, he shall not be required to give another bond in the course of the same criminal action except as herein provided.

Sec. 3. Provided that whenever, during the course of the action, the judge or magistrate in whose court such action is pending finds that the bond is defective, excessive or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause, such judge or magistrate may, either in term-time or in vacation, order the accused to be rearrested, and require the accused to give another bond in such amount as the judge or magistrate may deem proper. When such bond is so given and approved, the defendant shall be released from custody.

Sec. 4. Notwithstanding any other provision of this article, the judge or magistrate in whose court a criminal action is pending may not order the accused to be rearrested or require the accused to give another bond in a higher amount because the accused:

(1) withdraws a waiver of the right to counsel; or

(2) requests the assistance of counsel, appointed or retained.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2007, 80th Leg., ch. 463, § 2, eff. Sept. 1, 2007.

Vernon's Ann. Texas C. C. P. Art. 17.09, TX CRIM PRO Art. 17.09
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.091

Art. 17.091. Notice of certain bail reductions required

Effective: September 1, 2011 to December 31, 2016
Currentness

<Text of article effective until Jan. 1, 2017. See, also, text of art. 17.091 effective Jan. 1, 2017.>

Before a judge or magistrate reduces the amount of bail set for a defendant charged with an offense listed in Section 3g, Article 42.12, an offense described by Article 62.001(5), or an offense under Section 20A.03, Penal Code, the judge or magistrate shall provide:

(1) to the attorney representing the state, reasonable notice of the proposed bail reduction; and

(2) on request of the attorney representing the state or the defendant or the defendant's counsel, an opportunity for a hearing concerning the proposed bail reduction.

**Credits**
Added by Acts 2005, 79th Leg., ch. 671, § 1, eff. Sept. 1, 2005. Amended by Acts 2007, 80th Leg., ch. 593, § 3.10, eff. Sept. 1, 2007; Acts 2011, 82nd Leg., ch. 122 (H.B. 3000), § 5, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.091, TX CRIM PRO Art. 17.091
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.10

Art. 17.10. [276] [324] [312] Disqualified sureties

Effective: September 1, 2011
Currentness

(a) A minor may not be surety on a bail bond, but the accused party may sign as principal.

(b) A person, for compensation, may not be a surety on a bail bond written in a county in which a county bail bond board regulated under Chapter 1704, Occupations Code, does not exist unless the person, within two years before the bail bond is given, completed in person at least eight hours of continuing legal education in criminal law courses or bail bond law courses that are:

(1) approved by the State Bar of Texas; and

(2) offered by an accredited institution of higher education in this state.

(c) A person, for compensation, may not act as a surety on a bail bond if the person has been finally convicted of:

(1) a misdemeanor involving moral turpitude; or

(2) a felony.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2005, 79th Leg., ch. 743, § 1, eff. Sept. 1, 2005. Amended by Acts 2011, 82nd Leg., ch. 769 (H.B. 1823), § 2, eff. Sept. 1, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.10, TX CRIM PRO Art. 17.10
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   1

---

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.11

Art. 17.11. [277] [325] [313] How bail bond is taken

Effective: September 1, 2013

Currentness

Sec. 1. Every court, judge, magistrate or other officer taking a bail bond shall require evidence of the sufficiency of the security offered; but in every case, one surety shall be sufficient, if it be made to appear that such surety is worth at least double the amount of the sum for which he is bound, exclusive of all property exempted by law from execution, and of debts or other encumbrances; and that he is a resident of this state, and has property therein liable to execution worth the sum for which he is bound.

Sec. 2. Provided, however, any person who has signed as a surety on a bail bond and is in default thereon shall thereafter be disqualified to sign as a surety so long as the person is in default on the bond. It shall be the duty of the clerk of the court where the surety is in default on a bail bond to notify in writing the sheriff, chief of police, or other peace officer of the default. If a bail bond is taken for an offense other than a Class C misdemeanor, the clerk of the court where the surety is in default on the bond shall send notice of the default by certified mail to the last known address of the surety.

Sec. 3. A surety is considered to be in default from the time execution may be issued on a final judgment in a bond forfeiture proceeding under the Texas Rules of Civil Procedure, unless the final judgment is superseded by the posting of a supersedeas bond.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1967, 60th Leg., p. 1736, ch. 659, § 14, eff. Aug. 28, 1967; Acts 1999, 76th Leg., ch. 1506, § 2, eff. Sept. 1, 1999; Acts 2013, 83rd Leg., ch. 930 (H.B. 1562), § 1, eff. Sept. 1, 2013.

Vernon's Ann. Texas C. C. P. Art. 17.11, TX CRIM PRO Art. 17.11
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.12

Art. 17.12. [278] [326] [314] Exempt property

Currentness

The property secured by the Constitution and laws from forced sale shall not, in any case, be held liable for the satisfaction of bail, either as to principal or sureties, if any.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.12, TX CRIM PRO Art. 17.12
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.13

Art. 17.13. [279] [327] [315] Sufficiency of sureties ascertained

Currentness

To test the sufficiency of the security offered to any bail bond, unless the court or officer taking the same is fully satisfied as to its sufficiency, the following oath shall be made in writing and subscribed by the sureties: "I, do swear that I am worth, in my own right, at least the sum of (here insert the amount in which the surety is bound), after deducting from my property all that which is exempt by the Constitution and Laws of the State from forced sale, and after the payment of all my debts of every description, whether individual or security debts, and after satisfying all encumbrances upon my property which are known to me; that I reside in .......... County, and have property in this State liable to execution worth said amount or more.

(Dated .........., and attested by the judge of the court, clerk, magistrate or sheriff.)"

Such affidavit shall be filed with the papers of the proceedings.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.13, TX CRIM PRO Art. 17.13
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.14

Art. 17.14. [280] [328] [316] Affidavit not conclusive

Currentness

Such affidavit shall not be conclusive as to the sufficiency of the security; and if the court or officer taking the bail bond is not fully satisfied as to the sufficiency of the security offered, further evidence shall be required before approving the same.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.14, TX CRIM PRO Art. 17.14
Current through the end of the 2015 Regular Session of the 84th Legislature

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.141

Art. 17.141. Eligible bail bond sureties in certain counties

Effective: September 1, 2005
Currentness

In a county in which a county bail bond board regulated under Chapter 1704, Occupations Code, does not exist, the sheriff may post a list of eligible bail bond sureties whose security has been determined to be sufficient. Each surety listed under this article must file annually a sworn financial statement with the sheriff.

**Credits**
Added by Acts 2005, 79th Leg., ch. 743, § 2, eff. Sept. 1, 2005.

Vernon's Ann. Texas C. C. P. Art. 17.141, TX CRIM PRO Art. 17.141
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
    Code of Criminal Procedure (Refs & Annos)
        Title 1. Code of Criminal Procedure of 1965
            Arrest, Commitment and Bail
                Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.15

Art. 17.15. [281] [329] [317] Rules for fixing amount of bail

Currentness

The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1985, 69th Leg., ch. 588, § 2, eff. Sept. 1, 1985; Acts 1993, 73rd Leg., ch. 396, § 1, eff. Sept. 1, 1993.

Vernon's Ann. Texas C. C. P. Art. 17.15, TX CRIM PRO Art. 17.15
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.151

Art. 17.151. Release because of delay

Effective: September 1, 2005
Currentness

Sec. 1. A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony;

(2) 30 days from the commencement of his detention if he is accused of a misdemeanor punishable by a sentence of imprisonment in jail for more than 180 days;

(3) 15 days from the commencement of his detention if he is accused of a misdemeanor punishable by a sentence of imprisonment for 180 days or less; or

(4) five days from the commencement of his detention if he is accused of a misdemeanor punishable by a fine only.

Sec. 2. The provisions of this article do not apply to a defendant who is:

(1) serving a sentence of imprisonment for another offense while the defendant is serving that sentence;

(2) being detained pending trial of another accusation against the defendant as to which the applicable period has not yet elapsed;

(3) incompetent to stand trial, during the period of the defendant's incompetence; or

(4) being detained for a violation of the conditions of a previous release related to the safety of a victim of the alleged offense or to the safety of the community under this article.

Sec. 3. Repealed by Acts 2005, 79th Leg., ch. 110, § 2.

**Credits**

Added by Acts 1977, 65th Leg., p. 1972, ch. 787, § 2, eff. July 1, 1978. Amended by Acts 2005, 79th Leg., ch. 110, §§ 1, 2, eff. Sept. 1, 2005.

Vernon's Ann. Texas C. C. P. Art. 17.151, TX CRIM PRO Art. 17.151
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.152

Art. 17.152. Denial of bail for violation of certain court orders or conditions of bond in a family violence case

Effective: January 1, 2008
Currentness

(a) In this article, "family violence" has the meaning assigned by Section 71.004, Family Code.

(b) Except as otherwise provided by Subsection (d), a person who commits an offense under Section 25.07, Penal Code, related to a violation of a condition of bond set in a family violence case and whose bail in the case under Section 25.07, Penal Code, or in the family violence case is revoked or forfeited for a violation of a condition of bond may be taken into custody and, pending trial or other court proceedings, denied release on bail if following a hearing a judge or magistrate determines by a preponderance of the evidence that the person violated a condition of bond related to:

(1) the safety of the victim of the offense under Section 25.07, Penal Code, or the family violence case, as applicable; or

(2) the safety of the community.

(c) Except as otherwise provided by Subsection (d), a person who commits an offense under Section 25.07, Penal Code, other than an offense related to a violation of a condition of bond set in a family violence case, may be taken into custody and, pending trial or other court proceedings, denied release on bail if following a hearing a judge or magistrate determines by a preponderance of the evidence that the person committed the offense.

(d) A person who commits an offense under Section 25.07(a)(3), Penal Code, may be held without bail under Subsection (b) or (c), as applicable, only if following a hearing the judge or magistrate determines by a preponderance of the evidence that the person went to or near the place described in the order or condition of bond with the intent to commit or threaten to commit:

(1) family violence; or

(2) an act in furtherance of an offense under Section 42.072, Penal Code.

(e) In determining whether to deny release on bail under this article, the judge or magistrate may consider:

(1) the order or condition of bond;

(2) the nature and circumstances of the alleged offense;

(3) the relationship between the accused and the victim, including the history of that relationship;

(4) any criminal history of the accused; and

(5) any other facts or circumstances relevant to a determination of whether the accused poses an imminent threat of future family violence.

(f) A person arrested for committing an offense under Section 25.07, Penal Code, shall without unnecessary delay and after reasonable notice is given to the attorney representing the state, but not later than 48 hours after the person is arrested, be taken before a magistrate in accordance with Article 15.17. At that time, the magistrate shall conduct the hearing and make the determination required by this article.

**Credits**

Added by Acts 2007, 80th Leg., ch. 1113, § 3, eff. Jan. 1, 2008.

Vernon's Ann. Texas C. C. P. Art. 17.152, TX CRIM PRO Art. 17.152
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case Case 26-20347 Document 80-7-1 Filed 25009/Date Filed 06/25/2026 of 92

Art. 17.153. Denial of bail for violation of condition of..., TX CRIM PRO Art....

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.153

Art. 17.153. Denial of bail for violation of condition of bond where child alleged victim

Effective: September 1, 2011
Currentness

(a) This article applies to a defendant charged with a felony offense under any of the following provisions of the Penal Code, if committed against a child younger than 14 years of age:

(1) Chapter 21 (Sexual Offenses);

(2) Section 25.02 (Prohibited Sexual Conduct);

(3) Section 43.25 (Sexual Performance by a Child);

(4) Section 20A.02 (Trafficking of Persons), if the defendant is alleged to have:

(A) trafficked the child with the intent or knowledge that the child would engage in sexual conduct, as defined by Section 43.25, Penal Code; or

(B) benefited from participating in a venture that involved a trafficked child engaging in sexual conduct, as defined by Section 43.25, Penal Code; or

(5) Section 43.05(a)(2) (Compelling Prostitution).

(b) A defendant described by Subsection (a) who violates a condition of bond set under Article 17.41 and whose bail in the case is revoked for the violation may be taken into custody and denied release on bail pending trial if, following a hearing, a judge or magistrate determines by a preponderance of the evidence that the defendant violated a condition of bond related to the safety of the victim of the offense or the safety of the community. If the magistrate finds that the violation occurred, the magistrate may revoke the defendant's bond and order that the defendant be immediately returned to custody. Once the defendant is placed in custody, the revocation of the defendant's bond discharges the sureties on the bond, if any, from any future liability on the bond. A discharge under this subsection from any future liability on the bond does not discharge any surety from liability for previous forfeitures on the bond.

Case 4:1ec-26-20337 Document 80-7-1 Filed 251/09/Date Filed 06/25/2026 of 92

Art. 17.153. Denial of bail for violation of condition of..., TX CRIM PRO Art....

**Credits**

Added by Acts 2009, 81st Leg., ch. 982, § 2, eff. Sept. 1, 2009. Amended by Acts 2011, 82nd Leg., ch. 515 (H.B. 2014), § 2.01, eff. Sept. 1, 2011.


Vernon's Ann. Texas C. C. P. Art. 17.153, TX CRIM PRO Art. 17.153

Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.16

Art. 17.16. Discharge of liability; surrender or incarceration
of principal before forfeiture; verification of incarceration

Effective: May 19, 2011
Currentness

(a) A surety may before forfeiture relieve the surety of the surety's undertaking by:

(1) surrendering the accused into the custody of the sheriff of the county where the prosecution is pending; or

(2) delivering to the sheriff of the county in which the prosecution is pending and to the office of the prosecuting attorney an affidavit stating that the accused is incarcerated in federal custody, in the custody of any state, or in any county of this state.

(b) On receipt of an affidavit described by Subsection (a)(2), the sheriff of the county in which the prosecution is pending shall verify whether the accused is incarcerated as stated in the affidavit. If the sheriff verifies the statement in the affidavit, the sheriff shall notify the magistrate before which the prosecution is pending of the verification.

(c) On a verification described by this article, the sheriff shall place a detainer against the accused with the appropriate officials in the jurisdiction in which the accused is incarcerated. On receipt of notice of a verification described by this article, the magistrate before which the prosecution is pending shall direct the clerk of the court to issue a capias for the arrest of the accused, except as provided by Subsection (d).

(d) A capias for the arrest of the accused is not required if:

(1) a warrant has been issued for the accused's arrest and remains outstanding; or

(2) the issuance of a capias would otherwise be unnecessary for the purpose of taking the accused into custody.

(e) For the purposes of Subsection (a)(2) of this article, the bond is discharged and the surety is absolved of liability on the bond on the verification of the incarceration of the accused.

---

(f) An affidavit described by Subsection (a)(2) and the documentation of any verification obtained under Subsection (b) must be:

(1) filed in the court record of the underlying criminal case in the court in which the prosecution is pending or, if the court record does not exist, in a general file maintained by the clerk of the court; and

(2) delivered to the office of the prosecuting attorney.

(g) A surety is liable for all reasonable and necessary expenses incurred in returning the accused into the custody of the sheriff of the county in which the prosecution is pending.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1987, 70th Leg., ch. 1047, § 1, eff. June 20, 1987; Acts 2011, 82nd Leg., ch. 87 (S.B. 877), § 1, eff. May 19, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.16, TX CRIM PRO Art. 17.16
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.17

Art. 17.17. [283] [331-334] When surrender is made during term

Currentness

If a surrender of the accused be made during a term of the court to which he has bound himself to appear, the sheriff shall take him before the court; and if he is willing to give other bail, the court shall forthwith require him to do so. If he fails or refuses to give bail, the court shall make an order that he be committed to jail until the bail is given, and this shall be a sufficient commitment without any written order to the sheriff.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.17, TX CRIM PRO Art. 17.17
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**  <span>© 2016 Thomson Reuters. No claim to original U.S. Government Works.</span>

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.18

Art. 17.18. [284] [332-335] Surrender in vacation

Currentness

When the surrender is made at any other time than during the session of the court, the sheriff may take the necessary bail bond, but if the defendant fails or refuses to give other bail, the sheriff shall take him before the nearest magistrate; and such magistrate shall issue a warrant of commitment, reciting the fact that the accused has been once admitted to bail, has been surrendered, and now fails or refuses to give other bail.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.18, TX CRIM PRO Art. 17.18
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
> Code of Criminal Procedure (Refs & Annos)
> Title 1. Code of Criminal Procedure of 1965
> Arrest, Commitment and Bail
> Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.19

Art. 17.19. [285] [333] [321] Surety may obtain a warrant

Effective: September 1, 2007
Currentness

(a) Any surety, desiring to surrender his principal and after notifying the principal's attorney, if the principal is represented by an attorney, in a manner provided by Rule 21a, Texas Rules of Civil Procedure, of the surety's intention to surrender the principal, may file an affidavit of such intention before the court or magistrate before which the prosecution is pending. The affidavit must state:

(1) the court and cause number of the case;

(2) the name of the defendant;

(3) the offense with which the defendant is charged;

(4) the date of the bond;

(5) the cause for the surrender; and

(6) that notice of the surety's intention to surrender the principal has been given as required by this subsection.

(b) In a prosecution pending before a court, if the court finds that there is cause for the surety to surrender the surety's principal, the court shall issue a capias for the principal. In a prosecution pending before a magistrate, if the magistrate finds that there is cause for the surety to surrender the surety's principal, the magistrate shall issue a warrant of arrest for the principal. It is an affirmative defense to any liability on the bond that:

(1) the court or magistrate refused to issue a capias or warrant of arrest for the principal; and

(2) after the refusal to issue the capias or warrant of arrest, the principal failed to appear.

(c) If the court or magistrate before whom the prosecution is pending is not available, the surety may deliver the affidavit to any other magistrate in the county and that magistrate, on a finding of cause for the surety to surrender the surety's principal, shall issue a warrant of arrest for the principal.

(d) An arrest warrant or capias issued under this article shall be issued to the sheriff of the county in which the case is pending, and a copy of the warrant or capias shall be issued to the surety or his agent.

(e) An arrest warrant or capias issued under this article may be executed by a peace officer, a security officer, or a private investigator licensed in this state.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1987, 70th Leg., ch. 1047, § 2, eff. June 20, 1987; Acts 1989, 71st Leg., ch. 374, § 3, eff. Sept. 1,1989; Acts 1999, 76th Leg., ch. 1506, § 3, eff. Sept. 1, 1999; Acts 2003, 78th Leg., ch. 942, § 4, eff. June 20, 2003; Acts 2007, 80th Leg., ch. 1263, § 2, eff. Sept. 1, 2007.

Vernon's Ann. Texas C. C. P. Art. 17.19, TX CRIM PRO Art. 17.19
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.20

Art. 17.20. Bail in misdemeanor

Effective: June 17, 2011

Currentness

In cases of misdemeanor, the sheriff or other peace officer, or a jailer licensed under Chapter 1701, Occupations Code, may, whether during the term of the court or in vacation, where the officer has a defendant in custody, take of the defendant a bail bond.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1971, 62nd Leg., p. 3046, ch. 1006, § 1, eff. Aug. 30, 1971; Acts 2011, 82nd Leg., ch. 736 (H.B. 1070), § 3, eff. June 17, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.20, TX CRIM PRO Art. 17.20
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
 Code of Criminal Procedure (Refs & Annos)
  Title 1. Code of Criminal Procedure of 1965
   Arrest, Commitment and Bail
    Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.21

Art. 17.21. Bail in felony

Effective: June 17, 2011
Currentness

In cases of felony, when the accused is in custody of the sheriff or other officer, and the court before which the prosecution is pending is in session in the county where the accused is in custody, the court shall fix the amount of bail, if it is a bailable case and determine if the accused is eligible for a personal bond; and the sheriff or other peace officer, unless it be the police of a city, or a jailer licensed under Chapter 1701, Occupations Code, is authorized to take a bail bond of the accused in the amount as fixed by the court, to be approved by such officer taking the same, and will thereupon discharge the accused from custody. The defendant and the defendant's sureties are not required to appear in court.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2011, 82nd Leg., ch. 736 (H.B. 1070), § 4, eff. June 17, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.21, TX CRIM PRO Art. 17.21
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
> Code of Criminal Procedure (Refs & Annos)
> Title 1. Code of Criminal Procedure of 1965
> Arrest, Commitment and Bail
> Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.22

Art. 17.22. May take bail in felony

Effective: June 17, 2011
Currentness

In a felony case, if the court before which the same is pending is not in session in the county where the defendant is in custody, the sheriff or other peace officer, or a jailer licensed under Chapter 1701, Occupations Code, who has the defendant in custody may take the defendant's bail bond in such amount as may have been fixed by the court or magistrate, or if no amount has been fixed, then in such amount as such officer may consider reasonable.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 2011, 82nd Leg., ch. 736 (H.B. 1070), § 5, eff. June 17, 2011.

Vernon's Ann. Texas C. C. P. Art. 17.22, TX CRIM PRO Art. 17.22
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.23

Art. 17.23. [289] [339] [327] Sureties severally bound

Currentness

In all bail bonds taken under any provision of this Code, the sureties shall be severally bound. Where a surrender of the principal is made by one or more of them, all the sureties shall be considered discharged.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.23, TX CRIM PRO Art. 17.23
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Vernon's Texas Statutes and Codes Annotated<br>  Code of Criminal Procedure (Refs & Annos)<br>    Title 1. Code of Criminal Procedure of 1965<br>      Arrest, Commitment and Bail<br>        Chapter Seventeen. Bail (Refs & Annos) |

Vernon's Ann.Texas C.C.P. Art. 17.24

Art. 17.24. [290] [340] [328] General rules applicable

Currentness

All general rules in the Chapter are applicable to bail defendant before an examining court.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.24, TX CRIM PRO Art. 17.24
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

| |
|---|
| Vernon's Texas Statutes and Codes Annotated |
| Code of Criminal Procedure (Refs & Annos) |
| Title 1. Code of Criminal Procedure of 1965 |
| Arrest, Commitment and Bail |
| Chapter Seventeen. Bail (Refs & Annos) |

Vernon's Ann.Texas C.C.P. Art. 17.25

Art. 17.25. [291] [341] [329] Proceedings when bail is granted

Currentness

After a full examination of the testimony, the magistrate shall, if the case be one where bail may properly be granted and ought to be required, proceed to make an order that the accused execute a bail bond with sufficient security, conditioned for his appearance before the proper court.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.25, TX CRIM PRO Art. 17.25

Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**                                     © 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>  Code of Criminal Procedure (Refs & Annos)
>   Title 1. Code of Criminal Procedure of 1965
>    Arrest, Commitment and Bail
>     Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.26

Art. 17.26. [292] [343] [331] Time given to procure bail

Currentness

Reasonable time shall be given the accused to procure security.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.26, TX CRIM PRO Art. 17.26
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.27

Art. 17.27. [293] [344] [332] When bail is not given

Currentness

If, after the allowance of a reasonable time, the security be not given, the magistrate shall make an order committing the accused to jail to be kept safely until legally discharged; and he shall issue a commitment accordingly.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.27, TX CRIM PRO Art. 17.27
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
 Code of Criminal Procedure (Refs & Annos)
  Title 1. Code of Criminal Procedure of 1965
   Arrest, Commitment and Bail
    Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.28

Art. 17.28. [294] [345] [333] When ready to give bail

Currentness

If the party be ready to give bail, the magistrate shall cause to be prepared a bond, which shall be signed by the accused and his surety or sureties, if any.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.28, TX CRIM PRO Art. 17.28
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.29

Art. 17.29. [295] [346] [334] Accused liberated

Effective: September 1, 2003

Currentness

(a) When the accused has given the required bond, either to the magistrate or the officer having him in custody, he shall at once be set at liberty.

(b) Before releasing on bail a person arrested for an offense under Section 42.072, Penal Code, or a person arrested or held without warrant in the prevention of family violence, the law enforcement agency holding the person shall make a reasonable attempt to give personal notice of the imminent release to the victim of the alleged offense or to another person designated by the victim to receive the notice. An attempt by an agency to give notice to the victim or the person designated by the victim at the victim's or person's last known telephone number or address, as shown on the records of the agency, constitutes a reasonable attempt to give notice under this subsection. If possible, the arresting officer shall collect the address and telephone number of the victim at the time the arrest is made and shall communicate that information to the agency holding the person.

(c) A law enforcement agency or an employee of a law enforcement agency is not liable for damages arising from complying or failing to comply with Subsection (b) of this article.

(d) In this article, "family violence" has the meaning assigned by Section 71.004, Family Code.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966. Amended by Acts 1995, 74th Leg., ch. 656, § 1, eff. June 14, 1995; Acts 1995, 74th Leg., ch. 661, § 1, eff. Aug. 28, 1995; Acts 1997, 75th Leg., ch. 1, § 3, eff. Jan. 28, 1997; Acts 2003, 78th Leg., ch. 1276, § 7.002(e), eff. Sept. 1, 2003.

Vernon's Ann. Texas C. C. P. Art. 17.29, TX CRIM PRO Art. 17.29
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.291

Art. 17.291. Further detention of certain persons

Effective: September 1, 2003
Currentness

(a) In this article:

(1) "family violence" has the meaning assigned to that phrase by Section 71.004, Family Code; and

(2) "magistrate" has the meaning assigned to it by Article 2.09 of this code.

(b) Article 17.29 does not apply when a person has been arrested or held without a warrant in the prevention of family violence if there is probable cause to believe the violence will continue if the person is immediately released. The head of the agency arresting or holding such a person may hold the person for a period of not more than four hours after bond has been posted. This detention period may be extended for an additional period not to exceed 48 hours, but only if authorized in a writing directed to the person having custody of the detained person by a magistrate who concludes that:

(1) the violence would continue if the person is released; and

(2) if the additional period exceeds 24 hours, probable cause exists to believe that the person committed the instant offense and that, during the 10-year period preceding the date of the instant offense, the person has been arrested:

(A) on more than one occasion for an offense involving family violence; or

(B) for any other offense, if a deadly weapon, as defined by Section 1.07, Penal Code, was used or exhibited during commission of the offense or during immediate flight after commission of the offense.

**Credits**
Added by Acts 1991, 72nd Leg., ch. 552, § 2, eff. June 16, 1991. Amended by Acts 1999, 76th Leg., ch. 1341, § 1, eff. Sept. 1, 1999; Acts 2003, 78th Leg., ch. 1276, § 7.002(f), eff. Sept. 1, 2003.

Vernon's Ann. Texas C. C. P. Art. 17.291, TX CRIM PRO Art. 17.291
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**Art. 17.291. Further detention of certain persons, TX CRIM PRO Art. 17.291**

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

> Vernon's Texas Statutes and Codes Annotated
> Code of Criminal Procedure (Refs & Annos)
> Title 1. Code of Criminal Procedure of 1965
> Arrest, Commitment and Bail
> Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.292

Art. 17.292. Magistrate's order for emergency protection

Effective: January 1, 2016
Currentness

(a) At a defendant's appearance before a magistrate after arrest for an offense involving family violence or an offense under Section 20A.02, 20A.03, 22.011, 22.021, or 42.072, Penal Code, the magistrate may issue an order for emergency protection on the magistrate's own motion or on the request of:

(1) the victim of the offense;

(2) the guardian of the victim;

(3) a peace officer; or

(4) the attorney representing the state.

(b) At a defendant's appearance before a magistrate after arrest for an offense involving family violence, the magistrate shall issue an order for emergency protection if the arrest is for an offense that also involves:

(1) serious bodily injury to the victim; or

(2) the use or exhibition of a deadly weapon during the commission of an assault.

(c) The magistrate in the order for emergency protection may prohibit the arrested party from:

(1) committing:

(A) family violence or an assault on the person protected under the order; or

(B) an act in furtherance of an offense under Section 20A.02 or 42.072, Penal Code;

---

(2) communicating:

(A) directly with a member of the family or household or with the person protected under the order in a threatening or harassing manner;

(B) a threat through any person to a member of the family or household or to the person protected under the order; or

(C) if the magistrate finds good cause, in any manner with a person protected under the order or a member of the family or household of a person protected under the order, except through the party's attorney or a person appointed by the court;

(3) going to or near:

(A) the residence, place of employment, or business of a member of the family or household or of the person protected under the order; or

(B) the residence, child care facility, or school where a child protected under the order resides or attends; or

(4) possessing a firearm, unless the person is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

(c-1) In addition to the conditions described by Subsection (c), the magistrate in the order for emergency protection may impose a condition described by Article 17.49(b) in the manner provided by that article, including ordering a defendant's participation in a global positioning monitoring system or allowing participation in the system by an alleged victim or other person protected under the order.

(d) The victim of the offense need not be present when the order for emergency protection is issued.

(e) In the order for emergency protection the magistrate shall specifically describe the prohibited locations and the minimum distances, if any, that the party must maintain, unless the magistrate determines for the safety of the person or persons protected by the order that specific descriptions of the locations should be omitted.

(f) To the extent that a condition imposed by an order for emergency protection issued under this article conflicts with an existing court order granting possession of or access to a child, the condition imposed under this article prevails for the duration of the order for emergency protection.

(f-1) To the extent that a condition imposed by an order issued under this article conflicts with a condition imposed by an order subsequently issued under Chapter 85, Subtitle B, Title 4, Family Code, or under Title 1 [1] or Title 5, Family Code, [2] the condition imposed by the order issued under the Family Code prevails.

(f-2) To the extent that a condition imposed by an order issued under this article conflicts with a condition imposed by an order subsequently issued under Chapter 83, Subtitle B, Title 4, Family Code, the condition imposed by the order issued under this article prevails unless the court issuing the order under Chapter 83, Family Code:

(1) is informed of the existence of the order issued under this article; and

(2) makes a finding in the order issued under Chapter 83, Family Code, that the court is superseding the order issued under this article.

(g) An order for emergency protection issued under this article must contain the following statements printed in bold-face type or in capital letters:

"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OR TRAFFICKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE, AS APPLICABLE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS. THE POSSESSION OF A FIREARM BY A PERSON, OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.

"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."

(h) As soon as possible but not later than the next business day after the date the magistrate issues an order for emergency protection under this article, the magistrate shall send a copy of the order to the chief of police in the municipality where the member of the family or household or individual protected by the order resides, if the person resides in a municipality, or to the sheriff of the county where the person resides, if the person does not reside in a municipality. If the victim of the offense is not present when the order is issued, the magistrate issuing the order shall order an appropriate peace officer to make a good faith effort to notify, within 24 hours, the victim that the order has been issued by calling the victim's residence and place of employment. The clerk of the court shall send a copy of the order to the victim at the victim's last known address as soon as possible but not later than the next business day after the date the order is issued.

(h-1) A magistrate or clerk of the court may delay sending a copy of the order under Subsection (h) only if the magistrate or clerk lacks information necessary to ensure service and enforcement.

(i) If an order for emergency protection issued under this article prohibits a person from going to or near a child care facility or school, the magistrate shall send a copy of the order to the child care facility or school.

(i-1) The copy of the order and any related information may be sent under Subsection (h) or (i) electronically or in another manner that can be accessed by the recipient.

(j) An order for emergency protection issued under this article is effective on issuance, and the defendant shall be served a copy of the order by the magistrate or the magistrate's designee in person or electronically. The magistrate shall make a separate record of the service in written or electronic format. An order for emergency protection issued under Subsection (a) or (b)(1) of this article remains in effect up to the 61st day but not less than 31 days after the date of issuance. An order for emergency protection issued under Subsection (b)(2) of this article remains in effect up to the 91st day but not less than 61 days after the date of issuance. After notice to each affected party and a hearing, the issuing court may modify all or part of an order issued under this article if the court finds that:

(1) the order as originally issued is unworkable;

(2) the modification will not place the victim of the offense at greater risk than did the original order; and

(3) the modification will not in any way endanger a person protected under the order.

(k) To ensure that an officer responding to a call is aware of the existence and terms of an order for emergency protection issued under this article, not later than the third business day after the date of receipt of the copy of the order by the applicable law enforcement agency with jurisdiction over the municipality or county in which the victim resides, the law enforcement agency shall enter the information required under Section 411.042(b)(6), Government Code, into the statewide law enforcement information system maintained by the Department of Public Safety .

(k-1) A law enforcement agency may delay entering the information required under Subsection (k) only if the agency lacks information necessary to ensure service and enforcement.

(l) In the order for emergency protection, the magistrate shall suspend a license to carry a handgun issued under Subchapter H, Chapter 411, Government Code, [3] that is held by the defendant.

(m) In this article:

(1) "Family," "family violence," and "household" have the meanings assigned by Chapter 71, Family Code.

(2) "Firearm" has the meaning assigned by Chapter 46, Penal Code.

(3) "Business day" means a day other than a Saturday, Sunday, or state or national holiday.

(n) On motion, notice, and hearing, or on agreement of the parties, an order for emergency protection issued under this article may be transferred to the court assuming jurisdiction over the criminal act giving rise to the issuance of the

emergency order for protection. On transfer, the criminal court may modify all or part of an order issued under this subsection in the same manner and under the same standards as the issuing court under Subsection (j).

**Credits**

Added by Acts 1995, 74th Leg., ch. 658, § 1, eff. June 14, 1995. Amended by Acts 1997, 75th Leg., ch. 1, § 4, eff. Jan. 28, 1997; Acts 1997, 75th Leg., ch. 610, § 1, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 514, § 1, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 1412, § 1, eff. Sept. 1, 1999; Acts 2001, 77th Leg., ch. 23, § 4, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 424, § 1, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 361, § 1, eff. June 17, 2005; Acts 2007, 80th Leg., ch. 66, § 1, eff. May 11, 2007; Acts 2009, 81st Leg., ch. 1146, § 11.20, eff. Sept. 1, 2009; Acts 2009, 81st Leg., ch. 1276, § 1, eff. Sept. 1, 2009; Acts 2013, 83rd Leg., ch. 255 (H.B. 570), § 1, eff. June 14, 2013; Acts 2015, 84th Leg., ch. 108 (S.B. 112), § 1, eff. May 23, 2015; Acts 2015, 84th Leg., ch. 243 (S.B. 737), §§ 1, 2, eff. Sept. 1, 2015 Acts 2015, 84th Leg., ch. 437 (H.B. 910), § 6, eff. Jan. 1, 2016.

Footnotes

1          V.T.C.A., Family Code § 1.001 et seq.
2          V.T.C.A., Family Code § 101.001 et seq.
3          V.T.C.A., Government Code § 411.171 et seq.

Vernon's Ann. Texas C. C. P. Art. 17.292, TX CRIM PRO Art. 17.292

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.293

Art. 17.293. Delivery of order for emergency protection to other persons

Effective: January 1, 2016
Currentness

The magistrate or the clerk of the magistrate's court issuing an order for emergency protection under Article 17.292 that suspends a license to carry a handgun shall immediately send a copy of the order to the appropriate division of the Department of Public Safety at its Austin headquarters. On receipt of the order suspending the license, the department shall:

(1) record the suspension of the license in the records of the department;

(2) report the suspension to local law enforcement agencies, as appropriate; and

(3) demand surrender of the suspended license from the license holder.

**Credits**
Added by Acts 1999, 76th Leg., ch. 1412, § 2, eff. Sept. 1, 1999. Amended by Acts 2015, 84th Leg., ch. 437 (H.B. 910), § 7, eff. Jan. 1, 2016.

Vernon's Ann. Texas C. C. P. Art. 17.293, TX CRIM PRO Art. 17.293
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Vernon's Texas Statutes and Codes Annotated<br>  Code of Criminal Procedure (Refs & Annos)<br>    Title 1. Code of Criminal Procedure of 1965<br>      Arrest, Commitment and Bail<br>        Chapter Seventeen. Bail (Refs & Annos) |

Vernon's Ann.Texas C.C.P. Art. 17.30

Art. 17.30. [296] [347] [335] Shall certify proceedings

Currentness

The magistrate, before whom an examination has taken place upon a criminal accusation, shall certify to all the proceedings had before him, as well as where he discharges, holds to bail or commits, and transmit them, sealed up, to the court before which the defendant may be tried, writing his name across the seals of the envelope. The voluntary statement of the defendant, the testimony, bail bonds, and every other proceeding in the case, shall be thus delivered to the clerk of the proper court, without delay.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.30, TX CRIM PRO Art. 17.30
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**                                         © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.31

Art. 17.31. [297] [348] [336] Duty of clerks who receive such proceedings

Currentness

If the proceedings be delivered to a district clerk, he shall keep them safely and deliver the same to the next grand jury. If the proceedings are delivered to a county clerk, he shall without delay deliver them to the district or county attorney of his county.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.31, TX CRIM PRO Art. 17.31
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.32

Art. 17.32. [298] [349] [337] In case of no arrest

Currentness

Upon failure from any cause to arrest the accused the magistrate shall file with the proper clerk the complaint, warrant of arrest, and a list of the witnesses.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.32, TX CRIM PRO Art. 17.32
Current through the end of the 2015 Regular Session of the 84th Legislature

---

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.33

Art. 17.33. Request setting of bail

Currentness

The accused may at any time after being confined request a magistrate to review the written statements of the witnesses for the State as well as all other evidence available at that time in determining the amount of bail. This setting of the amount of bail does not waive the defendant's right to an examining trial as provided in Article 16.01.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.33, TX CRIM PRO Art. 17.33
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.34

Art. 17.34. [300] [351] [339] Witnesses to give bond

Currentness

Witnesses for the State or defendant may be required by the magistrate, upon the examination of any criminal accusation before him, to give bail for their appearance to testify before the proper court. A personal bond may be taken of a witness by the court before whom the case is pending.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.34, TX CRIM PRO Art. 17.34
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.35

Art. 17.35. [301] [352] [340] Security of witness

Currentness

The amount of security to be required of a witness is to be regulated by his pecuniary condition, character and the nature of the offense with respect to which he is a witness.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.35, TX CRIM PRO Art. 17.35
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.36

Art. 17.36. [302] [353] [341] Effect of witness bond

Currentness

The bond given by a witness for his appearance has the same effect as a bond of the accused and may be forfeited and recovered upon in the same manner.

**Credits**

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.36, TX CRIM PRO Art. 17.36
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
> Code of Criminal Procedure (Refs & Annos)
> Title 1. Code of Criminal Procedure of 1965
> Arrest, Commitment and Bail
> Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.37

Art. 17.37. [303] Witness may be committed

Currentness

A witness required to give bail who fails or refuses to do so shall be committed to jail as in other cases of a failure to give bail when required, but shall be released from custody upon giving such bail.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.37, TX CRIM PRO Art. 17.37
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.38

Art. 17.38. [274] [322] [310] Rules applicable to all cases of bail

Currentness

The rules in this Chapter respecting bail are applicable to all such undertakings when entered into in the course of a criminal action, whether before or after an indictment, in every case where authority is given to any court, judge, magistrate, or other officer, to require bail of a person accused of an offense, or of a witness in a criminal action.

**Credits**
Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722, eff. Jan. 1, 1966.

Vernon's Ann. Texas C. C. P. Art. 17.38, TX CRIM PRO Art. 17.38
Current through the end of the 2015 Regular Session of the 84th Legislature

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.39

Art. 17.39. Records of bail

Currentness

A magistrate or other officer who sets the amount of bail or who takes bail shall record in a well-bound book the name of the person whose appearance the bail secures, the amount of bail, the date bail is set, the magistrate or officer who sets bail, the offense or other cause for which the appearance is secured, the magistrate or other officer who takes bail, the date the person is released, and the name of the bondsman, if any.

**Credits**
Added by Acts 1977, 65th Leg., p. 1525, ch. 618, § 1, eff. Aug. 29, 1977.

Vernon's Ann. Texas C. C. P. Art. 17.39, TX CRIM PRO Art. 17.39
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

| |
|---|
| Vernon's Texas Statutes and Codes Annotated |
|   Code of Criminal Procedure (Refs & Annos) |
|     Title 1. Code of Criminal Procedure of 1965 |
|       Arrest, Commitment and Bail |
|         Chapter Seventeen. Bail (Refs & Annos) |

Vernon's Ann.Texas C.C.P. Art. 17.40

Art. 17.40. Conditions related to victim or community safety

Effective: January 1, 2008
Currentness

(a) To secure a defendant's attendance at trial, a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community.

(b) At a hearing limited to determining whether the defendant violated a condition of bond imposed under Subsection (a), the magistrate may revoke the defendant's bond only if the magistrate finds by a preponderance of the evidence that the violation occurred. If the magistrate finds that the violation occurred, the magistrate shall revoke the defendant's bond and order that the defendant be immediately returned to custody. Once the defendant is placed in custody, the revocation of the defendant's bond discharges the sureties on the bond, if any, from any future liability on the bond. A discharge under this subsection from any future liability on the bond does not discharge any surety from liability for previous forfeitures on the bond.

**Credits**
Added by Acts 1999, 76th Leg., ch. 768, § 1, eff. Sept. 1, 1999. Amended by Acts 2007, 80th Leg., ch. 1113, § 4, eff. Jan. 1, 2008.

Vernon's Ann. Texas C. C. P. Art. 17.40, TX CRIM PRO Art. 17.40
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.41

Art. 17.41. Condition where child alleged victim

Effective: September 1, 2009
Currentness

(a) This article applies to a defendant charged with an offense under any of the following provisions of the Penal Code, if committed against a child younger than 14 years of age:

(1) Chapter 21 (Sexual Offenses) or 22 (Assaultive Offenses);

(2) Section 25.02 (Prohibited Sexual Conduct); or

(3) Section 43.25 (Sexual Performance by a Child).

(b) Subject to Subsections (c) and (d), a magistrate shall require as a condition of bond for a defendant charged with an offense described by Subsection (a) that the defendant not:

(1) directly communicate with the alleged victim of the offense; or

(2) go near a residence, school, or other location, as specifically described in the bond, frequented by the alleged victim.

(c) A magistrate who imposes a condition of bond under this article may grant the defendant supervised access to the alleged victim.

(d) To the extent that a condition imposed under this article conflicts with an existing court order granting possession of or access to a child, the condition imposed under this article prevails for a period specified by the magistrate, not to exceed 90 days.

**Credits**
Added by Acts 1985, 69th Leg., ch. 595, § 1, eff. Sept. 1, 1985. Amended by Acts 1995, 74th Leg., ch. 76, § 14.21, eff. Sept. 1, 1995; Acts 2009, 81st Leg., ch. 982, § 1, eff. Sept. 1, 2009.

Vernon's Ann. Texas C. C. P. Art. 17.41, TX CRIM PRO Art. 17.41

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.42

Art. 17.42. Personal bond office

Effective: September 1, 2015
Currentness

Sec. 1. Any county, or any judicial district with jurisdiction in more than one county, with the approval of the commissioners court of each county in the district, may establish a personal bond office to gather and review information about an accused that may have a bearing on whether he will comply with the conditions of a personal bond and report its findings to the court before which the case is pending.

Sec. 2. (a) The commissioners court of a county that establishes the office or the district and county judges of a judicial district that establishes the office may employ a director of the office.

(b) The director may employ the staff authorized by the commissioners court of the county or the commissioners court of each county in the judicial district.

Sec. 3. If a judicial district establishes an office, each county in the district shall pay its pro rata share of the costs of administering the office according to its population.

Sec. 4. (a) If a court releases an accused on personal bond on the recommendation of a personal bond office, the court shall assess a personal bond fee of $20 or three percent of the amount of the bail fixed for the accused, whichever is greater. The court may waive the fee or assess a lesser fee if good cause is shown.

(b) Fees collected under this article may be used solely to defray expenses of the personal bond office, including defraying the expenses of extradition.

(c) Fees collected under this article shall be deposited in the county treasury, or if the office serves more than one county, the fees shall be apportioned to each county in the district according to each county's pro rata share of the costs of the office.

Sec. 5. (a) A personal bond pretrial release office established under this article shall:

(1) prepare a record containing information about any accused person identified by case number only who, after review by the office, is released by a court on personal bond;

(2) update the record on a monthly basis; and

(3) file a copy of the record with the district or county clerk, as applicable based on court jurisdiction over the categories of offenses addressed in the records, in any county served by the office.

(b) In preparing a record under Subsection (a), the office shall include in the record a statement of:

(1) the offense with which the person is charged;

(2) the dates of any court appearances scheduled in the matter that were previously unattended by the person;

(3) whether a warrant has been issued for the person's arrest for failure to appear in accordance with the terms of the person's release;

(4) whether the person has failed to comply with conditions of release on personal bond; and

(5) the presiding judge or magistrate who authorized the personal bond.

(c) This section does not apply to a personal bond pretrial release office that on January 1, 1995, was operated by a community corrections and supervision department.

Sec. 6. (a) Not later than April 1 of each year, a personal bond office established under this article shall submit to the commissioners court or district and county judges that established the office an annual report containing information about the operations of the office during the preceding year.

(b) In preparing an annual report under Subsection (a), the office shall include in the report a statement of:

(1) the office's operating budget;

(2) the number of positions maintained for office staff;

(3) the number of accused persons who, after review by the office, were released by a court on personal bond; and

(4) the number of persons described by Subdivision (3):

(A) who were convicted of the same offense or of any felony within the six years preceding the date on which charges were filed in the matter pending during the person's release;

(B) who failed to attend a scheduled court appearance;

(C) for whom a warrant was issued for the person's arrest for failure to appear in accordance with the terms of the person's release; or

(D) who were arrested for any other offense while on the personal bond.

(c) This section does not apply to a personal bond pretrial release office that on January 1, 1995, was operated by a community corrections and supervision department.

**Credits**
Added by Acts 1989, 71st Leg., ch. 2, § 5.01(a), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 1080, § 1, eff. Sept. 1, 1989. Amended by Acts 1995, 74th Leg., ch. 318, § 44, eff. Sept. 1, 1995; Acts 2011, 82nd Leg., ch. 420 (S.B. 882), § 1, eff. June 17, 2011; Acts 2015, 84th Leg., ch. 1174 (S.B. 965), § 1, eff. Sept. 1, 2015.

Vernon's Ann. Texas C. C. P. Art. 17.42, TX CRIM PRO Art. 17.42
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.43

Art. 17.43. Home curfew and electronic monitoring as condition

Currentness

(a) A magistrate may require as a condition of release on personal bond that the defendant submit to home curfew and electronic monitoring under the supervision of an agency designated by the magistrate.

(b) Cost of monitoring may be assessed as court costs or ordered paid directly by the defendant as a condition of bond.

**Credits**
Added by Acts 1989, 71st Leg., ch. 374, § 4, eff. Sept. 1, 1989.

Vernon's Ann. Texas C. C. P. Art. 17.43, TX CRIM PRO Art. 17.43
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>  Code of Criminal Procedure (Refs & Annos)
>   Title 1. Code of Criminal Procedure of 1965
>    Arrest, Commitment and Bail
>     Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.44

Art. 17.44. Home confinement, electronic monitoring, and drug testing as condition

Effective: September 1, 2009
Currentness

(a) A magistrate may require as a condition of release on bond that the defendant submit to:

(1) home confinement and electronic monitoring under the supervision of an agency designated by the magistrate; or

(2) testing on a weekly basis for the presence of a controlled substance in the defendant's body.

(b) In this article, "controlled substance" has the meaning assigned by Section 481.002, Health and Safety Code.

(c) The magistrate may revoke the bond and order the defendant arrested if the defendant:

(1) violates a condition of home confinement and electronic monitoring;

(2) refuses to submit to a test for controlled substances or submits to a test for controlled substances and the test indicates the presence of a controlled substance in the defendant's body; or

(3) fails to pay the costs of monitoring or testing for controlled substances, if payment is ordered under Subsection (e) as a condition of bond and the magistrate determines that the defendant is not indigent and is financially able to make the payments as ordered.

(d) The community justice assistance division of the Texas Department of Criminal Justice may provide grants to counties to implement electronic monitoring programs authorized by this article.

(e) The cost of electronic monitoring or testing for controlled substances under this article may be assessed as court costs or ordered paid directly by the defendant as a condition of bond.

**Credits**

Added by Acts 1989, 71st Leg., ch. 785, § 4.03, eff. Sept. 1, 1989. Renumbered from Vernon's Ann.C.C.P. art. 17.42 by Acts 1991, 72nd Leg., ch. 16, § 19.01(3), eff. Aug. 26, 1991. Amended by Acts 1991, 72nd Leg., ch. 14, § 284(46), eff. Sept. 1, 1991; Acts 2009, 81st Leg., ch. 163, § 1, eff. Sept. 1, 2009.

Vernon's Ann. Texas C. C. P. Art. 17.44, TX CRIM PRO Art. 17.44

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Case Case 26-20387 Document 80-7-1 Filed 29509/Date Filed 06/25/2026 of 92

Art. 17.441. Conditions requiring motor vehicle ignition interlock, TX CRIM PRO Art....

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.441

Art. 17.441. Conditions requiring motor vehicle ignition interlock

Currentness

(a) Except as provided by Subsection (b), a magistrate shall require on release that a defendant charged with a subsequent offense under Sections 49.04-49.06, Penal Code, or an offense under Section 49.07 or 49.08 of that code:

(1) have installed on the motor vehicle owned by the defendant or on the vehicle most regularly driven by the defendant, a device that uses a deep-lung breath analysis mechanism to make impractical the operation of a motor vehicle if ethyl alcohol is detected in the breath of the operator; and

(2) not operate any motor vehicle unless the vehicle is equipped with that device.

(b) The magistrate may not require the installation of the device if the magistrate finds that to require the device would not be in the best interest of justice.

(c) If the defendant is required to have the device installed, the magistrate shall require that the defendant have the device installed on the appropriate motor vehicle, at the defendant's expense, before the 30th day after the date the defendant is released on bond.

(d) The magistrate may designate an appropriate agency to verify the installation of the device and to monitor the device. If the magistrate designates an agency under this subsection, in each month during which the agency verifies the installation of the device or provides a monitoring service the defendant shall pay a fee to the designated agency in the amount set by the magistrate. The defendant shall pay the initial fee at the time the agency verifies the installation of the device. In each subsequent month during which the defendant is required to pay a fee the defendant shall pay the fee on the first occasion in that month that the agency provides a monitoring service. The magistrate shall set the fee in an amount not to exceed $10 as determined by the county auditor, or by the commissioners court of the county if the county does not have a county auditor, to be sufficient to cover the cost incurred by the designated agency in conducting the verification or providing the monitoring service, as applicable in that county.

**Credits**
Added by Acts 1995, 74th Leg., ch. 318, § 45, eff. Sept. 1, 1995. Amended by Acts 1999, 76th Leg., ch. 537, § 1, eff. Sept. 1, 1999.

Vernon's Ann. Texas C. C. P. Art. 17.441, TX CRIM PRO Art. 17.441

Case 4:25-cv-02337 Document 80-7 Filed on 06/09/26 in TXSD Page 296 of 92

Art. 17.441. Conditions requiring motor vehicle ignition interlock, TX CRIM PRO Art....

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                                                  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

---

Vernon's Texas Statutes and Codes Annotated
  Code of Criminal Procedure (Refs & Annos)
    Title 1. Code of Criminal Procedure of 1965
      Arrest, Commitment and Bail
        Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.45

Art. 17.45. Conditions requiring AIDS and HIV instruction

Currentness

A magistrate may require as a condition of bond that a defendant charged with an offense under Section 43.02, Penal Code, receive counseling or education, or both, relating to acquired immune deficiency syndrome or human immunodeficiency virus.

**Credits**
Added by Acts 1989, 71st Leg., ch. 1195, § 8, eff. Sept. 1, 1989. Renumbered from Vernon's Ann.C.C.P. art. 17.42 by Acts 1991, 72nd Leg., ch. 16, § 19.01(4), eff. Aug. 26, 1991.

Vernon's Ann. Texas C. C. P. Art. 17.45, TX CRIM PRO Art. 17.45
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.46

Art. 17.46. Conditions for a defendant charged with stalking

Currentness

(a) A magistrate may require as a condition of release on bond that a defendant charged with an offense under Section 42.072, Penal Code, may not:

(1) communicate directly or indirectly with the victim; or

(2) go to or near the residence, place of employment, or business of the victim or to or near a school, day-care facility, or similar facility where a dependent child of the victim is in attendance.

(b) If the magistrate requires the prohibition contained in Subsection (a)(2) of this article as a condition of release on bond, the magistrate shall specifically describe the prohibited locations and the minimum distances, if any, that the defendant must maintain from the locations.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 10, § 2, eff. March 19, 1993. Amended by Acts 1995, 74th Leg., ch. 657, § 3, eff. June 14, 1995; Acts 1997, 75th Leg., ch. 1, § 5, eff. Jan. 28, 1997.

Vernon's Ann. Texas C. C. P. Art. 17.46, TX CRIM PRO Art. 17.46
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
Code of Criminal Procedure (Refs & Annos)
Title 1. Code of Criminal Procedure of 1965
Arrest, Commitment and Bail
Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.47

Art. 17.47. Conditions requiring submission of specimen

Effective: September 1, 2005
Currentness

(a) A magistrate may require as a condition of release on bail or bond of a defendant that the defendant provide to a local law enforcement agency one or more specimens for the purpose of creating a DNA record under Subchapter G, Chapter 411, Government Code. [1]

(b) A magistrate shall require as a condition of release on bail or bond of a defendant described by Section 411.1471(a), Government Code, that the defendant provide to a local law enforcement agency one or more specimens for the purpose of creating a DNA record under Subchapter G, Chapter 411, Government Code.

**Credits**
Added by Acts 2001, 77th Leg., ch. 1490, § 5, eff. Sept. 1, 2001. Amended by Acts 2005, 79th Leg., ch. 1224, § 17, eff. Sept. 1, 2005.

Footnotes
1        V.T.C.A., Government Code § 411.141 et seq.
Vernon's Ann. Texas C. C. P. Art. 17.47, TX CRIM PRO Art. 17.47
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
 Code of Criminal Procedure (Refs & Annos)
  Title 1. Code of Criminal Procedure of 1965
   Arrest, Commitment and Bail
    Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.48

Art. 17.48. Posttrial actions

Effective: September 1, 2003

Currentness

A convicting court on entering a finding favorable to a convicted person under Article 64.04, after a hearing at which the attorney representing the state and the counsel for the defendant are entitled to appear, may release the convicted person on bail under this chapter pending the conclusion of court proceedings or proceedings under Section 11, Article IV, Texas Constitution, and Article 48. 01.

**Credits**
Added by Acts 2001, 77th Leg., ch. 2, § 3, eff. April 5, 2001. Renumbered from Vernon's Ann.C.C.P. art. 17.47 by Acts 2003, 78th Leg., ch. 1275, § 2(6), eff. Sept. 1, 2003.

Vernon's Ann. Texas C. C. P. Art. 17.48, TX CRIM PRO Art. 17.48
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Code of Criminal Procedure (Refs & Annos)
>     Title 1. Code of Criminal Procedure of 1965
>       Arrest, Commitment and Bail
>         Chapter Seventeen. Bail (Refs & Annos)

Vernon's Ann.Texas C.C.P. Art. 17.49

Art. 17.49. Conditions for defendant charged with offense involving family violence

Effective: September 1, 2009
Currentness

(a) In this article:

(1) "Family violence" has the meaning assigned by Section 71.004, Family Code.

(2) "Global positioning monitoring system" means a system that electronically determines and reports the location of an individual through the use of a transmitter or similar device carried or worn by the individual that transmits latitude and longitude data to a monitoring entity through global positioning satellite technology. The term does not include a system that contains or operates global positioning system technology, radio frequency identification technology, or any other similar technology that is implanted in or otherwise invades or violates the individual's body.

(b) A magistrate may require as a condition of release on bond that a defendant charged with an offense involving family violence:

(1) refrain from going to or near a residence, school, place of employment, or other location, as specifically described in the bond, frequented by an alleged victim of the offense;

(2) carry or wear a global positioning monitoring system device and, except as provided by Subsection (h), pay the costs associated with operating that system in relation to the defendant; or

(3) except as provided by Subsection (h), if the alleged victim of the offense consents after receiving the information described by Subsection (d), pay the costs associated with providing the victim with an electronic receptor device that:

(A) is capable of receiving the global positioning monitoring system information from the device carried or worn by the defendant; and

(B) notifies the victim if the defendant is at or near a location that the defendant has been ordered to refrain from going to or near under Subdivision (1).

(c) Before imposing a condition described by Subsection (b)(1), a magistrate must afford an alleged victim an opportunity to provide the magistrate with a list of areas from which the victim would like the defendant excluded and shall consider the victim's request, if any, in determining the locations the defendant will be ordered to refrain from going to or near. If the magistrate imposes a condition described by Subsection (b)(1), the magistrate shall specifically describe the locations that the defendant has been ordered to refrain from going to or near and the minimum distances, if any, that the defendant must maintain from those locations.

(d) Before imposing a condition described by Subsection (b)(3), a magistrate must provide to an alleged victim information regarding:

(1) the victim's right to participate in a global positioning monitoring system or to refuse to participate in that system and the procedure for requesting that the magistrate terminate the victim's participation;

(2) the manner in which the global positioning monitoring system technology functions and the risks and limitations of that technology, and the extent to which the system will track and record the victim's location and movements;

(3) any locations that the defendant is ordered to refrain from going to or near and the minimum distances, if any, that the defendant must maintain from those locations;

(4) any sanctions that the court may impose on the defendant for violating a condition of bond imposed under this article;

(5) the procedure that the victim is to follow, and support services available to assist the victim, if the defendant violates a condition of bond or if the global positioning monitoring system equipment fails;

(6) community services available to assist the victim in obtaining shelter, counseling, education, child care, legal representation, and other assistance available to address the consequences of family violence; and

(7) the fact that the victim's communications with the court concerning the global positioning monitoring system and any restrictions to be imposed on the defendant's movements are not confidential.

(e) In addition to the information described by Subsection (d), a magistrate shall provide to an alleged victim who participates in a global positioning monitoring system under this article the name and telephone number of an appropriate person employed by a local law enforcement agency whom the victim may call to request immediate assistance if the defendant violates a condition of bond imposed under this article.

(f) In determining whether to order a defendant's participation in a global positioning monitoring system under this article, the magistrate shall consider the likelihood that the defendant's participation will deter the defendant from seeking to kill, physically injure, stalk, or otherwise threaten the alleged victim before trial.

(g) An alleged victim may request that the magistrate terminate the victim's participation in a global positioning monitoring system at any time. The magistrate may not impose sanctions on the victim for requesting termination of the victim's participation in or refusing to participate in a global positioning monitoring system under this article.

(h) If the magistrate determines that a defendant is indigent, the magistrate may, based on a sliding scale established by local rule, require the defendant to pay costs under Subsection (b)(2) or (3) in an amount that is less than the full amount of the costs associated with operating the global positioning monitoring system in relation to the defendant or providing the victim with an electronic receptor device.

(i) If an indigent defendant pays to an entity that operates a global positioning monitoring system the partial amount ordered by a magistrate under Subsection (h), the entity shall accept the partial amount as payment in full. The county in which the magistrate who enters an order under Subsection (h) is located is not responsible for payment of any costs associated with operating the global positioning monitoring system in relation to an indigent defendant.

(j) A magistrate that imposes a condition described by Subsection (b)(1) or (2) shall order the entity that operates the global positioning monitoring system to notify the court and the appropriate local law enforcement agency if a defendant violates a condition of bond imposed under this article.

(k) A magistrate that imposes a condition described by Subsection (b) may only allow or require the defendant to execute or be released under a type of bond that is authorized by this chapter.

(l) This article does not limit the authority of a magistrate to impose any other reasonable conditions of bond or enter any orders of protection under other applicable statutes.

**Credits**
Added by Acts 2009, 81st Leg., ch. 1276, § 2, eff. Sept. 1, 2009.

Vernon's Ann. Texas C. C. P. Art. 17.49, TX CRIM PRO Art. 17.49
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit H**

Case 4:16-cv-20837 Document 82-1 Page 305 Date Filed 06/25/2026 of 2

11/8/2016 Galveston County Sheriff's Office P2C - provided by OSSI



HOME | EVENT SEARCH | DAILY BULLETIN | MOST WANTED | CRASH REPORTS | WANTED LIST | INMATE INQUIRY | SEX OFFENDER SEARCH | CONTACT US | FAQ |    Home ▼

## Event Search

### What?

☑ Accidents          ☑ Arrests          ☑ Incidents

Case #: [          ]

| When? | | Who? | |
|---|---|---|---|
| Search By: ◉ Date Occurred ○ Date Reported | | Last Name / Business Name: | First Name: MARANDA    Middle Name: |
| Date: Specify Date ▼    From: * 05/25/2016    To: * 06/01/2016 | | | |

### Where?

Street #: [          ]        Street Name: [          ]        City: [          ▼]

Search Range: [          ▼]

[ Search ]    [ Reset ]

| | Date/Time | Type | Details | Location | Report |
|---|---|---|---|---|---|
| | 05/27/2016 00:00 | Arrest | **Arrestee:** ODONNELL EWING, MARANDA . **Charge:** MUNICIPAL HOLD - PASADENA PD | 176 N SH 3 | |
| | 05/27/2016 00:00 | Arrest | **Arrestee:** ODONNELL EWING, MARANDA . **Charge:** POSS MARIJ <2OZ | 176 N SH 3 | |

Page **1** of 1                                                                 2 records returned

Map These Events with Google maps

powered by Sungard Public Sector OSSI 's P2C engine

http://p2c.co.galveston.tx.us/Summary.aspx                                                    1/1

**Exhibit I**

Case 4:16-cv-01817 Document 82-9 Filed on 01/09/17 in TXSD Page 306 of 637

**Exhibit I**

THE STATE OF TEXAS
COUNTY OF HARRIS           ALIAS CAPIAS

IN THE COUNTY CRIMINAL COURT AT LAW
NO. 005TH OF HARRIS COUNTY, TEXAS

NO. 209186201010

THE STATE OF TEXAS: TO ANY PEACE OFFICER OF THE STATE OF TEXAS, GREETINGS:

YOU ARE HEREBY COMMANDED TO ARREST   ODONNELL, MARANDA LYNN

IF HE IS TO BE FOUND IN YOUR COUNTY, AND HIM SAFELY KEEP, OR SO PROVIDE THAT YOU HAVE HIM BEFORE THE HONORABLE COUNTY CRIMINAL COURT AT LAW NO. 005 IN AND FOR SAID COUNTY HARRIS, AT THE COURTHOUSE THEREOF IN THE CITY OF HOUSTON.

I N S T A N T E R

THEN AND THERE TO ANSWER THE STATE OF TEXAS UPON INFORMATION AND COMPLAINT PENDING IN SAID COURT CHARGING HIM WITH DRV W/LIC INV W/PR CN/SUS/W/O

A MISDEMEANOR
FILED IN SAID COUNTY CRIMINAL COURT AT LAW ON THE 19 DAY OF MAY        , A.D. 2016

HEREIN FAIL NOT, BUT OF THIS WRIT THEN AND THERE MAKE DUE RETURN, SHOWING HOW YOU HAVE EXECUTED SAME. IF NOT EXECUTED WITHIN 90 DAYS FROM DATE HEREOF, YOU SHALL NOTIFY SAID COURT IN WRITING, THE CAUSE OF THE FAILURE, AND WHAT EFFORTS HAVE BEEN MADE, TO EXECUTE SAME.

IN WITNESS WHEREOF, THEREUNTO SET MY HAND AND AFFIX THE SEAL OF THE COURT, AT OFFICE IN HOUSTON, TEXAS, ON THIS THE 30TH DAY OF JUNE        , A.D.   2016 AT 15:39 O'CLOCK  P.M..

BAIL, $005001

CHRIS DANIEL
DISTRICT CLERK, HARRIS COUNTY, TEXAS

INITIATING DEPUTY: CASTILLO, ERICA R

SNU: 998

BY

DEPUTY

REASON FOR ISSUE: BOND FORFEITURE

**************************************************************************

S H E R I F F ' S   R E T U R N

RECEIVED THIS WRIT ON THE _____ DAY OF _____, _____ AND I EXECUTED SAME ON THE _____ DAY OF _____, _____ BY ARRESTING THE NAMED DEFENDANT

_____ AT __:__ O'CLOCK AM/PM.

BY PLACING IN HARRIS COUNTY JAIL SAID _____

BY ACCEPTING BOND ON SAID_____

UNEXECUTED _____

RON HICKMAN
SHERIFF OF HARRIS COUNTY, TEXAS
BY _____
                    DEPUTY

**F I L E D**
Chris Daniel
District Clerk

JUN 3 0 2016
Time:_____
Harris County, Texas
By_____
Deputy

**Exhibit J**

Retained or Appointed Counsel

(31)

CAUSE NO. 2091966

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| vs. | § | COURT AT LAW NUMBER 11 |
| Robert Ford | § | HARRIS COUNTY, TEXAS |

## MISDEMEANOR PLEA OF GUILTY / NOLO CONTENDERE

**OFFENSE, RANGE OF PUNISHMENT, PLEA BARGAIN.** Comes Now Defendant prior to entering a plea herein representing to the Court the following: I am mentally competent and charged with the misdemeanor offense of theft for which the punishment is by a fine not to exceed $ 2000 , or confinement in the Harris County Jail not to exceed 180 days , or both. I have entered into a plea bargain agreement with the State as follows: 5 days HCJ / credit 5 days served

**ACKNOWLEDGEMENT OF RIGHTS.** I understand that I have the right to: have a jury decide my guilt or innocence, and, if found guilty, assess my punishment; compel witnesses to testify on my behalf; confront and cross-examine my accusers; arraignment and have the charge read to me in open court; remain silent; that anything I say can be used against me; and the right to have ten (10) days after the appointment of my attorney before entering a plea of guilty/*nolo contendere.*

**LIMITED RIGHT TO APPEAL. DIRECT AND COLLATERAL CONSEQUENCES.** I understand that upon a plea of guilty/*nolo contendere*, with a jury waiver, the court may assess punishment without evidence; and that if the court does not exceed the agreed recommendation in assessing punishment that my right to appeal my conviction will be limited to matters raised by written motion and ruled upon before trial unless the court gives permission to raise other matters; that if I am on community supervision or parole, my plea of guilty/*nolo contendere* may result in the revocation of my community supervision or parole resulting in additional confinement; that if I am found guilty this case may be used to enhance my punishment if I am convicted of another offense; and if applicable, my privilege to drive may be cancelled, suspended revoked; or denied.

I fully discussed this case with my attorney, and he or she answered each question to my satisfaction.

**WAIVER.** With a full understanding of my rights, I knowingly and voluntarily waive each of the rights listed above, and I wish to plead guilty/*nolo contendere* to the offense alleged in the State's information; and that any enhancement paragraph is true.

**PLEA.** In open court I knowingly and voluntarily enter my plea of guilty/*nolo contendere* to the offense charged in the information and request the Court immediately dispose of this case based upon my plea agreement with the prosecutor. I further understand that if the judge does not follow the plea bargain, I will be allowed to withdraw my plea.

X _____    5-23-16
Signature of Defendant                        Date

01-11-2013

Certified Document Number: 70388062 - Page 1 of 2

Retained or Appointed Counsel

**ACKNOWLEDGEMENT OF COUNSEL.** I have consulted with the defendant whom I believe to be competent and to whom I have fully explained all of the matters contained herein including immigration consequence, if applicable.

☐ **AS APPOINTED COUNSEL,** I affirm that I fulfilled my duties under article 26.04(j) Code of Criminal Procedure, (Vernon 2011) and request the Court allow me to withdraw as attorney of record at the conclusion of this proceeding.

_JoAnne Musick_ _____     _____
Name of Counsel (please print)                     Signature of Counsel for the Defense

**PROSECUTOR'S CONSENT AND APPROVAL OF JURY WAIVER.** The undersigned assistant district attorney, on behalf of the State of Texas, consents to and approves the defendant's waiver of trial by jury.

_____     _5/23/16_ _____
Assistant District Attorney, Harris County, Texas       Date

**FINDING OF COMPETENCE.** Based upon the defendant's demeanor and responses, the Court **FINDS** the defendant is competent and is knowingly, intelligently and voluntarily waiving the rights set out above including the right to a jury trial; and is knowingly, intelligently and voluntarily entering this plea.

**RIGHT TO POSSESS A FIREARM OR AMMUNITION. CITIZENSHIP, IMMIGRATION CONSEQUENCES.** I informed the defendant of the nature of the charges, all rights and consequences of a plea of guilty/ *nolo contendere*; including: that if the offense involves family violence as that term is defined in the Texas Family Code, Section 71.004 it will be unlawful for the defendant to possess or purchase a firearm, including a handgun, long gun, or ammunition, pursuant to federal law under 18 USC Section 922(g)(9), or Section 46.04(b), Texas Penal Code.

☐ The defendant informed me that he or she is a United States citizen. ☐ The defendant informed me that he or she is not a United States citizen, and I admonished the defendant that a plea of guilty or *nolo contendere* for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

**ACCEPTANCE OF PLEA.**
☐ The Court **FINDS** there is sufficient information in the record to permit the meaningful exercise of sentencing discretion.

☐ The defendant requests that a presentence investigation report not be made and the Court agrees to that request.

**WITHDRAWAL OF APPOINTED COUNSEL.** ☑ The Court, **FINDING** counsel is appointed, pursuant to Tex. Code Crim. P. Art 26.04(j) (Vernon 2011), **GRANTS** counsel's oral motion to withdraw and **ORDERS** the Harris County District Clerk to make an entry in the Justice Information Management System reflecting counsel's motion and the Court's ruling.

_MAY 23 2016_

_____     _____
Judge Presiding                                       Date Signed

This document was translated verbatim from English to _____

by: _____     _____
(Print Name of Interpreter)                         (Signature of Interpreter)

CCL Form 8                                                                                     01-11-2013

Certified Document Number: 70388062 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 11, 2016

Certified Document Number:        70388062 Total Pages:  2

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Exhibit K**

**Exhibit K**

**FILED**
Chris Daniel
District Clerk

MAY 23 2016

Time: _____
Harris County, Texas

By: _____
Deputy

**HARRIS COUNTY PRETRIAL SERVICES**
1201 Franklin, 12th Floor
Houston, Texas 77002

**PERSONAL BOND**

KNOW ALL MEN BY THESE PRESENTS

CAUSE NO. 2092044

SPN NO. 02852659

THE STATE OF TEXAS

COUNTY OF HARRIS

THAT I, *Loetha Shante McGruder* charged with the offense of a (Misdemeanor / Felony), to wit, *Fail to ID to P.O. False Inf*

am held and firmly bound unto the State of Texas in the penal sum stated below for the payment of which sum well and truly to be made, and in addition all necessary and reasonable fees and expenses that may be incurred by peace officers in re-arresting me in the event the conditions of this bond are violated, I do bind myself, my heirs, executors and administrators, jointly and severally by these presents.

THE CONDITIONS OF THE ABOVE OBLIGATIONS ARE THAT I swear that I will appear before the *County Criminal Court At Law #8* at the Criminal Justice Center, *1201 Franklin*

Houston, Harris County, Texas, on the *21* of *June*, 20 *16*, at the hour of *830* A.M. / P.M. or upon notice by the Court, or pay to the Court the principal sum of $ *5,000.00* plus all necessary and reasonable expenses incurred in any arrest for failure to appear.

I further swear that I will appear before any court or magistrate before whom this cause may hereinafter be pending at any time and place as may be required, I will comply with any court ordered release conditions, and I will comply with Pretrial Services' instructions relating to my release conditions or appearance in court.

Now if I shall well and truly make said appearance before said Court, and there remain from day to day and term to term of said Court, until discharged by due course of law, then and there to answer said accusation against me, and further shall well and truly make my personal appearance in any and all subsequent proceedings that may be had relative to said charge in the course of the criminal action based on said charge, this obligation shall become void; Otherwise to remain in full force and effect.

I further understand that all or part of the information collected in the defendant report may be available to law enforcement or criminal justice personnel, including, but not limited to, the Judge or Magistrate hearing the case, the District Attorney's Office, and the defense attorney of record in this cause.

Fee=$ *150.00*    Waived _____

Special Conditions of bond in effect: (YES) / NO

APPROVED

JUDGE *61095600*

_____
Signature of Defendant

SWORN TO AND SUBSCRIBED BEFORE ME, this *23* day of *May*, 20 *16*

_____
PERSONAL BOND OFFICE EMPLOYEE
HARRIS COUNTY, TEXAS

**IDENTIFICATION INFORMATION**

Date of Birth: *02 / 09 / 1994* Place of Birth *Louisiana* Driver's License # *33743951 ID* State: *TX*

Height *5'04* Weight *150* Hair Color *BLACK* Eye Color *BROWN*

DEFENDANT MAILING ADDRESS

Street Address *12200 Fleming Dr. #311B*
City *Houston*, State *TX* *77013* Phone *409-237-1170*

NEAREST RELATIVE
Name *Lamonta McGruder (Cousin)*
Street *10340 Cambridge Glen Lane*
City/State *Houston, TX 77035*

DEFENDANT EMPLOYMENT INFORMATION
Name *Unemployed*
Address _____
Phone _____

Filed with *D.C.* on *05.23.2016* at *1445* A.M. / P.M. by: *EF*
Defendant Notified _____ HPD _____ (HCJ) *EF* Non-Arrest

Certified Document Number: 70381961 - Page 1 of 2

Rev 4/23/2007

CAUSE NO. 209204401010

C87 D1 (COURT ORDER)          IN THE COUNTY CRIMINAL COURT AT LAW NO. 008
                                          OF HARRIS COUNTY, TEXAS

T H E   S T A T E   O F   T E X A S

                VS.

    MCGRUDER, LOETHA SHANTE                 FAIL TO ID TO P.O. FALSE INF


TO THE SHERIFF OF HARRIS COUNTY, TEXAS:        GREETINGS

        BY ORDER OF THE COURT ON THE 23 DAY OF MAY, A.D. 2016 THE

FOLLOWING ACTION IS DIRECTED IN THE ABOVE STYLED AND NUMBERED CAUSE:

COURT APPROVED PTR BOND IN THE AMOUNT OF $5000

RETURN CAPIAS AND RELEASE DEFENDANT FROM YOUR OFFICIAL CUSTODY, AS

INDICATED BY ABOVE ACTIVITY

NOTES TO SHERIFF: DEF HCJ

WITNESS MY HAND AND SEAL OF OFFICE AT HOUSTON, TEXAS, THIS 23 DAY OF

MAY, A.D. 2016 AT 14:50 O'CLOCK


INITIATING DEPUTY:                 CHRIS DANIEL, DISTRICT CLERK
RIVAS, ANA DELMY                   HARRIS COUNTY, TEXAS


                                   BY _____
YH SNU: 998                                                DEPUTY

Certified Document Number: 70381961 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 11, 2016

Certified Document Number:        70381961 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# Exhibit L

CAUSE NO. 2092044

STATE OF TEXAS §
vs. §
LOETHA SHANTE McGRUDER §
(Defendant) §
02852659 §
(SPN) §

In the _____ District Court/

County Criminal Court at Law _____

Harris County, Texas

## BOND CONDITION VIOLATION REPORT

( $5,000 )

The defendant, charged with _Fail ID to P.O - Fake Info_ was released from custody on a ☒ personal bond ☐ surety bond ☐ cash bond and placed under the supervision of Harris County Pretrial Services on _May 23, 206_

Atty: Joanne Musick-Long
Next scheduled - 8/31/16

The defendant is in violation with the Court's Order to comply with conditions of bail by (check all that apply):

- ☐ failing to report to Pretrial Services as directed.
- ☐ failing to comply with curfew requirements.
- ☐ failing to comply with the rules of the electronic monitoring program.
- ☐ failing to reside at a designated location or with a specific person.
- ☐ attempting to adulterate a urine specimen.
- ☐ failing to provide a urine specimen.
- ☒ using, possessing, or consuming a controlled substance, dangerous drug, marihuana, or alcohol.
- ☐ failing to pay the fees for: ☐ drug or alcohol testing; ☐ electronic monitoring; ☐ installation verification or monitoring of an ignition interlock device.
- ☐ having contact with a prohibited person or visiting a restricted location.
- ☐ failing to submit to or follow the recommendations of a ☐ substance abuse ☐ mental health/retardation evaluation.
- ☐ failing to install an ignition interlock device.
- ☐ attempting to bypass or tamper with the ignition interlock device.
- ☐ driving a vehicle not equipped with an ignition interlock device.
- ☐ failing to enroll in school, obtain employment, or maintain attendance or employment.
- ☐ being charged with a new ☐ misdemeanor ☐ felony offense.
- ☐ (other)_____

FILED
Chris Daniel
District Clerk
Time: _____
JUL 27 2016
By _____
Harris County, Texas
Deputy

The details of the violation(s) indicated are: _Δ continues to test positive for THC since the initial screen on 5/24/16. Test conducted on 7/12 confirmed positive for THC by the lab._

Submitted on _JULY 27, 2016_    _CAROL EDWARDS_
                                 Pretrial Services Officer

## ORDER

Today the Court reviewed this report together with the supporting evidence and

- ☐ Continues supervision.
- ☐ The defendant being present in court, admonishes the defendant regarding the above-noted release violation(s).
- ☐ ORDERS this case be set on the court's docket on _____ and Pretrial Services is to inform the defendant he/she is to appear in this court on that date.
- ☐ AMENDS the defendant's conditions of release.
- ☒ ORDERS bail revoked and raised to $ _6000._ ; an alias capias shall issue for the arrest of Defendant.

SIGNED _July 27, 2016_    _____
                          JUDGE PRESIDING,
                          District Court/County Criminal Court at Law _____

Certified Document Number: 71247719 - Page 1 of 1

Original:  District Clerk
Copy:      Pretrial Services

Rev. 8/14/2008



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 11, 2016

Certified Document Number:        71247719 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Exhibit M**

**Filed Under Seal**

Case 2:26-cv-00337    Document 80-14    Page: 320/637 in TXS    06/25/2026    1 of 4

# Exhibit N

Case 2:26-cv-00337    Document 80-14    Page: 320/637 in TXS    06/25/2026    1 of 4

**2160025**

## BAIL BOND

RECEIVED
2016 MAY 20 AM 9:07
HARRIS COUNTY
TEXAS

COURT SETTING: 6/29/16
DATE MAY 26TH, 2016
TIME **8:00 AM**

CASE NO. **2091862**

CHARGE **DRV W/LIC INV W/PR**

**CN/SUS/W/O**

SPN **02775229**

Known All Men By These Presents:

That we, **ODONNELL, MARANDA LYNN** _____ , or principal, and the undersigned **Indiana Lumbermens Mutual Insurance Co. (Agent, Carl R. Pruett)** _____

as sureties, are held and firmly bound unto the STATE OF TEXAS, in the penal sum of

**TWO THOUSAND FIVE HUNDRED NO/100** ($ **2500.00** ) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums well and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

THE CONDITION OF THIS BOND IS THAT THE DEFENDANT HAS BEEN CHARGE WITH A **MISDEMEANOR**
(Felony-Misdemeanor)

offense and to secure his release from custody is entering into this obligation binding him to appear before _____

**CCCL.#5** _____ County of Harris County, Texas.

NOW THEREFORE, IF THE SAID PRINCIPAL SHALL WELL AND TRULY MAKE HIS PERSONAL APPEARANCE BEFORE SAID COURT INSTANTER AS well as before any other court to which the same may be transferred and for any an all subsequent proceedings that may be had relative to said charge in the course of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharged by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

Taken and approved this **20TH**
day of **MAY** , 20 **16**
by _____ Deputy
Sheriff, Harris County Texas
Indiana Lumbermens Mutual Insurance Co

_____ Surety
Carl R. Pruett
888 Franklin
(Mailing Address)
Houston, Texas 77002 713-225-1761
(City and State) (Phone)
Lic.# **74456** Empl. _____

**THE DEFENDANT SHALL NOT HAVE ANY CONTACT WITH THE PROSECUTION /S/, WITNESS /S/, THE COMPLAINANT/S/, OR THE ALLEGED VICTIM /S/**

FILED
Chris Daniel
District Clerk

MAY 2 1 2016

Time: _____
Harris County, Texas
By _____
Deputy

SIGNED AND DATED **MAY 20TH** , 20 **16**

Maranda O'donnell
(Principal Signature)
10280 windmill lakes blvd
(Mailing Address)
Houston TX 832 9674488
(City and State)

RACE _____ SEX _____ DOB _____ HT. _____ WT. _____

HAIR _____ EYES _____ DL# _____ STATE _____

THUMB PRINT

Jail Location **HARRIS COUNTY**

Citizen Status: _____

Holds: _____

ICE: A# _____

SB COST RECEIPT # **751372**

RECORDER'S MEMORANDUM
This instrument is of poor quality at the time of imaging

OATH OF SURETIES
THE STATE OF TEXAS
COUNTY OF HARRIS

Indiana Lumbermens Mutual Insurance Co

I, _____ do swear that I am worth in our own right, at least double the amount of the sum for which I am bound, exclusive of all property exempted by law from execution, and of debts or other encumbrances, that I am a resident of the State of Texas and I have property in the State of Texas liable to execution worth the sum for which I am bound.

Carl R. Pruett
Surety (Signature)

_____
Presenter (Signature)

Presenter Rt. Thumb Print
ID #: **001795**

BRENDA E. HERRERA
Notary Public, State of Texas
My Commission Expires
August 19, 2018

SUBSCRIBED AND SWORN to before me this **20TH**
day of **MAY** A.D. 20 **16**

_____
NOTARY PUBLIC HARRIS COUNTY

My Commission Expires: **8/19/2018**

**ORIGINAL-DISTRICT CLERK**

11-01-2009

Certified Document Number: 70368714 - Page 1 of 2

**THE FACE OF THIS DOCUMENT HAS A COLORED SECURITY BACKGROUND AND MICRO PRINTING - THE REVERSE SIDE OF THIS DOCUMENT HAS A WATERMARK**
**THIS DOCUMENT IS VOID IF THE PINK HEAT SENSITIVE INK BOX IN THE LOWER RIGHT HAND CORNER DOES NOT DISAPPEAR WHEN RUBBED WITH WARM HANDS**

POWER OF ATTORNEY

| POWER AMOUNT $5,000 | VOID IF NOT EXECUTED BY: JAN 08 2017 | **Indiana Lumbermens Mutual Insurance Company** P.O. Box 68932, Indianapolis, IN 46268 | US5 612697 |

KNOW ALL MEN BY THESE PRESENTS: that INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, a corporation duly authorized and existing under the laws of the State of Indiana, does constitute and appoint the below named agent its true and lawful Attorney-in-Fact for it and in its name, place and stead, to execute, and deliver for and on its behalf, as surety, a bail bond only.

Authority of such Attorney-in-Fact is limited to appearance bonds. No authority is provided herein for the execution of surety immigration bonds or to guarantee alimony payments, fines, wage law claims or other payments of any kind on behalf of below named defendant. The named agent is appointed only to execute the bond consistent with the terms of this power of attorney. The agent is not authorized to act as agent for receipt of service of process in any criminal or civil action.

This power is void if altered or erased or used in any combination with other powers of attorney of this company or any other company to obtain the release of the defendant named below or to satisfy any bond requirement in excess of the stated face amount of this power. This power can only be used once. No authority is provided to a copy or facsimile of this power of attorney without the prior written consent of Indiana Lumbermens Mutual Insurance Company. The obligation of the company shall not exceed the sum of

FIVE THOUSAND ($5,000.00) DOLLARS

and provided this Power-Of-Attorney is filed with the bond and retained as a part of the court records. The said Attorney-In-Fact is hereby authorized to insert in this Power-Of-Attorney the name of the person on whose behalf this bond was given. **20TH** **MAY** **16**

IN WITNESS WHEREOF, INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY has caused these presents to be signed by its duly authorized officer, proper for the purpose and its corporate seal to be hereunto affixed this _____ day of _____, 20____.

Bond Amount $ **2500.00** _____ Appearance Date _____

Defendant: **ODONNELL, MARANDA LYNN** _____

Court _____ **CCCL#5** _____ Case # **2091862** _____

County **HARRIS** City **HOUSTON** St **TX** Zip **77002**

Offense **DRV W/LIC INV W/PR CNV/SUS/W/O**

Executing Agent _____

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY

*John F. Wolf*

John F. Wolf, President          ILM-9B

Certified Document Number: 70368714 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 11, 2016

Certified Document Number:        70368714 Total Pages:  2



Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

No. 18-20466

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

MARANDA LYNN ODONNELL,

*Plaintiff-Appellee,*

*v.*

ALEX SALGADO; RONNISHA BOWMAN; ERICA HUGHES; SHANNON BALDWIN; DAVID M. FLEISCHER; KELLEY ANDREWS; ANDREW A. WRIGHT; FRANKLIN BYNUM; TORIA J. FINCH; LEE HARPER WILSON; SEDRICK T. WALKER, II; CASSANDRA Y. HOLLEMAN; RAUL RODRIGUEZ; AND TONYA JONES,

*Defendants-Appellants.*

---

LOETHA SHANTA MCGRUDER; ROBERT RYAN FORD,

*Plaintiffs-Appellees,*

*v.*

HARRIS COUNTY, TEXAS, ET AL.

*Defendants,*

ALEX SALGADO; RONNISHA BOWMAN; ERICA HUGHES; SHANNON BALDWIN; DAVID M. FLEISCHER; KELLEY ANDREWS; ANDREW A. WRIGHT; FRANKLIN BYNUM; TORIA J. FINCH; LEE HARPER WILSON; SEDRICK T. WALKER, II; CASSANDRA Y. HOLLEMAN; RAUL RODRIGUEZ; AND TONYA JONES,

*Appellants.*

---

On Appeal from the United States District Court for the Southern District of Texas, Case No. 4:16-cv-001414

---

## APPELLEES' UNOPPOSED MOTION TO VACATE STAY OPINION

---

SETH P. WAXMAN
DANIEL S. VOLCHOK
ARPIT K. GARG
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
(202) 663-6000

ALEC KARAKATSANIS
  *Counsel of Record*
ELIZABETH ROSSI
CHARLES GERSTEIN
CIVIL RIGHTS CORPS
910 17th Street N.W., Second Floor
Washington, D.C.  20006
(202) 681-2721
alec@civilrightscorps.org

January 8, 2019

---

**ADDITIONAL COUNSEL LISTED ON INSIDE COVER**     APPENDIX B

NEAL S. MANNE
LEXIE G. WHITE
JOSEPH S. GRINSTEIN
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002
(713) 651-9366

MICHAEL GERVAIS
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
(310) 789-3130

SUSANNE PRINGLE
TEXAS FAIR DEFENSE PROJECT
314 E. Highland Mall Boulevard
Suite 108
Austin, TX  78752
(512) 637-5220

# CERTIFICATE OF INTERESTED PERSONS

The following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that members of the Court may evaluate possible recusal.

| Plaintiffs-Appellees | Counsel |
| --- | --- |
| Maranda Lynn ODonnell | Alec Karakatsanis |
| Robert Ryan Ford | Elizabeth Rossi |
| Loetha Shanta McGruder | Charles Gerstein |
| | CIVIL RIGHTS CORPS |
| | |
| | Seth P. Waxman |
| | Daniel S. Volchok |
| | Arpit K. Garg |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | |
| | Neal S. Manne |
| | Lexie Giselle White |
| | Joseph S. Grinstein |
| | Michael Gervais |
| | SUSMAN GODFREY LLP |
| | |
| | Susanne Ashley Pringle |
| | TEXAS FAIR DEFENSE PROJECT |

| Defendants-Appellants | Counsel |
| --- | --- |
| Alex Salgado | G. Allan Van Fleet |
| Ronnisha Bowman | VAN FLEET LLP |
| Erica Hughes | |
| Shannon Baldwin | Vince Ryan |
| David M. Fleischer | Robert Soard |
| Kelley Andrews | HARRIS COUNTY ATTORNEY'S OFFICE |
| Andrew A. Wright | |

- i -

| Franklin Bynum<br>Toria J. Flinch<br>Lee Harper Wilson<br>Sedrick T. Walker, II<br>Cassandra Y. Holleman<br>Raul Rodriguez<br>Tonya Jones<br>(*current Fourteen Judges for Harris County Criminal Courts at Law*) | |
| --- | --- |
| Paula Goodhart<br>Bill Harmon<br>Natalie C. Fleming<br>John Clinton<br>Margaret Harris<br>Larry Standley<br>Pam Derbyshire<br>Jay Karahan<br>Judge Analia Wilkerson<br>Dan Spjut<br>Judge Diane Bull<br>Judge Robin Brown<br>Donald Smyth<br>Jean Hughes<br>(*former Fourteen Judges for Harris County Criminal Courts at Law*) | Charles J. Cooper<br>Michael W. Kirk<br>Brian W. Barnes<br>Nicole J. Moss<br>Haley N. Proctor<br>William C. Marra<br>COOPER & KIRK, PLLC<br><br>John R. Keville<br>Sheryl Anne Falk<br>Robert Lawrence Green, III<br>Corinne Stone<br>WINSTON AND STRAWN LLP |

| Defendants | Counsel |
| --- | --- |
| Judge Mike Fields<br>(*Judge for Harris County Criminal Court at Law*) | Bruce Powers<br>HARRIS COUNTY ATTORNEY'S OFFICE |
| Judge Darrell William Jordan<br>(*Judge for Harris County Criminal Court at Law*) | G. Allan Van Fleet<br>VAN FLEET LLP<br><br>Mark Anthony Correro<br>CORRERO & LEISURE, P.C. |
| Harris County, Texas<br>Eric Stewart Hagstette<br>Joseph Licata, III<br>Ronald Nicholas | Katharine D. David<br>Michael A. Stafford<br>Philip J. Morgan<br>Benjamin R. Stephens |

- ii -

| Blanca Estella Villagomez<br>Jill Wallace<br>(*County and Hearing Officers*) | GARDERE WYNNE SEWELL LLP<br><br>John Odam<br>Melissa Spinks<br>HARRIS COUNTY ATTORNEY'S OFFICE |
|---|---|
| Sheriff Ed Gonzalez | Victoria Lynn Jimenez<br>HARRIS COUNTY ATTORNEY'S OFFICE<br><br>Murray Jules Fogler<br>FOGLER, BRAR, FORD, O'NEIL & GRAY, L.L.P. |

| Other Interested Parties | Counsel |
|---|---|
| State of Texas<br>State of Arizona<br>State of Nebraska | Ken Paxton<br>Jeffrey C. Mateer<br>Kyle D. Hawkins<br>Joseph D. Hughes<br>TEXAS ATTORNEY GENERAL |
| Texas Baptists Christian Life Commission<br>Texas Catholic Conference of Bishops<br>Archbishop Joseph A. Fiorenza<br>Rabbi Samuel E. Karff<br>The Right Reverend C. Andrew Doyle<br>Reverend Michael Rinehart | Jonathan Marcus<br>Paul M. Kerlin<br>SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP |

/s/  Alec Karakatsanis
ALEC KARAKATSANIS

- iii -

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ...........................................................................v

INTRODUCTION .......................................................................................1

BACKGROUND ........................................................................................1

ARGUMENT ............................................................................................4

I.   WELL-ESTABLISHED EQUITABLE PRINCIPLES REQUIRE VACATUR
     OF AN ADVERSE JUDGMENT THAT A LOSING PARTY IS UNABLE
     TO CHALLENGE DUE TO THE OPPOSING PARTY'S UNILATERAL
     ACTION ..........................................................................................4

II.  EQUITY REQUIRES VACATUR OF THE MOTIONS PANEL'S STAY
     OPINION ........................................................................................5

CONCLUSION ..........................................................................................9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AMA Discount, Inc. v. Seneca Specialty Insurance Co.*, 697 F. App'x 354 (5th Cir. 2017) ...................................................................................7

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)................................5

*Azar v. Garza*, 138 S. Ct. 1790 (2018) ..................................................................5, 8

*Camreta v. Greene*, 563 U.S. 692 (2011) ..........................................................4, 7, 8

*Daves v. Dallas County*, ___ F. Supp. 3d ___, 2018 WL 4510136 (N.D. Tex. Sept. 20, 2018) .................................................................................8

*Little v. Frederick*, 2018 WL 6036911 (W.D. La. Aug. 28, 2018)...........................8

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997) ................................6

*Northshore Development, Inc. v. Lee*, 835 F.2d 580 (5th Cir. 1988) .......................8

*ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ..............................................3

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) ..................................1, 2

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009) ......................5

*Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) ...........................................5

*Trevino v. Davis*, 861 F.3d 545 (5th Cir. 2017)......................................................6

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).................................................................................................1, 4, 5

*United States v. Bear Marine Services*, 696 F.2d 1117 (5th Cir. 1983)...................7

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ....................................4, 6

*Whole Woman's Health v. Cole*, 790 F.3d 563 (5th Cir. 2015)...............................6

## INTRODUCTION

Appellees move this Court to vacate the motions panel's stay opinion in this appeal. Vacatur is warranted because after the motions panel granted a stay pending appeal, the individuals who were appellants at the time (i.e., the ones who sought the stay) were voted out of office, and yesterday their successors withdrew the appeal. These circumstances, while unusual, are akin to a case that becomes moot while on appeal—which requires vacatur of the district-court opinion "when mootness results from unilateral action of the party who prevailed below," *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994). Similarly here, the now-ousted appellants "prevailed" in securing the stay (and more importantly the stay opinion), and the new appellants' unilateral action has now deprived appellees of the opportunity to have the adverse stay opinion set aside by a merits panel. Equity thus requires vacatur of the stay opinion.

Appellants do not oppose this motion.

## BACKGROUND

This is the second appeal in this litigation. Like the first appeal, this one challenges a preliminary injunction prohibiting Harris County's elected criminal judges from authorizing bail practices that violate the Fourteenth Amendment. In the prior appeal, this Court "largely affirmed the district court's determinations that constitutional violations occurred." *ODonnell v. Harris County*, 892 F.3d 147, 163

- 1 -

(5th Cir. 2018) (opinion on rehearing). In particular, this Court held that wealth-based detention resulting from Harris County's use of secured bail triggers "heightened scrutiny" under the Fourteenth Amendment. *Id.* at 161. It also affirmed the district court's factual findings that Harris County "failed to establish any 'link between financial conditions of release and appearance at trial or law-abiding behavior before trial,'" and accordingly concluded that "although the County had a compelling interest in the assurance of a misdemeanor detainee's future appearance and lawful behavior, its policy was not narrowly tailored to meet that interest." *Id.* at 162. This Court therefore held that "Harris County's use of secured bail violated equal protection." *Id.* at 162-163.

This Court, however, vacated the preliminary injunction, deeming it "overbroad." *ODonnell*, 892 F.3d at 163. The case was remanded for the district court to "craft a … more finely tuned" injunction. *Id.* at 164.

On remand the district court issued a narrower preliminary injunction. ROA.11878-11910. The court ruled that, under *ODonnell*, wealth-based detention prior to an individualized bail hearing that results from Harris County's use of secured bail is unconstitutional. It thus ordered defendants to permit release on unsecured bail until the individualized hearing, at which point defendants could try to show that the wealth-based detention of that individual was necessary.

- 2 -

Appellants—who are fourteen of the sixteen elected judges responsible for misdemeanor bail policy in Harris County—again appealed and sought an emergency stay pending appeal. ECF 00514574856, *ODonnell v. Goodhart*, No. 18-20466 (5th Cir. July 27, 2018). Less than three weeks later, following abbreviated briefing and an oral argument, a divided motions panel granted that stay in a published opinion. 900 F.3d 220 (Aug. 14, 2018) ("Stay Ruling"). The motions panel concluded that prehearing release violated *ODonnell*'s mandate and was not required under the Fourteenth Amendment.

Following the Stay Ruling, the appeal was fully briefed—with appellees devoting a significant portion of their briefing to why the Stay Ruling fundamentally misread *ODonnell* and was irreconcilable with that decision. *See* Appellee Br. 25-32, 38-45, *ODonnell v. Goodhart*, No. 18-20466 (5th Cir. Oct. 24, 2018), ECF 00514696493. (Appellees recognized, of course, that any errors by the motions panel were understandable given that its ruling was made on a highly expedited basis and with abbreviated briefing.)

On November 6, 2018, the fourteen judges who filed this appeal and sought the stay lost re-election. And on January 7, 2019, their successors withdrew this appeal, reflecting their agreement with the revised preliminary injunction (as it is consistent with their policy views).

- 3 -

# ARGUMENT

**I.    WELL-ESTABLISHED EQUITABLE PRINCIPLES REQUIRE VACATUR OF AN ADVERSE JUDGMENT THAT A LOSING PARTY IS UNABLE TO CHALLENGE DUE TO THE OPPOSING PARTY'S UNILATERAL ACTION**

In *U.S. Bancorp*, the Supreme Court explained that the longstanding practice of vacating the judgment below if a case becomes moot on appeal reflects an "equitable tradition of vacatur."  513 U.S. at 25.  Under that tradition, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."  *Id.*  "The equitable remedy of vacatur ensures that 'those who have been prevented from obtaining the review to which they are entitled are not treated as if there had been a review.'"  *Camreta v. Greene*, 563 U.S. 692, 712 (2011) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).

The equitable interests explicated in these cases extend beyond fairness in the specific litigation.  Another "point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by … a 'preliminary' adjudication."  *Camreta*, 563 U.S. at 713 (quoting *Munsingwear*, 340 U.S. at 40-41).  "Vacatur then rightly strips the decision below of its binding effect and clears the path for future relitigation."  *Id.* (citations and quotation marks omitted).

- 4 -

Ordinarily, vacatur is not automatic, as equitable factors may counsel otherwise. *See U.S. Bancorp*, 513 U.S. at 23-25. This Court has accordingly held that it should "look at the equities of the individual case" to determine whether to vacate. *Staley v. Harris County*, 485 F.3d 305, 312 (5th Cir. 2007) (en banc). Both the Supreme Court and this Court, however, have identified situations in which vacatur is *required*. Of relevance here, "[v]acatur is in order when mootness occurs through … the unilateral action of the party who prevailed in the lower court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71-72 (1997) (quotation marks omitted); *accord Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 n.15 (5th Cir. 2009) ("When … a party who prevailed below makes the case moot by his unilateral action, a 'vacatur *must* be granted.'" (emphasis added) (quoting *U.S. Bancorp*, 513 U.S. at 23)), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). The Supreme Court reiterated this point just last Term, explaining that "[i]t would certainly be a strange doctrine that would permit a plaintiff to obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment." *Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018) (per curiam).

## II. EQUITY REQUIRES VACATUR OF THE MOTIONS PANEL'S STAY OPINION

The cases just discussed require vacatur of the Stay Ruling.

- 5 -

To begin with, the posture here is very much akin to mootness pending appeal, because this Court's precedent treats the relationship between a merits panel and a motions panel as analogous to that of an appellate court and a district court. For example, "a merits panel is not bound by a motions panel," *Trevino v. Davis*, 861 F.3d 545, 548 n.1 (5th Cir. 2017), just as it is not bound by the ruling below. To the contrary, just as a merits panel reviews and may overturn the district court's ruling, "a panel hearing the merits of an appeal may *review* a motions panel ruling, *and overturn it where necessary*." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 704 (5th Cir. 1997) (emphasis added), *abrogated on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

There are multiple reasons why the motions panel is treated like a district court in this regard. For one thing, just as a district-court judgment is "only preliminary" "in the statutory scheme," *Munsingwear*, 340 U.S. at 40, a motions panel makes only a preliminary assessment of the merits (i.e., likelihood of success). For another, the motions panel must act "during an abbreviated proceeding," *Whole Woman's Health v. Cole*, 790 F.3d 563, 580 (5th Cir.), *modified on other grounds*, 790 F.3d 598 (5th Cir. 2015), *rev'd and remanded on other grounds sub nom. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)—whereas "[t]he merits panel has the benefit of full briefs … oral argument … [and] the opportunity to consider events that took place after the motions panel"

- 6 -

ruled, *United States v. Bear Marine Services*, 696 F.2d 1117, 1119 (5th Cir. 1983); *cited by AMA Discount, Inc. v. Seneca Specialty Insurance Co.*, 697 F. App'x 354, 355 (5th Cir. 2017) (per curiam). "With this perspective, the merits panel may conclude that the initial decision … was, or was later rendered, improvident." *Bear Marine*, 696 Fed. at 1119.

The analogy between a district-court judgment and a motions-panel ruling extends to the equitable principles that, as discussed, require vacatur. Just as mootness pending appeal deprives the losing party of its right to have an adverse district-court judgment overturned, so the unilateral withdrawal of the appeal has deprived appellees of their only opportunity to have the adverse motions-panel ruling set aside—an opportunity they fully sought to avail themselves of by devoting much of their merits brief to addressing the motions panel's errors. Because appellees "have been prevented from obtaining the review to which they are entitled," "vacatur [is necessary to] ensure[ that they] are not treated as if there had been a review." *Camreta*, 563 U.S. at 712 (quotation marks omitted).

Any other result would have perverse implications. If vacatur is not required here, an appellant could—after successfully acquiring a stay pending appeal with a favorable opinion—strategically withdraw the appeal and yet benefit from the appeal by leveraging that opinion in future litigation. As the Supreme Court

recently recognized, such a "strange" result cannot be countenanced. *Azar*, 138 S. Ct. at 1792.

Finally, another equitable rationale for vacatur—to "prevent an unreviewable decision from spawning any legal consequences," *Camreta*, 563 U.S. at 713 (quotation marks omitted)—is particularly salient here because the Stay Ruling is published. In this circumstance, there is a credible risk that courts, especially district courts in this circuit, will rely on the Stay Ruling, notwithstanding the fact that "a motions panel decision is not binding precedent," *Northshore Development, Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988). Indeed, undersigned counsel are litigating multiple cases in this circuit on similar issues, and district courts are already referring to the Stay Ruling. *See, e.g.*, *Daves v. Dallas County*, ___ F. Supp. 3d ___, 2018 WL 4510136, at *1 (N.D. Tex. Sept. 20, 2018) (citing *ODonnell* and the Stay Ruling as having equal precedential weight); *Little v. Frederick*, 2018 WL 6036911, at *11 n.112 (W.D. La. Aug. 28, 2018) (citing portions of the Stay Ruling that appellees contend are incorrect), *report and recommendation adopted*, 2018 WL 5993879 (W.D. La. Nov. 14, 2018). Vacatur is accordingly required here to ensure that "no party is harmed by … a preliminary adjudication." *Camreta*, 563 U.S. at 713 (quotation marks omitted).

# CONCLUSION

The Court should vacate the Stay Ruling.

January 8, 2019                                   Respectfully submitted,

                                                 /s/  Alec Karakatsanis

SETH P. WAXMAN                                   ALEC KARAKATSANIS
DANIEL S. VOLCHOK                                    *Counsel of Record*
ARPIT K. GARG                                    ELIZABETH ROSSI
WILMER CUTLER PICKERING                          CHARLES GERSTEIN
   HALE AND DORR LLP                             CIVIL RIGHTS CORPS
1875 Pennsylvania Avenue N.W.                    910 17th Street N.W., Second Floor
Washington, D.C.  20006                          Washington, D.C.  20006
(202) 663-6000                                   (202) 681-2721
                                                 alec@civilrightscorps.org

NEAL S. MANNE
LEXIE G. WHITE                                   SUSANNE PRINGLE
JOSEPH S. GRINSTEIN                              TEXAS FAIR DEFENSE PROJECT
SUSMAN GODFREY LLP                               314 E. Highland Mall Boulevard
1000 Louisiana Street, Suite 5100               Suite 108
Harris County, TX  77002                         Austin, TX  78752
(713) 651-9366                                   (512) 637-5220

MICHAEL GERVAIS
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
(310) 789-3130

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure (FRAP) 27(d)(2)(A) and Circuit Rule 27.4 because—according to the word-count feature of the word-processing program with which it was prepared (Microsoft Word)—the motion contains 1,811 words, excluding the portions exempted by FRAP 32(f). Pursuant to FRAP 27(d)(1)(E) and Circuit Rule 27.4, this motion complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ Alec Karakatsanis
ALEC KARAKATSANIS

**CERTIFICATE OF SERVICE**

I electronically filed the foregoing on January 8, 2019, using the Court's appellate CM/ECF system, which effected service on all counsel of record.

/s/ Alec Karakatsanis
ALEC KARAKATSANIS

United States District Court
Southern District of Texas

**ENTERED**

November 21, 2019

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-01414 |
| | ) | (Consolidated Class Action) |
| HARRIS COUNTY, TEXAS, et al. | ) | The Honorable Lee H. Rosenthal |
| | ) | U.S. District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CONSENT DECREE**

### I.    INTRODUCTION

1.   This Consent Decree is entered into between the Plaintiff class, represented by named Plaintiffs Maranda Lynn ODonnell, Robert Ryan Ford, and Loetha McGruder (collectively, the "Plaintiffs"), and Harris County, Texas ("County"), the Harris County Sheriff ("Sheriff"), and the Harris County Criminal Court at Law Judges ("CCCL Judges"), (collectively, the "Defendants") (with Plaintiffs and Defendants collectively referred to as the "Parties").

2.   The Parties jointly enter into this Consent Decree to resolve Plaintiffs' claims and remedy the constitutional violations challenged in this litigation.[1] This Consent Decree is intended to create and enforce constitutional and transparent pretrial practices and systems that protect the due process rights and equal protection rights of misdemeanor arrestees.

3.   This litigation affirmed that, without the necessary safeguards, the use of secured money bail can deprive individuals of their constitutional rights to due process and equal protection, impose high public costs, and "exacerbate the racial disparities in pretrial detention and posttrial outcomes."[2] This litigation also affirmed that an up-front payment of money bail does not meaningfully promote public safety or appearance in court.[3]

---

[1] *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1166–68 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018).

[2] *Id.* at 1122 (pretrial detention of defendants who cannot pay secured money bail has been shown in research to correlate "at statistically significant levels with recidivism," result in "cumulative disadvantage," exacerbate poverty, and exacerbate racial disparities in detention and post-trial outcomes).

[3] The Court found that "[s]ecured money bail in Harris County does not meaningfully add to assuring misdemeanor defendants' appearance at hearings or absence of new criminal activity during pretrial release." *Id.* at 1119–20.

1

4.  On September 1, 2016, Plaintiffs filed an amended complaint under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to remedy Defendants' unconstitutional misdemeanor bail policies and practices, including equal protection, substantive due process, and procedural due process violations. Specifically, Plaintiffs' amended complaint challenged the County's policy and practice of detaining individuals arrested for misdemeanor offenses due solely to their inability to make a monetary payment. When Plaintiffs sued, they challenged Defendants' policies and practices of routinely detaining indigent, presumptively innocent misdemeanor arrestees for days or weeks before trial solely because they were unable to pay financial conditions of release and without an individualized finding that detention served any purpose, let alone a finding that detention was necessary because less-restrictive alternative conditions of release were unavailable, and without providing the procedural due process protections required to ensure the accuracy of any such finding.[4] *See infra* Section II.

5.  On April 28, 2017, the Court granted class certification,[5] and issued a 193-page preliminary injunction decision with extensive factual findings based on an eight-day evidentiary hearing, as well as voluminous records from years of misdemeanor cases, expert testimony, video evidence of bail proceedings, and numerous briefs. On the basis of its factual findings, the Court held that "Harris County's [bail] policy and practice violates the Equal Protection and Due Process Clauses of the United States Constitution."[6]

6.  The Court's initial preliminary injunction order went into effect on June 6, 2017.[7] Defendants appealed the Court's preliminary injunction order in the Fifth Circuit, which upheld the Court's factual findings on June 1, 2018.[8]

## II.   FACTUAL FINDINGS

7.  This Court made the following findings of fact,[9] which the Fifth Circuit affirmed:

---

[4] First Amended Complaint, *ODonnell v. Harris Cty.,* 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 54

[5] Memorandum and Order Certifying Class, *ODonnell v. Harris Cty.,* 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 303

[6] *Id.* at 1060; *id.* at 162 n.99 ("The evidence here shows tens of thousands of constitutional violations.").

[7] Notice of Fifth Circuit Court of Appeals' Denial of Defendants' Motion to Stay the Preliminary Injunction Pending Appeal, *ODonnell v. Harris Cty.,* 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 339.

[8] *ODonnell v. Harris Cty.,* 892 F.3d 147 (5th Cir. 2018).

[9] Except where noted below in footnote 56, these findings were recounted in the Court's "findings of fact." *ODonnell,* 251 F. Supp. 3d at 1060–1133 (Part I of the Court's opinion). Throughout the Consent Decree, in the citations to the Court's opinion, the Parties omit internal citations to evidence cited in the Court's opinion. In footnote 56, the parties quote from a transcript, a brief, and an expert report that set forth arguments offered by Defendants that the Court rejected in its "findings of fact."

a. At the start of this litigation, Harris County had "a consistent and systematic policy and practice of imposing secured money bail as de facto orders of pretrial detention in misdemeanor cases."[10]

b. Harris County's "de facto detention orders effectively operate only against the indigent, who would be released if they could pay at least a bondsman's premium, but who cannot. Those who can pay are released, even if they present similar risks of nonappearance or of new arrests."[11]

c. Harris County's "de facto detention orders are not accompanied by the protections federal due process requires for pretrial detention orders."[12]

d. "Harris County has an inadequate basis to conclude that releasing misdemeanor defendants on secured financial conditions is more effective to assure a defendant's appearance or law-abiding behavior before trial than release on unsecured or nonfinancial conditions, or that secured financial conditions of release are reasonably necessary to assure a defendant's appearance or to deter new criminal activity before trial."[13]

e. Harris County's bail system "detains 40 percent of all those arrested only on misdemeanor charges, many of whom are indigent and cannot pay the amount needed for release on secured money bail."[14] For decades, Harris County used a secured bail schedule to determine conditions of release.[15]

f. The bail schedule was promulgated by the County Criminal Court at Law Judges, sitting *en banc* and voting by two-thirds majority.[16] Within hours of an arrest for a misdemeanor, an Assistant District Attorney makes a charging decision and assigns a bail amount based on the CCCL Judges' bail schedule, which considers only the arrestee's then-current charge and criminal history.[17] Once the case is paper-ready, a misdemeanor defendant with access to enough money can pay the amount required for

---

[10] *Id.* at 1059.

[11] *Id.* at 1060.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 1058.

[15] *See id.* at 1072 (CCCL Judges implemented and maintained a bond schedule for all misdemeanor offenses following entry of the Roberson consent decree in 1987); *see also id.* at 1100-01 ("The court finds and concludes that in the typical case, Hearing Officers set secured money bail as a condition of detention operating only against those who are indigent and cannot pay the bail, rather than as a mechanism for pretrial release.").

[16] *Id.* at 1086.

[17] *Id.* at 1088.

the payment remain in custody and are transferred to and booked into the Harris County Jail, if they were not taken there directly.[19]

g. At the Harris County Jail, arrestees were taken to a room in the jail to appear by video at a legal proceeding during which a Harris County Criminal Law Hearing Officer determined probable cause for warrantless arrests and addressed bail.[20] "Hearings typically lasted one to two minutes per arrestee. During this brief period, the Assistant District Attorney reads the charge, and the Hearing Officer determines probable cause and sets bail."[21] "Defendants almost never have counsel at the probable cause and bail-setting hearing. Those who are indigent have not yet had counsel appointed. Those who can afford counsel have either paid their bonds and been released or have not been able to arrange their counsel's presence."[22] "Defendants who try to speak are commanded not to, shouted down, or ignored."[23] The Hearing Officers "do not make written findings or issue reasoned opinions explaining why they set bail on a secured or unsecured basis, or why they select the bail amount imposed."[24]

h. Hearing Officers adhered to the bail schedule in 88.9 percent of misdemeanor cases.[25] When Hearing Officers did change the bail amount, "they raise it about 67 percent of the time."[26]

i. The Court found "little to no credibility in the Hearing Officers' claims of careful case-by-case consideration" of conditions of release other than the prescheduled money bail amounts.[27] The Court further found that the Hearing Officers set secured money bail intending to detain arrestees, stating: "The Hearing Officers' testimony that they do not 'know' whether imposing secured money bail will have the effect of detention in

---

[18] *See id.* at 1088 (regarding prompt release); *id.* at 1091 ("Arrestees who do not pay for release or obtain release on personal bond by early presentment at the City Jail are taken to and booked in the Harris County Jail."); *id.* at 1124 ("Those who can pay secured bonds are released within hours of arrest.").

[19] *See id.* at 1091 ("Arrestees who do not pay for release or obtain release on personal bond by early presentment at the City Jail are taken to and booked in the Harris County Jail"), and *id.* at 1124 ("Those who can pay secured bonds are released within hours of arrest").

[20] *Id.* at 1092.

[21] *Id.*

[22] *Id.* at 1093.

[23] *Id.* at 1099 & n.48.

[24] *Id* at 1093.

[25] *Id.* at 1095 & n. 42.

[26] Id. at 1096.

any given case, [] and their testimony that they do not intend that secured money bail have that effect, is not credible."[28]

j.  "Hearing Officers treat the bail schedule, if not as binding, then as a nearly irrebuttable presumption in favor of applying secured money bail at the prescheduled amount. Amounts that deviate from the schedule are treated as 'incorrect,' and requests for a personal bond, if not denied outright, are deferred until the County Judge holds a later hearing. Hearing Officers routinely adjust initial bail settings to conform to, not to deviate from, the bail schedule. Defendants who try to speak are commanded not to, shouted down, or ignored."[29]

k.  "[I]n the typical case, Hearing Officers set secured money bail as a condition of detention operating only against those who are indigent and cannot pay the bail, rather than a mechanism for pretrial release. In the vast majority of cases, the Hearing Officers use their discretion to consider the five Article 17.15 factors to almost automatically impose the prescheduled secured bail amounts, notwithstanding Pretrial Services recommendations to release defendants on unsecured personal bonds and notwithstanding clear evidence of indigence. Hearing Officers make these decisions in brief, uncounseled hearings at which the defendants are actively discouraged from speaking, and no reviewable findings are made on the record."[30]

l.  "Before the most recent change to the County Rules of Court in February 2017, any 'incarcerated person' who remained in detention after the probable cause hearing would be scheduled to appear" the next business day before a County Court at Law Judge.[31] However, "more than 26,000 misdemeanor arrestees—over 51 percent of those still detained—waited more than 48 hours after their arrests before their first appearances before a County Criminal Court at Law Judge.[32] Over 6,800 people—just over 13 percent of the detained population—were confined longer than 96 hours after arrest before their first appearance."[33] At this court appearance, arrestees were kept in a holding cell outside the courtroom unless they agreed to plead guilty.[34] "Defendants who did not plead guilty but wanted to contest their bail settings depended on court-appointed counsel filing a formal motion for bail review. That motion would not be

---

[28] *Id.*

[29] *Id.* at 1099 & nn. 45–48.

[30] *Id.* at 1100–01.

[31] *Id.* at 1113; *id.* ("The February 9, 2017 amendment took effect on March 9, 2017. The amended County Rules of Court require 'any arrestee that is booked into the Harris County Jail' to be presented at a 'Next Business Day Setting,' even if that arrestee is released from custody between booking and the next business day.").

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1101 & 1105.

considered until a later hearing, usually held one or two weeks later. The only way to gain release earlier was to pay the bail or to plead guilty."[35]

m.  The Court credited testimony by prosecutor JoAnne Musick, who testified based on her lengthy experience as both a prosecutor and a criminal defense attorney, that many misdemeanor defendants "don't really want to plead guilty, but sometimes they want to get out of jail, return to family, return to work, what have you. So they will inquire about a plea so that they can get out."[36] The Court cited testimony by Judge Darrell Jordan (Presiding Judge of the misdemeanor courts at the time this Consent Decree is entered) "that it was common to have misdemeanor clients who professed their innocence and had valid defenses to nevertheless plead guilty in order to be released much earlier than if they sought an unsecured bond based on indigence or challenged the prosecution's case."[37] The Court concluded: "Those who can pay secured bonds are released within hours of arrest. Those who cannot are detained for days or weeks and face intense pressures to accept a guilty plea to end their pretrial detentions."[38]

n.  A further "indication that misdemeanor defendants abandon valid defenses and plead guilty to obtain faster release than if they contested their charges is a report from the National Registry of Exonerations showing that Harris County ... led the United States in the total number of criminal exonerations" in 2015 and 2016.[39] Most of Harris County's exonerations occurred in "misdemeanor drug offenses that evidence samples conclusively prove the defendant did not commit. But rather than wait for lab tests that may exonerate them, misdemeanor arrestees who cannot pay for release before their first appearances plead guilty in order to end their pretrial detention and be released."[40]

o.  Additionally, "uncontroverted and reliable testimony" showed that "from 2015 to early 2017, for misdemeanor arrestees who did not bond out—40 percent of all misdemeanor arrestees—the median time between arrest and case disposition was 3.2 days. Of those, 72 percent resolved their cases within 7 days; 90 percent resolved their cases within 30 days. Over the same period, for misdemeanor arrestees released on bond (either secured or unsecured)—60 percent of misdemeanor arrestees—the median time to disposition was 120 days. Of those, 5 percent resolved their cases within 7 days; 13 percent resolved their cases within 30 days."[41] "Of the 84 percent of detained arrestees who plead guilty at their first appearance, 67 percent are released within a day. About 83 percent are released within five days of their first

---

[35] *Id.* at 1101.

[36] *Id.* at 1104.

[37] *Id.* at 1107.

[38] Id. at 1124.

[39] *Id.* at 1105.

[40] *Id.*

[41] *Id.*

Case: 26-20337   Document: 2-1   Page: 347   Date Filed: 06/25/2026

appearance."[42] The Court found these figures to be "consistent with, and support, the plaintiffs' theory that for misdemeanor defendants unable to pay secured money bail, Harris County maintains a 'sentence first, conviction after' system that pressures misdemeanor defendants to plead guilty at or near their first appearances because that was the only way to secure timely release from detention."[43]

p. Harris County's "custom and practice" of imposing money bonds on misdemeanor arrestees regardless of their ability to pay meant that "40 percent of all Harris County misdemeanor arrestees every year are detained until case disposition. Most of those detained—around 85 percent—plead guilty at their first appearance before a County Judge. Reliable and ample record evidence shows that many abandon valid defenses and plead guilty in order to be released from detention by accepting a sentence of time served before trial. Those detained seven days following a bail-setting hearing are 25 percent more likely to be convicted, 43 percent more likely to be sentenced to jail, and, on average, have sentences twice as long as those released before trial."[44]

q. A peer-reviewed study led by Paul Heaton ("the Heaton study") and found by the Court to be "one of the most sophisticated and rigorous" regarding "bail and pretrial detention in misdemeanor cases to date" studied the misdemeanor bail system in Harris County and determined that still-detained defendants were 25% more likely to be convicted and 43% more likely to be sentenced to jail than defendants who were able to pay money bail and gain release.[45] Individuals detained at disposition "received sentences that were nine days longer on average, more than double the average sentence of similar, released defendants."[46] The study concluded that "the fact of detention itself, rather than the defendant's charge, criminal history or other variables, causally affects these outcomes."[47]

r. "Recent studies of bail systems in the United States have concluded that even brief pretrial detention because of inability to pay a financial condition of release increases the likelihood that misdemeanor defendants will commit future crimes or fail to appear at future court hearings."[48] One "landmark study" of Colorado practices found that "unsecured appearance bonds are equally effective as secured money bail, at both assuring appearance at trial as well as law-abiding behavior before trial."[49] The Heaton study found that, had Harris County given early release on unsecured personal bonds

[42] *Id.* at 1114.

[43] *Id.* at 1105.
[44] *Id.* at 1130-31.

[45] *Id.* at 1105-06 (citing Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711 (2016)).

[46] *Id.* at 1106.

[47] *Id.*

[48] *Id.* at 1121.

[49] *Id.* at 1120.

to the lowest-risk misdemeanor arrestees between 2008 and 2013, "40,000 more people would have been released pretrial; nearly 6,000 convictions and 400,000 days in jail at County expense would have been avoided; those released would have committed 1,600 fewer felonies and 2,400 fewer misdemeanors in the eighteen months following pretrial release; and the County would have saved $20 million in supervision costs alone"[50] "Sheriff Gonzalez credibly testified [at the preliminary injunction hearing] that the research showing the 'criminogenic' effects of even a short period of pretrial detention and the high public costs of extended detention is consistent with his own experience as a Harris County law-enforcement officer."[51]

s. "Secured money bail in Harris County does not meaningfully add to assuring misdemeanor defendants' appearance at hearings or absence of new criminal activity during pretrial release."[52]

t. "Harris County does not track the comparative failure-to-appear or new-criminal-activity rates of misdemeanor defendants released on different types of bonds. Harris County has not coded, collected, or analyzed data on the different types of pretrial misconduct. It cannot, as other jurisdictions have, determine whether new misconduct by those released on surety bond or on personal bond is violent or is the type of nonviolent offense for which release on unsecured personal bond is presumed. . . . [F]or now, the County is imposing secured money bail, usually at prescheduled amounts, for almost all misdemeanor defendants, with no ability to tell how effective this type of bond is to prevent failures to appear or new criminal activity compared to release on unsecured or nonfinancial conditions."[53]

u. "Harris County does keep, and was able to produce, data coded as 'bond forfeiture,' 'bond revocation,' and 'bond surrender.' But this data is not consistently kept or recorded. Some County Judges 'forfeit' a bond after a single failure to appear. Others reset hearings and do not record a bond as forfeited until after multiple failures to appear. A single entry in the 'forfeiture' data may mean one failure to appear or many. A bond may be revoked because a defendant failed a drug test, even if the defendant appeared at every court setting and is never arrested or charged with another offense, or revoked because the defendant failed to appear. Similarly, one 'revocation' entry may indicate one failure to appear, many, or none at all, and may or may not indicate new criminal activity. Commercial sureties can ask for bond surrender for a variety of reasons. Judges may rely on a variety of factors to grant or deny the request."[54]

---

[50] *Id.* at 1122.

[51] *Id.* at 1122.

[52] *Id.* at 1119-20.

[53] *Id.* at 1117–18.

[54] *Id.* at 1118.

v.  Judge Paula Goodhart, who was Presiding Judge of the misdemeanor courts at the time of the preliminary injunction hearing in this lawsuit, "testifying on behalf of herself and County [Criminal Court at Law] Judge Margaret Harris," another misdemeanor judge who was in office when the lawsuit was filed until January 2019, "that no Harris County policymaker, so far as she is aware, has examined Harris County data to compare pretrial failure-to-appear rates or bond forfeiture rates between those released on secured or unsecured financial conditions. Her impression was confirmed by Director of Pretrial Services Kelvin Banks and the Hearing Officers."[55]

w.  "The court finds and concludes that the Harris County policymakers with final authority over the County's bail system have no adequate or reasonable basis for their belief that for misdemeanor defendants, release on secured money bail provides incentives for, or produces, better pretrial behavior than release on unsecured or nonfinancial conditions. The policymakers are apparently unaware of important facts about the bail-bond system in Harris County, yet they have devised and implemented bail practices and customs, having the force of policy, with no inquiry into whether the bail policy is a reasonable way to achieve the goals of assuring appearance at trial or law-abiding behavior before trial. In addition to the absence of any information about the relative performance of secured and unsecured conditions of release to achieve these goals [of assuring appearance at trial or law-abiding behavior before trial], the policymakers have testified under oath that their policy would not change despite evidence showing that release on unsecured personal bonds or with no financial conditions is no less effective than release on secured money bail at achieving the goals of appearance at trial or avoidance of new criminal activity during pretrial release."[56]

x.  Requiring payment for release from jail after arrest "exacerbates and perpetuates poverty because of course only people who cannot afford the bail assessed or to post a bond—people who are already poor—are detained in custody pretrial. As a consequence, they often lose their jobs, may lose their housing, be forced to abandon their education, and likely are unable to make their child support payments."[57]

y.  The County's practices had disparate racial and ethnic effects. "Money-based pretrial systems exacerbate the racial disparities in pretrial detention and posttrial outcomes. An amicus filing by Harris County Commissioner Rodney Ellis and the NAACP Legal Defense and Educational Fund notes that African–Americans make up 18 percent of Harris County's adult population but 48 percent of the Harris County Jail's adult population. A 2011 study found that in Harris County, 70 percent of white misdemeanor defendants obtain early pretrial release from detention, but only 52

---

[55] *Id.* at 1102-03.

[56] *Id.* at 1103.

[57] *Id.* at 1122.

percent of Latino misdemeanor defendants and 45 percent of African–American misdemeanor defendants do so."[58]

z.   The Court rejected claims by the original Defendants[59] that "virtually no" arrestee is detained "'because of' an inability to pay secured money bail,"[60] and concluded that "[t]he record provides no support for defense counsel's argument that some defendants choose [to] remain detained. . . . The credible testimony . . . is that no one remains in the Harris County Jail out of a desire to be there."[61]

8.   On the basis of these and its other findings, the Court held that the County's bail practices caused "irreparable" harm to "tens of thousands" of indigent misdemeanor arrestees every year.[62] "The record evidence shows that the plaintiffs' injury is irreparable. Misdemeanor

---

[58] Id.

[59] On February 8, 2017, Harris County argued through its privately retained lawyers that "[t]here are individuals . . . [t]hey do want to go to the jail and stay there, if it's a cold week," and "there are individuals who believe they have guilt." Transcript of 2/8/17 Hearing at 20–22, ODonnell v. Harris Cty., 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414) (oral argument by counsel for Harris County and the Hearing Officers at hearing on Defendants' Motion to Stay Preliminary Injunction Hearing); id. at 20 (THE COURT: "[I]t is uncomfortably reminiscent of a historical argument that used to be made that people enjoyed slavery, because they were afraid of the alternative. And there may have been individual cases in which that fear was tremendously powerful and real, but you didn't see a lot of people running toward enslavement. You don't see a lot of people volunteering for jail in order to get warm."). On November 9, 2016, the original Fifteen Defendant Judges asserted similarly that an arrestee might be in the jail because she or he "wishes to remain in custody (e.g., the Harris County jail provides a shelter, multiple meals per day, and medical services; the accused is guilty and is accruing credit towards an expected early, reasonable plea bargain)." Brief in Support of the Fifteen County Criminal Court at Law Judges' Motion to Dismiss at 28, ODonnell v. Harris Cty., 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 80. At the preliminary injunction hearing, all Defendants offered testimony from an expert witness who asserted, "In the Harris County Jail, people are rarely held if indigent." Defendants Exhibit 28 at 45 (Expert Report of Dr. Robert Morris), ODonnell v. Harris Cty., 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414).
  The Parties stipulate that the legal positions taken by the original Defendants differ significantly from those of the current Defendants who are entering into this Consent Decree. The Court, too, recognized that the elections in 2016 and 2018 changed the political landscape in such a way as to make an agreed resolution of the lawsuit a realistic possibility. For example, following the election of Defendant Sheriff Ed Gonzalez, County Criminal Court at Law Judge Number 16 Darrell Jordan, and District Attorney Kim Ogg in November 2016, the Court noted that "there is a new sheriff in town" and a "new D[istrict] A[ttorney]" who might have "a somewhat more open mind" about the legal issues in the case and how to resolve them. Transcript of 11/28/16 Hearing at 139-141, ODonnell v. Harris Cty., 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414); id. at 7-8 ("The sheriff has already made clear, sheriff elect, that he intends to negotiate. . . . [W]e have a number of people whose political approach to these issues, not legal, political, may influence the shape of the issues that are before me for legal analysis and decision under the applicable law. . . . I need to understand the best way, from my case management view, to take advantage of a political willingness of the policymakers to fashion a solution rather than have one imposed upon them."). Following the elections in November 2018, Defendants sought, and the Court granted, a stay of litigation "to allow the parties to discuss resolving the case without continued litigation based on the change in the political context." Transcript of 11/13/18 Hearing at 5, ODonnell v. Harris Cty., 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414).

[60] ODonnell, 251 F. Supp. 3d at 1067; id. at 1117 (finding Defendants' expert's analysis "critically flawed" and "not entitled to any weight" because he "excluded indigent defendants from his survey to conclude that, of the misdemeanor defendants surveyed, none was detained because of indigence.").

[61] Id. at 1109 n.57.

[62] Id. at 1150 n.99 ("The evidence here shows tens of thousands of constitutional violations."); id. at 1157.

defendants detained before trial face significant pressure to plead guilty, and in fact do so at much higher rates than those released before trial, in order to obtain release. Pretrial detention of misdemeanor defendants, for even a few days, increases the chance of conviction and of nonappearance or new criminal activity during release. Cumulative disadvantages mount for already impoverished misdemeanor defendants who cannot show up to work, maintain their housing arrangements, or help their families because they are detained. This factor weighs strongly in favor of granting the plaintiffs' request for the injunctive relief."[63]

9.  Accordingly, the Court entered a preliminary injunction designed to remedy the constitutional violations that it found.[64] The Court's preliminary injunction went into effect on June 6, 2017.[65]

## III.  PARTIES' INTENT & RECITALS

10. This Consent Decree is tailored to remedy the systemic and longstanding constitutional violations found by the Court in this litigation; to safeguard arrestees' equal protection and due process rights, including the fundamental interest in pretrial liberty and the right against wealth-based detention; to promote court appearance and public safety; to require investments necessary for new systems to function efficiently in a large jurisdiction; and to promote transparency, rigorous analysis, and accountability throughout the pretrial process so that constitutional practices will endure. It is crafted to protect against a reversion to the pre-litigation system of mass, non-individualized pretrial detention of misdemeanor arrestees without lawful justification.[66]

11. To those ends, the Parties have consented to establishing mechanisms for implementation, investment, monitoring, and public understanding of the harms imposed by the County's unconstitutional bail practices—all of which are necessary to make sure that the system does not return to widespread unlawful pretrial detention based solely on access to money.

12. After careful negotiations over a period of months, the Parties have consented to specific measures Defendants will undertake to uphold the due process rights and equal protection rights of indigent misdemeanor arrestees. The Parties agree that the terms of this Consent Decree are intended to implement and enforce fair and transparent policies and practices that will result in meaningful, lasting reform to the County's system of pretrial detention and safeguard against future violations of the rights of indigent misdemeanor arrestees.

---

[63] *ODonnell*, 251 F. Supp. 3d at 1157–58; *see also ODonnell v. Harris County*, 260 F. Supp. 3d 810, 820 (S.D. Tex. May 11, 2017) (referring to these harms as "some of the injuries inflicted on over 100 misdemeanor defendants every day in Harris County").

[64] *Id.* at 1167–68.

[65] Notice of Fifth Circuit Court of Appeals' Denial of Defendants' Motion to Stay the Preliminary Injunction Pending Appeal, *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 339

[66] *ODonnell*, 251 F. Supp. 3d at 1167, 1168.

13. The Parties acknowledge that the CCCL Judges have already taken the important step of amending Local Rule 9, which is intended to safeguard against the unlawful pretrial detention of misdemeanor arrestees and which has resulted in the pretrial release of those arrestees who previously would have been detained pretrial solely because they could not afford to pay secured financial conditions of release and without the substantive findings and procedural safeguards the Constitution requires. Local Rule 9 is memorialized in Section 30.

14. In addition to allocating the necessary resources for full and effective implementation of Local Rule 9, the County is committed to establishing pretrial systems and supports that will facilitate the release of misdemeanor arrestees through the least restrictive means necessary; to collecting and publicly releasing comprehensive pretrial data that will promote meaningful evaluation of the County's pretrial practices, facilitate transparent decision-making, and protect against the development of unwritten customs that do not comply with this Consent Decree; and to rigorously studying its pretrial systems and best practices to inform implementation of cost-effective, nonfinancial programs aimed at achieving misdemeanor arrestees' appearance at trial and law-abiding behavior before trial through the least restrictive means necessary.

15. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and that implementation of this Consent Decree will remedy the constitutional violations identified by the Court and the practices and beliefs contributing to those violations; will avoid prolonged litigation between the parties; will create the support structures necessary to maintain the remedial systems established under this Consent Decree; and is fair, reasonable, and in the public interest.

16. It is therefore ORDERED that the following relief is binding on Defendants, including Harris County, the Harris County Sheriff, , and the CCCL Judges in their policymaking capacity. The injunction covers and is binding on those who are in active concert or participation with the Parties or the Parties' officers, agents, servants, employees, or attorneys.

## IV.  DEFINITIONS & ABBREVIATIONS

17. For purposes of this Consent Decree, the following terms will have the stipulated meanings as follows:

   a.  "Bail hearing" refers to any legal proceeding at which conditions of release are determined, or that might result in pretrial detention or a requirement to pay secured bail as a condition of release, in any Class A or Class B misdemeanor case to be prosecuted in the Harris County Criminal Courts at Law.

   b.  "County" refers to Harris County, Texas, its officers, agents, personnel, and anyone otherwise employed by Harris County.

   c.  "County Criminal Courts at Law," "Criminal Courts at Law," or "CCCL" refers to the Harris County Criminal Courts at Law.

d. "County Criminal Court at Law Judges" or "CCCL Judges" refers to the judges sitting in the Harris County Criminal Courts at Law.

e. "Defendants" refers collectively to Harris County, the Harris County Sheriff, and the Harris County Criminal Court at Law Judges.

f. "Failure to appear" refers to any instance when a misdemeanor arrestee was scheduled to appear in court, the arrestee's appearance was not waived, the arrestee did not physically appear in court, an arrest warrant issued because of the misdemeanor arrestee's nonappearance, and the warrant either (1) was executed by placing the misdemeanor arrestee in custody, or (2) remained outstanding 30 days after issuance and no indication appears in the court record that the misdemeanor arrestee was prevented from appearing in court due to circumstances not in the misdemeanor arrestee's control, as determined by a CCCL Judge.

g. "First appearance" or "first setting" refers to the first scheduled court appearance for a misdemeanor arrestee in a particular case. (The term "misdemeanor arrestee" is defined in Section 17(k).)

h. "Indigent" refers to any misdemeanor arrestee who cannot afford to pay the cost of secured bail or a fee or cost associated with a condition of pretrial release in a case to be prosecuted in the Harris County Criminal Courts at Law without suffering hardship meeting the basic necessities of life, such as food, shelter, clothing, communication, transportation, and medical care, including, but not limited to, anyone who meets one or more of the following criteria:

   i. Is found to be indigent under the indigent defense plan of the Harris County Criminal Courts of Law;

   ii. Is, or has dependents who are, eligible to receive food stamps, Medicaid, Temporary Assistance for Needy Families, Supplemental Security Income, Social Security Disability Income, public housing, or any other federal or state public assistance program based on financial hardship;

   iii. Has a net household income that does not exceed 200% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register;

   iv. Is homeless as that term is defined by federal public health and welfare law found at 42 U.S.C. § 11302; or

   v. Is currently serving a sentence in a correctional institution, is currently residing in a public mental health facility or court-ordered treatment facility, or is subject to a proceeding in which admission or commitment to such a mental health facility is sought.

13

i. "Judicial officer" refers to a Harris County Criminal Court at Law Judge or a Harris County Criminal Court at Law Hearing Officer.

j. "Local Rule 9" or "Rule 9" refers to Rule 9 of the Harris County Criminal Courts at Law Local Rules of Court. The text of "Local Rule 9" is provided in Section 30 of this Consent Decree.

k. "Misdemeanor arrestee" or "arrestee" refers to any person who has been arrested, or against whom a charging instrument has been filed with the Harris County District Clerk, in connection with a Class A or Class B misdemeanor case to be prosecuted in the County Criminal Courts at Law.

l. "Monitor" refers to the Consent Decree Monitor described in Sections 95–96 of this Consent Decree.

m. "Nonappearance" refers to when a misdemeanor arrestee does not appear for a scheduled court appearance and the misdemeanor arrestee's appearance is not waived. An instance of late arrival may not be deemed a "nonappearance" unless the misdemeanor arrestee did not appear in court within one hour of the time set for the misdemeanor arrestee's appearance or by the time the docket (if applicable) has concluded, whichever is later, and the misdemeanor arrestee's appearance was not waived. For purposes of data collection, "nonappearance" is distinct from "failure to appear," which is intended to capture a willful failure to attend court when required.

n. "Private appointed counsel" refers to counsel assigned to represent an indigent misdemeanor arrestee in the Harris County Criminal Courts at Law who is not employed by the Harris County Public Defender's Office.

o. "Public defender" refers to an attorney employed by the Harris County Public Defender's Office.

p. "Public Defender's Office" or "PDO" refers to the Harris County Public Defender's Office.

q. "Regular setting" or "regular appearance" refers to any setting that is not a required appearance for a misdemeanor arrestee. ("Required appearance" is defined in Section 17(r).)

r. "Required setting" or "required appearance" refers to trial settings, bond violation hearings, suppression hearings, or plea settings for any misdemeanor arrestee; or any pretrial hearing before a Harris County Criminal Court at Law Judge in a case where a misdemeanor arrestee has had prior sufficient notice, as required by Section 65(b) of the Consent Decree, that the appearance is required.

s. "Sheriff" refers to the Harris County Sheriff, his or her officers, agents, and personnel, and anyone otherwise employed by the Harris County Sheriff.

14

t. "Support staff" refers to social workers, disposition specialists, caseworkers, mitigation specialists, and/or investigators.

## V. GENERAL PROVISIONS

18. This Consent Decree is intended to create and enforce a constitutional and transparent pretrial release and detention system that safeguards misdemeanor arrestees' equal protection and substantive due process rights, and provides the protections that procedural due process requires; to promote the government's compelling interests in maximizing pretrial liberty, court appearance, and public safety; to ensure public access to information and the transparency necessary for monitoring, evaluation, and public accountability; and to set forth the changes and investments required to ensure that the new policies and practices implemented under this Consent Decree are effective and enduring.

19. In the interest of avoiding a costly and protracted trial, Defendants agree to entry of this Consent Decree by which they are enjoined from engaging in conduct that deprives persons of rights, privileges, or immunities secured or protected by the laws of the United States.

20. This Consent Decree resolves all claims in Plaintiffs' amended complaint filed in this case.

21. This document will constitute the entire integrated Consent Decree agreed to by the Parties. No prior drafts of this Consent Decree or prior or contemporaneous communications, oral or written, about this Consent Decree will be relevant or admissible for purposes of determining the meaning of any provisions of this Consent Decree in any litigation or any other proceeding.

22. This Consent Decree is binding upon all Parties hereto, by and through their officials, officers, agents, assigns, employees, and successors. Defendants must require their officials, officers, employees, agents, assigns, and successors to comply with this Consent Decree. If any Defendants contract with a government agency or entity whose function includes overseeing, regulating, accrediting, investigating, or otherwise reviewing or assuming the operations of Defendants or their officials, officers, agents, assigns, employees, or successors, Defendants agree to ensure these functions are consistent with the terms of this Consent Decree and must incorporate the terms of this Consent Decree into the functions of the government agency or contracting entity as necessary to ensure consistency.

23. This Consent Decree is enforceable only by the Parties. No other person or entity is intended to be a third-party beneficiary of the provisions of this Consent Decree for purposes of any civil, criminal, or administrative action, and accordingly, no other person or entity may assert any claim or right as a beneficiary or protected class under this Consent Decree.

24. This Consent Decree is not intended to limit or expand the right of any person or organization to seek relief against Defendants, or any of Defendants' officials, officers, agents, assigns, employees, or successors, for their conduct; accordingly, it does not alter legal standards governing any such claims by third parties, including those arising from city, state, or federal law. This Consent Decree does not expand, nor will it be construed to expand, the right to

15

Defendants' information or documents such as to be in violation of any federal or state laws regarding the privacy or confidentiality of information.

25. The County is responsible for providing the support and resources necessary to fulfill Defendants' obligations under this Consent Decree, and as otherwise necessary to ensure that the requirements of this Consent Decree are fully implemented and sustained. To meet this requirement, the County may pursue and use grant funding or other non-County sources of financial support.

26. Any requests for resources and staffing needs by County departments related to the implementation of this Consent Decree will be evaluated by the Monitor, who will provide a recommendation to assist Commissioners Court in its determination of the extent and type of staffing and resources needed, if any, in response to the request.

27. All time periods specified in this final Consent Decree must be computed according to Rule 6 of the Federal Rules of Civil Procedure.

28. If any term, condition, or provision of this Consent Decree, or the application thereof to any person or circumstance, is to any extent held by this Court to be invalid, void, or unenforceable, that term, condition or provision must be severed and will be inoperative, and the remainder of this Consent Decree will remain operative and binding on the Parties.

29. Except as otherwise specified below, Defendants must implement the provisions of this Consent Decree as soon as practicable, taking into account that any Sections of this Consent Decree implemented with the help of consultants, experts, or technical assistance providers may require the County to participate in a procurement process in accordance with County purchasing procedures. Where timelines are specified, Defendants will be afforded reasonable additional time as approved by Class Counsel and the Monitor, subject to Section 140. Any disputes about whether additional time should be afforded will be presented to the Court for resolution.

## VI.   COMPLIANCE WITH CONSTITUTIONAL STANDARDS

30. As of the entry of this Consent Decree, the County, the Sheriff, and the CCCL Judges must comply with, implement, and enforce the post-arrest procedures set forth in Local Rule 9 and reproduced herein as follows:

### RULE 9.  BAIL POLICIES

9.1        Pursuant to *ODonnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), and the Fifth Circuit in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), the Harris County Criminal Court at Law Judges ("CCCL Judges") order these policies be applied to all persons arrested for a misdemeanor offense. This rule is designed to vindicate the federal constitutional rights at issue in *ODonnell v. Harris County* arising from the federal Due Process and Equal Protection Clauses. To the extent other

provisions of federal or Texas law provide greater protections, nothing in this Rule should be construed to limit those greater protections.[67]

9.2.     To the extent Local Rule 9 conflicts with any other local rule, Local Rule 9 controls. Except for situations described in Local Rule 9.4.1–9.4.6, all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released[68] on a personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial officer is not required to sign a personal bond prior to the person's release.

9.3.     Secured money bail must not be required as a condition of pretrial release prior to a bail hearing[69] that meets the requirements of Local Rule 9.12, including an individualized determination of ability to pay and, if the person cannot pay, consideration of alternatives and a finding that detention is necessary to meet a compelling government interest in reasonably assuring public safety or reasonably protecting against flight from prosecution.

9.4.     All misdemeanor arrestees must be released on a personal bond or on non-financial conditions as soon as practicable after arrest,[70] except those who fall within the following categories, who may be detained for up to 48 hours[71] for an individualized hearing:

---

[67] For example, Texas law provides greater protections through the Texas Constitution's right to bail clause, Tex. Const. art. 1 § 11, and through statutory protections relating to the timing of post-arrest proceedings, *see, e.g.*, Tex. Crim. Proc. Code § 15.17 (requiring arrestees be taken before a magistrate "without unnecessary delay"); Tex. Gov't Code § 54.858(d) ("The criminal law hearing officer shall be available, within 24 hours of a defendant's arrest, to determine… all matters pertaining to bail."); Tex. Crim. Proc. Code § 17.033(a) ("[A] person who is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $5,000, not later than the 24th hour after the person's arrest if the person was arrested for a misdemeanor and a magistrate has not determined whether probable cause exists to believe that the person committed the offense. If the person is unable to obtain a surety for the bond or unable to deposit money in the amount of the bond, the person must be released on personal bond.").

[68] The term "release" as used herein refers to release from custody in the pending case for which the new arrest occurred. Thus, if a person has other pending lawful holds (e.g. from another case, parole, or from another jurisdiction), "release" would mean release to that other hold rather than release from custody.

[69] "Bail hearing" refers to any legal proceeding that occurs before any judicial officer, including CCCL Judges and Harris County Criminal Law Hearing Officers, at which conditions of release are determined or that might result in pretrial detention or a requirement to pay secured money bail as a condition of release.

[70] If necessary to assure community safety or the safety of the arrestee, a person arrested for violating Penal Code § 49.04(a) (driving while intoxicated) or Tex. Alco. Bev. Code § 106.041(c) (driving under the influence as a minor, third offense) may be detained for up to eight (8) hours after arrest, including past the time they would have otherwise been released, to allow time for the person to become sober and be safely released.

[71] As noted in provision 9.1, although individuals who fall within Local Rule 9.4.1–9.4.6. *may* be detained for up to 48 hours for a bail hearing consistent with federal law, detention is not mandatory, and Local Rule 9 does not authorize or require detention in violation of state law.

17

9.4.1 Individuals arrested and charged under Penal Code § 25.07;

9.4.2 Individuals arrested and charged under Penal Code § 22.01, against a person described in Penal Code § 22.01(b)(2), or individuals arrested and charged under Penal Code § 22.07(c)(1);

9.4.3 Individuals arrested and charged under Penal Code § 49.04 and who the State gives notice may be subject to Penal Code § 49.09(a) for a conviction that became final within the past five years;

9.4.4 Individuals arrested and charged with any new offense while on any form of pretrial release;

9.4.5 Individuals arrested on a capias issued after a bond forfeiture or bond revocation; and

9.4.6 Individuals arrested while on any form of community supervision for a Class A or B misdemeanor or a felony offense.

9.5 Any person arrested for the reasons described in Local Rule 9.4.1–9.4.6 may be kept in custody pending an individualized hearing before a judicial officer.[72] Any judicial officer who makes decisions about conditions of release, including the Harris County Criminal Law Hearing Officers, must have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing.

9.6 Secured money bail must not be imposed as a condition of release prior to a bail hearing that meets the requirements of Local Rule 9.12.

9.7 Secured money bail must not be used as a condition of pretrial release at any time in the pretrial period for any misdemeanor arrestee other than those persons arrested for the reasons described in Local Rule 9.4.1–9.4.6.

9.8 Any arrestee who is not promptly released on a personal bond after arrest must receive a bail hearing that meets the requirements of Local Rule 9.12 as soon as practicable but no later than 48 hours after arrest. Nothing in this provision is intended to conflict with any provision of Texas law or local rules.

9.9 If a person falls within a carve-out category set forth in Local Rule 9.4.1–9.4.6 and cannot be physically brought to an in-person hearing, a bail hearing must be conducted within 48 hours of arrest in absentia, and an in-person bail hearing must be conducted as soon as practicable thereafter. A judicial officer may travel to the physical location of the arrestee to conduct

---

[72] Employees of the District Attorney's Office, Pretrial Services, the Sheriff's Office, or other government agencies may recommend that a judicial officer release any arrestee on a personal bond prior to a bail hearing. The decision to release a person who falls within these categories must be made by a judicial officer. Such recommendations do not infringe judicial officers' authority to make decisions about conditions of release. They simply preserve the possibility of expeditious release on unsecured bond prior to a bail hearing for arrestees who fall within Local Rule 9.4.1–9.4.6. if a judicial officer decides that release prior to a bail hearing is appropriate.

18

the bail hearing in-person; a bail hearing conducted using audio-visual equipment will satisfy the requirement for an in-person bail hearing.

9.10 At the bail hearing, the judicial officer may consider the full range of available conditions of release, including secured money bail (to the extent consistent with Local Rule 9.7), unsecured money bail, and nonfinancial conditions. Any judicial officer has complete discretion to release any misdemeanor arrestee on a personal bond.

9.11 Arrestees subject to a bail hearing must be represented by the Harris County Public Defender or other court-appointed counsel. Arrestees may retain a private attorney to represent them at the bail hearing.

9.12 Before a judicial officer may require secured money bail as a condition of release at a bail hearing, the following procedures must be provided, and the following findings must be made:

9.12.1 Arrestees must be represented by counsel at bail hearings. Indigent arrestees are entitled to representation by the Public Defender's Office or other court-appointed counsel. At bail hearings under Local Rule 4.2, arrestees must be represented by the Harris County Public Defender as described in Local Rule 4.2.2.2.

9.12.2 In every case, notice must be provided to the arrestee that financial information will be collected through an affidavit, and the County must explain to the arrestee the nature and significance of the financial information to be collected. The language required is as follows:

9.12.3 **I am [First Name] from Harris County Pretrial Services. I am here to interview you and report your answers to the Court. What you tell me may be used to make decisions about your release from jail and whether a lawyer will be appointed in your defense. Also, you will need to state the amount of money that you can afford to pay at the time of the hearing that will be held after we talk. This is the amount of money you could pay without suffering any hardship in your ability to meet your basic needs, like food, clothing, shelter, phone, medical care, and transportation for you and any dependents. If you cannot afford to pay any money without hardship, please let me know. I will then also ask you to sign a paper with the financial information that you provided. Your answers must be truthful under penalty of law. False answers may be used against you. The information will be shared with the Court, the District Attorney, and possibly other agencies. You may refuse to complete the interview, or you may refuse to provide me with the financial information. You will be allowed to talk to an attorney before your bail hearing. You may speak to the attorney before you decide whether to participate in this interview. Do you agree to**

**go forward with the interview and to provide financial information?**

9.12.4 The judicial officer must provide adequate notice to every arrestee appearing for a hearing concerning pretrial release and detention of the rights at stake in the hearing and the procedural protections and substantive findings required when determining conditions of pretrial release or detention. The judicial officer may satisfy this requirement by providing a general oral notice to a group of arrested individuals. The judicial officer must provide notice that includes the following in all material respects:

- The purpose of this hearing is to determine the least-restrictive pretrial conditions necessary to serve the government's interest in reasonably assuring public safety and reasonably protecting against flight from prosecution.

- Your federal constitutional rights to pretrial liberty and against wealth-based detention are at issue in this hearing because I will be considering conditions of release and whether pretrial detention is necessary.

- I am required to consider whether alternatives to pretrial detention could serve the government's interests in reasonably assuring public safety and reasonably protecting against flight from prosecution. I cannot order you detained before trial—and I cannot require you to pay an amount of money bail that you cannot afford—if there are any conditions of release that would be adequate to reasonably assure public safety and reasonably protect against flight from prosecution.

- Your lawyer will be able to present or proffer evidence and to argue on your behalf at this hearing about any factors relevant to release, detention, and the availability of alternative conditions.

- Before requiring secured money bail as a condition of release, I will review the financial information that was collected through an affidavit so that I can determine whether you can afford to pay money bail and if so, how much. Before I am permitted to require money bail, I must make a finding on the record as to whether you can afford to pay that amount today.

- You will have an opportunity to challenge the government's arguments and evidence relating to the bail decision. You will also have an opportunity during this hearing to make legal arguments and to present or proffer evidence about any factors relevant to release, detention, and the availability of alternative conditions. This is not an opportunity to try your case—the issue before the court is determining appropriate conditions of pretrial release or whether you must be detained as a last resort pending your trial.

20

- If I require conditions of release or pretrial detention, I will explain my decision on the record.

- I cannot order that you be detained or require you to pay an unaffordable amount of money bail as a condition of release unless I make a finding by clear and convincing evidence that no other condition or combination of conditions is adequate to reasonably assure public safety or to reasonably protect against flight from prosecution. I must identify and explain the reasons for my decision and the evidence and information I relied on in making that decision on the record, so that you can challenge the decision at a later date. Requiring unaffordable money bail or ordering you detained must be the last resort, and I will order detention after this hearing only if I make a finding that there are no alternatives for reasonably assuring the safety of the community and reasonably protecting against your flight from prosecution.

- After the hearing today, you will have an opportunity to have the bail decision, including any conditions of release, reviewed by another judge within one business day if you remain detained after today's hearing. If you are released, you will also be entitled to a hearing before another judge if you want to challenge conditions of release.

9.12.5 In every case in which a judicial officer is contemplating secured money bail as a condition of release, the arrestee must be asked, under penalty of perjury, the amount of money she can afford to pay from any lawful source at the time of the hearing.

9.12.6 The arrestee must be given an opportunity to be heard concerning any factors relevant to release, detention, and the availability of alternative conditions. Additionally, the arrestee must have an opportunity at the hearing to present evidence and make argument concerning those issues, and to contest any evidence or argument offered by the government concerning those issues. The arrestee must have access to all of the evidence and information considered at the bail hearing, including any criminal history from the National Crime Information Center ("NCIC") and Texas Crime Information Center ("TCIC").

9.12.7 If the judicial officer requires money bail as a condition of release, the money bail order must be accompanied by substantive findings on the record that are reviewable by a higher court. The findings will be deemed "on the record" if they explain the reasons for the decision and the evidence relied on either (1) in writing on a form available to the arrestee and her lawyer upon request without a fee, or (2) orally and available to the arrestee through transcript or audio recording at no cost to the indigent. The findings must be that, by clear and convincing evidence: (1) the arrestee has the ability at the

Case: 26-20337   Document: 2-1   Page: 362   Date Filed: 06/25/2026

time of the hearing to pay the amount required, or (2) that the arrestee does not have the ability to pay the amount required, but alternative conditions of release were considered, no less-restrictive condition or combination of conditions could reasonably assure the safety of the community or reasonably protect against flight from prosecution, and imposition of unaffordable money bail is necessary to reasonably assure the safety of the community or to reasonably protect against flight from prosecution. These findings and procedures must be provided if the court imposes an order of pretrial detention, either through an unattainable financial condition or directly through an order of pretrial detention.

9.12.8   An arrestee who is indigent (as defined in Section 17(h)) or who meets any of the following, may not be assessed any fee associated with a personal bond or an unsecured bond, or the cost of a non-financial condition of release, including but not limited to, a supervision fee, a fee for electronic monitoring, or the cost of an interlock device:

- Is eligible for appointment of counsel;
- Has been homeless in the past six months;
- Has income at or below 200% of the federal poverty guidelines;
- Is a full-time student;
- Is, or within the past six months has been, homeless;
- Is incarcerated, or residing in a mental health or other treatment program; or
- Is or has dependents who are eligible to receive food stamps, Medicaid, Temporary Assistance for Needy Families, Supplemental Security Income, Social Security Disability Income, public housing, or any other federal or state public assistance program based on financial hardship.

9.12.9   No arrestee may be incarcerated due to inability to pay a fee or cost associated with a condition of release.

9.13   At any bail hearing in the assigned County Criminal Court at Law, the arrestee must be provided with the same substantive and procedural protections as described in Local Rule 9.12. Specifically, the court is required to afford the arrestee counsel under Local Rule 9.12.1 and to make findings under Local Rule 9.12.7 if the court imposes or continues an order of detention or money bail set at an unaffordable amount. Any arrestee who remains in jail after a Local Rule 4.2 hearing that meets the requirements of Local Rule 9.12 must be provided with a bail hearing the next business day

before a CCCL Judge under Local Rule 4.3. The bail hearing before a CCCL Judge must occur before a plea can be accepted by the court. If a person is subject to a hold or has a concurrently pending felony case, the person may waive the bail hearing before a CCCL Judge without being brought into the courtroom. For every other arrestee, waiver of the bail hearing before a CCCL Judge may not be accepted unless the person is present in court, appears before the CCCL Judge, is informed by the judge of her rights as set forth in Local Rule 9.12.4, and makes a knowing, intelligent, and voluntary waiver of the bail hearing before the CCCL Judge on the record.

9.14 Upon an arrestee's request at any subsequent time prior to trial, the CCCL Judge must provide a prompt bail hearing on the record to review conditions of bail. Prior to a hearing before a CCCL Judge, if requested by defense counsel, the court must approve and assure timely access to supportive defense services such as investigators, experts, or social workers and to discovery of any information that may be considered by the court at the hearing. If the CCCL Judge imposes or continues conditions of release after the hearing, the CCCL Judge must provide written factual and legal findings that the conditions imposed are the least restrictive necessary to reasonably assure public safety or to reasonably protect against flight from prosecution.

9.15 The Sheriff must not enforce any order requiring secured money bail that was imposed prior to an individualized hearing. All arrestees must be treated in accordance with Local Rule 9.2 and released on a personal bond, or Local Rule 9.12, and afforded an individualized hearing.

9.16 The Sheriff must not enforce any order requiring secured money bail that is not accompanied by a record showing that the procedures and findings described in Local Rule 9 were provided. By General Order of the CCCL Judges, if an order to pay secured money bail is unaccompanied by the required record, the Sheriff must deliver to the arrestee a General Order Bond ("GOB") issued by one or more of the CCCL Judges and release the arrestee.[73]

9.17 Any directive or requirement to pay money bail must not be enforced if issued prior to the bail hearing.

9.18 If an arrestee is in the Sheriff's custody 40 hours after arrest and no conditions of release have been determined, the Sheriff must present the arrestee to a judicial officer for a bail hearing. If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee.

9.19 The District Clerk's Office will electronically provide to the Sheriff's Office, on an hourly basis, a list of all misdemeanor arrestees who have been

---

[73] The General Order Bond is a judicial release order, requiring the Sheriff, pursuant to judicial order, to release the arrestee from Harris County custody. The bond is pre-approved by the CCCL Judges or the Presiding Judge.

in custody 40 hours or more from the recorded arrest date and time, and have not received a bail hearing or a General Order Bond.

31. It is expected that the CCCL Judges will continue to audit the implementation of Local Rule 9 and other post-arrest policies, and may seek to update the rule from time to time to reflect best practices and to maximize pretrial liberty, court appearance, and public safety. Any change to Local Rule 9 must ensure that no misdemeanor arrestee is detained solely due to inability to make a monetary payment; that hearings to determine conditions of release or detention comply with constitutional principles of equal protection and substantive and procedural due process; that any condition of release is the least restrictive condition necessary to meet the government's interests in preventing bodily harm to another person and preventing flight from prosecution; and must be consistent with the best available evidence.

32. Any change to Local Rule 9 or any other post-arrest policies employed by the CCCL Judges that affect the pretrial detention or release of misdemeanor arrestees must be approved by the Monitor. As promptly as possible, but in any event no longer than 14 days, subject to Section 29, of receiving a request from the CCCL Judges to amend Local Rule 9 or other post-arrest policies of the CCCL Judges that affect the pretrial detention or release of misdemeanor arrestees, the Monitor must respond by approving the change, objecting to the change and stating reasons for the objection, requesting further information relating to the proposed change, and/or proposing an alternative change. The CCCL Judges and Monitor must work in good faith to reach agreement on the proposed change. If the CCCL Judges and Monitor agree on the change, they must notify Class Counsel and file a motion with the Court asking the Court to issue an amended Consent Decree reflecting the change.

33. In the event the CCCL Judges, the Monitor, and Class Counsel do not all agree to the change, the CCCL Judges must seek approval from the Court by filing a Motion to Amend the Consent Decree. Class Counsel and the Monitor will have 14 days from the filing of the CCCL Judges' Motion to respond.

34. Following a change to Local Rule 9 or other post-arrest policies, Defendants may begin implementing the changes upon the Court's approval of the amendment.

35. To the extent that any of Defendants' existing policies or procedures are identified to be in conflict with Local Rule 9 as set forth in this Consent Decree at Section 30, Defendants who are responsible for promulgating and/or enforcing the policies or procedures that are identified to be in conflict with Local Rule 9 must work with the Monitor to amend those policies or procedures to achieve consistency with Local Rule 9 and this Consent Decree.

36. The County's databases and computer systems must clearly indicate that a General Order Bond is a personal bond for which the underlying amount is unsecured. The County agrees to evaluate its databases and computer systems to determine how to update those systems so that they clearly indicate that a General Order Bond is a personal bond for which the underlying amount is unsecured. The County also agrees to develop and implement a plan, based on the evaluation of its databases and computer systems, to address any lack of clarity in communicating or relaying information (internally and to other jurisdictions) about

misdemeanor arrestees' conditions of release. The County's study and proposed plan are to be presented to the Monitor for approval within 120 days of the appointment of the Monitor.

## VII.   REPRESENTATION AT BAIL HEARINGS

37. The Parties agree that zealous and effective representation at bail hearings is important to protecting arrestees' right to pretrial liberty and right against wealth-based detention. The Parties further agree that the availability of adequate time and workspace for defense counsel to confidentially interview misdemeanor arrestees in preparation for bail hearings, as well as access to early and effective support staff to assist defense counsel in gathering and presenting information relevant to the bail decision and appropriate conditions of release, are important to supporting defense counsel's ability to make the best available arguments for release.

38. All misdemeanor arrestees are entitled to representation of counsel at bail hearings in accordance with Local Rule 9. The County will provide the funding and staffing necessary to ensure the PDO is both able to provide zealous and effective representation to misdemeanor arrestees at bail hearings as required by Local Rule 9 and this Consent Decree and also meet its obligations to provide zealous and effective representation to indigent defendants at all other stages of the representation process. To this end, any such funding provided must be at or above the PDO's Fiscal Year 2019-20 approved budget.

39. Any indigent misdemeanor arrestee will be presumed eligible for appointment of counsel and may not be charged any fees for any condition of pretrial release. This provision in no way precludes a determination to appoint counsel or waive fees for a misdemeanor arrestee who does not meet the definition of "indigent" set forth in Section 17(h).

40. Any judicial officer presiding over the Local Rule 4.2 hearing of a misdemeanor arrestee must authorize the PDO to represent the misdemeanor arrestee for purposes of determining probable cause and the terms of pretrial release.

41. To promote defense counsel's ability to make well-informed arguments for release, the County agrees to provide defense counsel access to early and effective support staff, as defined in Section 17(t), to assist defense counsel in gathering and presenting information relevant to the bail decision and appropriate conditions of release.

   a.   Within 180 days of the entry of this Consent Decree, the CCCL Judges will establish a process by which private appointed counsel can receive assistance from support staff in gathering and presenting information relevant to the bail decision and appropriate conditions of release; in locating and linking misdemeanor arrestees to supports and services that may provide alternatives to detention; and in otherwise facilitating the provision of high-quality representation to misdemeanor arrestees who face the possibility of being detained pretrial. The CCCL Judges will provide a list of qualified support staff that the CCCL Judges have approved to assist private appointed counsel upon proper application. The County will provide access to and funding for support staff that court-appointed counsel can request to assist them at or before bail hearings, in accordance with Section 37 and Section 43(b). The County may provide such access

25

Case: 26-20337 Document: 2-1 Page: 366 Date Filed: 06/25/2026

through independent contractors or through a nonprofit organization in partnership with the County. Nothing in this section (Section 41(a)) is intended to limit Defendants from hiring full-time support staff if the volume of cases requires additional such services in order for defense counsel to provide zealous and effective representation in accordance with best practices.

b. Additionally, the County will develop the systems and structures that best meet the goals of providing effective indigent defense services during the pretrial period, including providing resources for indigent defense support services, such as investigation and mitigation. Whether the County, in its discretion, ensures effective indigent defense services through expansion of the PDO, or through funding support staff for use by private appointed counsel (or some combination), within 180 days of entry of the Consent Decree, the County will retain an expert with experience in holistic indigent defense to evaluate the County's current misdemeanor indigent defense systems and determine the County's need for essential support staff and holistic services to promote zealous and effective indigent defense. The evaluation must be completed within 180 days of commencement and result in a written report with recommendations that reflect national best practices and professional norms governing the provision of indigent defense services. Based on the results of the evaluation, and in consultation with the Monitor, the County must fund the minimum number of support staff the retained expert recommends should be available for use by defense counsel representing indigent misdemeanor arrestees. This requirement in no way prevents or discourages the County from funding additional support staff in its discretion.

42. The CCCL Judges must adopt scheduling policies to ensure Local Rule 4.2 dockets allow defense counsel to provide zealous and effective representation at bail hearings consistent with prevailing professional standards.

43. Within 180 days of the entry of this Consent Decree, drawing on national standards and best practices for providing representation to indigent arrestees at bail hearings, Defendants must develop a written plan with policies and procedures to ensure defense counsel:

a. Are provided sufficient time, work space, and equipment to confer meaningfully and confidentially with misdemeanor defendants before a bail hearing is held;

b. Are provided access to social workers, investigators, and essential support staff, where access can be via phone or video conference;

c. Are able to call witnesses and present and confront evidence at bail hearings; and

26

d.  Are promptly[74] able to discover any information or reports concerning the represented misdemeanor arrestee that will be presented to the judicial officer presiding over the misdemeanor arrestee's bail hearing.

44. The plan developed pursuant to Section 43 will be submitted to the Monitor, who will review, provide feedback on, and approve the plan, which will be implemented within a reasonable timeline to be determined by the Monitor and Defendants. The Monitor will solicit Class Counsel's input during the review process.

45. The CCCL Judges, in consultation with the Monitor, will amend their indigent defense policies to reflect Local Rule 9 and this Consent Decree.

## VIII.  PROMOTING PRETRIAL RELEASE THROUGH PROGRAMS TO INCREASE COURT APPEARANCE

### A.  Uniform Notice of Scheduled Appearances

46. Defendants are required to implement Section 47 and Section 48 only as to misdemeanor arrestees in the County's custody or who have otherwise appeared in person such that they are able to receive written notice from Defendants at the time of scheduling. Defendants will nevertheless make the forms required by this Section readily accessible to third-party law enforcement agencies who arrest or detain misdemeanor arrestees in connection with a Class A or Class B misdemeanor to be prosecuted in the CCCL.

47. Subject to Section 46, Defendants will provide eligible misdemeanor arrestees,[75] or the arrestee's lawyer if the arrestee is not present, written notice of the date, time, and location of their scheduled court appearance each time they receive a new court date in their case before the Criminal Courts at Law. Any form of written notice provided to misdemeanor arrestees, or their attorneys, in accordance with this section (Section 47) will be considered a court form and, therefore, the County will keep a copy of any such written notices issued to misdemeanor arrestees in their related case file.

48. To facilitate court appearance and minimize confusion and misinformation about where and when misdemeanor arrestees must show up to court for a scheduled appearance, Defendants must update any form that Defendants use to provide written notice of scheduled court dates to incorporate evidence-based design practices for effectively reducing nonappearance.

a.  The forms for providing written notice developed and adopted under Sections 47 and 48 must be easy to comprehend; must clearly and prominently display the date, time, and location of the misdemeanor arrestee's court appearance; must clearly and succinctly summarize the most essential components of the CCCL Judges'

---

[74] "Promptly" means as soon as possible but in any event before a bail hearing occurs.

[75] "Eligible misdemeanor arrestees" are misdemeanor arrestees who are in the County's custody or who have otherwise appeared in person such that they are able to receive written notice from Defendants at the time of scheduling.

27

rescheduling policies and the consequences of nonappearance; must notify the arrestee that a lawyer will be appointed if the misdemeanor arrestee is indigent; and must identify a telephone number and a website where misdemeanor arrestees can obtain additional information about their court appearance and the CCCL Judges' policies related to attending, missing, and rescheduling court appearances. Defendants may revise existing forms to meet the requirements of this section (Section 48(a)). Any language describing CCCL Judges' policies must be approved by the CCCL Judges.

b. Within 180 days of the effective date of this Consent Decree, Defendants must update their forms in accordance with Section 48(a). The County may engage one or more technical assistance providers to assist Defendants in updating their forms in accordance with Section 48(a) and best practices. To promote uniformity of notice and avoid confusion, the updated forms must be the exclusive forms used by Defendants to provide notification of court dates.

c. The County will provide the applicable updated form to any misdemeanor arrestee who is released by the County upon the misdemeanor arrestee's release. The forms may be updated at any time, as needed, with the advice of technical assistance providers and the Monitor. The updated forms must be the exclusive forms used by Defendants to provide notification of court dates. Nothing in Sections 47 or 48 prevents the CCCL Judges from otherwise providing general information to misdemeanor arrestees about the CCCL Judges' court schedules or policies.

d. Within 180 days of appointment of the Monitor, the County will submit the updated forms to the Monitor for review and approval in accordance with Sections 111–114 below. The County will work with the Monitor to ensure that the required contents fit on any forms updated in accordance with Section 48(a). If, upon evaluation, it is infeasible to fit all of the information required by Section 48(a) on Defendants' existing forms, Defendants will work with the Monitor to determine the best way to provide misdemeanor arrestees with the most essential components of the CCCL Judges' rescheduling policies and the consequences of nonappearance along with the updated forms, such as on a separate sheet of paper appended to the updated forms. Whether the information is presented on a single form or two forms, Defendants must provide all of the information required by Section 48(a) to achieve the intended goal of minimizing confusion and misinformation about where and when misdemeanor arrestees must show up to court for a scheduled appearance.

e. If Defendants decide to make any additional amendments to the forms for providing written notice of scheduled court dates following the Monitor's review and approval under Section 48(d), Defendants will adopt the additional amendments within 60 days of approval by the Monitor, at which point the newly amended forms must be the exclusive forms used to provide notification of court dates. Any additional amendments must conform with Section 48(a) above. Upon review and approval by the Monitor, Defendants will use the newly amended forms to provide misdemeanor arrestees written notice in accordance with Section 47 above. The updated or amended

forms may be subsequently updated with the advice of technical assistance providers and approval by the Monitor.

## B. Court Date Reminder System

49. Defendants are required to implement Section 50 only as to misdemeanor arrestees for whom the County has a telephone number and who do not opt out in accordance with Section 50(a).

50. The County will adopt text-message-based and telephone-based reminder services to provide eligible misdemeanor arrestees[76] with information about scheduled court appearances and related logistics. The reminders must be designed to reduce nonappearance by notifying misdemeanor arrestees of scheduled court appearances and encouraging misdemeanor arrestees to appear in court on the date scheduled. The County will consult with the Monitor to determine whether any other reminder systems are necessary, taking into account cost and best practices. In developing the text-message-based and telephone-based reminder services, the County must consult existing research and best practices regarding the form and frequency of effective appointment reminders, as well as successful court date reminder systems employed by other jurisdictions, to ensure the services the County adopts have a track record of effectively facilitating court appearances.

   a. The County will provide every misdemeanor arrestee released by the County the option to receive reminders and logistical information about upcoming and missed court dates by telephone and/or text message. Misdemeanor arrestees may affirmatively opt out of receiving the reminders by providing a written waiver.

   b. The reminders must, at a minimum, inform misdemeanor arrestees of the date, time, and location of their scheduled court appearance; and, if a misdemeanor arrestee did not appear at a scheduled court date, the reminders must notify the misdemeanor arrestee of the nonappearance and provide information about next steps for rescheduling or resolving the nonappearance.[77]

   c. The County may satisfy the requirement to develop a text-message reminder system by implementing a one-way text-message reminder system. If the County implements a one-way text-message reminder system, it must also study the potential efficacy of a two-way text-message reminder system in promoting court appearance. "Two-way messaging" means that the recipient of the reminder would be able to respond to the message.

   d. The substance, format, timing, and frequency of the reminders must be informed by evidence-based practices for effectively reducing nonappearance and be approved by

---

[76] Eligible misdemeanor arrestees are misdemeanor arrestees who provide a phone number upon arrest and do not opt out in accordance with Section 50(a).

[77] This Consent Decree does not prevent the County from providing text message and telephone call reminders to arrestees in felony cases and victims of crime.

the Monitor. Misdemeanor arrestees must be given the choice to opt out of receiving the reminders.

e.   Within 180 days of the appointment of the Monitor, the County must submit the proposed substance, format, timing, and frequency of the text message or telephone call reminders, as well as a proposed process for permitting misdemeanor arrestees to opt out of the reminders, to the Monitor for review and approval in accordance with Section 111-114.

f.   The County will implement the text-message and telephone reminder systems within 180 days of approval by the Monitor, or as soon as practicable taking into account the County's procurement processes.

**C.   Determination and Mitigation of Actual Causes of Nonappearance in Harris County**

51.   The County will study and seek to mitigate the primary wealth-based causes of nonappearance among misdemeanor arrestees in order to safeguard against unnecessary pretrial detention, while furthering the County's interests in reasonably assuring misdemeanor arrestees' court appearances and law-abiding conduct before trial. The County must provide programs and services to maximize the ability of the pretrial bail practices set forth in Section 30 of this Consent Decree to serve the government's compelling interests by mitigating possible causes of non-appearance.

52.   Within 180 days of the effective date of this Consent Decree, or as soon as practicable taking into account the County's procurement processes, the County will engage one or more researchers to: (1) study the primary causes of nonappearance in the CCCL; and (2) based on the results of the study, recommend cost-effective policy solutions and programmatic interventions to mitigate the causes of nonappearances.

a.   The study must be based on qualitative and quantitative research methods. The researcher(s) engaged by the County to design and conduct the study must have social science training and demonstrated experience evaluating pretrial systems and processes.

b.   As soon as practicable after the study concludes, the researchers must provide written findings regarding the primary causes of nonappearance in the CCCL, as well as written recommendations to the County for mitigating nonappearance. The researchers' written findings and recommendations must be published in a report that the County will make available to the public online and upon request, as soon as practicable after publication.

c.   The study must evaluate the extent to which and explain how economic, geographic, and structural factors contribute to nonappearance for scheduled hearings before the County Criminal Courts at Law. At a minimum, the study must evaluate the following possible causes of nonappearance and may evaluate any other possible causes:

  i. lack of transportation;

  ii. lack of childcare;

  iii. lack of permanent housing;

  iv. lack of access to a telephone and/or a computer;

  v. confusion and misinformation about court dates;

  vi. inflexible work schedules;

  vii. detention by other jurisdictions;

  viii. substance use disorders;

  ix. mental health problems;

  x. lack of sufficient notice or understanding of procedures; and

  xi. medical emergencies.

 d. The study must also investigate and identify best practices and provide reasonable, cost-effective recommendations that the County can implement to mitigate the causes of nonappearance by misdemeanor arrestees. The recommendations must also include best practices for advising misdemeanor arrestees of their upcoming scheduled court dates.

 e. The study must provide initial actionable recommendations within 180 days of commencing (absent any exceptions afforded pursuant to Section 29), but the researcher(s) may continue the study beyond that date and may provide additional recommendations.

53. While the study required by Section 52 is ongoing, and until implementation of the plan required by Section 55 begins, the County must allocate $250,000 annually, beginning in Fiscal Year 2020–21, toward assisting and supporting indigent misdemeanor arrestees in making court appearances.[78] The County may use the $250,000 in its discretion,[79] except that,

---

[78] If the length of time required to begin implementation is less than one year, this amount will be prorated to a portion of $250,000 that reflects the time required to begin implementation.

[79] This investment is intended to provide assistance and support to indigent misdemeanor arrestees. As a result, while investments in transportation to court, medical and mental health care, safe and affordable shelter, communication, translation and interpretation, drug treatment, and other services are contemplated, the County will not be permitted to satisfy this provision through expenditures on law enforcement, including jailing; liberty-restricting conditions of pretrial release, such as electronic monitoring or substance abuse testing; or funding for prosecution.

in order to satisfy this section (Section 53), the County must seek approval from the Monitor that its proposed allocation meets the requirements of Footnote 80. The Monitor must obtain Class Counsel's input in evaluating the County's proposed allocation. The County may provide its own funding or secure and utilize one or more external sources of funding to meet its obligations under this section (Section 53), including but not limited to allocating savings from Class Counsel's attorneys' fees donation or securing government grants and/or private philanthropic funding, to meet this obligation.

54. After the study concludes, the County must allocate at least $850,000 per year, absent demonstrating good cause to the Monitor for allocating a lesser amount, for each of the first seven (7) years following the conclusion of the study, toward mitigating the causes of nonappearance in the County in accordance with the plan required by Section 55. To establish good cause, the County must submit such purported cause to the Monitor. The Monitor must notify Class Counsel that Defendants have sought permission from the Monitor to spend less than $850,000 per year. The Monitor must make a determination of whether good cause exists for allocating a lesser amount. Either Party may file a motion to the Court if that Party disagrees with the Monitor's determination. The County may provide its own funding or secure and utilize one or more external sources of funding, including, but not limited to, allocating savings from Class Counsel's attorneys' fees donation or securing government grants and/or private philanthropic funding, to meet these obligations.

55. Within 180 days of receiving the published results of the study, absent any exceptions afforded pursuant to Section 29, the County must work in consultation with the researchers that conduct the study to develop a written plan for mitigating the causes of nonappearance in the County, as determined by the results of the study, including a reasonable timeline for implementing the plan and a proposed budget for how the $850,000 (or more, in the County's discretion) will be spent annually in each of the initial three years following the study.[80] After two years, the plan must be updated to identify expenditures for subsequent years. The County will present the plan to the Monitor, who will convey the plan to Class Counsel for review.

    a. The County will submit the plan to the Monitor for review and approval in accordance with Sections 111–114. The Monitor will solicit Class Counsel's written comments and objections on the plan during its 30-day review period provided by Sections 111–114. Upon returning its comments or objections to the County in accordance with Sections 111–114, the Monitor will also convey Class Counsel's comments or objections to the County for the County's consideration and response. The County must respond to all comments and objections within 30 days of receipt from the Monitor. The County's response must explain its position on the comments or objections, if any, and include any proposed amendments necessary to address them.

---

[80] This investment is intended to provide assistance and support to indigent misdemeanor arrestees. As a result, while investments in transportation to court, medical and mental health care, safe and affordable shelter, communication, translation and interpretation, drug treatment, and other services are contemplated, the County will not be permitted to satisfy this provision through expenditures on law enforcement, including jailing; liberty-restricting conditions of pretrial release, such as electronic monitoring or substance abuse testing; or funding for prosecution.

b.  The Monitor may function as a liaison to secure Class Counsel's input on the plan. If Class Counsel objects to any aspect of the plan, and the Monitor is unable to resolve the dispute, the Parties may submit the dispute to the Court to resolve in accordance with Sections 111–114.

56.  Notwithstanding the Parties' agreement in this Consent Decree to study and implement best practices to mitigate nonappearance, nothing will prevent Defendants from seeking to implement, before the study is complete, additional good-faith efforts to reduce nonappearance for people on pretrial release.

## IX.   COURT POLICIES AND PROCEDURES CONCERNING NONAPPEARANCE FOR SCHEDULED COURT HEARINGS[81]

57.  No later than 180 days after the entry of this Consent Decree, the County must develop and maintain a website where misdemeanor arrestees can access their court dates, times, location, attorney information, whether the next court appearance is "required" or "regular," and any additional case information that the CCCL Judges or County deem appropriate. The website must be updated to reflect accurate court dates and times within 24 hours of a court date being scheduled.

58.  **Options for rescheduling a court date:** The County will provide technology that defense counsel and misdemeanor arrestees can use to facilitate requesting a new court date or to be informed of a court date that the court has set. With the goal of identifying mechanisms for rescheduling court dates that do not require the misdemeanor arrestee or the arrestee's counsel to appear in person to obtain a new court date, the County and the CCCL Judges will work with the Monitor to identify and implement the most effective technology to facilitate rescheduling court dates. If a misdemeanor arrestee receives a new court date, notice of the new court date must be provided via the telelphone and text-message reminders required by Section 49–50. If defense counsel has been appointed or retained, notice must also be provided to counsel. A record of the notice provided must be preserved in the misdemeanor arrestee's case file. The County will also ensure that there is an in-person option for rescheduling a court date during regular business hours.

59.  To comply with the requirement that there be an in-person option for rescheduling court dates during regular business hours, the CCCL Judges will designate one CCCL Judge each week, for at least one day each week, to preside over an "Open Hours Court" to be located in that CCCL Judge's own courtroom. The Open Hours Court will occur on a predictable weekly schedule, and the schedule will be posted in the courthouse, at the jail, on the written notification(s) described in Sections 47–48, and on the website described in Section 57. This Consent Decree does not require the Open Hours Court to operate beyond normal business hours.

---

[81] "Defense counsel" or "attorney" for purposes of this Section refers to counsel appointed or retained to represent a misdemeanor arrestee before the Harris County Criminal Courts at Law.

33

60. Beginning no later than 180 days from the appointment of the Monitor, the County and the CCCL Judges must implement the policies and practices in Sections 57–79. The objective of these provisions is to promote effective implementation of Local Rule 9 and accurate and transparent tracking and publication of rates of nonappearance.

61. Notice of the CCCL Judges' appearance, rescheduling, and warrant policies will be provided on the written notification(s) described in Sections 47–48 and on the website described in Section 57.

62. To ensure that people released from custody after arrest have an adequate opportunity to address the disruption to their lives caused by the arrest, absent a request made by an arrestee or the arrestee's counsel, no misdemeanor arrestee may be required to appear in court less than 72 hours of being released from jail for proceedings in the same misdemeanor case in which they were arrested and released.

63. The terms "regular setting" and "required appearance" are defined in Section 17(q) and Section 17(r) above.

64. **Open Hours Court:** County and CCCL Judges must provide at least one weekly "Open Hours Court" to be held at the same time and on the same day each week, which may be rescheduled from time to time, to account for holidays or other court business. Any change to the Open Hours Court schedule must be advertised on the website as described in Section 57 at least 30 days in advance of the change becoming operative. The location of the Open Hours Court must be advertised as described in Sections 48(a) and 57. Any misdemeanor arrestee who has missed a court appearance can appear at Open Hours Court to reschedule the missed court appearance, subject to the other provisions in this Consent Decree. The County will ensure that assistant public defenders and/or private appointed counsel will be available at this docket to assist unrepresented individuals who appear. The purpose of Open Hours Court is to provide an opportunity for people to move forward with the business in their cases more efficiently and, to the extent permitted by other provisions of the Consent Decree, to do so without fear of going into custody for a prior nonappearance. This program must be advertised as described in Sections 48(a) and 57.

65. **Waiver of appearance:**

   a. Upon request by counsel, before or during a regular setting, a misdemeanor arrestee's appearance at any regular setting must be waived.

   b. Notwithstanding Section 65(a), a CCCL Judge will be authorized to convert any regular setting into a required appearance with 7 days' written notice to the misdemeanor arrestee and/or her lawyer that the arrestee's personal appearance in court is required and will not be waived.

   c. Notwithstanding any other provision in this Consent Decree, a CCCL Judge may, on his or her own motion, waive a misdemeanor arrestee's appearance at any court appearance at which that CCCL Judge is presiding, consistent with Texas law.

34

66. **Rescheduling in advance of the court date:**

   a. A misdemeanor arrestee who is not in custody may reschedule any regular appearance in advance of the court date by using the rescheduling procedures described in this Consent Decree.

   b. A misdemeanor arrestee who has not sought a waiver of appearance and is not in custody may reschedule through counsel any regular appearance in advance of the court date two times per case for any reason with no adverse consequences. If multiple open cases are consolidated onto a single schedule of court appearances, any rescheduling of any one of the open, consolidated cases will count toward the two permitted reschedulings for all of the open, consolidated cases.

   c. After a misdemeanor arrestee reschedules twice, any subsequent nonappearance at a regular setting may result in a warrant being issued if the CCCL Judge finds that notice of that setting was provided in accordance with this Consent Decree, and does not make a finding of good cause.

67. **Process for issuing a warrant after nonappearance at a regular setting:**

   a. If a misdemeanor arrestee does not appear at a regular setting, and the appearance was not waived in advance, the case will be rescheduled for the following week's Open Hours Court. The County and the CCCL Judges will inform the misdemeanor arrestee of the new date and time for the court setting at which the misdemeanor arrestee's presence is required using the notification procedures set forth in this Consent Decree. The misdemeanor arrestee may appear at the following week's Open Hours Court or in the assigned court at any time between the date of the missed regular setting and close of business on the day of Open Hours Court of the week following the missed setting to reschedule the missed regular setting without arrest or other adverse consequences for a missed regular setting.

   b. If a misdemeanor arrestee does not appear at a regular setting, and does not appear in Open Hours Court or the assigned court before close of business on the day of Open Hours Court of the week following the missed appearance, a warrant for nonappearance may issue to the extent consistent with state law.

68. **Process for issuing a warrant after nonappearance at a first setting or required appearance:**

   a. If a misdemeanor arrestee does not appear at a first setting or a required setting, meaning that the arrestee has not appeared in court within one hour of the time set for the misdemeanor arrestee's appearance or by the time the docket (if applicable) has concluded, whichever is later:

       i.   The CCCL Judge must determine whether the misdemeanor arrestee had actual notice of the court setting and whether there exists good cause for nonappearance.

If the CCCL Judge finds that good cause exists for the misdemeanor arrestee's nonappearance then a warrant may not issue and the setting must be rescheduled for a minimum of seven days in the future. Because notice is a basic requirement of due process, lack of actual notice of the court setting constitutes good cause for nonappearance such that an arrest warrant for nonappearance may not issue. If the CCCL Judge finds that no good cause exists for the misdemeanor arrestee's nonappearance, then the CCCL Judge may take any action consistent with Texas state law.

69. **Process for rescheduling a court date after a warrant has been issued:**

    a.   If a warrant is issued following nonappearance at a regular setting or first setting, the arrestee may appear in the assigned court or the Open Hours Court and request a new court date. In the absence of other bases for the misdemeanor arrestee's arrest, the warrant for nonappearance will be recalled when the misdemeanor arrestee seeks to reschedule the missed regular setting or first setting. A misdemeanor arrestee may reschedule a first setting or a regular setting after a warrant for nonappearance has issued twice without risking arrest. In such circumstances, the warrant for nonappearance must be recalled.

    b.   If a warrant is issued following nonappearance at a required appearance, the arrestee must appear in person in the assigned court or at Open Hours Court to request a new court date. If practicable, and to avoid the need to arrest, book, and jail the misdemeanor arrestee, the missed setting should be rescheduled for that day. If the setting cannot occur that day and must be rescheduled for another date, the judge will have discretion to recall the warrant, modify conditions of pretrial release, or order that the misdemeanor arrestee be taken into custody on the warrant if such custody is otherwise consistent with state law and if the court finds after a hearing with counsel, that (i) there was actual notice of the required setting that was missed and (ii) no good cause exists for the nonappearance.

70. All misdemeanor arrestees with outstanding arrest warrants for nonappearance issued for any type of misdemeanor court appearance prior to January 1, 2019, will be permitted to appear at Open Hours Court or in the assigned court, or to use any of the rescheduling procedures described in this Consent Decree, to have the warrant for nonappearance recalled and to receive a new court date in the assigned court. No such misdemeanor arrestee may be arrested for nonappearance pursuant to a warrant for nonappearance issued on or before December 31, 2018, upon voluntary appearance in Open Hours Court or in the assigned court. This option must be advertised on the website described in Section 57, in the joint processessing center, and by any other method determined by the County. The County may also choose, in its discretion, to advertise this option on local radio and television.

71. The CCCL Judges are committed to recording data regarding nonappearance and failures to appear in an electronic, machine readable format that will provide a basis for tracking and

comparing nonappearance rates and failure-to-appear rates of misdemeanor arrestees released on different pretrial conditions.

72. The CCCL Judges will continue to evaluate their policies relating to court appearance and determine whether they can authorize misdemeanor arrestees who are represented by counsel to waive personal appearance at additional hearings in order to minimize the burden of court appearance on the system and on indigent arrestees. The CCCL Judges will provide a report to the Court Monitor and Class Counsel regarding the process used to evaluate local policies and the conclusions reached within 180 days of entry of this Consent Decree.

## X.    CONTINUING TRAINING

73. To enhance and promote compliance with the purpose and requirements of this Consent Decree, Defendants will provide ongoing training to the CCCL Judges and Defendants' agents and employees whose work is necessary to implementing Local Rule 9, including public defenders and private appointed counsel. The Monitor will recommend any additional training that is needed to promote full implementation of the Consent Decree more broadly.

74. To that end, and within 180 days of the appointment of the Monitor, or as soon as is practicable in light of the County's procurement processes, the Defendants may, in consultation with the Monitor, engage a consultant and/or technical assistance provider to assist in developing an ongoing training plan ("Training Plan") that Defendants will implement to promote full and effective implementation of the Consent Decree. If Defendants decide to engage such a consultant and/or technical assistance provider, that person or entity must have expertise in pretrial systems and experience developing or conducting training on pretrial practices.

75. The Training Plan must include both an initial training course and an annual refresher training course that the CCCL Judges and Defendants' agents and employees whose work is necessary to implement Local Rule 9 will be required to complete. The County may provide the training in person or online.

76. The Training Plan must incorporate qualitative and quantitative training on the following:

   a. The purpose, proper implementation, and enforcement of Local Rule 9 and this Consent Decree, and the requirements to uphold the constitutional rules and standards governing pretrial release and detention and the use of secured money bail;

   b. Costs and consequences of pretrial detention on misdemeanor arrestees and the public, including empirical research concerning:

   i. The effects of pretrial detention on case outcomes (including the effect of secured bail and pretrial detention on guilty pleas, time served pretrial, conviction and sentencing, and sentence length) and re-arrest and recidivism during the pretrial period and following case disposition; and

37

ii. The social and economic impacts on accused persons, their families and communities, and the broader community resulting from pre- and post-trial incarceration;

c. The available alternatives to pretrial detention locally, best practices and alternatives employed in other jurisdictions, and the costs and consequences of and alternatives to issuing bench warrants in response to nonappearance and failures to appear;

d. Discussion of current data, research, and best practices relating to bail setting and pretrial release practices nationally;

e. Accounts and stories of people who have been affected by the bail system in Harris County or their family members.

77. Throughout the development of the Training Plan, the Monitor must consult with Class Counsel regarding the content of the training and the individuals and entities who will conduct the training.Defendants must submit the proposed Training Plan to the Monitor for review and approval in accordance with Sections 111–114 below.

78. Class Counsel may review the Training Plan on an annual basis and recommend updates and improvements as necessary to maintain compliance with the provisions and purpose of this Consent Decree, policies and practices developed pursuant to this Consent Decree, and any developments in applicable law.

79. Defendants will begin implementing the Training Plan upon approval by the Monitor, who must review the trainings provided under the Training Plan annually and recommend updates and improvements as necessary to maintain compliance with the provisions and purpose of this Consent Decree, policies and practices developed pursuant to this Consent Decree, and any developments in applicable law. Class Counsel must review any proposed updates to the Training Plan before they are implemented.

## XI. DATA COLLECTION, ANALYSIS, AND TRANSPARENCY

80. The purpose of this Section is to ensure that Harris County's pretrial system can be effectively monitored and evaluated to determine whether it is remedying the constitutional violations raised in this litigation, and whether Defendants are complying with the purpose and provisions of this Consent Decree. It is also intended to facilitate constitutional and effective misdemeanor pretrial decision-making and outcomes that maximize pretrial liberty and court appearance rates; and to enhance accountability and transparency related to Defendants' pretrial policies, practices, and decision-making concerning misdemeanor arrestees.[82]

---

[82] At a hearing on January 23, 2018, when Plaintiffs raised the concern that Defendants had not produced documents in discovery, the district court expressed concerns about Defendants' lack of "transparency" in this case. Transcript of 1/23/18 Hearing at 5, *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414) (THE COURT: "[T]ransparency is another feature that is in insufficient supply in many aspects of this case[.] . . . And the lack of transparency is not the Plaintiffs'."). Additionally, when the litigation was stayed in November 2018, Plaintiffs

38

81. Defendants will systematically and continuously collect and preserve the data and records necessary to analyze and report on Defendants' compliance with the intent and requirements of this Consent Decree and the constitutional standards governing pretrial release and detention; Defendants' decision-making and performance related to the pretrial release and detention of misdemeanor arrestees; and the effects of Defendants' pretrial policies, practices, and decision-making on the comparative case outcomes and nonappearance rates of misdemeanor arrestees. Within 180 days of appointment of the Monitor, Defendants will consult with the Monitor to determine the extent to which Defendants already collect the data variables sufficient to permit tracking, analysis, and reporting required by this Consent Decree. In consultation with the Monitor, within 180 days of appointment of the Monitor, Defendants will also:

   a. Identify and define the data variables Defendants will be required to collect and preserve to effectively analyze and report on the measures identified in Section 85, with the exception of "nonappearance" and "failure to appear," which are defined in this Consent Decree.

   b. Determine how Defendants can collect and maintain the data variables required in a manner that allows the Monitor, Class Counsel, Defendants, and members of the public to access, review, analyze, and report on them efficiently and effectively. The Monitor should take into account that several County agencies are currently responsible for collecting and preserving the County's misdemeanor pretrial data and include in its recommendations ways the County can integrate the required data variables across those agencies' data systems upon collection.

82. If, upon evaluation, any of the Defendants concludes that it would be cost prohibitive or otherwise infeasible to collect or maintain any of the data variables they are required to collect under this Consent Decree, Defendants may submit a request to the Monitor seeking exemption from the requirement to collect and maintain the particular data variable(s). The Monitor will evaluate any such request by Defendants to determine whether they can be relieved of their obligation to collect and maintain the particular variables for which exemption is sought.

83. Within 180 days of appointment of the Monitor, the County will develop and implement a process by which the public can download, or otherwise readily access, the raw data that Defendants are required to collect and maintain under this Consent Decree in a usable format, such as an Excel spreadsheet. Any such process is expected to preserve and maintain compliance with applicable state and federal laws concerning confidentiality of information. The intent of this Section is to promote transparency and accountability by promoting public access to and analysis of the data and information collected pursuant to this Consent Decree.

---

had sought leave from the Court "to conduct futher depositions . . . crucial to discovering why and how Defendants destroyed relvant evidence for almost a year into this case, and then failed to disclose that fact when they learned it more than a year ago," so that Plaintiffs could "determine whether it would be appropriate to move for sanctions." Plaintiffs' Pre-motion Letter Seeking Leave to Conduct Additional Depositions, *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017) (No. 16-cv-01414), ECF No. 523-1.

84. The County will preserve all existing data relating to misdemeanor cases from 2009 through the present, including all data used to generate the reports required by Sections 87 and 89, to facilitate comparative analysis of the County's prior misdemeanor pretrial system with the misdemeanor pretrial system that will be implemented pursuant to this Consent Decree.

85. Defendants will also continue to collect and maintain all of the misdemeanor case data variables they collect and maintain currently, including all of the data variables that Defendants have produced to Plaintiffs in this litigation. If feasible and not cost prohibitive,[83] Defendants will also collect and maintain data variables sufficient to permit tracking, analysis, and reporting of the following information, to the extent applicable for each misdemeanor arrestee:

   a. Race and ethnicity of the misdemeanor arrestee;
   b. Zip code of home residence of the misdemeanor arrestee and/or place of arrest;
   c. Primary language(s) spoken by the misdemeanor arrestee;
   d. Financial status of the misdemeanor arrestee (e.g. income bracket, employment status, receipt of means-tested government benefits, automobile ownership, education level, and/or residence status or homelessness);
   e. Any concurrent holds and, if so, which type(s) and/or any concurrent felony charges;
   f. Whether the misdemeanor arrestee was identified as a "non-carve-out" or a "carve-out" (including the relevant "carve-out" category) under Local Rule 9;
   g. To the extent applicable, all underlying constituent data points used in calculating an actuarial risk score or recommendation;
   h. Any amount of money the misdemeanor arrestee reported being able to afford to pay at the time of the bail hearing, as set forth in Local Rule 9;
   i. Whether the misdemeanor arrestee was afforded the procedural requirements of a bail hearing, as set forth in Local Rule 9;
   j. Whether a motion for secured bail, high bail, or pretrial detention was filed, and, if so, which;
   k. Substantive findings made by the judicial officer at the bail hearing;
   l. Any date and times of release from custody;
   m. Any scheduled appearances that the misdemeanor arrestee appeared at;
   n. All instances of "nonappearance" as defined in this Consent Decree;
   o. All instances of "failure to appear" as defined in this Consent Decree;
   p. Any scheduled appearances that were waived and/or rescheduled;
   q. Any pretrial release decisions by a judicial officer and the date of each;
   r. Any pretrial release recommendations (e.g. release, release to supervision, etc.) made by a judicial officer and the date of each;
   s. Any conditions of release or supervision imposed by a judicial officer, the date each was imposed, and the amount of any fees assessed; and
   t. Any findings that a bond condition was violated and the results of any such findings (e.g. revocation; forfeiture; additional conditions imposed; etc.).

---

[83] As determined pursuant to Section 82.

86. "Failure to appear" and "nonappearance" are defined in Section 17(f) and Section 17(m), respectively, of this Consent Decree. Within 180 days of the appointment of the Monitor, absent any exceptions afforded pursuant to Section 29, and subject to Section 29, Defendants, in consultation with the Monitor and any subject matter experts or technical assistance providers Defendants deem necessary, will begin collecting and maintaining data concerning nonappearances and failures to appear by misdemeanor arrestees in a standardized electronic format. The process by which Defendants collect and maintain data concerning nonappearances and failures to appear must be approved by the Monitor and must permit transparent, consistent, and reliable collecting and reporting of comparative failure-to-appear rates and comparative nonappearance rates of misdemeanor arrestees released on different bond types and under various conditions of release.

87. Within 180 days of the appointment of the Monitor, Defendants must begin generating reports once every 60 days that provide the information in Section 89—except that, where Defendants do not yet collect the data needed to report on certain information in Section 89, they will work with the Monitor to determine an appropriate timeline in which to collect, analyze, and begin reporting on any new data that is feasible and not cost-prohibitive to collect. The reports must clearly indicate a break-down of numbers and percentages by race and zip code of residence. The purpose of these reports is to ensure that basic information necessary to evaluate how the Consent Decree is affecting the County's misdemeanor pretrial system is readily available to and can be easily understood by Defendants and their agents and employees working within the system, community members, the Monitor, and Class Counsel. The reports must be made publicly available on the website described in Section 90. Defendants may authorize the Monitor, or a subject-matter expert or technical assistance provider with experience and expertise in analyzing large datasets, to generate the reports. Defendants will work with the Monitor, along with any technical assistance provider Defendants authorize to generate the reports, and to determine additional perameters for the analysis such as the appropriate time period that each report will cover and whether the information will be reported in terms of cases or persons.

88. To promote transparency and accountability, the County will also develop a web-based data platform ("Data Platform") that organizes, integrates, analyzes, and presents the information required by Section 89 into a public-facing interface.[84] The County may engage a technical assistance provider with expertise in data analytics to create the Data Platform. Subject to Section 82, Defendants must also analyze and present, at a minimum, the following information listed in Parargaph 89 on the Data Platform, which must allow for a break-down of all numbers and percentages by race and zip code of residence.

89. If feasible and not cost-prohibitive,[85] all of the following information will be published publicly through the Data Platform as required by Section 88. All such information will

---

[84] The County is not precluded from organizing, integrating, analyzing, and presenting additional information or data on the Data Platform.

[85] As determined pursuant to Section 82.

preserve and maintain compliance with applicable state and federal laws concerning confidentiality of information. Defendants will work with the Monitor, as necessary, to identify and define any additional measures and outcomes on which Defendants will report to the public to facilitate transparency and accountability in meeting the goals and requirements of this Consent Decree and the frequency with which Defendants will report on those measures and outcomes.

    a.   The misdemeanor pre-trial and post-conviction jail population, excluding detainees who are subject to holds and/or concurrent felony charges;

    b.   The percent of misdemeanor arrestees detained at disposition;

    c.   Total number of people arrested for misdemeanor offenses;

    d.   Total number of people cited and released for misdemeanor offenses;

    e.   Total number of misdemeanor cases filed;

    f.   Total number and percent of misdemeanor arrestees who fell into the carve-out categories and, separately, the non-carve-out categories;

    g.   Total number of arrestees in each carve-out category;

    h.   Total number and percent of misdemeanor arrestees released on a General Order Bond;

    i.   Total number of bail hearings that occurred in the Joint Processing Center;

    j.   Total number of bail hearings that occurred in the CCCL;

    k.   Total number of arrestees who had a bail hearing and remained detained longer than 24 hours after arrest, and the length of time each arrestee was detained;

    l.   Total number of arrestees required to pay secured money bail as a condition of release, and, of that number, the total number who did not pay the secured bail amount required;

    m.   Total number of people detained 24 hours or longer who were not detained for any reason other than a pending misdemeanor charge;

    n.   Total number of arrestees:

        i.   Assigned to pretrial supervision;

        ii.   Assigned to electronic monitoring;

        iii.   Required to report in person at Pretrial Services;

        iv.   Required to undergo any drug testing;

        v.   Required to undergo any form of mental health treatment; and

        vi.   Whose release was conditioned on home detention;

    o.   Total number of bond forfeitures;

    p.   Total number of bond revocations;

    q.   The length of time to disposition for people released on different bond types;

    r.   Median time to disposition for people detained at disposition;

    s.   Median time to disposition for people released at disposition;

    t.   Number and percent of cases resulting in a guilty finding, broken out by whether the misdemeanor arrestee was detained or released at disposition;

    u.   Number and percent of cases resulting in dismissal, broken out by whether the misdemeanor arrestee was detained or released at disposition;

42

v.  Number and percent of cases resulting in community supervision, broken out by whether the misdemeanor arrestee was detained or released at disposition;

w.  Number and percent of cases in which the misdemeanor arrestee was sentenced to jail time, broken out by whether the misdemeanor arrestee was detained or released at disposition;

x.  Number and percent of cases in which a motion for a high bond was filed, and, if generated, the final risk assessment score for each misdemeanor arrestee who was the subject of such a motion;

y.  Number and percent of cases in which a motion to detain a misdemeanor arrestee was filed, the offense with which the misdemeanor arrestee was charged, and, if generated, the final risk assessment score for each misdemeanor arrestee who was the subject of such a motion; and

z.  Any other data analysis the Monitor determines is required to adequately understand how the County's pretrial system works.

90. Within 90 days of the entry of this Consent Decree, the County must launch and maintain a website ("Consent Decree Website") for information related to the *ODonnell* lawsuit and this Consent Decree. The website will be updated on an ongoing basis, as needed, and, once the website is accessible online, must provide public access to the following materials:

a.  Links to the Consent Decree and all of the information and data the County is required by this Consent Decree to collect and report on in accordance with Sections 88 and 89;

b.  Materials used for training concerning implementation, monitoring, or reporting related to this Consent Decree must be publicly available on the website.

## XII.   OVERSIGHT AND ACCOUNTABILITY

91. All Parties recognize that the input and involvement of the residents of Harris County will be essential to meaningful and lasting reform and to effective and ongoing monitoring and evaluation of the system. Therefore, Defendants are committed to involving community members in the implementation and monitoring process. To that end, within 180 days, Defendants will submit a plan to the Monitor for conducting regular public meetings that are intended to promote transparency, accountability, and local participation in the implementation process. At each meeting, a representative of each Defendant group and the Court Monitor must report on implementation of the Consent Decree, including explicitly identifying areas of success and areas for improvement.

92. The following are minimum requirements for the meetings, but Defendants will have broad discretion within these parameters to determine the most effective way to communicate and work with their constituents:

a.  The meetings must occur at least every six months in at least two geographic locations that render them accessible to the maximum number of residents possible. To the

43

extent practicable and cost-feasible, the County will simulcast the meetings via the website described in Section 90;

b.  At least one representative of each Defendant group (*i.e.*, the County, the Sheriff, and the CCCL Judges) with knowledge of the process for and progress toward implementing the Consent Decree, will attend the meeting, together with the Monitor;

c.  Defendants will work with local community groups to determine the parameters of the meetings, including time of day, length of meeting, location of meeting, agenda, and allocation of time to specific agenda items, with the goal of reasonably maximizing transparency and information sharing. The Monitor must approve the parameters of the meetings;

d.  Defendants will provide community members a reasonable opportunity to provide input relating to the County's criminal legal system, to ask questions of Defendants' representatives and the Monitor relating to implementation of the Consent Decree, and to have those questions answered during the meeting.

## XIII.  PUBLICATION OF POLICIES ENACTED TO IMPLEMENT THE CONSENT DECREE

93.  As soon as practicable, key policies enacted to implement this Consent Decree must be made available online. In addition, a summary of the key policies must be made available in writing at each of the following locations and in each language in which Harris County is required to provide a ballot under Section 203 of the Voting Rights Act of 1965:

a.  Harris County Joint Processing Center, 700 N San Jacinto St, Houston, TX 77002; and
b.  Harris County Criminal Justice Courthouse, 1201 Franklin St, Houston, TX 77002.

94.  Within 60 days of the appointment of the Monitor, Defendants must confer and agree on the key policies to be summarized and made available at the above locations. The Monitor will resolve any disputes about the length and content of the summary. The policies and the summary of the policies must be reviewed every six (6) months and updated as necessary.

## XIV.  CONSENT DECREE MONITOR

### A.  The Monitor

95.  The Parties will jointly select an independent monitor ("Monitor") who will assess and report on whether the requirements of this Consent Decree have been implemented. The Monitor's decisions and evaluations will be guided by the principles of ensuring accountability, transparency, and compliance with this Consent Decree consistent with the overall goals of maximizing pretrial liberty, court appearance, and public safety.

96. The Monitor may be an individual, team of individuals, non-profit institution, or non-profit organization. The Monitor must have the knowledge, skills, and expertise necessary to accomplish the Monitor's duties under this Consent Decree.

97. The Monitor will have only the duties, responsibilities, and authority conferred by this Consent Decree. The Monitor will not, and is not intended to, replace or assume the role or duties of the County, any County official, the Sheriff, or the CCCL Judges.

98. In order to assess and report on whether the requirements of this Consent Decree have been implemented and its objectives are being achieved, the Monitor will conduct the reviews, audits, and assessments specified below, and such additional audits, reviews, and assessments as the Monitor reasonably deems necessary to determine whether the Consent Decree has been implemented as required.

### B.  Selection and Compensation of the Monitor

99. The Parties will jointly select a Monitor that is acceptable to all. The Monitor will have expertise in some combination of the following: pretrial release and detention practices, monitoring and oversight, preparation of reports or other written materials for diverse audiences, law and civil rights, project management, data analysis and information technology, communication, and budgeting. The Monitor will also have a demonstrated ability to collaborate with government entities and knowledge of the diverse communities affected by the pretrial system. The Monitor will act in accordance with standards of integrity and will consistently demonstrate professionalism and respect in all interactions with the community, County officials and agents, members of the courts, and all others with whom they interact in the course of performing the Monitor's duties.

100. The Monitor may evaluate and provide recommendations to the County regarding the resources and staffing needed to promote efficient and effective implementation of this Consent Decree, which the County may consider in allocating resources to carry out this Consent Decree.

101. In selecting the Monitor, the Parties have established a mutually agreed-upon process:

   a.  As soon as practicable, but no later than 60 days from the date of approval of the Consent Decree, the Parties will request proposals from qualified candidates interested in serving as the Monitor that include an identification of qualifications, proposed team members, proposed Monitoring plan, and a proposed budget. The period for receiving applications may be no less than 30 days and no more than 60 days.

   b.  Within 30 days from the close of the period for submitting applications, the Parties will review applications, interview candidates, and recommend a candidate to the Court for appointment.

102. If the Parties are unable to agree on a Monitor, each Party will submit the name of the proposed individuals, groups of individuals, or entities, along with resumes and cost proposals, to the

45

Court. The Court will consider the Parties' submissions and will choose a candidate or candidate team proposed by one of the Parties.

103. The Parties recognize the importance of ensuring that the fees and costs associated with the Monitor are reasonable. Accordingly, the Monitor will submit a proposed budget annually. The County will fund the Monitor at a reasonable rate.

104. The County will provide the Monitor with office space and reasonable office support, such as furniture, telephones, computers, internet access, IT support, secure document storage, and document scanning capabilities.

105. The Monitor may hire, employ, or contract with such additional persons or entities as are reasonably necessary to perform tasks assigned to the Monitor by this Consent Decree. Any person or entity hired or otherwise retained by the Monitor will be subject to the provisions of this Consent Decree.

106. The Parties may submit written feedback to the Monitor, the Parties, and the Court regarding the Monitor. The feedback may address such topics as the Monitor's effectiveness, the Monitor's ability to work cost-effectively on the budget, and whether the Monitor is adequately engaging the community and relevant stakeholders. Upon receiving the Parties' feedback, the Court may convene the Parties and Monitor to discuss the feedback.

107. At any time, on motion by any Party or the Court's own determination, the Court may remove the Monitor for good cause.

108. In the event the Monitor is removed, resigns, or is no longer able to fulfill its responsibilities under this Consent Decree, the Court will appoint a replacement recommended by the Parties. The Parties' selection will follow the same process as described in Sections 99–102.

109. Except for the period in which a new or replacement Monitor is selected, there will be a Monitor in place for seven (7) years from the appointment of the Monitor.

110. The Monitor must operate for a period of seven (7) years beginning on the date that the Monitor is appointed by the Court. The period may be extended for good cause. Good cause is shown if any Defendant has not been substantially in compliance with this Consent Decree in the two years immediately prior to the end of the final scheduled year.

### C. Monitor's and Parties' Review of Implementation Plans, Policies and Procedures, Proposals, and Training Materials

111. The County, Sheriff, or CCCL Judges will submit their plans, policies, procedures, proposals, or materials required by this Consent Decree to the Monitor for consultation, review, and, in specified cases, approval. The Monitor will provide Defendants any written comments on or objections to any submissions by Defendants within 30 days of receipt from Defendants. Defendants will respond to any comments from the Monitor within 30 days of receipt from the Monitor. Defendants' response will explain Defendants' position and include any

proposed amendments as necessary to address the Monitor's concerns. Where specified, the Monitor must approve summission before it can be implemented.

112. All such submissions must be sent simultaneously to Class Counsel. Any response from Class Counsel must be sent simultaneously to Defendants. The Monitor may function as a liaison to secure Class Counsel's input and feedback on any submissions. The Monitor will permit all Parties to review and comment on any final plans, policies, procedures, or other materials required by this Consent Decree prior to implementation with sufficient time such that Defendants can modify their plans, policies, procedures, or other materials prior to the implementation deadline in light of input from Class Counsel.

113. The Parties and the Monitor may work collaboratively on developing and revising any materials related to this Consent Decree.

114. Any party is free to seek intervention by the Court in the event the parties and the Monitor are unable to resolve any disagreements about the implementation of any provision of this Consent Decree. If a party seeks intervention by the Court, the implementation timelines will be tolled while the Court undertakes review. Absent the objecting party's consent, implementation will not begin until the Court resolves the dispute.

## D. The Monitor's Compliance Reviews and Reports

115. The Monitor will conduct reviews every six (6) months for the first three years the Monitor is in place and annually for each year thereafter that the Monitor is in place to determine whether the County, CCCL Judges, and Sheriff have substantially complied with the requirements of this Consent Decree. Compliance with the requirements means that the County, CCCL Judges, and Sheriff: (a) have incorporated the requirements into policy and explicitly rescinded and eliminated any existing, contradictory policies; (b) have trained all relevant personnel as necessary to fulfill their responsibilities pursuant to the requirements; and (c) are carrying out the requirements of the Consent Decree in actual practice.

116. No later than 60 days after appointment of the Monitor, the Monitor will develop a plan ("Monitoring Plan") for conducting compliance reviews and audits for the first year of implementation, and share it with the parties for review and comment. The Parties will have 30 days to provide comments or objections. In subsequent years, the Monitor will, in coordination with the Parties, prepare an annual Monitoring Plan for each year the Monitor is in place. The Monitoring Plan will be made public, including by being posted on the Website described in Section 90, will clearly delineate the requirements of this Consent Decree to be assessed for compliance, will identify the proposed methodology for auditing compliance, and will create a schedule with target dates for conducting reviews or audits of applicable requirements.

117. Every six (6) months for the first three years after the Monitor is appointed and annually for each year thereafter, the Monitor will file with the Court, and the County will publish, written public reports regarding the status of compliance with this Consent Decree, which will include the following information:

47

a. A description of the work conducted by the Monitor during the reporting period;

b. A description of each Consent Decree requirement assessed during the reporting period, indicating which requirements have been, as appropriate, incorporated into policy (and with respect to which pre-existing, contradictory policies have been rescinded), the subject of training, and carried out in actual practice;

c. The methodology and specific findings for each compliance review conducted;

d. For any requirements that were reviewed or audited and found not to have been implemented, the Monitor's recommendations regarding necessary steps to achieve compliance;

e. A projection of the work to be completed during the upcoming reporting period;

f. A summary of any challenges or concerns related to the County, CCCL Judges, and Sheriff achieving full and effective compliance with this Consent Decree;

g. Whether any of the definitions in the Consent Decree need to be updated, and whether any additional terms need to be defined;

h. For each requirement of the Consent Decree that is assessed, whether the requirement is producing the desired outcomes of:

   i. Maximizing pretrial liberty;
   ii. Maximizing court appearance; and
   iii. Maximizing public safety.

i. The feasibility of conducting an estimated accounting of the cost savings to the County through any reductions in pretrial detention, including comparing estimated costs of jailing misdemeanor arrestees prior to trial for each year the Monitor is in place relative to the costs of jailing misdemeanor arrestees prior to trial in each of 2015, 2016, and 2017 and order an accounting if feasible.

118. The Monitor will provide a copy of the reports to the Parties in draft form not more than 30 days after the end of each reporting period. The Parties will have 30 days to comment and provide such comments to the Monitor and all other Parties. The Monitor will have 14 days to consider the Parties' comments and make appropriate changes, if any, before filing the report with the Court.

119. The Monitor will be available for the accountability meetings described in Sections 91–92 of the Consent Decree to speak with community members regarding its findings and to learn what community input is being shared during such meetings.

48

120. The Monitor will publish a comprehensive assessment after 2 years, 5 years, and 7 years have elapsed since the entry of this Consent Decree. The comprehensive assessment will report whether and to what extent the County, CCCL Judges, and Sheriff are in compliance with this Consent Decree, whether the outcomes intended by this Consent Decree are being achieved, and whether any modifications to this Consent Decree are necessary in light of changed circumstances or unanticipated impact (or lack of impact) of the requirements. The comprehensive assessment must be filed with the Court and is public.

    a. This comprehensive assessment will also address the areas of greatest progress and achievement, and the requirements that appear to have contributed to these achievements, as well as areas of greatest concern, including strategies for accelerating full and effective compliance.

    b. Based upon this comprehensive assessment, the Monitor will recommend any modifications to this Consent Decree necessary to achieve and sustain intended results. To the extent the Parties agree with the Monitor's recommendations, the Parties will move the Court to modify this Consent Decree accordingly. In the event of a disagreement that the Monitor is unable to resolve, the Parties will submit their positions to the Court for resolution. Nothing in this Consent Decree will empower the Monitor to unilaterally modify any term of this Consent Decree.

121. The Monitor may, at any time, prepare written reports on any issue or set of issues covered by the Consent Decree following the same process as applicable to the reports described in Sections 115–119.

122. All reports must be filed with the Court on the public docket and made available on the public website described in Section 90 of this Consent Decree.

123. The Monitor may raise any issue related to this Consent Decree with the Court at any time.

124. The Monitor must maintain regular contact with all parties, including conducting quarterly meetings with each of Class Counsel and representatives of the County, the Sheriff, and the CCCL Judges about implementation of this Consent Decree.

### E. Technical Assistance and Recommendations by the Monitor

128. The Monitor may, at the request of the County, CCCL Judges, Class Counsel, or on its own initiative, provide technical assistance, to the extent the Monitor has relevant skills and experience, and may make recommendations to the Parties regarding measures that the Monitor believes are likely to facilitate timely, full, and effective compliance with this Consent Decree and achievement of its underlying objectives. Such assistance may include recommending consultants and experts to assist the County, Sheriff, CCCL Judges, and any other entity or agency involved in the implementation of this Consent Decree; suggestions to change, modify, or amend a provision of this Consent Decree; to develop or amend policy; to provide additional training in any area related to this Consent Decree; or to modify the content or form of existing training.

### F. Access and Confidentiality

129. The Court Monitor will have access to all staff, data, information, documents, and facilities reasonably necessary to conduct its work, all of which must be made accessible to the Monitor by the County, the CCCL Judges, and the Sheriff.

130. The Monitor will provide the County, CCCL Judges, and Sheriff with reasonable notice of a request for documents or data.

131. The Monitor will maintain all confidential or non-public information provided by the County, Sheriff, and CCCL Judges in a confidential manner in keeping with all applicable state and Federal laws. However, the Monitor may negotiate continued use of the information and data for non-profit and/or research purposes on its own behalf if consistent with federal and state law. Defendants will approve lawful continued use absent good cause as determined by the Court.

132. Information obtained from the County, CCCL Judges, Sheriff, or other county agency will be the property of the County and copies of all completed or partially completed information, programs, inventions, software, firmware, designs, documentation or data developed, created, or invented under this Consent Decree must be delivered to the County, CCCL Judges, Sheriff, or other county agency upon conclusion of the Monitor's work, including upon resignation or termination, if applicable. Class Counsel must have access to all of the above, subject to reasonable procedures relating to confidentiality and nondisclosure.

133. The Monitor may not copy, recreate, or use any proprietary information or documents obtained in connection with this Consent Decree other than for the performance of this Consent Decree, subject to negotiated continued use for non-profit or research purposes.

### XV. CONTINUING JURISDICTION

### A. Continuing Jurisdiction & Enforcement

134. The Parties will comply with the terms of this Consent Decree. The Court retains jurisdiction to enforce this Consent Decree.

135. This Court will retain jurisdiction over this matter and allow the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance, and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

136. Nothing in this Consent Decree may be construed to limit the equitable powers of the Court to modify these terms upon a showing of good cause by any party.

### B. Process for Seeking Modification

50

137. The Court retains jurisdiction to oversee and enforce compliance with this Consent Decree and to require modifications for good cause shown in its equitable discretion. Either party may request modification of any aspect of this Consent Decree, provided that the parties confer prior to the request and make a good-faith effort to come to an agreement. The parties must also notify the Monitor at least 21 days prior to any such request, and the Monitor will provide a recommendation to the Court not later than seven (7) days after the filing of such a request by a party. The parties may jointly agree to modify or amend this Consent Decree. Such joint modifications and amendments will be encouraged when the parties agree, or when the Monitor's review demonstrates that an alternative policy would better further the goals of the Consent Decree, which include promoting the government's compelling interests in pretrial liberty, court appearance, and public safety. At all times, Defendants will bear the burden of demonstrating by a preponderance of the evidence full and effective compliance with this Consent Decree.

### C.   Procedures in the Event of Noncompliance

138. In the event any of the Defendants is deemed by the Monitor to be not in compliance with any term of the Consent Decree, the Parties must attempt to identify the source of any problems inhibiting compliance and create a plan and timeline for the County to achieve compliance. If the parties are unable to resolve the issue, they may submit the dispute to the Court for resolution.

139. In the event Class Counsel has a reasonable belief that any of the Defendants is not in compliance with the terms of the Consent Decree, Class Counsel must notify the Monitor and Defendants and confer in a good-faith attempt to resolve the issue. Only if the Parties are unable to achieve a resolution may they submit the dispute to the Court.

### D.   Force Majeure

140. The Parties recognize that the possibility exists that circumstances outside the reasonable control of the County could delay compliance with the timetables contained in this Consent Decree. Such situations include, but are not limited to, unforeseen catastrophic environmental events, such as Hurricane Ike in 2008 and Hurricane Harvey in 2017, both of which required an immediate and time-consuming response by Harris County government and both of which caused severe interruptions in the operations of the County's court system. Should a delay occur due to such circumstances, any resulting failure to meet the timetables set forth herein will not constitute a failure to comply with the terms of this Consent Decree, and any deadlines occurring within one hundred twenty (120) days of the termination of the delay will be extended one day for each day of the delay, or more if the Parties so agree.

## XVI.   EFFECTIVE DATE

This Consent Decree will become effective upon entry by the Court.

Case: 26-20337      Document: 2-1      Page: 392      Date Filed: 06/25/2026

Ordered this __21st__ day of ___November___, 2019.

_____
Hon. Lee H. Rosenthal District Judge

Chief Judge, Southern District
of Texas

Houston Division

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

1000 LOUISIANA
SUITE 5100
HOUSTON, TEXAS 77002
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

_____

SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100
_____

SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880
_____

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330
_____

NEAL MANNE
DIRECT DIAL (713) 653-7827

E-MAIL NMANNE@SUSMANGODFREY.COM

November 6, 2025

The Honorable Lee H. Rosenthal
District Judge
United States District Court, Southern District of Texas
515 Rusk Avenue
Houston, Texas 77002

Re:     ***ODonnell et al. v. Harris County, Texas et al.*, No. 4:16-cv-1414, Request for
        Scheduling Conference on Joint Proposed Scheduling Order**

Dear Judge Rosenthal:

The parties opposing vacatur of the *ODonnell* Consent Decree—Plaintiffs, Harris County, Sheriff Ed Gonzalez, and Twelve CCCL Judges (the "Non-Moving Parties")—jointly submit this letter in accordance with Court Procedure 4. The Parties have conferred in good faith and are unable to agree on a proposed schedule regarding the motions to vacate the Consent Decree to be filed (or refiled) by the Attorney General and four CCCL Judges. The Non-Moving Parties respectfully request that the Court hold a remote scheduling conference to resolve the issue.

The crux of the dispute is whether, as the Non-Moving Parties propose, the scheduling order should permit a discovery period or, as the Attorney General and Four Judges propose, the Court should decide the motions to vacate on the current evidentiary record that, with the exception of the Monitor's reports, has been closed since 2019. Specifically, the Non-Moving Parties propose a schedule with a six-month discovery period to allow them to obtain the information, records, and sworn testimony necessary to assemble the full evidentiary record required to oppose the motion. Dkt. 764 at 34. That proposed schedule is attached as Exhibit A. The Attorney General and Four Judges oppose discovery. Their proposed schedule is attached as Exhibit B.

The Attorney General's motion presents intensely fact-bound questions that require discovery to answer. For this reason, Plaintiffs have maintained that they require "sufficient discovery to ensure the Court has an ample evidentiary record on which to consider the Parties'

November 6, 2025
Page 2

arguments." Dkt. 755 at 3 n. 2. The proposed six-month discovery period will enable the Non-Moving Parties to gather evidence related to the following critical questions:

1) Precisely how has the Harris County misdemeanor bail system been functioning under the Consent Decree and since S.B. 6 and S.B. 9 went into effect.

2) What would be the effect of vacating the Consent Decree? Would it expose class members to constitutional violations, such as reverting back to certain pre-Rule 9 practices where numerous class members had cash bail imposed in perfunctory proceedings without the findings and safeguards required by the Constitution?

3) Have the Parties been complying with the Consent Decree in full? Has the Consent Decree's purpose been fully achieved and a durable remedy implemented in all respects such that the Consent Decree is no longer needed?

4) Assuming either S.B. 6 or S.B. 9 conflicts with the Consent Decree—or that the interpretation of those statutes by officials conflicts with the Consent Decree—would complying with that statute remedy the constitutional violations the Consent Decree was entered to address or itself result in constitutional violations? Would it frustrate the core purpose of the Consent Decree to prevent certain constitutional violations?

5) Do the public interest, extraordinary circumstances, or other equities support a modification of the Consent Decree? How would a modification affect administrative burdens on Harris County employees, public dollars spent on unnecessary pretrial detention, and the impact on public safety as a result of unnecessary pretrial detention?

6) If circumstances warrant modification of the Consent Decree, what modification is suitably tailored to those circumstances?

Answering these questions will require discovery into current practices, policies, training materials, and guidance; caseloads at magistration for hearing officers, prosecutors, and public defenders; hearings and bail orders; staffing levels and workloads for pretrial services and sheriff's deputies responsible for processing and moving individuals through the Joint Processing Center; bail hearings in the County Criminal Courts at Law; information concerning the interpretation of the new law by relevant officials; and qualitative and quantitative analysis. It will demand documents, videos, sworn declarations, and, possibly, deposition testimony from people with unique knowledge of the Harris County misdemeanor system: employees of the Sheriff's Office, the Public Defender's Office, Pretrial Services, the District Attorney's Office, the Office of Court Administration, and certain Criminal Law Hearing Officers and Judges. Thus, the Non-Moving Parties seek leave to each serve no more than ten (10) interrogatories, ten (10) requests for production, ten (10) requests for admission, and eight (8) deposition subpoenas (which they will limit to the extent possible).[1] Adopting the Non-Moving Parties' proposed schedule will enable

---

[1] For context, the preliminary injunction record presented to the Court almost a decade ago included nearly 300 written exhibits, 2,300 video recordings of bail-setting hearings, numerous sworn depositions and declarations, and a two-week evidentiary hearing featuring live testimony from thirteen witnesses. *See ODonnell v. Harris Cnty., Texas*, 251 F. Supp. 3d 1052, 1061 (S.D. Tex. 2017), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018).

November 6, 2025
Page 3

the Court to conduct the fact-intensive analysis required by Rule 60, and give the Court the "full record" it envisioned in its order on intervention. Dkt. 764 at 34.

Plaintiffs alone note one more reason discovery is crucial. Plaintiffs have received some reports of noncompliance with the Consent Decree, particularly since the Attorney General moved to intervene in late August and S.B. 9 went into effect on September 1, 2025. The requested discovery period will not only allow Plaintiffs to answer the questions pertinent to the Rule 60 analysis, it will also help them evaluate whether compliance issues exist and whether those issues demand further action from this Court. In the meantime, Plaintiffs respectfully request that the Court remind the Parties that the Consent Decree remains in full effect and that the Parties must comply with all of its provisions unless vacated by this Court.

The Non-Moving Parties respectfully request the Court set a conference to decide whether discovery is needed to respond to the motions to vacate, and Plaintiffs further request that the Court order the Parties to comply with the Consent Decree while the motions are pending.

Respectfully Submitted,

/s/ Neal S. Manne

| | |
|---|---|
| Alec George Karakatsanis | Neal S. Manne |
| alec@civilrightscorps.org | Texas Bar No. 12937980 |
| Elizabeth Rossi | nmanne@susmangodfrey.com |
| elizabeth@civilrightscorps.org | Joseph S. Grinstein |
| Jeremy D. Cutting | Texas Bar No. 24002188 |
| cody@civilrightscorps.org | Abbey E. McNaughton |
| CIVIL RIGHTS CORPS | Texas Bar No. 2411675 |
| 1601 Connecticut Ave NW, Suite 800 | SUSMAN GODFREY L.L.P. |
| Washington, DC 20009 | 11000 Louisiana Street, Suite 5100 |
| Telephone: (202) 681-2721 | Houston, Texas 77002 |
| | Telephone: (713) 651-9366 |

| | |
|---|---|
| Dustin Rynders | |
| Texas Bar No. 24048005 | Morgan McCollum |
| dustin@texascivilrightsproject.org | mmccollum@susmangodfrey.com |
| Travis Fife | SUSMAN GODFREY L.L.P. |
| Texas Bar No. 24126956 | One Manhattan West |
| travis@texascivilrightsproject.org | New York, NY 10001 |
| TEXAS CIVIL RIGHTS PROJECT | Telephone: (212) 336-8330 |
| 2100 Travis Street | |
| Houston, TX 77002 | |
| Telephone: (512) 474-5073 | *Attorneys for Plaintiffs* |

November 6, 2025
Page 4

CHRISTIAN MENEFEE
Harris County Attorney

/s/ Jonathan Fombonne
Jonathan Fombonne
Deputy County Attorney and First Assistant
Seth Hopkins
Special Assistant County Attorney
Rachel Fraser
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5141
Seth.Hopkins@cao.hctx.net

*Attorneys for Defendant Harris County*

/s/ Allan Van Fleet
Allan Van Fleet
G. Allan Van Fleet, P.C.
Texas Bar No. 20494700
6218 Elm Heights LN, Suite 201
Houston, TX 77081-2409
Telephone: (713) 826-1954
allanvanfleet@gmail.com

*Attorney for Defendants 12 County
Criminal Court at Law Judges*

/s/ Murray Fogler
Murray Fogler
Fogler, O'Neil & Gray LLP
909 Fannin St, Suite 1640
2 Houston Center
Houston, TX 77002
Telephone: (713) 481-1010
mfogler@foglerbrar.com

*Attorney for Sheriff Ed Gonzalez*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | No. 4:16-cv-01414 (Consolidated Class Action) Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al., | ) | U.S. District Judge |
| Defendants. | ) ) ) | |

**[PROPOSED] SCHEDULING ORDER**

After consideration and good cause appearing, the Court enters the following scheduling order and deadlines in the above-captioned case:

**December 11, 2025** Deadline for Judges Goodhart, Padilla, Johnson, and Garcia to file a motion to vacate the Consent Decree, and for the Texas Attorney General to file a revised motion to vacate the Consent Decree.

**December 12, 2025** Open of fact discovery.

Each party has leave to serve ten (10) requests for production, ten (10) interrogatories, ten (10) requests for admission, and to take eight (8) depositions. Absent a further order from the Court, Rule 26 will govern the scope and timing of discovery.

**June 12, 2026** Close of fact discovery.

**July 13, 2026** Deadline for non-moving parties to file responses to the motions to vacate.

**August 13, 2026** Deadline for moving parties to file replies in support of their motions to vacate.

**August 27, 2026**     Hearing on motions to vacate.


DATED this _____ day of _____, 2025.


_____
Hon. Lee H. Rosenthal
U.S. District Judge

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| _____ | ) | |
| MARANDA LYNN ODONNELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 4:16-cv-01414 |
| v. | ) | (Consolidated Class Action) |
| | ) | Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al., | ) | U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] SCHEDULING ORDER**

After consideration and good cause appearing, the Court enters the following scheduling

order and deadlines in the above-captioned case:

**December 11, 2025**   Deadline for Judges Goodhart, Padilla, Johnson, and Garcia to file a motion to vacate the Consent Decree, and for the Texas Attorney General to file a revised motion to vacate the Consent Decree.

**January 12, 2026**   Plaintiff or other Responses to Motions Due

**February 2, 2026**   Replies Due

**TBD if necessary**   Hearing

DATED this _____ day of _____, 2025.

_____
Hon. Lee H. Rosenthal
U.S. District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs,** | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS, *et. al.*, Defendants.** | § § § | |

### DEFENDANTS', JUDGES PAULA GOODHART'S, JESSICA PADILLA'S, LESLIE JOHNSON'S, AND LINDA GARCIA'S <u>MOTION TO VACATE THE CONSENT DECREE</u>

TO THE HONORABLE JUDGE OF THIS COURT:

With the passage of Texas's bail-reform laws and the Fifth Circuit's opinion in *Daves v. Dallas Cty.*, 64 F.4th 616 (5th Cir. 2023) (en banc), Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges"), file this Motion asking the Court to vacate or, at minimum, modify the Consent Decree to be consistent with State law. Dkt. 708. The Judges request oral argument on this Motion.

i

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

NATURE AND STAGE OF THE PROCEEDING.......................................................................2

    I.    Lawsuit Background ................................................................................................2

    II.   November 2019 – Consent Decree .........................................................................3

    III.  The current version of Rule 9 was amended in 2022, without complying with the
         Consent Decree. .....................................................................................................5

    IV.  The Texas Legislature enacted S.B. 6 and S.B. 9. .................................................5

    V.   The Consent Decree prevents compliance with state law – and the Judges have been
         threatened with federal contempt if they comply with S.B. 9 ...............................7

    VI.  Attempts to confer with the Monitors have failed. ...............................................10

    VII. The Attorney General for the State of Texas has intervened and asked the Court to
         vacate the Consent Decree. ...................................................................................12

ISSUES TO BE RULED ON........................................................................................................13

SUMMARY OF THE ARGUMENT ...........................................................................................13

ARGUMENT.................................................................................................................................15

    I.    Challenges to Justiciability ...................................................................................15

        A.  Under Daves II, significant changes to Texas' bail reform laws require that the
            Consent Decree be vacated for mootness ...................................................15

        B.  No Article III case or controversy .................................................................15

    II.   Rule 60(b) requires that the Consent Decree be vacated or, at minimum, modified.......17

        A.  Rule 60(b)(5) and (b)(6)................................................................................18

        B.  Rule 60(b)(4)..................................................................................................20

        C.  Timeliness......................................................................................................20

    III.  Younger Abstention ..............................................................................................20

CONCLUSION AND PRAYER ...................................................................................................23

## INDEX OF AUTHORITIES

**Cases**

570 U.S. 744 (2013) ........................................................................................................16

*Colbert v. Paul,*
  858 F. App'x 702 (5th Cir. 2021) (per curiam) ...........................................................16

*Daves II,*
  64 F.3d ........................................................................................................................20

*Daves v. Dallas Cty.,*
  64 F.4th 616 (5th Cir. 2023) (en banc) ............................................................. i, 13, 15

*Daves v. Dallas Cty.,*
  22 F.4th 522 (5th Cir. 2022) .....................................................................................21, 22

*Drinks, L.L.C. v. Landry's Inc.,*
  No. 23-20506, 2025 U.S. App. LEXIS 20188 (5th Cir. 2025) (per curiam) ..............20

*Frazar v. Ladd,*
  457 F.3d 432 (5th Cir. 2006) .......................................................................................13

*June Med. Servs. LLC v. Phillips,*
  640 F. Supp. 3d 523 (M.D. La. 2022) .........................................................................18

*Little v. Doguet,*
  71 F.4th 340 (5th Cir. 2023) ........................................................................................22

*LULAC v. City of Boerne,*
  659 F.3d 421 (5th Cir. 2011) .......................................................................................17

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ....................................................................................................21

*ODonnell v. Goodhart,*
  900 F.3d 220 (5th Cir. 2018) .....................................................................................2, 22

*ODonnell v. Harris Cty,*
  882 F.3d 528 (5th Cir. 2018) .......................................................................................21

*ODonnell v. Harris Cty,*
227 F. Supp. 3d 706 (S.D. Tex. Dec. 16, 2016) ..........................................................................21

*ODonnell v. Harris Cty.,*
892 F.3d 147–64 (5th Cir. 2018) ..............................................................................2, 21, 22

*Police Ass'n of New Orleans ex rel. Cannatella v. New Orleans,*
100 F.3d 1159 (5th Cir. 1996) ..................................................................................18

*Pool v. City of Houston,*
87 F.4th 733 (5th Cir. 2023) ....................................................................................15

*Pool v. City of Houston,*
978 F.3d 307 (5th Cir. 2020) ...................................................................................13

*Preiser v. Rodriguez,*
411 U.S. 475 (1973) ...............................................................................................21

*Rufo v. Inmates of Suffolk Cty. Jail,*
502 U.S. 367, 380 (1992)......................................................................................17, 18

*Russell v. Harris Cty., No. H-19-226,*
2023 WL 5658936, 2023 U.S. Dist. LEXIS 154051 (S.D. Tex. 2023) ................................14, 15

*U.S. v. Un. Shoe Mach. Corp.,*
391 U.S. 244 (1968) ...............................................................................................19

*Younger v. Harris,*
401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ........................................................13, 21

**Statutes**

Tex. Code Crim. Proc. Art. 17.028 .......................................................................7, 10

Tex. Penal Code § 22.012 ....................................................................................5, 6

Texas Penal Code § 22.01 ...................................................................................3, 11

Texas Penal Code § 22.07 ...................................................................................3, 7

Texas Penal Code § 25.07 .....................................................................................3

Texas Penal Code § 49.04 ......................................................................................................3

Texas Penal Code § 49.09 ......................................................................................................3

5

**INTRODUCTION**

Squarely wedged between the terms of a federal court decree[1] and Texas state law, the Judges are compelled under threat of contempt to bring this Motion to determine the proper bail processes to be employed in Harris County.

Plaintiffs' counsel wrote to the Court's Monitors in September to urge them (and, ultimately, this Court) to tell Harris County judicial officers that if there is a conflict between state law and the local rules "**codified in the federal court Consent Decree**", then judges who swear an oath to uphold the law must violate state law, or face contempt. *See* Appendix A (emphasis added). Clearly, Plaintiffs acknowledge and admit that the Decree contradicts state law.

The Decree also completely usurps judicial discretion. Under the Decree, only the charge against the arrestee, and nothing more, is considered before most class A or B misdemeanor defendants are *automatically* released. But Texas law requires trained magistrates to conduct an individualized review of the circumstances, criminal history, and other factors before ordering appropriate conditions for release. Under the Decree, almost every type of class A and B misdemeanor charge is treated the same, even though some cases involve serious conduct, some arrestees have extensive criminal histories, or other circumstances may show that a person could pose a danger to the victim or community. The Decree does not even have a mechanism to ask a magistrate to review a case that is subject to automatic release.

Texas' strong public policy is to protect not only the rights of the accused, but **also** to protect victims, law enforcement officers, and communities as a whole. The Consent Decree impairs these goals, and should be vacated or, at minimum, modified to be consistent with Texas law.

---

[1] Not insignificant is the fact that the terms go beyond the relief requested in Plaintiffs. Amended Complaint.

1

## NATURE AND STAGE OF THE PROCEEDING

### I.      Lawsuit Background

Originally filed on May 19, 2016 as a challenge to bail and other pretrial procedures for misdemeanor arrestees in Harris County (Dkt. 3), the Complaint was amended in September 2016 and included all judges of the 16 Harris County Criminal Courts at Law ("HCCCL") as defendants. Dkt. 54. The FAC asked that County officials be required to inquire and consider whether arrestees have the ability to pay bail. Dkt. 54 at 121-23. The HCCCL judges moved to dismiss on multiple grounds, including *Younger* abstention, and their motion was denied. Dkt. 125. On January 7, 2017, the Court entered an injunction (Dkt. 302), and on June 1, 2018, the Fifth Circuit narrowed the injunction because it "amounts to the outright elimination of secured bail for indigent misdemeanor arrestees." *ODonnell v. Harris Cty.*, 892 F.3d 147, 163–64 (5th Cir. 2018) (*ODonnell I*). The Fifth Circuit also overruled abstention arguments. *Id*. On August 14, 2018, the Fifth Circuit stayed a second injunction order, explaining it was overbroad in that "[s]ecured bail was not to be eliminated for any category of indigent arrestees, no matter how narrow." *ODonnell v. Goodhart*, 900 F.3d 220, 225 (5th Cir. 2018) (*ODonnell II*).

After these rulings from the Fifth Circuit, the judges who had filed the appeal lost the November 2018 election. Once their successors took office in January 2019, they withdrew the appeal and Plaintiffs filed an unopposed motion asking the Fifth Circuit to vacate its August 2018 stay opinion. Plaintiffs argued that the circumstances were "akin" to mootness, since the defendant judges now agreed with the Plaintiffs' revised preliminary injunction, which was "consistent with [the new judges'] policy views." Appendix B at 3 (Appellees' Unopposed Motion to Vacate Stay Opinion, No. 18-20466, filed Jan. 8, 2019 before the Fifth Circuit Court of Appeals).

Not long after, on August 1, 2019, Plaintiffs and Defendants jointly moved for approval of a class settlement agreement to impose bail-setting rules more sweeping than Plaintiffs had requested in the FAC and, in many respects, even broader than those the Fifth Circuit had already determined were too broad. The Court then entered the Consent Decree. Dkts. 617-2, 708.

## II.        November 2019 - Consent Decree

The stated purpose of the Consent Decree—the jurisdictional support for and terms of which are the principal issues here—was to remedy "systemic and longstanding constitutional violations found by the Court" and to "safeguard arrestees' equal protection and due process rights" such as rights to pretrial liberty and against wealth-based detention. Dkt. 617-1 at 11 ¶ 10. In effect, the Consent Decree limits judicial officers' ability to consider the relevant factors and terms of release for most class A and B misdemeanor arrestees. The Consent Decree required County officials to comply with the HCCCL's Local Rule 9, which at the time stated:

> All misdemeanor arrestees must be released on a personal bond or on nonfinancial conditions as soon as practicable after arrest, except those how fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:
>
> > 9.4.1  Individuals arrested and charged under Penal Code§ 25.07;
> >
> > 9.4.2  Individuals arrested and charged under Penal Code§ 22.01, against a person described in Penal Code § 22.01 (b)(2), or individuals arrested and charged under Penal Code§ 22.07(c)(l);
> >
> > 9.4.3  Individuals arrested and charged under Penal Code§ 49.04 and who the State gives notice may be subject to Penal Code§ 49.09(a) for a conviction that became final within the past five years;
> >
> > 9.4.4  Individuals arrested and charged with any new offense while on any form of pretrial release;
> >
> > 9.4.5  Individuals arrested on a capias issued after a bond forfeiture or bond revocation; and
> >
> > 9.4.6  Individuals arrested while on any form of community supervision for a Class A or B misdemeanor or a felony offense.

Dkt. 708 at 17-18. Rule 9 further states:

> …all misdemeanor arrestees will have unsecured bail amounts set initially at no more than \$100 and be promptly released on a personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial office is not required to sign a personal bond prior to the person's release.

Loc. R. 9.2. To that end, "[s]ecured money bail must not be required as a condition of pretrial release" before a bail hearing. Loc. R. 9.3. The Local Rules define bail hearing as "any legal proceeding that occurs before any judicial officer…." Loc R. 9.3 n.3.

Under the version of Local Rule 9 existing at the time the Consent Decree issued, any person arrested for a class A or B misdemeanor will receive a general order bond and be released **without appearing before a trained magistrate**, unless they are part of specific carveouts for charges of:

1.  **certain bond violations** - committing family violence while already out on bond on a family violence charge, or for committing certain acts in violation of a bond order in certain sexual assault, trafficking or stalking cases (Tex. Penal Code § 25.07);

2.  **family assault or terroristic threat** - committing assault against a family member (Tex. Penal Code § 22.01(b)(2)), or making a terroristic threat of violence against a family member (Tex. Penal Code § 22.07(c)(1));

3.  **certain driving while intoxicated** - if the state gives notice of a potential enhancement for prior DWI conviction (Tex. Penal Code §§ 49.04, 49.09(a)), and the prior conviction became final within the past five years;

4.  any *new* offense (not a violation of a bond order) while already out on bond;

5.  under a warrant issued for forfeiting bond;

6.  any offense while on probation.

Loc. R. 9.4.1–9.4.6.

Rule 9.5 provides that any judge deciding conditions of release "must have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized

hearing." Loc. R. 9.5. Rule 9.7 also prohibits any judge from ordering secured money bail "as a condition of pretrial release at any time in the pretrial period for any misdemeanor arrestee" except for the carveouts listed in Rule 9.4, and Rule 9.10 gives every judicial officer "complete discretion to release **any** misdemeanor arrestee on a personal bond." Loc. R. 9.10 (emphasis added).[2] Under Rule 9, the Sheriff "must not enforce any" secured money bail order without a record that Rule 9 procedures were followed—placing the question of compliance in a non-magistrate's hands—with the instruction that "the Sheriff must deliver to the arrestee a General Order Bond." Loc. R. 9.16.

### III.   The current version of Rule 9 was amended in 2022, without complying with the Consent Decree.

The current version of Local Rule 9 is not the same as what appears in the Consent Decree. *Compare* Loc. R. 9 (attached as Appendix G) *with* Dkt. 708 at 18 ¶¶9.4.1–9.4.6. The main difference is that, in 2022 (before the Judges took the bench), other HCCCL judges amended Rule 9 to add indecent assault as a carveout under paragraph 9.4.2.[3] There is no discussion of this being approved in the monitor's reports, or any other indication that the amendment was submitted to or approved by this Court.

### IV.   The Texas Legislature enacted S.B. 6 and S.B. 9.[4]

At the parties' November 12, 2025 hearing before the Court, Plaintiffs' counsel asked that the Consent Decree remain in place in perpetuity. But the Texas Legislature enacted criminal pretrial procedure reforms in 2021 and amended them in 2025. Each of those enactment was done with specific intent of protecting the safety of victims, law enforcement, and the public:

> In 2021, the legislature passed S.B. 6 addressing the release practices surrounding habitual and violent offenders to better protect the safety of victims, law

---

[2] This Rule directly contradicts S.B. 9, now codified at article  17.03 of the Texas Code of Criminal Procedure.

[3] Indecent assault is a type of sexual assault perpetrated on a person 17 years or older. Tex. Penal Code § 22.012.

[4] *See* Act of September 17, 2021, 87th Tex. Leg. 2d C.S., (S.B. 6); Act of June 16, 2025, 89th Tex. Leg., R.S. (S.B. 9). As the Court is already familiar with these enactments and *Daves II*, a detailed history is not provided here.

enforcement, and our communities. The legislation represents one of the largest overhauls to Texas' bail system; drastically increasing the amount of information available to judges when setting bail and the amount of statewide data tracked on bail outcomes.

Appendix C (Bill Analysis, Tex. S.B. 9, 89th Tex. Leg., R.S. (2025)); *see also* Appendix D (Bill Analysis, Tex. S.B. 6, 87th Tex. Leg., R.S. (2021)).

Texas revised and clarified the legal requirements for governing entities such as Harris County to manage pretrial release. This includes extensive training for magistrates and hearing officers who make bail determinations to ensure that they are considering the appropriate factors when issuing pretrial release orders. Tex. Code Crim. Proc. article 17.024. Importantly, hearing officers **must** conduct an individualized consideration of all circumstances and factors required by statute:

> Without unnecessary delay but not later than 48 hours after a defendant is arrested, **a magistrate shall order**, after individualized consideration of all circumstances and of the factors required by Article 17.15(a), that the defendant be: (1) granted personal bond with or without conditions; (2) granted surety or cash bond with or without conditions; or (3) denied bail in accordance with the Texas Constitution and other law.

Tex. Code Crim. Proc. art. 17.08(a) (emphasis added).

Article 17.15 specifically requires magistrates to consider "the nature of the offense and the circumstances under which the offense was committed," including not only family violence offenses but also whether the charges involve violence against a peace officer. *Id*. at art. 17.15. Magistrates must also consider the safety of the victim, law enforcement, and the community, the arrestee's criminal history, and citizenship status. *Id*. at art. 17.15(5)–(7). If a person is arrested under a warrant, the arresting officer "shall" take the arrestee before a magistrate to provide specific warnings under Article 15.17. *Id*. at art. 15.17(a). Not only are warnings provided, but counsel is appointed for indigent arrestees at that time. *Id*. Additionally, S.B. 9 amendments prohibit a defendant from being released on personal bond if, with certain exceptions, that

6

defendant is charged with certain offenses, including a terroristic threat under Texas Penal Code § 22.07. *See id*. at art. 17.03(b–2)(1)(B)(ii)).

Texas also implemented a public safety report system ("PSRS") through the Office of Court Administration ("OCA"). The PSRS details Article 17.15 requirements for setting bail and information about defendants, including their eligibility for release on a personal bond, criminal history, any prior failures to appear in court, whether they are on probation or are participating in intervention programs, have any outstanding warrants, or are the subject of a protective order. *Id*. at art. 17.021. As OCA explains it, the system serves several functions, including by generating "a public safety report with respect to a defendant for magistrates to consider before setting bail for defendants charged with a Class B misdemeanor or higher category offense…." Appendix E Public Safety Report System (PSRS) Information for District and County Court Judges, available at https://www.txcourts.gov/media/1453754/sb6-district-and-ccl-psrs-info-sheet.pdf (last visited December 11, 2025)). The system is live, and incorporates more information under changes from S.B. 9, which addresses the release of habitual and violent offenders. Appendix F (Senate Bill 9, 89th Legislature, available at https://www.txcourts.gov/media/1461101/senate-bill-9_overview-final-version_82525.pdf (last visited December 11, 2025)). Information in that system is not the only item that a magistrate relies on in making a bail decision. Tex. Code Crim. Proc. Art. 17.028.

**V.  The Consent Decree prevents compliance with state law—and the Judges have been threatened with federal contempt if they comply with S.B. 9.**

The Consent Decree conflicts with, and prevents compliance with, state law. As structured, no magistrate or hearing officer can or will consider the criminal history or facts surrounding the arrest for any class A or B misdemeanor charge that is not excepted under Local Rule 9.

Those charged with non-carved out misdemeanor offenses are automatically released with no individualized review, even though such review is required by state law. Among those who do not see a judge before release are:

- persons with an extensive or even violent criminal history, or who have indicated that they will reoffend or will not stay away from the victim after release, if they are charged with a class A or B misdemeanor that is ***not*** excepted from automatic release;

- persons charged with driving while intoxicated if it is their first offense (without regard to facts such as whether there was an accident or open container, or if there was a high alcohol concentration), or if they have a prior DWI conviction that is more than 5 years old, or if they have a DWI conviction within the last 5 years that is not discovered before they are released (e.g., if it was outside of Harris County and that record was not immediately accessible);

- persons charged with all other class A and class B misdemeanors, including:

    o burglary of a motor vehicle,
    o indecent exposure (first and second offenses),
    o terroristic threat against a non-family member,
    o harboring a runaway,
    o unlawful use of a criminal instrument,
    o assault on a non-family member,
    o unlawful restraint,
    o interference with an emergency telephone call, and
    o Attempted escape.

Based on monitor reports submitted to the Court, over 38,000 (72% of the total) misdemeanor cases filed in Harris County in 2024 resulted in pre-trial release of the arrestee on personal bond or less with no required bail review. Dkt. 739-1 at p. 28. Roughly two-thirds of the misdemeanor cases filed in Harris County were released on the same terms over the last five years. *Id*. Setting aside state law requirements, these figures are troubling on their own. Of the review done by the monitor to analyze whether bonds are successfully completed, the failure rate for personal bonds jumped from 22% in 2015 to 41% in 2017, after the injunction was entered here, and sat at 31% in 2023. Dkt. 739-1 at p. 36. By comparison during those same periods, failure rates for bail set on surety bonds was 16%, 16% and 15%, respectively. *Id*. The clear reality is that

8

secured bail bonds are forfeited or revoked far less often than personal bonds, which is an indicator

that personal bonds experience higher nonappearance rates, new offenses committed while on

bond, or other important violations. *Id*.

As public safety remains an objective of the Consent Decree, it is worth considering that

serious crimes have been committed by persons released from custody on a general order bond

("GOB"),[5] including:

- Kelvin Hinton died on August 14, 2024. His accused murderer, Michael Mack, was released four days earlier on a GOB after making harassing communications against a woman who had left him, and Hinton was the current boyfriend of that woman. No magistrate reviewed Mack's statements, criminal history, or considered the safety of the victim or the community before Mack was released on a GOB.

- Parnell Bland is accused of shooting a Harris County Constable's office Deputy in front of the Harris County Family Law Center in the middle of the day. Bland was out on a GOB after being arrested for criminal trespass, with a lengthy criminal history that included possession of a firearm by a felon. No magistrate reviewed the circumstances of Parnell's arrest, his criminal history, or considered the safety of the victim or community, before Parnell received a standing order release bond.

- A 17-year-old girl from California, where the age of consent is 18, was found with a nude 30-year-old Arturo Camarena in a hotel room after she ran away from home. Camarena was charged with harboring a runaway, and was released on a GOB— despite the fact that he had driven from California to Texas to see this girl, and had told police that he would stay with the girl even if it was unlawful to do so. No consideration was given to the circumstances, or to the victim's safety, before he was released.

- Johnny Angali Harris was released on a GOB after being arrested for masturbating in a store, chasing a woman who was in the store with her two children, then going to a Jack in the Box and jumping over the counter and chasing employees, still with his pants down. He had a criminal history that included threatening to rape his ex-girlfriend's 15-year-old daughter, a threat of raping a public servant, and theft with a firearm, along with 15 prior convictions.

---

[5] A GOB under the Consent Decree is a single pre-signed document executed by an associate judge and duplicated by the Sheriff for each case. It is not the same as a personal bond, which a judge or magistrate issues after considering the facts and surrounding circumstances. A GOB, on the other hand, issues as a standing order without any judicial officer knowing anything about the case, defendant, or facts. Texas law not only requires magistrates to conduct an individualized review before issuing a bond order, it also prohibits standing general orders that violate Texas law.

Despite the serious risks of ignoring individualized review before release, **Plaintiffs' counsel have threatened and demanded that judicial officers must be instructed to outright violate S.B. 9**:

> As you are aware, Senate Bill 9 took effect on September 1, 2025. In addition to other changes, Senate Bill 9 amended Article 17.03 to require cash bail for certain enumerated offenses, including three misdemeanors: terroristic threat Class A, unlawful possession of a weapon, and violating certain protective orders. Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree issued in the *ODonnell* litigation.

Appendix A at 1–2 (emphasis added). Mr. Manne points out that hearing officers are explaining the reason for orders when "a personal bond is prohibited under Senate Bill 9." *Id*. He asks that,

> To protect the Plaintiff class going forward, <u>we ask the County to remind the Hearing Officers to follow the binding order of the federal court</u>, including in circumstances such as the application of Art. 17.03 <u>where the Hearing Officers may encounter a conflict between what state law and the Consent Decree require</u>.

*Id*. at 4 (emphasis added). But the Judges, and judicial officers in Harris County, must be able to follow and enforce state law without impending threats of federal contempt.

### VI.     Attempts to confer with the Monitors have failed.

The Judges have raised concerns with the Monitors, explaining that the Decree violates state law. Dkt. 740-2. Specifically, the Judges explained that Article 17.028 of the Texas Code of Criminal Procedure requires a magistrate to make an appropriate pretrial release order. Under the Decree, no such review occurs for most arrestees; instead, a person is entered into the system based on their charges, and if the charge does not meet a carveout (regardless of criminal history or enhancement factors, in most situations), the Sheriff must issue a the Consent-Decree approved and issued GOB, and release. But Texas law prohibits a judge from adopting a bail schedule or standing order relating to bail that is inconsistent with Article 17. Tex. Code Crim. Proc. art. 17.028(d). The GOB is inconsistent with Article 17 because it completely removes most class A

and B misdemeanors from any magistrate consideration whatsoever, before releasing them. Those individuals do not receive any advice of counsel, which they would have had at a Harris County bail hearing. For example, a person charged with unlawful restraint, which is a class A misdemeanor under Section 20.02 of the Texas Penal Code, may have a criminal history of felony unlawful restraint—but under the Consent Decree, they **must be** automatically released without allowing a magistrate to do their job under Texas law, and consider whether a personal bond is appropriate, or if additional conditions should be set for release.

Local Rule 9 also requires automatic release for all arrestees, including carveouts from automatic release, if they have not appeared before a judicial officer within 48 hours of arrest. Loc R. 9.18 ("If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee"). **That means even a violent or habitual offender is released if they have not appeared before a magistrate within 48 hours**. What this Rule does not account for is arrestees who require mental health or medical care at the time of arrest. They may easily exceed the 48-hour requirement and still receive release with a GOB. For example, someone charged with a class A misdemeanor for assaulting a family member[6] who requires medical or mental health care may be released with no pretrial conditions or emergency protective order to ensure the victim's safety.

The Monitors first questioned whether the issues were "properly before them," contending that only a majority of the HCCCL judges may raise an issue to them, including one that rises to the level of the Consent Decree's violation of state law. The Monitors then outright rejected any

---

[6] Under Texas Penal Code § 22.01(b), assault is a class A misdemeanor, and is not considered a third-degree felony unless certain circumstances exist, including if the defendant has a prior conviction for assault on a family member or the offense was committed by intentionally or recklessly impeding the victim's breathing or blood circulation by applying pressure to their throat or neck or blocking their nose or mouth. Tex. Penal Code § 22.01(b)(2).

11

change to Rule 9.18, completely declining to consider any potential threat to public safety that Texas law requires magistrates and hearing officers to consider, stating "[t]here is no reason, based in Texas law, for eliminating the 48-hour remedy…." Dkt. 742-4 at 4.

The Monitors also rejected the idea of having a magistrate or judge to engage in early-stage review on paper to consider Article 17.15 factors. Dkt. 742-4. They disagreed with early review by a "judge or magistrate" who "would have complete discretion…to either grant a personal bond, or deny one…." *Id.* at 5. Currently, no judge or officer conducts (or can conduct) such review— and there is **no discretion** to permit such review or require a hearing for non-carveout Class A or B misdemeanor cases.

### VII. The Attorney General for the State of Texas has intervened and asked the Court to vacate the Consent Decree.

The State of Texas moved to intervene in August of this year, and also moved to vacate the Consent Decree. Dkts. 740 & 742. The Court granted intervention in part, allowing the State to move to vacate or amend the Decree based on mootness under Texas law, and denied the State's ability to argue *Younger* abstention. Dkt. 764 at 35.

## ISSUES TO BE RULED ON

1. <u>Justiciability</u> The Consent Decree is moot following the passage of Texas bail reform laws under Senate Bill 6 and Senate Bill 9, as the Fifth Circuit made clear in *Daves*, and no case or controversy exists.

   *Standard of review* – A ruling on mootness is reviewed *de novo. Daves v. Dallas Cty.*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc), as are rulings on whether a case or controversy exists. *Pool v. City of Houston,* 978 F.3d 307, 311 (5th Cir. 2020).

2. <u>Texas Law</u>. Under Rule 60(b), should the Consent Decree be vacated or, at minimum, modified, following Texas' enactment of bail reform?

   *Standard of review* – Rule 60(b) rulings are reviewed for an abuse of discretion. *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006).

3. <u>Abstention</u>. Should the Court abstain under the *Younger*[7] doctrine, as the Fifth Circuit has suggested?

   *Standard of review* – Whether the prerequisites of abstention have been satisfied are reviewed de novo.

## SUMMARY OF THE ARGUMENT

After the Consent Decree issued, Texas enacted sweeping reform of pretrial procedures, the Fifth Circuit issued *Daves v. Dallas Cty*., 64 F.4th 616 (5th Cir. 2023) (en banc) ("*Daves II*"), and the Legislature amended its bail-reform laws in 2025. No party to this case challenges whether Texas' 2021 bail-reform laws are constitutional, or argues that those laws do not adequately safeguard against the due process concerns that caused Plaintiffs to file this lawsuit in 2016.

As the Attorney General has argued, Texas' new bail-reform laws moot the issues raised in this case, and deprive the Court of jurisdiction over this matter, necessitating the dissolution of the Consent Decree and dismissal of this case.

In *Daves II*, the Fifth Circuit made clear that—

…S.B. 6 mooted the challenges in *Daves*, despite the plaintiffs citing to similar continued constitutional violations. *Daves*, although involving different facts, is

---

[7] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

largely legally identical to *Russell*. Adherence to Fifth Circuit authority requires that this case be dismissed as moot. Having made that ruling, the court need not address any other basis for dismissal.

*Russell v. Harris Cty.*, No. H-19-226, 2023 WL 5658936, 2023 U.S. Dist. LEXIS 154051, at *14 (S.D. Tex. 2023) (also explaining that, beginning with *Daves* I, the Fifth Circuit retracted from the findings and legal conclusions reached in *ODonnell*).

Even if Texas' new laws did not moot the Consent Decree, the Court should vacate the Decree because it conflicts with Texas law or, at minimum, modify it to ensure that it does not conflict with Texas law—including by ensuring that judicial officers may review cases involving circumstances that could pose a threat to public safety.

Finally, *Daves II* overruled its prior holding in *ODonnell* on *Younger* abstention. *Id.* at *10 (citing *Daves II*, 64 F.3d at 623-33). The Judges raised *Younger* early in this case and the Court denied the argument, the Judges then raised the argument on appeal and the Fifth Circuit denied it, before later changing course on that issue. The Judges reassert *Younger* abstention here, and ask that the Court refrain from continued involvement in ongoing judicial proceedings, since this case implicates important state interests and arrestees have an adequate opportunity to raise any constitutional challenges they have through habeas relief.

**ARGUMENT**

I. **Challenges to Justiciability**

### A. Under *Daves II*, significant changes to Texas' bail reform laws require that the Consent Decree be vacated for mootness.

While Plaintiffs' counsel have urged that it continue "in perpetuity," the Fifth Circuit has made clear that changes to Texas law moot the Decree, and the Court should abstain from further involvement in ongoing judicial proceedings. To avoid repetition, the Judges join the Attorney General's arguments that Texas' new laws require that the Consent Decree be vacated for mootness. *See* Dkt. 742-1 at 3–6& Dkt. 790-1 at 3–4.

The Fifth Circuit confirmed this case's "broad changes to misdemeanor bail bond procedures" and that the Texas Legislature passed S.B. 6 while *Daves* pended en banc. *Daves II*, 64 F.4th at 620-21 (citing *ODonnell v. Harris Cty..*, 882 F.3d 528 (5th Cir. 2018), *withdrawn and superseded on panel reh'g*, 892 F.3d 147 (5th Cir. 2018) and *ODonnell II*, 900 F.3d 220. The Court ultimately held that the federal court dispute over Texas bail procedures was moot due to S.B. 6. *See id*. The Judges therefore ask that the Court dissolve the Consent Decree (Dkt. 708) following the Fifth Circuit's pronouncements in *Daves II*. That is, significant changes in the law have made continued compliance with the Consent Decree not only onerous, but unworkable, since the Decree conflicts with new state laws, and continued enforcement of the Decree is contrary to and would be detrimental to the public interest.

### B. No Article III case or controversy.

Whether considered part of a mootness analysis or separately, a live case or controversy is a core requirement for jurisdiction to exist. *Russell*, 2023 U.S. Dist. LEXIS 154051, at *10. Yet, no controversy existed at the time the Consent Decree was entered here. *See Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023). In 2019, Plaintiffs asked the Fifth Circuit to vacate its

panel stay opinion because "[o]n November 6, 2018, the fourteen judges who filed [that] appeal and sought the say lost re-election" and once their successors took office, they "withdrew [the] appeal, reflecting their agreement with the revised preliminary injunction (as it is consistent with their policy views)." Appendix B (Appellees' Unopposed Motion to Vacate Stay Opinion at 3, No. 18-20466, filed Jan. 8, 2019 before the Fifth Circuit Court of Appeals). By August 2019, the parties— now friendly, with no disagreements over what procedures should be in place for pretrial detainees—entered into a settlement agreement and the Court issued the Consent Decree, maintaining oversight of Harris County's misdemeanor pretrial procedures for years. Dkt. 708. But to have a case or controversy under Article III, there must be an "ongoing adversarial posture between the parties before the court." *Colbert v. Paul*, 858 F. App'x 702, 703-04 (5th Cir. 2021) (per curiam) (quoting *Talbott Big Foot, Inc. v. Boudreaux (In re Talbott Big Foot, Inc.)*, 924 F.2d 85, 87 (5th Cir. 1991)). In *Colbert*, the lack of adversarial positions among the parties to the appeal rendered the appeal moot. *Id.* at 704.

In *United States v. Windsor*, a case involving the Defense of Marriage Act's ("DOMA") denial of tax benefits to a same-sex spouse following her partner's death, the United States took a dual-track approach—the government agreed with the plaintiff's legal arguments that DOMA was unconstitutional and stopped defending DOMA in the lawsuit, but congress continued to enforce the law, meaning the plaintiff still had an injury to litigate in court. 570 U.S. 744, 756 (2013). The Court considered both Article III jurisdiction and "the prudential limits on its exercise," ultimately holding that enough of a controversy existed to meet Article III standing requirements, and noting the "prudential problems inherent in the Executive's unusual [dual] position" since the government agreed with the plaintiff's counsel about DOMA being unconstitutional, the risk posed was that the court "faces a friendly, non-adversary, proceeding…." *Id.* at 759-60. Ultimately, the Court

16

decided it had authority to hear that case, and ruled DOMA unconstitutional. Here, on the other hand, the fourteen judges and the Plaintiffs lacked any real dispute in 2019.

The Plaintiffs made their non-adversarial position with the fourteen HCCCL judges in this case clear, months before the Consent Decree issued, therefore showing their hand that no case or controversy existed any longer to support standing.

**II.      Rule 60(b) requires that the Consent Decree be vacated or, at minimum, modified.**

Consent decrees are subject to Federal Rule of Civil Procedure 60(b). *LULAC v. City of Boerne*, 659 F.3d 421, 437 (5th Cir. 2011) (citing *Rufo v. Inmates of Suffolk Cty.. Jail*, 502 U.S. 367, 380 (1992)). Under Rule 60(b), the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if the judgment or order is void, or if "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (5), (6). District courts must take a flexible approach to motions to modify consent decrees or to modify or vacate institutional reform decrees. *Rufo*, 502 U.S. at 379-81. This is necessary to meet the goals of reform litigation. *City of Boerne*, 659 F.3d at 437 (citing *Horne v. Flores*, 557 U.S. 433, 450 (2009)). Under *Rufo*, modification is warranted if there has been a significant change in the facts or law that "make compliance with the decree substantially more onerous" or even unworkable due to unforeseen obstacles, or if enforcing the decree "would be detrimental to the public interest." *Rufo*, 502 U.S. at 384. If so, then a court has to consider if the proposed modification is "is suitably tailored to the changed circumstance." *Id*. at 383. Courts must consider the evidence in determining whether the moving party has met its burden. *LULAC*, 659 F.3d at 438.

Under Rule 60(b), a court may order relief from a judgment or order for several reasons, including that the judgment is void, or "applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4)–(6). The Judges join in the Attorney

General's arguments that changes to Texas law require vacating the Consent Decree, that the Decree conflicts with state law, and that the public interest requires that the decree be vacated (Dkt. 790-1 at 2–6). In the alternative, the Consent Decree should be modified to remove its most blatant conflicts with Texas law.

### A. Rule 60(b)(5) and (b)(6)

Changes in Texas law make continuing federal oversight under the Consent Decree no longer equitable. The Judges join in and incorporate the Attorney General's arguments on this point. *See* Dkt. 742-1 at 3–4, Dkt. 790-1 at 2–6.

Here, the Court must decide whether ongoing enforcement of the Consent Decree is permissible, considering the significant changes in state law. Importantly, no party argues that Texas' new laws would violate arrestees' constitutional rights. And, "without a constitutional violation, injunctions of this nature 'raise[] grave federalism concerns.'" *See June Med. Servs. LLC v. Phillips*, 640 F. Supp. 3d 523, 530 (M.D. La. 2022) ("significant change in the law brought by *Dobbs* makes continued maintenance of the injunction detrimental to the public interest and inequitable so as to justify an order vacating it" and injunction orders are properly vacated "when the legal basis" for them are eliminated—"and, indeed, the Court likely abuses its discretion when it doesn't") (collecting cases).

Additionally, *Rufo* asks that courts be flexible in modifying consent decrees, because significant changes in facts or the law may warrant changes to decrees to avoid imposing onerous or unworkable obligations on parties, or injuring the public interest. *Rufo*, 502 U.S. at 384. Here, changed Texas law constitutes a significant development that warrants vacatur or, at minimum, modification of the Consent Decree. Additionally, where the Decree is not meeting its intended purpose of, among other things, promoting public safety (Dkt. 708 at 11 ¶ 10), courts must reconsider the decree. *See Police Ass'n of New Orleans ex rel. Cannatella v. New Orleans*, 100

F.3d 1159, 1168 (5th Cir. 1996); *U.S. v. Un. Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968). As discussed above at Section II, the Decree is not meeting that intended purpose. The Judges proposed changes to better tailor the Consent Decree to state law to the Monitors in May of 2025 (Dkt. 740-2 at 4), which the Monitors rejected (Dkt. 740-4). Those changes were:

9.2   To the extent Local Rule 9 conflicts with any other local rule, Local Rule 9 controls. ~~Except for situations described in Local Rule 9.4.1-9.4.6, all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released on a personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial officer is not required to sign a personal bond prior to the person's release.~~

9.4   Subject to Texas law, Aall misdemeanor arrestees must be considered for released on a personal bond or on non-financial conditions as soon as practicable after arrest, except those who fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:

9.5   Any person arrested for the reasons described in Local Rule 9.4.1-9.4.6 may be kept in custody pending an individualized hearing before a judicial officer. Any judicial officer who makes decisions about conditions of release, including the Harris County Criminal Law Hearing Officers, must—subject to Article 17.03 of the Texas Code of Criminal Procedure and other Texas law.—have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing.

For all misdemeanor arrestees to whom Local Rules 9.4.1-9.4.6 do not apply, a criminal law hearing officer or judge shall review and consider: (1) the public safety report; (2) factors required for setting the amount of bail listed in Article 17.15 of the Texas Code of Criminal Procedure; and (3) unsecured bail and release on a personal bond with or without other non-financial conditions. A criminal law hearing officer or judge shall devote a defined portion of each shift to such review and consideration, which shall occur as soon as practicable after arrest and shall not result in a decision contrary to Texas law.

9.18  If an arrestee is in the Sheriff's custody 40 hours after arrest and no conditions of release have been determined, the Sheriff must present the arrestee to a judicial officer for a bail hearing. ~~If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee.~~

While the Consent Decree should be vacated for the reasons discussed above, and by the Attorney General in Dkt. 790-1, in the alternative, the Decree should be modified to be consistent with Texas law.

### B. Rule 60(b)(4)

With respect to Rule 60(b)(4), to the extent the Court considers the Consent Decree a contractual settlement among the parties, the Consent Decree is void. That is because, "[u]nder Texas law, a contract is illegal, and thus void, if the contract obligates the parties to perform an action that is forbidden by the law of the place where the action is to occur." *Drinks, L.L.C. v. Landry's Inc.*, No. 23-20506, 2025 U.S. App. LEXIS 20188, at \*7, 2025 WL 2269783 (5th Cir. 2025) (per curiam) (quoting *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824-25 (5th Cir. 2024)). In *Drinks, L.L.C.*, Texas statutes regulate the production, distribution and consumption of alcohol within the state, with a clear goal of prohibiting vertical integration among producers, distributors and sellers of alcohol. *Id*. at \*7-8. The parties' agreement violated this law, and was therefore void. *Id*. Here, as discussed above, the Consent Decree violates Texas law, and cannot be enforced by this Court.

### C. Timeliness

The Judges' Motion is timely made in accordance with the Court's scheduling order. *See* Dkt. 773.

### III. Younger Abstention

"[R]evis[ing] by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail, should never have been brought in federal court." *Daves II*, 64 F.3d at 620. *Younger* "requires federal courts to abstain from revising state bail bond procedures on behalf of those being criminally prosecuted, when state procedures allow the accused adequate opportunities to raise their federal claims." *Id*.

The *Younger* abstention argument has a turbulent history in this case, with ample briefing of it before this Court and the Fifth Circuit. On November 9, 2016, the County Judges moved to dismiss the complaint arguing, in part, that the Court should abstain under *Younger*, and this Court denied the Motion. *See ODonnell v. Harris Cty.*, 227 F. Supp. 3d 706, 734-37 (S.D. Tex. Dec. 16, 2016). The Judges reassert this argument now, after the Fifth Circuit has clarified its position on *Younger* in *Daves*, and following the State's sweeping bail reform statutes. The Judges therefore adopt and incorporate by reference their *Younger* abstention arguments in Dkt. No. 80 here, as if set out in full. *See* Dkt. 80 at 25-31.

As brief additional argument on this point, the Court should abstain from further involvement in ongoing judicial proceedings pursuant to a "basic doctrine of equity jurisprudence" that is guided by "notions of comity" and federalism, where this case implicates important state interests and arrestees have an adequate opportunity to raise constitutional challenges through habeas relief. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (cleaned up); *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The Judges anticipate that Plaintiffs and perhaps the Court will question whether this point has been waived. The Fifth Circuit recently held, however, that *Younger* abstention was not waived. *Daves v. Dallas Cty.*, 22 F.4th 522, 547 (5th Cir. 2022).

Here, the Judges raised *Younger* abstention and this court denied that argument; the Fifth Circuit also denied a *Younger* argument in a February 1, 2018 panel decision later withdrawn on rehearing (though the denial of *Younger* abstention remained). *See ODonnell v. Harris Cty.*, 882 F.3d 528, 538 (5th Cir. 2018), *withdrawn and superseded on panel reh'g by ODonnell v. Harris Cty.*, 892 F.3d 147, 156 (5th Cir. 2018) (op. on reh.) ("*ODonnell* I"), *overruled in part by Daves v.*

*Dallas Cty.*, 22 F.4th 522, 546 (5th Cir. 2022). Soon after, fourteen Harris County Criminal Court at Law judges[8] raised *Younger* abstention when requesting a stay of this Court's preliminary injunction, and on August 14, 2018, a Fifth Circuit panel granted the stay without reaching that argument. *ODonnell II*, 900 F.3d at 222 ("*ODonnell II*"). The dissent characterized the *Younger* arguments as "recycle[d]" and noted that the Fifth Circuit had "previously rejected those arguments" in *Odonnell I*, 892 F.3d at 156-57 & n.3, and opined that the Court was "unlikely to find them persuasive in their repackaged forms." *Id*. at 232 (Graves, J., dissenting). Then, in 2019, the then-presiding HCCL judges entered into a settlement and consent decree.

As the Fifth Circuit later recognized in *Daves* in holding that a *Younger* abstention argument was not waived, "[r]elative silence as to abstention can be explained by the fact that our court's first *ODonnell* opinion…rejected *Younger* abstention…on February 14, 2018…." *Daves*, 22 F.4th at 546. It therefore "would reasonably have appeared preordained, making pursuing an early ruling on abstention in district court seemingly futile." *Id*. at 546-47. Rather, federal courts adjudicating claims "regarding bail for pretrial detainees would unduly interfere with state proceedings". *Little v. Doguet*, 71 F.4th 340, 346 (5th Cir. 2023) (citing *Daves*, 64 F.4th at 631). The Court should therefore decline from any further "ongoing federal audit of state criminal proceedings." *See id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).

There is no longer a need for federal intervention in this case, whether under a jurisdictional analysis based on mootness, or under an abstention theory like *Younger*, especially where the decree stands in the way of allowing County Judges to follow state law.

---

[8] Including Paula Goodhart as Judge of Harris County Criminal Court at Law ("HCCL") No. 1, Bill Harmon as Judge of HCCL No. 2, and Nathalie C. Fleming as Judge of HCCL No. 3. In 2019, Alex Salgado became Judge of HCCL No. 1, Ronnisha Bowman became judge of HCCL No. 2, Erica Hughes became judge of HCCL No. 3. Judges Goodhart and Leslie Johnson currently preside over HCCL Nos. 2 and 3, respectively.

## CONCLUSION AND PRAYER

Texas law enacted after the Consent Decree adequately protects the rights of misdemeanor arrestees in Harris County, and the parties and Court should allow Texas law to be implemented and followed by Harris County. The Judges ask that the Court consider this Motion, consider the Attorney General's Motion to Vacate, and issue an order vacating the Consent Decree in full. In the alternative, the Judges ask that the Court modify the Consent Decree to conform with Texas law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON. PAULA GOODHART, HON. JESSICA PADILLA, HON. LESLIE JOHNSON, AND HON. LINDA GARCIA**

23

**CERTIFICATE OF CONFERENCE**

The below-signed counsel has conferred with counsel for the other parties in this case. The Attorney General is NOT OPPOSED to this Motion, the other HCCCL judges take no position, and the remaining parties are OPPOSED to this Motion.

*/s/ Joseph R. Russo, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on the 12th day of December, 2025, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

*/s/ Joseph R. Russo, Jr.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL,** *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs, | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS,** *et. al.*, Defendants. | § § § | |

## DEFENDANTS' APPENDIX

Sept. 12, 2025 letter from Neal Manne at Susman Godfrey, LLP ................................. Appendix A

Appellees' Unopposed Motion to Vacate Stay Opinion, No. 18-20466, filed Jan. 8, 2019 before

the Fifth Circuit Court of Appeals ................................................................................. Appendix B

Bill Analysis, S.B. 9 ...................................................................................................... Appendix C

Bill Analysis, S.B. 6 ...................................................................................................... Appendix D

PSRS Information for District and County Court Judges ............................................. Appendix E

S.B. 9 Overview ............................................................................................................. Appendix F

Rules .............................................................................................................................. Appendix G

# APPENDIX A

SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

1000 LOUISIANA
SUITE 5100

HOUSTON, TEXAS 77002

(713) 651-9366

FAX (713) 654-6666

WWW.SUSMANGODFREY.COM

_____

SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100

SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330

NEAL MANNE
DIRECT DIAL (713) 653-7827

E-MAIL NMANNE@SUSMANGODFREY.COM

September 12, 2025

*Via email: jonathan.fombonne@harriscountytx.gov*
Jonathan Fombonne
Office of the Harris County Attorney
1019 Congress, 15th Floor
Houston, TX 77002

*Via email: bgarrett@law.duke.edu*
Brandon Garrett
Duke University School of Law
210 Science Drive
Durham, NC 27708

Re:     Consent Decree Violations Related to Senate Bill 9

Dear Mr. Fombonne and Mr. Garrett,

We write to bring to the County's attention apparently intentional violations of the Consent Decree by the County's Criminal Law Hearing Officers and to ask that the County remind all Hearing Officers that the Consent Decree remains binding unless and until the federal court rules otherwise. Violations of a federal Consent Decree can justify a contempt finding. *United States v. Hinds Cty. Bd. of Sups.*, 128 F.4th 616, 636 (5th Cir. 2025). A knowing violation can constitute a criminal offense. *See* 18 U.S.C. § 401(3); *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997) (affirming criminal contempt conviction). The Monitor reminded all Parties on September 2, 2025, of their obligation to comply with the entirety of the Consent Decree unless and until the federal court modifies it.

As you are aware, Senate Bill 9 took effect on September 1, 2025. In addition to other changes, Senate Bill 9 amended Article 17.03 to require cash bail for certain

APPENDIX A

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 2

enumerated offenses, including three misdemeanors: terroristic threat Class A, unlawful possession of a weapon, and violating certain protective orders. Article 17.03 as amended by S.B. 9 is inconsistent with L.R. 9.2, 9.3, 9.10, and 9.12 as codified in the federal court Consent Decree issued in the *ODonnell* litigation. *ODonnell v. Harris County*, No. 16-cv-01414, Dkt. 708 ¶ 30 (S.D. Tex. Nov. 21, 2019). Rule 9 states that any judicial officer considering bail must "consider the full range of available conditions of release" and have "complete discretion to release any misdemeanor arrestee on a personal bond," L.R. 9.10, and may impose an unaffordable condition of release only if "necessary to reasonably assure the safety of the community or to reasonably protect against flight from prosecution," L.R. 9.12.7; *see also* L.R. 9.2 (requiring prompt release on GOB for the majority of arrestees); L.R. 9.3 (prohibiting cash bail unless the bail order follows a bail hearing that meets the requirements of L.R. 9.12).

In just the past twelve days since Senate Bill 9 went into effect, we have identified seven cases involving five different Hearing Officers stating that they denied a personal bond for an individual charged with one of the aforementioned misdemeanor offenses based at least in part on Tex. Crim. Proc. art. 17.03. We have attached the bail orders for these cases. In many of these examples, the bail order explicitly says a personal bond is prohibited under Senate Bill 9. For example, two say "PR prohib. Per 17.03(b-2)(1)(B)," and another one similarly says, "Offense not eligible for PTRB/Art. 17.03/ TX C.C.P."

We include two representative findings below:

1. Bail order in *State v. Alleman*, SPN 03302622, Cause No. 258108101010. In Ms. Alleman's case, the hearing officer set a $500 secured bond, resulting in Ms. Alleman's detention.

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 3

CAUSE NO. 258108101010

Reasons for the bail decision and evidence relied upon: "

[MAND]: PR prohib. per 17.03(b-2)(1)(B).

[AFC]: lives in Katy, unemployed. Indigent.

[FLIGHT]: -

[HOLD]: -

[CHRI]: No CCH other than this allegation.

[ALLEGED]: Sep. 1, 2025 Def is CW's sister-in-law, same household. While CW recovering from surgery, CW's husband was taking CW to bathroom. Def threatened to push CW down the stairs because the hallway light was on.

[NOTE]: Defendant expressed intent to return to the residence to get her possessions, even after repeatedly being admonished that doing so would violate her protective order.

[CTZN]: US

I certify that the procedures and findings required by Local Rule 9 were provided and that I have explained the reasons and evidence relied on for my decision to Defendant and/or counsel, ☐ orally, ☒ in writing, ☐ or both.

Pursuant to Texas Code of Criminal Procedure art 17.022 and Texas Government Code § 72.038, I hereby certify that in setting this bail that I considered each factor of Texas Code of Criminal Procedure art. 17.15(a), and I certify that I considered the information in the Public Safety Report System. I hereby authorize the Harris County District Clerk to enter the required certification in the Public Safety Report System on my behalf.

September 01, 2025 21:50 PM
**Date and Time**                  **Magistrate (Judge or Hearing Officer)**                  **Interpreter (if applicable)**

Magistrate Chris_Ainsworth - Magistrate SPN 02620288

2. Bail order in *State v. Gonzalez*, SPN: 01897516, Cause No. 258192801010. In Mr. Gonzalez's case, the hearing officer set a $1000 secured bond, resulting in Mr. Gonzalez's detention. When Mr. Gonzalez appeared in court two days later, the State dismissed the case for lack of probable cause.

CAUSE NO. 258192801010

Reasons for the bail decision and evidence relied upon: 17.03 per SB9. On bond for PCS in 495th. CW=dad. Threatened murder-suicide. MOEP, Cond. Unemployed. Indigent.

I certify that the procedures and findings required by Local Rule 9 were provided and that I have explained the reasons and evidence relied on for my decision to Defendant and/or counsel, ☐ orally, ☐ in writing, ☒ or both.

Pursuant to Texas Code of Criminal Procedure art 17.022 and Texas Government Code § 72.038, I hereby certify that in setting this bail that I considered each factor of Texas Code of Criminal Procedure art. 17.15(a), and I certify that I considered the information in the Public Safety Report System. I hereby authorize the Harris County District Clerk to enter the required certification in the Public Safety Report System on my behalf.

September 07, 2025 23:14 PM
**Date and Time**                  **Magistrate (Judge or Hearing Officer)**                  **Interpreter (if applicable)**

Magistrate Sharon_Chu - Magistrate SPN 02343756

Jonathan Fombonne
Brandon Garrett
September 12, 2025
Page 4

Our case review is manual and time-intensive, and there may be additional Senate Bill 9-related violations. We understand that the County is creating a weekly report to track potential violations of Local Rule 9 related to S.B. 9, which will assist all Parties and the Monitors in their ongoing review of potential violations.

Senate Bill 9's prohibition on personal bonds means that poor people who cannot afford secured bail will be detained pretrial even when detention is not necessary and less restrictive alternatives would suffice. It thus requires the exact constitutional violations that the Consent Decree was designed to remedy through Local Rule 9.

To protect the Plaintiff class going forward, we ask the County to remind the Hearing Officers to follow the binding order of the federal court, including in circumstances such as the application of Art. 17.03 where the Hearing Officers may encounter a conflict between what state law and the Consent Decree require.

We can be available to discuss further,

Sincerely,

Neal Manne

Neal Manne

| cc: | Sandra Thompson | sguerrat@central.uh.edu |
| | Allan Van Fleet | allanvanfleet@gmail.com |
| | Judge Paula Goodhart | paula_goodhart@ccl.hctx.net |
| | Judge Jessica Padilla | jessica_padilla@ccl.hctx.net |
| | Judge Linda Garcia | linda_garcia@ccl.hctx.net |
| | Judge Leslie Johnson | leslie_johnson@ccl.hctx.net |
| | Murray Fogler | mfogler@foglerlaw.com |

# APPENDIX B

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

MARANDA LYNN ODONNELL,

*Plaintiff-Appellee,*

*v.*

ALEX SALGADO; RONNISHA BOWMAN; ERICA HUGHES; SHANNON BALDWIN; DAVID M. FLEISCHER; KELLEY ANDREWS; ANDREW A. WRIGHT; FRANKLIN BYNUM; TORIA J. FINCH; LEE HARPER WILSON; SEDRICK T. WALKER, II; CASSANDRA Y. HOLLEMAN; RAUL RODRIGUEZ; AND TONYA JONES,

*Defendants-Appellants.*

LOETHA SHANTA MCGRUDER; ROBERT RYAN FORD,

*Plaintiffs-Appellees,*

*v.*

HARRIS COUNTY, TEXAS, ET AL.

*Defendants,*

ALEX SALGADO; RONNISHA BOWMAN; ERICA HUGHES; SHANNON BALDWIN; DAVID M. FLEISCHER; KELLEY ANDREWS; ANDREW A. WRIGHT; FRANKLIN BYNUM; TORIA J. FINCH; LEE HARPER WILSON; SEDRICK T. WALKER, II; CASSANDRA Y. HOLLEMAN; RAUL RODRIGUEZ; AND TONYA JONES,

*Appellants.*

On Appeal from the United States District Court for the Southern District of Texas, Case No. 4:16-cv-001414

## APPELLEES' UNOPPOSED MOTION TO VACATE STAY OPINION

SETH P. WAXMAN
DANIEL S. VOLCHOK
ARPIT K. GARG
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000

ALEC KARAKATSANIS
  *Counsel of Record*
ELIZABETH ROSSI
CHARLES GERSTEIN
CIVIL RIGHTS CORPS
910 17th Street N.W., Second Floor
Washington, D.C. 20006
(202) 681-2721
alec@civilrightscorps.org

January 8, 2019

**ADDITIONAL COUNSEL LISTED ON INSIDE COVER**    APPENDIX B

Neal S. Manne
Lexie G. White
Joseph S. Grinstein
Susman Godfrey llp
1000 Louisiana Street, Suite 5100
Houston, TX  77002
(713) 651-9366

Michael Gervais
Susman Godfrey llp
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
(310) 789-3130

Susanne Pringle
Texas Fair Defense Project
314 E. Highland Mall Boulevard
Suite 108
Austin, TX  78752
(512) 637-5220

## CERTIFICATE OF INTERESTED PERSONS

The following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that members of the Court may evaluate possible recusal.

| Plaintiffs-Appellees | Counsel |
|---|---|
| Maranda Lynn ODonnell | Alec Karakatsanis |
| Robert Ryan Ford | Elizabeth Rossi |
| Loetha Shanta McGruder | Charles Gerstein |
| | CIVIL RIGHTS CORPS |
| | |
| | Seth P. Waxman |
| | Daniel S. Volchok |
| | Arpit K. Garg |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | |
| | Neal S. Manne |
| | Lexie Giselle White |
| | Joseph S. Grinstein |
| | Michael Gervais |
| | SUSMAN GODFREY LLP |
| | |
| | Susanne Ashley Pringle |
| | TEXAS FAIR DEFENSE PROJECT |

| Defendants-Appellants | Counsel |
|---|---|
| Alex Salgado | G. Allan Van Fleet |
| Ronnisha Bowman | VAN FLEET LLP |
| Erica Hughes | |
| Shannon Baldwin | Vince Ryan |
| David M. Fleischer | Robert Soard |
| Kelley Andrews | HARRIS COUNTY ATTORNEY'S OFFICE |
| Andrew A. Wright | |

| | |
|---|---|
| Franklin Bynum<br>Toria J. Flinch<br>Lee Harper Wilson<br>Sedrick T. Walker, II<br>Cassandra Y. Holleman<br>Raul Rodriguez<br>Tonya Jones<br>(*current Fourteen Judges for Harris County Criminal Courts at Law*) | |
| Paula Goodhart<br>Bill Harmon<br>Natalie C. Fleming<br>John Clinton<br>Margaret Harris<br>Larry Standley<br>Pam Derbyshire<br>Jay Karahan<br>Judge Analia Wilkerson<br>Dan Spjut<br>Judge Diane Bull<br>Judge Robin Brown<br>Donald Smyth<br>Jean Hughes<br>(*former Fourteen Judges for Harris County Criminal Courts at Law*) | Charles J. Cooper<br>Michael W. Kirk<br>Brian W. Barnes<br>Nicole J. Moss<br>Haley N. Proctor<br>William C. Marra<br>COOPER & KIRK, PLLC<br><br>John R. Keville<br>Sheryl Anne Falk<br>Robert Lawrence Green, III<br>Corinne Stone<br>WINSTON AND STRAWN LLP |

| Defendants | Counsel |
|---|---|
| Judge Mike Fields<br>(*Judge for Harris County Criminal Court at Law*) | Bruce Powers<br>HARRIS COUNTY ATTORNEY'S OFFICE |
| Judge Darrell William Jordan<br>(*Judge for Harris County Criminal Court at Law*) | G. Allan Van Fleet<br>VAN FLEET LLP<br><br>Mark Anthony Correro<br>CORRERO & LEISURE, P.C. |
| Harris County, Texas<br>Eric Stewart Hagstette<br>Joseph Licata, III<br>Ronald Nicholas | Katharine D. David<br>Michael A. Stafford<br>Philip J. Morgan<br>Benjamin R. Stephens |

| Blanca Estella Villagomez<br>Jill Wallace<br>(*County and Hearing Officers*) | GARDERE WYNNE SEWELL LLP<br><br>John Odam<br>Melissa Spinks<br>HARRIS COUNTY ATTORNEY'S OFFICE |
|---|---|
| Sheriff Ed Gonzalez | Victoria Lynn Jimenez<br>HARRIS COUNTY ATTORNEY'S OFFICE<br><br>Murray Jules Fogler<br>FOGLER, BRAR, FORD, O'NEIL & GRAY, L.L.P. |

| **Other Interested Parties** | **Counsel** |
|---|---|
| State of Texas<br>State of Arizona<br>State of Nebraska | Ken Paxton<br>Jeffrey C. Mateer<br>Kyle D. Hawkins<br>Joseph D. Hughes<br>TEXAS ATTORNEY GENERAL |
| Texas Baptists Christian Life Commission<br>Texas Catholic Conference of Bishops<br>Archbishop Joseph A. Fiorenza<br>Rabbi Samuel E. Karff<br>The Right Reverend C. Andrew Doyle<br>Reverend Michael Rinehart | Jonathan Marcus<br>Paul M. Kerlin<br>SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP |

/s/ Alec Karakatsanis
ALEC KARAKATSANIS

- iii -

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS .......................................................i

TABLE OF AUTHORITIES ................................................................................v

INTRODUCTION ...............................................................................................1

BACKGROUND .................................................................................................1

ARGUMENT .....................................................................................................4

I.   WELL-ESTABLISHED EQUITABLE PRINCIPLES REQUIRE VACATUR
     OF AN ADVERSE JUDGMENT THAT A LOSING PARTY IS UNABLE
     TO CHALLENGE DUE TO THE OPPOSING PARTY'S UNILATERAL
     ACTION ....................................................................................................4

II.  EQUITY REQUIRES VACATUR OF THE MOTIONS PANEL'S STAY
     OPINION ..................................................................................................5

CONCLUSION ..................................................................................................9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AMA Discount, Inc. v. Seneca Specialty Insurance Co.*, 697 F. App'x 354 (5th Cir. 2017) ...................................................................................7

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)................................5

*Azar v. Garza*, 138 S. Ct. 1790 (2018) ..................................................................5, 8

*Camreta v. Greene*, 563 U.S. 692 (2011) ..........................................................4, 7, 8

*Daves v. Dallas County*, ___ F. Supp. 3d ___, 2018 WL 4510136 (N.D. Tex. Sept. 20, 2018) ......................................................................8

*Little v. Frederick*, 2018 WL 6036911 (W.D. La. Aug. 28, 2018)............................8

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997) ................................6

*Northshore Development, Inc. v. Lee*, 835 F.2d 580 (5th Cir. 1988) .......................8

*ODonnell v. Goodhart*, 900 F.3d 220 (5th Cir. 2018) ..............................................3

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) ..................................1, 2

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009) ......................5

*Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) ...........................................5

*Trevino v. Davis*, 861 F.3d 545 (5th Cir. 2017).......................................................6

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).................................................................................................1, 4, 5

*United States v. Bear Marine Services*, 696 F.2d 1117 (5th Cir. 1983)...................7

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) .....................................4, 6

*Whole Woman's Health v. Cole*, 790 F.3d 563 (5th Cir. 2015)...............................6

## INTRODUCTION

Appellees move this Court to vacate the motions panel's stay opinion in this appeal. Vacatur is warranted because after the motions panel granted a stay pending appeal, the individuals who were appellants at the time (i.e., the ones who sought the stay) were voted out of office, and yesterday their successors withdrew the appeal. These circumstances, while unusual, are akin to a case that becomes moot while on appeal—which requires vacatur of the district-court opinion "when mootness results from unilateral action of the party who prevailed below," *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (1994). Similarly here, the now-ousted appellants "prevailed" in securing the stay (and more importantly the stay opinion), and the new appellants' unilateral action has now deprived appellees of the opportunity to have the adverse stay opinion set aside by a merits panel. Equity thus requires vacatur of the stay opinion.

Appellants do not oppose this motion.

## BACKGROUND

This is the second appeal in this litigation. Like the first appeal, this one challenges a preliminary injunction prohibiting Harris County's elected criminal judges from authorizing bail practices that violate the Fourteenth Amendment. In the prior appeal, this Court "largely affirmed the district court's determinations that constitutional violations occurred." *ODonnell v. Harris County*, 892 F.3d 147, 163

- 1 -

(5th Cir. 2018) (opinion on rehearing). In particular, this Court held that wealth-based detention resulting from Harris County's use of secured bail triggers "heightened scrutiny" under the Fourteenth Amendment. *Id.* at 161. It also affirmed the district court's factual findings that Harris County "failed to establish any 'link between financial conditions of release and appearance at trial or law-abiding behavior before trial,'" and accordingly concluded that "although the County had a compelling interest in the assurance of a misdemeanor detainee's future appearance and lawful behavior, its policy was not narrowly tailored to meet that interest." *Id.* at 162. This Court therefore held that "Harris County's use of secured bail violated equal protection." *Id.* at 162-163.

This Court, however, vacated the preliminary injunction, deeming it "overbroad." *ODonnell*, 892 F.3d at 163. The case was remanded for the district court to "craft a … more finely tuned" injunction. *Id.* at 164.

On remand the district court issued a narrower preliminary injunction. ROA.11878-11910. The court ruled that, under *ODonnell*, wealth-based detention prior to an individualized bail hearing that results from Harris County's use of secured bail is unconstitutional. It thus ordered defendants to permit release on unsecured bail until the individualized hearing, at which point defendants could try to show that the wealth-based detention of that individual was necessary.

- 2 -

Appellants—who are fourteen of the sixteen elected judges responsible for misdemeanor bail policy in Harris County—again appealed and sought an emergency stay pending appeal. ECF 00514574856, *ODonnell v. Goodhart*, No. 18-20466 (5th Cir. July 27, 2018). Less than three weeks later, following abbreviated briefing and an oral argument, a divided motions panel granted that stay in a published opinion. 900 F.3d 220 (Aug. 14, 2018) ("Stay Ruling"). The motions panel concluded that prehearing release violated *ODonnell*'s mandate and was not required under the Fourteenth Amendment.

Following the Stay Ruling, the appeal was fully briefed—with appellees devoting a significant portion of their briefing to why the Stay Ruling fundamentally misread *ODonnell* and was irreconcilable with that decision. *See* Appellee Br. 25-32, 38-45, *ODonnell v. Goodhart*, No. 18-20466 (5th Cir. Oct. 24, 2018), ECF 00514696493. (Appellees recognized, of course, that any errors by the motions panel were understandable given that its ruling was made on a highly expedited basis and with abbreviated briefing.)

On November 6, 2018, the fourteen judges who filed this appeal and sought the stay lost re-election. And on January 7, 2019, their successors withdrew this appeal, reflecting their agreement with the revised preliminary injunction (as it is consistent with their policy views).

- 3 -

# ARGUMENT

## I. WELL-ESTABLISHED EQUITABLE PRINCIPLES REQUIRE VACATUR OF AN ADVERSE JUDGMENT THAT A LOSING PARTY IS UNABLE TO CHALLENGE DUE TO THE OPPOSING PARTY'S UNILATERAL ACTION

In *U.S. Bancorp*, the Supreme Court explained that the longstanding practice of vacating the judgment below if a case becomes moot on appeal reflects an "equitable tradition of vacatur." 513 U.S. at 25. Under that tradition, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* "The equitable remedy of vacatur ensures that 'those who have been prevented from obtaining the review to which they are entitled are not treated as if there had been a review.'" *Camreta v. Greene*, 563 U.S. 692, 712 (2011) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).

The equitable interests explicated in these cases extend beyond fairness in the specific litigation. Another "point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by … a 'preliminary' adjudication." *Camreta*, 563 U.S. at 713 (quoting *Munsingwear*, 340 U.S. at 40-41). "Vacatur then rightly strips the decision below of its binding effect and clears the path for future relitigation." *Id.* (citations and quotation marks omitted).

- 4 -

Ordinarily, vacatur is not automatic, as equitable factors may counsel otherwise. *See U.S. Bancorp*, 513 U.S. at 23-25. This Court has accordingly held that it should "look at the equities of the individual case" to determine whether to vacate. *Staley v. Harris County*, 485 F.3d 305, 312 (5th Cir. 2007) (en banc). Both the Supreme Court and this Court, however, have identified situations in which vacatur is *required*. Of relevance here, "[v]acatur is in order when mootness occurs through … the unilateral action of the party who prevailed in the lower court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71-72 (1997) (quotation marks omitted); *accord Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 n.15 (5th Cir. 2009) ("When … a party who prevailed below makes the case moot by his unilateral action, a 'vacatur *must* be granted.'" (emphasis added) (quoting *U.S. Bancorp*, 513 U.S. at 23)), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). The Supreme Court reiterated this point just last Term, explaining that "[i]t would certainly be a strange doctrine that would permit a plaintiff to obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment." *Azar v. Garza*, 138 S. Ct. 1790, 1792 (2018) (per curiam).

## II.    EQUITY REQUIRES VACATUR OF THE MOTIONS PANEL'S STAY OPINION

The cases just discussed require vacatur of the Stay Ruling.

To begin with, the posture here is very much akin to mootness pending appeal, because this Court's precedent treats the relationship between a merits panel and a motions panel as analogous to that of an appellate court and a district court. For example, "a merits panel is not bound by a motions panel," *Trevino v. Davis*, 861 F.3d 545, 548 n.1 (5th Cir. 2017), just as it is not bound by the ruling below. To the contrary, just as a merits panel reviews and may overturn the district court's ruling, "a panel hearing the merits of an appeal may *review* a motions panel ruling, *and overturn it where necessary*." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 704 (5th Cir. 1997) (emphasis added), *abrogated on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

There are multiple reasons why the motions panel is treated like a district court in this regard. For one thing, just as a district-court judgment is "only preliminary" "in the statutory scheme," *Munsingwear*, 340 U.S. at 40, a motions panel makes only a preliminary assessment of the merits (i.e., likelihood of success). For another, the motions panel must act "during an abbreviated proceeding," *Whole Woman's Health v. Cole*, 790 F.3d 563, 580 (5th Cir.), *modified on other grounds*, 790 F.3d 598 (5th Cir. 2015), *rev'd and remanded on other grounds sub nom. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)—whereas "[t]he merits panel has the benefit of full briefs … oral argument … [and] the opportunity to consider events that took place after the motions panel"

- 6 -

ruled, *United States v. Bear Marine Services*, 696 F.2d 1117, 1119 (5th Cir. 1983); *cited by AMA Discount, Inc. v. Seneca Specialty Insurance Co.*, 697 F. App'x 354, 355 (5th Cir. 2017) (per curiam). "With this perspective, the merits panel may conclude that the initial decision … was, or was later rendered, improvident." *Bear Marine*, 696 Fed. at 1119.

The analogy between a district-court judgment and a motions-panel ruling extends to the equitable principles that, as discussed, require vacatur. Just as mootness pending appeal deprives the losing party of its right to have an adverse district-court judgment overturned, so the unilateral withdrawal of the appeal has deprived appellees of their only opportunity to have the adverse motions-panel ruling set aside—an opportunity they fully sought to avail themselves of by devoting much of their merits brief to addressing the motions panel's errors. Because appellees "have been prevented from obtaining the review to which they are entitled," "vacatur [is necessary to] ensure[ that they] are not treated as if there had been a review." *Camreta*, 563 U.S. at 712 (quotation marks omitted).

Any other result would have perverse implications. If vacatur is not required here, an appellant could—after successfully acquiring a stay pending appeal with a favorable opinion—strategically withdraw the appeal and yet benefit from the appeal by leveraging that opinion in future litigation. As the Supreme Court

recently recognized, such a "strange" result cannot be countenanced.  *Azar*, 138 S. Ct. at 1792.

Finally, another equitable rationale for vacatur—to "prevent an unreviewable decision from spawning any legal consequences," *Camreta*, 563 U.S. at 713 (quotation marks omitted)—is particularly salient here because the Stay Ruling is published.  In this circumstance, there is a credible risk that courts, especially district courts in this circuit, will rely on the Stay Ruling, notwithstanding the fact that "a motions panel decision is not binding precedent," *Northshore Development, Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988).  Indeed, undersigned counsel are litigating multiple cases in this circuit on similar issues, and district courts are already referring to the Stay Ruling.  *See, e.g.*, *Daves v. Dallas County*, ___ F. Supp. 3d ___, 2018 WL 4510136, at *1 (N.D. Tex. Sept. 20, 2018) (citing *ODonnell* and the Stay Ruling as having equal precedential weight); *Little v. Frederick*, 2018 WL 6036911, at *11 n.112 (W.D. La. Aug. 28, 2018) (citing portions of the Stay Ruling that appellees contend are incorrect), *report and recommendation adopted*, 2018 WL 5993879 (W.D. La. Nov. 14, 2018).  Vacatur is accordingly required here to ensure that "no party is harmed by … a preliminary adjudication."  *Camreta*, 563 U.S. at 713 (quotation marks omitted).

# CONCLUSION

The Court should vacate the Stay Ruling.


January 8, 2019

Respectfully submitted,


/s/ Alec Karakatsanis

SETH P. WAXMAN
DANIEL S. VOLCHOK
ARPIT K. GARG
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000

NEAL S. MANNE
LEXIE G. WHITE
JOSEPH S. GRINSTEIN
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Harris County, TX 77002
(713) 651-9366

MICHAEL GERVAIS
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3130

ALEC KARAKATSANIS
   *Counsel of Record*
ELIZABETH ROSSI
CHARLES GERSTEIN
CIVIL RIGHTS CORPS
910 17th Street N.W., Second Floor
Washington, D.C. 20006
(202) 681-2721
alec@civilrightscorps.org

SUSANNE PRINGLE
TEXAS FAIR DEFENSE PROJECT
314 E. Highland Mall Boulevard
Suite 108
Austin, TX 78752
(512) 637-5220

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure (FRAP) 27(d)(2)(A) and Circuit Rule 27.4 because—according to the word-count feature of the word-processing program with which it was prepared (Microsoft Word)—the motion contains 1,811 words, excluding the portions exempted by FRAP 32(f). Pursuant to FRAP 27(d)(1)(E) and Circuit Rule 27.4, this motion complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ Alec Karakatsanis
ALEC KARAKATSANIS

# CERTIFICATE OF SERVICE

I electronically filed the foregoing on January 8, 2019, using the Court's appellate CM/ECF system, which effected service on all counsel of record.

/s/ Alec Karakatsanis
ALEC KARAKATSANIS

# APPENDIX C

# BILL ANALYSIS

Senate Research Center                                                                  S.B. 9
                                                                                 By: Huffman
                                                                             Criminal Justice
                                                                                  6/13/2025
                                                                                   Enrolled

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

BACKGROUND:

In 2021, the legislature passed S.B. 6 addressing the release practices surrounding habitual and violent offenders to better protect the safety of victims, law enforcement, and our communities. The legislation represents one of the largest overhauls to Texas' bail system; drastically increasing the amount of information available to judges when setting bail and the amount of statewide data tracked on bail outcomes. Now that the reforms have been implemented, cleanup language is necessary to clarify legislative intent, ensure that the new systems are running efficiently, and further increase the safety of our communities.

SUMMARY:

Specifically, S.B. 9 requires hearing officers to make oral or written findings of fact and conclusions of law, on the record, within 24 hours of issuing a "no probable cause" finding.

The bill mandates that the presiding judge, rather than a criminal law hearing officer, be the proper authority for setting the initial bond for:

- a defendant that is on parole at the time he/she is charged with a new offense;
- a defendant who has been previously convicted of two or more felony offenses;
- a defendant charged with violent felony offenses such as murder, capitol murder, aggravated sexual assault, aggravated kidnapping, or aggravated assault; and
- a defendant charged with a felony and is also detained with a concurrent immigration hold.

The bill also amends the list of offenses that a defendant may not be released on a personal bond, adding:

- unlawful possession of a firearm;
- violation of a family violence protective order;
- terroristic threat; and
- murder as a result of manufacturing or delivery of fentanyl.

The bill adjusts the reporting requirement for "charitable bail organization" to be sent to the Office of Court Administration and increases transparency by requiring additional data submissions.

The bill clarifies that a magistrate is not authorized to adjust the amount or conditions of a bond set by the judge of a district court.

S.B. 9 establishes that a bond for a jailable felony offense may not be set until the defendant has gone before a hearing officer or judge.

The bill creates a new avenue for appeal when a prosecutor considers a bail amount insufficient for a defendant who is charged with a felony and is out on bond for another felony offense. This new appeal aligns the timeline for a state appeal for insufficient bond to an accelerated 20-day timeline, which requires a prioritization from the appellate court.

APPENDIX C

For a secondary offense committed in a different county under Article 17.027 of the Texas Code of Criminal Procedure, the bill clarifies the timelines for notification of a new offense to be given within the next business day

S.B. 9 amends current law relating to the confinement or release of defendants before trial or sentencing, including regulating charitable bail organizations, and the conditions of and procedures for setting bail and reviewing bail decisions.

## RULEMAKING AUTHORITY

Rulemaking authority is expressly granted to the Supreme Court of Texas in SECTION 20 of this bill.

## SECTION BY SECTION ANALYSIS

SECTION 1. Amends Chapter 16, Code of Criminal Procedure, by adding Article 16.24, as follows:

> Art. 16.24. REPORTING OF CONDITIONS OF PRETRIAL INTERVENTION PROGRAM. Requires the attorney representing the state, or the attorney's designee who is responsible for monitoring the defendant's compliance with the conditions of the program, as soon as practicable but not later than the 10th business day after the date a defendant enters a pretrial intervention program, to enter information relating to the conditions of the program into the appropriate database of the statewide law enforcement information system maintained by the Department of Public Safety of the State of Texas (DPS) or modify or remove information, as appropriate.

SECTION 2. Amends Article 17.021, Code of Criminal Procedure, by amending Subsection (b) and adding Subsections (c-1), (h), (h-1), and (i), as follows:

> (b) Requires that the public safety report system:
>
> > (1)-(4) makes no changes to these subdivisions;
> >
> > (5) provide, in summary form, the criminal history of the defendant, including information regarding:
> >
> > > (A)-(B) makes no changes to these paragraphs;
> > >
> > > (C)-(E) makes nonsubstantive changes to these paragraphs;
> > >
> > > (F) whether the defendant is currently on community supervision, parole, or mandatory supervision for an offense;
> > >
> > > (G) whether the defendant is currently released on bail or participating in a pretrial intervention program and any conditions of that release or participation;
> > >
> > > (H) outstanding warrants for the defendant's arrest that have been entered into the National Crime Information Center database or the Texas Crime Information System established under Section 411.0541 (Texas Crime Information System), Government Code, including a warrant issued under Article 42A.751 (Violation of Conditions of Community Supervision; Detention and Hearing) of this code or Section 508.251 (Issuance of Warrant or Summons), Government Code; and
> > >
> > > (I) any current protective orders, as defined by Section 72.151 (Definitions), Government Code, for which the defendant is the subject; and

(6) makes no changes to this subdivision.

Makes nonsubstantive changes to this subsection.

(c-1) Requires the Office of Court Administration of the Texas Judicial System (OCA), on request by an attorney representing the state, to provide to the attorney access to the public safety report system for the purpose of allowing the attorney to access a bail form submitted to OCA under Section 72.038 (Bail Form), Government Code.

(h) Requires that the public safety report system be configured to allow a county or municipality to integrate the jail records management systems used by the county with the public safety report system.

(h-1) Authorizes OCA to provide grants to reimburse counties and municipalities for costs related to integrating the systems described by Subsection (h). Provides that OCA is not required to provide a grant under this subsection unless OCA is appropriated money for that purpose. Provides that this subsection expires August 31, 2027.

(i) Authorizes OCA to modify the public safety report system to incorporate technological advances to the system's features regarding notices and to any other processes OCA determines will enhance the system's availability to protect the public.

SECTION 3. Amends Article 17.022, Code of Criminal Procedure, by adding Subsection (g) to authorize a magistrate, in the manner described by 17.022 (Public Safety Report), to order, prepare, or consider a public safety report in setting bail for a defendant who is not in custody at the time the report is ordered, prepared, or considered.

SECTION 4. Amends the heading to Article 17.027, Code of Criminal Procedure, to read as follows:

<p style="text-align:center">Art. 17.027. RELEASE ON BAIL OF DEFENDANT CHARGED WITH<br>FELONY OFFENSE.</p>

SECTION 5. Amends Article 17.027, Code of Criminal Procedure, by amending Subsection (a) and adding Subsections (a-1), (a-2), (a-3), (c), and (d), as follows:

(a) Provides that, notwithstanding any other law:

(1) if a defendant is taken before a magistrate for, rather than charged with, committing an offense punishable as a felony while released on bail, rather than on bail in a pending case, for another offense punishable as a felony and the subsequent offense was committed in the same county as the previous offense, the defendant is authorized to be released on bail only by certain courts; and

(2) if a defendant is taken before a magistrate for committing an offense punishable as a felony while released on bail, for another offense punishable as a felony and the subsequent offense was committed in a different county than the previous offense, electronic notice of the charge is required to be given, rather than promptly given, to the individual designated to receive electronic notices for the county in which the previous offense was committed, not later than the next business day after the date the defendant is taken before the magistrate, for purposes of the court specified by Subdivision (1), rather than specified by Subdivision (1) for purposes of reevaluating the bail decision, determining whether any bail conditions were violated or taking any other applicable action such as an action described by Subsection (a-1).

Makes conforming and nonsubstantive changes to this subsection.

(a-1) Requires a court before which the case for the previous offense is pending, if a defendant is taken before a magistrate for committing an offense punishable as a felony while released on bail in a pending case for another offense punishable as a felony, to consider whether to revoke or modify the terms of the previous bond or to otherwise reevaluate the previous bail decision.

(a-2) Prohibits a magistrate appointed under Chapter 54 (Masters; Magistrates; Referees; Associate Judges), Government Code, from releasing on bail a defendant who:

> (1) is charged with committing an offense punishable as a felony if the defendant:

>> (A) was released on bail, parole, or community supervision for an offense punishable as a felony at the time of the instant offense;

>> (B) has previously been finally convicted of two or more offenses punishable as a felony and for which the defendant was imprisoned in the Texas Department of Criminal Justice; or

>> (C) is subject to an immigration detainer issued by United States Immigration and Customs Enforcement; or

> (2) is charged with committing an offense under Section 19.02 (murder), Section 19.03 (capital murder), Section 20.04 (aggravated kidnapping), or Section 22.021 (aggravated sexual assault) of the Penal Code.

(a-3) Requires that an order granting bail signed by a magistrate appointed under Chapter 54, Government Code, include the names of each individual who appointed the magistrate and state that the magistrate was appointed by those individuals.

(c) Requires the local administrative district judge for each county to designate an individual to receive electronic notices under Subsection (a)(2). Requires the county to ensure that the name and contact information of the individual designated to receive notices under this subsection are included in the public safety report system developed under Article 17.021 (Public Safety Report System).

(d) Requires an individual designated under Subsection (c) who receives an electronic notice under Subsection (a) to promptly provide the notice to the court specified by Subsection (a)(1), to the district clerk, and to the attorney representing the state and the defendant's attorney, if known, in the pending case for the offense for which the defendant was initially released on bail. Provides that a notice provided under this subsection does not constitute an ex parte communication.

SECTION 6. Amends Chapter 17, Code of Criminal Procedure, by adding Article 17.029, as follows:

> Art. 17.029. REVIEW OF BAIL DECISION. (a) Provides that this article applies only to a bail decision:

>> (1) regarding a defendant charged with or arrested for an offense punishable as a felony; and

>> (2) that was made under Article 17.028 (Bail Decision) by the magistrate of a court that does not have jurisdiction to try the offense with which the defendant is charged.

>> (b) Provides that, notwithstanding any other law, a district judge in any county in which the offense for which the person was arrested will be tried or in any county in which the charge for that offense will be filed has jurisdiction to modify a bail decision to which this article applies, regardless of whether the defendant has

been previously indicted or an information has been previously filed for the offense for which the defendant was arrested.

(c) Requires the local administrative judge for each county to establish a procedure for the district clerk to notify each district judge in the county that the district clerk received a request to review a bail decision under this article.

(d) Requires a district judge to review a bail decision as soon as practicable but not later than the next business day after the date a request to review the bail decision is filed with the district clerk by an attorney representing the state.

(e) Requires a district judge reviewing a bail decision under this article to comply with Article 17.09 (Duration; Original and Subsequent Proceedings; New Bail) and consider the facts presented and the rules established by Article 17.15(a) (relating to the regulation of bail amounts and conditions) in setting the defendant's bail.

(f) Requires a district judge, if the judge modifies a bail decision under this article to increase the amount of bail or to require additional conditions of bail for a defendant who is not in custody, to issue a summons for the defendant to appear before the judge and give the defendant a reasonable opportunity to appear before issuing a warrant for the defendant's arrest.

SECTION 7. Amends Articles 17.03(a) and (b-2), Code of Criminal Procedure, as follows:

(a) Authorizes a magistrate, except as otherwise provided by Chapter 17 (Bail), rather than by Subsection (b) (relating to certain circumstances when a defendant is authorized to be released on personal bond) or (b-1) (relating to prohibiting a magistrate from releasing on bond a defendant who is civilly committed as a sexually violent predator), in the magistrate's discretion, to release the defendant on personal bond without sureties or other security.

(b-2) Prohibits a defendant, except as provided by certain provisions of the Penal Code, from being released on personal bond if the defendant:

(1) is charged with an offense involving violence or an offense under certain sections of the Penal Code; or

(2) while released on bail, parole, or community supervision for an offense involving violence, is charged with committing certain offenses, rather than certain offenses including an offense under Section 22.07 (Terroristic Threat), Penal Code.

Makes nonsubstantive changes to this subsection.

SECTION 8. Amends Articles 17.071(a), (f), (h), and (k), Code of Criminal Procedure, as follows:

(a) Defines "office."

(f) Requires a charitable bail organization, not later than the 10th day of each month, to submit to OCA and to the sheriff of each county in which the organization files an affidavit under Subsection (e) (relating to filing an affidavit designating the individuals authorized to pay bonds on behalf of the charitable bail organization), a report that includes the following information for each defendant for whom the organization paid a bail bond in the preceding calendar month:

(1)-(2) makes no changes to these subdivisions;

(3) each charge for which the bond was paid;

(4) the category of offense for each charge for which the bond was paid;

(5) the amount of the bond paid;

(6)-(7) makes nonsubstantive changes to these subdivisions; and

(8) whether a bond forfeiture has occurred in connection with the charge for which the bond was paid.

Makes nonsubstantive changes to this subsection.

(h) Requires OCA, if OCA has reason to believe that a charitable bail organization may have paid one or more bonds in violation of Article 17.071 (Charitable Bail Organizations), to report that information to the sheriff of the county in which the suspected violation occurred. Authorizes the sheriff of that county, rather than a county, to suspend a charitable bail organization from paying bail bonds in the county for a period not to exceed one year if the sheriff determines the organization has paid one or more bonds in violation of this article and the organization has received a warning from the sheriff in the preceding 12-month period for another payment of bond made in violation of this article. Makes a nonsubstantive change.

(k) Requires OCA, not later than December 1 of each year, to prepare and submit, to the governor, lieutenant governor, speaker of the house of representatives, and presiding officers of the standing committees of each house of the legislature with primary jurisdiction over the judiciary, a report regarding the information submitted to OCA under Subsections (f), rather than (f-1) (relating to requiring a sheriff who receives certain reports from charitable bail organizations to provide copies to OCA), and (h) for the preceding state fiscal year. Makes a conforming change.

SECTION 9. Amends Section 3, Article 17.09, Code of Criminal Procedure, as follows:

Sec. 3. Authorizes a judge or magistrate, provided that whenever, during the course of the action, and regardless of whether the defendant has been previously released under Article 17.151 (Release Because of Delay), the judge or magistrate in whose court such action is pending finds that the bond is defective, excessive or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause, to either in term-time or in vacation, order the accused to be rearrested, and require the accused to give another bond in such amount as the judge or magistrate may deem proper.

SECTION 10. Amends Chapter 17, Code of Criminal Procedure, by adding Article 17.092, as follows:

Art. 17.092. REDUCTION IN AMOUNT OR CONDITIONS OF BOND PROHIBITED IN CERTAIN CIRCUMSTANCES. Prohibits a magistrate described by Articles 2A.151(5)-(14) (relating to certain individuals who are considered magistrates within the Code of Criminal Procedure) from reducing the amount or conditions of bond set by the judge of a district court, including the judge of a district court in another county.

SECTION 11. Amends Article 17.21, Code of Criminal Procedure, as follows:

Art. 17.21. BAIL IN FELONY. (a) Creates this subsection from existing text and makes no further changes.

(b) Requires a magistrate, notwithstanding Subsection (a) (relating to requiring the court, in certain cases, to fix the amount of bail, and authorizing the sheriff or other peace officer to discharge the accused from custody), before releasing on bail a defendant charged with an offense punishable as a felony, to ensure that the

defendant has appeared before the magistrate and the magistrate has considered the public safety report prepared under Article 17.022 for the defendant.

SECTION 12. Amends Chapter 27, Code of Criminal Procedure, by adding Article 27.20, as follows:

Art. 27.20. CONFINEMENT BEFORE SENTENCING ON PLEA OF GUILTY OR NOLO CONTENDERE FOR CERTAIN OFFENSES. Requires the court, if a defendant is adjudged guilty after entering a plea of guilty or nolo contendere for an offense listed in Article 42A.054(a) (relating to offenses for which a defendant adjudged guilty is ineligible for judge-ordered community supervision) punishable as a felony of the second degree or any higher category of offense and for which the defendant is not eligible for community supervision under Article 42A.055 (Jury-Recommended Community Supervision) as provided by Article 42A.056 (Limitation on Jury-Recommended Community Supervision), to order that the defendant be taken into custody and confined until the defendant is sentenced.

SECTION 13. Amends Article 42.01, Code of Criminal Procedure, by adding Section 17, to require that the judgment, in addition to the information described by Section 1 (relating to the contents of a judgment), reflect affirmative findings entered pursuant to Article 42.0195.

SECTION 14. Amends Chapter 42, Code of Criminal Procedure, by adding Article 42.0195, as follows:

Art. 42.0195. FINDING REGARDING FAILURE TO APPEAR. Requires the judge, in the disposition of a criminal case involving any offense punishable as a Class B misdemeanor or any higher category of offense, to make an affirmative finding of fact and enter the affirmative finding in the judgment or dismissal order in the case if the judge determines that the defendant wilfully failed to appear after the defendant was released from custody for the offense. Requires that the affirmative finding include the number of times the defendant failed to appear for the offense.

SECTION 15. Amends Article 44.01, Code of Criminal Procedure, by amending Subsections (a) and (g) and adding Subsections (f-1) and (f-2), as follows:

(a) Entitles the state to appeal an order of a court in a criminal case if the order:

(1)-(4) makes no changes to these subdivisions;

(5)-(6) makes nonsubstantive changes to these subdivisions; or

(7) grants bail, in an amount considered insufficient by the prosecuting attorney, to a defendant who is charged with an offense under any of certain sections of the Penal Code and is charged with an offense punishable as a felony and was released on bail for an offense punishable as a felony at the time the instant offense was committed.

(f-1) Requires a court of appeals, in an appeal filed under Subsection (a)(7), to conduct a de novo review of all issues presented, expedite the appeal, and issue an order not later than the 20th day after the date the appeal is filed.

(f-2) Authorizes a court of appeals, in an appeal filed under Subsection (a)(7), to affirm or modify the bail amount set by the court or reject the bail amount set by the court and remand the case to the court, with or without guidance, for modification of the bail amount.

(g) Requires the defendant, if the state appeals pursuant to this article and the defendant is on bail, to be permitted to remain at large on the existing bail. Entitles the defendant, if the defendant is in custody, to reasonable bail, as provided by law, unless the appeal is from an order which would grant bail in an amount considered insufficient by the

prosecuting attorney, in which event the defendant is required to be held in custody during the pendency of the appeal. Makes nonsubstantive changes.

SECTION 16. Amends Article 56A.051(a), Code of Criminal Procedure, to entitle a victim, guardian of a victim, or close relative of a deceased victim to certain rights within the criminal justice system, including, when requested, the right to be informed in the manner provided by Article 56A.0525 by the office of the attorney representing the state concerning whether the defendant has fully complied with any conditions of the defendant's bail, and to make nonsubstantive changes.

SECTION 17. Amends Section 72.038, Government Code, by adding Subsections (b-1) and (c-1) and amending Subsection (c), as follows:

(b-1) Requires a person who, under the authority of a standing order related to bail, releases on bail a defendant who is charged with an offense punishable as a Class B misdemeanor or any higher category of offense, to complete the form required under this section.

(c) Requires the person setting bail, an employee of the court that set the defendant's bail, or an employee of the county in which the defendant's bail was set to, on completion of the form required under this section, promptly but not later than 48, rather than 72, hours after the time the defendant's bail is set provide the form electronically to OCA through the public safety report system.

(c-1) Requires OCA to provide to the elected district attorney in each county an electronic copy of the form submitted to OCA under Subsection (c) for each defendant whose bail is set in the county for an offense involving violence, as defined by Article 17.03 (Personal Bond), Code of Criminal Procedure. Requires an elected district attorney to provide an e-mail address to OCA for the purpose of receiving a form as provided by this subsection.

SECTION 18. Amends Section 51A.003(b), Human Resources Code, as follows:

(b) Requires that the notice adopted under Section 51A.003 (Notice to Victims) include certain information in both English and Spanish; including information regarding the legal rights of a victim, including information regarding the ability of the victim to provide information to the local prosecutor that will be helpful to a magistrate setting bail if the person committing the offense is arrested. Makes nonsubstantive changes.

SECTION 19. Repealer: Article 17.071(f-1) (relating to requiring a sheriff who receives a report from a charitable bail organization containing certain information about a defendant whose bail was paid to provide a copy of that report to OCA), Code of Criminal Procedure.

SECTION 20. Requires the Supreme Court of Texas, as soon as practicable but not later than October 1, 2025, to adopt rules necessary to implement Article 44.01(f-1), Code of Criminal Procedure, as added by this Act.

SECTION 21. Makes application of this Act prospective.

SECTION 22. (a) Effective date, except as provided by this section: September 1, 2025.

(b) Effective date, Articles 16.24, 17.021(c-1), (h), and (h-1), Articles 17.027(c) and (d), Code of Criminal Procedure, and Section 72.038(c-1), Government Code: January 1, 2026.

(c) Effective date, Articles 17.021(b), 17.027(a) and (a-1), Code of Criminal Procedure: April 1, 2026.

# APPENDIX D

<div align="center">

**BILL ANALYSIS**

</div>

Senate Research Center                                                       S.B. 6

By: Huffman

Jurisprudence

9/7/2021

Enrolled

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

The current bail system in Texas allows for the continual release of habitual and violent offenders on multiple felony personal bonds. S.B. 6 seeks to address the release practices surrounding habitual and violent offenders and aims to better protect the safety of their victims, law enforcement officers, and communities as a whole.

Currently, Texas's bail system as a whole lacks transparent and readily available information. Without this information, it is difficult: (1) to study the effectiveness of the system; (2) for our judges and magistrates who are setting bond; and (3) to properly assess the risk of defendants within the system. S.B. 6 would allow defendants to receive thorough individual assessments, as well as increase data reporting to create a more accountable system.

S.B. 6 amends current law relating to rules for setting the amount of bail, to the release of certain defendants on a monetary bond or personal bond, to related duties of certain officers taking bail bonds and of a magistrate in a criminal case, to charitable bail organizations, and to the reporting of information pertaining to bail bonds.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1. Authorizes this Act to be cited as the Damon Allen Act.

SECTION 2. Amends Article 1.07, Code of Criminal Procedure, as follows:

> Art. 1.07. RIGHT TO BAIL. Requires any person to be eligible for bail unless denial of bail is expressly permitted by the Texas Constitution or by other law. Prohibits this provision from being construed to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law. Deletes existing text requiring all prisoners to be bailable unless for capital offenses when the proof is evident. Makes nonsubstantive changes.

SECTION 3. Amends Article 15.17(a), Code of Criminal Procedure, as follows:

> (a) Requires the magistrate, if applicable, to inform the arrested person that the person is authorized to file the affidavit described by Article 17.028(f). Requires the magistrate to allow the person arrested reasonable time and opportunity to consult counsel and, after determining whether the person is currently on bail for a separate criminal offense and whether the bail decision is subject to Article 17.027, to admit the person arrested to bail if allowed by law.

SECTION 4. Amends Article 17.02, Code of Criminal Procedure, as follows:

> Art. 17.02. DEFINITION OF "BAIL BOND". Requires that any cash funds deposited under this article be receipted for by the officer receiving the funds and, on order of the

APPENDIX D

court, be refunded in the amount shown on the face of the receipt less the administrative fee authorized by Section 117.055 (County Expenses Paid From Fees), Local Government Code, if applicable, after the defendant complies with the conditions of the defendant's bond, to certain persons.

SECTION 5. Amends Chapter 17, Code of Criminal Procedure, by adding Articles 17.021, 17.022, 17.023, 17.024, 17.027, and 17.028, as follows:

Art. 17.021. PUBLIC SAFETY REPORT SYSTEM. (a) Requires the Office of Court Administration of the Texas Judicial System (OCA) to develop and maintain a public safety report system that is available for use for purposes of Article 17.15.

(b) Requires that the public safety report system:

(1) state the requirements for setting bail under Article 17.15 and list each factor provided by Article 17.15(a);

(2) provide the defendant's name and date of birth or, if impracticable, other identifying information, the cause number of the case, if available, and the offense for which the defendant was arrested;

(3) provide information on the eligibility of the defendant for a personal bond;

(4) provide information regarding the applicability of any required or discretionary bond conditions;

(5) provide, in summary form, the criminal history of the defendant, including information regarding any:

(A) previous misdemeanor or felony convictions;

(B) pending charges;

(C) previous sentences imposing a term of confinement;

(D) previous convictions or pending charges for offenses that are offenses involving violence as defined by Article 17.03 (Personal Bond), or offenses involving violence directed against a peace officer; and

(E) previous failures of the defendant to appear in court following release on bail; and

(6) be designed to collet and maintain the information provided on a bail form submitted under Section 72.038, Government Code.

(c) Requires OCA to provide access to the public safety report system to the appropriate officials in each county and each municipality at no cost. Prohibits this subsection from being construed to require OCA to provide an official or magistrate with any equipment or support related to accessing or using the public safety report system.

(d) Prohibits the public safety report system from:

(1) being the only item relied on by a judge or magistrate in making a bail decision;

(2) including a score, rating, or assessment of a defendant's risk or making any recommendation regarding the appropriate bail for the defendant; or

(3) including any information other than the information listed in Subsection (b).

(e) Requires OCA to use the information maintained under Subsection (b)(6) to collect data from the preceding state fiscal year regarding the number of defendants for whom bail was set after arrest, including the number for each category of offense, the number of personal bonds, and the number of monetary bonds.

(f) Requires OCA, not later than December 1 of each year, to submit a report containing the data described by Subsection (e) to the governor, lieutenant governor, speaker of the Texas House of Representatives (house), and presiding officers of the standing committees of each house of the legislature with primary jurisdiction over the judiciary.

(g) Requires the Department of Public Safety of the State of Texas (DPS) to assist OCA in implementing the public safety report system established under this article and to provide criminal history record information to OCA in the electronic form necessary for OCA to implement this article.

(h) Provides that any contract for goods or services between OCA and a vendor that may be necessary or appropriate to develop the public safety report system is exempt from the requirements of Subtitle D (State Purchasing and General Services), Title 10 (General Government), Government Code. Provides that this subsection expires September 1, 2022.

Art. 17.022. PUBLIC SAFETY REPORT. (a) Requires a magistrate considering the release on bail of a defendant charged with an offense punishable as a Class B misdemeanor or any higher category of offense to order that:

> (1) the personal bond office established under Article 17.42 (Personal Bond Office) for the county in which the defendant is being detained, if a personal bond office has been established for that county, or other suitably trained person including judicial personnel or sheriff's department personnel, use the public safety report system developed under Article 17.021 to prepare a public safety report with respect to the defendant; and

> (2) the public safety report prepared under Subdivision (1) be provided to the magistrate as soon as practicable but not later than 48 hours after the defendant's arrest.

(b) Prohibits a magistrate from, without the consent of the sheriff, ordering a sheriff or sheriff's department personnel to prepare a public safety report under this article.

(c) Authorizes a magistrate, notwithstanding Subsection (a), to personally prepare a public safety report, before or while making a bail decision, using the public safety report system developed under Article 17.021.

(d) Requires the magistrate to:

> (1) consider the public safety report before setting bail; and

> (2) promptly but not later than 72 hours after the time bail is set, submit the bail form described by Section 72.038, Government Code, in accordance with that section.

(e) Provides that, in the manner described by this article, a magistrate is authorized, but is not required, to order, prepare, or consider a public safety report

in setting bail for a defendant charge only with a misdemeanor punishable by fine only or a defendant who receives a citation under Article 14.06(c) (relating to authorizing a peace officer who is charging a person with committing an offense that is a Class A or B misdemeanor, if the person resides in the county where the offense occurred, instead of taking the person before a magistrate, to issue a citation to the person that contains written notice of the time and place the person is required to appear before a magistrate of this state, the name and address of the person charged, and the offense charged). Requires that the report, if ordered, be prepared for the time and place for an appearance as indicated in the citation.

(f) Authorizes a magistrate to set bail for a defendant charged only with an offense punishable as a misdemeanor without ordering, preparing, or considering a public safety report if the public safety report system is unavailable for longer than 12 hours due to a technical failure at OCA.

Art. 17.023. AUTHORITY TO RELEASE ON BAIL IN CERTAIN CASES. (a) Provides that this article applies only to a defendant charged with an offense that is punishable as a felony or is a misdemeanor punishable by confinement.

(b) Authorizes a defendant to whom this article applies, notwithstanding any other law, to be released on bail only by a magistrate who is:

(1) any of the following:

(A) a resident of this state;

(B) a justice of the peace serving under Section 27.054 (Exchange of Benches) or 27.055 (Special and Temporary Justices), Government Code; or

(C) a judge or justice serving under Chapter 74 (Court Administration Act), Government Code; and

(2) in compliance with the training requirements of Article 17.024.

(c) Provides that a magistrate is not eligible to release on bail a defendant described by Subsection (a) if the magistrate:

(1) has been removed from office by impeachment, by the Supreme Court of Texas, by the governor on address to the legislature, by a tribunal reviewing a recommendation of the State Commission on Judicial Conduct (SCJC), or by the legislature's abolition of the magistrate's court; or

(2) has resigned from office after having received notice that formal proceedings by SCJC have been instituted as provided by Section 33.022 (Investigations and Formal Proceedings), Government Code, and before final disposition of the proceedings.

Art. 17.024. TRAINING ON DUTIES REGARDING BAIL. (a) Requires OCA, in consultation with the court of criminal appeals, to develop or approve training courses regarding a magistrate's duties, including duties with respect to setting bail in criminal cases. Requires that the courses developed include:

(1) an eight-hour initial training course that includes the content of the applicable training course described by Article 17.0501; and

(2) a two-hour continuing education course.

(b) Requires OCA to provide for a method of certifying that a magistrate has successfully completed a training course required under this article and has demonstrated competency of the course content in a manner acceptable to OCA.

(c) Provides that a magistrate is in compliance with the training requirements of this article if:

(1) not later than the 90th day after the date the magistrate takes office, the magistrate successfully completes the course described by Subsection (a)(1);

(2) the magistrate successfully completes the course described by Subsection (a)(2) in each subsequent state fiscal biennium in which the magistrate serves; and

(3) the magistrate demonstrates competency as provided by Subsection (b).

(c-1) Provides that, notwithstanding Subsection (c), a magistrate who is serving on April 1, 2022, is considered to be in compliance with Subsection (c)(1) if the magistrate successfully completes the training course not later than December 1, 2022. Provides that this subsection expires May 1, 2023.

(d) Authorizes any course developed or approved by OCA under this article to be administered by the Texas Justice Court Training Center, the Texas Municipal Courts Education Center, the Texas Association of Counties, the Texas Center for the Judiciary, or a similar entity.

Art. 17.027. RELEASE ON BAIL OF DEFENDANT CHARGED WITH FELONY OFFENSE COMMITTED WHILE ON BAIL. (a) Provides that, notwithstanding any other law:

(1) if a defendant is charged with committing an offense punishable as a felony while released on bail in a pending case for another offense punishable as a felony and the subsequent offense was committed in the same county as the previous offense, the defendant is authorized to be released on bail only by:

(A) the court before whom the case for the previous offense is pending; or

(B) another court designated in writing by the court described by Paragraph (A); and

(2) if a defendant is charged with committing an offense punishable as a felony while released on bail for another pending offense punishable as a felony and the subsequent offense was committed in a different county than the previous offense, electronic notice of the charge is required to be promptly given to the court specified by Subdivision (1) for purposes of reevaluating the bail decision, determining whether any bail conditions were violated, or taking any other applicable action.

(b) Prohibits this article from being construed to extend any deadline provided by Article 15.17 (Duties of Arresting Officer and Magistrate).

Art. 17.028. BAIL DECISION. (a) Requires a magistrate, without unnecessary delay but not later than 48 hours after a defendant is arrested, to order, after individualized consideration of all circumstances and of the factors required by Article 17.15(a), that the defendant be granted personal bond with or without conditions, be granted surety or cash

bond with or without conditions, or be denied bail in accordance with the Texas Constitution and other law.

(b) Requires the magistrate, in setting bail under this article, to impose the least restrictive conditions, if any, and the personal bond or cash or surety bond necessary to reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense.

(c) Provides that, in each criminal case, unless specifically provided by other law, there is a rebuttable presumption that bail, conditions of release, or both bail and conditions of release are sufficient to reasonably ensure the defendant's appearance in court as required and the safety of the community, law enforcement, and the victim of the alleged offense.

(c-1) Prohibits Subsections (b) and (c) from being construed as requiring the court to hold an evidentiary hearing that is not required by other law.

(d) Prohibits a judge from adopting a bail schedule or entering a standing order related to bail that is inconsistent with this article or that authorizes a magistrate to make a bail decision for a defendant without considering each of the factors in Article 17.15(a).

(e) Requires a defendant who is denied bail or who is unable to give bail in the amount required by any bail schedule or standing order related to bail to be provided with the warnings described by Article 15.17.

(f) Requires a defendant who is charged with an offense punishable as a Class B misdemeanor or any higher category of offense and who is unable to give bail in the amount required by a schedule or order described by Subsection (e), other than a defendant who is denied bail, to be provided with the opportunity to file with the applicable magistrate a sworn affidavit in a certain form. Sets forth the required language of the affidavit.

(g) Requires a defendant filing an affidavit under Subsection (f) to complete a form to allow a magistrate to assess information relevant to the defendant's financial situation. Requires that the form be the form used to request appointment of counsel under Article 26.04 (Procedures for Appointing Counsel) or a form promulgated by OCA that collects, at a minimum and to the best of the defendant's knowledge, the information a court is authorized to consider under Article 26.04(m).

(g-1) Requires the magistrate making the bail decision under Subsection (a), if applicable, to inform the defendant of the defendant's right to file an affidavit under Subsection (f) and to ensure that the defendant receives reasonable assistance in completing the affidavit described by Subsection (f) and the form described by Subsection (g).

(h) Authorizes a defendant described by Subsection (f) to file an affidavit under Subsection (f) at any time before or during the bail proceeding under Subsection (a). Provides that a defendant who files an affidavit under Subsection (f) is entitled to a prompt review by the magistrate on the bail amount. Authorizes the review to be conducted by the magistrate making the bail decision under Subsection (a) or to occur as a separate pretrial proceeding. Requires the magistrate to consider the facts presented and the rules established by Article 17.15(a) and to set the defendant's bail. Requires the magistrate, if the magistrate does not set the defendant's bail in an amount below the amount required by the schedule or order described by Subsection (e), to issue written findings of fact supporting the bail decision.

(i) Requires the judges of the courts trying criminal cases and other magistrates in a county to report to OCA each defendant for whom a review under Subsection (h) was not held within 48 hours of the defendant's arrest. Requires the magistrate or an employee of the court or of the county in which the defendant is confined, if a delay occurs that will cause the review under Subsection (h) to be held later than 48 hours after the defendant's arrest, to provide notice of the delay to the defendant's counsel or to the defendant, if the defendant does not have counsel.

(j) Authorizes the magistrate to enter an order or take other action authorized by Article 16.22 (Early Identification of Defendant Suspected of Having Mental Illness or Intellectual Disability) with respect to a defendant who does not appear capable of executing an affidavit under Subsection (f).

(k) Prohibits this article from being construed to require the filing of an affidavit before a magistrate considers the defendant's ability to make bail under Article 17.15.

(l) Authorizes a written or oral statement obtained under this article or evidence derived from the statement to be used only to determine whether the defendant is indigent, to impeach the direct testimony of the defendant, or to prosecute the defendant for an offense under Chapter 37 (Perjury and Other Falsification), Penal Code.

(m) Authorizes a magistrate, notwithstanding Subsection (a), to make a bail decision regarding a defendant who is charged only with a misdemeanor punishable by fine only or a defendant who receives a citation under Article 14.06(c) without considering the factor required by Article 17.15(a)(6).

SECTION 6. (a) Amends Article 17.03, Code of Criminal Procedure, as effective September 1, 2021, by amending Subsection (b) and adding Subsections (b-2) and (b-3), as follows:

(b) Deletes existing text authorizing only the court before whom the case is pending to release on personal bond a defendant who is charged with an offense under Section 19.03 (Capital Murder), Section 20.04 (Aggravated Kidnapping), Section 22.021 (Aggravated Sexual Assault), Section 22.03 (Deadly Assault on Law Enforcement or Corrections Officer, Member or Employee of Board of Pardons and Paroles, or Court Participant), Section 22.04 (Injury to a Child, Elderly Individual, or Disabled Individual), Section 29.03 (Aggravated Robbery), Section 21.02 (Continuous Sexual Abuse of Young Child or Disabled Individual), or Section 20A.03 (Continuous Trafficking of Persons). Makes nonsubstantive changes.

(b-2) Prohibits a defendant, except as provided by Articles 15.21 (Release on Personal Bond If Not Timely Demanded), 17.033 (Release on Bond of Certain Persons Arrested Without a Warrant), and 17.151 (Release Because of Delay), from being released on personal bond if the defendant:

(1) is charged with an offense involving violence; or

(2) while released on bail or community supervision for an offense involving violence, is charged with committing:

(A) any offense punishable as a felony; or

(B) an offense under the following provisions of the Penal Code:

(i) Section 22.01(a)(1) (relating to providing that a person commits an offense if the person intentionally, knowingly, or recklessly causes bodily injury to another);

(ii) Section 22.05 (Deadly Conduct);

(iii) Section 22.07 (Terroristic Threat); or

(iv) Section 42.01(a)(7) (relating to providing that a person commits an offense if the person intentionally or knowingly discharges a firearm in a public place other than a public road or a sport shooting range) or (8) (relating to providing that a person commits an offense if the person intentionally or knowingly displays a firearm or other deadly weapon in a public place in a manner calculated to alarm).

(b-3) Defines "controlled substance" and "offense involving violence" for purposes of Article 17.03.

(b) Effective date, this section: the 91st day after the last day of the legislative session if this Act does not receive a vote of two-thirds of all the members elected to each house. Provides that if this Act receives a vote of two-thirds of all the members elected to each house, this section has no effect.

SECTION 7. (a) Amends Article 17.03, Code of Criminal Procedure, by amending Subsection (b) and adding Subsections (b-2) and (b-3), as follows:

(b) Deletes existing text authorizing only the court before whom the case is pending to release on personal bond a defendant who is charged with an offense under Section 19.03, Section 20.04, Section 22.021, Section 22.03, Section 22.04, Section 29.03, Section 21.02, or Section 20A.03. Makes nonsubstantive changes.

(b-2) Prohibits a defendant, except as provided by Articles 15.21, 17.033, and 17.151, from being released on personal bond if the defendant:

(1) is charged with an offense involving violence; or

(2) while released on bail or community supervision for an offense involving violence, is charged with committing:

(A) any offense punishable as a felony; or

(B) an offense under the following provisions of the Penal Code:

(i) Section 22.01(a)(1) (assault);

(ii) Section 22.05 (deadly conduct);

(iii) Section 22.07 (terroristic threat); or

(iv) Section 42.01(a)(7) or (8) (disorderly conduct involving firearm).

(b-3) Defines "controlled substance" and "offense involving violence" for purposes of this article.

(b) Effective date, this section: upon passage if this Act receives a vote of two-thirds of all the members elected to each house. Provides that if this Act does not receive a vote of two-thirds of all the members elected to each house, this section has no effect.

SECTION 8. Amends Chapter 17, Code of Criminal Procedure, by adding Article 17.0501, as follows:

Art. 17.0501. REQUIRED TRAINING. Requires DPS to develop training courses that relate to the use of the statewide telecommunications system maintained by DPS and that are directed to each magistrate, judge, sheriff, peace officer, or jailer required to obtain criminal history record information under Chapter 17 (Bail), as necessary to enable the person to fulfill those requirements.

SECTION 9. Amends Chapter 17, Code of Criminal Procedure, by adding Article 17.071, as follows:

Art. 17.071. CHARITABLE BAIL ORGANIZATIONS. (a) Defines "charitable bail organization." Provides that the term does not include:

(1) a person accepting donations with respect to a defendant who is a member of the person's family, as determined under Section 71.003 (Family), Family Code; or

(2) a nonprofit corporation organized for a religious purpose.

(b) Provides that this article does not apply to a charitable bail organization that pays a bail bond for not more than three defendants in any 180-day period.

(c) Prohibits a person from acting as a charitable bail organization for the purpose of paying a defendant's bail bond in a county unless the person:

(1) is a nonprofit organization exempt from federal income taxation under Section 501(a), Internal Revenue Code of 1986, as an organization described by Section 501(c)(3) of that code; and

(2) has been issued a certificate under Subsection (d) with respect to that county.

(d) Requires a county clerk to issue to a charitable bail organization a certificate authorizing the organization to pay bail bonds in the county if the clerk determines the organization is a nonprofit organization described by Subsection (c)(1) and is current on all filings required by the Internal Revenue Code.

(e) Requires a charitable bail organization to file in the office of the county clerk of each county where the organization intends to pay bail bonds an affidavit designating the individuals authorized to pay bonds on behalf of the organization.

(f) Requires a charitable bail organization, not later than the 10th day of each month, to submit, to the sheriff of each county in which the organization files an affidavit under Subsection (e), a report that includes certain information for each defendant for whom the organization paid a bail bond in the preceding calendar month.

(f-1) Requires a sheriff who receives a report under Subsection (f) to provide a copy of the report to OCA.

(g) Prohibits a charitable bail organization from paying a bail bond for a defendant at any time the organization is considered to be out of compliance with the reporting requirements of this article.

(h) Authorizes the sheriff of a county to suspend a charitable bail organization from paying bail bonds in the county for a period not to exceed one year if the sheriff determines the organization has paid one or more bonds in violation of this article and the organization has received a warning from the sheriff in the preceding 12-month period for another payment of bond made in violation of this article. Requires the sheriff to report the suspension to OCA.

(i) Provides that Chapter 22 (Forfeiture of Bail) applies to a bail bond paid by a charitable bail organization.

(j) Prohibits a charitable bail organization from accepting a premium or compensation for paying a bail bond for a defendant.

(k) Requires OCA, not later than December 1 of each year, to prepare and submit, to the governor, lieutenant governor, speaker of the house, and presiding officers of the standing committees of each house of the legislature with primary jurisdiction over the judiciary, a report regarding the information submitted to OCA under Subsections (f-1) and (h) for the preceding state fiscal year.

SECTION 10. (a) Amends Article 17.15, Code of Criminal Procedure, as follows:

Art. 17.15. New heading: RULES FOR SETTING AMOUNT OF BAIL. (a) Creates this subsection from existing text. Provides that the amount of bail and any conditions of bail to be required in any case in which the defendant has been arrested are to be regulated by the court, judge, magistrate, or officer taking the bail in accordance with Articles 17.20, 17.21 (Bail in Felony), and 17.22 and are governed by the Constitution and the following rules:

1. Requires that bail and any conditions of bail, rather than the bail, be sufficient to give reasonable assurance that the undertaking will be complied with. Makes a nonsubstantive change.

2. Makes nonsubstantive changes to this rule.

3. Provides that the nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense is an offense involving violence as defined by Article 17.03 or involves violence directed against a peace officer.

4. Requires that the ability to make bail be considered, and authorizes proof to be taken on this point. Makes nonsubstantive changes.

5. Requires that the future safety of a victim of the alleged offense, law enforcement, and the community be considered.

6. Requires that the criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by DPS and through the public safety report system developed under Article 17.021, be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. Requires that the citizenship status of the defendant be considered.

(a-1) Provides that notwithstanding any other law, the duties imposed by Subsection (a)(6) with respect to obtaining and considering information through the public safety report system do not apply until April 1, 2022. Provides that this subsection expires June 1, 2022.

(b) Requires a magistrate, for purposes of determining whether clear and convincing evidence exists to deny a person bail under Section 11d, Article I, Texas Constitution, to consider all information relevant to the factors listed in Subsection (a).

(c) Defines "family violence" for Article 17.15.

(b) Effective date, Article 17.15(a), Code of Criminal Procedure, as amended by this Act, and Article 17.15(c), as added by this Act: upon passage or the 91st day after the last day of the legislative session.

SECTION 11. Amends Article 17.20, Code of Criminal Procedure, as follows:

Art. 17.20. BAIL IN MISDEMEANOR. (a) Creates this subsection from existing text and makes nonsubstantive changes.

(b) Requires the sheriff, peace officer, or jailer, before taking bail under this article, to obtain the defendant's criminal history record information through the statewide telecommunications system maintained by DPS and through the public safety report system developed under Article 17.021.

(c) Authorizes a sheriff, peace officer, or jailer, notwithstanding Subsection (b), to make a bail decision regarding a defendant who is charged only with a misdemeanor punishable by fine only or a defendant who receives a citation under Article 14.06(c) without considering the factor required by Article 17.15(a)(6).

(d) Provides that if the defendant is charged with or has previously been convicted of an offense involving violence as defined by Article 17.03, the sheriff, officer, or jailer are prohibited from setting the amount of the defendant's bail but are authorized to take the defendant's bail in the amount set by the court.

SECTION 12. Amends Article 17.22, Code of Criminal Procedure, as follows:

Art. 17.22. MAY TAKE BAIL IN FELONY. (a) Creates this subsection from existing text. Authorizes the sheriff or other peace officer, or a jailer licensed under Chapter 1701 (Law Enforcement Officers), Occupations Code, who has the defendant in custody, in a felony case, if the court before which the case is pending is not in session in the county where the defendant is in custody, to take the defendant's bail in the amount set by the court or magistrate, or if no amount has been set, then in any amount that the officer considers reasonable and that is in compliance with Article 17.15. Deletes existing text authorizing the sheriff or other peace officer, or a jailer licensed under Chapter 1701, Occupations Code, who has the defendant in custody, in a felony case, if the court before which the same is pending is not in session in the county where the defendant is in custody, to take the defendant's bail bond in such amount as may have been fixed by the court or magistrate, or if no amount has been fixed, then in such amount as such officer may consider reasonable.

(b) Requires the sheriff, peace officer, or jailer, before taking bail under this article, to obtain the defendant's criminal history record information through the statewide telecommunications system maintained by DPS and through the public safety report system developed under Article 17.021.

(c) Prohibits the sheriff, officer, or jailer, if the defendant is charged with or has previously been convicted of an offense involving violence as defined by Article 17.03, from setting the amount of the defendant's bail but authorizes those individuals to take the defendant's bail in the amount set by the court.

SECTION 13. Amends Chapter 17, Code of Criminal Procedure, by adding Articles 17.51, 17.52, and 17.53, as follows:

Art. 17.51. NOTICE OF CONDITIONS. (a) Requires the clerk of the court, as soon as practicable but not later than the next business day after the date a magistrate issues an order imposing a condition of release on bond for a defendant or modifying or removing

a condition previously imposed, to send a copy of the order to the appropriate attorney representing the state and to the sheriff of the county where the defendant resides.

(b) Authorizes a clerk of the court to delay sending a copy of the order under Subsection (a) only if the clerk lacks information necessary to ensure service and enforcement.

(c) Requires the clerk of the court, if an order described by Subsection (a) prohibits a defendant from going to or near a child care facility or school, to send a copy of the order to the child care facility or school.

(d) Authorizes the copy of the order and any related information to be sent electronically or in another manner that can be accessed by the recipient.

(e) Requires the magistrate or the magistrate's designee to provide written notice to the defendant of the conditions of release on bond and of the penalties for violating a condition of release.

(f) Requires the magistrate to make a separate record of the notice provided to the defendant under Subsection (e).

(g) Requires OCA to promulgate a form for use by a magistrate or a magistrate's designee in providing notice to the defendant under Subsection (e). Requires that the form include the relevant statutory language from the provisions of this chapter under which a condition of release on bond is authorized to be imposed on a defendant.

Art. 17.52. REPORTING OF CONDITIONS. Requires a chief of police or sheriff who receives a copy of an order described by Article 17.51(a), or the chief's or sheriff's designee, to, as soon as practicable but not later than the 10th day after the date the copy is received, enter information relating to the condition of release into the appropriate database of the statewide law enforcement information system maintained by DPS or modify or remove information, as appropriate.

Art. 17.53. PROCEDURES AND FORMS RELATED TO MONETARY BOND. Requires OCA to develop statewide procedures and prescribe forms to be used by a court to facilitate:

(1) the refund of any cash funds paid toward a monetary bond, with an emphasis on refunding those funds to the person in whose name the receipt described by Article 17.02 was issued; and

(2) the application of those cash funds to the defendant's outstanding court costs, fines, and fees.

SECTION 14. Amends Article 66.102(c), Code of Criminal Procedure, to require that information in the computerized criminal history system relating to an arrest include, for an offender released on bail, whether a warrant was issued for any subsequent failure of the offender to appear in court. Makes nonsubstantive changes.

SECTION 15. Amends Section 27.005, Government Code, by amending Subsection (a) and adding Subsection (c), as follows:

(a) Provides that, for purposes of removal under Chapter 87 (Removal of County Officers From Office; Filling of Vacancies), Local Government Code, "incompetency" in the case of a justice of the peace includes the failure of the justice to successfully complete:

(1) within one year after the date the justice is first elected:

(A) creates this paragraph from existing text and makes a nonsubstantive change;

(B) the course described by Article 17.024(a)(1), Code of Criminal Procedure;

(2) each following year, a 20-hour course in the performance of the justice's duties, including not less than 10 hours of instruction regarding substantive, procedural, and evidentiary law in civil matters; and

(3) each following state fiscal biennium, the course described by Article 17.024(a)(2), Code of Criminal Procedure.

Makes nonsubstantive changes.

(c) Authorizes a course described by Subsection (a)(1)(A) to include a course described by Subsection (a)(1)(B).

SECTION 16. Amends Subchapter C, Chapter 71, Government Code, by adding Section 71.0351, as follows:

Sec. 71.0351. BAIL AND PRETRIAL RELEASE INFORMATION. (a) Requires the clerk of each court setting bail in criminal cases, as a component of the official monthly report submitted to OCA under Section 71.035, to report:

(1) the number of defendants for whom bail was set after arrest, including the number for each category of offense, the number of personal bonds, and the number of surety or cash bonds;

(2) the number of defendants released on bail who subsequently failed to appear;

(3) the number of defendants released on bail who subsequently violated a condition of release; and

(4) the number of defendants who committed an offense while released on bail or community supervision.

(b) Requires OCA to post the information in a publicly accessible place on OCA's Internet website without disclosing any personal information of any defendant, judge, or magistrate.

(c) Requires OCA, not later than December 1 of each year, to submit a report containing the data collected under this section during the previous state fiscal year to the governor, lieutenant governor, speaker of the house, and presiding officers of the standing committees of each house of the legislature with primary jurisdiction over the judiciary.

SECTION 17. Amends Subchapter C, Chapter 72, Government Code, by adding Section 72.038, as follows:

Sec. 72.038. BAIL FORM. (a) Requires OCA to promulgate a form to be completed by a magistrate, judge, sheriff, peace officer, or jailer who sets bail under Chapter 17, Code of Criminal Procedure, for a defendant charged with an offense punishable as a Class B misdemeanor or any higher category of offense. Requires OCA to incorporate the completed forms into the public safety report system developed under Article 17.021, Code of Criminal Procedure.

(b) Requires that the form:

(1) state the cause number of the case, if available, the defendant's name and date of birth, and the offense for which the defendant was arrested;

(2) state the name and the office or position of the person setting bail;

(3) require the person setting bail to:

(A) identify the bail type, the amount of the bail, and any conditions of bail;

(B) certify that the person considered each factor provided by Article 17.15(a), Code of Criminal Procedure; and

(C) certify that the person considered the information provided by the public safety report system; and

(4) be electronically signed by the person setting the bail.

(c) Requires the person setting bail, an employee of the court that set the defendant's bail, or an employee of the county in which the defendant's bail was set, on completion of the form required under this section, to promptly but not later than 72 hours after the time the defendant's bail is set provide the form electronically to OCA through the public safety report system.

(d) Requires OCA to publish the information from each form submitted under this section in a database that is publicly accessible on OCA's Internet website. Provides that any identifying information or sensitive data, as defined by Rule 21c, Texas Rules of Civil Procedure, regarding the victim of an offense and any person's address or contact information is required to be redacted and is prohibited from being published under this subsection.

SECTION 18. (a) Amends Section 411.083(c), Government Code, as follows:

(c) Authorizes DPS to disseminate criminal history record information under Subsection (b)(8) (relating to requiring DPS to grant access to criminal history record information to OCA) only to the extent necessary for OCA to perform a duty imposed by law, including the development and maintenance of the public safety report system as required by Article 17.021, Code of Criminal Procedure, or to compile court statistics or prepare reports. Authorizes OCA to disclose criminal history record information obtained from DPS under Subsection (b)(8):

(1) in a public safety report prepared under Article 17.022, Code of Criminal Procedure; or

(2) creates this subdivision from existing text and makes no further changes.

(b) Effective date, this section: the 91st day after the last day of the legislative session.

SECTION 19. Amends Section 117.055, Local Government Code, by amending Subsection (a) and adding Subsections (a-1) and (a-2), as follows:

(a) Requires the clerk, except as provided by Subsection (a-1), to compensate the county for the accounting and administrative expenses incurred in handling the registry funds that have not earned interest, including funds in a special or separate account, to at the time of withdrawal, deduct from the amount of the withdrawal a fee in an amount equal to five percent of the withdrawal but prohibits the amount from exceeding $50. Makes a nonsubstantive change.

(a-1) Prohibits a clerk from deducting a fee under Subsection (a) from a withdrawal of funds generated by the collection of a cash bond or cash bail bond if in the case for which the bond was taken:

(1) the defendant was found not guilty after a trial or appeal; or

(2) the complaint, information, or indictment was dismissed without a plea of guilty or nolo contendere being entered.

(a-2) Requires the clerk, on the request of a person to whom withdrawn funds generated by the collection of a cash bond or cash bail bond were disbursed, to refund to the person the amount of the fee deducted under Subsection (a) if:

(1) subsequent to the deduction, a court makes or enters an order or ruling in the case for which the bond was taken; and

(2) had the court made or entered the order or ruling before the withdrawal of funds occurred, the deduction under Subsection (a) would have been prohibited under Subsection (a-1).

SECTION 20. Repealer: Article 17.03(f) (relating to the definition of "controlled substance"), Code of Criminal Procedure.

SECTION 21. Requires OCA, as soon as practicable but not later than April 1, 2022, to create the public safety report system developed under Article 17.021, Code of Criminal Procedure, as added by this Act, and any related forms and materials and to provide to the appropriate officials in each county access to the system, forms, and materials at no cost. Requires OCA, if those items are made available before April 1, 2022, to notify each court clerk, judge or other magistrate, and office of an attorney representing the state.

SECTION 22. (a) Requires OCA, as soon as practicable but not later than April 1, 2022, to:

(1) promulgate the forms required by Articles 17.028(g) and 17.51(g), Code of Criminal Procedure, as added by this Act, and by Section 72.038, Government Code, as added by this Act; and

(2) develop or approve and make available the training courses and certification method as described by Article 17.024, Code of Criminal Procedure, as added by this Act, and develop the procedures and prescribe the forms required by Article 17.53, Code of Criminal Procedure, as added by this Act.

(b) Requires OCA, if the items described by Subsection (a) of this section are made available before April 1, 2022, to notify each court clerk, judge or other magistrate, and office of an attorney representing the state.

SECTION 23. Makes application of Section 117.055, Local Government Code, as amended by this Act, prospective.

SECTION 24. Makes application of this Act prospective.

SECTION 25. (a) Effective date, except as provided by Subsection (b) or (c) of this section or another provision of this Act: January 1, 2022.

(b) Effective date, Article 17.15(b), Code of Criminal Procedure: June 1, 2022, contingent upon approval by the voters of the constitutional amendment relating to requiring a judge or magistrate to impose the least restrictive conditions of bail that may be necessary and authorizing the denial of bail under some circumstances to a person accused of a violent or sexual offense or of continuous trafficking of persons.

(c) Effective date, Articles 17.021 and 17.024, Code of Criminal Procedure, and Sections 4, 17, 19, 20, and 21 of this Act: the 91st day after the last day of the legislative session.

# APPENDIX E

# Public Safety Report System (PSRS) Information for
# District and County Court Judges

**What does the Public Safety Report System (PSRS) do?**

The PSRS serves three primary functions – 1) generates a public safety report with respect to a defendant for magistrates to consider before setting bail for defendants charged with a Class B

misdemeanor or higher category offense, 2) provides the bail form that must be completed by magistrates, judges, sheriffs, peace officers and jailers who set bail under Chapter 17, Code of Criminal Procedure, for a defendant charged with a Class B misdemeanor or higher category offense, and 3) provides a system/process for the bail form to be submitted to OCA. (Code of Crim. Proc. Arts. 17.021, 17.022; Gov't Code Sec. 72.038)

**When do I have to consider a public safety report generated by the PSRS or submit a bail form?**

Art. 17.022(d) of the Code of Criminal Procedure requires a magistrate setting bail for a defendant charged with a Class B misdemeanor or higher category offense to consider a public safety report generated by the PSRS and to promptly, but no later than 72 hours after setting bail, submit a bail form (Sec. 72.038, Gov't Code) to OCA using the PSRS.

The following is a guide outlining when a judge is required to consider the public safety report generated by the PSRS and whether a judge needs to complete and submit a bail form using the PSRS:

| Activity | Must I Consider a Public Safety Report? | Am I required to submit a bail form? |
|---|---|---|
| Performing a 15.17 hearing and setting bail after arrest on a warrant (no indictment, information, or complaint filed) | Yes | Yes |
| Performing a 15.17 hearing and setting bail after warrantless arrest | Yes | Yes |
| Determining bail after a 15.17 hearing performed by another magistrate because the judge is the only judge authorized to set bail (b/c of pending felony) | Yes | Yes |
| Setting a new bail after surety surrender on previous bail | No | Yes |
| Bond modification - type of bond or amount of bond | No | Yes |
| Bond revocation without new bond | No | No |
| Issuing a capias | No | No |

APPENDIX E

| Arrest warrant following indictment (new charges) | No | Yes (at time of arrest) |
|---|---|---|
| Arrest warrant following indictment (no new charges and no change to originally set bail) | No | No |
| Arrest warrant following indictment (with change to originally set bail) | No | Yes (at time of arrest) |
| Warrant for violation of parole/probation (community supervision) | No | Yes (if bail taken after arrest) |
| Issuing an arrest warrant based on probable cause affidavit | No | No |

**Are there training requirements?**

Required Judicial Education - 8-Hour Course Regarding Duties of Magistrates:

**Only judges who are in compliance with the judicial education requirements Art. 17.024, Code of Criminal Procedure may set bail for a defendant who has been charged with a Class B misdemeanor or higher category offense. Art. 17.024 requires the completion of an 8-hour judicial education course** on the duties of a magistrate, including duties with respect to setting bail in criminal cases. After the initial 8-hour training, judges will need to take a 2-hour judicial education course on the duties of a magistrate in each subsequent state fiscal biennium in which the judge serves. (Please note that all Justices of the Peace must take this training regardless of whether they set bail.)

The Texas Center for the Judiciary will provide training for district and statutory county court judges and the Texas Association of Counties will provide training for constitutional county judges.

Training Required to View/Access Criminal History Information:

In order to generate a public safety report, the Public Safety Report System will be used to access criminal history information from the National Law Enforcement Telecommunications System (NLETS) and the Texas Law Enforcement Telecommunications System (TLETS). This criminal history information will be maintained by the PSRS until the purpose for the information is served, or at a maximum of 120 hours. Training requirements regarding access to criminal history will depend on a user's activity in the PSRS.

Criminal Justice Practitioner Training:

All judges or court staff who access or view hard or electronic copies of criminal history reports are required to obtain and maintain a Criminal Justice Practitioner (CJP) certification. CJP certification can be obtained after a 2-hour self-paced online course provided by the Department of Public Safety (DPS). Recertification is required after two years.

<u>Texas Law Enforcement Telecommunications System (TLETS) Mobile Access Training</u>:

The public safety reports generated by the PSRS will contain full and summary criminal history information on defendants pulled from NLETS and TLETS. Users who prepare public safety reports for judges will need their own individual TLETS user ID so that they can query NLETS and TLETS to obtain a defendant's criminal history. New users have six months to complete the training after initial access to the PSRS is granted. Recertification is required after two years.

For information on how to request access to CJP certification training or TLETS Mobile Access Training or to confirm whether a user's certification is still valid, please email DPS at TCIC.Training@DPS.Texas.gov.

Additional information regarding the PSRS is available at:
https://www.txcourts.gov/programsservices/public-safety-report-system/.

# APPENDIX F

# Senate Bill 9
# 89th Texas Legislature



Senate Bill 9 (SB 9), recently passed by the 89th Texas Legislature, addresses the release on bail of habitual and violent offenders. SB 9 also creates new processes related to bail reviews and appeals. This overview does **NOT** summarize every section of SB 9. To read in full, click here.

## Key Changes

1. **The Public Safety Report System Will Include More Information**
   The Public Safety Report System (PSRS) developed by OCA will include the following additional information: (1) whether the defendant is on community supervision, parole, or mandatory supervision in another case; (2) whether the defendant is released on bail in another case or participating in a pretrial intervention program; (3) whether an outstanding warrant for the defendant's arrest has been entered into the NCIC or TCIC database; and (4) whether the defendant is subject to an active protective order. This information will appear as part of a defendant's criminal history, if applicable. *See Section 2 of the bill amending Article 17.021(b), Code of Criminal Procedure.*

2. **Prosecutors Will Have Limited Access To The Public Safety Report System**
   Prosecutors will have limited access to the Public Safety Report System. Now, prosecutors will be able to view completed bail forms in the system. *See Section 2 of the bill adding Subarticle (c-1) to Article 17.021, Code of Criminal Procedure.*

3. **There Is No Obligation To Prepare A Public Safety Report If The Defendant Is Not In Custody**
   A magistrate may, but is not obligated to, prepare a public safety report when setting or recommending bail for a defendant who is not in custody at the time the report is ordered, prepared, or considered. *See Section 3 of the bill adding Article 17.022(g), Code of Criminal Procedure*.

4. **There Is A NEW Procedure For Notifying The Appropriate Court When A Defendant Commits A Felony While On Bail For A Felony Committed In Another County**
   The local administrative district judge for each county must designate a person to receive electronic notices from another county when a defendant released on bail for a felony offense commits a subsequent felony. Each county must ensure that the name and contact information of the designated person is included in the Public Safety Report System developed by OCA in accordance with Article 17.021. Upon receiving notice from a county, the designated person must promptly notify the court before whom the case is pending, the district clerk, the attorney representing the state, and the defendant's attorney, if known. The court before whom the case is pending must determine whether the defendant violated

APPENDIX F

# Senate Bill 9
# 89th Texas Legislature



any bail conditions, and if so, whether to revoke or modify the terms of the defendant's bond. *Section 5 of the bill amending Article 17.027(a)(2), Code of Criminal Procedure, and adding Subarticles (a-1), (c), and (d).*

5. **There Is A Change To The Procedure For Releasing On A Bail A Defendant Charged With Committing A Felony While On Bail For A Previous Felony**
The bill clarifies that Article 17.027 of the Code of Criminal Procedure applies when a defendant is taken before a magistrate for committing a felony while on bail for another felony and reduces the time a magistrate has to notify a court in another county when one of its defendants commits a felony while on bail for a felony committed in that county. The magistrate must notify the other court no later than **the next business day** after the defendant's appearance before the magistrate. *See Section 5 of the bill amending Article 17.027(a)(2), Code of Criminal Procedure.*

6. **Chapter 54 Magistrates May Not Release On Bail Certain Defendants**
A magistrate appointed under Chapter 54 of the Government Code may **not** release on bail a defendant who is charged with committing a felony offense if the defendant:
   - was released on bail, parole, or community supervision for another felony offense when the new felony offense was committed;
   - is finally convicted of two or more felonies for which the defendant was imprisoned;
   - is subject to a federal immigration detainer; or
   - is charged with murder, including capital murder, aggravated kidnapping, or aggravated sexual assault.

   *See Section 5 of the bill amending Article 17.027, Code of Criminal Procedure, by adding Subarticle (a-2).*

7. **Chapter 54 Magistrates Must Include The Name of the Appointing Authority On The Bail Order**
A magistrate appointed under Chapter 54 of the Government Code must include in an order granting bail the name of each individual who appointed the magistrate and state that the magistrate was appointed by those individuals. *See Section 5 of the bill amending Article 17.027, Code of Criminal Procedure, by adding Subarticle (a-3).*

8. **Magistrates Are Prohibited From Reducing The Bail Amount Or Conditions Of Bond Set By A District Court**
Magistrates described by Article 2A.151(5) – (14), Code of Criminal Procedure, may not reduce the bail amount or conditions of bond set by the judge of a district court, including

# Senate Bill 9
## 89th Texas Legislature



amounts or conditions set by the judge of a district court in another county. *See Section 10 of the bill adding Article 17.092, Code of Criminal Procedure.*

9. **Reviewing Or Modifying Bail After Defendant Is Released Because Of Delay ("Speedy Trial" Violation)**

During the course of the action, the judge or magistrate before whom the action is pending may require the accused to give another bond, even if the defendant is currently on bail or bond because of delay, in violation of Art. 17.151, Code of Criminal Procedure. However, the judge or magistrate must make certain findings before requiring the defendant to do so. If the judge or magistrate finds that the bond is defective, excessive or insufficient in amount, or that the sureties, if any, are unacceptable, or for any other good and sufficient cause, the judge or magistrate may order the defendant's rearrest and require the defendant to give another bond. *See Section 9 of the bill amending Article 17.09, Code of Criminal Procedure.*

10. **Defendant's Appearance And PSR Are Required Before Releasing A Defendant Charged With A Felony**

If the defendant is charged with a felony offense, the magistrate must ensure the defendant's appearance before the magistrate and consider a public safety report prepared for the defendant before releasing the defendant on bail, even if the magistrate is releasing the defendant on a bail or bond fixed by the court in which the felony is pending. *See Section 11 of the bill amending Article 17.21, Code of Criminal Procedure.*

11. **There Is A NEW Procedure For The Review Of A Bail Decision Made Under Article 17.028, Code Of Criminal Procedure, By A Court that Does NOT Have Jurisdiction To Try The Offense For Which The Defendant Is Charged Or Arrested**

If a district court did not make the initial bail decision for a person charged with a felony offense, the bail decision may be reviewed by any district judge in the county. The local administrative district judge for each county must establish a procedure for the district clerk to notify each district judge in the county when the district clerk receives a request to review the bail decision. A district judge must review the bail decision as soon as possible but no later than the **next business day** after the request for the review is filed with the district clerk. The reviewing judge must comply with Article 17.09, Code of Criminal Procedure, and the rules for setting bail and must consider the facts presented. If the reviewing judge increases the bail amount or require additional conditions of bail for a defendant who is <u>not</u> in custody, the judge must issue a summons to appear and give the defendant a reasonable

# Senate Bill 9
## 89ᵗʰ Texas Legislature



opportunity to appear before issuing a warrant for the defendant's arrest. *See Section 6 of the bill adding Article 17.029, Code of Criminal Procedure.*

### 12. Restrictions On The Use Of Personal Bond

A defendant may not be released on personal bond if the defendant is charged with: murder under Section 19.02(b)(4), Penal Code; violating certain court orders or conditions of bond in a family violence, child abuse or neglect, sexual assault or abuse, indecent assault, stalking, or trafficking case under Section 25.07, Penal Code; unlawful possession of a firearm under Section 46.04(a), Penal Code; or terroristic threat under Section 22.07, Penal Code, if the offense is punishable as a Class A misdemeanor or higher category. (*Please note that the bill removes the requirement that the defendant must have committed the terroristic threat while released on bail or community supervision for an offense involving violence.*) The bill also removes a magistrate's authority to grant a personal bond if the defendant commits a felony offense, a Class A misdemeanor assault, a deadly conduct offense, or certain disorderly conduct offenses while on parole for an offense involving violence. *See Section 7 of the bill amending Article 17.03 (b-2), Code of Criminal Procedure.*

### 13. Confinement Before Sentencing Is NOW Mandatory Under Certain Circumstances

If the defendant enters a plea of guilty or nolo contendere to an offense listed in Article 42A.054(a), Code of Criminal Procedure, and the court adjudges the defendant guilty of that offense, the court must confine the defendant prior to sentencing if the offense is one for which a jury cannot recommend community supervision. *See Section 12 of the bill adding Article 27.20, Code of Criminal Procedure.*

### 14. A Court Must Make And Enter An Affirmative Finding In The Judgment Or Dismissal Order If The Defendant Fails To Appear After Being Released From Custody For The Offense

If the court determines that the defendant **willfully** failed to appear after being released from custody for a Class B misdemeanor or higher category of offense, the court must make and enter an affirmative finding of the fact in the judgment or dismissal order in the case. The affirmative finding must include the number of times the defendant failed to appear for the offense. *See Sections 13 and 14 of the bill adding Section 17 to Article 42.01 and Article 42.0195, Code of Criminal Procedure.*

# Senate Bill 9
## 89th Texas Legislature



### 15. The State Is Now Entitled To Appeal An Order Granting Bail In An Amount the State Considers Insufficient

The attorney for the state is entitled to appeal an order granting bail if the state believes the bail amount is insufficient. ***However, this right is limited to certain cases***. The case must involve a murder, a capital murder, certain aggravated assaults, an aggravated kidnapping, an aggravated robbery, an aggravated sexual assault, an indecency with a child, or a trafficking of persons or continuous trafficking of persons offense, or the defendant must have committed a felony while on bail for a previous felony. The court of appeals will conduct a *de novo* review of the bail decision and issue an order no later than the 20th day after the appeal is filed. The court of appeals can affirm or modify the bail amount or reject and remand the case for modification of the bail amount. If the defendant is in custody, he or she will remain in custody during the pendency of the appeal. If the defendant is on bail, the defendant is entitled to remain on the existing bail during the pendency of the appeal. The Texas Supreme Court must adopt rules to implement the state's right of appeal under the bill no later than October 1, 2025. *See Sections 15, which amends Article 44.01, Code of Criminal Procedure, and 20 of the bill.*

**Questions?**
Email: bail@txcourts.gov

# APPENDIX G

Harris County Criminal Courts at Law
*Rules of Court*



# RULES OF COURT
## Harris County Criminal Courts at Law
As amended through September 30, 2025

APPENDIX G

1

Harris County Criminal Courts at Law
*Rules of Court*

# Contents

RULE 1.    GENERAL PROVISIONS ............................................................................................. 4

RULE 2.    PROCEDURE FOR THE FILING OF CASES ......................................................... 4

RULE 3.    TRANSFER OF CASES .............................................................................................. 7

RULE 4.    INITIAL SETTINGS .................................................................................................... 8

RULE 5.    ADDING CASES TO THE DAILY DOCKET ........................................................ 14

RULE 6.    DOCKETING OF MISDEMEANOR INDICTMENTS ........................................ 15

RULE 7.    DOCKETING OF APPEALS FROM NON-RECORD MUNICIPAL COURTS, JUSTICE OF THE PEACE COURTS, MUNICIPAL COURTS OF RECORD, AND ADMINISTRATIVE LICENSE REVOCATION HEARINGS PURSUANT TO CHAPTERS 524 AND 724 TEXAS TRANSPORTATION CODE ................................................. 15

RULE 8.    DOCKETING OF CASES: JUDGE RECUSAL OR DISQUALIFICATION ........................................... 16

RULE 9.    BAIL POLICIES ........................................................................................................ 17

RULE 10.    REFUND OF CASH BONDS ................................................................................. 24

RULE 11.    BOND FORFEITURE REINSTATEMENTS, DISMISSALS, AND JUDGMENTS ............................... 24

RULE 12.    APPROVAL OF PERSONAL BONDS .................................................................. 25

RULE 13.    SIGNING OF PLEADINGS .................................................................................. 25

RULE 14.    PREPARATION OF JUDGMENTS ...................................................................... 25

RULE 15.    PETITION FOR OCCUPATIONAL DRIVER'S LICENSE .................................. 25

RULE 16.    ATTORNEY OF RECORD .................................................................................... 26

RULE 17.    JUVENILE DEFENDANTS ................................................................................... 27

RULE 18.    COUNTY CRIMINAL COURT MANAGEMENT PROGRAM ......................... 27

RULE 19.    CODE OF JUDICIAL CONDUCT ........................................................................ 29

RULE 20.    COURT REPORTERS ............................................................................................ 30

RULE 21.    SATISFACTION OF JUDGMENT: ORDER PERMITTING PARTIAL PAYMENT ON FINES AND COSTS        30

Harris County Criminal Courts at Law
*Rules of Court*

RULE 22.    RELEASE OF CLERK'S RECORD TO COUNSEL ............................................................ 30

RULE 23.    ALTERNATIVE PLAN FOR THE APPOINTMENT OF COUNSEL TO INDIGENT DEFENDANTS UNDER THE FAIR DEFENSE ACT ............................................................ 31

RULE 24.    ASSOCIATE JUDGES ............................................................................................ 47

RULE 25.    DISASTER PLAN .................................................................................................. 48

RULE 26.    SLIDING-SCALE FEE SCHEDULE FOR GLOBAL POSITIONING SYSTEM ...................... 49

disqualification in the referral order. The Presiding Judge of these courts shall issue an order directing the clerk to assign a judge to preside over the case using its computerized random assignment program. The judges, coordinators, and clerks shall then proceed as with any other case transfer.

    8.1.1.    After a transfer pursuant to Rule 8.1, the clerk shall take the next case that would have otherwise been assigned to the receiving court and instead assign it to the recusing court.

8.2.    **INVOLUNTARY RECUSAL OR DISQUALIFICATION.** Immediately after declining to grant a motion to recuse or disqualify, a judge shall sign an order referring the case to the Presiding Judge of the Second Administrative Judicial Region and direct a member of the Office of County Court Management to transmit the referral order to the regional Presiding Judge. The Presiding Judge of the Second Administrative Judicial Region shall assign a judge in the manner provided by Rule 9.2.4, Regional Rules of Administration of the Second Administrative Judicial Region of Texas. The judge assigned to rule on the motion shall sign an order granting or denying the motion using the form of order promulgated by the region. The order shall be filed with the clerk of the court. If the motion is granted, the district clerk shall use the computerized random assignment program to determine the court to which the case will be assigned. The judge assigned to rule on the motion shall sign an order transferring the case to the randomly selected court. The judges, coordinators, and clerks shall then proceed as with any other case transfer.

## RULE 9.    BAIL POLICIES

9.1.    Pursuant to *ODonnell v. Harris County*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), and the Fifth Circuit in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), the Harris County Criminal Court at Law Judges ("CCCL Judges") order these policies be applied to all persons arrested for a misdemeanor offense. This rule is designed to vindicate the federal constitutional rights at issue in *ODonnell v. Harris County* arising from the federal Due Process and Equal Protection Clauses. To the extent other provisions of federal or Texas law provide greater protections, nothing in this Rule should be construed to limit those greater protections.[1]

9.2.    To the extent Local Rule 9 conflicts with any other local rule, Local Rule 9 controls. Except for situations described in Local Rule 9.4.1-9.4.6, all misdemeanor arrestees will have unsecured bail amounts set initially at no more than $100 and be promptly released[2] on a

---

[1] For example, Texas law provides greater protections through the Texas Constitution's right to bail clause, Tex. Const. art. 1 § 11, and through statutory protections relating to the timing of post-arrest proceedings, *see, e.g.*, Tex. Code of Crim. Pro. 15.17 (requiring arrestees be taken before a magistrate "without unnecessary delay"); Tex. Gov't Code § 54.858 ("The criminal law hearing officer shall be available, within 24 hours of a defendant's arrest, to determine… all matters pertaining to bail."); Texas Code of Criminal Procedure 17.033(a) ("[A] person who is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $5,000, not later than the 24th hour after the person's arrest if the person was arrested for a misdemeanor and a magistrate has not determined whether probable cause exists to believe that the person committed the offense. If the person is unable to obtain a surety for the bond or unable to deposit money in the amount of the bond, the person must be released on personal bond.").

[2] The term "release" as used herein refers to release from custody in the pending case for which the new arrest occurred. Thus, if a person has other pending lawful holds (e.g. from another case, parole, or from another jurisdiction), "release" would mean release to that other hold rather than release from custody.

17

personal bond with or without other non-financial conditions as soon as practicable after arrest. Consistent with Texas law, a judicial officer is not required to sign a personal bond prior to the person's release.

9.3.   Secured money bail must not be required as a condition of pretrial release prior to a bail hearing[3] that meets the requirements of Local Rule 9.12, including an individualized determination of ability to pay and, if the person cannot pay, consideration of alternatives and a finding that detention is necessary to meet a compelling government interest in reasonably assuring public safety or reasonably protecting against flight from prosecution.

9.4.   All misdemeanor arrestees must be released on a personal bond or on non-financial conditions as soon as practicable after arrest,[4] except those who fall within the following categories, who may be detained for up to 48 hours for an individualized hearing:

9.4.1   Individuals arrested and charged under Penal Code § 25.07;

9.4.2   Individuals arrested and charged under Penal Code § 22.01, against a person described in Penal Code § 22.01(b)(2) , or individuals arrested and charged under Penal Code § 22.07(c)(1) and (§ 22.012) ;

9.4.3   Individuals arrested and charged under Penal Code § 49.04 and who the State gives notice may be subject to Penal Code § 49.09(a) for a conviction that became final within the past five years;

9.4.4   Individuals arrested and charged with any new offense while on any form of pretrial release;

9.4.5   Individuals arrested on a capias issued after a bond forfeiture or bond revocation; and

9.4.6   Individuals arrested while on any form of community supervision for a Class A or B misdemeanor or a felony offense.

---

[3] "Bail hearing" refers to any legal proceeding that occurs before any judicial officer, including CCCL Judges and Harris County Criminal Law Hearing Officers, at which conditions of release are determined or that might result in pretrial detention or a requirement to pay secured money bail as a condition of release.

[4] If necessary to assure community safety or the safety of the arrestee, a person arrested for violating Penal Code § 49.04(a) (driving while intoxicated) or Alc. Bev. Code § 106.141(c) (driving under the influence as a minor, third offense) may be detained for up to 8 hours after arrest, including past the time they would have otherwise been released, to allow time for the person to become sober and be safely released.

Harris County Criminal Courts at Law
*Rules of Court*

---

9.5     Any person arrested for the reasons described in Local Rule 9.4.1-9.4.6 may be kept in custody pending an individualized hearing before a judicial officer.[5] Any judicial officer who makes decisions about conditions of release, including the Harris County Criminal Law Hearing Officers, must have complete discretion to release on a personal bond any misdemeanor arrestee prior to an individualized hearing.

9.6     Secured money bail must not be imposed as a condition of release prior to a bail hearing that meets the requirements of Local Rule 9.12.

9.7     Secured money bail must not be used as a condition of pretrial release at any time in the pretrial period for any misdemeanor arrestee other than those persons arrested for the reasons described in Local Rule 9.4.1-9.4.6.

9.8     Any arrestee who is not promptly released on a personal bond after arrest must receive a bail hearing that meets the requirements of Local Rule 9.12 as soon as practicable but no later than 48 hours after arrest. Nothing in this provision is intended to conflict with any provision of Texas law or local rules.

9.9     If a person falls within a carve-out category set forth in Local Rule 9.4.1-9.4.6 and cannot be physically brought to an in-person hearing, a bail hearing must be conducted within 48 hours of arrest in absentia, and an in-person bail hearing must be conducted as soon as practicable thereafter. A judicial officer may travel to the physical location of the arrestee to conduct the bail hearing in-person; a bail hearing conducted using audio-visual equipment will satisfy the requirement for an in-person bail hearing.

9.10    At the bail hearing, the judicial officer may consider the full range of available conditions of release, including secured money bail, unsecured money bail, and nonfinancial conditions. Any judicial officer has complete discretion to release any misdemeanor arrestee on a personal bond.

9.11    Arrestees subject to a bail hearing must be represented by the Harris County Public Defender or other court-appointed counsel. Arrestees may retain a private attorney to represent them at the bail hearing.

---

[5] Although individuals who fall within Local Rule 9.4.1-9.4.6. *may* be detained for up to 48 hours for a bail hearing, detention is not mandatory. Employees of the District Attorney's Office, Pretrial Services, the Sheriff's Office, or other government agencies may recommend that a judicial officer release any arrestee on a personal bond prior to a bail hearing. The decision to release a person who falls within these categories must be made by a judicial officer. Such recommendations do not infringe judicial officers' authority to make decisions about conditions of release. They simply preserve the possibility of expeditious release on unsecured bond prior to a bail hearing for arrestees who fall within Local Rule 9.4.1-9.4.6. if a judicial officer decides that release prior to a bail hearing is appropriate.

9.12    Before a judicial officer may require secured money bail as a condition of release at a bail hearing, the following procedures must be provided, and the following findings must be made:

9.12.1    Arrestees must be represented by counsel at bail hearings. Indigent arrestees are entitled to representation by the Public Defender's Office or other court-appointed counsel. At bail hearings under Local Rule 4.2, arrestees must be represented by the Harris County Public Defender as described in Local Rule 4.2.2.2.

9.12.2    In every case, notice must be provided to the arrestee that financial information will be collected through an affidavit, and the County must explain to the arrestee the nature and significance of the financial information to be collected. The language required is as follows:

9.12.3    **I am [First Name] from Harris County Pretrial Services. I am here to interview you and report your answers to the Court. What you tell me may be used to make decisions about your release from jail and whether a lawyer will be appointed in your defense. Also, you will need to state the amount of money that you can afford to pay at the time of the hearing that will be held after we talk. This is the amount of money you could pay without suffering any hardship in your ability to meet your basic needs, like food, clothing, shelter, phone, medical care, and transportation for you and any dependents. If you cannot afford to pay any money without hardship, please let me know. I will then also ask you to sign a paper with the financial information that you provided. Your answers must be truthful under penalty of law. False answers may be used against you. The information will be shared with the Court, the District Attorney and possibly other agencies. You may refuse to complete the interview, or you may refuse to provide me with the financial information. You will be allowed to talk to an attorney before your bail hearing. You may speak to the attorney before you decide whether to participate in this interview. Do you agree to go forward with the interview and to provide financial information?** The judicial officer must provide adequate notice to every arrestee appearing for a hearing concerning pretrial release and detention of the rights at stake in the hearing and the procedural protections and substantive findings required when determining conditions of pretrial release or detention. The judicial officer may satisfy this requirement by providing a general oral notice to a group of arrested individuals. The judicial officer must provide notice that includes the following in all material respects:

- The purpose of this hearing is to determine the least-restrictive pretrial conditions necessary to serve the government's interest in reasonably assuring public safety and reasonably protecting against flight from prosecution.

Harris County Criminal Courts at Law
*Rules of Court*

---

- Your federal constitutional rights to pretrial liberty and against wealth-based detention are at issue in this hearing because I will be considering conditions of release and whether pretrial detention is necessary.

- I am required to consider whether alternatives to pretrial detention could serve the government's interests in reasonably assuring public safety and reasonably protecting against flight from prosecution. I cannot order you detained before trial—and I cannot require you to pay an amount of money bail that you cannot afford—if there are any conditions of release that would be adequate to reasonably assure public safety and reasonably protect against flight from prosecution.

- Your lawyer will be able to present or proffer evidence and to argue on your behalf at this hearing about any factors relevant to release, detention, and the availability of alternative conditions.

- Before requiring secured money bail as a condition of release, I will review the financial information that was collected through an affidavit so that I can determine whether you can afford to pay money bail and if so how much. Before I am permitted to require money bail, I must make a finding on the record as to whether you can afford to pay that amount today.

- You will have an opportunity to challenge the government's arguments and evidence relating to the bail decision. You will also have an opportunity during this hearing to make legal arguments and to present or proffer evidence about any factors relevant to release, detention, and the availability of alternative conditions. This is not an opportunity to try your case—the issue before the court is determining appropriate conditions of pretrial release or whether you must be detained as a last resort pending your trial.

- If I require conditions of release or pretrial detention, I will explain my decision on the record.

- I cannot order that you be detained or require you to pay an unaffordable amount of money bail as a condition of release unless I make a finding by clear and convincing evidence that no other condition or combination of conditions is adequate to reasonably assure public safety or to reasonably protect against flight from prosecution. I must identify and explain the reasons for my decision and the evidence and information I relied on in making that decision on the record, so that you can challenge the decision at a later date. Requiring unaffordable money bail or ordering you detained must be the last resort, and I will order detention after this hearing only if I make a finding that there are no alternatives for reasonably assuring the safety of the community and reasonably protecting against your flight from prosecution.

- After the hearing today, you will have an opportunity to have the bail decision, including any conditions of release, reviewed by another judge within one business day if you remain detained after today's hearing. If you are released, you will also be entitled to a hearing before another judge if you want to challenge conditions of release.

> 9.12.4   In every case in which a judicial officer is contemplating secured money bail as a condition of release, the arrestee must be asked, under penalty of perjury, the amount of money she can afford to pay from any lawful source at the time of the hearing.

21

9.12.5   The arrestee must be given an opportunity to be heard concerning any factors relevant to release, detention, and the availability of alternative conditions. Additionally, the arrestee must have an opportunity at the hearing to present evidence and make argument concerning those issues, and to contest any evidence or argument offered by the government concerning those issues. The arrestee must have access to all of the evidence and information considered at the bail hearing, including any criminal history from the National Crime Information Center ("NCIC") and Texas Crime Information Center ("TCIC").

9.12.6   If the judicial officer requires money bail as a condition of release, the money bail order must be accompanied by substantive findings on the record that are reviewable by a higher court. The findings must be that, by clear and convincing evidence: (1) the arrestee has the ability at the time of the hearing to pay the amount required, or (2) that the arrestee does not have the ability to pay the amount required, but alternative conditions of release were considered, no less-restrictive condition or combination of conditions could reasonably assure the safety of the community or reasonably protect against flight from prosecution, and imposition of unaffordable money bail is necessary to reasonably assure the safety of the community or to reasonably protect against flight from prosecution. These findings and procedures must be provided if the court imposes an order of pretrial detention, either through an unattainable financial condition or directly through an order of pretrial detention.

9.12.7   An arrestee who meets any of the following, may not be assessed any fee associated with a personal bond or an unsecured bond, or the cost of a non-financial condition of release, including but not limited to, a supervision fee, a fee for electronic monitoring, or the cost of an interlock device:

   a.   Is eligible for appointment of counsel;

   b.   Has been homeless in the past six months;

   c.   Has income at or below 200% of the federal poverty guidelines; Is a full-time student;

   d.   Is, or within the past six months has been, homeless;

   e.   Is incarcerated, or residing in a mental health or other treatment program; or

      f.  Is or has dependents who are eligible to receive food stamps, Medicaid, Temporary Assistance for Needy Families, Supplemental Security Income, Social Security Disability Income, public housing, or any other federal or state public assistance program based on financial hardship.

    9.12.8  No arrestee may be incarcerated due to inability to pay a fee or cost associated with a condition of release.

9.13    At any bail hearing in the assigned County Criminal Court at Law, the arrestee shall be provided with the same substantive and procedural protections as described in Local Rule 9.12. Specifically, the court is required to afford the arrestee counsel under Local Rule 9.12.1 and to make findings under Local Rule 9.12.6 if the court imposes or continues an order of detention or money bail set at an unaffordable amount. Any arrestee who remains in jail after a Local Rule 4.2 hearing that meets the requirements of Local Rule 9.12 must be provided with a bail hearing the next business day before a CCCL Judge under Local Rule 4.3. The bail hearing before a CCCL Judge must occur before a plea can be accepted by the court. If a person is subject to a hold or has a concurrently pending felony case, the person may waive the bail hearing before a CCCL Judge without being brought into the courtroom. For every other arrestee, waiver of the bail hearing before a CCCL Judge may not be accepted unless the person is present in court, appears before the CCCL Judge, is informed by the judge of her rights as set forth in Local Rule 9.12.3, and makes a knowing, intelligent, and voluntary waiver of the bail hearing before the CCCL Judge on the record.

9.14    Upon an arrestee's request at any subsequent time prior to trial, the CCCL Judge shall provide a prompt bail hearing on the record to review conditions of bail. Prior to the bail hearing, the CCCL Judge must approve and assure timely access to supportive defense services such as investigators, experts, or social workers and to discovery of any information that may be considered by the CCCL Judge at the hearing. If the CCCL Judge imposes or continues conditions of release after the hearing, the CCCL Judge must provide written factual and legal findings that the conditions imposed are the least restrictive necessary to reasonably assure public safety or to reasonably protect against flight from prosecution.

9.15    The Sheriff must not enforce any order requiring secured money bail that was imposed prior to an individualized hearing. All arrestees shall be treated in accordance with Local Rule 9.2 and released on a personal bond, or Local Rule 9.12, and afforded an individualized hearing.

9.16    The Sheriff must not enforce any order requiring secured money bail that is not accompanied by a record showing that the procedures and findings described in Local Rule 9 were provided. By General Order of the CCCL Judges, if an order to pay secured money bail is unaccompanied

23

by the required record, the Sheriff must deliver to the arrestee a General Order Bond ("GOB") issued by one or more of the CCCL Judges and release the arrestee.[6]

9.17 Any directive or requirement to pay money bail must not be enforced if issued prior to the bail hearing.

9.18 If an arrestee is in the Sheriff's custody 40 hours after arrest and no conditions of release have been determined, the Sheriff must present the arrestee to a judicial officer for a bail hearing. If the person does not appear before a judicial officer within 48 hours of arrest, by general order of the judges, the Sheriff must deliver to the arrestee a "General Order Bond" issued by one or more of the CCCL Judges and release the arrestee.

9.19 The District Clerk's Office will electronically provide to the Sheriff's Office, on an hourly basis, a list of all misdemeanor arrestees who have been in custody 40 hours or more from the recorded arrest date and time, and have not received a bail hearing or a General Order Bond.

## RULE 10. REFUND OF CASH BONDS

**10.1.** Unless a notice of appeal is given, cash bond deposits will be refunded to depositors other than the defendant upon final disposition of the criminal proceeding. If a notice of appeal is given, refunds will not be given until a replacement bond has been duly filed with the district clerk.

**10.2.** In the event the criminal proceeding is reversed and remanded to the trial court, no refund or assignment will be granted until a replacement bond has been duly filed with the district clerk.

## RULE 11. BOND FORFEITURE REINSTATEMENTS, DISMISSALS, AND JUDGMENTS

**11.1.** All bond reinstatement orders, bond forfeiture dismissal orders, and agreed judgments, wherein payments of costs of judgments are involved, shall be presented in person by the bonding agency only to the judge of the court wherein the forfeiture occurred

**11.2.** The total amount of the costs on bond reinstatements with costs, dismissals with costs, and in the case of agreed judgments the total amount of judgment and costs, will be delivered to the court along with the order of judgment by the bonding company.

**11.3.** Money orders, cashier's checks, and firm checks, payable to the Harris County district clerk, are the only tender that will be accepted. Cash payments may be made in advance and a receipt obtained from the district clerk and presented with the order or judgment.

**11.4.** All bonding agencies shall be required to obtain the future setting date from the court coordinator prior to presenting orders of reinstatement and costs. All future settings shall be seven days from the date of the reinstatement order.

---

[6] The General Order Bond is a judicial release order, requiring the Sheriff, pursuant to judicial order, to release the arrestee from Harris County custody. The bond is pre-approved by the Judges or the Presiding Judge.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. 4:16-cv-1414 |
| HARRIS COUNTY, TEXAS, *et. al.*, Defendants. | § § § | |

## MOTION FOR EXPEDITED RULING ON
## *YOUNGER* ABSTENTION AND TO STAY ENFORCEMENT OF THE
## CONSENT DECREE FOR ACTS TAKEN UNDER STATE LAW

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges") file this Motion asking the Court to hear and consider their *Younger* abstention argument (Dkt. 793 at 20-22) on an expedited basis. The Judges respectfully maintain that application of *Younger* can be considered as a matter of law and without awaiting additional discovery.

Delaying a decision on abstention prolongs federal preemption of Texas' legislatively enacted bail-reform policies and procedures, prolongs federal control over state criminal proceedings, and prolongs Plaintiffs' interference with pending cases and continued threats against the Judges should they exercise discretion, or act in compliance with state law. The Judges also request a partial stay to cease any threatened or actual enforcement of the Consent Decree for acts taken in compliance with current Texas state

1

law—law that this Court must presume adequately protects the constitutional rights of arrestees in Harris County, as it does in every other county in the state of Texas.

### I.     The Fifth Circuit has made clear that abstention applies here.

The Fifth Circuit has expressly concluded that "neither *ODonnell I* nor this case should have been adjudicated in federal court," overruling its prior dismissal of the *Younger* abstention argument in *ODonnell I. Daves v. Dall. Cty.*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc) (*Daves II*). *Daves II* explains it was "imperative" to reconsider abstention because several cases, including this case (which the Fifth Circuit noted makes "broad changes to misdemeanor bail bond procedures"), rejected *Younger* abstention. *Id.* at 631. There is no reason to delay the Court's consideration of *Younger* abstention until August of this year or later. Considering the Fifth Circuit's analysis and clear conclusion in *Daves II*, and considering judicial economy, the Judges respectfully request that this Court expedite its ruling on their *Younger* abstention argument.

### II.     No discovery or other delay is necessary to rule on *Younger* abstention.

Important to the analysis in *Daves II* was that, by abstaining, "much time and money, as well as judicial resources, will be saved on litigation in federal court." *Id.* at 623. The same is true here.

This Court granted Plaintiffs' request for months of fact discovery, additional briefing, and an August 27, 2026 hearing (if necessary) on the motions to vacate the consent decree. Dkt. 773. None of the reasons Plaintiffs gave for discovery relate in any way to the abstention argument. Dkt. 770. For example, Plaintiffs claimed the need for discovery as to whether the purpose of the Consent Decree has been achieved. *Id.* at 2. Such facts are

immaterial to the legal questions raised by *Younger* abstention. The questions Plaintiffs seek answers to in discovery relate to the impact of the Consent Decree, not whether the Court should abstain.

Non-abstention discovery is extensive. The Plaintiffs have served the Judges with written discovery requests seeking documents dating back to 2019, necessitating that county court administration employees search for and obtain thousands of emails and documents over a six-year period. *See* Exhibit 1 at RFP 2 (Plaintiffs' discovery requests to the Judges). While the Judges have conferred with Plaintiffs about limiting these requests (for example, limiting Interrogatory 1 to the time period of January 1, 2023 to the present), it has taken and will take time and significant effort to review and provide complete responses.

The parties are also conducting discovery relating to the data reviewed by the Court's Monitor. The Monitor has filed hundreds of pages in each report filed in this case over the years (*see*, *e.g.,* Dkt. 739-1 (Monitor's Eighth Report)). As the Monitor reported last March, there were over 42,000 misdemeanor arrestees in 2024 alone (an admitted understatement of the over 52,000 misdemeanor cases filed, since many of those individuals were arrested multiple times). Dkt. 739-1 at 20. In 2024, the Monitor reports that arrestees in 80% of misdemeanor cases were released on a GOB (80% of 52,851, or 42,280). *Id*. at 32. Statements made and data relied upon by the Court Monitors may need to be reviewed and vetted for non-abstention issues, but have no role in an abstention analysis.

3

Discovery and the consideration of evidence are wholly untethered to a decision under *Younger*, based on the clear and final dictates of *Daves II*. *See Daves II*, 64 F.3d at 620 ("revis[ing] by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail, should never have been brought in federal court"). The Fifth Circuit has already instructed that *Younger*

> …requires federal courts to abstain from revising state bail bond procedures on behalf of those being criminally prosecuted, when state procedures allow the accused adequate opportunities to raise their federal claims.

*Id*. The Judges therefore ask that the Court expedite any necessary responsive briefing and consider the abstention argument, rather than hold the issue until after the parties undergo further discovery and evidentiary proceedings that are unnecessary to a ruling on abstention.

### III.     Staying enforcement of the Consent Decree for acts taken in compliance with post-Decree amendments to state law is warranted.

#### A. A strong presumption of constitutionality applies to Texas' bail-reform statutes enacted after the Consent Decree.

Texas' bail-reform laws in S.B. 6 and S.B. 9 did not exist when the Consent Decree issued, and their constitutionality has not been challenged in this case—such a challenge falls well beyond the parameters of this litigation.

This Court must presume Texas' bail-reform laws are constitutional, and that Texas court procedures afford adequate remedies for arrestees to raise constitutional claims. *See Hernandez v. Paxton*, No. EP-25-CV-220-KC, 2025 WL 2265467, 2025 U.S. Dist. LEXIS 154969, at *7 (W.D. Tex. 2025) ("federal courts should 'assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary'")

(quoting *Thomas v. State*, 294 F. Supp. 3d 576, 594 (N.D. Tex. 2018) and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)), *adopted*, 2018 U.S. Dist. LEXIS 39743, 2018 WL 1254926 (Mar 12, 2018) and citing *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims").

And as the Fifth Circuit has recognized, "Texas courts afford state statutes a strong presumption of constitutionality under the Texas Constitution." *Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013). The Texas Supreme Court has made clear that courts must presume "the Legislature 'understands and correctly appreciates the needs of its own people'" and therefore directs its laws "to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996); *see also Abbott v. Anti-Defamation League*, 610 S.W.3d 911, 923 (Tex. 2020) (Texas courts "presume that public officials act in good faith and without invidious bias in formulating policy") (citing *Miller v. Johnson*, 515 U.S. 900, 915 (1995), a voting rights case stating that the "good faith of a state legislature must be presumed" and courts "must be sensitive to the complex interplay of forces that enter a legislature's redistricting calculus"); *Abbott v. Perez*, 585 U.S. 579, 603 (2018) (discussing presumption of legislative good faith in redistricting matter). Texas courts also presume that local government officials act in good faith. *See, e.g., Kimbrough v. Walling*, 371 S.W.2d 691, 692 (Tex. 1963) ("[t]he law presumes that officers of municipal corporations act within the limits of their authority; that they act in good faith; and that they act in the best interests of the municipality they represent"); *Melton v. Wichita Falls*, 799 S.W.2d

778, 780 (Tex. App.—Fort Worth 1990, no writ) ("[t]he law presumes that city officials act within the limits of their authority, in good faith, and in the best interest of the city they serve").

Presuming the Texas Legislature's good faith in enacting S.B. 6 and S.B. 9, that Texas procedure affords adequate remedies to address constitutional violations, and following *Daves II*, the Court should stay any enforcement of the Consent Decree against the parties based on actions taken that are consistent with current Texas law.

### B. The Judges have been threatened with contempt if they follow state law.

Plaintiffs' counsel, and now the Court Monitor, have threatened the Judges with contempt if they follow Texas' newly enacted bail-reform laws. There is no question that judges in Harris County are required under the Consent Decree to violate the state law that they have sworn to uphold, or else be held in contempt of federal court. It is a situation easily remedied by a swift decision on *Younger* abstention, and a predicament that should be stayed until a decision issues in this case.

Texas Law does not permit the Judges to release misdemeanor arrestees on a General Order Bond **without considering factors required by Texas Code of Criminal Procedure 17.15(a)**. Texas Code of Criminal Procedure Article 17.028(d)(2) expressly bars the adoption of a bail schedule, or using a standing order inconsistent with Texas Code of Criminal Procedure Article 17. Yet, Plaintiffs' counsel and the Monitor have adopted the position that the Judges may not consider 17.15(a) factors in determining whether a non-carve out arrestee should have a bail hearing. As they would have it, **the Consent**

6

**Decree does not allow any Harris County Judge** to consider the circumstances or impose conditions on non-carveout misdemeanor arrestees, even if there is evidence they could be a threat to the victim or public safety. The Plaintiffs and Monitor would sacrifice Texas' strong public policy of protecting public safety via an individualized review before making bail decisions, to their theory of immediate release regardless of the circumstances.

This is a flagrant, facial violation of Texas law—one that Plaintiffs' counsel has already acknowledged. In their September 12, 2025 correspondence to the Monitor and Harris County, Plaintiffs' counsel concluded that the Consent Decree and Local Rule 9 directly conflict with Texas Code of Criminal Procedure Article 17.03, and proposed that **"intentional violations of the Consent Decree"** may be occurring as a result of hearing officers complying with the newly enacted law. Dkt. 793-2 at Appendix A, p.1 (emphasis added). Plaintiffs' counsel asked that judicial officers be **reminded that they face criminal contempt** for knowing violations of the Consent Decree—even though they might be attempting to comply with state law. *Id.* at pp.1, 4 (emphasis added). They further stated that County weekly reports "will assist all Parties and the Monitors in their ongoing review of potential violations." *Id.*

Most recently, the Monitor's March 3, 2026 Ninth Report posits that the Judges may not consider article 17.15(a) factors in assessing bail for a non-carve out arrestee—that is, they are barred from reviewing the facts and circumstances to determine whether a GOB is sufficient. *See* Dkt. 799-1 at 24 ("[A] GOB cannot be revoked, under Local Rule 9 and the Consent Decree, absent a [sic] on-the-record findings, such as of a willful violation, such that the bond is forfeited"). And, while the Monitor has noted "errors" in judicial

determinations within Harris County's bail system in prior reports, for the first time in the Corrected Ninth Report, the Monitor took the extraordinary step of singling out case numbers and certain Judges as having committed "serious" violations. Dkt. 799-1 at 23-24. Although the Monitor's Ninth Report says that similar criticisms over bail hearings in other unidentified courts exist, only situations involving the Judges were reported as "serious." *Id*.

Given the presumption of constitutionality of Texas' new bail laws, and the recent accusation that judicial officers in Harris County would commit a "willful violation" of the Consent Decree by following state law, a partial stay of the Consent Decree is warranted to pause further threats of federal contempt from opposing counsel or the Monitor while this Court has the continued merit of the Consent Decree under consideration.

## CONCLUSION AND PRAYER

Recent events show that resolution of *Younger* sooner, rather than later, and a partial stay are critical to avoiding further interference in Texas criminal proceedings and preventing further threats against elected state officials.

The Judges therefore ask that the Court grant this Motion, set an expedited response deadline for this Motion and for the Judges' *Younger* abstention argument (Dkt. 793 at 20-22), and: (i) issue an order partially staying enforcement of the Consent Decree against parties for acts taken in compliance with Texas law pending resolution of the *Younger* abstention argument, and (ii) issue an expedited ruling on *Younger* abstention. The Judges ask for all other relief to which they are entitled, at equity or law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:   /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON. PAULA GOODHART, HON. JESSICA PADILLA, HON. LESLIE JOHNSON, AND HON. LINDA GARCIA**

## CERTIFICATE OF CONFERENCE

The below-signed counsel has conferred with counsel for the other parties in this case. The Attorney General is NOT OPPOSED to this Motion, and the remaining parties are OPPOSED to this Motion.

*/s/ Joseph R. Russo, Jr.*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

*/s/ Joseph R. Russo, Jr.*

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-01414 |
| v. | ) | (Class Action) |
| | ) | The Honorable Lee H. Rosenthal |
| HARRIS COUNTY, TEXAS, et al. | ) | U.S. District Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO FOUR COUNTY CRIMINAL COURT AT LAW JUDGES

TO: Defendants County Criminal Court at Law Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia, by and through their counsel of record:

> Joseph R. Russo
> Greer, Herz & Adams, L.L.P.
> One Moody Plaza, 18th Floor
> Galveston, Texas 77550
> JRusso@greerherz.com

In accordance with Federal Rules of Civil Procedure 26 and 34, Plaintiffs request that Defendants County Criminal Court at Law Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia identify and produce the documents and items requested below for inspection and copy and deliver copies to counsel for Plaintiffs within thirty (30) days from the date of service of these discovery requests. This request is continuing in nature as provided by Rule 26(e) of the Federal Rules of Civil Procedure.

(Signature on following page)

1

Date: December 16, 2025

Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi
elizabeth@civilrightscorps.org
Jeremy D. Cutting
cody@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721


*/s/ Travis Walker Fife*
Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
Kirsten Budwine
Texas Bar No. 24140263
kirsten@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
2100 Travis Street
Houston, TX 77002
Telephone: (512) 474-5073

Respectfully Submitted,

Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
Abbey E. McNaughton
Texas Bar No. 2411675
SUSMAN GODFREY L.L.P.
11000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366


Morgan McCollum
(admitted *pro hac vice*)
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330

2

## **INSTRUCTIONS**

1.      Unless the particular request indicates otherwise, the relevant time period to which each request refers is from January 1, 2023 to the present.

2.      Each category of documents or things in these requests extends to any documents or things in your possession, custody, or control. A document or thing shall be deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document or thing in whole or in part; (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such document or thing in whole or in part; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document or thing in whole or in part; or (d) as a practical matter, have been able to use, inspect, examine, or copy such document or thing in whole or in part.

3.      If any portion of any document is responsive to any document request, produce the entire document. If the document contains both privileged and unprivileged material, produce the document with the privileged material redacted, together with a statement concerning the privilege asserted as required by paragraph 4 of these Instructions.

4.      With respect to any document that is not produced, whether in whole or in part, on the grounds of any privilege, provide a privilege log contemporaneously with your responses to these Requests containing the following information: (a) The date of the document; (b) The author of the document; (c) The recipient(s) of the document, if any (To/CC/BCC fields); (d) The subject matter of the document; (e) The nature of the document (letter, memorandum, notes, etc.); (f) The privilege(s) claimed; (g) A description of the privilege(s) so as to explain the basis for withholding the document or thing in sufficient detail so as to enable the claim of privilege to be adjudicated, if necessary; (h) Whether the document or thing has been redacted; and (i) The number of pages.

5.      These document requests seek production of all documents described, including all drafts, of whatever date, and all non-identical copies or originals. In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort that do not appear on any other copy.

6.      If any document or thing or any part of any document or thing that you are requested to produce or identify herein was at one time in existence, but has been lost, discarded, or destroyed, identify in writing each document or thing and provide the following information: (a) the date or approximate date it was lost, discarded, or destroyed; (b) the circumstances and manner in which it was lost, discarded, or destroyed; (c) the reason(s) for disposing of the document (if discarded or destroyed); (d) the identity of all persons authorizing the document and/or having knowledge of the document; (e) the identity of the person(s) who lost, discarded, or destroyed the document; (f) the identity of any persons having knowledge of the contents thereof; and (g) a detailed summary of the nature and contents of the document, including the author(s) of the document(s), the name of the person(s) to whom the document(s) was (were) delivered or addressed, including indicated or blind copy recipients, the date of the document(s), and a description of the subject matter thereof, including any attachment or appendices, and the number of pages.

7.      Whenever appropriate, the singular form of a word should be interpreted also in the plural, and the plural form of a word should be interpreted also in the singular.

8.      If you have no documents responsive to a request, please state this in your response to the specific request.

9.      If you object to any of the requests for documents and things set forth below, you must fully set forth your objections in writing. If objection is made to part of any request for any document and thing, the part should be specified. If you object to any request or part of any request, you must produce all documents to which your objection does not apply.

10.     Pursuant to Federal Rule of Civil Procedure 26(e)(1), this Request for Production shall be deemed continuing so as to require further and supplemental production if you obtain or discover additional documents between the time of initial production and the time of hearing OR trial.

11.     Each Request for Production shall be construed independently, and no Request for Production shall limit the scope of any other Request for Production.

## DEFINITIONS

1.      "All" means "any and all," and the word "any" shall be understood to include and encompass "all."

2.      "And" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

3.      Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender and singular or plural, as in each case is most appropriate.

4.      "Bail" means the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.

5.      "Bail hearing" refers to any legal proceeding at which conditions of release are determined, or that might result in pretrial detention or a requirement to pay secured bail as a condition of release, in any Class A or Class B misdemeanor case to be prosecuted in the Harris County Criminal Courts at Law.

6.      "Bail review hearing" refers to a hearing that takes place in the courtroom of a County Criminal Court at Law Judge that is transcribed on the record or otherwise recorded, that is adversarial in that both the State and the Defendant are represented (or the Defendant has waived representation), and that involves an opportunity for both the State and Defendant to present documentary evidence and witness testimony.

7.      "Hearing Officer" refers to Harris County Criminal Law Hearing Officers, also called "magistrates," who primarily preside over the hearings required by Texas Code of Criminal Procedure art. 15.17.

4

8.    "Joint Processing Center" refers to the facility located at 700 N. San Jacinto St., Houston, TX 77002, where individuals arrested in Harris County are processed and booked.

9.    "Pretrial Services" or "PTS" refers to the Harris County department that synthesizes information into a report that the judiciary can rely on when making release and detention decisions and provide supervision services to individuals released on bond conditions.

10.    "Magistration" refers to the legal proceeding that occurs in the Joint Processing Center, is presided over by a Hearing Officer, and is required by Article 15.17 of the Code of Criminal Procedure.

11.    "County Criminal Court at Law Judges" or "CCCL Judges" refers to the judges sitting in the Harris County Criminal Courts at Law.

12.    "Communication" when used herein means any form of information exchange, or attempted exchange, by any media in any manner, whether oral or written, including without limitation: correspondence, electronic mail ("email"), social media messages or posts, online discussion board posts and messages, face-to-face conversation, meeting or conference, telexes, facsimile transmissions, recordings in any medium of oral communication, telephone and message logs, and notes or memoranda relating to any written, electronic or oral communication, tweets, blogs or text messages, whether sent through the phone or computer itself or an application like Microsoft Teams, Signal, or WhatsApp. The word "communication" includes internal communications.

13.    "Document" shall have the full meaning ascribed under the Federal Rules of Civil Procedure and shall mean, without limitation, any written, recorded, or graphic material of any kind within your possession, custody, or control, whether in paper or electronic form. The term includes, but is not limited to, all agreements; contracts; letters; telegrams; communications; facsimile transmissions; memoranda; reports; records; studies; instructions; specifications; handwritten or typewritten notes; notebooks; scrapbooks; diaries; calendars; plans; drawings; sketches; diagrams; minutes of meetings, conferences, and telephone or other conversations; photocopies; charts; graphs; descriptions; drafts; ledgers; financial statements or reports; invoices; bills; microfilm, microfiche, tape, disk, or diskette recordings; computer records and computer printouts; and emails, electronic intraoffice or interoffice messages, chats, or text messages, whether sent through the phone or computer itself or an application like Microsoft Teams, Signal, or WhatsApp.

14.    "Include" or "including" denotes a portion of a larger whole and is used without limitation.

15.    "Relating to" shall mean in whole or in part, constituting, containing, referring to, discussing, dealing with, describing, reflecting, or pertaining to in any way whatsoever.

16.    "Unsecured bail" or "unsecured bond" refers to release that is conditioned on a promise to pay a specific amount of money if the person does not appear for a court proceeding and the judge forfeits the bond.

17.     "Secured bail amount" or "secured financial condition" refers to a requirement to make a cash payment, either in full or with the use of a bonding company or bail fund, prior to being released as a condition of being released.

18.     "The Sheriff" refers to Harris County Sheriff Ed Gonzalez in his official capacity.

19.     "The County" refers to Harris County and all of its agents and employees, including but not limited to the Harris County Criminal Law Hearing Officers.

## <u>REQUESTS FOR PRODUCTION</u>

**<u>REQUEST FOR PRODUCTION NO. 1:</u>**

All documents identified or relied upon in Your responses to Plaintiffs' Interrogatories. This request is continuing in nature under Federal Rule of Civil Procedure 26(e), meaning You have an obligation to supplement Your response should Plaintiffs serve subsequent interrogatories.

**<u>REQUEST FOR PRODUCTION NO. 2:</u>**

All documents or communications reflecting instructions, guidelines, policies, advisories, requests, or suggestions from any CCCL Judge or anyone acting on behalf of any CCCL Judge (e.g. a Court Coordinator or Staff Attorney), to any Criminal Law Hearing Officer, employee of the Office of Court Management, employee of Pretrial Services, employee of the District Attorney's Office, or other government official regarding the post-arrest process, from November 21, 2019 to the present.

**<u>REQUEST FOR PRODUCTION NO. 3:</u>**

All documents or communications pertaining to or otherwise supporting the Four CCCL Judges' proposed modification to the Consent Decree sent to the Monitors via letter in May of 2025, Dkt. 742-2, and partially reproduced in the Four CCCL Judges' Motion to Vacate, Dkt. 793 at 24.

## CERTIFICATE OF SERVICE

I certify that on December 16, 2025, a true and correct copy of this document was properly served on counsel of record via email per the Parties' agreement.

*/s/ Travis Walker Fife*
Travis Walker Fife

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:16-cv-01414 (Consolidated Class Action) |
| v. | § § | |
| HARRIS COUNTY, TEXAS, *et. al.*, | § § | |
| Defendants. | § § § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE FOUR JUDGES' MOTION TO EXPEDITE AND MOTION TO STAY ENFORCEMENT OF THE CONSENT DECREE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

NATURE & STAGE OF PROCEEDINGS ............................................................................ 3

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

    A.  The Court Should Deny the Request to Expedite "a Ruling on *Younger*"
       Because It Would Delay, Not Advance, Resolution of the Rule 60 Motions............... 6

        1.  A full evidentiary record is required to determine whether a change in
            abstention law justifies modification or vacatur of the Consent Decree. ............... 7

        2.  There is no reason to bifurcate proceedings and expedite consideration
            of *Younger*, an unnecessary change that would further delay proceedings. ......... 10

    B.  The Court Should Deny the Request to Partially Stay the Consent Decree
       Because the Four Judges Do Not Even Attempt to Meet their Burden. ..................... 12

        1.  The Four Judges have not demonstrated a strong likelihood of success
            on the merits........................................................................................................ 13

        2.  The Four Judges have not shown a stay is necessary to prevent
            irreparable harm. ................................................................................................ 15

        3.  The Four Judges have not shown the equities and public interest
            favor a stay. ........................................................................................................ 16

CONCLUSION...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
    No. 21-CV-00034, 2021 WL 8441748 (E.D. Tex. Dec. 22, 2021).....................................11

*BLOM Bank SAL v. Honickman*,
    605 U.S. 204 (2025).......................................................................................... 7

*Cadle v. Jefferson*,
    No. 3:07-CV-70, 2025 WL 1616725 (W.D. Ky. June 6, 2025) ...................................... 14

*Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*,
    No. 5:21-CV-00016, 2024 WL 3236410 (W.D. Va. June 28, 2024)................................ 16

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
    710 F.3d 579 (5th Cir. 2013) ...................................................................... 15

*Daves v. Dallas Cnty.*,
    64 F.4th 616 (5th Cir. 2023) ................................................................... passim

*Dep't of Educ. v. Louisiana*,
    603 U.S. 866 (2024)...................................................................................... 13

*DeSpain v. Johnston*,
    731 F.2d 1171 (5th Cir. 1984) ...................................................................... 9

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981)...................................................................................... 16

*Gibson v. Berryhill*,
    411 U.S. 564 (1973)...................................................................................... 9

*Green v. Servs. Corp. Int'l*,
    No. H-06-833, 2006 WL 8441295 (S.D. Tex. June 30, 2006)........................................ 15

*Gustavia Home, LLC v. Hoyer*,
    No. 16-CV-4015, 2022 WL 875096 (E.D.N.Y. Mar. 23, 2022)...................................... 14

*Hilton v. Braunskill*,
    481 U.S. 770 (1987)........................................................................................ 5

*In re Deepwater Horizon*,
    713 F. App'x 36 (5th Cir. 2018) .................................................................... 5

*In re Delta Starr Broad, L.L.C.*,
    422 F. App'x 362 (5th Cir. 2011) ................................................................ 14

*In re Villareal*,
    160 B.R. 786 (Bankr. W.D. Tex. 1993)........................................................... 11

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994).................................................................................... 16

*Johnson v. Florida*,
    348 F.3d 1334 (11th Cir. 2003) .................................................................... 9

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
   No. 3:17-CV-3200, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ................................ 16

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
   659 F.3d 421 (5th Cir. 2011) ................................................................................................. 8

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
   675 F.3d 433 (5th Cir. 2012) ................................................................................................. 8

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................ 5, 13, 14, 16

*ODonnell v. Harris Cty.*,
   251 F. Supp. 3d 1052 (S.D. Tex. 2017) ............................................................................. 3

*Ohio Bureau of Emp. Servs. v. Hodory*,
   431 U.S. 471 (1977) ................................................................................................................... 9

*Plaquemines Parish v. Chevron USA, Inc.*,
   84 F.4th 362 (5th Cir. 2023) ................................................................................................. 5

*Pugh v. Rainwater*,
   483 F.2d 778 (5th Cir. 1973) ................................................................................................. 9

*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992) ..................................................................................................... passim

*Russell v. Harris Cnty.*,
   No. CV H-19-226, 2023 WL 5658936 (S.D. Tex. Aug. 31, 2023) .................................... 9

*Saqui v. Pride Cent. Am., LLC*,
   595 F.3d 206 (5th Cir. 2010) ................................................................................................. 5

*Smith v. Sch. Bd. of Concordia Par.*,
   906 F.3d 327 (5th Cir. 2018) ............................................................................................... 15

*Talon Transaction Techs., Inc. v. Stoneeagle Services, Inc.*,
   No. 3:13-CV-902, 2014 WL 6819846 (N.D. Tex. Dec. 4, 2014) .................................... 11

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) ............................................................................................... 13

*United States v. City of Jackson*,
   359 F.3d 727 (5th Cir. 2004) ............................................................................................... 15

*Vernon Smith, etc. v. Sch. Bd. of Concordia Parish*,
   88 F.4th 588 (5th Cir. 2023) ............................................................................................... 13

*Virginian Ry. Co. v. United States*,
   272 U.S. 658 (1926) ................................................................................................................... 5

*Williams v. Lesiak*,
   822 F.2d 1223 (1st Cir. 1987) ............................................................................................. 14

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................................................... 15

iv

**Rules**

Rule 60(b) .................................................................................................................. passim

Rule 60(c) ......................................................................................................................... 14

**INTRODUCTION**

After sitting on their hands for years, Judges Paula Goodhart, Leslie Johnson, Jessica Padilla, and Linda Garcia's ("the Four Judges") now ask this Court—five months into discovery—to expedite consideration of their motion to vacate the Consent Decree because of a three-year-old development in the law around *Younger* abstention, and to stay enforcement of the Consent Decree. Dkt. 803 ("Mot."). Their requests are frivolous, and the Court should deny them. The Court issued a well-considered case management order that would allow it to hear the Movants' Rule 60 motions together, with a full evidentiary record. There is no reason to reverse course now.

The Four Judges' request to expedite should be denied for two reasons. First, the Four Judges are wrong on the law. Specifically, they are mistaken that their motion to vacate the Consent Decree due to *Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) ("*Daves II*"), can be resolved without evidence as a matter of law. Mot. at 2–4. "[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). Even if the Four Judges could identify a change in law sufficient for the Court to *consider* modification—despite this Court's prior ruling that "the *Daves II* decision on *Younger* is *not* a sufficient justification to modify the consent decree," Dkt. 764 at 25—they would still have to show that the appropriate remedy under Rule 60(b) is vacatur of the Consent Decree. The Four Judges do not even reference the Rule 60 standard in their motion to expedite. With good reason. The equitable determination it requires *cannot be resolved as a matter of law*. The Parties are in the middle of gathering the evidentiary record necessary for the Court to make that decision.

Second, even assuming there were some conceivable way to expedite "a ruling on *Younger*" without a factual record, the Four Judges have identified no persuasive reason for the Court to bifurcate proceedings. The Judges waited until nearly three years after *Daves II* was decided before they moved to vacate the Consent Decree. They did not object to the scheduling

1

order that has been in place for six months. They never objected to—or even acknowledged—this Court's previous finding that "the defendants waived *Younger* abstention." Opinion on the Attorney General's Motion to Intervene, Dkt. 764 at 29. Nor did they ask for an expedited ruling on their *Younger* argument five months ago when they filed their motion to vacate. Indeed, the Four Judges themselves have sought hundreds of thousands of documents from the Non-Movants, and even served subpoenas requesting even more documents from the independent court-appointed monitors. The Four Judges' "urgent" request for a partial ruling on their Rule 60 motion is a distraction from the Parties' efforts to develop the record this Court seeks, and reflects their misunderstanding about how Rule 60 works.

Nor is there any reason to stay enforcement of the Consent Decree for "acts taken in compliance with post-Decree amendments to state law." Mot. at 4. The Four Judges do not even identify the legal standard controlling their stay request, much less attempt to meet their burden to justify the extraordinary relief of staying a final judgment like the Consent Decree. Most notably, they offer no record on any of the factors Rule 60 requires, offer no explanation of how they face irreparable harm, and do not grapple with the public's strong interest in maintaining a decree that has been in place for nearly seven years, one that protects the liberty of tens of thousands of people and saves Harris County taxpayers millions each year. They also do not offer any evidence to show how the constitutional rights of class members would continue to be protected in the event of such a stay. In any event, this Court has already rejected this request, making clear that "[t]he Consent Decree remains in effect during the discovery into, and resolution of, the motions to vacate." Dkt. 773 at 2. The Four Judges offer no persuasive reason to revisit this admonition.

The Four Judges' motion obstructs the Parties' hard work building the factual record the Court requested. The Court should deny the motion and allow the Parties to continue.

<div align="center">2</div>

**NATURE & STAGE OF PROCEEDINGS**

Ten years ago, Maranda Lynn ODonnell filed a class action lawsuit challenging Harris County's policy and practice of detaining approximately 40% of all misdemeanor arrestees—tens of thousands of people every year—for the duration of their cases solely because they could not pay money bail, and without any finding that their detention served any governmental interest. *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1058 (S.D. Tex. 2017) ("PI Op."), *aff'd as modified*, 892 F.3d 147 (5th Cir. 2018). After protracted litigation, the Court entered a Consent Decree in which the Parties agreed to relief that, if adhered to, would resolve the gross constitutional violations identified by the Court. Nearly seven years later, that Consent Decree has "saved Harris County and residents many millions of dollars and improved the lives of tens of thousands of persons arrested for misdemeanors," while "produc[ing] no increase in new offenses by persons arrested for misdemeanors." Corrected Ninth Monitor Report, Dkt. 799-1 at 6.

In August 2025, Attorney General Ken Paxton moved to intervene in this closed case to file a motion to vacate the Consent Decree under Rule 60. Dkt. 740. This Court allowed the Attorney General to intervene to "move to vacate or amend the consent decree based on [S.B.] 6 and [S.B.] 9," but denied his motion "to intervene to raise *Younger* abstention." Dkt. 764 at 2. The Court found the Attorney General's proposed intervention to raise *Younger* untimely and futile both because *Daves II* is not a qualifying basis for modifying a consent decree and because the Defendants—and by proxy, the Attorney General—affirmatively waived the defense. *Id.* At 10-20, 21–31; *see also id.* at 29 ("By agreeing to the consent decree, the defendants waived *Younger* abstention.").

After granting the Attorney General's limited intervention, the Court held a scheduling conference on November 12, 2025, to consider how to resolve the motion to vacate. The Court recognized that whether changes in state law warrant vacating or modifying the Consent Decree

3

turns on "a factual query into how the consent decree is being implemented and how the state law affects that implementation." Nov. 12, 2025 Tr. at 13:16–18. The Court entered a scheduling order permitting six months of limited discovery followed by briefing and a hearing. Dkt. 773. On December 11, in the wake of that conference, despite the Court's request that they coordinate with the Attorney General to submit a single combined motion, Nov. 12, 2025 Tr. at 16:7–12, the Four Judges filed their own motion to vacate the Consent Decree, Dkt. 793. The Four Judges raised the same state law issues that form the basis of the Attorney General's motion. *Id.* at 20, 22–25. Additionally, they "reassert[ed]" the same argument the Attorney General was ordered not to raise, an argument they lost on years ago and subsequently waived, *Younger* abstention. *Id.* at 26.

For five months, the Parties, including the Four Judges, have diligently engaged in discovery. The Four Judges served discovery requests on the Non-Movants calling for hundreds of thousands of communications dating back to January 2018. Ex. A (Four Judges' Discovery Requests). More recently, they served three subpoenas on the independent court-appointed Monitors of the Consent Decree, seeking extensive data and documents. Ex. B (Subpoenas to Monitors and Attachment). Until the day before they filed this motion, the Four Judges had never shared any belief with the Court or the Non-Movants that their motion to vacate based on *Younger* should be decided on a separate, expedited track, or that a stay of any aspect of the Consent Decree was justified.

Over four months after they filed their motion to vacate, and after months of the Non-Movants' diligent work responding to discovery, the Four Judges filed this motion.

### STANDARD OF REVIEW

The Four Judges' motion presents two issues: (1) whether it should expedite its consideration of the Four Judges' motion to vacate the Consent Decree due to a subsequent change in law regarding *Younger* abstention, Mot. at 2–4; and (2) whether it should stay enforcement of

4

the Consent Decree for "acts taken in compliance with post-Decree amendments to state law," Mot. at 4–8.

Issue one concerns docket management and is thus committed to this Court's "broad discretion." *See Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010) ("District court judges have broad discretion in managing their own dockets."); *In re Deepwater Horizon*, 713 F. App'x 360, 362 (5th Cir. 2018) ("The court has broad discretion and inherent authority to manage its docket.").

Issue two requires the Four Judges to satisfy the stringent standard for a stay of a final judgment. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). A party seeking a stay must demonstrate that four factors favor its issuance:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see, e.g.*, *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 376 (5th Cir. 2023) (denying stay where the movants failed to show that the balance of equities 'weighs heavily' in favor of a stay").

## ARGUMENT

The Four Judges' Motion should be denied. First, the Four Judges' request for expedited consideration misunderstands Rule 60. Even if they were correct that: (a) *Daves II* constitutes a significant change in law under *Rufo*; (b) applying that precedent, abstention would be appropriate were this same case filed today; and (c) the Four Judges had not already affirmatively waived *Younger* abstention, *it still would not follow that vacatur is required under Rule 60*. The Rule 60 analysis requires further factual development and a full factual record. The Four Judges' request

is a needless distraction that has obstructed, and will continue to obstruct, the Parties' progress in these proceedings, making it more difficult for them to complete productions, review productions, and move expeditiously toward full briefing and argument on the important issues at stake.[1]

Second, the Four Judges' request to stay enforcement of the Consent Decree "for acts taken in compliance with post-Decree amendments to state law" is unintelligible and unjustified. This Court has already stated that "[t]he Consent Decree remains in effect during the discovery into, and resolution of, the motions to vacate." Dkt. 773 at 2. The Four Judges' failure to even identify or attempt to address the legal standard for the stay they seek is fatal to their request. But even if the Four Judges *had* addressed the stay factors, they could not approach satisfying any of them, particularly because a stay would upend enforcement of a consent decree that benefits the lives of tens of thousands of people every year and saved the County's taxpayers millions of dollars annually. The Court should deny their request.

### A. The Court Should Deny the Request to Expedite "a Ruling on *Younger*" Because It Would Delay, Not Advance, Resolution of the Rule 60 Motions.

The Four Judges' request to expedite fails for two reasons: First, the request's central premise—that the Court can resolve the Rule 60(b) motion raising *Younger* abstention as a matter of law, without any factual development or record—is wrong. Rule 60(b) requires the Court to undertake a fact-intensive, equitable analysis that demands evidence. Expediting consideration of *Younger* will do nothing to advance a resolution of the motions to vacate. Second, the Four Judges offer no legitimate reason for the Court to exercise its broad discretion to grant their belated request. Their delay in seeking expedited consideration undermines their claim to urgency.

---

[1] Plaintiffs' response does not address the merits of the Four Judges' Rule 60(b) argument based on *Younger* abstention as they do not understand that argument to be before the Court; it only addresses the request to expedite. If, however, the Court grants the Four Judges' request, Plaintiffs ask that the Court allow them the opportunity to fully brief their opposition.

Granting the request will only distract from the Parties' efforts to complete discovery, further delaying resolution of the pending Rule 60 motions.

### 1. A full evidentiary record is required to determine whether a change in abstention law justifies modification or vacatur of the Consent Decree.

The Four Judges' argument for an expedited ruling fails at the outset because it rests on the mistaken claim that "[d]iscovery and the consideration of evidence are wholly untethered to a decision on *Younger*." Mot. 4. That is simply untrue. "[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). And "[i]t is Rule 60(b)'s standard—and *only* Rule 60(b)'s standard—that applies when a party seeks relief from final judgment." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025). The Court has ordered fact discovery so the Parties can assemble the record necessary to decide whether "equity requires" vacatur of the Consent Decree under Rule 60(b). Without that record, no decision is possible.

Motions to vacate or amend consent decrees require a case-specific and fact-intensive analysis. In *Rufo*, for example, the Supreme Court evaluated a motion under Rule 60(b)(5)—which permits modification of a "final judgment, order, or proceeding" where applying a judgment "is no longer equitable," Fed. R. Civ. P. 60(b)(5)—seeking relief from a consent decree meant to remedy unconstitutional conditions of confinement in a local jail. *Rufo*, 502 U.S. at 376–77. The Court rejected the argument that "a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree" because such a rule would "undermine the finality of such agreements" and "do violence to the obvious intention of the parties." *Id.* at 389–90 (quotation omitted). Instead, *Rufo* adopted a two-step fact-specific test for modifications under Rule 60(b)(5): First, the movant must show "a significant change either in factual conditions or in law" that "make compliance with the decree substantially more onerous [or] ... unworkable

7

because of unforeseen obstacles[,] ... or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384. Second, even if the moving party meets its burden at step one, the "district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

Following *Rufo*'s fact-specific approach to Rule 60(b) motions, the Fifth Circuit vacated a district court's modification of a consent decree because the court failed to "examine the evidence on the record and consider whether the moving party met its burden." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 438 (5th Cir. 2011) ("*LULAC I*"). By failing to "present th[eir] evidence in their motion to the district court[,]" the movants "failed to meet [their] burden under the first step" of the *Rufo* test. *Id.* at 439. On remand, the district court issued a temporary modification of the consent decree based on the movants' "likelihood of success under the *Rufo* standard." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 438 (5th Cir. 2012) ("*LULAC II*"). The Fifth Circuit again vacated the modification, observing that the district court did not "permit the parties to conduct discovery, or hold an evidentiary hearing to receive competing expert and lay testimony[.]" *Id.* "By approving a modification of the Consent Decree without holding a hearing and demanding a more developed factual record, the district court failed to follow the . . . *LULAC I* mandate." *Id.*

*Rufo*, *LULAC I*, and *LULAC II* require denying the Four Judges' request to expedite consideration of their Rule 60(b) motion regardless of whether *Younger* abstention would apply to this case if it were brought today rather than a decade ago. The Four Judges' invocation of *Daves II* cannot satisfy *Rufo*'s first step, much less do so as a matter of law.[2] But even if they could, they

---

[2] First, *Daves II*'s commentary on abstention should be considered a non-binding advisory opinion, given its conclusion that the case was moot. *Russell v. Harris Cnty.*, No. CV H-19-226, 2023 WL 5658936, at *3 (S.D. Tex. Aug. 31, 2023) (citing *Daves II*, 64 F.4th at 623–33). Nor, as this Court

would still have the burden to show that the equities support vacatur as a suitably tailored remedy. *See Rufo*, 502 U.S. at 391. *Daves II* did not address this Court's prior finding that the Consent Decree provides "critical relief" for "grave and widespread constitutional violations." Memorandum and Opinion Approving the Consent Decree, Dkt. 707 at 22. Moreover, a court will not vacate a consent decree if doing so would "create or perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391. Thus, vacatur is impermissible if it would result in violations of class members' rights. *See, e.g.*, *Johnson v. Florida*, 348 F.3d 1334, 1348 (11th Cir. 2003) (refusing to terminate consent decree where movant-state had neither "established the absence of ongoing constitutional violations" nor "that constitutional violations [would] not recur").

Thus, the foundational premise of the Four Judges' argument is wrong. Even if *Daves II* represented a change in law potentially warranting modification (it doesn't), even if *Younger* would apply on these facts in a hypothetical case brought today (it wouldn't), and even if the Four Judges had not waived their opportunity to re-litigate *Younger* (they did), the Four Judges would still have to show that the appropriate remedy is vacatur of the Consent Decree, which is a question that cannot be resolved as a matter of law. The Court must grapple with the evidence each side

---

has already recognized, was *Daves II* a change in law that "in and of itself, provide[s] a basis for modifying a decree," because it did not affect the substantive law on which the Consent Decree is based. Dkt. 764 at 22 (quoting *Rufo*, 502 U.S. at 390); *id.* ("*Daves II* did not hold that this consent decree does something the 'Federal Constitution forb[ids],' or targets policies that were 'legal' all along") (quoting *Rufo*, 502 U.S. at 389, 388).

Second, even if *Daves II*'s abstention holding were good law and a valid basis for potential modification, this Court would still need to determine whether the *Middlesex* factors are met and whether any exceptions apply. That would entail resolving fact-specific questions including whether the Four Judges waived their ability to raise *Younger* by "voluntarily choos[ing] to submit to a federal forum," *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977), whether the state-court proceedings in Harris County are adequate and unbiased, *Gibson v. Berryhill*, 411 U.S. 564, 570, 577 (1973), whether Plaintiffs will suffer "great and immediate" irreparable harm if it abstains, *DeSpain v. Johnston*, 731 F.2d 1171, 1177 (5th Cir. 1984), and whether and to what degree the Consent Decree actually "impede[s] pending or future prosecutions on various charges in the state courts," *Pugh v. Rainwater*, 483 F.2d 778, 781 (5th Cir. 1973).

brings to bear on that question. That includes the Monitors' projection that doing away with key pieces of the Consent Decree would be "unworkable" and "have dramatic negative consequences on public safety, liberty, jail operations, and the County budgets." Ltr. from B. Garrett & S. Guerra Thompson to Four Judges, Dkt. 741-4 at 4. Plaintiffs expect testimony from numerous stakeholders will corroborate the Monitors' prediction and show that the modifications the Movants seek would be nothing short of catastrophic for the jail and the court system—not to mention the families who experience the system every day. The Court has already ordered the Parties to collect and provide the necessary evidentiary record—a process from which this motion practice is an unnecessary distraction.[3]

> 2. *There is no reason to bifurcate proceedings and expedite consideration of* Younger, *an unnecessary change that would further delay proceedings.*

Even if the Court could somehow give full consideration to the Four Judges' request despite lacking the necessary evidentiary record, the Four Judges have provided no valid reason to bifurcate proceedings and deviate from the scheduling order in this case. The Court should reject their disruptive request.

Courts refuse to expedite proceedings when, as here, the movant "offer[s] no reason for the Court to do so other than [the movants] filing [] a motion that could have been filed . . . earlier." *Talon Transaction Techs., Inc. v. Stoneeagle Services, Inc.*, No. 3:13-CV-902, 2014 WL 6819846, at *2 (N.D. Tex. Dec. 4, 2014); *In re Villareal*, 160 B.R. 786, 787 (Bankr. W.D. Tex. 1993) ("[I]f

---

[3] The Four Judges argue that the Court can reach *Younger* now because "[n]one of the reasons Plaintiffs gave for discovery relate in any way to the abstention argument." Mot. at 2 (citing Plaintiffs' pre-motion letter requesting a scheduling conference). As explained *supra*, that is incorrect. The same equitable considerations necessary to the Movants' state law claims are equally relevant to the Four Judges' abstention argument. Moreover, that Plaintiffs' letter did not explicitly reference *Younger* is hardly surprising: at that time, no party had raised *Younger* as a justification for moving to vacate, and the Court had just denied the Attorney General's request to intervene to assert it, noting that "defendants waived *Younger* abstention. Dkt. 764 at 29.

an expedited hearing is sought, it must appear clearly from the pleadings not only that there is an emergency but also that it is not an emergency of the movant's own making."). Relatedly, courts consider the prejudice that expedited consideration will have on the non-moving parties. *See Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 21-CV-00034, 2021 WL 8441748, at *2 (E.D. Tex. Dec. 22, 2021) (denying motion to expedite where expedited consideration "would unduly prejudice" the non-moving party); *Villareal*, 160 B.R. at 788 ("[T]he motion to expedite should address the question of prejudice to other parties . . . .").

Applying these principles, the Court should deny the Four Judges' request to expedite *Younger* on a separate track because granting the Motion is unnecessary and would only delay proceedings further. The Four Judges' claim to urgency is belied by their actions. They waited over three years since *Daves II*, six months since the Court's scheduling order, and five months since filing their Motion to Vacate to seek expedited relief. The Four Judges never once sought a decision on *Younger* abstention on a separate, expedited track until the day before filing their Motion. Not during the November 12, 2025 scheduling conference, when the Parties discussed the scope of discovery and the scheduling order. Not when they filed their own motion to vacate. And not during countless emails, calls, and meet-and-confers. Now, five months into a discovery period in which they have pursued hundreds of thousands of documents from the Parties and Monitors, *see* Exs. A, B, they claim an urgent need to change the Court's approach.

The Four Judges attempt to manufacture urgency by arguing "[r]ecent events show that resolution of *Younger* sooner, rather than later" is "critical." Mot. at 7–8. The recent events in question seem to be the Monitors' Ninth Report identifying situations where the Four Judges violated the Consent Decree and a September 12, 2025 letter identifying situations where enforcement of S.B. 9 conflicts with the Consent Decree. *See id.* at 7–8. But it is "stat[ing] the

11

obvious," Nov. 12, 2025 Tr. at 18:1–2, to say that until the Motions to Vacate are resolved, "the consent decree is in effect," *id.* at 17:21–22. It is the Monitors' job to evaluate the Parties' compliance with the terms of the Decree, as it has been for the past six years since they were appointed. Dkt. 708 ¶¶ 115, 117(f). The ordinary monitoring of the Consent Decree can hardly justify the Four Judges' belated request.

There are also no efficiencies gained by considering the Four Judges' *Younger* argument now, as there is no reason to believe that an expedited proceeding on *Younger* would avoid the need for this Court to separately hear and decide the Attorney General's motion to vacate or the remainder of the Four Judges' motion. The Court has already expressed skepticism of the same belated *Younger* argument when raised by the Attorney General. In denying the Attorney General's request to intervene on this basis, the Court observed that "*Daves II* did not make it legal to detain poor people pretrial solely because they cannot pay arbitrary amounts of cash," Dkt. 764 at 21, meaning *Daves II* does "not, in and of itself, provide a basis for modifying a [consent] decree., *id.* at 22 (quoting *Rufo*, 502 U.S. at 390). The Court also noted that "[b]y agreeing to the consent decree, the defendants waived *Younger* abstention." *Id.* at 29 (collecting cases). Neither the Four Judges' Motion to Expedite nor their original Motion to Vacate reckon with these observations. *Cf.* Mot. at 2–4; Mot. to Vacate, Dkt. 793 at 25–27. Indeed, not only would granting the Four Judges' request not speed up proceedings, by straining the Parties' and the Court's resources and slowing or halting the Parties' progress in discovery, it would have the perverse effect of further delaying resolution of the Rule 60 motions.

**B.   The Court Should Deny the Request to Partially Stay the Consent Decree Because the Four Judges Do Not Even Attempt to Meet their Burden.**

The Court should also deny the Four Judges' request to stay enforcement of the Consent Decree. A judicial stay is ordinarily a mechanism to preserve, not upset, the status quo. *Nken*, 556

U.S. at 429. "[A] stay is 'an extraordinary remedy'" where the movant's burden "is a substantial one." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). The Four Judges do not identify the specific Consent Decree provisions they seek to stay, *cf.* Proposed Order, Dkt. 803-2 at 1, let alone how the Court is supposed to determine whether an act is "taken in compliance with post-Decree amendments to state law," Mot. at 4. More importantly, the Four Judges have not even acknowledged the four *Nken* factors that determine whether a stay is justified, perhaps because those factors demonstrate the need for a factual record. These are glaring omissions given the monumental impact a stay would have on plaintiff class members, Harris County, the Twelve Non-Moving Judges, the Sheriff, the jail, the courts, and the public. *See* Corrected Ninth Monitor Report, Dkt. 799-1 at 6. The Four Judges have not met their burden for the extraordinary remedy of a stay. *See, e.g.*, *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (denying government's request for a stay on a "limited record" where the government did not "provided [the] Court a sufficient basis to disturb the lower courts' [preliminary injunctions]").

> 1. *The Four Judges have not demonstrated a strong likelihood of success on the merits.*

The Four Judges do not even argue, much less make "a strong showing that [they are] likely to succeed on the merits" of their Rule 60 motion. *Nken*, 556 U.S. at 434. On any of their asserted bases for vacatur, the Four Judges would need to show a likelihood of success on *Rufo*'s fact-intensive test for modification or vacatur of a consent decree. *See supra* § A.1.; *see also, e.g.*, *Vernon Smith, etc. v. Sch. Bd. of Concordia Parish*, 88 F.4th 588, 595–96 (5th Cir. 2023) (refusing to modify consent decree where movant "referenced Rule 60(b)(5) only *once*" and exhibited a "stark lack of briefing on the two primary bases for Rule 60(b)(5) relief," but instead urged modification "without regard to the Rule 60(b)(5) standard"). The Four Judges do not even attempt this careful balancing, let alone make the necessary showing. For example, they have not presented

13

any evidence on the "factual inquiry" of "how the consent decree is being implemented and how the state law affects that implementation." Nov. 12, 2025 Tr. at 13:16–18; *Williams v. Lesiak*, 822 F.2d 1223, 1228 (1st Cir. 1987) ("[O]verlapping court orders and subsequent state statutes" require "a careful case-specific inquiry that must be sensitive to the goals of the decree and the legislation, as well as to the values of federalism."). Nor have they demonstrated that staying enforcement of the Consent Decree would "not create or perpetuate a constitutional violation." *Rufo*, 502 U.S. at 391; Dkt. 707 at 26 (finding the Decree addresses "the fundamental source of constitutional deficiency" of the pre-trial system prior to this Court's intervention) (quotation omitted).

Another reason the Four Judges' motion to vacate is not likely to succeed is because their motion was not filed "within a reasonable time," as required by Rule 60(c). *See In re Delta Starr Broad, L.L.C.*, 422 F. App'x 362, 367 (5th Cir. 2011); *Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015, 2022 WL 875096, at *3 (E.D.N.Y. Mar. 23, 2022) (noting that "a delay of more than' three years 'cannot be considered reasonable unless mitigating circumstances exist that justify such a delay'") (citation omitted); *Cadle v. Jefferson*, No. 3:07-CV-70, 2025 WL 1616725, at *2 (W.D. Ky. June 6, 2025) (noting that "delays of longer than two years are generally rejected").

Instead of identifying or presenting evidence on any of the stay factors, the Four Judges suggest the Court should issue a stay based on the "presum[ption that] Texas' bail-reform laws are constitutional, and Texas court procedures afford adequate remedies for arrestees." Mot. at 4. The Four Judges' appeal to a presumption of adequacy is irrelevant to the Rule 60 analysis on which they must demonstrate a "strong showing" of success, as well as to the other stay factors. *Nken*, 556 U.S. at 434. It also reflects a galling misapprehension of the legal basis underlying the Consent Decree. Throughout the *ODonnell* litigation, Defendants argued they were complying with state law. *See, e.g.*, Mar. 10, 2017 Tr., Dkt. 276 at 115:21–115:24 (Test. of Paula Goodhart) ("[M]y oath

14

of office is to follow state law . . . . We are under the state obligation to follow the law and consider all those factors."). Nevertheless, the Court found the Consent Decree was necessary to address "grave and widespread constitutional violations." Dkt. 707 at 22.

The Four Judges have not even attempted to argue that they are likely to succeed on the merits of any of their claims. That alone is reason to deny their request for a stay.

> 2.  *The Four Judges have not shown a stay is necessary to prevent irreparable harm.*

The Four Judges also have not made a showing of irreparable harm. Their motion does not mention irreparable harm. They seemingly argue that the harm posed to them is the possibility that they could "be held in contempt of federal court" if they violate the Consent Decree. Mot. at 6. But complying with a consent decree hardly constitutes irreparable harm.

First, holding the Four Judges to a voluntary agreement is no harm at all. The Four Judges "struck a deal with the [other parties] and bound [themselves] to an enforceable judicial order." *United States v. City of Jackson*, 359 F.3d 727, 732 (5th Cir. 2004). By striking this deal, the Four Judges "vested the district court with the authority to ensure [their] compliance." *Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 335 (5th Cir. 2018). Any harm the Four Judges now claim is "self-inflicted" and "not actually the prejudice from which courts should protect parties." *Green v. Servs. Corp. Int'l*, No. H-06-833, 2006 WL 8441295, at *2 (S.D. Tex. June 30, 2006).

Second, even assuming the risk of contempt from violating the Consent Decree constitutes some harm, that harm is not irreparable. Irreparable harm is "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Four Judges' stated harm fails this standard twice over: first, because they can defend against any contempt proceedings under procedures that provide them an adequate opportunity to be heard, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994), and second,

because, if found in contempt, the Four Judges may "challenge the order on direct appeal of the contempt ruling," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981); *see, e.g.*, *M.D. by Stukenberg v. Abbott*, 119 F.4th 373, 378 (5th Cir. 2025) (reversing contempt order on direct appeal). Accordingly, "the risk of a finding of contempt does not rise to the level of irreparable harm necessary to grant a stay." *Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2024 WL 3236410, at *5 (W.D. Va. June 28, 2024).

Third, the Four Judges' delay in seeking a stay is inconsistent with their assertions of irreparable harm. "[C]ourts generally consider anywhere from a three-month delay to a six-month delay enough to militate against" finding irreparable harm. *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-CV-3200, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (collecting cases). The state legislature enacted S.B. 6 over four years ago. Each of the Four Judges has been on the bench for years with the Consent Decree in place, yet they waited until now, five months after filing their motion to vacate, to seek a stay. The second factor weighs against a stay.

### 3. The Four Judges have not shown the equities and public interest favor a stay.

Nor have the Four Judges shown that they meet the third and fourth stay factors because they have not demonstrated that a stay will not "substantially injure" class members, Harris County, the Sheriff, and the non-moving judges, or that the public interest favors a stay. *Nken*, 556 U.S. at 434. The Four Judges provide no evidence to meet their burden. And while the evidentiary record is still being developed, the evidence thus far suggests that the requested stay would wreak havoc on the County's pretrial system. "The monitors have consistently found that, under the consent decree, 'Harris County and [its] residents have saved "many millions of dollars' and 'the lives of tens of thousands of persons arrested for misdemeanors' have 'improved,' with 'no increase in new offenses by persons arrested for misdemeanors.'" Dkt. 764 at 5 (quoting Eighth Report of the Court-Appointed Monitor, Dkt. 739-1 at 5). Those findings were confirmed by the

16

Monitors' recent Ninth Report. Dkt. 799-1 at 6. Indeed, when the Four Judges previously asked the Monitor for similar relief from the Consent Decree, the Monitors found the proposal "unworkable," likely resulting in "dramatic negative consequences on public safety, liberty, jail operations, and the County budget." Dkt. 741-4 at 4.

Granting the requested stay would impair the constitutional rights of tens of thousands of class members each year, threaten millions of dollars for the County, and wreak havoc on the pretrial system and public safety. The equities and public interest strongly weigh against a stay.

<div align="center">***</div>

The Four Judges have not attempted to justify the extraordinary relief they seek and cannot do so without evidence. None of the stay factors favor a stay. The Court should deny the request.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, the Court should deny the Four Judges' motion in its entirety.

<div align="center">(signatures on following page)</div>

<div align="center">17</div>

Date: May 7, 2026

/s/ Jeremy D. Cutting
Alec George Karakatsanis
alec@civilrightscorps.org
Elizabeth Rossi
elizabeth@civilrightscorps.org
Jeremy D. Cutting
cody@civilrightscorps.org
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Telephone: (202) 681-2721


Dustin Rynders
Texas Bar No. 24048005
dustin@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
travis@texascivilrightsproject.org
Kirsten Budwine
Texas Bar No. 24140263
kirsten@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
2100 Travis Street
Houston, TX 77002
Telephone: (512) 474-5073

Respectfully Submitted,


Neal S. Manne
Texas Bar No. 12937980
nmanne@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
Abbey E. McNaughton
Texas Bar No. 2411675
SUSMAN GODFREY L.L.P.
11000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366


Morgan McCollum
mmccollum@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330

*Attorneys for Plaintiffs*

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May, 2026, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jeremy D. Cutting*
Jeremy D. Cutting

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL,** *et. al.*, on behalf of themselves and all others similarly situated, **Plaintiffs,** | §<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS,** *et. al.,* **Defendants.** | §<br>§<br>§ | |

## DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFFS

TO: Plaintiffs, by and through their counsel of record.

Pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure, Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson and Linda Garcia, serve these requests for admission, interrogatories and requests for production. Please serve Your Responses, including verified responses to the interrogatories and copies of all requested documents, electronically stored information, or tangible things must be served within 30 days, to the undersigned counsel.

1

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:    /s/ *Joseph R. Russo, Jr.*
       Joseph R. Russo, Jr.
       Federal I.D. No. 22559
       State Bar No. 24002879
       jrusso@greerherz.com
       Angie Olalde
       Fed. ID No. 690133
       State Bar No. 24049015
       aolalde@greerherz.com
       One Moody Plaza, 18th Floor
       Galveston, Texas 77550
       (409) 797-3200 (Telephone)
       (866) 456-0170 (Fax)

       **ATTORNEYS FOR DEFENDANTS HON.
       PAULA GOODHART, HON. JESSICA
       PADILLA, HON. LESLIE JOHNSON, AND
       HON. LINDA GARCIA**

## CERTIFICATE OF SERVICE

I certify that on the 11th day of February, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via email.

*/s/ Joseph R. Russo, Jr.*

2

**DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFFS**

## DEFINITIONS

These terms have the following meanings, unless the context requires otherwise:

1. "Bail Assessment" shall mean any proceeding before a hearing officer, magistrate or other judge wherein such official is to, among other things, consider the terms of pretrial release of an arrestee.

2. "Court Monitors" means the Court-appointed monitors Professor Brandon Garrett and Sandra Guerra Thompson (Dkt. 714), their agents, employees, and representatives.

3. "DCCCL Judges" shall mean Judge Alex Salgado, Judge Shannon Baldwin, Judge David M. Fleischer, Judge Kelley Andrews, Judge Andrew A. Wright, Judge Erika Ramirez, Judge Toria J. Finch, Judge Juanita A. Jackson, Judge Sedrick T. Walker, II, Judge Ashley Guice, Judge Raul Rodriguez, and Judge Tonya Jones.

4. "Defendants" shall mean any person or entity that has been a Defendant in this case since filed by Plaintiffs and includes without limitation, Harris County, each person having capacity as Harris County Sheriff, each person serving in an official capacity as judge of any Harris County Criminal Court at Law .

5. "GOB" shall mean the General Conditions of Release and Supervision order that, under the Consent Decree, is issued without an arrestee being seen by a magistrate or hearing officer.

6. "Local Rule" shall refer to the Harris County Criminal Courts at Law Local Rules of Court.

7. "Plaintiffs," "You" or "Your" shall mean the plaintiffs in this lawsuit, and their agents, representatives, experts, and other persons acting or purporting to act on their behalf.

8. "RCCCL Judges" shall mean Defendants Judge Paula Goodhart, Judge Jessica Padilla, Judge Leslie Johnson and Judge Linda Garcia.

9. "Senate Bill 6" or "S.B. 6" refers to Senate Bill 6 adopted in the Second Special Session of the 87th Texas Legislature (2021) amending various articles of the Texas Code of Criminal Procedure.

10. "Senate Bill 9" or "S.B. 9" refers to Senate Bill 9 adopted by the 89th Texas Legislature (2025) amending various articles of the Texas code of Criminal Procedure and Texas Government Code.

11. "Senate Bill 8" or "S.B. 8" refers to Senate Bill 8 adopted by the 89th Texas Legislature (2025) amending Chapter 752, Subchapter D, of the Texas Government Code.

12. "Lawsuit" shall mean this litigation, as captioned in these discovery requests.

13. "Document" means all documents, electronically stored information, or tangible things. The term is synonymous with and equal in scope to the terms "documents," "electronically stored information," and "tangible things" in Federal Rule of Civil Procedure 34(a)(1). The term includes, but is not limited to, written communications such as emails, letters, or messages (whether digital, voice or printed), charts, photographs, memoranda, reports, notes, audits, drafts, instructions, lists, logs, or summaries. A draft or nonidentical copy of a document, electronically stored information, or a tangible thing is a separate "Document."

14. "Electronically stored information" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.

> (1)     "Electronic file" includes, but is not limited to, the following: voicemail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; and metadata.

> (2)     "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

> (3)     "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (e.g., SIM cards).

> (4).     "Tangible thing" means a physical object that is not a document or electronically stored information.

15. "Communication" means the transmittal or exchange of information in the form of facts, ideas, inquiries, or otherwise, whether face-to-face, oral, written, by telephone, mail, text message, electronic mail, personal delivery, or otherwise.

16. "Relating" means concerning, referring, describing, evidencing, connected with, commenting on, responding to, showing, describing, analyzing, or constituting, whether directly or indirectly or in whole or in part.

17. "Possession" includes "constructive possession" and means information or documents that you either physically possess or have access to, or which You may obtain through authorization or release.

18. The words "and" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

19. The words "any" and "all" shall be construed conjunctively or disjunctively as required by the context within the scope of the request so as not to exclude any information that might be deemed inside the request by any other construction.

## SCOPE AND INSTRUCTIONS

1. Unless otherwise noted, the relevant period is January 1, 2022 to present.

2. These discovery requests are continuing in nature. If further information comes into the possession of, or is brought to Your attention or that of Your representatives or attorneys, supplementation of Your response(s) is required.

3. Produce electronically stored information in native format or as agreed upon by You and the requesting party. For any electronically stored information produced:

   a. Produce a discovery log that details the type of information, the source of the information, the discovery request to which the information corresponds, and the information's electronic ID number.

   b. Write all of the electronically stored information to reasonably usable storage media such as a CD, DVD, or flash drive or, if more expedient, transfer using a secure transfer link.

4. For electronically stored information, identify every source containing potentially responsive information that You are not searching or producing.

5. Defined terms include any version of that term, including but not limited to font or formatting changes in capitalization, italicization, bolding, and underlining.

6. The singular of any noun or pronoun includes the plural as determined from the context of the request, and vice versa. Similarly, the masculine of any pronoun includes the feminine as determined from the context of the request, and vice versa.

7. If You claim any privilege or immunity in connection with any of these discovery Requests, You shall state the claim in detail and provide all information that is relevant to the evaluation of the claim of privilege or immunity or to the waiver of the privilege or immunity, specifically including the privilege claimed, the facts upon which You rely to support the claim of privilege, and the scope of said privilege. The information shall be sufficient to allow presentation of the claim to the court and to allow the Requesting Party to contest the claim and urge any waiver of the privilege. The information shall also include, without limitation, the identity of all Documents and of all oral statements and communications relating to the claim or its waiver. Proceed to answer with all requested information for which protection or privilege is not claimed.

8. It is requested that Your counsel discuss with the requesting party's counsel any question(s) regarding perceived ambiguities in, or claims regarding the burdens involved in, or compliance with the discovery sought in these requests in order to resolve any such issues without the necessity of court intervention.

9. "Identify,"

    a.    unless otherwise specified, when used in reference to a <u>person</u> means to set forth the following information:

        i.    The person's full name;

        ii.    The person's present or last known business address and telephone number and in the case of a natural person, also state his home address and telephone number; and

        iii.    if employed by a person or entity related to the Litigation, the person's title and length of time working with the person or entity.

    b.    unless otherwise specified, when used in reference to a <u>document</u> means to set forth the following information:

        i.    the date of the document;
        ii.    the identity of all persons who made and received the document or who received copies thereof;
        iii.    the type of document; and
        iv.    the present location and custodian of the document;

    c.    unless otherwise specified, when used in reference to a <u>conversation</u> or <u>communication</u> to set forth the following information:

        i.    the date and length of the conversation or communication;
        ii.    the identity of all parties to the conversation or communication;
        iii.    the identity of all other witnesses to the conversation or communication;
        iv.    the place where the conversation took place (if the conversation or communication did not take place in person, set forth the location of each party to and each witness to the conversation or communication);
        v.    the general subject matter(s) of the conversation or communication.

If any of the above information is not available, state any other available means of identifying such person.

10. If any document which would be responsive to any discovery request herein was, but is no longer, in your possession or subject to your control, or is no longer in existence, identify each document, in the manner defined herein above, and by additionally stating:

    a.    if it is missing or lost; or
    b.    if it has been destroyed; or
    c.    if it has been transferred voluntarily to others; or
    d.    it has been otherwise disposed of; and, in each instance in which it has been destroyed, transferred, or disposed of:

       i.      explain the circumstances surrounding such disposition; and

      ii.     identify the persons(s) directing or authorizing its destruction or transfer; and

     iii.    the date(s) of such direction or authorization; and

     iv.    whether the document (or copies) are still in existence, and if so, identify the custodians(s) and its (or their) present locations(s).

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit that, under the Consent Decree, arrestees with a history of criminal violence have been released with a GOB without a magistrate judge or hearing officer conducting an individualized review of the circumstances.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 2:** Admit that, under the Consent Decree, arrestees who should have been "carved out" from receiving a GOB have been released with a GOB.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 3:** Admit that, under the Consent Decree, arrestees arrested for an offense described under Local Rule 9.4 (carved out from receiving a GOB) are required to be released on a GOB if they have not been brought before a judge, hearing officer or magistrate for a Bail Assessment within 48 hours after their arrest.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 4:** Admit that, under the Consent Decree, a misdemeanor arrestee arrested for an offense NOT described under Local Rule 9.4 (NOT carved out from receiving a GOB) will be released on a GOB even if circumstances surrounding their arrest indicate an intent to reoffend or make contact with a victim.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 5:** Admit that the GOB is a standing order.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 6:** Admit that the Consent Decree mandates the release of persons arrested for certain Class A or B misdemeanor offenses without an individualized consideration of all circumstances and of the factors required by Texas Code of Criminal Procedure Article 17.15(a).

**ANSWER:**

## INTERROGATORIES

**INTERROGATORY NO. 1:** If your response to any request for admission was not an unequivocal "admit," please explain the reasons and factual support for your answer.

**ANSWER:**

**INTERROGATORY NO. 2:** Do you contend that modifications should be made to the Consent Decree to bring it into compliance with Texas law S.B. 6 and S.B. 9 and, if so, state specifically what those modifications are and the reasons and factual support for such modifications, including a description of any discussions of such modifications with the Court Monitors.

**ANSWER:**

**INTERROGATORY NO. 3:** Identify all bases, studies, reports, communications, or other documents that support or refute your contention that the GOB release procedure under the Consent Decree (e.g., releasing most Class A and B misdemeanor arrestees without a magistrate, judge, or hearing officer first conducting an individualized review of the facts and circumstances) protects public safety, including the safety of victims, law enforcement officers, and communities.

**ANSWER:**

**INTERROGATORY NO. 4:** Identify all situations of which you are aware where an arrestee was released on a GOB without a Bail Assessment, but release was not required under the Consent Decree.

**ANSWER:**

**INTERROGATORY NO. 5:** If you contend that the Consent Decree protects arrestees against constitutional violations that are not also protected by current Texas state law, specifically as amended by S.B. 6 or S.B. 9, please identify each such situation, the factual basis for such contention(s), and provide complete descriptions, details and/or examples of any such situations.

**ANSWER:**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO 1:** All documents you reviewed or relied on to respond to the interrogatories served with these requests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications with any Defendant (as defined above) in this matter, or their counsel, in any way related to settlement negotiations in this case between January of 2018 and December 31, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All documents and communications with any Defendant (as defined above) in this matter, or their counsel, or the Court Monitors in any way related to the implementation, processes, procedures, operation, value, or violations of the Consent Decree or Local Rule 9, or suggested modifications, changes or problems therewith since November 30, 2019.

**RESPONSE:**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL**, *et. al.*, on behalf of themselves and all others similarly situated, Plaintiffs, | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS,** *et. al.,* **Defendants.** | § § § | |

## DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DCCCL JUDGES

TO: Defendants, DCCCL Judges, by and through their counsel of record.

Pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure, Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson and Linda Garcia, serve these requests for admission, interrogatories and requests for production. Please serve Your Responses, including verified responses to the interrogatories and copies of all requested documents, electronically stored information, or tangible things must be served within 30 days, to the undersigned counsel.

1

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: <u>/s/ *Joseph R. Russo, Jr.*</u>
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON.
PAULA GOODHART, HON. JESSICA
PADILLA, HON. LESLIE JOHNSON, AND
HON. LINDA GARCIA**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 11th day of February, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via email.

<u>*/s/ Joseph R. Russo, Jr.*</u>

## DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DCCCL JUDGES

### DEFINITIONS

These terms have the following meanings, unless the context requires otherwise:

1. "Bail Assessment" shall mean any proceeding before a hearing officer, magistrate or other judge wherein such official is to, among other things, consider the terms of pretrial release of an arrestee.

2. "Court Monitors" means the Court-appointed monitors Professor Brandon Garrett and Sandra Guerra Thompson (Dkt. 714), their agents, employees, and representatives.

3. "DCCCL Judges" "You" or "Your" shall mean Judge Alex Salgado, Judge Shannon Baldwin, Judge David M. Fleischer, Judge Kelley Andrews, Judge Andrew A. Wright, Judge Erika Ramirez, Judge Toria J. Finch, Judge Juanita A. Jackson, Judge Sedrick T. Walker, II, Judge Ashley Guice, Judge Raul Rodriguez, and Judge Tonya Jones.

4. "Defendants" shall mean any person or entity that has been a Defendant in this case since filed by Plaintiffs and includes without limitation, Harris County, each person having capacity as Harris County Sheriff, each person serving in an official capacity as judge of any Harris County Criminal Court at Law .

5. "GOB" shall mean the General Conditions of Release and Supervision order that, under the Consent Decree, is issued without an arrestee being seen by a magistrate or hearing officer.

6. "Local Rule" shall refer to the Harris County Criminal Courts at Law Local Rules of Court.

7. "Plaintiffs," shall mean the plaintiffs in this lawsuit, and their agents, representatives, experts, and other persons acting or purporting to act on their behalf.

8. "RCCCL Judges" shall mean Defendants Judge Paula Goodhart, Judge Jessica Padilla, Judge Leslie Johnson and Judge Linda Garcia.

9. "Senate Bill 6" or "S.B. 6" refers to Senate Bill 6 adopted in the Second Special Session of the 87th Texas Legislature (2021) amending various articles of the Texas Code of Criminal Procedure.

10. "Senate Bill 9" or "S.B. 9" refers to Senate Bill 9 adopted by the 89th Texas Legislature (2025) amending various articles of the Texas code of Criminal Procedure and Texas Government Code.

11. "Senate Bill 8" or "S.B. 8" refers to Senate Bill 8 adopted by the 89th Texas Legislature (2025) amending Chapter 752, Subchapter D, of the Texas Government Code.

12. "Lawsuit" shall mean this litigation, as captioned in these discovery requests.

13. "Document" means all documents, electronically stored information, or tangible things. The term is synonymous with and equal in scope to the terms "documents," "electronically stored information," and "tangible things" in Federal Rule of Civil Procedure 34(a)(1). The term includes, but is not limited to, written communications such as emails, letters, or messages (whether digital, voice or printed), charts, photographs, memoranda, reports, notes, audits, drafts, instructions, lists, logs, or summaries. A draft or nonidentical copy of a document, electronically stored information, or a tangible thing is a separate "Document."

14. "Electronically stored information" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.

     (1)    "Electronic file" includes, but is not limited to, the following: voicemail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; and metadata.

     (2)    "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

     (3)    "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (e.g., SIM cards).

     (4).    "Tangible thing" means a physical object that is not a document or electronically stored information.

15. "Communication" means the transmittal or exchange of information in the form of facts, ideas, inquiries, or otherwise, whether face-to-face, oral, written, by telephone, mail, text message, electronic mail, personal delivery, or otherwise.

16. "Relating" means concerning, referring, describing, evidencing, connected with, commenting on, responding to, showing, describing, analyzing, or constituting, whether directly or indirectly or in whole or in part.

17. "Possession" includes "constructive possession" and means information or documents that you either physically possess or have access to, or which You may obtain through authorization or release.

18. The words "and" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

19. The words "any" and "all" shall be construed conjunctively or disjunctively as required by the context within the scope of the request so as not to exclude any information that might be deemed inside the request by any other construction.

## SCOPE AND INSTRUCTIONS

1. Unless otherwise noted, the relevant period is January 1, 2022 to present.

2. These discovery requests are continuing in nature. If further information comes into the possession of, or is brought to Your attention or that of Your representatives or attorneys, supplementation of Your response(s) is required.

3. Produce electronically stored information in native format or as agreed upon by You and the requesting party. For any electronically stored information produced:

    a. Produce a discovery log that details the type of information, the source of the information, the discovery request to which the information corresponds, and the information's electronic ID number.

    b. Write all of the electronically stored information to reasonably usable storage media such as a CD, DVD, or flash drive or, if more expedient, transfer using a secure transfer link.

4. For electronically stored information, identify every source containing potentially responsive information that You are not searching or producing.

5. Defined terms include any version of that term, including but not limited to font or formatting changes in capitalization, italicization, bolding, and underlining.

6. The singular of any noun or pronoun includes the plural as determined from the context of the request, and vice versa. Similarly, the masculine of any pronoun includes the feminine as determined from the context of the request, and vice versa.

7. If You claim any privilege or immunity in connection with any of these discovery Requests, You shall state the claim in detail and provide all information that is relevant to the evaluation of the claim of privilege or immunity or to the waiver of the privilege or immunity, specifically including the privilege claimed, the facts upon which You rely to support the claim of privilege, and the scope of said privilege. The information shall be sufficient to allow presentation of the claim to the court and to allow the Requesting Party to contest the claim and urge any waiver of the privilege. The information shall also include, without limitation, the identity of all Documents and of all oral statements and communications relating to the claim or its waiver. Proceed to answer with all requested information for which protection or privilege is not claimed.

8. It is requested that Your counsel discuss with the requesting party's counsel any question(s) regarding perceived ambiguities in, or claims regarding the burdens involved in, or compliance with the discovery sought in these requests in order to resolve any such issues without the necessity of court intervention.

9. "Identify,"

     a.    unless otherwise specified, when used in reference to a <u>person</u> means to set forth the following information:

          i.    The person's full name;

          ii.    The person's present or last known business address and telephone number and in the case of a natural person, also state his home address and telephone number; and

          iii.    if employed by a person or entity related to the Litigation, the person's title and length of time working with the person or entity.

     b.    unless otherwise specified, when used in reference to a <u>document</u> means to set forth the following information:

          i.    the date of the document;
          ii.    the identity of all persons who made and received the document or who received copies thereof;
          iii.    the type of document; and
          iv.    the present location and custodian of the document;

     c.    unless otherwise specified, when used in reference to a <u>conversation</u> or <u>communication</u> to set forth the following information:

          i.    the date and length of the conversation or communication;
          ii.    the identity of all parties to the conversation or communication;
          iii.    the identity of all other witnesses to the conversation or communication;
          iv.    the place where the conversation took place (if the conversation or communication did not take place in person, set forth the location of each party to and each witness to the conversation or communication);
          v.    the general subject matter(s) of the conversation or communication.

If any of the above information is not available, state any other available means of identifying such person.

10. If any document which would be responsive to any discovery request herein was, but is no longer, in your possession or subject to your control, or is no longer in existence, identify each document, in the manner defined herein above, and by additionally stating:

     a.    if it is missing or lost; or
     b.    if it has been destroyed; or
     c.    if it has been transferred voluntarily to others; or
     d.    it has been otherwise disposed of; and, in each instance in which it has been destroyed, transferred, or disposed of:

i.     explain the circumstances surrounding such disposition; and

ii.     identify the persons(s) directing or authorizing its destruction or transfer; and

iii.     the date(s) of such direction or authorization; and

iv.     whether the document (or copies) are still in existence, and if so, identify the custodians(s) and its (or their) present locations(s)

# REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit that, under the Consent Decree, arrestees with a history of criminal violence have been released with a GOB without a magistrate judge or hearing officer conducting an individualized review of the circumstances.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 2:** Admit that, under the Consent Decree, arrestees arrested for an offense described under Local Rule 9.4 (carved out from receiving a GOB) have been released with a GOB without a Bail Assessment.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 3:** Admit that, under the Consent Decree, arrestees arrested for an offense described under Local Rule 9.4 (carved out from receiving a GOB) are required to be released on a GOB if they have not been brought before a judge, hearing officer or magistrate for a Bail Assessment within 48 hours after their arrest.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 4:** Admit that, under the Consent Decree, a misdemeanor arrestee arrested for an offense NOT described under Local Rule 9.4 (NOT carved out from receiving a GOB) are required by the Consent Decree to be released on a GOB even if circumstances surrounding their arrest indicate an intent to reoffend or make contact with a victim.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 5:** Admit that the GOB is a standing order.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 6:** Admit that you believe that the RCCCL and DCCCL must comply with Texas law, specifically as relates to conducting Bail Assessments before determining terms of bail or being released on bond or GOB.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 7:** Admit that the Consent Decree mandates the release of persons arrested for certain Class A or B misdemeanor offenses without an individualized

consideration of all circumstances and of the factors required by Texas Code of Criminal Procedure Article 17.15(a).

**ANSWER:**

**REQUEST FOR ADMISSION NO. 8:** Admit that the Consent Decree does not exclude those arrested for misdemeanor indecent assault being required to be released on a GOB.

**ANSWER:**

## INTERROGATORIES

**INTERROGATORY NO. 1:** If your response to any request for admission was not an unequivocal "admit," please explain the reasons and factual support for your answer.

**ANSWER:**

**INTERROGATORY NO. 2:** Do you contend that modifications should be made to the Consent Decree to bring it into compliance with Texas law S.B. 6 and S.B. 9 and, if so, state specifically what those modifications are and the reasons and factual support for such modifications, including a description of any discussions of such modifications with the Court Monitors.

**ANSWER:**

**INTERROGATORY NO. 3:** Do you contend that the GOB release order required under the Consent Decree protects or improves public safety, including the safety of victims, law enforcement officers, and communities as a whole and if so, identify the bases, studies, reports, communications, or other documents that support or refute that contention.

**ANSWER:**

**INTERROGATORY NO. 4:** Identify all situations of which you are aware where an arrestee was released on a GOB without a Bail Assessment, but release on a GOB should not have been required under the Consent Decree.

**ANSWER:**

**INTERROGATORY NO. 5:** For each of the DCCCL Courts, does an order for bail forfeiture bail and/or bail revocation for a particular arrestee generally indicate that the arrestee failed to appear at the hearing in question, and if not, please explain.

**ANSWER:**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO 1:** All documents you reviewed or relied on to respond to the interrogatories served with these requests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications with any other party to this case or their counsel, or Defendants (as defined above) in this matter, or their counsel, in any way related to settlement negotiations in this case between January of 2018 and December 31, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All documents, communications, and instructions, including any guidelines, policies, advisories, requests, suggestions, research, discussion, draft amendments, meeting agendas, minutes, emails, or letters, regarding the Harris County process of pre-trial detention and/or release, Consent Decree, and/or Local Rule 9 procedures or problems with, modifications, changes or amendments thereto between January 1, 2019 to the present between or among you (or anyone acting on your behalf such as a Court Coordinator or Staff Attorney) with any of the following or their attorneys:

a. RCCCL or other DCCCL Judges;
b. Court Monitors;
c. Public defender's office attorney or personnel;
d. Harris County Criminal Court Hearing Officer;
e. Employees of the Office of Court Management, Pretrial Services, or the District Attorney's Office, and/or
f. Any Harris County Commissioner or a Department Head.

**RESPONSE**

**REQUEST FOR PRODUCTION NO. 4:** Since January of 2019, all documents, materials correspondence, lists, spreadsheets, logs, reports, complaints or communications reflecting, evidencing, tracking or discussing:

a. misdemeanor arrestees who were miscoded or improperly coded as requiring a GOB under the Consent Decree and given pretrial release on a GOB with no Bail Assessment;
b. a Defendant's noncompliance with the Consent Decree;
c. requests for information sent to or sought by Court Monitors;
d. processes or procedures under the Consent Decree, including problems with implementing any processes or procedures;
e. costs associated with the Consent Decree;

f. whether the Consent Decree conflicts with Texas law or the Fifth Circuit's opinion in *Daves II*; or

g. subsequent crimes committed by persons released on a GOB.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MARANDA LYNN ODONNELL,** *et. al.*, **on behalf of themselves and all others similarly situated, Plaintiffs,** | §<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **CIVIL ACTION NO. 4:16-cv-1414** |
| **HARRIS COUNTY, TEXAS,** *et. al.,* **Defendants.** | §<br>§<br>§ | |

## DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION TO HARRIS COUNTY

TO: Defendant, Harris County, by and through their counsel of record.

Pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure, Defendants, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson and Linda Garcia, serve these requests for admissions, interrogatories and requests for production. Please serve Your Responses, including verified responses to the interrogatories and copies of all requested documents, electronically stored information, or tangible things must be served within 30 days, to the undersigned counsel.

1

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:    /s/ *Joseph R. Russo, Jr.*
       Joseph R. Russo, Jr.
       Federal I.D. No. 22559
       State Bar No. 24002879
       jrusso@greerherz.com
       Angie Olalde
       Fed. ID No. 690133
       State Bar No. 24049015
       aolalde@greerherz.com
       One Moody Plaza, 18th Floor
       Galveston, Texas 77550
       (409) 797-3200 (Telephone)
       (866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON. PAULA GOODHART, HON. JESSICA PADILLA, HON. LESLIE JOHNSON, AND HON. LINDA GARCIA**

## CERTIFICATE OF SERVICE

I certify that on the 11th day of February, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via email.

*/s/ Joseph R. Russo, Jr.*

**DEFENDANT JUDGES' REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR PRODUCTION TO HARRIS COUNTY**

### DEFINITIONS

These terms have the following meanings, unless the context requires otherwise:

1. "Bail Assessment" shall mean any proceeding before a hearing officer, magistrate or other judge wherein such official is to, among other things, consider the terms of pretrial release of an arrestee.

2. "Court Monitors" means the Court-appointed monitors Professor Brandon Garrett and Sandra Guerra Thompson (Dkt. 714), their agents, employees, and representatives.

3. "DCCCL Judges" shall mean Judge Alex Salgado, Judge Shannon Baldwin, Judge David M. Fleischer, Judge Kelley Andrews, Judge Andrew A. Wright, Judge Erika Ramirez, Judge Toria J. Finch, Judge Juanita A. Jackson, Judge Sedrick T. Walker, II, Judge Ashley Guice, Judge Raul Rodriguez, and Judge Tonya Jones.

4. "Defendants" shall mean any person or entity that has been a Defendant in this case since filed by Plaintiffs and includes without limitation, Harris County, each person having capacity as Harris County Sheriff, each person serving in an official capacity as judge of any Harris County Criminal Court at Law .

5. "Harris County," "You," or "Your" shall mean Harris County, and its various departments, agents, representatives, experts, Harris County Criminal Law Hearing Officers and other any persons acting or purporting to act on its behalf.

6. "GOB" shall mean the General Conditions of Release and Supervision order that, under the Consent Decree, is issued without an arrestee being seen by a magistrate or hearing officer.

7. "Local Rule" shall refer to the Harris County Criminal Courts at Law Local Rules of Court.

8. "RCCCL Judges" shall mean Defendants Judge Paula Goodhart, Judge Jessica Padilla, Judge Leslie Johnson and Judge Linda Garcia.

9. "Senate Bill 6" or "S.B. 6" refers to Senate Bill 6 adopted in the Second Special Session of the 87th Texas Legislature (2021) amending various articles of the Texas Code of Criminal Procedure.

10. "Senate Bill 9" or "S.B. 9" refers to Senate Bill 9 adopted by the 89th Texas Legislature (2025) amending various articles of the Texas code of Criminal Procedure and Texas Government Code.

11. "Senate Bill 8" or "S.B. 8" refers to Senate Bill 8 adopted by the 89th Texas Legislature (2025) amending Chapter 752, Subchapter D, of the Texas Government Code.

12. "Lawsuit" shall mean this litigation, as captioned in these discovery requests.

13. "Document" means all documents, electronically stored information, or tangible things. The term is synonymous with and equal in scope to the terms "documents," "electronically stored information," and "tangible things" in Federal Rule of Civil Procedure 34(a)(1). The term includes, but is not limited to, written communications such as emails, letters, or messages (whether digital, voice or printed), charts, photographs, memoranda, reports, notes, audits, drafts, instructions, lists, logs, or summaries. A draft or nonidentical copy of a document, electronically stored information, or a tangible thing is a separate "Document."

14. "Electronically stored information" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.

 (1) "Electronic file" includes, but is not limited to, the following: voicemail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; and metadata.

 (2) "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

 (3) "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (e.g., SIM cards).

 (4). "Tangible thing" means a physical object that is not a document or electronically stored information.

15. "Communication" means the transmittal or exchange of information in the form of facts, ideas, inquiries, or otherwise, whether face-to-face, oral, written, by telephone, mail, text message, electronic mail, personal delivery, or otherwise.

16. "Relating" means concerning, referring, describing, evidencing, connected with, commenting on, responding to, showing, describing, analyzing, or constituting, whether directly or indirectly or in whole or in part.

17. "Possession" includes "constructive possession" and means information or documents that you either physically possess or have access to, or which You may obtain through authorization or release.

18. The words "and" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

19. The words "any" and "all" shall be construed conjunctively or disjunctively as required by the context within the scope of the request so as not to exclude any information that might be deemed inside the request by any other construction.

## SCOPE AND INSTRUCTIONS

1. Unless otherwise noted, the relevant period is January 1, 2022 to present.

2. These discovery requests are continuing in nature. If further information comes into the possession of, or is brought to Your attention or that of Your representatives or attorneys, supplementation of Your response(s) is required.

3. Produce electronically stored information in native format or as agreed upon by You and the requesting party. For any electronically stored information produced:

   a. Produce a discovery log that details the type of information, the source of the information, the discovery request to which the information corresponds, and the information's electronic ID number.

   b. Write all of the electronically stored information to reasonably usable storage media such as a CD, DVD, or flash drive or, if more expedient, transfer using a secure transfer link.

4. For electronically stored information, identify every source containing potentially responsive information that You are not searching or producing.

5. Defined terms include any version of that term, including but not limited to font or formatting changes in capitalization, italicization, bolding, and underlining.

6. The singular of any noun or pronoun includes the plural as determined from the context of the request, and vice versa. Similarly, the masculine of any pronoun includes the feminine as determined from the context of the request, and vice versa.

7. If You claim any privilege or immunity in connection with any of these discovery Requests, You shall state the claim in detail and provide all information that is relevant to the evaluation of the claim of privilege or immunity or to the waiver of the privilege or immunity, specifically including the privilege claimed, the facts upon which You rely to support the claim of privilege, and the scope of said privilege. The information shall be sufficient to allow presentation of the claim to the court and to allow the Requesting Party to contest the claim and urge any waiver of the privilege. The information shall also include, without limitation, the identity of all Documents and of all oral statements and communications relating to the claim or its waiver. Proceed to answer with all requested information for which protection or privilege is not claimed.

8. It is requested that Your counsel discuss with the requesting party's counsel any question(s) regarding perceived ambiguities in, or claims regarding the burdens involved in, or compliance with the discovery sought in these requests in order to resolve any such issues without the necessity of court intervention.

9.    "Identify,"

    a.    unless otherwise specified, when used in reference to a <u>person</u> means to set forth the following information:

        i.    The person's full name;

        ii.    The person's present or last known business address and telephone number and in the case of a natural person, also state his home address and telephone number; and

        iii.    if employed by a person or entity related to the Litigation, the person's title and length of time working with the person or entity.

    b.    unless otherwise specified, when used in reference to a <u>document</u> means to set forth the following information:

        i.    the date of the document;

        ii.    the identity of all persons who made and received the document or who received copies thereof;

        iii.    the type of document; and

        iv.    the present location and custodian of the document;

    c.    unless otherwise specified, when used in reference to a <u>conversation</u> or <u>communication</u> to set forth the following information:

        i.    the date and length of the conversation or communication;

        ii.    the identity of all parties to the conversation or communication;

        iii.    the identity of all other witnesses to the conversation or communication;

        iv.    the place where the conversation took place (if the conversation or communication did not take place in person, set forth the location of each party to and each witness to the conversation or communication);

        v.    the general subject matter(s) of the conversation or communication.

If any of the above information is not available, state any other available means of identifying such person.

10.    If any document which would be responsive to any discovery request herein was, but is no longer, in your possession or subject to your control, or is no longer in existence, identify each document, in the manner defined herein above, and by additionally stating:

    a.    if it is missing or lost; or

    b.    if it has been destroyed; or

    c.    if it has been transferred voluntarily to others; or

    d.    it has been otherwise disposed of; and, in each instance in which it has been destroyed, transferred, or disposed of:

       i.        explain the circumstances surrounding such disposition; and

      ii.       identify the persons(s) directing or authorizing its destruction or transfer; and

     iii.      the date(s) of such direction or authorization; and

     iv.      whether the document (or copies) are still in existence, and if so, identify the custodians(s) and its (or their) present locations(s)

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit that You received a request from the RCCCL Judges seeking representation in this case no later than December 13, 2023.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 2:** Admit that You declined to consider providing funding for legal representation in this case for the RCCCL Judges on April 23, 2024.

**ANSWER:**

**REQUEST FOR ADMISSION NO. 3:** Admit that absent the Consent Decree the DCCCL Judges and RCCCL Judges can modify by majority vote the Local Rules governing Bail Assessment procedures.

**ANSWER:**

## INTERROGATORIES

**INTERROGATORY NO. 1:** If your response to any request for admission was not an unequivocal "admit," please explain the reasons and factual support for your answer.

**ANSWER:**

**INTERROGATORY NO. 2:** Do you contend that modifications should be made to the Consent Decree to bring it into compliance with Texas law S.B. 6 and S.B. 9 and, if so, state specifically what those modifications are and the reasons and factual support for such modifications, including a description of any discussions of such modifications with the Court Monitors.

**ANSWER:**

**INTERROGATORY NO. 3:** Do you contend that the GOB release order required under the Consent Decree protects or improves public safety, including the safety of victims, law enforcement officers, and communities as a whole and if so, identify the bases, studies, reports, communications, or other documents that support or refute that contention.

**ANSWER:**

**INTERROGATORY NO. 4:** For each year between 2019 and 2026, identify by job title, role or position the number of employees, personnel or staff (full or part time) that were added to your various offices or departments, such as, without limitation, the Harris County Pretrial Services, Public Defender's Office, the Harris County Sheriff's Department, Harris County Justice Innovation Team, the Office of Court Administration, Justice Administration Dept. etc., as a result of your need to implement and/or comply with the terms of the Consent Decree and state the number of employees or staff who had that job title, role or position on January 1, 2018, (or state no one held that job title, role or position on that date).

**ANSWER:**

**INTERROGATORY NO. 5:** Identify the County's annual expenses related to implementation of and compliance with the Consent Decree for each year between 2019 to date, listing, <u>without limitation</u>, the following categories of expenses and amounts spent each year (include the estimated or budgeted expenses for compliance for 2026):

    a.  costs associated with Court Monitors and/or their expenses;

    b.  costs associated with expansion of Harris County Pretrial Services office, personnel and expenses since 2018;

    c.  costs of presentations and training materials and associated vendor or consultant expenses;

    d.  costs of computer or software upgrades, expanded storage and data maintenance necessitated by implementation of the Consent Decree;

    e.  consultant or vendor fees and expenses associated with reports or studies of, (1) Ideas42, (2) relating to Harris County criminal justice or bail reform measures, or (3) regarding actual or exploratory methods to measure, improve, impact or maintain bond forfeiture rates or rates of nonappearances at hearings for arrestees released on bail; and/or

    f.  costs related reports, studies or expenditures of the County Justice Innovation Team.

**ANSWER:**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO 1:** All documents you reviewed or relied on to respond to the interrogatories served with these requests.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** All documents and communications with any Defendant (as defined above) in this matter, or their counsel, in any way related to settlement negotiations in this case between January of 2018 and December 31, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All documents, communications, or instructions, (including any guidelines, policies, advisories, requests, suggestions, research, discussion, draft amendments, meeting agendas, or minutes), regarding the Harris County process of misdemeanor pretrial detention and/or release, implementation or compliance with the Consent Decree, and/or Local Rule 9 procedures or problems with, modifications, changes or amendments thereto between January 1, 2019 to the present by, from or between you and any of the following:

  a. RCCCL or DCCCL Judges;
  b. Plaintiffs or their counsel
  c. Court Monitors;
  d. Public defender's office attorney or personnel;
  e. Harris County District Attorney's Office; and/or
  f. Harris County Criminal Court Hearing Officers.

**RESPONSE**


**REQUEST FOR PRODUCTION NO. 4:** All documents or materials requested by, made available or provided to the Court Monitors as part of their functions under the Consent Decree, including data sets, descriptions of cells, fields, or fieldnames, spreadsheets, databases, expense statements, cost estimates, proposals or change requests (and communications relating to such documents or materials).

**RESPONSE**


**REQUEST FOR PRODUCTION NO. 5:** All documents or other materials reflecting or evidencing presentations, training statements or aids, handouts, articles, or Powerpoint or other slides related to implementation of, compliance with, monitoring efforts or modifications related to the Consent Decree.

**RESPONSE**


**REQUEST FOR PRODUCTION NO. 6:** All documents, reports, studies, analyses or other materials reflecting or evidencing costs or expenses incurred by you associated with implementation of and/or compliance with the Consent Decree, including, without limitation:

  a. costs associated with Court Monitors and/or their expenses;
  b. costs associated with expansion of Harris County Pretrial Services office, personnel and expenses since 2018;
  c. costs of presentations and training materials and associated vendor or consultant expenses;
  d. costs of computer or software upgrades, expanded storage and data maintenance necessitated by implementation of the Consent Decree;

e. consultant or vendor fees and expenses associated with reports or studies of, (1) Ideas42, (2) relating to Harris County criminal justice or bail reform measures, or (3) regarding actual or exploratory methods to measure, improve, impact or maintain bond forfeiture rates or rates of nonappearance at hearings for arrestees released on bail; and/or

f. related reports, studies or expenditures of the County Justice Innovation Team.

**RESPONSE**

**REQUEST FOR PRODUCTION NO. 7:** Since January of 2019, all documents, materials correspondence, lists, spreadsheets, logs, reports, complaints or communications reflecting, evidencing, tracking or discussing misdemeanor arrestees who were miscoded or improperly coded as requiring a GOB under the Consent Decree and given pretrial release on a GOB with no Bail Assessment (whether by or between you internally or sent or shared between you and Plaintiffs, other Defendants, Court Monitors, Harris County Court Hearing Officers or the Harris County District Attorney's Office.

**RESPONSE**

# EXHIBIT B

Case 4:16-cv-00437 Document 824-2 Filed 07/28/23 Date Filed 06/25/2026 Page 578 of 18

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

|  |  |  |
|---|---|---|
| Maranda Lynn Odonnell, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 4:16-cv-01414 |
| Harris County, Texas, et al. | ) | |
|  | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                               Brandon L. Garrett

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.

| Place: Greer, Herz and Adams, LLP<br>One Moody Plaza, 18th Floor<br>Galveston, Texas 77550 | Date and Time:<br>04/29/2026 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/15/2026

*CLERK OF COURT*

                                       OR

_____         _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, Linda Garcia_____ , who issues or requests this subpoena, are:
Angie Olalde and Joseph R. Russo, Jr.

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:16-cv-01414

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

| | |
|---|---|
| Maranda Lynn Odonnell, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   4:16-cv-01414 |
| Harris County, Texas, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:             Brandon L. Garrett

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.

| Place: Greer, Herz and Adams, LLP<br>One Moody Plaza, 18th Floor<br>Galveston, Texas 77550 | Date and Time:<br>04/29/2026 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      04/15/2026

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, Linda Garcia____ , who issues or requests this subpoena, are:
Angie Olalde and Joseph R. Russo, Jr.

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:16-cv-01414

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

| | | |
|---|---|---|
| Maranda Lynn Odonnell, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 4:16-cv-01414 |
| Harris County, Texas, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                             Brandon L. Garrett

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.

| Place: Greer, Herz and Adams, LLP<br>One Moody Plaza, 18th Floor<br>Galveston, Texas 77550 | Date and Time:<br><br>04/29/2026 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    04/15/2026

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, Linda Garcia____ , who issues or requests this subpoena, are:
 Angie Olalde and Joseph R. Russo, Jr.

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:16-cv-01414

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**SUBPOENA TO COURT MONITOR AND DEPUTY MONITOR
TO PRODUCE DOCUMENTS**

**DEFINITIONS**

These terms have the following meanings, unless the context requires otherwise:

1.  "Bail Assessment" shall mean any proceeding before a hearing officer, magistrate or other judge wherein such official is to, among other things, consider the terms of pretrial release of an arrestee.

2.  "Court Monitor(s)" means Court-appointed monitor Professor Brandon Garrett and/or Court-appointed Deputy Monitor Sandra Guerra Thompson (Dkt. 714), as well as their agents, employees, and representatives.

3.  "You" means the recipient of this request for the production of records.

4.  "RCCCL Judges" shall mean Defendants Judge Paula Goodhart, Judge Jessica Padilla, Judge Leslie Johnson and Judge Linda Garcia.

5.  "Harris County" shall mean Harris County, and its various departments, agents, representatives, experts, Harris County Criminal Law Hearing Officers and other any persons acting or purporting to act on its behalf.

6.  "GOB" shall mean the General Conditions of Release and Supervision order that, under the Consent Decree, is or has been issued without an arrestee being seen by a magistrate or hearing officer.

7.  "Defendants" shall mean any person or entity that has been a Defendant in this case since filed by Plaintiffs and includes without limitation, Harris County, each person having capacity as Harris County Sheriff, each person serving in an official capacity as judge of any Harris County Criminal Court at Law .

8.  "Local Rule" shall refer to the Harris County Criminal Courts at Law Local Rules of Court.

9.  "Senate Bill 6" or "S.B. 6" refers to Senate Bill 6 adopted in the Second Special Session of the 87th Texas Legislature (2021) amending various articles of the Texas Code of Criminal Procedure.

10. "Senate Bill 9" or "S.B. 9" refers to Senate Bill 9 adopted by the 89th Texas Legislature (2025) amending various articles of the Texas code of Criminal Procedure and Texas Government Code.

11. "Senate Bill 8" or "S.B. 8" refers to Senate Bill 8 adopted by the 89th Texas Legislature (2025) amending Chapter 752, Subchapter D, of the Texas Government Code.

1

12. "Lawsuit" shall mean this litigation, as captioned in these discovery requests.

13. "Document" means all documents, electronically stored information, or tangible things. The term is synonymous with and equal in scope to the terms "documents," "electronically stored information," and "tangible things" in Federal Rule of Civil Procedure 34(a)(1). The term includes, but is not limited to, written communications such as emails, letters, or messages (whether digital, voice or printed), charts, photographs, memoranda, reports, notes, audits, drafts, instructions, lists, logs, or summaries. A draft or nonidentical copy of a document, electronically stored information, or a tangible thing is a separate "Document."

14. "Electronically stored information" or ESI means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.

    (1) "Electronic file" includes, but is not limited to, the following: voicemail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; and metadata.

    (2) "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

    (3) "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, and integrated-circuit cards (e.g., SIM cards).

    (4). "Tangible thing" means a physical object that is not a document or electronically stored information.

15. "Communication" means the transmittal or exchange of information in the form of facts, ideas, inquiries, or otherwise, whether face-to-face, oral, written, by telephone, mail, text message, electronic mail, personal delivery, or otherwise.

16. "Relating" means concerning, referring, describing, evidencing, connected with, commenting on, responding to, showing, describing, analyzing, or constituting, whether directly or indirectly or in whole or in part.

17. The words "and" and "or" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information otherwise within the scope of any specification.

18. The words "any" and "all" shall be construed conjunctively or disjunctively as required by the context within the scope of the request so as not to exclude any information that might be deemed inside the request by any other construction.

**SCOPE AND INSTRUCTIONS**

1.      These requests are served upon the Court Monitor, Brandon L. Garrett, the Deputy Monitor, Sandra Guerra Thompson, and Dottie Carmichael, Director and Research Scientist because each have contributed to Monitor reporting in the Lawsuit, and the serving parties do not know which person has possession of various requested documents. The serving parties believe a coordinated, single response is appropriate, and are available to discuss this approach, or any other questions about responding.

2.      Unless otherwise noted, the relevant period is January 1, 2022 to present.

3.      These discovery requests are continuing in nature. If further information comes into the possession of, or is brought to Your attention or that of Your representatives or attorneys, supplementation of Your response(s) is required.

4.      Produce electronically stored information in native format or as agreed upon by You and the requesting party. For any electronically stored information produced:

      a.  Produce a discovery log that details the type of information, the source of the information, the discovery request to which the information corresponds, and the information's electronic ID number.

      b.  Write all of the electronically stored information to reasonably usable storage media such as a CD, DVD, or flash drive or, if more expedient, transfer using a secure transfer link.

5.      For electronically stored information, identify every source containing potentially responsive information that You are not searching or producing.

6.      Defined terms include any version of that term, including but not limited to font or formatting changes in capitalization, italicization, bolding, and underlining.

7.      The singular of any noun or pronoun includes the plural as determined from the context of the request, and vice versa. Similarly, the masculine of any pronoun includes the feminine as determined from the context of the request, and vice versa.

8.      If You claim any privilege or immunity in connection with any of these discovery Requests, please contact the requesting party as soon as possible and identify the claim in detail and provide all information that is relevant to the evaluation of the claim of privilege or immunity or to any waiver of the privilege or immunity (e.g., privilege claimed, facts relied upon to support privilege, and the scope of said privilege). Please identify the Documents being withheld, and proceed to answer with all requested information for which protection or privilege is not claimed.

9.      It is requested that You confer with the requesting party's counsel regarding any question(s) regarding perceived ambiguities in, or claims regarding the burdens involved in, or compliance with the discovery sought in these requests in order to resolve any such issues without the necessity of court intervention.

3

10. "Identify,"

    a.    unless otherwise specified, when used in reference to a <u>person</u> means to set forth the following information:

        i.    The person's full name;

        ii.    The person's present or last known business address and telephone number and in the case of a natural person, also state his home address and telephone number; and

        iii.    if employed by a person or entity related to the Litigation, the person's title and length of time working with the person or entity.

    b.    unless otherwise specified, when used in reference to a <u>document</u> means to set forth the following information:

        i.    the date of the document;
        ii.    the identity of all persons who made and received the document or who received copies thereof;
        iii.    the type of document; and
        iv.    the present location and custodian of the document;

    c.    unless otherwise specified, when used in reference to a <u>conversation</u> or <u>communication</u> to set forth the following information:

        i.    the date and length of the conversation or communication;
        ii.    the identity of all parties to the conversation or communication;
        iii.    the identity of all other witnesses to the conversation or communication;
        iv.    the place where the conversation took place (if the conversation or communication did not take place in person, set forth the location of each party to and each witness to the conversation or communication);
        v.    the general subject matter(s) of the conversation or communication.

If any of the above information is not available, state any other available means of identifying such person.

11. If any document which would be responsive to any discovery request herein was, but is no longer, in your possession or subject to your control, or is no longer in existence, identify each document, in the manner defined herein above, and by additionally stating:

    a.    if it is missing or lost; or
    b.    if it has been destroyed; or
    c.    if it has been transferred voluntarily to others; or
    d.    it has been otherwise disposed of; and, in each instance in which it has been destroyed, transferred, or disposed of:

<div style="margin-left:2em;">

i.      explain the circumstances surrounding such disposition; and

ii.      identify the persons(s) directing or authorizing its destruction or transfer; and

iii.      the date(s) of such direction or authorization; and

iv.      whether the document (or copies) are still in existence, and if so, identify the custodians(s) and its (or their) present locations(s)

</div>

### DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO 1 (Data):

Please produce in ESI format the documents or materials made available to You to prepare Your Ninth Report of the Court-Appointed Monitor ("Report), including data sets, descriptions of cells, fields, or fieldnames, spreadsheets, databases, and expense or cost statements, estimates, proposals or change requests. This includes the data referenced at page 27 of the Report , which states: "Our data analysis is based on case-level records of all Class A and B misdemeanor cases filed in the Harris County Criminal Courts at Law (CCCL) between January 1, 2015 and December 31, 2025, which was downloaded from the RAD's database on February 10, 2026."

*To assist in Your search and response to this request, the attached Exhibit B lists specific areas to address. Because we do not know what You have reviewed, what has been made available to You, and through what means/format, this list is not exhaustive and is not intended to omit relevant or responsive data of which You are aware, but which is not itemized in Exhibit B. Please reach out to counsel for the RCCCL Judges with any questions regarding this request at Jrusso@greerherz.com, or Aolalde@greerherz.com, or 409-797-3200.*

### RESPONSE:

### REQUEST FOR PRODUCTION NO. 2 (Communications):

Communications received or sent by You on or after January 1, 2023, if any, that:

(a) relate to the data descried in Request No. 1, including any data You decided to exclude from Your analysis in the Ninth Monitor report,

(b) specifically reference any of the RCCCL Judges,

(c) reference or discuss whether the Consent Decree conflicts with Texas law (e.g., S.B. 6 or S.B. 9 or S.B. 8),

(d) reference or discuss potential threats to public safety under the Consent Decree, including the release of persons under a GOB,

(e) ask to modify or amend the Local Rules or Consent Decree, and Your response(s) to such request(s), and/or

(f) seek or provide peer review or peer feedback relating to any publication by You about the Consent Decree.

### RESPONSE:

<div style="text-align:center;">5</div>

**REQUEST FOR PRODUCTION NO. 3 (presentations and articles):**

Any presentations, websites or articles You have created or contributed to about the Consent Decree, other than Your reports filed in the Lawsuit. For example, training statements, aids, handouts, publications, or slides, and website addresses.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4 (costs):**

Documents or data relating to costs for the following items, activities or projects referenced in Your Ninth Report of the Court-Appointed Monitor (Dkt. 799-1) ("Report"):

1. Costs relating to the development and maintenance of the online data portal for the misdemeanor bail process, referenced at p.iv of the Report.

2. Estimated costs relating to the hiring of "staff attorneys to identify GOB eligible cases and also ensure compliance with Rule 9 and the Consent Decree", referenced at pp.iv–v of the Report.

3. Costs relating to bail reform-related changes to magistration staffing and resources, referenced at p.20 of the Report.

4. Estimated and actual costs relating to the non-appearance mitigation plan referenced at p. 21 of the Report;

5. Estimated and actual costs relating to the development of https://myharriscountycase.com, referenced at p.21 of the Report.

6. Estimated and actual costs relating to the development of videos and bail reform-related improvements at the Joint Processing Center, referenced at p.22 of the Report.

7. Costs relating to retaining the National Association of Public Defense for studying Harris County's indigent defense system, referenced at p.22 of the Report.

8. Estimated and actual costs relating to bail reform-related improvements for Pretrial Services, referenced at p.25 of the Report.

9. Estimated and actual costs relating to bail reform at the Public Defender's Office and Office of Managed Assigned Counsel, referenced at p.26 of the Report.

10. Changes in law enforcement transportation costs and time costs due to transporting defendants to the Joint Processing Center, rather than a local jail or substation, referenced at p.35, footnote 12 of the Report.

11. Estimated development, fixed, and ongoing costs for a new court notification system, referenced at p.70 of the Report.

**RESPONSE:**

6

## **EXHIBIT B**

1. Raw and final datasets of case-level records of all Class A and B misdemeanor classes filed in the Harris County Criminal Courts at Law between January 1, 2015 and December 31, 2025 (from Research and Analysis Division), as well as associated code and documentation

2. Raw and final datasets of case-level records of felonies filed in the Harris County Criminal Courts at Law between January 1, 2015 and December 31, 2025 (from Research and Analysis Division), as well as associated code and documentation

3. Raw and final datasets relating to probable cause hearings, including bond type, proposed amounts, bond decisions, and reasons for decisions, pretrial supervision types, and pretrial supervision duration, as well as all relevant code and documentation

4. Raw, imputed, and final datasets of defendant-level records of Class A and B misdemeanor defendants between January 1, 2015 and December 31, 2025, as well as associated code and documentation

5. Analysis and documentation of ethnicity imputation methods used for imputing the ethnicity of misdemeanor defendants (e.g., "ethnicity information is missing for 64 percent of misdemeanor defendants between 2015 and 2025." Ninth Monitor Report p. 31), including associated accuracy, validation, or quality analyses

6. Raw and final datasets of carve-out misdemeanor cases between January 1, 2015 and December 31, 2025, including code and documentation implementing the monitor team's logic determining categorizing a case as a carve-out and any associated accuracy, validation, or quality analyses

7. Raw and final datasets of pretrial detentions and releases for misdemeanor cases between January 1, 2015 and December 31, 2025, as well as associated code and documentation

8. Raw and final datasets of bond decisions (e.g., whether a person was released on a bond, type and amount of bond approved, bond amount posted) for misdemeanor cases between January 1, 2015 and December 31, 2025, as well as associated code and documentation

9. Raw and final datasets of bond forfeitures and revocations ("bond failures"), as well as associated code and documentation

10. Any accuracy, validation, or quality analyses or evidence supporting the report's claim that "bond-failure data may be a poor proxy for assessing non-appearance rates"

11. Raw and final datasets of magistration hearings, including data on defendant indigency status, bond type requests, and bond outcomes, as well as associated code and documentation

12. Raw and final datasets of misdemeanor case dispositions (including time to disposition) from January 1, 2015 and December 31, 2025, as well as associated code and documentation

13. Raw and final datasets of repeat offenses (case-level and person-level) from January 1, 2015 and December 31, 2025, as well as associated code and documentation

14. Raw and final datasets used in the domestic violence analysis, including associated code and documentation

15. All code and output files for the tables and figures in the Report's Section III, Data Analysis.

16. Raw and final datasets used in the cost study for misdemeanor cases, as well as:

   a) Inclusion and exclusion criteria of cost categories used in the cost analysis
   b) Dates and validation checks for all actual cost data
   c) Dates and validation checks for all estimated cost data
   d) Dates and dollar amounts for secured bonds
   e) Documentation regarding the unavailability of prosecution cost data
   f) Early presentment review data
   g) Final regression models
   h) Multivariate regression diagnostics, with associated code and detailed output
   i) Model estimates with covid controls
   j) Associated code and documentation for data manipulation and regression analyses
   k) Overall cost increases and cost reductions
   l) Raw and final datasets used in the regression analysis of rearrests, as well as:
   m) Inclusion and exclusion criteria of arrests used in the analysis
   n) Final regression models
   o) Multivariate regression diagnostics, with associated code and detailed output
   p) Model estimates with covid controls
   q) Associated code and documentation for data manipulation and regression analyses

17. Raw and final datasets of pre-trial risk assessments for misdemeanor defendants conducted between January 1, 2015 and December 31, 2025, including all associated code and documentation

18. Raw and final datasets, code, and output files pertaining to all tables and figures in the Report's Section 1. "Factors Contributing to Cost Reductions Under the Consent Decree"

19. Data analysis showing that defendants released on affordable or unsecured bonds are engaging in ways to "contest charges" beyond court non-appearance

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **MARANDA LYNN ODONNELL, ET AL.** | |
| *Plaintiffs* | |
| **vs.** | **CIVIL ACTION NO. 4:16-CV-01414** |
| **HARRIS COUNTY, TEXAS, ET AL.** | |
| *Defendants.* | |

## DEFENDANT HARRIS COUNTY'S JOINDER IN PLAINTIFFS' RESPONSE TO THE FOUR JUDGES' MOTION TO EXPEDITE AND MOTION TO STAY ENFORCEMENT OF THE CONSENT DECREE

Respectfully submitted,

/s/ Jonathan Fombonne
**JONATHAN FOMBONNE**
Harris County Attorney
Texas Bar No. 24102702
Jonathan.Fombonne@HarrisCountyTx.gov

**SETH HOPKINS**
Special Assistant County Attorney
Texas Bar No. 24032435
Seth.Hopkins@HarrisCountyTx.gov

**RACHEL FRASER**
Assistant County Attorney
Harris County Attorney's Office
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5134

ATTORNEYS FOR HARRIS COUNTY

i

TO THE HONORABLE JUDGE LEE ROSENTHAL:

Defendant Harris County joins and adopts Plaintiffs' Response and Opposition to the Four Judges' Motion to Expedite and Motion to Stay Enforcement of the Consent Decree. The Motion to Expedite and Motion to Stay Enforcement of the Consent Decree should be denied for the reasons in Plaintiffs' Response.

Respectfully submitted,

/s/ Jonathan Fombonne
**JONATHAN FOMBONNE**
Harris County Attorney
Texas Bar No. 24102702
Jonathan.Fombonne@HarrisCountyTx.gov

**SETH HOPKINS**
Special Assistant County Attorney
Texas Bar No. 24032435
Seth.Hopkins@HarrisCountyTx.gov

**RACHEL FRASER**
Assistant County Attorney
Harris County Attorney's Office
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5134

ATTORNEYS FOR HARRIS COUNTY

i

## CERTIFICATE OF SERVICE

I certify that on the 7th day of May, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system.


/s/ Jonathan Fombonne

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:16-cv-01414 (Consolidated Class Action) |
| v. | § § | |
| HARRIS COUNTY, TEXAS, *et. al.*, | § § | |
| Defendants. | § § § | |

### THE TWELVE JUDGES' RESPONSE IN OPPOSITION TO THE FOUR JUDGES' MOTION TO EXPEDITE AND MOTION TO STAY ENFORCEMENT OF THE CONSENT DECREE

The Twelve Judges oppose the Four Judges' Motion to Expedite and Motion to Stay Enforcement of the Consent Decree for the reasons stated in Plaintiffs' Response.

The Twelve Judges confirm that they will abide by the Consent Decree until a final order of this Court mandates otherwise.

The stay the Four Judges seek, exempting them from complying with the Consent Decree, will create an unequal system of justice in which misdemeanor defendants may be subjected to wealth-based pretrial detention if they are assigned to one of the Four Judges' courts, but not if they draw one of the Twelve Judges.

Further, staying "enforcement" of the Consent Decree before a final order of this Court exposes the Twelve Judges to charges – including by the Attorney General – that they are willfully refusing to apply State law and are not compelled to follow the Consent Decree under the Supremacy Clause of the Constitution of the United States.

## CONCLUSION

For the foregoing reasons, the Court should deny the Four Judges' motion.

Respectfully submitted,

G. Allan Van Fleet, P.C.
Texas Bar No. 20494700
6218 Elm Heights LN, Suite 201
Houston, TX 77081-2409
(713) 826-1954
allanvanfleet@gmail.com
Attorney for the Twelve Judges

Dated: May 8, 2026

## CERTIFICATE OF SERVICE

I certify that on May 8, 2026, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

G. Allan Van Fleet

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, ET AL. | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 4:16-cv-01414 |
| | § | |
| HARRIS COUNTY, TEXAS, ET AL. | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

---

**SHERIFF ED GONZALEZ'S
JOINDER IN PLAINTIFFS' RESPONSE
TO FOUR JUDGES' MOTION TO EXPEDITE**

---

Sheriff Ed Gonzalez also believes that the Court's ultimate ruling on whether

the Consent Decree in this case should be vacated is best made on a full record after

full development of the facts. For that reason, the Sheriff joins in the Plaintiffs'

response to the Four Judges' Motion to Expedite and Motion to Stay Enforcement

of the Consent Decree.

Respectfully submitted,

**FOGLER, O'NEIL & GRAY, LLP**

By: */s/ Murray Fogler*
    Murray Fogler
    State Bar No. 07207300
    mfogler@foglerlaw.com
    2 Houston Center
    909 Fannin Street, Suite 1640
    Houston, TX 77010
    T: (713) 481-1010 | F: (713) 574.3224

**ATTORNEY FOR SHERIFF ED GONZALEZ**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via email on

May 11, 2026.

*/s/ Murray Fogler*
Murray Fogler

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et. al.*, | § | |
| on behalf of themselves and all others | § | |
| similarly situated, Plaintiffs, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:16-cv-1414** |
| | § | |
| HARRIS COUNTY, TEXAS, *et. al.*, | § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF FOUR JUDGES' MOTION FOR EXPEDITED RULING
ON *YOUNGER* ABSTENTION AND TO STAY ENFORCEMENT OF THE
CONSENT DECREE FOR ACTS TAKEN UNDER STATE LAW**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia

(the "Judges" or "Four Judges") file this brief Reply in support of their Motion asking the

Court to hear and consider their *Younger* abstention argument on an expedited basis.

> **I.** **Expediting a decision on *Younger* is appropriate.**

Plaintiffs contend extensive discovery and fact analysis are required to determine

the Judges' *Younger* argument, citing *Rufo*'s general two-step test under Rule 60(b)(5), as

well as *LULAC I* and *II*.

In *LULAC I*, a voting rights case, there were several facts at issue in the specific

Rule 60(b) argument, because LULAC argued "cumulative voting had failed to achieve the

decree's purpose" of alleviating violations of the Voting Rights Act (VRA), and discussed

facts in support, including allegations that only one minority candidate ran and won three

of four elections since the decree was passed. *League of Un. Latin Am. Citizens, Dist. 19 v.*

1

*City of Boerne*, 659 F.3d 421, 438-39 (5th Cir. 2011). The Fifth Circuit pointed out that

several facts were missing, such as whether minority voters supported the candidate in the

election she lost, or whether voter dilution caused the loss or caused other minority-

preferred candidates from being elected. *Id*. at 439. *LULAC II* contained the same dearth

of evidence in that VRA case. *See League of Un. Latin Am. Citizens, Dist. 19 v. City of

Boerne*, 675 F.3d 433, 438 (5th Cir. 2012).

      *Rufo* considered a post-decree upsurge in jail population—a changed factual

condition. *Rufo v. Inmates of Suffolk County Jail*, 502 US 367, 385-87. The Court

specifically recognized that:

> A consent decree must of course be modified if, as it later turns out, one or
> more of the obligations placed upon the parties has become impermissible
> under federal law. But modification of a consent decree may be warranted
> when the statutory or decisional law has changed to make legal what the
> decree was designed to prevent.

*Id*. at 388. Plaintiffs correctly state that *Rufo* explained *clarifications* of the law, in and of

themselves, will not always reopen litigation of the merits. They omit, however, the context

of that statement—the Court's statement concerned situations when parties or district

courts misunderstand the law. *Id*. at 389-90 (citing *Pasadena City Bd. of Ed. v. Spangler*,

427 U.S. 424, 437-38 (1976) which held modification should be ordered when the decree

"was contrary to intervening decisional law"). In *Pasadena City Board of Education*, the

Court explained that,

> [e]ven had the District Court's decree been unambiguous and clearly
> understood by the parties to mean what that court declared it to mean in 1974,
> the "no majority of any minority" provision would, as we have indicated
> previously, be contrary to the intervening decision of this Court in *Swann,
> supra*. The ambiguity of the provision itself, and the fact that the parties to

2

the decree interpreted it in a manner contrary to the interpretation ultimately placed upon it by the District Court, is an added factor in support of modification. The two factors taken together make a sufficiently compelling case so that such modification should have been ordered by the District Court.

*Pasadena City Bd. of Ed.*, 427 U.S. at 437-38.

*Daves II* was no mere clarification, it was an about-face from the Fifth Circuit. That case alone warrants the Court's consideration of the Judges' *Younger* argument without onerous discovery and evidentiary proceedings.

## II. An early *Younger* decision will obviate the unnecessary, extensive discovery Plaintiffs requested, and a partial stay is appropriate considering the Fifth Circuit's mandate in *Daves II*.

Plaintiffs requested discovery on the Rule 60(b) motions, and now attempt to fault the Judges for serving reciprocal discovery requests to avoid a one-sided evidentiary proceeding. As for discovery from the Monitor, despite serving the County with requests for the data it provided to the Monitor for his Ninth Report (which the Monitor downloaded from the County this past February), the Four Judges were informed the County does not know what the Monitor downloaded, and were directed to the Monitor to obtain that information. The data still has not been produced, despite contact with the Monitor's counsel.

Plaintiffs also argue the Judges 'sat' on their hands for four years. This is not true.[1]

The Judges took office on January 1, 2023. Until that time, all of the Harris County Criminal Court at Law (HCCCL) Judges, who were Democrats, were represented by a

---

[1] The Judges addressed waiver in their motion to vacate, including the procedural history leading up to their predecessors' joinder in settlement. *Younger* was off the table at that point, under then-existing but since-overturned Fifth Circuit case law.

3

single attorney. Faced with the conundrum of now having clients with different positions, counsel for the 12 HCCCL judges withdrew his representation from the Four (Republican) judges in April 2023. The Four Judges went unrepresented, despite their efforts to obtain counsel, while the remaining 12 HCCCL Judges had no gap in representation. It was not until after the Attorney General intervened, in late 2025, that Harris County authorized the Four Judges' retention of counsel.[2]

Nor did the Judges sit idly by in the interim—they raised the issue repeatedly, even to the Monitor, without any result. On May 30, 2025. Their efforts, and the wall of opposition from all other parties and the Monitor, belie Plaintiffs' attempt to characterize any modification or partial stay as 'catastrophic.' Even with a partial stay, the 12 Democrat HCCCL Judges still hold a majority, and under their own procedures, must vote to alter local rules. They may vote to amend Rule 9 to comply with Texas law, but they may also do so in a way that continues many of the procedures that have been in place under the Consent Decree that do not violate Texas law.

A partial stay is consistent with the en banc Fifth Circuit's mandate in *Daves II*, that "revis[ing] by federal decree the Texas state court procedures for felony and misdemeanor pretrial bail, should never have been brought in federal court." *Daves v. Dall. Cty.*, 64 F.4th 616, 620 (5th Cir. 2023) (en banc) (*Daves II*). There is therefore a likelihood of success,

---

[2] The County did not execute counsel's engagement agreement until January 2026. Harris County joined in Plaintiffs' opposition to an expedited consideration of *Younger*, where Plaintiffs criticize the Judges for not arguing *Daves II* earlier, when it was the County that delayed the Judges' retention of counsel to represent them in this case.

and Plaintiffs' contention that a stay would create or perpetuate a constitutional violation refuses to acknowledge changes to Texas law.

The requested partial stay is to ensure elected judicial officers are not threatened with contempt if they conduct an individualized review of a defendant's circumstances, including whether a GOB is appropriate given a defendant's individualized circumstances. The harm here is twofold: it is not only the immediate threat of criminal contempt proceedings against elected judicial officers as a means of chilling judicial review and discretion, but also the harm from requiring the release of arrestees without any individualized review of the circumstances. Public policy on this point—that an individualized review is required—is codified as law by the Texas Legislature, and creates a situation the Court can ignore only by abusing its discretion. *See Local Number 93, International Assoc. of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 526-27 (1986); *see also Railway Employees v. Wright*, 364 U.S. 642, 650-51 (1961) (trial court abused its discretion by refusing to modify consent decree to comply with change in law after decree was entered, stating "parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction"); *System Federation No. 91 Ry. Emp. Dep't v. Wright*, 364 U.S. 642, 648-650 (1961) (in modifying a consent decree after a change in the law, "discretion is never without limits and these limits are often far clearer to the reviewing court when the new circumstances involve a change in law rather than facts").

## CONCLUSION AND PRAYER

The Judges ask the Court to set an expedited response and reply deadline to this Motion, and grant this Motion by ordering an expedited submission date and briefing schedule for the Judges' *Younger* abstention argument (Dkt. 793 at 20-22), and that the Court partially stay the Consent Decree to allow judges to conduct individualized reviews of the cases pending before them without threat of criminal contempt charges.. The Judges ask for all other relief to which they are entitled, at equity or law.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:  /s/ *Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 456-0170 (Fax)

**ATTORNEYS FOR DEFENDANTS HON. PAULA GOODHART, HON. JESSICA PADILLA, HON. LESLIE JOHNSON, AND HON. LINDA GARCIA**

6

## CERTIFICATE OF SERVICE

I certify that on the 14th day of May, 2026, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

<div align="right">/s/ Joseph R. Russo, Jr.</div>

United States District Court
Southern District of Texas

**ENTERED**

May 26, 2026
Nathan Ochsner, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARANDA LYNN ODONNELL, *et al.*, on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § § | |
| VS. | § § | CIVIL ACTION NO. H-16-1414 |
| HARRIS COUNTY, TEXAS, *et al.*, | § § § | |
| Defendants. | § | |

### AMENDED SCHEDULING AND DOCKET CONTROL ORDER
### ON THE MOTIONS TO VACATE

The disposition of the recent limited intervention and resulting motions will be controlled by the following schedule. In addition, status conferences are set for July 16, 2026, at 10:00 a.m. CT and September 14, 2026, at 10:00 a.m. CT via Zoom.

1. August 10, 2026 **EXPERT DESIGNATIONS AND REPORTS**

2. August 24, 2026 **CLOSE OF FACT DISCOVERY**

3. August 31, 2026 **CLOSE OF EXPERT DISCOVERY**

4. October 1, 2026 **AMENDED MOTIONS TO VACATE**

5. October 30, 2026 **RESPONSES**

6. November 6, 2026 **REPLIES**

7. November 13, 2026 **PRETRIAL DISCLOSURES**

8. November 16–20, 2026 **HEARING**

Any party wishing to make any discovery motions should arrange for a pre-motion conference with the court before the preparation and submission of any motion papers. That includes a motion to compel, to quash, or for protection. Email Ms. Glenda Hassan at Glenda_Hassan@txs.uscourts.gov or fax her at 713-250-5213 to arrange for a pre-motion conference. Notify your adversary of the date and time for the conference.

The Consent Decree remains in effect during the discovery into, and resolution of, the motions to vacate.

SIGNED on May 26, 2026, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

MARANDA LYNN ODONNELL, *et al*.,  
on behalf of themselves and all others  
similarly situated,

§  
§  
§  
§  
§  
§  
§  
§  
§  
§  
§

        Plaintiffs,

VS.

HARRIS COUNTY, TEXAS, *et al.*,

        Defendants.

CIVIL ACTION NO. H-16-1414

**ORDER**

This order addresses two pending issues: (1) the Attorney General's objections to the Monitor's ninth report, (Docket Entry No. 801); and (2) the Four Judges' motion to expedite consideration of the *Younger* issue and to stay the consent decree pending resolution of the motion to vacate based on *Younger*, (Docket Entry No. 803). After careful consideration of the motions, the responses, the replies, the record, and the applicable law, the court overrules the Attorney General's objections and denies the Four Judges' motion.

*First*, the Attorney General is not the appropriate party to object to the court-appointed Monitor's reports. The court granted the Attorney General's motion to intervene "to move to vacate or amend the consent decree based on Senate Bill 6 and Senate Bill 9." *ODonnell v. Harris County*, 808 F. Supp. 3d 738, 764 (S.D. Tex. 2025). The Attorney General's free-standing objections to the Monitor's reports do not fall within the limited purpose for which this court granted his motion to intervene. The Attorney General may make appropriate objections to the Monitor's reports under the relevant Federal Rules and substantive law if and when they are used in the parties' presentations relating to the motions to vacate. *See, e.g.*, FED. R. EVID. 702, 703. The Attorney General's objections, (Docket Entry No. 801), are overruled.

*Second*, the Four Judges' motion to expedite this court's *Younger* ruling rests on a flawed assumption. The Four Judges argue that *Younger* abstention is an easy question of law because *Daves II* is directly controlling. (Docket Entry No. 803 at 2). But *Daves II* is not directly controlling. It addressed a *Younger* argument presented and resolved before final judgment. *Daves v. Dallas County (Daves II)*, 64 F.4th 616, 620–21 (5th Cir. 2023) (en banc). By contrast, the Four Judges move to vacate a final judgment. That is important for two reasons. First, it requires the Four Judges to show under Rule 60(b) that the equities favor vacating or amending the consent decree. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383, 391 (1992). Rule 60(b)'s equitable analysis requires an appropriate factual record. Second, *Younger* abstention can be waived, *see ODonnell*, 808 F. Supp. 3d at 758, and "[b]y agreeing to the consent decree, the defendants waived *Younger* abstention," *id.* at 761. *Daves II* did not address how courts should assess attempts under *Younger* to vacate a consent decree to which the moving parties previously agreed. Because *Younger* abstention is itself an equitable "carveout" from federal-court jurisdiction, *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1084–85 (5th Cir. 2023), this court must decide the Four Judges' arguments and the responses in light of the equities presented in this case, which requires an adequate record. In consultation with the parties, the court has entered an amended scheduling order that will allow the parties to present an adequate record to the court. The court denies the Four Judges' motion to expedite its ruling on *Younger* abstention.

*Third*, the court denies the Four Judges' request to stay the consent decree pending the resolution of the motion to vacate. The Four Judges do not address the relevant stay factors. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). On the merits, the Four Judges argue only that state laws are generally presumed constitutional. (*See* Docket Entry No. 803 at 4–5). The Four Judges present this principle, correct as a general statement, untethered from the facts of this case. The court cannot adequately consider, much less grant, the Four Judges' motion because they did not

2

explain how the broad legal principle applies to a consent decree that was entered years before the state statute was enacted to remedy federal constitutional violations. *See Williams v. Lesiak*, 822 F.2d 1223, 1227–28 (1st Cir. 1987) (requiring statute-and-decree specific assessments of motions to vacate or amend a consent decree based on "a state statute adopted long after the court order").

Nor can the court credit the Four Judges' argument that the equities favor a stay because the other parties have threatened to move to enforce the consent decree. (*See* Docket Entry No. 803 at 6–8). A party's threat to move for contempt is not a motion for contempt or a finding of contempt from this court. The Four Judges' concern is at least premature. In addition, the parties agreed to the consent decree, and the equities favor enforcing the parties' agreement until the Four Judges establish a basis for relief under Rule 60(b). *Cf. Trevino v. Cooley Constructors, Inc.*, No. 5:13-CV-00924-DAE, 2014 WL 2611823, at *6 (W.D. Tex. June 9, 2014) ("In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain." (cleaned up)); *Worldwide Detective Agency, Inc. v. Cannon Cochran Mgmt. Servs., Inc.*, 622 F. App'x 383, 386 (5th Cir. 2015) (per curiam) ("When considering [Rule 60(b)] motions, courts are to weigh the equities of relief against 'the great desirability of preserving the principle of the finality of judgments.'" (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981))).

For these reasons, the court overrules the Attorney General's objections, (Docket Entry No. 801), and denies the Four Judges' motion, (Docket Entry No. 803).

SIGNED on May 26, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

3

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

MARANDA LYNN ODONNELL, et     )
al., on behalf of themselves  )
and all others similarly      )   Civil Case No.
situated,                     )   4:16-cv-01414
                              )
              Plaintiffs,     )
                              )
vs.                           )
                              )
HARRIS COUNTY, TEXAS, et al., )   Wednesday, November 12, 2025
                              )
              Defendants.     )
_____


TRANSCRIPT OF ZOOM SCHEDULING CONFERENCE
HONORABLE LEE H. ROSENTHAL PRESIDING
UNITED STATES DISTRICT COURT


Official Court Reporter:     Donna Prather
                             515 Rusk St., #8004
                             Houston, TX  77002

Proceedings taken by Certified Stenographic Reporter;
transcribed using Computer-Assisted Translation

A P P E A R A N C E S

For the Plaintiffs:                    Neal S Manne
                                       Susman Godfrey LLP
                                       1000 Louisiana St., Suite 5100
                                       Houston, TX 77002-5096.

                                       Abbey Elizabeth McNaughton
                                       Susman Godfrey, LLP
                                       1000 Louisiana St., Suite 5100
                                       Houston, TX 77002.

                                       Elizabeth Anne Rossi
                                       Civil Rights Corps
                                       1601 Connecticut Ave. NW
                                       Suite 800
                                       Washington, DC 20009

                                       Jeremy D. Cutting
                                       Civil Rights Corps
                                       1601 Connecticut Ave. NW,
                                       Suite 800
                                       Washington, DC 20009

                                       Morgan McCollum
                                       Susman Godfrey LLP
                                       One Manhattan West
                                       Ste 50th Floor
                                       New York, NY 10001

                                       Travis Walker Fife
                                       Texas Civil Rights Project
                                       PO Box 1108
                                       Houston, TX 77251

For Defendant Harris County, Texas:
                                       Jonathan Gabriel Chaim Fombonne
                                       Harris County Attorney's Office
                                       1019 Congress, 15th Floor
                                       Houston, TX 77002

                                       Seth Barrett Hopkins
                                       Harris County Attorney's Office
                                       1019 Congress, 15th Floor
                                       Houston, TX 77002

A P P E A R A N C E S cont.'d

For Defendant Paula Goodhart:

Joseph R Russo, Jr.
Greer Herz Adams LLP
One Moody Plaza, 18th Floor
Galveston, TX 77550-7998

Angela Olalde
Greer Herz Adams LLP
One Moody Plaza, 18th Floor
Galveston, TX 77550

For Defendant Ed (Sheriff) Gonzalez:

Murray J Fogler
Fogler, O'Neil & Gray LLP
909 Fannin St., Suite 1640
Houston, TX 77010

For Defendant Judges Hon. Alex Salgado, Hon. Shannon Baldwin, Hon. David Fleischer, Hon. Kelley Andrews, Hon. Andrew Wright, Hon. Erika Ramirez, Hon. Toria J. Finch, Juanita Jackson, Hon. Sedrick T. Walker, II, Hon. Cassandra Y. Holleman, Hon. Raul Rodriguez, Hon. Tonya Jones, Ashley Juice:

George Allan Van Fleet
G. Allan Van Fleet, P.C.
6218 Elm Heights Ln, Suite 201
Houston, TX 77081-2409

Intervenor Defendant Ken Paxton, in his official capacity as the Attorney General of Texas:

Joseph Emeka Nwaokoro
Office of the Attorney General
General Litigation Division
P.O. Box 12548 (MC - 019)
78711-2548
Austin, TX 78701

(Proceedings commenced at 2:00 PM.)

THE COURT:  All right.  So the dispute, as I understand it, is whether the scheduling order for the determination of the motion to vacate the ODonnell consent decree should include a discovery period or not.  So, I'm happy to hear argument on that.

For the Attorney General's office, you're the one moving to vacate.  Why do you think that discovery is not needed since you're raising issues about the way in which the consent decree has been implemented before and after the legislation?

MR. NWAOKORO:  Thank you, Your Honor.  As a starting point, one of the arguments he raises is mootness, and that issue has been resolved by the Fifth Circuit in *Daves*.  In the case that you cited in your opinion, the *Rufo* case, the same issue came up, and I think --

THE COURT:  The consent decree remains in place, though.

MR. NWAOKORO:  I understood.  I understood.  The point here is that the Fifth Circuit, which this ruling is binding on this Court, determined that the passage of S.B. 6 rendered the issues here moot.  And so that is binding.  That is one of the bases for us to request vacatur in this case. And that mootness analysis is binding and doesn't really need for the discovery.

The question here is:  As a matter of law, is this moot?  The Fifth Circuit has stated in the analysis that the Fifth Circuit did in *Daves* there is no discovery -- there's no need for that, you know, to guide your decision.  So we think that it's a matter of law, the mootness argument, which is one of the prongs we have articulated in our motion.

Of course, we will file an amended motion, you know, shortly, renders the discovery really irrelevant.

And the second prong of that is this:  If additional principle when you enter this consent decree was it should not conflict with state law.  Now, that is a textual, pure textual comparison.  We don't think we need an expansive, drawn-out discovery process to determine whether or not there's a conflict between S.B. 6 or S.B. 9 with the consent decree. Again, that is a matter of law.

And whether or not the consent decree is also consistent as it is with, you know, the parties' intent at the time it was entered into is a matter of contract construction. And I think we've seen a number of cases, including the *Chisom v. Louisiana* case, 116 F.4th 309.  It's a 2024-case.  Again, you're looking at a contract.  And under the rubrics under the standards of contract analysis, you analyze it within the four corners of the contract.  So to the extent that this is a contract application, this is a contract analysis.  The sort of discovery that they are hoping to conduct in this case is

irrelevant.  I don't see how that is helpful in any way in resolving any of the issues that we've raised.

So that is the basis, Your Honor, for other 60(b)(5) or 60(b)(6).  We don't see the need for any of this discovery.  We don't see how that bounces the ball one way, Your Honor.  We think this -- only legal issues that can be resolved as a matter of law.

THE COURT:  Response, please.

MR. CUTTING:  Yes, Your Honor.  This is Cody Cutting for the plaintiffs.  Apologies for logging on late.

There are a few things going on here.  I think the question of mootness if it were raised before the entry of a consent decree even that would be fact-specific.  It would require asking what -- I mean, they them self reference the record in that case.  It requires asking what is happening?  How does this legislation affect that?  What could the relevant actors expect to do if the consent decree were not there?  That kind of fact-specific investigation is extremely heightened after the consent decree is in place and when you're actually moving here to vacate it under 60(b)(5).

And I noted Your Honor cited the *Rufo* case several times in your opinion; so I know you're aware of it.  That case really lays out the foundation, the standard for what a Court should consider when deciding whether a consent decree should be modified.  And it lays out an extremely

fact-specific set of considerations just looking at whether or not there's a significant change in facts or circumstance or law and, even then, whether the equities support a modification, so one part of that being whether the public interest supports that modification.

It all points towards a fact-specific, you know, fact-intensive record. I believe that's what the Court anticipated in its order when it refers to that kind of record. And we intend to give the Court the record it needs to make a decision that is as well-founded as possible.

And I think given the amount of time and energy and evidence that went into the initial preliminary injunction decision and my understanding is one of the reasons for such a comprehensive record at that time was because of a real understanding that moving these pieces of machinery within the third largest county in the country, even small motions can have huge ripple effects, can really affect a lot of different things.

And certainly this is, you know, more than just a small ripple when you're talking about taking away the consent decree. So there's *Rufo*; there are a number of cases that are kind of expanding on that including in the Fifth Circuit, but they all point towards the need for the Court to have a record, and Court of Appeals regularly send back cases where modifications are granted without a record.

*Donna Prather, RMR, CRR, CCP, CBC*
*Official Court Reporter for the United States District Court – Southern District of Texas*
*(713) 250-5221*

We'd be happy to provide that case law to the Court.

THE COURT:  The -- as I understand the Attorney General's argument, it's essentially that the whole thing is moot and, therefore, no fact discovery should be required. And, in fact, we shouldn't even be here.  That kind of ignores the fact that there is a consent decree that has been in place for a number of years now working apparently very well both before and after the legislation.

But I think I'd like to hear some specific comments on the argument that this is simply, essentially, not an issue that is properly before the Court at all.  I think you've made your points.  On behalf of the Attorney General, I want to hear a response.

MR. CUTTING:  Just to clarify, Your Honor, make sure I understand the Court's question, you're asking to respond to the contention that notice can be appropriate given the mootness argument the AG is dispensing.

THE COURT:  Exactly.  And I think what you're really saying is that you need the discovery in order to show that this is not moot.

MR. CUTTING:  That is certainly -- that is certainly one of the things we are saying.  But in addition, my colleague in the AG's Office mentioned this is being brought under Rule 60(b)(5).  And it's just --

THE COURT:  Right.

MR. CUTTING:  -- Rule 60(b)(5) requires facts. That's just -- that is the way -- it is -- they're moving to have this Court find that the continued enforcement of the consent decree is no longer equitable.  And that is not a decision that can be made as a matter of law, it is only a decision that can be made in light of the equities.

And while one equitable circumstance that the Court may put into the calculus is the fact that the Texas state legislature has passed two laws that may or may not conflict with the content of the consent decree, but surely the broader set of equitable facts that the Court should consider goes far beyond that, and it is just one ingredient that you're mixing in there.

MR. NWAOKORO:  Your Honor, I would like to clarify one point.  I think in listening to counsel, he's right on that, you know, in the sense that the change in law, you know, is clearly relevant in some sort of analysis.

*Rufo* talks about significant changing facts or changing law.  We are focusing on the changing law of *Ruppert*. And that's not to be conflated with other cases in which you have significant change of facts, and that's a factual analysis.  Our point has been there has been a change in law. So if you look at 60(b)(5) and 60(b)(6), I don't want the argument here to be limited as counsel tried to do with 60(b)(5).  So we're making point here 60(b)(5) and 60(b)(6).

If there's a change in law, then that analysis by itself, it becomes really a textual one. You know, so of course it implicates whether or not there's an equitable issue. But it's still not accurate. It's as well as breached. If there has been a change in law and the Court is tasked with a legal analysis, then there is no point in going through a factual determination.

In some cases -- go ahead.

THE COURT: Go ahead.

MR. NWAOKORO: It is correct, in certain cases you have a factual determination on the 60(b)(5) argument. But you also have certain cases in which if it's a pure legal issue, there's no need for any of that and the courts also will make a determination based on the law.

So we do not really think -- again, he's trying to be a bit more expansive in this -- in the *Rufo* test. I think we need to focus on the issues we presented before the Court. So we're looking at we have a significant change in law -- all right? -- you can take a pick. You have S.B. 6. You have S.B. 9. And you also have the Fifth Circuit, whose decision is binding on this Court. You know, we actually thought they were going to disregard it because somehow we don't like that ruling. But you are bound by that. And that decision states that the mootness issue because of the passage of S.B. 6, and that's even before S.B. 9 was passed, they render the issues

moot.

So what is discovery going to -- so how is that going to help the Court in its analysis on that witness issue in light of this precedent from the Fifth Circuit?

THE COURT:  Mr. Cutting, do you want to respond to that?

MR. CUTTING:  Yes, Your Honor, a few responses.  So, for invoking Rule 60(b)(6) as well, which is reserved for exceptional circumstances, does not make it any less fact-specific.  There is a category that the Fifth Circuit set out in a case called *Seven Elves* that includes equitable considerations under that as well.  And 60(b)(6) is really reserved for, as it suggests, exceptional cases not just a subsequent change in the law.

But I want to be clear about the difference in a change in law and a change in fact here.  So, typically when cases are referring to a change in law as justification to consider modification of a consent decree, they are referring to a change in the substantive decision of law.  And what they typically refer to is if a consent decree was there to prohibit unlawful conduct that it had subsequently -- the Supreme Court has said that's completely lawful, then, yes, perhaps there is, you know, less of a need for evidence in that case.

But those are -- those are a sixth universe of cases

that are very different from this.  And mootness is not one of the things that says, oh, actually, all of these findings that these various practices and procedures taking place in Harris County were violating the federal constitution that those are now lawful.  Nothing like that has happened.  And so, really, those cases that maybe do not take as hard a look at the evidence are completely irrelevant here.

And I guess the last point I just briefly want to make is that what we have here tasked with respect to mootness is this bizarre world where mootness has kind of been turned on its head.  And we have the AG coming in here to say -- to claim that state law has changed, that state law requires -- conflicts with the consent decree and requires things that the consent decree prohibits and, in other words, requires constitutional violations to take place and yet is asking the Court to decide as a matter of law that not only can it not do anything, but it needs to vacate the entire consent decree.

And so these types of things always require an equitable analysis.  That is what Rule 60 points to.  It's what the courts have repeatedly said.  There's a great case -- it's of course not binding, but a great case out of the First Circuit called *Williams v. Lesiak* that walks through -- and it's how a Court might consider a change in state law subsequent to a federal court finding that the federal constitution was violated and entered a consent decree on that

basis.

And it basically treats it like a change in facts not a change in law.  Because this isn't about a change in the underlying decision of law.  This is just maybe the equities are different now.  But it does not look solely at the law. It looks at a whole mess of factors.  And, in fact, it remands to the district court in that case because it did not have an adequate record to make the findings it needed to make.

So it really underlines and highlights the need for an ample record here.

THE COURT:  So I think as I'm listening to both sides' very good arguments, I think that we are really, at the end of the day, called on to analyze whether the practices under the consent decree and the practices under the state statutory changes are going to call for a order vacating the consent decree.  That's a factual inquiry.  It's a factual query into how the consent decree is being implemented and how the state law affects that implementation.

And I think that that's what the discovery that, as I understand the movants -- the non-movant's letter to request is designed around, to answer those questions.

And when we -- as I listen to the discussions about the equities and the effects, it does call to mind the comment in the monitor's reports about the thousands of lives affected by the consent decree in the past and, if it remains in place,

going forward.  So I think discovery is called for in order to to do an adequate job of determining whether under the existing law, the combination of the record in this case, Fifth Circuit decisions, and the change in the state law, whether the impact of all of those things calls for a vacation, vacatur, of the consent decree that has been in place now for what, eight years?  So it's a fairly radical step for a Court to tell parties that have entered into what you referred to as a contract to tell the parties that that contract is going to be vacated.

Courts generally have a greater respect for contracts, particularly when they have such important public impacts.  So, yes, I do think we need that discovery.

The non-moving parties have requested six months after the parties -- after the motions to vacate are filed and so that we have a clear picture of the precise grounds that are being sought.  And fact discovery of ten months, I think the proposal was, for a certain number of requests for production, interrogatories, requests for admissions, and a certain number of depositions.  And then after fact discovery closes to have briefing on the record as it exists at that time and responses based on the information that that record provides.  And then a full oral hearing with argument.

Does that make sense?  I know it's not what the Attorney General wanted, but that's not really my question.

MR. NWAOKORO:  For clarity, Your Honor, I think they asked for six months' discovery.

THE COURT:  Yes.

MR. NWAOKORO:  I think I heard you say ten months.

THE COURT:  No, I said six months.

MR. NWAOKORO:  Okay.  Thank you.

THE COURT:  Six months after the motions to vacate are filed.

MR. RUSSO:  Your Honor, if I might be heard briefly.

THE COURT:  Yes, sir.

MR. RUSSO:  We represent the court judges.  We recently substituted in the criminal law judges.  And just so the Court is aware, it's our intention to file a motion to vacate as well.  We're researching those issues.

THE COURT:  Why don't you file a joint motion --

MR. RUSSO:  Okay.

THE COURT:  -- with the Attorney General.

MR. RUSSO:  With the AG's Office to the extent we can do that, we will work with them, make those efforts to do that.  But I just wanted to make sure the Court was aware that --

THE COURT:  What else?

MR. RUSSO:  -- those judges to file their own motion --

THE COURT:  That's fine.

MR. RUSSO:  We're hoping that discovery would not be necessary as well, but it is what it is, so.

THE COURT:  I am providing in the scheduling order that I intend to vacate -- to enter a deadline for both the Attorney General and the judges to file motion to vacate and then to supplement that motion after the discovery occurs.

I hope that the judges and the Attorney General can file a joint motion.  If the judges want to make some separate points, maybe a brief separate motion that is focused on those points so that I don't simply read the same stuff on behalf of two different parties who are essentially taking the same position.

MR. RUSSO:  Yes, Your Honor.  There's certainly some truth to that.  It's just, you know, our folks, the judges, are particularly in a tough spot having taken an oath to uphold the law and feeling like now they're violating it between a consent order and the state law.  So there are some distinctions, certainly between the AG's Office and our judges, so.

THE COURT:  And I'm not precluding you from raising them at all, I just want to streamline the presentations that are made.  To the extent they overlap, make them together.

MR. RUSSO:  Understood.

MR. CUTTING:  Your Honor, may I -- just a brief point based on --

THE COURT:  Sure.

MR. CUTTING:  -- Mr. Russo's comment.

It's kind of at the end of our letter, and it's from the plaintiff's one, but we did want to draw the Court's attention to -- well, we've received some reports of potential consent decree violations occurring, particularly with a notable uptick since S.B. 9 went into effect on September 1st. And to Mr. Russo's point, I think it could be beneficial to all of the judge defendants as well as the parties just to have it from one source and one kind of -- various sources that the consent decree does remain in effect in perpetuity unless, you know, it is modified or vacated and that it supersedes any real or perceived conflicts with any of these state laws.  So I just wanted to make sure that request was apparent in the letter as well.

THE COURT:  To the extent you're asking for a reminder to everyone that at this point the consent decree is in place, it is what the parties are to follow.  And if there is a request to modify or vacate it, that's going to be the subject of the motions, the discovery argument, the Court's ruling.  But until all of that process is completed, the consent decree is in effect.

MR. VAN FLEET:  Your Honor, on behalf of 12 judges, could I request that you include that language in the order you're going to produce after this hearing?

THE COURT:  If it is helpful.  I mean, I'm stating the obvious, I think.

MR. VAN FLEET:  It would be helpful to the judges, yes.

THE COURT:  All right.  I will do that.  If you want to propose language and run it by the AG's Office, that's fine too.  I'll give you time to do that.  If you can do that by Monday, that would be great.

MR. NWAOKORO:  Your Honor, since you mentioned this, I just have to state it for the record.  We don't really see a need for that.  I think the consent decree is there.  I'm not sure what the import of a reminder letter is going to do.

THE COURT:  It's not a reminder letter.  It's a statement in the order simply stating what should be obvious to everybody.  But I think Mr. Van Fleet is correct that it might be helpful to the judges who are -- who have a stake in this.

MR. RUSSO:  Your Honor, the four judges we are representing would oppose adding that kind of language into the order to the extent it's advisory in nature and is not properly before the Court.

THE COURT:  I don't think it's advisory.  I think it is an accurate observation on our current state of the record.

MR. RUSSO:  Understood.

THE COURT:  And, as noted, I don't think the parties

have -- well, enough said.

All right.  I will enter the scheduling order.

This will essentially call for a hearing in late August; so we would be looking at a decision sometime after that.

All right.  Anything further for today?

When is the next monitor report scheduled to issue, does anybody know off the top of their head?  I just don't remember.

MR. CUTTING:  It may be March.  I believe it's a yearly report now; so I believe it's early March.

THE COURT:  I think that will actually be helpful because that will make that issue in the middle of the fact discovery period.  And that may be useful information that will be part of the record to be taken into account.

All right.  Well, this has been very helpful.  I can't say that I welcome the chance to be -- to re-immerse in these issues, but I appreciate their importance.

Thank you-all very much.  Early wishes for a good Thanksgiving, everyone.

(Proceedings concluded at 2:26 PM.)

**<u>REPORTER'S CERTIFICATE</u>**

I, DONNA J. PRATHER, do hereby certify that the above and foregoing, consisting of the preceding 19 pages, constitutes a true and accurate transcript of my stenographic notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 11th day of December, 2025.

DONNA J. PRATHER, RMR, CRR, CCP, CBC
Federal Official Court Reporter

# EXHIBIT B

# G. Allan Van Fleet, P.C.

Attorney at Law

| 2228 Ship's Mechanic Row | | 6218 Elm Heights Lane |
| Suite 307 | (713) 826-1954 | Suite 201 |
| Galveston, Texas 77550 | allanvanfleet@gmail.com | Houston, Texas 77081 |

March 31, 2022

Brandon L. Garrett, JD, Monitor
Via email: bgarrett@law.duke.edu

Re:             Consent Decree, SB6, and General Order Bonds

Dear Brandon:

The parties to the               Consent Decree have discussed among themselves and with you and your team about how the Harris County Criminal Court at Law Judges may comply with the Consent Decree and also with Texas Code of Criminal Procedure Art. 17, as amended by SB6, parts of which become effective April 1, 2022.

In particular, to comply with SB6, they have conceived a Fast Track Bond to replace the current General Order Bond that is given to all misdemeanor arrestees who are not in the carve-out categories specified in Rule 9.4.1-9.4.6.

In your email to me today you pointed out that Paragraph 32 of the Consent Decree provides:

Any change to Local Rule 9 or any other post-arrest policies employed by the CCCL Judges that affect the pretrial detention or release of misdemeanor arrestees must be approved by the Monitor. As promptly as possible, but in any event no longer than 14 days, subject to Section 29, of receiving a request from the CCCL Judges to amend Local Rule 9 or other post-arrest policies of the CCCL Judges that affect the pretrial detention or release of misdemeanor arrestees, the Monitor must respond by approving the change, objecting to the change and stating reasons for the objection, requesting further information relating to the proposed change, and/or proposing an alternative change. The CCCL Judges and Monitor must work in good faith to reach agreement on the proposed change. If the CCCL Judges and Monitor agree on the change, they must notify Class Counsel and file a motion with the C[ourt] asking the Court to issue an amended Consent Decree reflecting the change.

The Judges do not propose to amend Rule 9; however, they are contemplating changes in "other post-arrest policies . . . that affect the pretrial detention of release of misdemeanor arrestees".

**The Judges agreed this afternoon to continue the current GOB procedures, until the matter is resolved by you or, if needed, the Court.**

Although not in Rule 9, the Judges subsequently implemented a procedure that provided all misdemeanor arrestees not in the carve-out categories a GOB signed in in advance by a Judge, without individual consideration by a judge or hearing officer.

That process arguably conflicts with portions of SB6 that require a judge or magistrate to consider an arrestee's Public Safety Report and the factors in Sec. 17.15 before signing a bail order.

You asked to see in writing the proposed Fast Track Bond procedures. Although the procedures are not completely fleshed out, and undoubtedly they would change with experience, they are basically as follow:

1) A hearing officer or judge (collectively, "magistrate") would focus on only non-carve-out cases for a period of time.
2) The magistrate would consider the PSR and the 17.15 factors for each arrestee (who would not physically appear before the magistrate).
3) Complying with Rule 9.2 and the Consent Decree, the magistrate would sign an order for an unsecured bail amount set initially at no more than $100 and order the arrestee to be released on a personal bond with or without other non-financial conditions as soon as practicable after arrest.
4) The magistrate would sign and submit the report required by Sec. 17.022(d)(2).

I look forward to discussing this with you.

I am copying counsel for other parties, to bring them into this process sooner rather than later.

Yours sincerely,

Allan Van Fleet

cc (via email):
Sandra Thompson
Alec Karakatsanis
Cody Cutting
Jonathan Fombonne
Rachel Fraser
Victoria Jimenez