No. 26-20337

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

In re: Hon. Paula Goodhart, Hon. Jessica Padilla, Hon. Leslie Johnson, and Hon. Linda Garcia,

Petitioners.

---

On Petition for Writ of Mandamus
from the United States District Court
for the Southern District of Texas
No. 4:16-cv-1414

---

**PETITIONERS' REPLY IN SUPPORT OF MOTION TO STAY**

Pursuant to Federal Rule of Appellate Procedure 8, Petitioners Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia (the "Judges"), file this reply in support of their motion asking the Court to stay enforcement of the district court's Consent Decree (App. C, ECF 708) to the extent it conflicts with Texas' new bail-reform laws, pending the outcome of this proceeding.

## REPLY

Petitioners, Judges Paula Goodhart, Jessica Padilla, Leslie Johnson, and Linda Garcia, file this brief Reply to the responses filed by Plaintiffs/Respondents the Twelve Judges, Harris County, and Sheriff Gonzalez. Petitioners have established the four stay factors overwhelmingly favor granting a partial stay of the Consent Decree's enforcement against actions taken in compliance with Texas law.

## ARGUMENT

### I. Jurisdiction Exists to Issue a Stay Order

#### A. The stay motion is properly ancillary to the Mandamus Petition.

Plaintiffs posit that the Judges appeal a non-appealable order. However, this Court need not review the district court's stay denial on the merits; the Court may grant a stay under its inherent authority to maintain the status quo while considering the mandamus petition. *Nken v. Holder*, 556 U.S. 418, 429-430 (2009) (stay authority is ancillary to appellate jurisdiction and permissible to return parties to earlier status); *see also In re Volkswagen Am., Inc*, 545 F.3d 304, 319 (5th Cir 2008) (order of venue transfer on mandamus).

To the extent that Plaintiffs contend that the stay motion is truly not ancillary to the mandamus petition, this argument misapprehends both the nature of mandamus relief and the relationship between a stay request and the underlying merits. Federal Rule of Appellate Procedure 8 authorizes this Court to stay district

court orders "pending appeal." Fed. R. App. P. 8. Additionally, the All Writs Act similarly empowers appellate courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. §1651(a). A stay pending mandamus is "necessary or appropriate" when it prevents the very interference the mandamus petition seeks to halt. *See e.g.*, *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026).

Simply, the stay and the mandamus petition are properly related. The mandamus seeks determination of *Younger* application and the need to abstain. The stay seeks to prevent additional harm from threats of contempt for judges who follow the mandates of Texas state law. Alternatively, denying a stay would allow irreparable harm to continue while this Court considers the mandamus petition, defeating the purpose of mandamus as a remedy. Plaintiffs' suggestion that Petitioners are improperly seeking "to block the enforcement of orders or judgments that they were not even challenging" fundamentally mischaracterizes the stay request (PL Resp. at 7). Petitioners challenge the district court's continued exercise of jurisdiction over state bail procedures in the face of binding Fifth Circuit precedent requiring abstention.

**B. The Collateral Order Doctrine analysis is inapplicable**

Plaintiffs argue that district court's stay denial does not qualify as an immediately appealable collateral order (*see id.*). This argument mistakes the posture of the case. Petitioners do not purport to appeal the district court's stay denial under

28 U.S.C. § 1291 or the collateral order doctrine. Petitioners filed a mandamus petition challenging the district court's refusal to expedite its *Younger* ruling and seek a stay pending that mandamus proceeding. The jurisdictional foundation is the mandamus petition itself and this Court's ancillary authority to grant stays that preserve the status quo and prevent irreparable harm pending resolution of mandamus petitions.

Plaintiffs cite no authority holding that a stay pending mandamus must independently qualify as a final order or satisfy the collateral order doctrine's requirements. Such a rule would eviscerate the established practice of seeking stays pending mandamus. The proper inquiry is whether the stay is reasonably related to preserving this Court's ability to grant effective relief on the mandamus petition and preventing irreparable harm in the interim.

## II. Petitioners Have Met Their Burden to Support a Stay

### A. Success on the merits remains extremely likely.

Petitioners demonstrated in Section II of the Motion to Stay why success on the merits is likely and nothing Respondents have stated change that analysis. Nevertheless, Petitioners do offer reply to several points. First, Plaintiffs' suggestion that no conflict has been shown between the Consent Decree and Texas law has been completely disproven by the Petitioners in their Petition for Writ of Mandamus and attachments (Pet. at. 14-16; 19-20). Specifically, paragraph 30, subparagraph 9.4 of

the Consent Decree requires immediate release of most misdemeanor arrestees on personal bond (Pet. App. C at p. 17). Conversely, Texas law requires individualized bail review and consideration of appropriate factors. Tex. Code Crim. Proc., art. 17.028. Notably, in warning hearing officers against potential contempt allegations, Plaintiffs' counsel identified situations where hearing officer bail procedures required by the Consent Decree contradict Texas law (Pet. App. E) (ECF 793, App A at 4). All considered, there is no doubt the Consent Decree conflicts with Texas law. The bail statutes require individualized review and consideration of specific statutory factors before any bail decision. The Consent Decree, by contrast, mandates immediate release of most misdemeanor arrestees without individualized review.

Plaintiffs dismiss these arguments by asserting that Petitioners "fail to explain why 'equity requires' vacatur" or how state law makes compliance "onerous" or "unworkable." (PL Resp. at 14). But the conflict is not merely administrative inconvenience. The Consent Decree prohibits county judges from following state law in pending county criminal proceedings—the core concern animating *Younger* abstention. And, threats by the monitors in specific criminal cases have an unjustifiable chilling effect on judicial discretion. As the Supreme Court explained in *Younger v. Harris*, federal court interference with ongoing county criminal proceedings raises "basic doctrine[s] of equity jurisprudence" rooted in "Our

Federalism." 401 U.S. 37, 43-44 (1971). *Younger* favors allowing the state processes to work.

**B. Petitioners will suffer irreparable harm absent a stay**

**1. Harm is irreparable.**

Plaintiffs contend that Petitioners' predecessors "vested the district court with the authority to ensure [their] compliance" by entering the Consent Decree, rendering any harm self-inflicted (PL Resp. at 15). This argument assumes too much. Consent decrees are subject to modification when circumstances change. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 388-91 (1992). The Supreme Court has rejected the notion that a party's agreement to a decree forever precludes relief from changed circumstances. *Frew v. Hawkins*, 540 U.S. 431, 441-42 (2004). Moreover, Texas amended its bail laws, and Petitioners—who were not in office when the Consent Decree was entered—now face conflicting legal obligations. They did not "self-inflict" this conflict;[1] the Texas Legislature created it by responsibly enacting comprehensive bail reform. It was Petitioners' good-faith efforts to work within the existing framework, not acquiescence to perpetual federal control of state law and procedures, that led to the timing of this appeal.

[1] This situation is much different than that noted in *State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) wherein injuries were caused by a parties' own post-litigation conduct.

**2. The harm is imminent and concrete.**

Plaintiffs dismiss the threat of contempt as "too speculative" because no contempt motion has been filed (PL Resp. at 17). But Plaintiffs' counsel has expressly stated that noncompliance with the Consent Decree "can justify a contempt finding" and that "knowing violation can constitute a criminal offense" (Pet. App. E) (ECF 793-2, App A at 1-2). The Monitor has characterized specific judicial decisions in pending cases as "willful violations" (*See* ECF 799-1 at 23-24). These are not hypothetical concerns; they are express threats to judicial officers for following state law in state criminal proceedings.

The Supreme Court has recognized that preventing a state from enforcing duly enacted plans—laws in the redistricting context—constitutes irreparable harm. *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). Here, the Consent Decree prevents Texas from enforcing its bail-reform statutes—statutes representing comprehensive legislative policy judgments about public safety, victim protection, and individual liberty. Plaintiffs argue that compliance with the Consent Decree does not harm Petitioners personally (PL Resp. at 16). But again, Petitioners are county judicial officers sworn to uphold Texas law who cannot fulfill that oath when considering bail for an arrestee. This places Petitioners in an untenable position: violate the federal Consent Decree and risk contempt, or violate state law and fail their constitutional duty. This is quintessential irreparable harm.

**3. Federal interference with pending criminal cases cannot continue.**

Perhaps the most significant harm is the one Plaintiffs barely address: ongoing federal interference with pending state criminal proceedings. The Consent Decree does not merely set general policies; it governs specific bail decisions in individual cases. Arrestees' counsel communicate with Plaintiffs' counsel and the Monitor about ongoing cases (*See* ECF 799-1 at 22). The Monitor reviews and criticizes judges' findings in pending matters. This daily interference is precisely what *Daves II* condemned. As this Court explained, "[t]he injunctions issued in Houston and Dallas plainly show federal court involvement to the point of ongoing interference and 'audit' of state criminal procedures." *Daves II*, 64 F.4th at 631. A stay is necessary to halt this interference while the abstention question is resolved.

**C. The balance of harms and public interest favor a stay**

**1. Plaintiffs' claimed harms rest on impermissible presumptions.**

Plaintiffs argue that a stay would harm class members by eliminating constitutional protections and would disserve the public interest (PL Resp. at 18). These arguments rest on the assumption that Texas's new bail-reform laws are constitutionally inadequate—an assumption *Younger* forbids.

Federal courts must "assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Plaintiffs identify no such "unambiguous

authority." Instead, they point to monitor reports suggesting that Texas' individualized-review requirement might lead to more pretrial detention (PL Resp at 19). But this view generally reflects policy disagreements about the proper balance to be struck between liberty and public safety—disagreements that *Younger* reserves to state political processes. Consistent with state and federal constitutional law, Texas has made its policy choice through comprehensive legislation requiring individualized review of all circumstances, including criminal history, the nature of charges, and victim safety concerns; and, Courts presume that "a Legislature understands and correctly appreciates the needs of its own people." *Ward & Gow v. Krinsky*, 259 U.S. 503, 521 (1922); *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968). Plaintiffs' disagreement with that legislative judgment does not create irreparable federal harm.

**2. The public interest favors compliance with *Daves II***

Plaintiffs suggest that the public interest favors maintaining the Decree because it has "saved many millions of dollars" and improved outcomes (PL. Resp. at 19). These are legitimate policy considerations—but they are considerations for the Texas Legislature and Texas courts, not federal courts exercising equity jurisdiction over state criminal proceedings. The public interest in federalism and comity outweighs Plaintiffs' preference for a particular bail policy.

Instead, Petitioners restate their position: the public interest "favors compliance with this Court's en banc mandate in *Daves II*." *Daves II*, 64 F.4th at 620. And it favors "compliance with the notions of comity and federalism that underscore federal court abstention from interfering with ongoing judicial proceedings, which are founded in a 'basic doctrine of equity jurisprudence'" *Younger*, 401 U.S. at 43-44. Public interest favors allowing Texas to implement its considered policy judgments about bail reform without federal micromanagement of state criminal proceedings.

**3. A stay will not substantially injure Plaintiffs or Harris County**

As Plaintiffs themselves note, twelve of the sixteen Harris County Criminal Court at Law judges do not support Petitioners' motion. If a stay is granted, those twelve judges remain free to continue operating under policies similar to the Consent Decree's provisions, to the extent those policies comply with Texas law. They could amend the local rules by majority vote to maintain many of the Decree's procedures. A stay would not eliminate the substantive protections Plaintiffs find valuable; it would simply shift authority over bail procedures from the federal district court to county judges operating under state law—as *Daves II* requires. Finally, to the extent Plaintiffs continue to maintain their clients are subject to violations in Harris County, it is noteworthy that Plaintiffs' clients were not processed under Texas' current bail-reform statutes. Their interests in the Decree's enforcement are diminished

accordingly. The real parties in interest going forward are future arrestees, who have adequate state-law remedies to vindicate their federal rights.

Finally, Harris County argues that a stay would cause operational concerns. At the outset, the County's operational concerns do not outweigh the public interest in compliance with State law. That said, Petitioners are simply requesting a stay to prevent enforcement of the Consent Decree **against parties who act in compliance with State law**. Such an order would not necessarily require that Harris County immediately change its processes. Regardless, Harris County has been aware of the existence of S.B. 6 and S.B. 9 for several years and for the eventual need for compliance. Indeed, the Twelve Judges proposed amendments to Local Rule 9 in 2022 to align with S.B. 6; thus, Respondents knew of the advisability of complying and considered compliance feasible. In any event, Petitioners seek the ability to be able to comply with State law in conducting pretrial processes while application of *Younger* is under consideration.

## CONCLUSION

The Judges ask that the Court stay the Consent Decree's enforcement against parties acting in compliance with Texas' new bail-reform laws—laws that courts presume adequately protects the constitutional rights of arrestees in Harris County, as they do for arrestees in every other county in Texas. The Judges ask for all other relief the Court deems appropriate.

Respectfully Submitted,

GREER, HERZ & ADAMS, L.L.P.

By: /s/ Joseph Russo
Joseph Russo (Lead Counsel)
Fed. ID No. 22559
State Bar No. 24002879
jrusso@greerherz.com

Angie Olalde
Fed. ID No. 690133
State Bar No. 24049015
aolalde@greerherz.com

123 Rosenberg Street, Suite 3000
Galveston, TX 77550
(409) 797-3200 (Telephone)
(866) 422-4406 (Facsimile)

*Counsel for Petitioners*

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because this document contains **2266** words which is within the 2600 word-count limit, excluding the portions exempted by the Rules.

2. This document complies with the typeface and type styles requirements of FED. R. APP. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ Joseph Russo*
Counsel for Petitioners

Dated: July 13, 2026

## **CERTIFICATE OF SERVICE**

I certify that, on July 13, 2026, this document and its attachments were electronically served on all counsel of record in this case in accordance with the Federal Rules of Appellate Procedure.

*/s/ Joseph Russo*
Counsel for Petitioners