# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 26, 2026
Lyle W. Cayce
Clerk

No. 26-20337

In re Honorable Paula Goodhart; Honorable Jessica Padilla; Honorable Leslie Johnson; Honorable Linda Garcia,

*Petitioners*.

On Petition for Writ of Mandamus
from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-1414

Before Elrod, *Chief Judge*, and Jones and Higginson, *Circuit Judges*.

Per Curiam:*

Four Texas state judges presiding over the Harris County Criminal Courts at Law moved the district court to vacate a federal consent decree that monitors the pretrial imposition of bail in Harris County. With a state judicial election fast approaching, the judges then asked the district court to expedite its consideration of the *Younger* abstention argument in their motion to vacate. The district court declined, instead moving the date of its hearing on the motion to vacate to fall *after* the state election. The four judges now seek a writ of mandamus ordering the district court to act expeditiously in considering the *Younger* argument. Because of the pending state election,

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

and because our decision in *Daves v. Dallas County (Daves II)*, 64 F.4th 616 (5th Cir. 2023) (en banc), declares that this case should not "have been adjudicated in federal court," *id.* at 631, we GRANT the writ of mandamus. We accordingly DENY as moot the pending motion to stay enforcement of the consent decree pending the outcome of this mandamus proceeding.

I

This case has a long history, which we have described before in *ODonnell v. Harris County (ODonnell I)*, 892 F.3d 147 (5th Cir. 2018), *overruled in part by Daves II*, 64 F.4th 616. We repeat here only the salient details.

The plaintiffs brought a class-action lawsuit against Harris County, Texas, and a number of its officials, including, as relevant here, judges of the Harris County Criminal Courts at Law. *Id.* at 152. They alleged that "[t]he County's system of setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the equal protection and due process clauses of the Fourteenth Amendment." *Id.* The district court granted a preliminary injunction "requiring the implementation of new safeguards and the release of numerous detainees subjected to the insufficient procedures." *Id.* at 155.

On appeal, and as relevant here, we concluded that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), was not appropriate, *ODonnell I*, 892 F.3d at 156. But we vacated the overbroad preliminary injunction and remanded for the district court to "craft a revised injunction." *Id.* at 163–67. We later stayed pending appeal certain sections of the revised injunction. *See generally ODonnell v. Goodhart (ODonnell II)*, 900 F.3d 220 (5th Cir. 2018). In that proceeding, the county judges again raised their *Younger* arguments, but we did not reach them because we stayed the injunction on other grounds.

*Id.* at 223–24; *see also id.* at 232 (Graves, J., dissenting) ("The judges recycle various arguments based on *Younger*.").

The original county judges "were defeated in the November 2018 elections and, by operation of law, were replaced by" new judges. *ODonnell v. Salgado (ODonnell III)*, 913 F.3d 479, 481 (5th Cir. 2019). On those new judges' motion, we dismissed their appeal. *Id.*

Back in district court, the parties settled and jointly moved for approval of a proposed consent decree, which the district court granted, *ODonnell v. Harris County (ODonnell IV)*, No. H-16-1414, 2019 WL 6219933, at *28 (S.D. Tex. Nov. 21, 2019) (approving consent decree). In early 2020, on the parties' motion, and pursuant to a provision in the consent decree, the district court appointed a consent-decree monitor. The monitor files regular reports in the district court assessing whether the Harris County Criminal Court at Law judges comply with the consent decree; to date, the monitor has filed nine such reports.

Two years after entry of the consent decree, we concluded in *Daves II* that *Younger* "and its progeny required the district court to abstain" in this case. 64 F.4th at 631, 635. We expressly stated that "*ODonnell I*," this very case, "should [not] have been adjudicated in federal court." *Id.* at 631. We overruled *ODonnell I*'s holding against abstention. *Id.* at 631, 635.

Two years later, Judges Paula Goodhart, Leslie Johnson, Jessica Padilla, and Linda Garcia—the four Harris County Criminal Court at Law judges who are petitioners here and whom we call "the four judges"—moved unopposed to substitute as parties for their predecessors in office. The district court granted that motion.

On November 12, 2025, the district court issued a scheduling order requiring, among other things, that the four judges file any motion to vacate the consent decree by December 11, 2025. The four judges did just that,

timely moving the district court to "vacate or, at minimum, modify the Consent Decree to be consistent with State law." Fact discovery opened the next day, and is set to close in late August 2026.

A few months after the four judges moved to vacate the consent decree, in April 2026, the four judges asked the district court to expedite its consideration of the *Younger* abstention argument in their motion to vacate. The district court denied that motion. Instead, it postponed the deadline for the judges' amended motion to vacate until October 1, 2026. The plaintiffs' responses are currently due at the end of October, and the judges' replies on November 6. The district court set the hearing on the motion to vacate to begin on November 16, 2026.

Texas holds elections for judges. One such general election will occur on November 3, 2026. *Important Election Dates*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/important-election-dates.shtml (last visited Aug. 24, 2026). Thus, per the district court's current schedule, the submission deadline for the four judges' motion to vacate will fall after the election.

The four judges petitioned us for mandamus relief, asking us to order the district court to grant their motion to expedite consideration of their *Younger* abstention argument.[1]

## II

Any petitioner seeking mandamus relief must satisfy "three conditions . . . before a writ of mandamus may issue." *In re Westcott*, 135 F.4th 243, 245 (5th Cir. 2025). "First, 'the party seeking issuance of the

[1] After the parties to this mandamus proceeding had completed briefing, we invited (but did not require) the district court to respond to the petition for writ of mandamus. The district court declined to respond.

writ [must] have no other adequate means to attain the relief he desires'—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (alteration in original) (quoting *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). "Second, the petitioner must satisfy 'the burden of showing that [his] right to issuance of the writ is "clear and indisputable."'" *Id.* at 381 (alteration in original) (quoting *Kerr*, 426 U.S. at 403). And third, "even if the first two prerequisites have been met," we, "in the exercise of [our] discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* (citing *Kerr*, 426 U.S. at 403). The four judges readily satisfy all three of these requirements.

A

First, the four judges have no adequate means besides mandamus to obtain the relief that they seek: expedited consideration of their motion to vacate the consent decree. *See id.* at 380–81 (quoting *Kerr*, 426 U.S. at 403). An appeal from the district court's final judgment cannot undo any delay in reaching that final judgment. And there is value here in acting expeditiously: As we noted above, Texas's judicial election will take place this November.

B

The four judges have also shown that they have a clear and indisputable right to the "extraordinary remedy" of mandamus. *E.g.*, *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2022) (quoting *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 542 (5th Cir. 2001)); *see Cheney*, 542 U.S. at 381 (quoting *Kerr*, 426 U.S. at 403). "If the issue 'is one committed to the discretion of the trial court,'" like a district court's management of its docket, "a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion, such that it amounts to a judicial usurpation of power.'" *In re Gee*, 941 F.3d

153, 158–59 (5th Cir. 2019) (quoting *In re 1st S. Savs. Ass'n*, 820 F.2d 700, 707 (5th Cir. 1987)); *accord In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir 2008) (en banc); *see In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018).

Mandamus relief may issue where the district court unduly delays. *See Drummond*, 886 F.3d at 450. "We recognize that this [case involves] a complex matter and that district court judges have broad discretion in managing their dockets." *Id.* (citing *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996)). "However, discretion has its limits." *Id.* (quoting *Sims*, 77 F.3d at 849).

Again, *Daves II* expressly held that "*ODonnell I*," this very case, "should [not] have been adjudicated in federal court." 64 F.4th at 631. We overruled *ODonnell I*'s holding against *Younger* abstention and concluded that the district court *in this case* should have abstained. *Id.* at 631, 635. This holding, plus the comity and federalism concerns underlying *Younger*, *see id.* at 624–25, should have counseled the district court to expedite consideration of whether to end federal oversight of state procedures—particularly in light of the imminent state judicial election. The district court should not have delayed that consideration such that the hearing on the motion to vacate falls after the state election.

The district court believed that "*Daves II* is not directly controlling" because that case "addressed a *Younger* argument presented and resolved before final judgment," while, here, the four judges "move to vacate a final judgment." *See Daves II*, 64 F.4th at 620–21. This mattered, in the district court's view, because moving to vacate a final judgment "requires the [f]our [j]udges to show under [Federal Rule of Civil Procedure] 60(b) that the equities favor vacating or amending the consent decree"—which, the district court reasoned, required factual development.

But *Daves II* expressly held that "*ODonnell I* . . . should [not] have been adjudicated in federal court" and that the district court should have abstained. 64 F.4th at 631. Again, *ODonnell I is this case*. *Daves II* does not hinge upon factual development or discovery. Moreover, the district court failed to consider one fact that surely looms large in any balancing of equities: the imminent state judicial election, which counseled expedition here.

The district court was also mistaken to the extent it believed that the four judges had waived their *Younger* argument. Of course, *Younger* will not apply if "application of the doctrine was waived." *Daves II*, 64 F.4th at 625 n.16 (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004)); *see Daves v. Dallas County (Daves I)*, 22 F.4th 522, 545 (5th Cir. 2022) (en banc) ("One result of the principle that abstention under *Younger* is not jurisdictional is that application of the doctrine can be waived." (citing *Tex. Ass'n of Bus.*, 388 F.3d at 519)). The district court suggested that the four judges may have waived *Younger*'s application here because previous Harris County Criminal Court at Law judges had agreed to the consent decree.

But "[c]onsent alone is insufficient to support a commitment by a public official that ties the hands of his successor." *Evans v. City of Chicago*, 10 F.3d 474, 478 (10th Cir. 1993) (en banc) (citing, among other things, *League of United Latin Am. Citizens v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) (en banc)). This is so because, as we have said, "[c]onsent is not enough when litigants seek to grant themselves powers they do not hold outside of court," *Clements*, 999 F.2d at 846 (citing *People Who Care v. Rockford Bd. of Educ.*, 961 F.2d 1335, 1337 (7th Cir. 1992)), and no public official has the power to bind his or her successor in perpetuity, *see Evans*, 10 F.3d at 478 ("[D]emocracy does not permit public officials to bind the polity forever."). To be clear, this does not mean that "mere transfer of power from one officeholder to another is enough to vacate a consent decree," as the plaintiffs suggest. The decision whether to vacate or modify

a consent decree turns on other factors, such as changed circumstances or a change in law. *See, e.g.*, *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–90 (1992). *But see id.* at 390 ("While a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law.").

The plaintiffs insist that the four judges waived *Younger*'s application by entering a consent decree because the consent decree reached the merits of their claims. But we have indicated that even "full discovery and fully briefing the merits of the case" does not constitute waiver of abstention arguments where governmental parties "consistently request[] that the district court abstain." *RTM Media, L.L.C. v. City of Houston*, 584 F.3d 220, 229 (5th Cir. 2009); *see O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008) (explaining that a state must waive *Younger* abstention explicitly and rejecting the argument that "any request that the federal court reach the merits of the lawsuit constitutes waiver"). Here, the state judges consistently urged the district court and our court to abstain. *ODonnell I*, 392 F.3d at 156–57; *ODonnell II*, 900 F.3d at 223–24.

The plaintiffs further maintain that the four judges implicitly waived their *Younger* argument "by waiting over two years" after *Daves II* "to move to vacate." But the four judges apparently could not file such a motion until November 2025, when, as they represent, they were finally able to obtain counsel independent from that of the other twelve Harris County Criminal Court at Law judges, all of whom support the consent decree's continuation. The plaintiffs say that they dispute this account, but before us, they do not show that this version of the facts is incorrect. If the four judges were unable to obtain counsel independent of their judicial colleagues who support the consent decree, we do not see how they could have filed earlier.

### C

Finally, we are "satisfied" that mandamus relief "is appropriate under the circumstances." *Cheney*, 542 U.S. at 381 (citing *Kerr*, 426 U.S. at 403). The pending election and *Daves II* make the writ appropriate here for the reasons that we have already discussed.

* * *

We GRANT the writ of mandamus. The district court must consider the four judges' *Younger* abstention argument on an expedited basis, well in advance of the upcoming Texas judicial election on November 3, 2026. We also direct the district court to follow *Daves II*. We DENY as moot the pending motion to stay enforcement of the consent decree pending the outcome of this mandamus proceeding.

Stephen A. Higginson, *Circuit Judge*, dissenting:

The majority grants mandamus against a district judge to order expedited consideration of a matter set by that judge in less than three months as part of a full evidentiary hearing.[1] Specifically, the majority uses drastic mandamus power to compel Judge Lee Rosenthal to rule "well in advance of" a fall election and to apply our precedent, but there is no indication that Judge Rosenthal wouldn't faithfully apply the law herself. Because it is inappropriate for us to set a district court's docket, I respectfully DISSENT.

* * *

I voice two primary concerns with the majority's opinion. First, mandamus presents a high bar for relief that the majority neglects and that Petitioners have failed to meet.[2] Second, I disagree with the majority's advisory discussion of *Younger*, in this context, above all where a final consent decree has been in place for over six years.

I.

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations and citations omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse

---

[1] I note that our court has had this petition for almost two months.

[2] It is not surprising that Judge Rosenthal declined to answer our invitation to respond to the mandamus petition. Why would any district judge not assume we would treat their docket as we do ours? Parties virtually never ask us to expedite our deliberation time; they ask to expedite *their* briefing schedule. They don't ask us to expedite when we will rule, much less think there is controlling law against deliberation time. Ironically, Judge Rosenthal was explicit that she will not expedite a ruling, without fact-finding and evidence, because she likely would commit reversible error if she did.

of discretion, will justify the invocation of this extraordinary remedy." *Id.* (internal quotation marks and citations omitted); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 (5th Cir. 2008) (en banc) ("[M]andamus is appropriate when there is a clear abuse of discretion."). "As the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Cheney,* 542 U.S. at 380.

"First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380–81 (alteration adopted; internal quotation marks and citations omitted). "Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." *Id.* at 381 (alteration adopted; internal quotation marks and citations omitted). "Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."[3] *Id.*

A.

[3] I center this opinion primarily on the second prong, where the majority and the parties are focused. But this petition could just as easily be disposed of on the first element—that there will be no other adequate means to obtain relief. Mandamus is not a substitute for direct appeal, "even though hardship may result from delay," or even from "perhaps unnecessary trial." *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964); *In re Willy*, 831 F.2d 545, 550 (5th Cir. 1987). The error addressed by mandamus must be "truly irremediable on ordinary appeal." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (internal quotation marks and citation omitted). Disregarding this longstanding requirement, the majority grants relief where the intervenors have simply alleged impatience in waiting for a reasoned ruling on a fully developed record. *See Smith v. Sch. Bd. of Concordia Par.*, 181 F.4th 629, 639 (5th Cir. 2026) (STEWART, J., concurring in part and dissenting in part). If we had let proceedings continue rather than interfering before Judge Rosenthal even had the chance to consider the issues fully, Judge Rosenthal's ruling would have been appealable in the normal course.

With this exceptionality in mind, there is no justification to grant mandamus here, where Petitioners challenge an order denying a motion to expedite—a paradigmatic case management decision. There is nothing more discretionary than a district court's control of its own docket. "District courts have wide discretion in managing their docket, and they do not necessarily deny a motion by failing to rule on a parties' requested timeline." *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 535 (5th Cir. 2024); *see also Smith*, 181 F.4th at 640 (STEWART, J., concurring in part and dissenting in part) (noting that by granting mandamus, the panel majority is "usurping the time-honored power of the district court to manage its own docket"); *Sims v. ANR Freight Sys.*, Inc., 77 F.3d 846, 849 (5th Cir. 1996).[4]

Tellingly, the majority does not quote Judge Rosenthal's introduction or conclusion, where she says only that she will not expedite a ruling about federal court abstention after six years of a consent decree because our precedent for dissolving a consent decree under Rule 60 says facts matter. Further, neither merits briefing on *Younger* was complete, nor even an expedited schedule provided by Petitioners. To understand the unprecedented nature of our use of mandamus power against a district court judge here, I recount the chronology which led to nothing less than Judge Rosenthal's promise to the parties that she *will* rule on the issues before her

[4] Contrastingly, this is not a case like *In re United States ex rel. Drummond*, 886 F.3d 448 (5th Cir. 2018), which the majority relies on, where we granted mandamus when the two pending motions that led the petitioner to seek mandamus had been pending for four years. *Id*. at 450. Here, we have an extension of *less than three months*, after the Petitioners waited over two years to invoke the Fifth Circuit law they now claim controls, without accounting for the case's complicated procedural posture. Petitioners assert that they could not act sooner to intervene because they were unable to obtain independent counsel, but the Attorney General had no such limitation.

promptly, with all the necessary information before her, which the majority fails to acknowledge.

B.

After several years of litigation, including multiple appeals, the parties in this case settled their dispute. The district court held an evidentiary hearing and approved a settlement agreement and consent decree on November 21, 2019. Despite taking no appeal of the entry of the final consent decree, on August 26, 2025—almost six years later and more than two years after our court issued the intervening law that Petitioners now contend is controlling—the Attorney General of Texas (who appeared at the hearing on the consent decree in 2019) moved to intervene and filed a motion asking the district court to terminate or dissolve the consent decree, stating:

> The Court should grant the motion because, as the Fifth Circuit held in *Daves v. Dallas County*, 64 F.4th 616, 631 (5th Cir. 2023) (en banc), the Court should not have exercised jurisdiction, and Senate Bill 6 ("S.B. 6") rendered plaintiffs' claims moot. Alternatively, dissolution is warranted under Federal Rule of Civil Procedure 60(b) given intervening changes in state law.

The district court granted the motion to intervene in part, allowing the Attorney General to move to vacate the consent decree on the basis that the newly enacted state legislation mooted the consent decree. *ODonnell v. Harris County*, 808 F.Supp.3d 738, 745 (S.D.Tex. 2025) (the "Intervention Order"). But, importantly, the district court also found that the Attorney General had no right to intervene to assert *Younger* abstention, and that he had waived the *Younger* arguments made in his motion. *Id.*

Petitioners, four judges of the Harris County court, then filed an unopposed motion to substitute themselves as parties on November 5, 2025, which the district court granted. On November 12, 2025, the district court

held a status conference and the parties discussed how to proceed. The Attorney General posited that no discovery was necessary, and the matter was simply a question of law, but after hearing from all parties, Judge Rosenthal noted that she was being "called on to analyze whether the practices under the consent decree and the practices under the state statutory changes are going to call for an order vacating the consent decree. That's a factual inquiry." She further stated:

> I think discovery is called for in order to [] do an adequate job of determining whether under the existing law, the combination of the record in this case, Fifth Circuit decisions, and the change in the state law, whether the impact of all of those things calls for a vacation, vacatur, of the consent decree. . . . [I]t's a fairly radical step for a Court to tell parties that have entered into what you referred to as a contract to tell the parties that that contract is going to be vacated. Courts generally have a greater respect for contracts, particularly when they have such important public impacts. So, yes, I do think we need that discovery.

Post-conference, on November 12, Judge Rosentahl issued a scheduling order setting December 11, 2025, as the date for Petitioners to file a motion to vacate the consent decree, and for the Attorney General to file an amended motion to vacate that complied with the scope of intervention permitted by the Intervention Order. The scheduling order further set August 27, 2026, for the evidentiary hearing on the motions to vacate, along with discovery and other intermediate deadlines. On November 26, 2025, the Attorney General noticed appeal of the Intervention Order, but before filing his brief in our court, he moved for voluntary dismissal of the appeal, which was granted. (See Case No. 25-20543 at Doc. 20-2.) Thus, the Intervention Order's holding that the Attorney General waived his *Younger* argument is final. Notably, also, no objection was filed by either intervenor to the dates set forth in the initial scheduling order.

On December 11, 2025, Petitioners did file their motion to vacate. Crucially, that motion was quite similar to the motion of the Attorney General, asking for relief under Federal Rule of Civil Procedure 60(b) citing an intervening state law, S.B. 6[5] The motion also raised *Younger* abstention.

It was not until April 16, 2026, over *five months* after entry of the initial scheduling order and status conference at which Judge Rosenthal informed the parties of her common-sense intention to hold an evidentiary hearing on the Rule 60(b) motion, that Petitioners moved for expedited (and separate) consideration of the *Younger* abstention issue. Plaintiffs, joined by Harris County and the Sheriff, opposed the motion to separately decide *Younger* abstention, as well as for expedited consideration of the issue. Simultaneously, the parties also requested a status conference to address discovery.

On May 22, 2026—just three months ago—Judge Rosenthal held that status conference at which the parties discussed the progress of discovery, and whether the August 27 hearing date needed to be pushed back due to the slow pace of discovery.[6] At the status conference, Judge Rosenthal was characteristically thoughtful and practical about how to both move the case along as well as be realistic about confecting a timeline. For example, she stated that wanted to get the parties "best current schedule for getting this

---

[5] S.B. 6 became effective as of January 1, 2022—years before the Texas Attorney General filed his motion to vacate, and even before three of the four judges took office on January 1, 2023.

[6] Counsel for the other 12 Harris County judges who oppose Petitioners in this case, noted at the status conference that at least some of the discovery delay was attributable to Petitioners' and the Attorney General's "massive discovery requests" to his clients, which he characterized as retaliatory. Counsel for Petitioners and the Attorney General did not dispute this characterization and instead agreed that October might be an achievable date for the hearing. Transcript at 19; 23.

work done properly." Hearing Transcript ("Transcript") at 22. The Attorney General's counsel even complimented Judge Rosenthal's speed and case management and noted that they wanted to proceed in an "orderly fashion" and were not asking to "rush" resolution. Transcript at 24; 25 ("Your Honor, you've been really prompt in your rulings; and we appreciate that.").

The motion to expedite came up briefly at the status conference. Transcript at 33. Petitioners urged the court to consider the *Younger* issue separately, but they acknowledged that the *Younger* issue was not yet even fully briefed;[7] *id.* at 35-36; rather, what was before the court was simply whether to carve out the *Younger* issue and rule on it in an expedited manner before any evidentiary hearing. *Id.* Further, Petitioners' counsel acknowledged and apologized that they had failed even to attach a proposed schedule to their motion to expedite. *Id.* at 34. Judge Rosenthal recognized that expedited ruling on *Younger* could be complicated, given the case's posture and related issues: "[n]o guarantees, and I'm not sure that it is as easily carved at the joint as some of the arguments have suggested," *Id.* at 33-34, but she also noted that she would "get [the parties] a ruling on the two outstanding legal issues that have been presented as quickly as I can." *Id*. at 39. Importantly, but ironically, counsel for the Attorney General complimented Judge Rosenthal for the promptness of her rulings. *Id.* at 24.

A few days later, Judge Rosenthal entered an order (the "May 26 Order") denying Petitioners' motion to expedite consideration of the *Younger* issue (and ruled on other legal issues), consistent with her earlier promise to act quickly. She also entered a modified scheduling order continuing the evidentiary hearing for less than three months, from August

[7] And today is still not yet briefed by the parties.

27 to November 16, and providing other amended pre-trial deadlines, consistent with the parties' workmanlike attention to all the calendar impediments they went through together at the status conference.

The May 26 Order, in part, specifically considered the motion to expedite Petitioners' *Younger* arguments. The May 26 Order referenced the earlier Intervention Order holding that the Attorney General had waived his *Younger* abstention arguments. The May 26 Order cited the Intervention Order's holding that that *Younger* abstention arguments *can* be waived—and were waived—by the defendants when they agreed to the consent decree. The May 26 Order reserved ruling on Petitioners' *Younger* arguments until the evidentiary hearing:

> *Daves II* did not address how courts should assess attempts under Younger to vacate a consent decree to which the moving parties previously agreed. Because *Younger* abstention is itself an equitable "carveout" from federal-court jurisdiction, this court must decide the Four Judges' arguments and the responses in light of the equities presented in this case, which requires an adequate record. In consultation with the parties, the court has entered an amended scheduling order that will allow the parties to present an adequate record to the court. The court denies the Four Judges' motion to expedite its ruling on *Younger* abstention. (emphasis added).

It is this decision to deny separate consideration of *Younger* abstention prior to the evidentiary hearing on the entire motion to vacate that Petitioners now challenge. The majority contends that Judge Rosenthal "was mistaken to the extent [she] believed that the four judges had waived their *Younger* argument." This is inconsistent with Judge Rosenthal's actual ruling that she must still decide the *Younger* issue at the November 16 hearing she set to decide the motion to vacate, expressing a reasoned preference to rule upon the entire matter together, with all of the facts before her.

C.

This docket management was handled exceptionally well by a district judge with far more docket experience than this panel. It was not an abuse of discretion, nor certainly a patent usurpation. Rather, Judge Rosenthal, attempted, appropriately, to adhere to our court's prior directives to district courts to handle the modification of consent decrees under Rule 60(b). Moreover, to the extent Judge Rosenthal said it was not "guaranteed" she could bifurcate, it was because she and the parties agree Fifth Circuit law requires evidence for a Rule 60(b) motion.[8]

No one disputed the only proper avenue for modifying a final consent decree is through Rule 60(b). *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne* (*LULAC I*), 659 F.3d 421, 437 (5th Cir. 2011); *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992). We have clearly directed that "[t]he district court must . . . examine the evidence on the record and consider whether the moving party met its burden," when modifying or vacating a consent decree. *LULAC I*, 659 F.3d at 438.

In turn, a district court may modify a consent decree if it "is no longer equitable" to maintain it. *Id.* at 437. To weigh the equities, we use a two-step, fact rich test to determine "whether modification is warranted." *Id.* "First, the party seeking modification must show a significant change either in factual conditions or in law that makes compliance with the decree substantially more onerous or unworkable because of unforeseen obstacles,

[8] The status conference transcript reflects that Judge Rosenthal's priority was a prompt but thorough ruling, insisting on a calendar that was not rushed but "workable." She even confirmed, "The Court will make itself available" for the parties' dates, while recognizing that expedited ruling on *Younger* could be complicated, given the case's posture and related issues: "I'm not sure that it is as easily carved at the joint as some of the arguments have suggested." Transcript at 32-34.

or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* (internal quotations omitted) (quoting *Rufo*, 502 U.S. at 384). Then, the court must "consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* (quoting *Rufo*, 502 U.S. at 383). "The burden is on the moving party to prove that modification is warranted, regardless of whether the party seeks to lessen its own responsibilities under the decree, impose a new and more effective remedy, or *vacate the order entirely*." *LULAC I*, 659 F.3d at 438. (emphasis added). "The district court must therefore *examine the evidence on the record* and consider whether the moving party met its burden." *Id.* (emphasis added).

*LULAC I* provides not only the controlling legal framework but also a close analogy. There, when the district court, after remand, failed to properly allow discovery or conduct an evidentiary hearing, but instead approved a temporary modification of that consent decree—which involved voting—due to an upcoming election, we reprimanded the district court for its failure to develop the factual record as we had directed. *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne* (*LULAC II*), 675 F.3d 433, 439 (5th Cir. 2012). We vacated the modification order, remanded again for development of the factual record, and took the extraordinary step of directing that the election be held six months later than it had been previously scheduled in order to comply with our directive to properly develop the record. *Id.* at 441. The insistence by the *LULAC II* court on a developed factual record is particularly of interest here, because although not advanced by the parties at any stage, the majority grants mandamus in large part because of the

upcoming Texas election, without explaining the significance of a ruling before that date.[9]

As for any relevance to efforts to attain closure of this litigation (pending for over ten years, with a final consent decree in place for over six) prior to a fall election, it was only during the May 22 status conference that anyone even mentioned the election.[10] Even then it was *plaintiffs'* counsel who raised it. Plaintiffs raised it in reference to the practical difficulty of scheduling the depositions of witnesses who would be running for election during the period leading up to the election. Transcript at 23-24. Next, Judge Rosenthal showed careful attention to the date of the election. Therefore, both the plaintiffs and Judge Rosenthal brought up the election before Petitioners' counsel offered any statement about it. *Id.* at 25. Appropriately, Judge Rosenthal clarified that election or not—just like summer or not, holidays or not—the imperative was to ensure creation of "a proper and sufficient record for an accurate ruling to be made." *Id.* at 26. Only then did counsel for Petitioners respond that they would like to have the hearing prior to the election in case some of the judges' seats changed, but they did not press this point or explain in any detail what the difficulty would be.[11] Judge

---

[9] Indeed, plaintiffs' counsel recognized that it would be reversible error to proceed without properly developing the record and conducting the Rule 60(b) analyses we set forth in the *LULAC* cases. *See* Transcript at 12 ("[O]ne of the biggest issues the Fifth Circuit has had in these [Rule 60] cases is making sure that there is an adequately developed record"); *id.* at 13 ("[W]e respectfully disagree that . . . you can resolve this on the record that we have right now.").

[10] Revealing that the intervention is ours, there is no mention of the election in Petitioners' motion to expedite, or in the motion to vacate. Let me say that again, there is no mention of the election in Petitioners' motion to expedite, or in the motion to vacate.

[11] Three pages of transcript later, plaintiffs' counsel acknowledged the likelihood of appeal "regardless of how the Court . . . decides the issue," Transcript at 29 (emphasizing the crucial nature of the evidentiary record in this case).

Rosenthal ultimately scheduled the hearing for after the election based on the other pre-trial deadlines that the parties worked through together during the status conference.[12] It is worth highlighting that the entire discussion at the status conference was based on the logistics and practicality of timely accomplishing various pre-hearing tasks, such as discovery and expert reports, not on any party's articulation that there was some special need to conduct the *Younger* abstention hearing before the election. Nor was any legal authority presented that litigation must adjust around an election, nor even to rebut the case law requirement that facts must be assembled to comprehensively resolve the litigation and not truncated because of an election.

The majority admonishes that, "the district court failed to consider one fact that surely looms large in any balancing of equities: the imminent state judicial election, which counseled expedition here." But, it was not until filing the mandamus petition that Petitioners first complained, in writing, and to us, not the district court in the first instance, that the hearing is set after the election. Yet, nowhere in their petition do Petitioners tell us *why* resolving this case before the upcoming election is a legal necessity justifying our seizing control of a district court's docket, much less articulate why the election is a basis to grant mandamus. Neither does the majority. If we are announcing a new rule of law that an upcoming election allows us to mandamus district court dockets, then we must give district courts the courtesy of explaining that rule, which will make their case calendars ours.

---

[12] On a practical level, review of the docket sheet shows that the parties appear to be adhering to the amended scheduling order. Pre-hearing status conferences were held on July 17 and August 6. Indeed, as of August 3, Petitioners were still filing discovery motions with the district court. The parties submitted their expert reports on August 10. Close of fact discovery is on August 24. Expert discovery is to close on August 31.

II.

In addition to the inappropriate use of mandamus to supplant a veteran judge's tight, timely docket management, there is a second flaw with the majority's opinion: the unexplained conclusion that *Younger* abstention can be decided with no application of that law to the years of case particularity Judge Rosenthal faces here, without any further case development or analysis.

In *Daves II*, passage of S.B. 6 (the same Texas law at issue here) rendered moot the pending suit over bail procedures. *Daves v. Dallas County* (*Daves II*), 64 F.4th 616, 634 (5th Cir. 2023). At our instruction, the district court there also had considered *Younger* abstention and declined to abstain. *Id.* at 622. But importantly, the district court, which had initially issued a preliminary injunction before the jurisdiction and abstention issues made its way to our court, had entered no final order before the Texas legislature enacted its bail reform legislation. *Daves v. Dallas County* (*Daves I*), 22 F.4th 522, 528 (5th Cir. 2022). Although we agreed that the district court had correctly determined the case was moot, we also chose to opine on *Younger* abstention, holding that *Younger* abstention would have applied. *Daves II*, 64 F.4th at 623-33.

The majority summarily states, "*Daves II* expressly held that '*ODonnell I* should not have been adjudicated in federal court' and that the district court should have abstained," and goes on to emphasize that "*ODonnell I is this case.*" This is, of course, the holding in *Daves II*, but the majority fails to grapple with, let alone acknowledge, the problem addressed by Judge Rosenthal in her denial of expedited consideration. Here, we have a final, post-judgment consent decree, that was not appealed, and over which the district court retained jurisdiction. Even if the case "should not have been adjudicated in federal court," the fact remains that it was. And we cannot

pretend otherwise, particularly where Petitioners did *not* invoke *Daves II* to invalidate this consent decree until over two years after we handed down that decision. They cannot show why it should be applied over six months into consensual discovery, much less on an appellate court's expedited basis.

"[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." *Rufo*, 502 U.S. at 391. The basis for *Younger* abstention is that the matter is more properly litigated in state court. *Younger v. Harris*, 401 U.S. 37 (1971). Petitioners do not explain, procedurally, how a state court could modify a federal court's final order approving a consent decree after the fact.[13] That argument may exist, but even Petitioners, as intervenors, admit that the intervening state law is implicated. Manifestly, the district court must proceed under Rule 60(b) and must do so with deliberation and the application of facts. It is a peculiar rule—with no legal precedent, much less patent and obvious to support mandamus—to hold *Younger* must get accelerated consideration and be applied retroactively to any final consent decree in which *Younger* abstention could have been—or

[13] The only case cited by Petitioners in support of their position that we should now, at this late date, use mandamus to force an earlier *Younger* abstention ruling, is a Tenth Circuit case, *Joseph A.*, that 1) has a different procedural posture, and 2) required application of *Younger* to each part of the consent decree to determine which parts of it might interfere with state court proceedings, not a wholesale vacatur of an entire consent decree. *See Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002). As emphasized by the district court, the consent decree in *Jospeh A.* had a specific carve out to allow *Younger* abstention to be raised. *ODonnell v. Harris County*, 808 F. Supp. 3d 738, 758 (S.D. Tex. 2025) (citing, *Joseph A.*, 275 F.3d at 1266 as "permitting *Younger* arguments after the entry of a consent decree because the agreement specifically allowed the defendants to raise 'any . . . defense' after the expiration of a 'one-year "cease fire"' during which 'no defenses could be raised'"). Neither Petitioners nor the majority explain how Judge Rosenthal has committed an abuse of discretion with her logic, much less defied controlling Fifth Circuit law when she refused to guarantee expedited ruling in the middle of discovery exchange and without full briefing.

even was—raised at some time in the past without adhering to the process and requirements for relief under Rule 60(b).

If the consent decree is to be vacated—because our holding in *Daves II* confirms that the passage of S.B. 6 moots the bail reform issues that are the subject of the consent decree—it must be done through deliberate, careful resolution of the pending Rule 60(b) motion.

Clearly, Judge Rosenthal intends to rule on abstention. The matter is set for a hearing on all issues raised in the motion to vacate in less than three months. In this posture, it is inconceivable to me that we would deploy mandamus. Of course, Judge Rosenthal has no reputation for delay; as noted, even the Attorney General's counsel complimented her promptness.

* * *

Judge Rosenthal laboriously took talented lawyers through their own summer and fall calendars to set pre-trial deadlines. As for *Younger* abstention, she promised a ruling but denied a rushed ruling, without the consent decree facts our court requires, and without even having received the plaintiffs' merits response. I do not see these careful judicial steps, done every day by district courts, as usurping or patently defying our law.

Facts matter to district courts. Attorney opportunity to brief and fully argue an issue matters to district courts. These are the everyday building blocks district courts responsibly insist on. They are the building blocks of full, fair, and factual adjudication. We should commend Judge Rosenthal, not seize and force her calendar. It is impatience to treat party presentation, fact development, and a reasoned district court opinion as superfluous.